**JOHNSON FISTEL, LLP**
FRANK J. JOHNSON (174882)
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)
FrankJ@johnsonfistel.com

*Attorneys for Plaintiff Steven Leventhal*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, NATHAN SCHULTZ, JOHN P. FILLMORE and ROBIN TOMASELLO,<br><br>　　　　　　Defendants. | Case No. 5:21-cv-09953<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION AND SUMMARY OF THE ACTION**

Plaintiff Steven Leventhal ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's counsel, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Chegg, Inc. ("Chegg" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1. This is a securities fraud class action on behalf of all purchasers of Chegg common stock between May 5, 2020 and November 1, 2021, inclusive (the "Class Period") seeking remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder.

2. Defendant Chegg is a provider of online research tools, online tutoring services, digital and physical textbook rentals, and other educational resources. Chegg and several of its senior insiders made materially false and misleading statements during the Class Period about the primary drivers of the Company's success dramatically increasing subscribers, growth, and revenues. Defendants falsely touted that the Company was "in a unique position to impact the future of the higher education ecosystem" and that the primary cause of the Company's success was "[o]ur strong brand and momentum" which would allow Chegg "to continue to grow and take advantage of the ever-expanding opportunities in the learner economy." In fact, defendants knew that Chegg's increase in subscribers, growth, and revenue was a temporary effect of the COVID-19 pandemic that resulted in remote education for the vast majority of U.S. students. Defendants were also aware that the platform was helping students cheat on their exams. Once the pandemic-related restrictions eased and students returned to campuses nationwide and schools and universities implemented protocols to eliminate cheating, students predictably stopped subscribing to the platform. In short, Chegg had no basis to believe that the extraordinary, but temporary, growth trends would continue, but failed to adequately inform

investors of that reality.

3. While Chegg's stock price was artificially inflated, several officers and directors sold $95 million worth of stock – far exceeding the amount sold in the prior comparable period – including $48 million by the Company's Co-Chairman, CEO and President and $25 million by the Company's President of the Learning Services division. Certain putative class members traded contemporaneously with these defendants and were damaged thereby.

4. In addition, the Company took advantage of the artificially inflated trading price of Chegg stock by selling more than $1 billion of common stock to investors in a February 18, 2021 secondary offering at the artificially inflated price of $102 per share. Certain putative Class members purchased stock directly in this secondary offering and have standing to assert additional claims against the Company and the underwriters of that offering pursuant to the Securities Act of 1933.

5. On November 1, 2021, Chegg revealed its financial results for the first quarter in which students returned to campus across the United States, and stunned investors with fewer-than-expected enrollments and did not provide 2022 guidance. In fact, CEO and President Dan Rosensweig admitted that defendants were aware of the slowdown in September 2021. Chegg's stock price plummeted nearly 50% (from over $62 to $32 per share) on more than 45 times the average daily volume as investors realized defendants' rosy statements about subscribers, growth, and revenues had been misleading, which decline immediately erased billions of dollars in market capitalization.

**JURISDICTION AND VENUE**

6. The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and § 27 of the Exchange Act (15 U.S.C. § 78aa).

7. Venue is proper in this District pursuant to § 27 of the Exchange Act, as Chegg is headquartered in this District and many of the false and misleading statements alleged herein were disseminated from this District where Chegg is headquartered.

8. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

9. Plaintiff Steven Leventhal purchased Chegg common stock during the Class Period, as set forth in the accompanying certification incorporated by reference herein and has been damaged thereby.

10. Defendant Chegg is a Santa Clara, California-based online purveyor of academic support services. Chegg common stock is listed and trades on the NASDAQ, an active market, under the ticker symbol "GHGG." As of October 25, 2021, the Company had 145 million shares of common stock issued and outstanding.

11. Defendant Daniel L. Rosensweig ("Rosensweig") is, and was at all relevant times, the President and Chief Executive Officer ("CEO") of Chegg and the Co-Chair of its Board of Directors. During the Class Period, Defendant Rosensweig sold 552,000 of his personally-held shares of Chegg common stock at fraud-inflated prices reaping more than $48 million in illicit proceeds.

