ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
         – and –
DANIELLE S. MYERS (259916)
JENNIFER N. CARINGAL (286197)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHEGG, INC., et al., <br><br> Defendants. | Case No. 5:21-cv-09953-EJD <br><br> <u>CLASS ACTION</u> <br><br> NORTH ATLANTIC STATES CARPENTERS PENSION FUND AND GUARANTEED ANNUITY FUND'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS <br><br> DATE:      August 25, 2022 <br> TIME:      9:00 a.m. <br> CTRM:     4, 5th Floor <br> JUDGE:   Hon. Edward J. Davila |

4895-7592-1939.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................................1

II.     ARGUMENT ........................................................................................................................3

      A.     The Motley Group Is Not Eligible for Appointment as Lead Plaintiff....................3

           1.     KBC Has Not Evidenced Its Standing to Sue on Behalf of the
                 Funds.........................................................................................................4

           2.     Pompano P&F Cannot Resuscitate the Motley Group's Candidacy .........14

      B.     None of the Other Competing Movants Can Trigger the PSLRA
           Presumption Because Both Lack a Sufficiently Large Financial Interest .............15

      C.     The North Atlantic Funds Are the Presumptive Lead Plaintiff Candidate ............16

III.    CONCLUSION....................................................................................................................16

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)............................................................................................................7

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ......................................................................................13

*Baydale v. Am. Exp. Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)..............................................................11, 12, 14

*Craig v. CenturyLink Inc.*,
2017 WL 4768566 (W.D. La. Oct. 20, 2017) ...........................................................................13

*Cunha v. Hansen Nat. Corp.*,
2009 WL 2029797 (C.D. Cal. July 13, 2009)...........................................................................13

*Gen. Motors Corp. v. Cal. State Bd. of Equalization*,
815 F.2d 1305 (9th Cir. 1987) ....................................................................................................4

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) ..........................................................................13

*Gross v. AT & T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019) .................................................................. *passim*

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................................................................................................10

*Hill v. Silver Lake Group, L.L.C.*,
No. 4:20-cv-03766-JSW (N.D. Cal. Dec. 1, 2020).....................................................................10

*In re Bard Assocs., Inc.*,
2009 WL 4350780 (10th Cir. Dec. 2, 2009) ...............................................................................4

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .............................................................................................1, 3, 16

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ............................................................................3

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
2014 WL 3529677 .......................................................................................................................9

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ....................................................................................13

**Page**

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002).......................................................................................2, 14

*In re IMAX Sec. Litig.*,
    2009 WL 1905033 (S.D.N.Y. June 29, 2009) ........................................................................11

*In re LinkedIn User Priv. Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) ...................................................................................4

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) .........................................................................................1, 3, 13

*In re Netflix, Inc., Sec. Litig.*,
    2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ..............................................................6, 10, 14

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................................................5, 13

*In re: Royal Dutch/Shell Transp. Sec. Litig.*,
    No. 3:04-cv-00374-JAP-JJH (D.N.J. June 30, 2004) ...............................................................14

*In re SLM Corp. Sec. Litig.*,
    258 F.R.D. 112 (S.D.N.Y. 2009) ...........................................................................................11

*In re Vivendi Universal, S.A.*,
    605 F. Supp. 2d 570 (S.D.N.Y. 2009)...............................................................................11, 12

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) .....................................................................................4

*Nelsen v. King Cty.*,
    895 F.2d 1248 (9th Cir. 1990) ................................................................................................4

*Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*,
    2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021)......................................................................6, 12

*Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*,
    2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021).................................................................... *passim*

*S. Ferry LP No. 2 v. Killinger*,
    271 F.R.D. 653 (W.D. Wash. 2011) .......................................................................................11

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
    2012 WL 3638658 (D.N.J. June 14, 2012)..............................................................................14

**Page**

*Theodore v. PureCycle Techs., Inc.*,
   2021 WL 5259840 (M.D. Fla. Aug. 5, 2021) ........................................................................10

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................................................................16

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2006)...........................................................................................5, 6, 7

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
   2021 WL 533518 (S.D. Cal. Feb. 12, 2021) .........................................................................12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(2)(A)(iv)..............................................................................................................12
   §78u-4(a)(3)(B)(iii)..............................................................................................................15
   §78u-4(a)(3)(B)(iii)(I)...........................................................................................................1, 2
   §78u-4(a)(3)(B)(iii)(ll)(bb) ..................................................................................................13
   §78u-4(a)(3)(B)(vi) ..............................................................................................................13

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................................... *passim*
   Rule 23(a)................................................................................................................................3

## I.    INTRODUCTION

The North Atlantic States Carpenters Pension Fund and Guaranteed Annuity Fund (the "North Atlantic Funds") and eight other movants timely filed motions seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] The PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" who "has the largest financial interest in the relief sought by the class," *and* "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)). Only the North Atlantic Funds satisfy *both* of the PSLRA's requirements.

