# EXHIBIT 1

# EXHIBIT 4

C4622

ALA2384

1

# MANAGEMENT COMPANY AGREEMENT

## THE UNDERSIGNED

**KBC Index Fund NV,** public open-ended investment company under Belgian law, having its registered office at Havenlaan 2, 1080 Brussels, Belgium, registered with the Crossroads Bank for Enterprises under number 443.670.377,

hereinafter referred to as the 'BEVEK'

## AND

**KBC Asset Management NV,** a limited liability company under Belgian law, having its registered office at Havenlaan 2, 1080 Brussels, registered with the Crossroads Bank for Enterprises under number 469.444.267

hereinafter referred to as the 'Management Company',

## IN THE PRESENCE OF

**KBC Bank NV,** a limited liability company incorporated under Belgian law, having its registered office at Havenlaan 2, 1080 Brussels, registered with the Crossroads Bank for Enterprises under number 462.920.226,

hereinafter referred to as the 'Custodian',

## WHEREAS

The BEVEK has entered into agreements with the Custodian for the performance by the Custodian of the following tasks:

– custody of the assets of the BEVEK;

– financial services in relation to the BEVEK's units;

Pursuant to Article 44 of the Law of 3 August 2012 on certain forms of collective management of investment portfolios (the 'Law'), the BEVEK wishes to appoint the Management Company to perform the entirety of the collective portfolio management activities for undertakings for collective investment as referred to in Article 3, 22° of the aforementioned Law;

## HEREBY AGREE AS FOLLOWS:

## ARTICLE 1 APPOINTMENT

1.1. The BEVEK hereby appoints the Management Company on an exclusive basis for the collective portfolio management of its existing and future sub-funds (each referred to as a 'Portfolio'). This collective portfolio management of the BEVEK will comprise:

a) the investment management of the Portfolio's;
b) the administration of the BEVEK;
c) the marketing of the securities of the BEVEK.

The Management Company hereby accepts this mandate and will carry it out to the best of its ability, taking into account the following terms and conditions.

1.2.    In all transactions relating to the Portfolios, the Management Company acts for the account of the BEVEK.

1.3    The BEVEK has requested the Custodian to open accounts in its name.

If it proves necessary for management purposes, the Management Company may request that additional accounts be opened with the Custodian in which securities or monies will be registered. All financial transactions relating to the Portfolios shall be managed through these accounts. These accounts taken as a whole shall form the Portfolios to be managed.

The Management Company undertakes (i) not to open any accounts with third parties relating to the Portfolios or to effect transactions relating to the Portfolios without having notified the Custodian in advance hereof in writing; and (ii) in the latter case, to provide the Custodian with the necessary information on its own initiative to enable the Custodian to have access at all times to a complete and correct overview of the credit balances of the BEVEK.

# ARTICLE 2. LEGAL FRAMEWORK AND SCOPE OF THE MANDATE

## 2.1    GENERAL

2.1.1    The Management Company performs its mandate in accordance with:
–    the applicable regulations (including but not limited to the Law, the Royal Decree of 12 November 2012 on certain public undertakings for collective investment and the Royal Decree of 12 November 2012 on the management companies of undertakings for collective investment and the circulars published by the Belgian Financial Services and Markets Authority (FSMA), in so far as applicable);
–    the articles of association of the BEVEK,;
–    the prospectus and key investor information documents of the BEVEK;
–    the Best Execution and Client Order Handling Policy of the Management Company
–    the code of conduct of the Belgian Asset Managers Association (BEAMA)

2.1.2    The Management Company applies the principle of spreading of risk in its investment management of the Portfolios and acts exclusively in the best interests of the investors of the BEVEK, this in such a manner that the autonomous management of the BEVEK is assured.

2.1.3    Without prejudice to the other provisions of this Agreement and to the liability of the Management Company as stipulated in this Agreement, the Management Company performs the mandate entrusted to it under the supervision of the Board of Directors of the BEVEK.

The Board of Directors of the BEVEK is at all times entitled to issue further instructions to the Management Company concerning the collective portfolio management of the BEVEK. Any such instructions will be communicated to the Management Company in accordance with the provisions of Article 10.

## 2.2 INVESTMENT MANAGEMENT

2.2.1 The Management Company will comply strictly with the investment objectives, investment policy and investment restrictions as set out in the applicable legislation, the articles of association of the BEVEK, the prospectus and Key investor information documents of the BEVEK.

