# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

```
------------------------------------------------------------ x
```
BENJAMIN CRAIG, Individually and on     :    No. 17-cv-01005-SMH-JPM
Behalf of All Others Similarly Situated,     :

                     : <u>CLASS ACTION</u>

       Plaintiff,     :

                     : <u>ORAL ARGUMENT REQUESTED</u>

       vs.     :

                     :

CENTURYLINK, INC., GLEN F. POST, III     :
and R. STEWART EWING, JR.,     :

                     :

       Defendants.     :
```
------------------------------------------------------------ x
```
DON J. SCOTT, Individually and on Behalf of     :    No. 17-cv-01033-SMH-JPM
All Others Similarly Situated,     :

                     : <u>CLASS ACTION</u>

       Plaintiff,     :

                     : <u>ORAL ARGUMENT REQUESTED</u>

       vs.     :

                     :

CENTURYLINK, INC., GLEN F. POST, III,     :
R. STEWART EWING, JR. and DAVID D.     :
COLE,     :

                     :

       Defendants.     :
```
------------------------------------------------------------ x
```
AMARENDRA THUMMETI, Individually     :    No. 17-cv-01065-SMH-JPM
and on Behalf of All Others Similarly Situated,     :

                     : <u>CLASS ACTION</u>

       Plaintiff,     :

                     : <u>ORAL ARGUMENT REQUESTED</u>

       vs.     :

                     :

CENTURYLINK, INC., GLEN F. POST, III,     :
and R. STEWART EWING, JR.,     :

                     :

       Defendants.     :
```
------------------------------------------------------------ x
```

**KBC ASSET MANAGEMENT NV'S REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO THE
<u>COMPETING MOTION</u>**

KBC Asset Management NV ("KBC") respectfully submits this reply brief in further support of its motion for appointment as lead plaintiff, and in opposition to the competing motion.

## I. ARGUMENT

Pursuant to the Private Securities Litigation and Reform Act ("PSLRA"), the Court should appoint as lead plaintiff the "movant or movants" with the greatest financial interest in the relief sought by the class that also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). KBC has the largest financial interest using the standard both movants relied upon in their respective opening briefs, and which courts in this District consistently have applied.[1] Significantly, Oregon has not disputed that KBC has the greatest net loss, purchased the most shares, and expended the greatest net funds on CenturyLink securities during the Class Period. Instead, in its opposition brief, Oregon asks the Court to disregard the established standard and focus on the number of net shares acquired. Oregon also abandons its original loss calculations and proposes a new methodology that it contends justifies its appointment as lead plaintiff. Courts generally have frowned upon this sort of gamesmanship by lead plaintiff applicants. Contrary to Oregon's assertions, the particular loss calculation methodology it now advances finds no support in the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), and Oregon does not offer a convincing explanation for why the Court should adopt it. Because KBC has the largest financial interest in the relief sought by the class and otherwise satisfies the requirement of Rule 23, and no other movant has challenged its adequacy, the Court should appoint KBC to serve as Lead Plaintiff.

---

[1] The Detroit Institutional Investor Group and Amalgamated Bank have recognized that they do not have the largest financial interest in the relief sought by the class. *See* ECF Nos. 45, 46.

1

**A.      KBC Has the Largest Financial Interest in the Relief Sought by the Class under the Standard Used by Both Movants in Their Opening Briefs**

In determining which movant has "the largest financial interest," courts often have looked at four factors:  (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended, and (4) the amount of the movant's loss.  *See* Manual for Complex Litigation (Fourth) § 13.31 (2004)).  Under the standards used by both KBC and Oregon in their opening briefs, and most commonly relied upon by courts, KBC has the greatest financial interest in the relief sought by the class.  *See* ECF No. 44 at 4.  KBC's funds suffered the largest net loss, purchased the most shares, and expended the most net funds.  *See Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *6 (W.D. Tex. Dec. 10, 2008) ("[C]ourts consistently consider the fourth factor— the approximate losses suffered—as most determinative in identifying the plaintiff with the largest financial loss.").

| Movant | Claimed Loss | Shares Purchased | Net Shares Purchased | Net Funds Expended |
|---|---|---|---|---|
| KBC | **$13,166,113** | **3,220,632** | 455,868 | **$23,379,553** |
| Oregon | $6,297,582 | 1,160,139 | **560,340** | $17,628,243 |

