UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


STEVEN LEVENTHAL, INDIVIDUALLY    )   C-21-09953 EJD
AND ON BEHALF OF ALL OTHERS       )
SIMILARLY SITUATED,               )   SAN JOSE, CALIFORNIA
                                  )
                    PLAINTIFF,    )   AUGUST 29, 2022
                                  )
           VS.                    )   PAGES 1-33
                                  )
CHEGG, INC., DANIEL L.            )
ROSENSWEIG, ANDREW J. BROWN,      )
NATHAN SCHULTZ, JOHN P.           )
FILLMORE AND ROBIN TOMASELLO,     )
                                  )
                   DEFENDANTS.    )
_____ )


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR PLAINTIFF          ROBBINS GELLER RUDMAN AND DOWD LLP
NORTH ATLANTIC:        BY:  MICHAEL ALBERT
                            DARREN J. ROBBINS
                       655 WEST BROADWAY, SUITE 1900
                       SAN DIEGO, CALIFORNIA  92101


APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

2

APPEARANCES (CONTINUED)

FOR PLAINTIFF          MOTLEY RICE LLC
KBC:                   BY:  CHRISTOPHER F. MORIARTY
                            MAX N. GRUETZMACHER
                       28 BRIDGESIDE BOULEVARD
                       MOUNT PLEASANT, SOUTH CAROLINA  29464

FOR PLAINTIFF          SAXENA WHITE P.A.
POMPANO BEACH:         BY:  DAVID R. KAPLAN
                       12750 HIGH BLUFF DRIVE, SUITE 475
                       SAN DIEGO, CALIFORNIA  92130

FOR THE DEFENDANTS:    FENWICK & WEST
                       BY:  FELIX S. LEE
                       801 CALIFORNIA STREET
                       MOUNTAIN VIEW, CALIFORNIA  94041

SAN JOSE, CALIFORNIA                    AUGUST 29, 2022

P R O C E E D I N G S

(COURT CONVENED AT 9:22 A.M.)

THE COURT:  SO FIRST OF ALL, LET'S -- AGAIN, LET'S CALL, THIS IS LEVENTHAL VERSUS CHEGG, AND LET ME FIRST CAPTURE APPEARANCE OF THE PARTIES.

FOR THE PLAINTIFFS, PLEASE?

MR. ALBERT:  GOOD MORNING, YOUR HONOR.

THIS IS MICHAEL ALBERT ON BEHALF OF THE NEW -- OF THE NORTH ATLANTIC STATES CARPENTERS FUND.

THE COURT:  THANK YOU.  GOOD MORNING.

MR. ROBBINS:  GOOD MORNING, YOUR HONOR.

DARREN ROBBINS ON BEHALF OF THE SAME LEAD PLAINTIFF MOVANT.

THE COURT:  THANK YOU.  GOOD MORNING.

MR. MORIARTY:  GOOD MORNING, YOUR HONOR.

CHRISTOPHER MORIARTY, MOTLEY RICE, ON BEHALF OF KBC ASSET MANAGEMENT.

THE COURT:  THANK YOU.

MR. KAPLAN:  GOOD MORNING, YOUR HONOR.

DAVID KAPLAN OF SAXENA WHITE ON BEHALF OF POMPANO BEACH POLICE AND FIREFIGHTERS RETIREMENT SYSTEM.

THE COURT:  THANK YOU.  GOOD MORNING.

MR. GRUETZMACHER:  MAX GRUETZMACHER, ALSO ON BEHALF OF KBC ASSET MANAGEMENT, ALSO FROM MOTLEY RICE.

THE COURT:  THANK YOU.

MR. LEE:  AND FELIX LEE OF FENWICK & WEST ON BEHALF OF ALL OF THE DEFENDANTS.

THE COURT:  GOOD MORNING.

WHAT BRINGS YOU ALL HERE THIS MORNING?  WHY ARE WE ALL TOGETHER TODAY?

MR. ALBERT:  WE'RE HERE ON A LEAD PLAINTIFF MOTION, YOUR HONOR.

THE COURT:  YES.  WHAT SHOULD I KNOW ABOUT THAT, PLEASE?

YOU CAN COME TO THE LECTERN.

MR. MORIARTY:  YOUR HONOR, AS PRESUMPTIVE LEAD PLAINTIFF, I'M HAPPY TO GO FIRST.

THE COURT:  SURE, THAT'S FINE.

AND IF YOU COULD EACH STATE YOUR APPEARANCE AGAIN FOR THE RECORD.

MR. MORIARTY:  GOOD MORNING, YOUR HONOR.

CHRISTOPHER MORIARTY FROM MOTLEY RICE LLC ON BEHALF OF KBC ASSET MANAGEMENT.

AND AS WAS INTRODUCED BEFORE, WITH ME IS MY PARTNER, MAX GRUETZMACHER, ALSO OF MOTLEY RICE, AND MY CO-COUNSEL, DAVID KAPLAN, ON BEHALF OF POMPANO BEACH.

THE COURT:  THANK YOU.

MR. MORIARTY:  YOUR HONOR MAY ALREADY BE FAMILIAR WITH KBC ASSET MANAGEMENT AS YOU APPOINTED KBC AS THE LEAD

PLAINTIFF IN THE INTEL SECURITIES LITIGATION IN OCTOBER 2020, AND YOU MAY ALSO HAVE HEARD OF THE RECENT $809.5 MILLION SETTLEMENT KBC RECOVERED IN THE TWITTER SECURITIES LITIGATION IN FRONT OF JUDGE TIGAR IN WHICH MY FIRM AND MR. ROBBINS'S FIRM SERVE AS CO-CLASS COUNSEL.

THEY ARE JUST TWO OF APPROXIMATELY 20 CASES IN WHICH KBC HAS BEEN APPOINTED AS A LEAD PLAINTIFF OVER THE PAST DECADE ON THE SAME STANDING BASIS AS HERE, ABOUT A BILLION DOLLARS RECOVERED FOR INVESTORS.  THE CLASS SIMPLY COULDN'T BE IN BETTER HANDS.

I'D LIKE TO TAKE A MINUTE JUST TO ADDRESS THE PSLRA.

THE PSLRA PROVIDES AN EXTREMELY STRAIGHTFORWARD AND NON-DISCRETIONARY PROCESS OF THE APPOINTMENT OF THE LEAD PLAINTIFF.  THE APPOINTMENT OF A LEAD PLAINTIFF DOES NOT REQUIRE A WIDE RANGE IN COMPARISON TO DETERMINE WHICH PLAINTIFF IS BEST SUITED TO REPRESENT THE CLASS.

RATHER, THE LEAD PLAINTIFF IS THE ONE WITH THE LARGEST FINANCIAL INTEREST WHO'S MADE A PRIMA FACIE SHOWING OF TYPICALITY AND ADEQUACY.

HERE THERE'S NO DISPUTE THAT KBC AND POMPANO BEACH HAVE THE LARGEST FINANCIAL INTEREST.

THEY'VE ALSO MADE A PRELIMINARY SHOWING OF ADEQUACY AND TYPICALITY.  THEY BOTH PURCHASED CHEGG SECURITIES DURING THE CLASS PERIOD AND SUFFERED DAMAGES ONCE THE ALLEGED FRAUD WAS REVEALED.  NO CONFLICT.

THEY'VE ALSO SELECTED -- THEY'VE SELECTED COUNSEL WITH SIGNIFICANT EXPERIENCE IN THESE CASES TO PROSECUTE THE LITIGATION.

AND I THINK THE KEY THING WE WANT TO KEEP IN MIND TODAY, YOUR HONOR, IS THIS IS NOT THE WIDE RANGING MERITS INQUIRY YOU SEE AT RULE 23.

YOU KNOW, SEVERAL OF THE MOVANTS HAVE WITHDRAWN THEIR MOTIONS IN THIS CASE.  THEY'RE ALL REPRESENTED BY SOPHISTICATED SECURITIES LITIGATION COUNSEL.  NOT A SINGLE ONE OF THOSE MOVANTS QUESTIONED KBC'S STANDING TO REPRESENT THESE FUNDS IN THIS CASE.