12. Defendant Andrew J. Brown ("Brown") is, and was at all relevant times, the Chief Financial Officer of Chegg.

13. Defendant Nathan Schultz ("Schultz") is, and was at all relevant times, the President of Learning Services of Chegg. During the Class Period, Defendant Schultz sold 307,000 of his personally-held shares of Chegg common stock at fraud-inflated prices reaping $25 million in illicit proceeds.

14. Defendant John P. Fillmore ("Fillmore") is, and was at all relevant times, the President of Chegg Skills. During the Class Period, Defendant Fillmore sold 125,000 of his personally-held shares of Chegg common stock at fraud-inflated prices reaping nearly $10 million in illicit proceeds.

15. Defendant Robin Tomasello ("Tomasello") is, and was at all relevant times, the

1  Principal Accounting Officer, Assistant Treasurer, Vice President and Controller of Chegg. During the Class Period, Defendant Tomasello sold 32,000 of her personally-held shares of Chegg common stock at fraud-inflated prices reaping nearly $3 million in illicit proceeds.

16. Defendant Richard Sarnoff ("Sarnoff") is, and was at all relative times, the Co-Chairman of the Chegg Board of Directors. During the Class Period, Defendant Sarnoff sold 66,666 shares of his personally-held shares of Chegg common stock at fraud-inflated prices reaping more than $4 million in illicit proceeds.

17. Defendants Rosensweig, Brown, Schultz, Fillmore and Tomasello are sometimes referred to herein as the "Individual Defendants." Chegg and the Individual Defendants are referred to herein, collectively, as "Defendants."

## BACKGROUND

18. Defendant Chegg operates a direct-to-student learning platform that supports students on their journey from high school to college and into their career with tools designed to help them to learn their course materials, succeed in their classes, and save money on required materials. The Company offers Chegg Services, which include subscription services; and required materials that comprise its print textbooks and eTextbooks. Its subscription services include Chegg Study, which helps students master challenging concepts on their own; Chegg Writing, which provides students with a suite of tools, such as plagiarism detection scans, grammar and writing fluency checking, expert personalized writing feedback, and premium citation generation; Chegg Math Solver, a step-by-step math problem solver and calculator that helps students to solve problems; Chegg Study Pack, a bundle of various Chegg Services product offerings, including Chegg Study, Chegg Writing, Chegg Math Solver, video content, and practice quizzes, which creates an integrated platform of connected academic support services; and Thinkful, a skills-based learning platform that offers professional courses in the areas of software engineering, UX/UI design, digital marketing, data science, product management, data analytics, product design, and technical project management directly to students. The Company also provides other services, such as Chegg Prep and internships; and rents and sells print textbooks and eTextbooks. Chegg was incorporated in 2005 and is headquartered in

Santa Clara, California.

19. In 2020, Chegg generated 81% of its revenue from its Chegg Services division, which hosts its subscription-based online education services, and the remaining 19% from its Required Materials division, which handles textbook rentals. It generates most of its revenue within the United States.

20. Chegg's online education services, especially its tutoring platform that allows experts to solve homework questions for students, have often been criticized as a form of cheating. Two years ago, famed short-seller Citron Research called Chegg the "poster child of institutionalized academic cheating" as it shorted the stock.

21. Nonetheless, Chegg continued to grow amid rising demand for its online tutoring services and textbook rentals. When the COVID-19 pandemic hit in early 2020, that demand accelerated significantly as more students stayed at home:

| Revenue Growth (Y/Y) | FY 2019 | FY 2020 |
|---|---|---|
| Chegg Services | 31% | 57% |
| Required Materials | 17% | 56% |
| Total: | 28% | 57% |

22. Chegg Services ended 2020 with 6.6 million annual subscribers, compared to 3.9 million subscribers in 2019 and more than twice the 3.1 million subscribers the Company had in 2018. Chegg also narrowed its net losses in both years. In 2020, it posted a net loss of $6.2 million from $644.3 million in revenues. That progress made Chegg look like a promising growth stock, and its shares hit an all-time high of more than $115 per share.