While KBC claims to have suffered the largest loss of any single entity that filed a lead plaintiff motion, it cannot be appointed lead plaintiff because it is subject to unique standing defenses which preclude the *prima facie* finding of typicality and adequacy mandated by the Ninth Circuit. *In re Mersho*, 6 F.4th 891, 898-99 (9th Cir. 2021); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Specifically, KBC itself did not suffer any losses on an investment in Chegg, Inc. securities. Rather, it is asserting as its own financial interest the losses of two distinct legal entities whose funds KBC manages pursuant to a management company agreement. KBC's assertion that it has "standing to bring claims on behalf of its funds under the terms of its investment management agreements with the funds and the prudential exception to the injury-in-fact requirement" (ECF No. 40 at 8) has been held to be insufficient to allow KBC's appointment as lead plaintiff. *See Gross v. AT & T Inc.*, 2019 WL 3500496, at *3 (S.D.N.Y. July 31, 2019) (examining the relevant investment management agreements and finding that "KBC faces a non-speculative risk that Defendants may succeed in mounting a standing challenge, possibly premised on foreign law; the possibility of that defense, at minimum, significantly detracts from KBC's ability to represent the putative class").

---

[1] The movants are: (1) the North Atlantic Funds (ECF No. 60); (2) KBC Asset Management NV ("KBC") and Pompano Beach Police & Firefighters' Retirement System ("Pompano P&F") (collectively, the "Motley Group") (ECF No. 40); (3) David Kennedy (ECF No. 52); (4) Construction Industry and Laborers Joint Pension Trust for Southern Nevada Plan A, International Brotherhood of Electrical Workers Local Union #357 Pension Trust Fund – Plan A, and City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust (ECF No. 30), which have since withdrawn their motion (ECF No. 74); (5) Ohio Carpenters Pension Fund (ECF No. 20); (6) Randy Myles (ECF No. 67); (7) Nicholas Reiter (ECF No. 36); (8) Ty Truax (ECF No. 51); and (9) Angel Hovsepian (ECF No. 26).

Hoping to distance itself from the holding in *AT & T*, KBC took two new steps here, neither of which cure its disqualifying defects.

First, while KBC attaches a "Declaration of Assignment" to its motion that it claims is a valid assignment of claims from the funds at issue, these "assignments" are not executed by anyone with authority to bind the funds under the funds' own Articles of Association. *See* ECF No. 41-5. Moreover, KBC's "Declaration of Assignment " is *identical* to one that another federal court found – just four months ago – to be insufficient to enable a similarly situated European asset manager to satisfy Rule 23's typicality and adequacy at the lead plaintiff stage. *See Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 5051649, at *3 (S.D.N.Y. Nov. 1, 2021) ("*Array II*"). As such, KBC's impaired standing is only aggravated by its Declaration of Assignment, which creates "a serious risk that [KBC] will be subject to unique standing defenses regarding the invalidity of the Assignment Declaration for failing to convey a property interest." *Id.* at *2.

Second, KBC has enlisted co-movant Pompano P&F, a domestic public fund that is one one-thousandth its size and whose losses are a tiny fraction of KBC's losses, to join its motion to mitigate the risk associated with KBC's defective standing showing. KBC does so under the mistaken belief that the Motley Group can rely on the KBC funds' losses to satisfy the PSLRA's "largest financial interest requirement," while leaving it to Pompano P&F to "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). This maneuver is precisely the one that another court warned against (and rejected) years ago because "the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002).

Because the Motley Group's motion fails to make a *prima facie* showing regarding the Rule 23 requirements, it is ineligible for the PSLRA's most adequate plaintiff presumption.

The North Atlantic Funds have the largest financial interest of any qualified movant that also satisfies the Rule 23 requirements. The North Atlantic Funds' motion should be granted and the competing motions should be denied.

## II.    ARGUMENT

"The 'most capable plaintiff' – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, *so long as* he meets the requirements of Rule 23." *Cavanaugh*, 306 F.3d. at 729; *Mersho*, 6 F.4th at 898-99. [2]  To identify the presumptively most adequate plaintiff, the Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30; *Mersho*, 6 F.4th at 901 n.3.  It "must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730, 732 (emphasis in original).  The "district court has latitude as to what information it will consider in determining typicality and adequacy." *Id.* at 732.

### A.    The Motley Group Is Not Eligible for Appointment as Lead Plaintiff

The Motley Group *and* each of its members do not trigger the PSLRA rebuttable presumption as they failed to timely "provide[] information that satisfies the[] [statutory] requirements," that is, "information . . . in [their] pleadings and declarations" sufficient to demonstrate they both possess "the largest financial stake" and satisfy "the Rule 23(a) criteria." *Cavanaugh*, 306 F.3d at 730; *Mersho*, 6 F.4th at 898-900 (same); *In re Cloudera, Inc. Sec. Litig*., 2019 WL 6842021, at *3 (N.D. Cal. Dec. 16, 2019) ("The Court determines that, although the Boston Group has the largest financial interest in the litigation, it does not meet the adequacy requirement of Rule 23 [and is not the presumptive lead plaintiff].").

And while KBC *claims* to have the largest financial interest of any single moving entity in this litigation, it did not actually own or purchase on its own behalf any Chegg shares during the Class Period, nor has it demonstrated that it has standing to sue on behalf of the funds that it manages.  While KBC offers the Court three separate (and self-contradictory) theories for its standing, all three have been rejected in identical or analogous circumstances, including with respect to KBC itself.

---

[2]    All emphasis is added and all citations and footnotes are omitted unless otherwise indicated.