2.2.2 The BEVEK authorises the Management Company, by virtue of the mandate entrusted to the latter, to perform all actions that it considers necessary for the investment management of the Portfolios, such as *inter alia* subscribing to and buying and selling, spot or forward, financial instruments or foreign currencies, exercising rights, including the participation in *class actions* or the commencement of an individual action, arbitraging or exchanging financial instruments, collecting income and holding liquid assets and term deposit accounts. To this end, the Management Company has unrestricted access to the accounts referred to in Article 1.

The Management Company may select investments and effect transactions in financial instruments without the prior permission of the BEVEK.

2.2.3 The BEVEK hereby authorises the Management Company to decide on which market and with which counterparties transactions relating to financial instruments take place.

The Management Company causes transactions to be effected in accordance with the rules and market practices that are usual in the markets in question.

2.2.4 The Management Company is entitled, but not obliged, to exercise the voting right vested in the securities in the Portfolios.

The Management Company is not required to inform the BEVEK of the holding of a general meeting of shareholders of a company the shares of which are held in the Portfolios.

The BEVEK may however at all times exercise the voting right itself or decide that the voting right will not be exercised. It informs the Management Company of its intention in good time.

In order to comply with the obligation to mention in the annual report any potential conflicts of interest as defined in the Royal Decree dated 12 November 2012 on certain public undertakings for collective investment, the Management Company, in so far as the BEVEK has not exercised its right to decide on the exercise of the voting right, renders account to the Board of Directors of the BEVEK on the manner in which it has exercised the voting right vested in the securities held in the Portfolio, or on why the voting right has not been exercised.

2.2.5 The Management Company, or where applicable the third parties to which it entrusts the management, may be the beneficiary of economic benefits given by an intermediary in share transactions. The Management Company enters into a Commission Sharing Agreement with the intermediary in question for this purpose. If all applicable statutory conditions have been met, the intermediary in share transactions may be asked to pay invoices on behalf of the Management Company for goods and services provided by third parties which have provided research and related services. The intermediary pays these invoices by applying a certain percentage of the gross commission it receives from the Management Company for the performance of share transactions.

The Management Company formulates an internal policy regarding the avoidance of potential conflicts of interest that may arise when entering into Commission Sharing Agreements and organises an appropriate internal control system to ensure compliance with this policy. The choice of intermediary for share transactions will be made in the sole interest of the BEVEK

2.2.6. The Management Company drafts on an annual basis the Internal Control Statement which, in accordance with the requirements as imposed by the FSMA, allows the BEVEK to:

4

(i) ascertain whether the Management Company has organised its internal control in an appropriate manner during the relevant period, taking into account the activities of the BEVEK and the requirements imposed; and

(ii) monitor in an appropriate manner the management tasks performed during the period in question.

The Management Company makes reasonable efforts, in the event that it has entrusted its tasks to a third party, to ensure that an equivalent reporting requirement is imposed on this (sub)delegatee in terms of form, content and frequency.

The Management Company grants the Custodian and the certified auditor of the BEVEK access to the Internal Control Statement.

### 2.3 ADMINISTRATION

The Management Company is responsible for the administration of the BEVEK.

Including:
i) accounting management activities for the BEVEK, including the drafting and publication of the annual accounts;
ii) on request, providing information to holders of units of the BEVEK;
iii) valuation of the Portfolio(s) and determination of the value of the securities of the BEVEK (including the tax aspects);
iv) supervising compliance with the applicable statutory and regulatory provisions for the BEVEK;
v) maintaining and updating the register of holders of registered securities;
vi) allocating the income for the different categories of securities and types of units in the BEVEK;
vii) issuing and redemption of units of the BEVEK;
viii) settling contracts, including the delivery -of securities of the BEVEK;
ix) registration of transactions and custody of the relevant securities;
x) opening and monitoring one or more accounts with the Custodian in the name of the BEVEK and collecting and receiving payments for the account of the BEVEK;
xi) compiling the periodic reports in accordance with the regulations as well as drafting and publishing or sending out publications and information memoranda as required by law or desired by the BEVEK;
xii) maintaining the relationship of the BEVEK with the auditor;
xiii) maintaining the relationships of the BEVEK with FSMA and other authorities and representing the BEVEK in all acts to be performed by the BEVEK vis-à-vis FSMA and other authorities [including compliance with the necessary formalities for registering the BEVEK (or a sub-fund thereof) with FSMA for the use of the European passport and the periodic submission of the necessary information to the foreign Representation Agent with a view to keeping the registration file up to date, in case the BEVEK is an Undertaking for Collective Investment in Transferable Securities ("UCITS")], with the exception of those acts that have been contractually entrusted by the BEVEK to a foreign Representation Agent.