The only *Lax* factor on which Oregon has an advantage (albeit a small one) is the number of net shares purchased.[2]  Not surprisingly then, in its opposition brief, Oregon now urges the Court to "place the greatest weight on the number of net shares purchased," relying on a line of unpublished cases from the District Court for the Southern District of California.  *See Schueneman v. Arena Pharm., Inc.*, No. 10-cv-1959, 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011) (relying on *Ruland v. InfoSonics*, No. 06-cv-1231, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006)); *see also Foster v. Maxwell Techs., Inc.*, No. 13-cv-580, 2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) (citing *Schueneman* and *Ruland*).  The holdings in those cases are contradicted by the great weight of authority.  *See, e.g., Topping v. Deloitte Touche Tohmatsu CPA Ltd.*, No. 14-cv-2814, 2015 WL 1499657, at *5 (S.D.N.Y. Mar. 27, 2015) ("The fourth factor—*financial*

---

[2] Oregon ignores the fact that it sold nearly 14,000 bonds worth more than $1.3 million, which are not reflected in the 560,340 "Net Shares Purchased."  ECF No. 28-4 at 10.

*loss*—is viewed as the most important.") (emphasis added); *Nicolow v. Hewlett Packard Co.*, No. 12-5980, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (noting that the "weight of authority puts the most emphasis on the competing movants' estimated losses, using a [LIFO] methodology").

Several other cases that Oregon cites do not support its argument. For example, Oregon states that the *Frias* court "appoint[ed] the lead plaintiff movant with 'the greatest net shares of any individual investor or group of investors.'" ECF No. 47 at 9 (quoting *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011)). In fact, the *Frias* court stated that it was appointing the movant with "the greatest net shares of any individual investor or group of investors, *and the greatest net expenditures, as well*." *Frias*, 835 F. Supp. 2d at 1075 (emphasis added). Here, KBC—not Oregon—has the greatest net expenditures.

Likewise, Oregon cites *Critical Path* for the proposition that the "number of net shares purchased is 'determinative' of financial interest." ECF No. 47 at 9 (quoting *Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001)). But, that was not the court's holding. Rather, the court stated as follows:

> The second [approach] equates "largest financial interest" with potential recovery. . . . Under this approach, the number of net shares purchased during the class period is determinative. The Court considers this the most straightforward method for approximation of financial interest in the recovery sought, *but considers that it should be supplemented with in/out losses, i.e., losses suffered by selling shares during the class period. Such losses are recoverable, and because the PSLRA defines financial interest in terms of "recovery sought," they should be included.*

*Critical Path*, 156 F. Supp. 2d at 1107-08 (internal citations omitted). Thus, in *Critical Path*, the court looked at net shares purchased *and* losses from trading during the class period. Here, while KBC purchased only modestly fewer net shares than Oregon (even before accounting for Oregon's net sale of bonds), KBC has a much larger net loss than Oregon.

Oregon also cites *In re Goodyear Tire & Rubber Co. Securities Litigation*, No. 03-cv-2166, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004), in support of its argument that the Court should place the greatest weight on the number of net shares purchased. *See* ECF No. 47

at 9. *Goodyear* is distinguishable from the present case because it concerned a net seller competing movant. As Oregon concedes, KBC was a net ***purchaser*** of CenturyLink common stock during the Class Period. *See* ECF No. 47 at 7. Moreover, in *Frank*, which was decided after *Dura*, the District Court for the Northern District of Ohio declined to apply the holding in *Goodyear*. *See Frank v. Dana Corp.*, 237 F.R.D. 171, 173 (N.D. Ohio 2006) ("[T]he [challenged movant] notes that it suffered a loss even on its holdings of Dana securities that predated the alleged fraud. Accordingly, though the [movant] may have been a net seller, it should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff." (internal citation omitted)).

**B.** **Oregon's New "Retained Shares" Loss Calculation Methodology Is Result-Driven and Should Be Rejected**

In its opening brief, Oregon argued that it "should be appointed Lead Plaintiff because it believes that it has the 'largest financial interest in the relief sought by the class.'" As demonstrated herein, Oregon incurred losses of approximately ***$6.9 million*** on a FIFO basis and ***$6.3 million*** on a LIFO basis from its Class Period purchases of over 1.1 million shares of CenturyLink common stock." ECF No. 28-1 at 5 (internal citations omitted) (emphases in original). Oregon changed its position only after learning that it did not have the largest LIFO or FIFO[3] net loss or purchase the most shares. In its opposition brief, Oregon also abandons the methodology it initially relied on to calculate its losses, and proposes a new one—even going so far as to submit new loss charts for itself and KBC. *See* ECF No. 47 at 7; *see also Bodri v. GoPro, Inc.*, No. 16-cv-232, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the [competing movant] argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology. This fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology.").