SO THE ONLY ISSUE BEFORE YOUR HONOR THIS MORNING IS WHETHER NORTH ATLANTIC STATES HAS PROVIDED PROOF TO REBUT THE PRESUMPTION THAT KBC IS ADEQUATE AND TYPICAL, AND THAT'S THE KEY WORD HERE TODAY, YOUR HONOR, PROOF.

NOT MY WORDING.  THAT'S WHAT THE PSLRA AND THE NINTH CIRCUIT REQUIRE, PROOF.  NOT SPECULATION, NOT INNUENDO, BUT EVIDENCE AND PROOF.

AND IF THEY CAN'T SHOW THAT EVIDENCE AND PROOF, THEIR CHALLENGE MUST FAIL.

INDEED, IN THE RECENT MERSHO OPINION FROM THE NINTH CIRCUIT, THE COURT MADE CLEAR THAT IT'S THE COMPETING MOVANT'S BURDEN, HERE THE NORTH ATLANTIC STATES, TO SHOW, AND I QUOTE, "ARTICULATE HOW THE EVIDENCE PROVES INADEQUACY."

THAT'S WHAT WE'RE HERE TODAY TO ADDRESS.  HAS

NORTH ATLANTIC STATES PUT FORWARD EVIDENCE OF INADEQUACY?

SO THIS IS ALL RELATED TO KBC'S STANDING TO REPRESENT ITS FUNDS, SO LET'S TURN TO THAT.

KBC ASSET MANAGEMENT IS THE MANAGEMENT COMPANY FOR THE KBC FUNDS.  THIS ISN'T LIKE THE INVESTMENT ADVISOR CASES WE SAW IN THE HUFF CASE IN THE SECOND CIRCUIT WHERE THE COURT FOUND STANDING TO BE LACKING.

THE BELGIUM COLLECTIVE INVESTMENT ACT OF 2012 AND THE FUNDS MANAGEMENT AGREEMENT SPECIFICALLY ENTRUSTS TO KBC THE RESPONSIBILITY, NAY, THE OBLIGATION TO ACT ON THE FUND'S BEHALF AND IN THEIR BEST INTERESTS, INCLUDING IN CLASS ACTIONS.

SPECIFICALLY, ARTICLE 2.2.2 OF THE MANAGEMENT AGREEMENT PROVIDES THAT KBC IS AUTHORIZED TO PERFORM ALL ACTIONS IT CONSIDERS NECESSARY FOR THE MANAGEMENT OF THE FUNDS, INCLUDING, AND I'LL QUOTE THIS FOR YOU, "THE PARTICIPATION IN CLASS ACTIONS."

THE COURT:  I THINK YOU'RE -- PARDON ME.

I THINK YOU RAISED THIS BECAUSE IT SEEMS THAT THIS IS YOUR COLLEAGUE OPPOSITE'S MAIN OBJECTION TO YOU IN THAT WHETHER OR NOT YOU ARE ADEQUATE TO REPRESENT.

MR. MORIARTY:  YES.

THE COURT:  AND I'M GOING TO -- I KNOW THIS WILL DISAPPOINT YOU, BUT I'M GOING TO INTERRUPT YOU, AND IT SEEMS TO ME THAT I SHOULD ASK YOUR COLLEAGUE OPPOSITE WHY, WHY SHOULDN'T YOU -- IT SEEMS THAT, AS YOU SAY, PRESUMPTIVELY, YOUR CLIENT

IS -- HAS THE LARGEST LOSS AND YOU SUGGEST THAT YOUR FIRM IS ADEQUATE, IT'S THIS ONE ISSUE --

MR. MORIARTY:  YES.

THE COURT:  -- THAT I THINK THAT IS INTERESTING TO ME.

MR. MORIARTY:  I THINK YOUR HONOR HAS HIT THE NAIL ON THE HEAD, PARTICULARLY AS MR. ROBBINS'S FIRM HAS REPEATEDLY REPRESENTED TO FEDERAL COURTS THAT KBC IS ADEQUATE AND HAS PUT KBC UP AS A PROPOSED CLASS REPRESENTATIVE IN THE UNDER ARMOUR ACTION PENDING IN THE DISTRICT OF MARYLAND.

THE COURT:  AND WHY SHOULD I DISPUTE HIS WORD TODAY THAT HE SAID PREVIOUSLY IS WHAT YOU'RE SUGGESTING?

MR. MORIARTY:  WELL, I THINK THAT'S EXACTLY IT.

IF I COULD JUST GIVE YOU A COUPLE OF QUOTES, YOUR HONOR, AND THEN I'LL TURN IT OVER.

IN THE UNDER ARMOUR ACTION, THE ROBBINS GELLER FIRM WROTE THAT KBC IS, AND I QUOTE, "PRECISELY THE TYPE OF ENTITY CONGRESS DESIRED TO HAVE SERVE AS A LEAD PLAINTIFF AND EVENTUALLY CLASS REPRESENTATIVE WHEN IT ENACTED THE PRIVATE SECURITY LITIGATION REFORM ACT OF 1995."

MOREOVER, ONCE THE BRIEFING IN THIS CASE WAS FINISHED, THEY SUBMITTED A REPLY BRIEF IN THAT CASE IN WHICH THEY STATED, AND ONCE AGAIN I QUOTE, "DEFENDANTS ARE UNABLE TO PUT FORWARD ANY ACTUAL EVIDENCE UNDERMINING KBC'S ADEQUACY, BECAUSE THERE IS NONE."  THAT WAS THEIR WORDS.

THE COURT:  WELL, LET'S SEE IF THEY'VE CHANGED THEIR TUNE.

MR. MORIARTY:  YES, YOUR HONOR.

MR. ALBERT:  GOOD MORNING AGAIN, YOUR HONOR.

AND AGAIN, MY NAME IS MICHAEL ALBERT AND I'M REPRESENTING THE NORTH ATLANTIC STATES CARPENTERS PENSION AND GUARANTEED ANNUITY FUND.  WITH ME IS DARREN ROBBINS.

SO, YOUR HONOR, OF THE 13 CLASS MEMBERS THAT FILED LEAD PLAINTIFF MOTIONS BEFORE YOUR HONOR IN THIS CASE, KBC IS THE ONLY ONE THAT DID NOT SUFFER ANY LOSSES ON ITS CLASS PERIOD INVESTMENT IN CHEGG.

THE QUESTION BEFORE YOU IS WHETHER KBC IS SUBJECT TO UNIQUE DEFENSES THAT CARRY A NON-SPECULATIVE RISK OF SUCCEEDING.

IN ATTEMPTING TO CONVINCE THE COURT OTHERWISE, THEY OFFER THREE BASES FOR STANDING.

YOUR HONOR, I WOULD SUGGEST THE FIRST TWO FAIL RIGHT OUT OF THE GATE, AND THE ONLY REASON THEY'RE INCLUDED IS TO CREATE A BELT AND SUSPENDERS APPEARANCE OF SAFETY FOR STANDING.

YOUR HONOR, YOU HAVE TWO FEDERAL JUDGES OVER THE LAST THREE YEARS, AND THAT'S JUDGE CAPRONI OF THE SOUTHERN DISTRICT OF NEW YORK AND JUDGE HERRERA THAT PERFORMED THE SAME STATUTORY ANALYSIS AT THE SAME CASE JUNCTURE WITH RESPECT TO THE SAME LAW FIRM THAT ADVANCED THE SAME THREE BASES FOR STANDING AS HERE.

YOUR HONOR, IT WAS THE SAME CLIENT, KBC ASSET MANAGEMENT,

IN THE AT&T CASE THAT JUDGE CAPRONI FOUND WAS SUBJECT TO UNIQUE AND SERIOUS STANDING DEFENSES -- NOT NON-SPECULATIVE -- SERIOUS STANDING DEFENSES.

THE COURT:  SO WHAT'S DIFFERENT HERE?  IS WHAT'S DIFFERENT TODAY A DECLARATION FROM THE FIRM, FROM KBC SAYING THAT WE HAVE, AS COUNSEL JUST ARTICULATED, WE'RE ABLE -- BASED ON THIS AGREEMENT, WE'RE ABLE TO PARTICIPATE IN THIS TYPE OF LITIGATION?  DOESN'T THAT END THE ISSUE?