23. The Company's statements surrounding its exponential increase in subscribers, revenues, and profits in 2020, which Chegg claimed was due to the strength of its business model and the Company's leaders' business acumen, were false and misleading. In reality, as students took more virtual courses and tests remotely with less supervision, students discovered they had open access to the Chegg Services apps 24/7, including for completing their homework, tests,

writing assignments, and even dissertations and exams. According to a recent Forbes exposé, a University of Florida student admitted that "If I don't want to learn the material, I use Chegg to get the answers" and a University of Portland student candidly admitted that "I use Chegg to blatantly cheat." Based thereon, Chegg reported quarter after quarter of growing subscribers, revenues, and profits during the Class Period, reporting 4.9 million subscribers as of the end of June 2021, a 31% year-over-year increase, and $198.5 million in quarterly revenue, also a 30% year-over-year increase.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING CLASS PERIOD STATEMENTS

24. Throughout the Class Period, defendants led investors to believe that the basis for Chegg's explosive growth was an "inevitable" shift in higher education and falsely touted that the Company was "in a unique position to impact the future of the higher education ecosystem" and that the primary cause of the Company's success was "[o]ur strong brand and momentum" which would supposedly allow Chegg "to continue to grow and take advantage of the ever-expanding opportunities in the learner economy." For example, in prepared remarks on May 4, 2020 announcing first quarter 2020 financial results in a Form 8-K filed with the SEC, CEO Rosensweig stated in pertinent part as follows:

> Our belief is that, in every industry, a crisis often accelerates the inevitable and that is what we are seeing happening now in higher education. The reality is students were already learning online, were under supported by their schools who had diminishing budgets, so that the need for virtual learning support was already expanding. But, almost overnight, when schools around the world had to move 100% online, that trend accelerated and has revealed the true potential and the value of what Chegg has to offer. The numbers say it best, and what they reflect is that students have an even greater need for high-quality, low-cost, personalized, and adaptive online education to help them learn and master their curriculum. As we think about the lasting impact on the future of higher education globally, we see these trends continuing.

25. Defendants made similarly favorable but false and misleading statements in connection with reporting the Company's second, third and fourth quarter 2020 results on, respectively, August 3, 2020, October 26, 202 and February 8, 2021, as well as in its provision of forward financial guidance. For example, the Company's February 8, 2021 release quoted Defendant Rosensweig stating in pertinent part as follows:

"We are incredibly grateful that, even in the midst of the many challenges of the past year, we outperformed all expectations and were able to continue to support students, in record numbers, around the world," said Dan Rosensweig, CEO & President of Chegg, Inc. "The transition to online and hybrid learning is inevitable and, with the accelerated trends that we are seeing, we have the confidence to raise our guidance for 2021."

26. Defendants' kept up the positive mantra as fiscal 2021 rolled out, emphasizing in the Company's May 3, 2021 release announcing first quarter 2021 results that: "We are in a unique position to impact the future of the higher education ecosystem" as "[o]ur strong brand and momentum will allow us to continue to grow and take advantage of the ever-expanding opportunities in the learner economy," and in its August 9, 2021 release announcing second quarter 2021 results that: "It is clear, wherever students are learning, whether online, in the classroom, or in a hybrid model, the value of Chegg is unquestionable."

27. Based on defendants' materially false and misleading Class Period statements, the market price of Chegg common stock more than tripled during the Class Period, reaching a high of more than $115 per share by February 16, 2021.

28. With the market price of Chegg stock artificially inflated, several of Chegg's senior officers and directors cashed-in, selling more than $90 million of their personally-held shares:

| Defendant | Date | Price | Shares | Proceeds |
|---|---|---|---|---|
| **Fillmore** | 5/18/2020 | $64.85 | 49,442 | $3,206,314 |
| | 6/3/2020 | $62.30 | 1,321 | $82,298 |
| | 9/2/2020 | $77.73 | 1,321 | $102,681 |
| | 12/3/2020 | $75.55 | 1,321 | $99,802 |
| | 3/3/2021 | $90.81 | 8,419 | $764,529 |
| | 3/3/2021 | $87.88 | 9,778 | $859,291 |
| | 3/3/2021 | $91.56 | 1,740 | $159,314 |
| | 3/3/2021 | $88.82 | 6,700 | $595,094 |
| | 3/3/2021 | $96.07 | 4,086 | $392,542 |
| | 3/3/2021 | $96.59 | 500 | $48,295 |
| | 3/3/2021 | $89.85 | 20,042 | $1,800,774 |
| | 3/3/2021 | $96.42 | 240 | $23,141 |
| | 4/13/2021 | $89.67 | 3,197 | $286,675 |
| | 4/13/2021 | $91.01 | 16,517 | $1,503,212 |
| | | | **124,624** | **$9,923,962** |
| **Rosensweig** | 5/14/2020 | $63.81 | 28,000 | $1,786,680 |
| | 6/29/2020 | $64.84 | 28,000 | $1,815,520 |
| | 7/7/2020 | $70.83 | 28,000 | $1,983,240 |
| | 8/5/2020 | $84.61 | 28,000 | $2,369,080 |
| | 9/22/2020 | $66.26 | 28,000 | $1,855,280 |
| | 10/12/2020 | $82.24 | 28,000 | $2,302,720 |
| | 11/19/2020 | $70.64 | 28,000 | $1,977,920 |
| | 12/11/2020 | $81.33 | 28,000 | $2,277,240 |
| | 1/7/2021 | $91.34 | 23,477 | $2,144,389 |
| | 1/7/2021 | $90.08 | 4,423 | $398,424 |
| | 1/7/2021 | $91.93 | 100 | $9,193 |
| | 2/22/2021 | $99.55 | 300,000 | $29,865,000 |
| | | | **552,000** | **$48,784,686** |
| **Sarnoff** | 5/13/2020 | $65.09 | 66,666 | $4,339,290 |
| | | | **66,666** | **$4,339,290** |
| **Schultz** | 5/5/2020 | $60.00 | 47,376 | $2,842,560 |
| | 6/22/2020 | $70.19 | 35,083 | $2,462,476 |
| | 7/31/2020 | $80.34 | 82,459 | $6,624,756 |
| | 12/21/2020 | $90.20 | 82,458 | $7,437,712 |
| | 4/23/2021 | $92.80 | 10,673 | $990,454 |
| | 4/23/2021 | $92.08 | 19,027 | $1,752,006 |
| | 4/23/2021 | $93.70 | 300 | $28,110 |
| | 4/26/2021 | $95.26 | 30,000 | $2,857,800 |
| | | | **307,376** | **$24,995,874** |
| **Tomasello** | 11/20/2020 | $71.45 | 32,016 | $2,287,543 |
| | | | **32,016** | **$2,287,543** |
| **Total** | | | **1,082,682** | **$90,331,355** |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

29.     The Company also took advantage of the artificially inflated trading price of Chegg stock by selling more than $1 billion of common stock to investors in the February 18, 2021 upsized secondary offering at the artificially inflated price of $102 per share.

30.     Meanwhile, students' use of Chegg apps to cheat on their assignments and exams had begun to draw the ire of high school and college administrators around the country.  For example, in December 2020, Texas A&M University officials sent an e-mail to hundreds of students in an online finance class noting that faculty had reported concerns of cheating "on a very large scale" to the Aggie Honor System Office after faculty noticed some students in the class answered online test questions too quickly.  Later, faculty discovered entire exams posted on the Chegg Services app.  Texas A&M's online learning platform, Canvas, tracks how long test questions are displayed on a student's screen and officials found "hundreds of examples" where students answered a question faster than it would take to read it.  In September 2021, Pearson, one of the largest educational content corporations in the world, sued Chegg for engaging in "massive" violation of Pearson's copyrights because Chegg had published, and sold, answers to the tests and practice questions in Pearson textbooks.  Schools also began spending millions of dollars on remote proctoring by private companies like Honorlock and Examity to surveil students while they take tests, including locking students' web browsers and watching them through their laptop cameras.  These material threats to Chegg's business model eviscerated the growth in demand for its subscription services as students returned to in-person school during the third quarter of 2021.

31.     Indeed, as schools began to reopen in 2021, Chegg began experiencing a dramatic post-pandemic slowdown:

| Revenue Growth (Y/Y) | Q1 2021 | Q2 2021 | Q3 2021 |
|---|---|---|---|
| Chegg Services | 62% | 38% | 23% |
| Required Materials | 15% | (8%) | (28%) |
| Total: | 51% | 30% | 12% |

32. Each of defendants' statements set forth in ¶¶ 24-26 were materially false and misleading when made because they misrepresented and/or omitted material facts necessary to make the statements made not misleading. These material facts, which were known to or deliberately disregarded by each of the defendants, were:

   (a) that Chegg's increase in subscribers, growth, and revenue had been a temporary effect of the COVID-19 pandemic that resulted in remote education for the vast majority of U.S. students and once the pandemic-related restrictions eased and students returned to campuses nationwide, Chegg's extraordinary growth trends would end.