### 1.    KBC Has Not Evidenced Its Standing to Sue on Behalf of the Funds

It is axiomatic that to serve as lead plaintiff, one must have standing to assert claims on behalf of the putative class. *See Nelsen v. King Cty.*, 895 F.2d 1248, 1250 (9th Cir. 1990) ("If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'").[3]  "To establish constitutional standing, a plaintiff must demonstrate that it has **personally** suffered an injury in fact . . . ." *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010) ("'Standing is a threshold inquiry and is particularly important in securities litigation, where strict application of standing principles is needed to avoid vexatious litigation and abusive discovery.'").  And, as this Court has previously recognized, "[t]he party seeking to invoke federal court jurisdiction has the burden of establishing the constitutional elements of standing." *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013); *see also In re Bard Assocs., Inc.*, 2009 WL 4350780, at *3 (10th Cir. Dec. 2, 2009) (upholding district court's adoption of "a bright line rule requiring lead plaintiff movants to establish Article III standing by the time the lead plaintiff motions are due").

KBC is based in Brussels, Belgium.  KBC is a wholly-owned subsidiary of KBC Bank, NV, which is itself a wholly-owned subsidiary of KBC Group, NV.[4]  KBC is an asset management company whose primary role appears to be that of a money manager for the portfolios of various KBC Group, NV's professional and retail investor clients.  One of the investment vehicles available to KBC Group, NV's clients are investments funds managed by KBC.  *Id.*  KBC does not dispute that it did not purchase any Chegg securities on its own behalf.  Nor does KBC dispute that the entirety of the roughly $6 million in losses it claims are based on the losses of KBC ECO FUND –

---

[3]    Notably, this is true even when the entities at issue are affiliated.  The Ninth Circuit has "dismissed a parent corporation's action because the parent alleged injury flowing from violations of its subsidiary's rights, not its own." *Gen. Motors Corp. v. Cal. State Bd. of Equalization*, 815 F.2d 1305, 1308 (9th Cir. 1987).

[4]    KBC Group N.V. purports to be an "an 'integrated bank-insurance group' (a group of companies that, through close cooperation, create and distribute banking, investment and insurance products and provide financial services)."  *See* https://multimediafiles.kbcgroup.eu/ng/published /AM/PDF/ALG/kbc-am-privacy-statement.pdf (accessed Mar. 6, 2022);  Corporate Governance Charter KBC Group, *available at* https://www.kbc.com/en/investor-relations/information-on-kbc-bank/other-information.html.

Impact Investing and KBC EQUITY FUND – Trends, which are separate open-ended investment companies organized under Belgian law. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2006) (holding that an investment advisor such as KBC "lacks constitutional standing to bring suit for violations of the federal securities laws in its own name but on behalf of its clients").[5]

In a footnote of its lead plaintiff memorandum, the Motley Group advances three bases for KBC's standing:

> [1] KBC has standing to bring claims on behalf of its funds under the terms of its investment management agreements with the funds[;] and
>
> [2] the prudential exception to the injury-in-fact requirement[; and]
>
> [3] for the avoidance of doubt, it []obtained valid assignments of claim from its funds, executed before the filing of this motion.

ECF No. 40 at 8 n.5.

As KBC is itself aware, its first two theories of standing are non-starters as they have been rejected at the lead plaintiff stage by a federal district court which – after examining the investment management agreements (which KBC has declined to produce to this Court despite quoting from them) – found that "[n]one of the three management agreements confers on KBC any type of property right in legal claims – the agreements instead merely authorize and require KBC to exercise the Funds' rights on their behalf. KBC's relationship to the Funds is therefore not materially different from the agency relationship in *Huff*." *AT & T*, 2019 WL 3500496, at \*3. KBC maintained that its management agreements were sufficient under Belgian law to give it standing, but Judge Valerie Caproni determined "the principle that [United States] federal law governs Article III standing (like any other doctrine dictated by the United States Constitution) is elementary" and that "Belgian law therefore cannot alter the legal standard by which Article III standing is determined, *i.e*., the requirement that non-beneficial owners of securities must have a property right in the claims

---

[5]    *See In re Network Assocs., Inc., Sec. Litig*., 76 F. Supp. 2d 1017, 1028 (N.D. Cal. 1999) ("KBC Bank & Holding Company, located in Belgium, owns KBC Bank (Belgium) and Kredietbank Luxembourg (also referred to as KB Luxembourg). By contract, KBC Bank Belgium provides administrative services to a series of KBC Funds, such as a 'Technology' fund and a 'US Small Caps' fund and so on. As with ING, these funds are the actual owners of the Network shares.").

being asserted." *Id*. at *2. As such, there is no independent basis under which "the terms of [KBC's] investment management agreements with the funds" (ECF No. 40 at 8) could allow KBC to skirt the injury-in-fact requirement unless an exception applied or it received a valid assignment.[6] Accordingly, KBC's investment management agreement theory of standing fails.