### 2.4 MARKETING

The Management Company may market the securities of the BEVEK. Without prejudice to the general character of Article 3 of this Agreement, the BEVEK authorises the Management Company to entrust marketing of the securities of the BEVEK to KBC Asset Management SA, Luxembourg.

## ARTICLE 3 DELEGATION

### 3.1 Appointment of sub-managers

The BEVEK hereby authorises the Management Company to delegate to a third party, to carry out on its behalf one or more of its management tasks, within the limits of article 202 of the Law, and to conclude the necessary agreements to that effect, without prejudice to the responsibility of the Management Company for the correct performance of this Agreement and the liability of the Management Company in this regard.

3.2     Agreement with sub-manager(s)

In the event that tasks are delegated to a third party, the Management Company ensures that any termination of such agreements does not jeopardise the continuity of the collective portfolio management. To this end, it takes the necessary measures to entrust the tasks to another party, upon approval by the competent authorities or to perform them itself.

The Management Company ensures that its management tasks are only delegated to a third party on terms and conditions that are at least equivalent to those as set out in this Agreement.

The delegation agreement between the Management Company and the third party must permit the Management Company:

- to verify effectively the performance of the delegated tasks;
- to issue instructions at all times in relation to the performance of the management tasks;
- to terminate the delegation with immediate effect at any time to manage the BEVEK in the best interests of the investors,

3.3     Relation with Custodian and auditor of the BEVEK

The delegation agreement stipulates expressly that the Custodian and the auditor of the BEVEK may request all useful information from the sub-manager and that the latter is bound by the same information duty as the Management Company, so that the Custodian and the auditor are able to perform their activities in an equivalent manner as if no delegation had taken place.

The Management Company provides the Custodian and the auditor with the necessary contact details to make direct contact possible with the sub-manager, and makes the necessary arrangements for this with the sub-manager. Upon request of the Custodian and/or the auditor, the day-to-day management of the Management Company shall use its authority and contractual rights to ensure that the Custodian and the auditor obtain the necessary access to the organisation of the sub-manager as well as direct or indirect access to all relevant information. The Management Company will consult with the Custodian and the auditor on ensuring effective access to the organisation and information of the sub-manager, in order to make any necessary improvements in joint consultation.

3.4.    The Management Company declares that it and the third parties referred to in Article 3.1. shall abide by the law, shall not commit tax fraud, shall refrain from the use of mechanisms to commit tax evasion and money laundering and shall combat any form of corruption (including bribery, extortion, attempts to influence purchase decisions, offering inducements).

# ARTICLE 4. LIABILITY

4.1     In performing its mandate, the Management Company has an obligation towards the BEVEK to perform to the best of one's ability not to a specific result.

It will manage the Portfolios as a normal, prudent and reasonable management company.

6

4.2 When performing the investment management, the Management Company takes into account the general political, economic and financial situation as known to it at that time.

The investment management conducted by the Management Company is based on forecasts of anticipated developments in the financial markets and in regulations. In view of the complex and often unpredictable nature of these factors, the Management Company cannot issue any guarantee whatsoever regarding the extent to which forecasts will prove to be accurate, without prejudice to Article 4.1, second paragraph of this Agreement.

4.3 The Management Company cannot be held liable for:

- failure to achieve the envisaged objectives, nor for any loss that the BEVEK may suffer as a result of a reduction in the value of a Portfolio or a decrease in the income generated by the Portfolios (including all cases in which those reductions in value are the result of capital losses or tax obligations), or due to any other cause, except where the loss stems from an act or omission by the Management Company that is not in accordance with what may be expected of a normal, prudent and reasonable management company placed in the same factual circumstances.

- any errors of judgement in the choice of an investment, provided that such errors are no greater than those of a normal, prudent and reasonable management company placed in the same factual circumstances.