---

[3] KBC's FIFO loss is $13,235,171.

Unfortunately, it has become increasingly common for lead plaintiff movants with smaller losses to jettison the conventional loss metric used in their opening papers and "devise[] [their] own methodology" in a subsequent brief that "tak[es] into consideration particular nuances of the parties' transactions in [the] case." *Pio v. Gen. Motors Co.*, No. 14-cv-11191, 2014 WL 5421230, at *6 (E.D. Mich. Oct. 24, 2014); *see also Nicolow*, 2013 WL 792642, at *4 (rejecting movant's request "to turn away from estimated losses and focus instead on 'net shares purchased'" after noting that "[t]ellingly, [the movant] made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only after [a competing movant] came forward with larger LIFO losses"); *see also In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("[T]he court may select accounting methods that are both rational and ***consistently applied***." (emphasis added)).[4] This Court should reject Oregon's attempt to game the statutory scheme in this way.

Oregon argues that the loss calculation methodology it uses in the loss charts submitted with its opposition is supported by the Supreme Court's decision in *Dura*. However, that decision concerned the pleading standard for loss causation in Section 10(b) claims, not the loss calculation methodology to be applied at the lead plaintiff appointment stage. In *Dura*, the Supreme Court held only that a private plaintiff cannot satisfy the loss causation requirement "simply by alleging in the complaint and subsequently establishing that 'the price' of the security 'on the date of purchase was inflated because of the misrepresentation.'" 544 U.S. at 338. But the present case is not one in which a movant cannot satisfy loss causation—even Oregon's new, result-driven loss chart shows that KBC held no less than 489,961 shares that were damaged when Defendants' alleged fraud was revealed to the market. *See* ECF No. 47-4.

Additionally, there is more than one way to calculate losses using a "retained shares" methodology, and nothing in *Dura* requires the particular loss calculation methodology that

---

[4] Oregon's own counsel has argued that "consideration of loss causation is both unwarranted and inappropriate at the lead plaintiff stage." Reply Mem. in Supp. of Lead Pl. Appointment, *Hughes v. Huron Consulting Group, Inc.*, No. 09-cv-4734, ECF No. 54, at 10 (N.D. Ill. Oct. 26, 2009) (Ex. A).

Oregon proposes for the first time in its opposition brief.  Oregon merely has selected the methodology that is most favorable to it after examining the other movants' trading patterns.  *See Blitz v. AgFeed Indus.*, No. 3:11-0992, 2012 WL 1192814, at *8 (M.D. Tenn. Apr. 10, 2012) (observing that "simply on the basis of the losses stated in their initial Motions, AIG has the largest financial interest" and rejecting another movant's arguments about "*Dura* losses"); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *5-6 (N.D. Cal. Apr. 16, 2007) (noting that the Supreme Court "expressly limited its holding [in *Dura*] to finding that a plaintiff cannot show loss causation merely by alleging an inflated purchase price" and declining to expand that holding to reduce a lead plaintiff movant's claimed losses); *but see Galmi v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-558 (D. Conn. July 11, 2017) (favoring a retained shares methodology).[5]

Moreover, this Court should join others that have declined to limit losses based on causation at the lead plaintiff stage on the basis of a barebones complaint because doing so requires making premature factual determinations regarding when, and to what extent, a fraud was disclosed to the public.  *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 114 (E.D.N.Y. 2012) ("At this early stage in the proceedings, it is inappropriate for the Court to adjudicate whether the truth regarding [defendants'] alleged fraud had fully been disclosed to and reflected by the market by a specified date."); *cf. Erica P. John Fund, Inc. v. Halliburton Co.*, 131 U.S. 804, 812 (2011) (holding that loss causation need not be established even at the class certification stage).[6] During the Class Period, CenturyLink common stock lost more than $4.5 billion of market

---

[5] The *Teva*, court found that the competing movant could not "be faulted for failing to raise the notion of *Dura* recoverable losses in its initial motion because its own purported losses are largely unaffected . . . ."  *Id.*, slip op. at 17.  But here, Oregon's new methodology reduces its loss by nearly $2 million.  In any event, this Court should not follow the holding in *Teva* for all the reasons given in this reply.