MR. ALBERT:  ABSOLUTELY NOT, YOUR HONOR, BECAUSE THEY PRESENTED THE SAME EXACT DECLARATION THERE, AND WHAT JUDGE CAPRONI FOUND WAS THAT BELGIUM LAW, THE COLLECTIVE INVESTMENTS ACT THAT MR. MORIARTY REFERENCES, IT'S INSUFFICIENT TO SUPPLANT ARTICLE III'S INJURY IN FACT REQUIREMENT.

YOUR HONOR, THE FACT OF THE MATTER IS, THIS IS EXACTLY W.R. HUFF WHERE THE, WHERE THE PARTY THAT IS SEEKING LEAD PLAINTIFF STATUS, KBC ASSET MANAGEMENT, IT'S A FOREIGN ASSET MANAGER THAT MANAGES PROBABLY 200 OR SO, OR OVER 100 VARIOUS FOREIGN FUNDS.

BUT THE FUNDS AT ISSUE HERE ARE DISTINCT LEGAL ENTITIES. THEY HAVE LEGAL PERSONALITY.  THEY HAVE BOARDS OF DIRECTORS. THEY'RE INCORPORATED, YOUR HONOR.

AND --

THE COURT:  SO WHAT WAS THE DIFFERENCE?  WHAT WAS THE DIFFERENCE THERE?  DID THOSE GOOD JUDGES SAY, WELL, THAT MANAGEMENT IS NOT ENOUGH?  IS THAT WHAT THEY SAID?

MR. ALBERT:  CORRECT, YOUR HONOR.

WELL, YOUR HONOR, AGAIN, IN AT&T, THEY OFFERED TWO BASES FOR STANDING, AND WHAT JUDGE CAPRONI SAID WAS WITH RESPECT TO THE FIRST BASIS, THE BELGIUM LAW, SHE SAID, AND I QUOTE, "IT IS ELEMENTARY THAT IF YOU'RE BRINGING A FEDERAL CASE IN FEDERAL COURT, YOU HAVE TO RELY ON AMERICAN FEDERAL LAW TO ESTABLISH YOUR STANDING."  YOU CAN'T HAVE A MANAGEMENT AGREEMENT, A CONTRACT ESSENTIALLY, GIVING YOU STANDING TO BACKDOOR IT.

AND WITH RESPECT TO THE PRUDENTIAL EXCEPTION, THAT'S THEIR SECOND BASIS, YOUR HONOR, FOR STANDING.  AND THE PRUDENTIAL EXCEPTION, JUST BRIEFLY, IT PROVIDES THAT AN INVESTMENT MANAGER COULD HAVE STANDING IF THERE'S A SUFFICIENTLY CLOSE RELATIONSHIP, AND THEN THE SECOND REQUIREMENT IS A BARRIER TO BRING SUIT.

HERE THERE IS NO BARRIER FROM THE FUNDS THEMSELVES FOR THE INCORPORATED ENTITIES THEMSELVES TO DO SO.  IN FACT, KBC PRODUCED A DECLARATION FROM ITS ATTORNEY HERE, AND I THINK IT'S PARAGRAPH 3, THEY TELL YOU THAT THEY'RE EMPOWERED TO BRING SUIT, THE FUNDS THEMSELVES.

SO THAT'S THE DIFFERENCE, BRIEFLY, BETWEEN -- RATHER, NOT THAT'S THE DIFFERENCE.

AT&T IS ON ALL FOURS HERE.

THE COURT:  SO THAT SEEMS TO BE THE DISTINCTION HERE.

I'M GOING TO TURN BACK TO YOUR COLLEAGUE OPPOSITE AND ASK ABOUT THE DECLARATION.

DOES THAT CHANGE THINGS?  WHAT DOES THAT DO?

MR. MORIARTY:  SO, YOUR HONOR, AT&T IS MOST CERTAINLY NOT ON ALL FOURS.

WHAT THE COURT FOUND IN AT&T WAS KBC DID NOT -- KBC'S FUNDS DID NOT EXECUTE ASSIGNMENTS TO KBC --

THE COURT:  RIGHT.

MR. MORIARTY:  -- WHICH KBC HAS DONE IN THIS CASE.

IN FACT, BEFORE THE AT&T COURT, THE ONLY QUESTION WAS WHETHER THE KBC FUNDS HAD CONVEYED A PROPERTY INTEREST IN THE CLAIMS TO KBC.

AND THE COURT FOUND ON RECONSIDERATION THAT NO ASSIGNMENTS EXISTED, AND THAT'S PERFECTLY TRUE, NO ASSIGNMENTS DID EXIST IN THAT CASE.

THE COURT SPECIFICALLY HELD THAT HAD THE FUNDS EXECUTED ASSIGNMENTS, KBC WOULD HAVE HAD STANDING.

THE COURT:  IS THAT WHERE WE ARE TODAY?

MR. MORIARTY:  THAT IS EXACTLY WHERE WE ARE TODAY.

THE COURT:  THAT WAS MY QUESTION.

MR. ALBERT:  I'M SORRY, YOUR HONOR.

MAY I PLEASE ADDRESS THAT?

THAT'S ABSOLUTELY RIGHT.  KBC -- AT&T DID NOT INVOLVE ASSIGNMENTS.

BUT WHAT I WAS GETTING AT, YOUR HONOR, IS THAT THEY'RE GIVING YOU THREE BASES, BUT ONCE WE ELIMINATE THE FIRST TWO OUT OF THE GATE, IT LEADS US TO THE INESCAPABLE CONCLUSION THAT

KBC'S STANDING RISES AND FALLS ON THESE ASSIGNMENTS.

AND THE ASSIGNMENT HAS THREE PROBLEMS THAT REMAIN UNRESOLVED AS OF THE REPLY BRIEF.

FIRST, YOUR HONOR, THEY HAVEN'T EVEN ATTEMPTED TO SHOW THAT IT IS A VALID ASSIGNMENT UNDER FEDERAL LAW.  SO, YOUR HONOR, IN --

THE COURT:  SO YOU'RE SAYING THAT BECAUSE OF THAT, THAT CREATES SOME POTENTIAL FOR ADDITIONAL LITIGATION THAT AFFECTS ADEQUACY?

MR. ALBERT:  ABSOLUTELY, YOUR HONOR.

JUST AS ONE EXAMPLE, THE ASSIGNMENT WAS EXECUTED AFTER THE COMMENCEMENT OF THE LITIGATION.  WE CITE TO THE SILVER LAKE CASE.  THAT'S JUDGE WHITE FROM THE NORTHERN DISTRICT HERE ABOUT TWO YEARS AGO.  HE FOUND IN A -- THAT'S WHAT HE FOUND, THAT THE FACT THAT THE ASSIGNMENT WAS EXECUTED AFTER THE START OF THE LITIGATION, IT SUBJECTS THE CLASS TO UNIQUE DEFENSES.

AND THAT'S THE THING, YOUR HONOR.  WITH UNIQUE DEFENSES, IT NEED NOT -- I'M SORRY.  IT'S THE VERY EXISTENCE OF THE UNIQUE DEFENSE AND THE DISTRACTION IT POSES TO THE CLASS.

THE COURT:  SURE, IT COULD DISRUPT -- IT'S NOT FAIR TO THE BALANCE OF THE CLASS IF WE GET DISTRACTED WITH OTHER LITIGATION THAT MIGHT OTHERWISE DETRACT FROM THE NATURAL FLOW OF THE CASE.

MR. ALBERT:  PRECISELY.  LIKE IN YOUR LINKEDIN CASE, IT TOOK THEM THREE TRIES TO ESTABLISH THEIR STANDING.

AND THERE'S NO REASON TO DO THAT WHEN YOU HAVE A PERFECTLY TYPICAL AND ADEQUATE LEAD PLAINTIFF.