   (b) that Chegg's subscriber and revenue growth were largely due to the facilitation of cheating – an unstable business proposition – rather than the strength of its business model or the acumen of its senior executives and directors; and

   (c) that as a result, the Company's current business metrics and financial prospects were not as strong as it had led the market to believe during the Class Period.

33. On November 1, 2021, after the close of trading, Chegg revealed its financial results for the first quarter in which students returned to campus across the United States. Chegg stunned investors with fewer-than-expected enrollments and declined to provide 2022 guidance. In fact, CEO and President Rosensweig admitted that defendants were aware of the slowdown in September 2021. In response to this news, analysts confirmed they were caught off guard and misled by defendants' prior statements:

- "We were negatively surprised by the US enrolment outturn given last year's COVID-19 impact, as well as by Chegg's gearing to enrolments, which heighten concerns on 2022." (BofA Securities Nov. 5, 2021)

- "With concerning commentary around the demand for Chegg solutions during this academic yr, Q4 rev guide 19% lower than prior implied Q4 guidance, and no 2022 guidance, we lower our 2022 revenue estimate by 18%, suggesting a covid reset, resulting in only 7% CY22 rev growth. Downgrade to EW, PT $53." (Morgan Stanley, Nov. 2, 2021)

34. On this news, the price of Chegg stock plummeted nearly 50% on unusually high

volume of more than 4,500% greater than the average daily volume over the preceding 30 trading days. By the close of trading that day, more than $4.3 billion in market capitalization had simply vanished.

## APPLICATION OF PRESUMPTION OF RELIANCE

35. Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are largely predicated upon omissions of material fact for which there was a duty to disclose.

36. Plaintiff also will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) The omissions and misrepresentations were material;

(c) Chegg common stock traded in an efficient market;

(d) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Chegg common stock; and

(e) Plaintiff and other members of the Class (as defined below) purchased Chegg common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

37. At all relevant times, the market for Chegg common stock was efficient for the following reasons, among others:

(a) As a regulated issuer, Chegg filed periodic public reports with the SEC; and

(b) Chegg regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

**LOSS CAUSATION/ECONOMIC LOSS**

38. During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Chegg common stock and operated as a fraud or deceit on Class Period purchasers of Chegg common stock. As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Chegg common stock fell precipitously, as the prior artificial inflation came out of the stock's price. As a result of their purchases of Chegg common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**CLASS ACTION ALLEGATIONS**

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Chegg common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and defendants' legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Chegg common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Chegg and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the Exchange Act was violated by defendants as alleged herein;

(b) whether statements made by defendants misrepresented material facts about the business and operations of Chegg; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

### For Violation of § 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants

45. Plaintiff incorporates ¶¶ 1-44 by reference.

46. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly

situated in connection with their purchases of Chegg common stock during the Class Period.

48.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Chegg common stock.  Plaintiff and the Class would not have purchased Chegg common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of § 20(a) of the Exchange Act
### Against All Defendants

49.     Plaintiff incorporates ¶¶1-48 by reference.

50.     The Individual Defendants acted as controlling persons of Chegg within the meaning of §20(a) of the Exchange Act.  By reason of their positions with the Company, and their ownership of Chegg common stock, the Individual Defendants had the power and authority to cause Chegg to engage in the wrongful conduct complained of herein.  Chegg controlled the Individual Defendants and all of the Company's employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

51.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

A.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

C.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  December 22, 2021

**JOHNSON FISTEL, LLP**
FRANK J. JOHNSON

*/s/ Frank J. Johnson*
501 West Broadway, Suite 800
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
FrankJ@johnsonfistel.com

Attorneys for Plaintiff

- 15 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# CERTIFICATION OF PLAINTIFF PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Steven Leventhal, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint with my counsel and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 12/9/2020 | 30 | $78.365 |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 10/21/2021 | 5 | $62.02 |
|  |  |  |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6. I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 12/22/2021

*Steven Leventhal*
751F34FA49214DA...

Steven Leventhal