KBC's second basis for standing is the prudential exception to the injury-in-fact requirement, which permits third-party standing only "where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) ***a barrier to the injured party's ability to assert its own interests***." *Huff*, 549 F.3d at 109 (quoting Supreme Court precedent). KBC has not even ***attempted*** to make the showing required of it to invoke this form of third-party standing. *See Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 4298191, at *5 (S.D.N.Y. Sept. 21, 2021) ("*Array I*"), *adhered to on recons. by Array II*, 2021 WL 5051649 ("As noted above, Erste AM has failed even to establish any barriers that prevented Erste 566 from bring[ing] the securities claims for the shares that *Erste 566* bought and sold."). What's more, the Court in *AT & T* – after reluctantly considering expert declarations – found that "[a]lthough KBC appears to have a close relationship to the Funds, there is no apparent barrier to the Funds' ability to assert their own interests." 2019 WL 3500496, at *3 ("While the management agreements appear to require KBC to exercise the Funds' rights faithfully, the Court sees no provision preventing the Funds from exercising their rights directly; nor does KBC's expert conclude as much under Belgian law."). Accordingly, even if KBC had attempted to meet its burden of demonstrating third-party standing in its opening papers (which it did not), it does not appear from its own expert declarations in *AT & T* that there is anything precluding its funds from bringing suit directly.

KBC's third basis for its standing is its assertion that KBC "obtained valid assignments of claim from its funds, executed before the filing of this motion." ECF No. 40 at 8 n.5. The problem for KBC is that its so-called "Declaration of Assignment" appears to be little more than a "power of attorney" statement, falling short of the requirements for an assignment. *Compare* ECF No. 41-5

---

[6] *See also In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("The Court finds a substantial likelihood that a unique defense could be raised against a member of the Fish Group. Arkansas Teacher-Boston points out that Comstock is not actually the legal entity who held the account on which her calculation of losses is based. Rather, the Comstock Trust is.").

*with Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997) (holding that "[i]n order to make a valid assignment, the owner must manifest 'an intention to make the assignee the owner of [the] claim'" and that a "power of attorney" – the "provision by which one person grants another the power to sue on and collect on a claim" – is not equivalent to an assignment and is therefore insufficient to enable the grantee to bring a claim in their own name for standing purposes). Moreover, as with its claim of possessing third-party standing, KBC has failed to even attempt to meet its burden of providing the Court with any factual or legal basis to conclude that its "Declaration of Assignment" is a valid and legally binding assignment under Belgian law and U.S. federal law.

*Array II* is particularly on point here. The court was tasked with determining whether an Austrian asset manager claiming a financial interest of nearly $5 million (more than 3 times larger than the next largest movant) was entitled to presumptive lead plaintiff status in light of the fact that it claimed standing based on an assignment it received from one of its managed funds. 2021 WL 5051649. In essence, the question before Judge Victor Marrero in *Array II* was whether the foreign asset manager's "Declaration of Assignment" constituted a valid assignment of claim under the relevant jurisdiction's laws such that the foreign asset manager would not be susceptible to non-speculative standing defenses. *Id.* at *2 (observing that while "[f]oreign law does not 'alter the legal standard by which Article III standing is determined, *i.e.*, the requirement that non-beneficial owners of securities must have a property right in the claims being asserted[,]' . . . foreign law is relevant to 'establish[ing] the existence of the requisite property right'"). The court found that "a serious risk" existed that the foreign asset manager "will be subject to unique standing defenses regarding the invalidity of the Assignment Declaration for failing to convey a property interest" and because it had "not established that the Assignment Declaration was sufficient under Austrian law to confer Erste AM with the requisite property interest under *Huff*." *Id.* Coincidentally, the "Declaration of Assignment" analyzed and rejected by Judge Marrero in *Array II* is ***identical*** to the "Declaration of Assignment" offered by KBC here:

## "Declaration of Assignment" Deemed Insufficient in *Array II*

**DECLARATION OF ASSIGNMENT BY Erste AM Fonds Nr. 566 TO ERSTE ASSET MANAGEMENT GMBH**

We, Winfried Buchbauer and Magdalena Reischl, hereby declare as follows:

1.    We are the representatives of Erste AM Fonds Nr. 566 (the "Fund") and we have personal knowledge of all matters stated herein.

2.    The Fund is governed by Austrian law.

3.    On July 13, 2021, Erste Asset Management GmbH ("Erste AM") will file a Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Motion") in an action against Array Technologies, Inc. (the "Lawsuit").

4.    Erste AM has authority to file the Motion, to seek appointment as Lead Plaintiff in the Lawsuit, to pursue the Lawsuit, and to act on behalf of the Fund.

5.    On behalf of the Fund, we hereby execute and submit this declaration: (a) declaring that the Fund will be bound by the result of the Motion and the Lawsuit; and (b) assigning to Erste AM any and all claims of the Fund against the defendants in the Lawsuit.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Vienna, Austria on this 12th day of July, 2021.

## "Declaration of Assignment" Offered by KBC in This Action

**DECLARATION OF ASSIGNMENT BY KBC EQUITY FUND TO KBC ASSET MANAGEMENT NV**

We, Frank Van de Vel and Jürgen Verschaeve, hereby declare as follows:

1.    We are the representatives of the KBC EQUITY FUND (the "Fund") and we have personal knowledge of all matters stated herein.

2.    The Fund is governed by Belgian law.

3.    On or about February 22, 2022, KBC Asset Management NV ("KBC") will file a Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Motion") in an action against Chegg, Inc. et al. (the "Lawsuit").

4.    KBC has authority, under its investment management agreement, to file the Motion, to seek appointment as Lead Plaintiff in the Lawsuit, to pursue the Lawsuit, and to act on behalf of the Fund.