- neglect or fraud perpetrated by an individual, business or company which has acted as an intermediary or counterparty in transactions in relation to the management of the Portfolios, unless the Management Company has been negligent or has committed a deliberate error in the choice of this intermediary or counterparty.

4.4 In the event that a shortcoming, interruption or lasting delay occurs in the performance by the Management Company due to a defect, breakdown or faulty functioning of a telecommunications or data processing system (unless this defect, breakdown or faulty functioning has been caused by an act of the Management Company that is not in accordance with an act by a normal, prudent and reasonable management company in the same factual circumstances), war, riots, Belgian or foreign government measures or changes to Belgian or foreign legislation or any other case of force majeure, the Management Company cannot be held liable for the direct or indirect consequences for the BEVEK or the Portfolios.

4.5 The BEVEK undertakes to indemnify the Management Company in respect of all costs and obligations which stem directly or indirectly from the fact that the Management Company has acted in accordance with instructions lawfully issued by the BEVEK.

4.6 In order to allow the Management Company to delegate cross border marketing of the securities of the BEVEK without increasing its potential liability, the BEVEK undertakes to transfer to the Management Company at no cost and on first request any contractual claim in respect of a Representation Agent appointed cross border, as soon as and on condition that the Management Company is contractually obliged to pay the same compensation to one of the parties it has appointed and has actually paid this compensation.

## ARTICLE 5. REPORTING AND PROVISION OF INFORMATION

5.1 The Management Company undertakes to provide a monthly statement of the Portfolios upon request of the BEVEK, which among other things describes:

- the Portfolio structure and a valuation of the Portfolios;
- the performance of the Portfolios;
- an overview of the capital gains and losses realised, in aggregate and per transaction;

    – an overview of the spread of the risks, including the geographical and sectoral spread of the shares and the monetary spread of the bonds;

    – details of the individual investments;

    – details of the transactions effected;

    – the amount of the management fee charged.

5.2    The valuation of the Portfolios will be carried out on the basis of the rules contained in the articles of association of the BEVEK.

Where the valuation is based on information supplied by external information providers, the Management Company cannot be held liable for the accuracy of this information. The Management Company does however undertake to select its external information providers with care.

In so far as an authority to which reports must be submitted requires that a different valuation principle be applied, the Management Company shall apply the valuation principle imposed by that authority.

5.3    The Management Company provides the Board of Directors of the BEVEK with detailed reports at regular intervals on all relevant aspects of the transactions in which the Management Company or a company associated with it acts as a counterparty or intermediary of the BEVEK.

The Management Company issues a report in good time to the Board of Directors of the BEVEK on the activities described in this paragraph.

5.4    The Management Company will upon request of the Custodian and of the auditor of the BEVEK, provide them with the same useful information as the BEVEK would be obliged to furnish in the absence of this Agreement, so that the Custodian and the auditor are able to perform their activities in an equivalent manner.

The Management Company will provide the Custodian and the auditor with the necessary contact details to facilitate direct contact, and shall make the necessary arrangements to this end. The Management Company will consult with the Custodian and the auditor on ensuring effective access to the information, in order that any necessary improvements may be made in joint consultation.

## ARTICLE 6. FEES

6.1    The Management Company receives fees for the management of the Portfolios, which can't exceed the maximum or other amounts stipulated in the prospectus.

These fees for the management of the Portfolios consist of the fee for managing the investment portfolio, the administration fee and, as far as stipulated in the prospectus, a performance fee.

These fees shall be calculated on the basis as set out in the prospectus.

The BEVEK hereby authorises the Management Company to deduct these fees from its account. The first payment will be made on a pro rata basis.

In the event that this Agreement is terminated, the fees will also be charged on a *pro rata* basis at the time of termination.

The Management Company may share its fee as paid by the BEVEK with third parties to which it entrusts a part of the management directly or indirectly, provided it meets the statutory obligations.

6.2    All costs of any kind which the Management Company incurs in carrying out transactions related to the management of the Portfolios will be for account of the BEVEK.

These costs include brokerage fees or the costs of other intermediaries, stock exchange and other taxes, registration charges, the costs of sending securities, delivery costs, etc.

6.3    Changes in the fees and costs to the disadvantage of the BEVEK will be announced in advance in the manner as prescribed in the applicable regulations.