[6] *See also* Reply Mem. in Supp. of Lead Pl. Appointment, *Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, No. 13-cv-2393, ECF No. 24, at 4 (S.D. Tex. Nov. 12, 2013) (Oregon's counsel recognizes that "courts frequently decline to consider loss causation at the lead plaintiff stage because it requires premature [f]actual determinations") (Ex. B).

capitalization, and some of those losses may prove to be attributable to news about the company's abusive business practices leaking into the market. *See Glickenhaus & Co. v. Household Int'l*, Inc., 787 F.3d 408, 416 (7th Cir. 2015) (describing "'leakage' model" of loss causation). KBC itself lost more than $13 million on its investments in CenturyLink securities during the Class Period, and it would be inappropriate at this stage to conclude that recovery of those losses is foreclosed merely so that a movant with a smaller interest may obtain control of the litigation.

As the *Pio* court explained, practical considerations also weigh against undertaking a detailed examination of loss causation at this stage:

> This Court has spent considerable time making sense of the "recoverable loss" calculations submitted by [the movants] in its attempt to understand the formulas used by the movants, uncovering the source of their numbers, and weighing the competing arguments for rejecting the opposing movant's calculations. ***Such efforts seem contrary to one of the main reasons courts favor the use of the four Lax factors: "because they look to relatively objective indicators***, such as number of shares purchased or sold, rather than to the ultimate question of damages."

*Pio*, 2014 WL 5421230, at *6 (internal quotation marks and citation omitted) (emphasis added). Undertaking a detailed examination of causation at this stage and incentivizing movants to change their positions also contravenes Congressional intent. The PSLRA was meant to establish a straightforward lead plaintiff appointment process in securities class actions and to combat lawyer-driven litigation. S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690.

Under the straightforward *Lax* standard using LIFO accounting that courts consistently have applied, KBC has the largest financial interest in the relief sought by the class because it expended the most net funds, purchased the most shares, and suffered the greatest loss.

**C.   KBC Otherwise Satisfies the Requirements of Rule 23**

In addition to possessing the greatest financial interest in the litigation, KBC has demonstrated that it satisfies the requirements of Rule 23 at this stage, and is therefore the presumptive most adequate plaintiff under the PSLRA. *See* ECF No. 25 at 5-7 (noting that KBC

7

has recovered millions of dollars on behalf of securities fraud class members). That presumption may only be rebutted by "proof" that the movant will not adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). Here, the competing movant has not alleged that KBC is not adequate to serve as lead plaintiff.[7] Because KBC is the presumptive most adequate plaintiff and that presumption has not been rebutted, it should be appointed Lead Plaintiff pursuant to the PSLRA.

## II. CONCLUSION

For the foregoing reasons and the reasons given in its opening and opposition briefs, KBC respectfully requests that the Court grant its motion.

DATED: September 18, 2017

Respectfully submitted,

**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**

*/s/ James Parkerson Roy*

James Parkerson Roy (La. 11511)
John Parkerson Roy (La. 32048)
556 Jefferson St., Suite 500
Lafayette, LA 70501
Telephone: (337) 233-3033
Facsimile: (337) 232-8213
jimr@wrightroy.com
johnr@wrightroy.com
*Counsel for KBC Asset Management NV*

---

[7] Oregon describes KBC as "thirteen entities whose assets are managed by Belgian asset manager KBC Asset Management NV." ECF No. 47 at 1. That description is not accurate because "entities" implies corporate personhood. KBC's funds are not entities but rather accounts that it manages, like any other institutional investor, on behalf of the beneficial owners of the assets, who have no ability to bring a legal claim on their own. When Congress enacted the PSLRA, it expressly indicated its intent "to increase the likelihood that institutional investors [such as KBC and Oregon] will serve as lead plaintiffs." *See* S. Rep No. 104-98, at 10-11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689-90.

**MOTLEY RICE LLC**
James M. Hughes
Gregg S. Levin
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jhughes@motleyrice.com
glevin@motleyrice.com
*Counsel for KBC Asset Management NV and*
*[Proposed] Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

Executed on September 18, 2017.

*/s/James Parkerson Roy*