YOUR HONOR, I'D LIKE --

THE COURT:  SO YOU DON'T -- PARDON ME.  YOU DON'T DISPUTE THAT THEY HAVE THE LARGEST LOSS?  THERE'S NO DISPUTE ABOUT THAT?

MR. ALBERT:  WELL, YOUR HONOR, I DON'T WANT TO BE TOO TECHNICAL.

THE COURT:  OH, YOU DO?

MR. ALBERT:  NO, THEY DO.

BUT I JUST WANT TO POINT OUT THAT IN RE: CAVANAUGH SAYS THAT YOUR HONOR IS SUPPOSED TO SELECT THE PLAINTIFF THAT HAS THE MOST TO GAIN FROM THE LITIGATION.

I JUST WANT TO MAKE CLEAR THAT KBC ASSET MANAGEMENT EITHER HAS NOTHING TO GAIN, OR, B, BECAUSE ITS ASSIGNMENT DOES NOT SET FORTH THE TERMS OF THE ASSIGNMENT, WE DON'T KNOW WHAT KBC ASSET MANAGEMENT HAS TO GAIN.

I MEAN, YOUR HONOR, IS THE ASSIGNMENT REVOKABLE?  IF IT'S REVOKABLE, IT MIGHT NOT BE A VALID ASSIGNMENT.  THE ASSIGNMENT SAYS IT APPLIES TO DEFENDANTS.  DOES IT ONLY APPLY TO THESE DEFENDANTS, OR WHAT IF, IN AN AMENDED COMPLAINT, THEY RAISE NEW DEFENDANTS?

THE COURT:  NOW YOU'RE TALKING LIKE A REAL LAWYER, AREN'T YOU?

MR. ALBERT:  YOUR HONOR, THESE ARE JUST -- THESE ARE

THINGS WE RAISED IN OUR OPPOSITION BRIEF.

BUT INSTEAD OF RESPONDING TO THE SUBSTANCE OF THE ACTUAL LAW IN THE CASES, THEY KIND OF SHOOT THE MESSENGER WITH THIS HYPOCRISY ARGUMENT.

AND, YOUR HONOR, I UNDERSTAND MR. MORIARTY'S HOSTILITY.  I ACCEPT IT.

THE COURT:  HOSTILITY?  IS HE --

MR. ALBERT:  KBC IS AN --

THE COURT:  HE SEEMS CHARMING.  YOU BOTH SEEM QUITE CHARMING THIS MORNING.

MR. ALBERT:  HE IS VERY CHARMING.

THE COURT:  BOTH OF YOU ARE.

SO I GUESS MY QUESTION WAS GOING TO COME OUT AND SAY, WHY NOT, WHAT'S -- WHY ISN'T THERE TYPICALITY AND ADEQUACY?  WHY AREN'T THOSE SATISFIED?  AND THAT'S WHAT YOU'RE TELLING ME, REALLY YOU'RE FOCUSSED ON THE ADEQUACY, AND I THINK IT RELATES TO THE ASSIGNMENT ISSUE AND WHETHER OR NOT AN ASSIGNMENT THAT'S SIGNED POST-FILING OF THE LAWSUIT IS SOMETHING THAT THE COURT SHOULD PERHAPS SQUINT AT OR LOOK AT IN THE TOTALITY OF THAT ANALYSIS.

MR. ALBERT:  THAT'S PARTIALLY THE CASE, YOUR HONOR.

BUT WE POINT OUT THE INITIAL FLAWS IN THE ASSIGNMENT.  THE ASSIGNMENT IS NOT SIGNED, YOUR HONOR, BY THE PEOPLE AT THE, AT THE FUND WHO ARE EMPOWERED TO REPRESENT THE FUND ACCORDING TO THEIR OWN FORMATION DOCUMENTS.

WE PROVIDE YOU THOSE FORMATION DOCUMENTS THAT PLAINLY SAY TWO DIRECTORS OF THE INCORPORATED ENTITY, THE FUND, HAVE TO SIGN -- THEY'RE THE ONES EMPOWERED TO BIND THE FUND WITH RESPECT TO THIRD PARTIES.  WE SAID THAT IN OUR OPPOSITION BRIEF.

THEY COME BACK ON REPLY AND THEY TELL YOU, DON'T LOOK AT THAT, JUDGE, HERE'S ANOTHER DIFFERENT AGREEMENT THAT SAYS THE ASSET MANAGER IS EMPOWERED TO REPRESENT THE FUND IN ALL OF ITS ACCOUNTS, SOMETHING LIKE THAT.

AND IT JUST GOES BACK TO THE POINT THAT YOU MADE, YOUR HONOR.  IT CREATES A RABBIT HOLE, AND YOU DON'T GET TO BRING A RABBIT HOLE INTO THE LITIGATION WITH YOU AS A LEAD PLAINTIFF BECAUSE ULTIMATELY IT'S NOT BEST -- IT'S NOT ABOUT WHAT'S BEST FOR KBC ASSET MANAGEMENT OR ROBBINS GELLER OR MOTLEY RICE. IT'S ABOUT THE CLASS MEMBERS.

THE COURT:  SURE.  HAVE WE CREATED A WARREN HERE?

MR. MORIARTY:  I BEG YOUR PARDON?

THE COURT:  HAVE WE CREATED A RABBIT WARREN HERE?

MR. MORIARTY:  ABSOLUTELY NOT.

MAY I ADDRESS THE ASSIGNMENTS ISSUE?

THE COURT:  YES.

MR. MORIARTY:  MY OPPONENT MENTIONS THAT THEY'RE NOT VALID UNDER FEDERAL LAW.

WELL, IF YOU READ THE ASSIGNMENTS, I THINK THEY'RE PERFECTLY CLEAR.

BUT NOTWITHSTANDING, THE QUESTION OF THE VALIDITY OF THE ASSIGNMENTS IS A QUESTION UNDER BELGIUM LAW, AND THEY CITE THE ARRAY CASE FOR THAT PROPOSITION.

SO WHAT DID KBC DO?  IT PUTS IN A DECLARATION FROM AN EXPERT ON BELGIUM LAW WHO SAYS THESE ASSIGNMENTS ARE INVALID. NO MAGIC WORDS REQUIREMENT, JUST AN INTENT.

SO THEN GOING ON, IT'S THE EVIDENCE VERSUS SPECULATION POINT THAT I'VE BEEN TRYING TO MAKE TODAY AND WHICH THE PSLRA MANDATES, EVIDENCE FROM A DECLARATION THAT SAYS THEY'RE VALID.

ALSO A DECLARATION FROM KBC'S SENIOR LEAD COUNSEL SAYING THEY'RE VALID.

TURNING TO ASSIGNMENT AFTER THE COMMENCEMENT OF THE LITIGATION, THAT'S A TOTAL RED HERRING.  THE ARRAY CASE MADE THAT CLEAR ON RECONSIDERATION, BECAUSE LET'S THINK ABOUT IT. IF YOU COULDN'T ASSIGN -- THEY ASSIGNED IT BEFORE THE LEAD PLAINTIFF DEADLINE.  THAT'S THE KEY POINT, BECAUSE INVESTOR X FILES THE ORIGINAL COMPLAINT, HOW IS SOMEBODY TO KNOW THAT THAT COMPLAINT IS GOING TO BE FILED IN ADVANCE AND GET AN ASSIGNMENT, YOU KNOW, PREEMPTIVELY?

SO YOU DO IT BEFORE THE LEAD PLAINTIFF, AND THAT'S EXACTLY WHAT HAS BEEN DONE HERE AND THAT IS WHAT HAS HAPPENED IN EVERY OTHER CASE, YOU KNOW, INCLUDING IN FRONT OF YOUR HONOR IN, IN INTEL, INCLUDING IN FRONT OF JUDGE TIGAR IN TWITTER, INCLUDING IN FRONT OF JUDGE GONZALEZ ROGERS IN ADVANCED MICRODEVICES.

THE NEXT THING --

THE COURT: IT'S A NICE GROUP TO BELONG TO.