On behalf of the Fund, we hereby execute and submit this declaration: (a) declaring that the Fund will be bound by the result of the Motion and the Lawsuit; and (b) assigning to KBC any and all claims of the Fund and its sub-funds against the defendants in the Lawsuit.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Brussels, Belgium this 17th day of February 2022.

NORTH ATLANTIC STATES CARPENTERS PENSION FUND & GUARANTEED ANNUITY FUND'S MEMO OF LAW IN OPP TO COMPETING LEAD PLTF MOTIONS - 5:21-cv-09953-EJD          - 8 -
4895-7592-1939.v1

As with the foreign asset manager that proffered an identical "Declaration of Assignment" in *Array II*, here "it is unclear whether [KBC] was granted a property interest in the claims under [Belgian] law." 2021 WL 5051649, at *2. "Given this uncertainty, [] there is a non-speculative risk that [KBC's] standing could be successfully challenged." *Id.*

KBC's failure to make the required showing is further underscored by the fact that KBC's "Declaration of Assignment" is not signed by the assignors (*i.e.*, KBC ECO FUND and KBC EQUITY FUND). Rather, it is signed by *KBC itself*, claiming that KBC is an "authorized signatory for [KBC ECO FUND/ KBC EQUITY FUND] pursuant to a management company agreement." ECF No. 41-5. Here too KBC fails to provide the Court with the relevant basis (*i.e.*, its management company agreements) upon which this claim of standing hinges. That said, a review of the "Management Company Agreement" between KBC and its fund produced in the *AT & T* litigation does not confer any rights upon the asset manager to cede the fund's property interests to itself. *See* Declaration of Michael Albert in Support of North Atlantic States Carpenters Pension Fund and Guaranteed Annuity Fund's Memorandum of Law in Opposition to Competing Lead Plaintiff Motions ("Albert Opp. Decl."), Ex. 1. *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2014 WL 3529677, at *2 ("'distinct legal entities [with a] separate nature cannot simply be ignored when inconvenient'"). What's more, the KBC ECO FUND and KBC EQUITY FUND's respective Articles of Association suggest that the *only* people that are able to validly represent each fund "in court" or "vis-à-vis third parties" without a "special power of attorney" are two of the fund's directors:

> Article 11. Representation of the [Fund]
>
> The [Fund] shall be validly represented vis-à-vis third parties and in court as plaintiff or defendant by two directors acting jointly.
>
> The [Fund] shall also be validly represented by the representative appointed by special power of attorney.

*See* Albert Opp. Decl., Ex. 2. And while each fund has a seven-person board of directors (three of whom overlap), these individuals did *not* execute the "Declaration of Assignment." *See id.*, Ex. 3 at 5 of 11 ("Board of directors of the Bevek [KBC EQUITY FUND]"); *id.* at 10 of 11 ("Board of directors of the Bevek [KBC ECO FUND]"). What this means for the class is that KBC's standing

would not only hinge on whether the plain text of the assignment "granted a property interest in the claims under [Belgian] law," but also whether KBC (and particularly signatories Frank Van de Vel and Jürgen Verschaeve) were authorized to cede away the funds' property interest "pursuant to a management company agreement." *Array II*, 2021 WL 5051649, at *2; ECF No. 41-5.  KBC failed to timely provide the Court with the facts or controlling Belgian law that would allow the Court to make the determination required of it that KBC's "Declaration of Assignment" is sufficient to establish KBC's standing and to negate KBC's risk of facing standing challenges later in the litigation.

The unanswered questions regarding KBC's defective standing precludes its appointment as lead plaintiff.  Indeed, "[e]ven if [KBC] can ultimately show that the assignments were valid and confer standing, [KBC] undoubtedly has different defenses than the other class members" and "[t]he litigation over [KBC]'s standing may prejudice the class at the class certification stage and would, in any case, subject it to highly individualized determinations inapplicable to the rest of the class." *Hill v. Silver Lake Group, L.L.C.*, No. 4:20-cv-03766-JSW, ECF No. 36 at 5-6 (N.D. Cal. Dec. 1, 2020).  As such, there is no requirement at this early stage to "prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *Netflix*, 2012 WL 1496171 at *5.  As Judge Conti recognized, "[t]he point . . .  is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Id.*  (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'")).  Indeed, it is this very "***potential*** risk[]" that led to KBC's disqualification in *AT & T*. 2019 WL 3500496, at *2 ("Before disqualifying a potential lead plaintiff on [the] basis [of defective standing], the Court ***need not conclude that the defense is likely to or will succeed***.  Rather, 'many courts have rejected appointments of lead plaintiffs based on ***potential*** risks.'") (collecting cases) (emphasis added and in original); *Theodore v. PureCycle Techs., Inc.*, 2021 WL 5259840, at *3 (M.D. Fla. Aug. 5, 2021) (declining to appoint foreign asset manager with $1.8 million in losses because it "does not state that it bought PureCycle shares.  It

states that its fund incurred a loss, but does not establish its relationship to this fund" and because its "allegations regarding an assignment from the fund are conclusory and provide no meaningful information.").[7]