6.4     The fee payable to the Management Company pursuant to the distribution of income from Guaranteed Securities Lending transactions is set out in Annex 1, which forms an integral part of this Agreement.

6.5     Both parties undertake to accept electronic invoices received from the other party in connection with this Agreement.

## ARTICLE 7. INSURANCE

The Management Company hereby declares that it is insured:

1)  for its civil liability and that of its employees resulting from errors, negligent act, mistakes or omissions in the performance of the ordinary business activities by or on behalf of the Management Company;

2)  for financial loss by the Management Company or loss for which the Management Company is liable following theft, embezzlement, abuse of trust, deception and any other economic offence committed in the context of the activities of the Management Company by or with the complicity of an employee of the Management Company.

## ARTICLE 8. DURATION

8.1     This Agreement is entered into for an indefinite period. It may be terminated at any time, without compensation, by either party subject to written notification 3 months in advance to the other party. Termination of the appointment may nonetheless only take effect after it has been approved by FSMA and an Extraordinary General Meeting of the BEVEK.

8.2     From the time that the termination of the appointment takes effect, the Management Company shall no longer be authorised to act on behalf of the BEVEK, except to settle obligations with respect to third parties.

The Management Company will then:

1)  stop all orders with regard to the Portfolios;

2)  complete transactions which have not yet been settled;

3)  draw up a final settlement of the costs and fees, on a *pro rata* basis from the last invoicing date;

4)  draw up a closing financial report.

8.3     The Management Company notifies the Custodian by letter sent by registered or recorded delivery of the termination of this Agreement, as a result of which the revocation or notice of termination will be enforceable against the Custodian.

## ARTICLE 9. APPLICABLE LAW – JURISDICTION

9.1     This Agreement shall be governed by the laws of Belgium.

9.2     The relationships which exist between the Management Company and the BEVEK shall be governed in a general sense by the General Terms and Conditions of the Management Company, unless this Agreement explicitly deviates there of (which is for example the case for Article 8 of this Agreement). The BEVEK declares that it is aware of the rights and obligations arising from these texts and that it accepts the contents thereof.

9.3     Any and all disputes pertaining to the establishment, interpretation or performance of this Agreement will be settled definitively by an arbitration tribunal, which will be appointed and act in accordance with the provisions of the Belgian Judicial Code.

9

## ARTICLE 10. DOMICILE

10.1    The parties elect domicile at their addresses as stated in the preamble to this Agreement for the purposes of the implementation of this Agreement and the obligations deriving from it.

10.2    Correspondence and all other documents relating to this Agreement shall be addressed in the case of the BEVEK to the Board of Directors of the BEVEK and in the case of the Management Company to the Chairman of the Executive Committee or persons designated by the latter.

## ARTICLE 11. ENTRY INTO FORCE

This Agreement will enter into force on the date of its signature and supersedes all earlier agreements between the parties relating to the matters regulated in this Agreement..

Done in Brussels on 16/12/2013 in three copies, one for each party with a separate interest.

For the BEVEK:          Paul Beller          Luc Vanderhaegen

                        Kris De Nul          Jan De Braeckeleer
                        General Manager      general manager
                        Markets & Institutionals
For the Custodian:      Securities Services

For the Management
Company:                Christiaan Sterckx   Dirk Cuypers
                        Director             Director

Case 5:11-cv-00253-OLG Document 62-4 Filed 07/06/12 Page 12 of 14

10

**Annex 1**
**Agreements concerning the distribution of income from the lending of financial instruments.**

The sub-fund of the BEVEK may lend financial instruments within the limits set by law and regulations. The lending will take place within the framework of a securities lending system managed by either a principal or an agent.

By lending securities, the sub-fund concerned may generate an additional return which might consist of a fee paid by the principal or, in the event that the sub-fund effects the securities lending through an agent, by the counterparty, as well as income generated through reinvestments. Direct and indirect charges will be deducted from this income. These will be set at a flat rate of 35% of the fee received and will consist of the charges for the clearing services provided by KBC Bank, the charges paid to the Management Company for setting up and monitoring the system for lending securities, the charges for margin management, the charges associated with cash and custody accounts and cash and securities transactions, the fee paid for any management of reinvestments and, if the sub-fund uses an agent, the fee paid to the agent.

The sub-fund will thus receive 65% of the fee received for securities lent.