MR. MORIARTY: YOU KNOW, YOUR HONOR, YOU'RE IN GOOD COMPANY, AND THAT'S THE THING THAT I'M GOING TO GO TO. APPOINTING KBC WOULD BE CONSISTENT WITH WHAT ALL THESE OTHER FEDERAL JUDGES HAVE DONE. EVERY SINGLE CASE AT CLASS CERTIFICATION, FOR A RULE 23 ANALYSIS, YOU KNOW HOW MANY TIMES KBC HAS NOT BEEN APPOINTED? ZERO.

SO LET ME JUST TURN BACK TO THE ASSIGNMENTS BY WHICH THE --

THE COURT: THAT'S WHAT I'D LIKE TO -- PARDON ME, BUT THAT'S REALLY WHAT I'D LIKE YOU TO FOCUS ON.

MR. MORIARTY: ABSOLUTELY.

THE COURT: BECAUSE I THINK IT -- I SHOULD GIVE THAT A LITTLE MORE SCRUTINY IN ALL FAIRNESS TO THE CLASS, AND I WANT TO LOOK AT THAT.

MR. MORIARTY: YOUR HONOR, I WOULD BE HAPPY FOR YOU TO GIVE THEM SCRUTINY, JUST LIKE NUMEROUS FEDERAL -- JUST AS NUMEROUS FEDERAL JUDGES AND NUMEROUS DEFENSE FIRMS HAVE DONE.

THESE ARE THE SAME ASSIGNMENTS, SAME FUNDS, SAME INDIVIDUALS SIGNING THAT COOLEY HAS LOOKED AT, THAT LATHAM & WATKINS HAS LOOKED AT, ALL OF THESE TOP DEFENSE FIRMS IN CASES IN THE DISTRICTS WHERE THEY'VE BEEN SUBMITTED.

UNDER ARMOUR, SAME FIRM, SAME ASSIGNMENT, SAME MANAGEMENT GROUP. I THINK YOUR HONOR KNOWS WHETHER THERE WAS A STANDING CHALLENGE IN THAT CASE. OF COURSE NOT.

SO THEY SAY THAT THEY'RE NOT REALLY ASSIGNMENTS, BUT THEY'RE POWERS OF ATTORNEY.

AGAIN, NO MAGIC WORDS ARE REQUIRED.  THE INTENT OF THOSE ASSIGNMENTS IS CLEAR.

PROFESSOR STORME, THE BELGIUM EXPERT WHO'S THE DISPOSITIVE VOICE ON THIS BECAUSE, AGAIN, WE LOOK TO BELGIUM LAW FOR THIS, STATES THAT THEY ARE SUFFICIENT.

THEY HAD THE OPPORTUNITY TO OPPOSE PROFESSOR STORME.  THEY CHOSE NOT TO BECAUSE THERE'S NO GOOD REASON TO.

IN FACT, A NAMED PARTNER OF ROBBINS GELLER HAS REPRESENTED TO A FEDERAL COURT THAT THESE SAME ASSIGNMENTS ARE VALID.

NOW, AGAIN, I'D LIKE TO TALK ABOUT THE INDIVIDUALS WHO SIGNED THEM, AND, AGAIN, THIS IS ANOTHER RED HERRING.

THE FUNDS HAVE CERTAIN BOARD MEMBERS, BUT THEY ARE NOT REQUIRED TO SIGN THE ASSIGNMENTS ON BEHALF OF THE FUNDS.

AND THAT IS BECAUSE -- AND LET'S JUST BE CLEAR.  THE INDIVIDUALS WHO SIGNED THESE ASSIGNMENTS ALL TESTIFIED UNDER PENALTY OF PERJURY THAT THEY'RE REPRESENTATIVES AND THEY'RE AUTHORIZED TO DO SO.

KBC'S LEGAL COUNSEL SUBMITTED A SWORN DECLARATION STATING THAT THESE INDIVIDUALS WERE AUTHORIZED TO SIGN THE ASSIGNMENTS. AGAIN, PROOF?  THE EVIDENCE IS ABSENT.  IT'S JUST MORE SPECULATION, THROW SOMETHING AT THE WALL AND HOPE SOMETHING STICKS.

SO THEY CITE TO THE FUND'S ARTICLES OF ASSOCIATION, BUT

THEY MISCONSTRUE THEM.  THE ARTICLES OF ASSOCIATION PROVIDE THAT THE FUNDS SHALL BE VALIDLY REPRESENTED VIS-A-VIS THIRD PARTIES AND IN COURT AS A PLAINTIFF OR DEFENDANT BY TWO DIRECTORS OF THE FUNDS ACTING JOINTLY.

HERE THOSE TWO DIRECTORS HAVE ACTED JOINTLY BY SIGNING THE MANAGEMENT AGREEMENT WHICH SPECIFICALLY MANDATES -- MANDATES, YOUR HONOR -- KBC TO ACT FOR THE FUNDS, INCLUDING IN THIS CLASS ACTION.

IN TURN, KBC PROVIDED A LIST OF ITS AUTHORIZED SIGNATORIES WHICH SHOWED THAT THOSE INDIVIDUALS WERE AUTHORIZED TO SIGN THEM.  THERE'S NO CHALLENGE TO THAT AGAIN AS WELL.

I MEAN, I THINK THESE -- THESE ASSIGNMENTS ARE NO DIFFERENT FROM THE 20 OTHER CASES, YOU KNOW, WE'VE DISCUSSED, NEVER ONCE BEEN FOUND INVALID.  YOU KNOW, THEY'RE THE SAME AS IN FRONT OF YOUR HONOR IN INTEL, ALL THESE DIFFERENT -- ALL THESE FEDERAL JUDGES.

I THINK WE CAN SEE WHAT'S GOING ON HERE:  THROW A BIT OF MUD, SEE IF SOMETHING STICKS, TRY TO CREATE AN ISSUE.

AND YOU KNOW, YOUR HONOR, THEY SAY ABOUT SHOOTING THE MESSENGER, BUT I DON'T THINK THAT'S REALLY APPROPRIATE.

AS I MENTIONED, MR. ROBBINS'S FIRM HAS REPEATEDLY REPRESENTED THAT THESE ASSIGNMENTS ARE VALID.

YOU KNOW, THERE'S MULTIPLE CASES --

THE COURT:  ALL RIGHT.

MR. MORIARTY:  AND WHAT'S THE DIFFERENCE HERE, YOUR

HONOR?  WHAT'S THE DIFFERENCE?  WHY ARE THEY NOT VALID TODAY?

YOU KNOW WHAT I WOULD SUBMIT IT IS?  IT'S BECAUSE HIS FIRM DOESN'T STAND TO BE APPOINTED AS LEAD COUNSEL.  THAT'S THE ONLY DIFFERENCE.

YOU KNOW, I DON'T WANT TO GET INTO THE OTHER APPLICATIONS.

THE COURT:  NO, NO, THIS IS THE ISSUE THAT I WANTED SOME CLARITY ON.

MR. ALBERT:  SURE, YOUR HONOR.

THE COURT:  JUST TO CONCLUDE, GO AHEAD.

MR. ALBERT:  I'D LIKE TO ADDRESS MR. MORIARTY'S POINTS IN ORDER, PLEASE --

THE COURT:  SURE.

MR. ALBERT:  -- IF YOU DON'T MIND.

THE COURT:  SURE.

MR. ALBERT:  OKAY.  SO ON THE -- ON THE SIGNATURE ISSUE, THE FACT THAT IT WAS SIGNED AFTER THE COMPLAINT WAS FILED, HE SAYS THAT ARRAY ADDRESSES THAT ON RECONSIDERATION, AND HE'S RIGHT, IT DOES ADDRESS THAT ON RECONSIDERATION, UNDER SECOND CIRCUIT LAW.

AND, IN FACT, THERE WAS A SECOND CIRCUIT COURT OF APPEALS CASE ON POINT.

BUT IN THIS, IN THIS CIRCUIT, THAT'S NOT THE LAW.  AND, IN FACT, IN THE CASE THAT WE CITE, THE SILVER LAKE CASE, WHICH THEY DO NOT REPLY -- WHICH THEY DO NOT REPLY TO, JUDGE WHITE SAYS, NONETHELESS, EACH ASSIGNMENT TOOK PLACE AFTER THE LAWSUIT

WAS FILED, AND IT'S UNCLEAR WHETHER -- ESSENTIALLY THEY GO RIGHT HEADFIRST INTO THE NULLITY DOCTRINE BECAUSE -- BECAUSE THEY DIDN'T GET THAT ASSIGNMENT PRIOR TO THE START OF THE LAWSUIT.