The authority cited by the Motley Group only reinforces the fact that it should **not** be appointed lead plaintiff here. In *In In re Vivendi Universal, S.A.*, 605 F. Supp. 2d 570, 579 (S.D.N.Y. 2009), defendants brought a summary judgment motion challenging the standing of foreign plaintiffs in an individual (non-class) action. The court largely **granted** defendants' motion with respect to the asset managers bringing suit on behalf of entities which "have a legal personality and ultimate control over the authority delegated or assigned to management companies," while denying summary judgment with respect to funds that "have no legal personality and require a management company to take virtually all actions on their behalf, including filing lawsuits." *Id.* at 580. Of KBC's six funds, five fell into the former category and one fell into the latter. KBC responded to the summary judgment motion "by conceding that KBC lacks standing with respect to five of the six funds and that it intends to obtain assignments." *Id.* While the court examined "a variety of Belgian investment entities," it found KBC's sixth fund did not have a legal personality of its own and qualified for the prudential exception for third-party standing. *Id*.

Here, there is no dispute that KBC ECO FUND and KBC EQUITY FUND are open-ended investment companies ("sicavs" in French or "beveks" in Dutch) which have legal title to the assets (including shares of Chegg) as well as the authority to commence a lawsuit to recover damages on

---

[7] *S. Ferry LP No. 2 v. Killinger,* 271 F.R.D. 653, 659 (W.D. Wash. 2011) (denying certification of foreign asset manager as class representative in a PSLRA case, finding that the asset manager's "standing presents a unique legal issue that could ultimately severely prejudice the class" because "[e]ven if the Court were to conclude that the assignments cured [KBC's] standing deficiency, the Court of Appeals could hold otherwise"); *In re IMAX Sec. Litig.*, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (holding investment advisor was an atypical and inadequate class representative, regardless of whether assignments cured its deficient standing, because its standing issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding investment advisor did not satisfy the adequacy or typicality requirements); *Baydale v. Am. Exp. Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (denying lead plaintiff motion where movant raised complex issues of foreign law that would cause a "needless litigation sideshow" that could be averted by selecting another lead plaintiff).

their own.   While the court in *Array I* found *Vivendi* " unpersuasive for several reasons," its observation regarding the stage of the litigation is particularly pertinent here:

> *Vivendi* was on the cusp of trial, not at the lead plaintiff stage.  Appointing [KBC], in spite of serious questions about its standing, risks severely prejudicing the Class.  These issues and their attendant risks can be avoided at this early stage by appointing another lead plaintiff that is capable of adequately representing the Class.

*Array I*, 2021 WL 4298191, at \*5; *Baydale*, 2009 WL 2603140, at \*4 ("In contrast to *Vivendi*, where the parties were on the cusp of trial, that ancillary issue, now revealed, can be circumvented at this early stage by selecting another lead plaintiff.").[8]

The uncertainty created by KBC over its standing and who the real party in interest is before the Court also creates a panoply of practical challenges with respect to its compliance with the PSLRA and the local rules of this Court:

- If KBC was properly assigned the claims, why did it fail to disclose KBC Bank, NV and KBC Group, NV as interested entities pursuant to Civil L.R. 3-15? *See* ECF No. 42 at 2 ("[O]ther than the named parties and proposed lead plaintiff KBC Asset Management NV and the Pompano Beach Police & Firefighters' Retirement System, there is no such interest to report.").  Alternatively, if KBC is contractually bound to remit litigation proceeds back to the funds, why aren't the funds disclosed as having an interest in the outcome of the litigation?

- If KBC (rather than the funds) are the plaintiffs here, why did KBC fail to attest that it has disclosed all of its transactions in Chegg's securities, as required by the PSLRA? *Compare* 15 U.S.C. §78u-4(a)(2)(A)(iv) (requiring each plaintiff seeking to serve as a representative party to provide a sworn certification that "sets forth all of the transactions *of the plaintiff* in the security that is the subject of the complaint during the class period specified in the complaint") *with* ECF No. 41-1 at ¶8 ("Attached hereto as Schedule A is a complete listing of all transactions *the Funds* made during the Class Period in the security that is  the subject of this litigation. ***KBC*** will provide records of those transactions upon request."); *see also Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at \*4 (S.D. Cal. Feb. 12,

---

[8]    KBC has failed to provide the Court core information regarding the legitimacy under applicable Belgian law of KBC's "Declaration of Assignment," including the scope and revocability of the claims purportedly being assigned.  Can the funds revoke the assignment unilaterally?  Does Belgian law allow for an assignee (Klaus Vandewalle) to receive an assignment before the assignors (Frank Van de Vel and Jürgen Verschaeve) granted it?  *See* ECF No. 41-5 at 2.  Will any litigation proceeds recovered by KBC have to be remitted back to the relevant fund or sub-fund?  Are KBC EQUITY FUND's sub-funds standalone entities that must each execute their own assignments, in their own names?  *See* Albert Opp. Decl., Ex. 3 at 6 of 11("In the relationship between the investors, each sub-fund will be viewed as a separate entity.  Investors have a right only to the assets of and return from the sub-fund in which they have invested.  The liabilities of each individual sub-fund are covered only by the assets of that sub-fund."); *id.* at 10 of 11.

2021) (declining to appoint as lead plaintiff movant unable to "affirm [its] transactions without any equivocation").