AND SO I JUST WANT TO POINT OUT, THEY DIDN'T REALLY ADDRESS THAT.

FURTHERMORE, THEY TALK ABOUT WE HAD AN OPPORTUNITY TO RESPOND TO PROFESSOR STORME OR TO THEIR, TO THEIR DECLARATION. BUT WE DIDN'T, BECAUSE THEY FIRST PUT THESE DECLARATIONS IN ONLY ON REPLY, AND THAT'S SOMETHING THAT JUDGE CAPRONI SPECIFICALLY TOLD THEM ABOUT IN THE AT&T CASE, IF FOREIGN LAW IS SO RELEVANT AND SO INTEGRAL TO YOUR STANDING BASIS, YOU ESSENTIALLY HAD THE DUTY TO PUT THAT IN YOUR MOTION.

YOUR HONOR, THEY CITE ALL OF THESE, YOU KNOW, OTHER CASES WHERE KBC WAS APPOINTED. AND THE DISTINCTION, WHAT'S DIFFERENT ABOUT THIS CASE, YOUR HONOR, IS THAT IN THOSE OTHER CASES, THEY HAD A PARTNER. THEY'D COME IN WITH A PARTNER. THEY DON'T GO IN ON -- BY THEMSELVES. THERE ARE TWO EXCEPTIONS TO THAT.

BUT THE THREE CASES THAT I'VE TOLD YOU ABOUT, YOUR HONOR, AT&T, ARRAY, AND SILVER LAKE, THEY'RE OVER THE -- THOSE WERE ISSUED OVER THE PAST THREE YEARS, YOUR HONOR, WHICH -- AND IT REALLY BRINGS OUT THE REASON WHY POMPANO BEACH IS HERE. THEY HAVE 3 PERCENT OF THE LOSSES OF THE OVERALL FUND, AND THAT'S WHY THEY'RE HERE.

YOUR HONOR, IT MAKES NO SENSE TO SADDLE THE CLASS WITH

FOUR GROUPS OF LAW FIRMS THAT ARE GOING TO TRY TO COLLECT FEES FOR THE SIMPLE REASON TO CREATE WHAT IS ACTUALLY THE SUSPENDERS HERE BECAUSE THE FIRST -- THE FIRST TWO BASES FALL FLAT.

THE ASSIGNMENT, AS WE SAID, IT WASN'T SIGNED BY THE RIGHT PEOPLE.

YOUR HONOR, JUST LOOK AT THE PAPERS.  I TRUST THAT IF YOU LOOK AT THE DOCUMENTS, FORMATION DOCUMENTS WE CITE TO, THE ONES THAT THEY CITE TO, YOU'RE GOING TO SEE IT'S A CONFLICT.

AND THEN, LIKE I SAID, IT WAS SIGNED AFTER THE COMMENCEMENT OF THE LITIGATION, YOUR HONOR.

THE COURT:  OKAY.

MR. MORIARTY:  YOUR HONOR, MAY I JUST ADDRESS SILVER LAKE, BECAUSE I THINK MY FRIEND MAY, MAY HAVE SLIGHTLY MISCONSTRUED THAT CASE.

THE ASSIGNMENTS IN SILVER LAKE WERE SIGNED AFTER THE LEAD PLAINTIFF MOTIONS.  THE ISSUE IS NOT THE COMMENCEMENT OF THE LITIGATION.  THE ISSUE IS THE LEAD PLAINTIFF.  YOU HAVE TO GET THE ASSIGNMENTS BEFORE THE LEAD PLAINTIFF MOTION, WHICH IS WHAT WAS DONE HERE.

OTHERWISE, AS I SAID, YOU HAVE TO BE CLAIRVOYANT AND SAY, OH, WELL, SOME INVESTOR MIGHT FILE A LAWSUIT AT SOME UNDETERMINED POINT IN TIME, SO I PROBABLY SHOULD PREEMPT THEM AND GET AN ASSIGNMENT IN CASE THAT HAPPENS.

THAT'S NOT THE LAW.  SO SILVER LAKE IS --

THE COURT:  NO, I UNDERSTAND.

MR. MORIARTY:  IF YOU WANT ME TO ADDRESS POMPANO, I MEAN, THAT'S -- AGAIN --

THE COURT:  I'D LIKE TO TURN TO ANYONE ELSE WHO WISHES TO BE HEARD ON THIS MATTER.

MR. MORIARTY:  MR. KAPLAN CAN ADDRESS POMPANO BECAUSE IT'S, AGAIN, MORE RAMPANT SPECULATION.

THE COURT:  MR. KAPLAN, DO YOU WISH TO BE HEARD?

MR. KAPLAN:  SURE.

ON THE ASSIGNMENT ISSUE, AND THE TIMING, I MEAN, ESPECIALLY IN THE CONTEXT OF --

THE COURT:  YOU CAN COME TO THE LECTERN.

MR. KAPLAN:  SURE.

MR. MORIARTY:  YOU'VE HEARD ENOUGH FROM ME TODAY, YOUR HONOR.

MR. KAPLAN:  BEFORE I ADDRESS WHY POMPANO IS INCLUDED AS A LEAD PLAINTIFF HERE, ON THE TIMING ISSUE, YOU KNOW, THERE'S MANY, MANY CASES IN THE NORTHERN DISTRICT WHERE THE ASSIGNMENTS OCCUR AFTER THE FILING OF THE INITIAL COMPLAINTS, WHICH IN THIS CONTEXT OFTEN OCCURS WITHIN DAYS OF THE STOCK DROP, AND THAT'S EXACTLY WHY THE PSLRA, ONE OF THE PRINCIPLE REASONS WHY IT WAS ENACTED, IT ENCOURAGES INSTITUTIONAL INVESTORS TO STEP FORWARD.

SO PARTICULARLY IN THAT CONTEXT, IT'S IMPORTANT, AND THE JUDGES RECOGNIZE, YOU LOOK TO NOT THE COMMENCEMENT OF THE LITIGATION, BUT THE TIMING OF THE LEAD PLAINTIFF MOTIONS, AND

BETWEEN THAT PERIOD OF TIME, COURTS ALLOW FLEXIBILITY FOR INSTITUTIONAL INVESTORS TO COME TOGETHER AND EXECUTE ASSIGNMENTS.

IN FACT, MY FIRM SERVES AS A, AND MYSELF, AS LEAD COUNSEL IN A PENDING CASE IN FRONT OF JUDGE CHEN IN THE NORTHERN DISTRICT WHERE WE REPRESENT THREE PUBLIC PENSION FUNDS AND THEY HAD -- THERE WERE ASSIGNMENTS IN THAT CASE AND THEY POST-DATED THE FILING OF THE INITIAL COMPLAINT, BUT WERE MADE BEFORE THE LEAD PLAINTIFF APPLICATION.

AND SO, YOU KNOW, I WOULD SUBMIT THAT THE LAW IN THE NINTH CIRCUIT, IN THE NORTHERN DISTRICT ON THAT TIMING ISSUE IS NO DIFFERENT THAN IN THE SECOND CIRCUIT.

AS TO WHY POMPANO BEACH IS INCLUDED AS A LEAD PLAINTIFF, BOTH POMPANO BEACH AND KBC HAVE HAD MANY CASES WHERE MULTIPLE INSTITUTIONAL INVESTORS HAVE SERVED TOGETHER AS LEAD PLAINTIFF GROUPS OR AS PARTNERSHIPS.  THAT'S EXPRESSLY AUTHORIZED BY THE PSLRA.  THE LANGUAGE IN THE PSLRA REFERS TO BOTH INDIVIDUAL MOVANTS, AND MOVANTS, GROUPS, AUTHORIZED AS GROUPS.  THERE'S RECENT NINTH CIRCUIT CASE LAW ON THE ABILITY OF GROUPS TO SERVE AS LEAD PLAINTIFFS.  AND SO THERE'S NO QUESTION THAT GROUPS ARE ALLOWED.