- Why have KBC and the funds declined to comply with Civil L.R. 3-7(c) requiring it to "state that the party has reviewed a complaint filed in the action and either: (1) Adopts its allegations or; if not, (2) Specifies the allegations the party intends to assert"? If an amended complaint asserted claims against not-yet-named defendants, would KBC still have standing to sue those presently-unnamed defendants under the vague language of its "Declaration of Assignment?" *See* ECF No. 41-5 ("assigning to KBC any and all claims of the Fund and its sub-funds against the defendants in the Lawsuit").

- Should the Court's assessment of the PSLRA's "professional plaintiff" provision be limited in this case to only the securities cases that KBC ECO FUND/KBC EQUITY FUND sought to serve as a lead plaintiff during the last three years, or should it apply to all cases in which KBC sought to serve as a lead plaintiff (regardless of which particular fund)? *See* ECF No. 41-1 at ¶6; *see also Craig v. CenturyLink Inc.*, 2017 WL 4768566, at *4 (W.D. La. Oct. 20, 2017) ("KBC shows in its Certification (Doc. 245-3) that it has sought to serve as lead counsel in 13 SEC class actions within the last 3 years, and a cursory review of those cases shows KBC was appointed Lead Plaintiff in 8 of those cases. Therefore, KBC should be disqualified from being appointed lead counsel in this case pursuant to 15 U.S.C. §78u-4(a)(3)(B)(vi).").[9]

On the present record, it is therefore impossible for the Court to even begin to attempt to make the typicality and adequacy determination required by the PSLRA. *Mersho*, 6 F.4th at 899 ("the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality"). Without timely evidencing its standing, KBC has not made the required Rule 23 showing and cannot trigger the PSLRA's presumption. *See Gross v. AT&T Inc.*, 2019 WL 7759222, at *1 (S.D.N.Y. June 24, 2019) ("The Court finds that KBC is not an adequate lead plaintiff because it is subject to a unique defense. 15 U.S.C. §78u-4(a)(3)(B)(iii)(ll)(bb)."); *Network Assocs.*, 76 F. Supp. 2d, at 1017 ("[It] seems clear that neither KBC or ING could satisfy the requirements of Rule 23 and neither would fairly and adequately protect the interests of the class. In other words, neither can qualify as the presumptive

---

[9]    *Compare, e.g.*, *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (permitting institutional investor to avoid the bar of the PSLRA's professional plaintiff provision because it was "the only acceptable institutional investor" before the court) *with Cunha v. Hansen Nat. Corp.*, 2009 WL 2029797, at *7 (C.D. Cal. July 13, 2009) (declining to lift the PSLRA's professional plaintiff bar for an institutional investor "[g]iven the presence of an alternative institutional investor" who had not served as lead plaintiff in more than five cases in three years); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156-57 (N.D. Cal. 1999) (same).

lead plaintiff and, if even they could, they have been proven unfit under Section 78u-4(a)(3)(B)(iii)(II).")); *In re: Royal Dutch/Shell Transp. Sec. Litig.*, No. 3:04-cv-00374-JAP-JJH, ECF No. 17 at 38 (D.N.J. June 30, 2004) ("With respect to the aforementioned challenges, the Court finds that while any one might not be dispositive, when taken as a whole, the objections form a solid, persuasive basis for rebutting KBC-AM's status as presumptive lead plaintiff."); *AT & T*, 2019 WL 3500496, at *3 ("To avail itself of the benefits of maintaining an action in this Court, however, KBC must satisfy the standing requirement set forth in Article III and as construed by the Second Circuit. On the record before the Court, KBC faces a non-speculative risk that Defendants may succeed in mounting a standing challenge, possibly premised on foreign law; the possibility of that defense, at minimum, significantly detracts from KBC's ability to represent the putative class.").

### 2. Pompano P&F Cannot Resuscitate the Motley Group's Candidacy

Aware of KBC's inability (or unwillingness) to make the requisite showing of standing at the lead plaintiff stage, its counsel "attempts to assuage any fears relating to its standing to sue" by grouping KBC with Pompano P&F – an entity that asserts a loss less than 3% of the size of KBC's claimed loss – and styling themselves as a group. *Baydale*, 2009 WL 2603140, at *4. There are several problems with this maneuver.

As an initial matter, the law is clear that "the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies." *Enron*, 206 F.R.D. at 457; *Netflix*, 2012 WL 1496171, at *5 (declining to appoint a group when only one of its members was subject to unique standing defenses); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, 2012 WL 3638658, at *10 (D.N.J. June 14, 2012) ("even if this Court were to find that the [some of the group members] satisfied the constitutional requirements of standing, the other Prosperity Group members' lack of standing would still prevent the Prosperity Group's appointment as lead plaintiff").

More to the point, if the Court were to appoint KBC and Pompano P&F as lead plaintiff and later conclude that KBC does not possess the requisite standing, an entity with the smallest loss would be serving as lead plaintiff. To make matters worse, pursuant to the Motley Group's own evidence, KBC is the *sole* decider in the event of any disagreement between the two movants. ECF

No. 41-3 at ¶10 ("[If]f a consensus is not reached, KBC, having the larger financial interest, shall have ultimate authority on the decision."). Accordingly, if this Motley Group were appointed, class members would be represented by a movant that lacks the largest financial interest and is not entitled to exercise the discretion or decision-making authority envisioned by the PSLRA (Pompano P&F) while a movant with deficient standing (KBC) would be able to dictate absolute control of the case. Such a result would be antithetical to the PSLRA's purpose to appoint the movant with the "largest financial interest" that is not "subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii).