MY CLIENT, POMPANO BEACH, KBC, MANY, MANY CASES INVOLVING GROUPS THAT HAVE RESULTED IN VERY SUCCESSFUL OUTCOMES FOR SHAREHOLDERS.

MY COLLEAGUE, MR. MORIARTY, REFERRED TO OVER A BILLION

DOLLARS IN ASSETS RECOVERED ON BEHALF OF CLASSES BY KBC IN SECURITIES LITIGATION.  I BELIEVE MOST OF THOSE CASES, IF NOT ALL, INVOLVED KBC ACTING TOGETHER WITH OTHER FUNDS.

SO, YOU KNOW, AS SET FORTH IN THEIR JOINT DECLARATION, THE PARTIES, KBC AND POMPANO BEACH, BELIEVE THAT THEIR POOLED RESOURCES AND EXPERIENCES IN SECURITIES LITIGATION MAKE FOR A PERFECT FIT TO ADVOCATE ON BEHALF OF THE CLASS AND REACH A SUCCESSFUL RESOLUTION IN THIS CASE, PARTICULARLY SO WHERE ONE OF THE FUNDS IS FOREIGN AND ONE OF THE FUNDS IS DOMESTIC.  IT MAKES PERFECT SENSE.

THE COURT:  OKAY.  THANK YOU.

MR. ALBERT:  YOUR HONOR, JUST SOME FINAL COMMENTS.

I WANT TO POINT OUT THAT MR. MORIARTY IS INCORRECT.  IN THE SILVER LAKE CASE, THE ISSUE WAS THAT THE ASSIGNMENT WAS -- IT WAS EXECUTED NOT AFTER -- NOT BEFORE THE LEAD PLAINTIFF DEADLINE.  JUDGE WHITE'S PROBLEM WAS THAT IT WAS AFTER THE COMMENCEMENT OF THE LITIGATION.

NOW, MR. KAPLAN CITES TO ANOTHER CASE BEFORE JUDGE CHEN, I BELIEVE THAT'S THE FIBROGEN CASE, AND JUDGE CHEN POINTS OUT SPECIFICALLY THAT THERE BALTIMORE -- I BELIEVE BALTIMORE EMPLOYEES MADE THE ASSIGNMENT TO BALTIMORE POLICE AND FIRE, AND HE POINTED OUT THAT AN IMPORTANT DISTINCTION IS THAT BALTIMORE POLICE AND FIRE HAD STANDING TO BEGIN WITH.  THEY HAD A LOSS, AND THE ASSIGNMENT ONLY HELPED THEM EFFECTUATE A LARGER LOSS.

AND, YOUR HONOR, I WOULD -- WE WENT TO THAT CASE BECAUSE

THAT'S REALLY THE ONLY ONE THAT THEY CITED ON THE ASSIGNMENT ISSUE.

I'D LIKE TO SHOW YOU THAT ASSIGNMENT, YOUR HONOR, OR LET ME -- IF YOU DON'T MIND ME FILING IT, BECAUSE YOU'RE GOING TO SEE THE DISTINCTION BETWEEN THE KBC ASSIGNMENT AND BETWEEN THE BALTIMORE FIRE ASSIGNMENT. YOU'RE GOING TO SEE THAT IT'S A -- EITHER IT'S A STRUCTURAL PROBLEM OR IT'S JUST AN UNWILLINGNESS TO CONVEY, TO MAKE CLEAR THAT YOU'RE CONVEYING A PROPERTY RIGHT AND TITLE, WHICH IS WHAT IT REQUIRES.

YOUR HONOR, THE HARM TO THE CLASS FROM THESE UNIQUE DEFENSES BEGINS TO ACCRUE RIGHT NOW. SO THIS IMPLICIT APPROACH OF, LOOK, LET US -- LET US SATISFY THE FINANCIAL INTERESTS REQUIREMENT, LET POMPANO BEACH SATISFY THE RULE 23 REQUIREMENT, THAT'S EXACTLY THE SORT OF THING THAT THE PSLRA WANTED TO AVOID WHERE IT'S LIKE, YOU GET THE STEERING WHEEL, I'LL GET THE GAS PEDAL, AND MOM WILL HAVE HER FOOT ON THE BRAKES.

THIS IS WHERE FOUR LAW FIRMS ARE GETTING TOGETHER WHEN ONE LEAD PLAINTIFF CANNOT SATISFY BOTH REQUIREMENTS, AND THIS IS EXACTLY, YOUR HONOR, WHAT JUDGE HARMON TOLD US ABOUT IN ENRON WHERE SHE SAID THE GROUPING OF LEAD PLAINTIFFS, THE POINT OF THAT IS NOT TO BALANCE OUT EACH OTHER'S VISION -- EACH OTHER'S DEFICIENCIES, YOUR HONOR.

AND IF YOU WANT TO GET REAL PRACTICAL WITH IT, YOUR HONOR, THIS HAS SETTLEMENT VALUE. THE FACT THAT KBC HAS DEFICIENT STANDING IN THIS CASE FOR WHATEVER REASON, IT'S GOING TO AFFECT

THE CLASS.

YOUR HONOR, IF THEY ACTUALLY BELIEVED THAT THEY EFFECTUATED A LEGAL AND VALID AND BINDING ASSIGNMENT, WHY DIDN'T THEY SET FORTH ALL OF THEIR TRANSACTIONS IN THEIR PSLRA CERTIFICATION?  THIS IS THE LINCHPIN REQUIREMENT OF THE PSLRA. YOU HAVE TO DISCLOSE ALL OF YOUR TRANSACTIONS, NOT JUST -- IF FUND 1, FUND 2, AND FUND 3 EXIST, FUND 1 AND FUND 2 EACH MADE $20 MILLION, FUND 3 LOST A MILLION DOLLARS, YOU CAN ONLY DISCLOSE FUND 3 IF YOU'RE MOVING SEPARATELY.

BUT IF THERE WAS AN ACTUAL CONVEYANCE OF TITLE, THEN THE MOVANT IS KBC ASSET MANAGEMENT.  IT HAS TO DISCLOSE ALL OF ITS TRANSACTIONS, YOUR HONOR.

AND I JUST WANT TO MAKE SURE THAT I'M MAKING THIS POINT VERY CLEARLY.  IT DOESN'T DO SO.

THE COURT:  OKAY.

MR. MORIARTY:  I DON'T THINK THAT'S REMOTELY CORRECT.

KBC'S CERTIFICATION INCLUDES ALL OF THE FUND'S TRANSACTIONS AND SHOWING THE COMMON STOCK.  I'M REALLY NOT SURE WHERE MY COLLEAGUE IS GOING WITH THAT.

AND AS FOR THESE KBC STANDING ARGUMENTS, IN JUST A COUPLE OF MONTHS, MR. ROBBINS HERE, OR ONE OF HIS PARTNERS, WILL BE GOING UP THE ROAD TO SEE JUDGE TIGAR FOR THE FINAL APPROVAL IN TWITTER WHERE KBC WAS THE SOLE LEAD PLAINTIFF, SOLE CLASS REPRESENTATIVE.

AND THE ARGUMENTS AND SPECULATION WE'RE HEARING TODAY,

WHEN HE PUTS IN HIS APPLICATION THERE, I DON'T THINK THERE'S GOING TO BE ANY CONCERNS ABOUT KBC STANDING THERE, JUST AS THERE HASN'T BEEN IN ANY OF THESE OTHER CASES WHERE WE'VE BEEN APPOINTED.

MR. ALBERT:  YOUR HONOR, I JUST WANT TO SAY THAT'S A FALSE STATEMENT BECAUSE KBC IS NOT THE SOLE CLASS REPRESENTATIVE IN THE TWITTER CASE.

AND I ALSO WANT TO POINT OUT THAT IN TERMS OF THE CERTIFICATION, WHAT MR. MORIARTY SAID IS THAT THEY DISCLOSE ALL OF THE FUND TRANSACTIONS, NOT ALL OF THEIR TRANSACTIONS, KBC ASSET MANAGEMENT'S TRANSACTIONS.