In sum, KBC has not met its burden of demonstrating standing and therefore does not meet the Rule 23 requirements and Pompano P&F does not meet the largest financial interest requirement. The Court should not permit these two strangers to do together what they cannot do individually. Their motion should be denied.

### B. None of the Other Competing Movants Can Trigger the PSLRA Presumption Because They Lack a Sufficiently Large Financial Interest

The North Atlantic Funds have the largest financial interest of the remaining movants:

| Movant | Financial Interest |
|---|---|
| ~~The Motley Group~~ | ~~$5,908,179 (KBC) + $158,950 (Pompano P&F) (ECF No. 41-2)~~ |
| North Atlantic Funds | $2,169,841.43 (ECF No. 60-4) |
| David Kennedy | $1,037,980 (ECF No. 52-4) |
| Construction Industry and Laborers Joint Pension Trust for Southern Nevada Plan A, International Brotherhood of Electrical Workers Local Union #357 Pension Trust Fund – Plan A, and City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust | $839,236.77 (ECF No. 30-3) |
| Ohio Carpenters Pension Fund | $323,429.98 (ECF No. 20-3) |
| Randy Myles | $126,000 (ECF No. 67-4) |
| Nicholas Reiter | $25,062.52 (ECF No. 37-3) |
| Ty Truax | $8,284 (ECF No. 51-2) |
| Angel Hovsepian | $6,079.33 (ECF No. 27-3) |

And, as the North Atlantic Funds' motion demonstrates, it satisfies the Rule 23 requirements and selected qualified counsel. *See* ECF No. 60 at 4-6. Therefore, the Court need not look further than

the North Atlantic Funds.  *Cavanaugh,* 306 F.3d 726, at 732.  The competing motions should be denied.

### C.    The North Atlantic Funds Are the Presumptive Lead Plaintiff Candidate

The North Atlantic Funds not only suffered a substantial, seven-figure loss, they satisfy the Rule 23 requirements, unquestionably have standing to pursue their own losses,  and are not subject to the PSLRA's presumptive bar on repeat litigants.  "[O]ther than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against the North Atlantic Funds' appointment. *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*5 (D. Ariz. Apr. 7, 2008) (appointing pension fund as lead plaintiff despite the fact that it did not suffer the greatest financial interest because it "is the first [movant] to meet [the PSLRA's] standards").

## III.    CONCLUSION

The Motley Group cannot serve as lead plaintiff because KBC has failed to evidence its standing to bring suit on behalf of itself or its managed funds.  All other competing movants suffered a smaller loss than the North Atlantic Funds and cannot trigger the statutory presumption.  Consequently, all eight competing motions should be denied.  The North Atlantic Funds' motion should be granted.

DATED:  March 8, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JENNIFER N. CARINGAL
MICHAEL ALBERT
JUAN CARLOS SANCHEZ

s/ Michael Albert
MICHAEL ALBERT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 8, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Michael Albert
MICHAEL ALBERT

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  malbert@rgrdlaw.com

4895-7592-1939.v1

# Mailing Information for a Case 5:21-cv-09953-EJD Leventhal v. Chegg, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,kayoung@fenwick.com,anolen@fenwick.com,jennifer-bretan-2534@ecf.pacerpro.com

- **David Bricker**
  dbricker@tenlaw.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Daniel C. Girard**
  dgirard@girardsharp.com,avongoetz@girardsharp.com,5804895420@filings.docketbird.com

- **Frank James Johnson**
  frankj@johnsonfistel.com,michaelf@johnsonfistel.com,kristeno@johnsonfistel.com,ceciliar@johnsonfistel.com,paralegal@johnsonfistel.com,brettm@johnsonfistel.cc

- **Jennifer Lauren Joost**
  jjoost@ktmc.com,1759490420@filings.docketbird.com

- **David Reuven Lev Kaplan**
  dkaplan@saxenawhite.com,e-file@saxenawhite.com,lmix@saxenawhite.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,dean-kristy-2035@ecf.pacerpro.com,lkelleybourne@fenwick.com

- **Felix Shih-Young Lee**
  flee@fenwick.com,tmartin@fenwick.com,felix-lee-2591@ecf.pacerpro.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Christopher Francis Moriarty**
  cmoriarty@motleyrice.com,lmclaughlin@motleyrice.com,kweil@motleyrice.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,lobas@pomlaw.com,abarbosa@pomlaw.co

- **Adam E. Polk**
  apolk@girardsharp.com,avongoetz@girardsharp.com,3768906420@filings.docketbird.com

- **Sofia Ritala**
  sritala@fenwick.com,jtosches@fenwick.com,sofia-ritala-8254@ecf.pacerpro.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Alex R. Straus**
  astraus@milberg.com,astraus@ecf.courtdrive.com,asilva@milberg.com,cbryant@ecf.courtdrive.com,tsmith@milberg.com,tsmith_20412@ecf.courtdrive.com

- **Fiona Tang**
  ftang@fenwick.com,fiona-tang-3866@ecf.pacerpro.com

- **Neli Traykova**
  ntraykova@motleyrice.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)