AND, YOUR HONOR, IT'S IMPORTANT BECAUSE IF THEY ACTUALLY INTENDED TO EFFECTUATE AN ASSIGNMENT, AND IF THEY MAINTAIN THAT THEY DO HAVE A VALID AND BINDING ASSIGNMENT, THEN THE MOVANT -- THEY'RE NOT MOVING ON ACCOUNT OF THE FUNDS.  THEY'RE MOVING ON THEIR OWN ACCOUNT.

THE COURT:  I UNDERSTAND.

MR. ALBERT:  YOUR HONOR, I THINK MY COLLEAGUE --

MR. MORIARTY:  YOUR HONOR, THERE'S -- KBC DOESN'T -- OH, SORRY.

MR. ROBBINS:  MAY I APPROACH?

THE COURT:  SURE.

MR. ROBBINS:  DARREN ROBBINS ON BEHALF OF THE NORTH ATLANTIC FUNDS.

MY NAME HAS BEEN INVOKED A COUPLE OF TIMES TODAY, YOUR

HONOR, AND I JUST WANTED TO RESPOND DIRECTLY TO THE COMMENT ABOUT TWITTER.

WE'RE VERY PROUD OF THE RESULT THAT WE ACHIEVED THERE REPRESENTING THE OTHER CLASS REPRESENTATIVE.  IN THAT CASE, THERE ARE TWO CERTIFIED REPRESENTATIVES.  ONE IS A TRADITIONAL PENSION FUND FROM THE UNITED STATES, THE NATIONAL ELEVATORS FUND, WHICH WE REPRESENTED.

AND ALSO, YOU HEARD MR. MORIARTY REFER A NUMBER OF TIMES TO THE BILLION DOLLARS THAT KBC WAS RESPONSIBLE FOR.

WELL, BOTH IN TWITTER, WHERE I SETTLED THE CASE, AND IN SEVERAL OF THOSE OTHER CASES, I NEGOTIATED THOSE SETTLEMENTS, OVER 90 PERCENT OF WHICH REPRESENTING OTHER FUNDS.

AND IT'S INTERESTING THAT HE REFERS TO UNDER ARMOUR REPEATEDLY, WHICH IS AN ONGOING LITIGATION, WHERE KBC IS NOT THE LEAD PLAINTIFF.  THEY REQUESTED THAT KBC BE ADDED -- THERE'S A LEAD PLAINTIFF IN THAT CASE, WHICH I REPRESENT -- AND THEY BE ADDED.

SO THEY MAKE MUCH ADO -- YOUR HONOR IS FAMILIAR WITH CLASS ACTION LITIGATION.  OFTENTIMES LAW FIRMS AND PLAINTIFFS ARE ADDED TOGETHER IN A CONCERTED EFFORT, AND I THINK IT'S HIS SUGGESTION THAT WHENEVER HE HAS CLIENTS THAT ARE ADDED TOGETHER WITH OURS, OR WE COORDINATE ACTIVITY, THAT SOMEHOW I'M RESPONSIBLE FOR THE UNDERLYING OPERATIONS OF HIS CLIENT.

I JUST WANTED TO MAKE THAT KIND OF CLEAR AS TO TWITTER.

THE COURT:  I UNDERSTAND.

MR. ROBBINS:  DO YOU HAVE ANY QUESTIONS OF ME, YOUR HONOR?

THE COURT:  NO.  THANK YOU.  THANK YOU FOR THAT INFORMATION.

MR. MORIARTY:  LET ME JUST RESPOND BRIEFLY ABOUT KBC NOT DISCLOSING ANY TRANSACTIONS.  KBC IS THE ASSET MANAGER OF THE FUND.  THE FUNDS MADE THE TRADES, NOT KBC ASSET MANAGEMENT.  SO THERE IS NOTHING ELSE TO DISCLOSE.

ALSO IN UNDER ARMOUR, YOU KNOW, MY FIRM HAS WORKED VERY WELL -- WE BASICALLY, YOU KNOW, WORKED WITH ROBBINS GELLER FOR KBC TO REPRESENT A GROUP OF INVESTORS WHO SUFFERED LOSSES IN CONNECTION WITH ONE OF THE CORRECTIVE DISCLOSURES.  KBC IS THE ONLY, THE ONLY CLASS REPRESENTATIVE THERE WHO HAS STANDING TO DO SO.

SO KBC BASICALLY IS DOING THE CLASS A FAVOR BY COMING IN, PRODUCING A QUARTER OF A MILLION PAGES OF DOCUMENTS, SITTING FOR TWO DAYS OF DEPOSITIONS IN WHICH -- YOU KNOW, TO REPRESENT THOSE INVESTORS.

IF KBC WAS ELIMINATED IN THAT CASE, THEN THOSE INVESTORS HAVE NO ONE WITH STANDING TO REPRESENT THEM.

YOU KNOW --

THE COURT:  LET ME JUST SAY THIS:  I AM GOING TO -- I WILL PERMIT YOU TO FILE THE OTHER AGREEMENT.  I THINK YOU WANTED TO --

MR. ALBERT:  YES, PLEASE, YOUR HONOR, FOR THE

FIBROGEN CASE.

THE COURT:  JUST FOR PURPOSES OF COMPARISON.

MR. ALBERT:  SO YOU'RE ABLE TO SEE IT, YES.

THE COURT:  YOU CAN FILE THAT IN 48 HOURS, I EXPECT.

MR. ALBERT:  OH, YEAH.

THE COURT:  AND I'LL LOOK AT THAT.  I'LL OTHERWISE TAKE THIS UNDER SUBMISSION TODAY.

MR. MORIARTY:  ALL I WOULD SUGGEST, YOUR HONOR, LOOK AT THE ASSIGNMENTS, LOOK AT THE STORME DECLARATION, LOOK AT THE KBC DECLARATION.  I THINK YOU CAN SEE WHAT'S GOING ON HERE.

MR. KAPLAN:  ON THE POINT ABOUT FIBROGEN, THERE'S SORT OF APPLES AND ORANGES BEING MIXED HERE.  THE CASE WAS BROUGHT UP AND RAISED, YOUR HONOR, ON THE TIMING ISSUE, THAT YOU HAVE TO HAVE THE ASSIGNMENTS OCCUR BEFORE, SAY, THE STRIKE SUIT IS FILED, OR IS IT SUFFICIENT TO HAVE THE ASSIGNMENTS BEFORE THE LEAD PLAINTIFF PROCESS?

NOW THEY'VE PIVOTED A LITTLE BIT AND THEY'RE TRYING TO SAY, WELL, LET'S COMPARE THE LANGUAGE OF THE ASSIGNMENTS.

WELL, ONE WAS UNDER U.S. LAW AND THEY INVOLVED FUNDS ON THE EAST COAST OF THE UNITED STATES, AND ANOTHER IS EUROPEAN.

SO TO COMPARE THE LANGUAGE OF ASSIGNMENTS THAT ONE WERE EXECUTED IN EUROPE UNDER EUROPEAN LAW AND U.S. LAW, I DON'T THINK IT MAKES SENSE.  THAT'S NOT THE PROPER LEGAL ANALYSIS.

AND IT'S ALSO INCONSISTENT WITH WHY THIS CASE WAS RAISED, WHICH WAS REALLY JUST THIS TIMING QUESTION.

THE COURT:  UNDERSTOOD.

MR. KAPLAN:  THANK YOU.

THE COURT:  UNDERSTOOD.  COUNSEL WOULD LIKE ME TO LOOK AT THAT AND I'M GOING TO GIVE HIM THAT FAVOR AND I'LL LOOK AT IT.

MR. MORIARTY:  THANK YOU VERY MUCH.

MR. ALBERT:  THANK YOU, YOUR HONOR.

MR. MORIARTY:  THANK YOU, YOUR HONOR.  WE APPRECIATE THE OPPORTUNITY.

(THE PROCEEDINGS WERE CONCLUDED AT 10:01 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED:  SEPTEMBER 2, 2022