COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Telephone:    +1 858 550 6000
Facsimile:    +1 858 550 6420

Attorneys for Defendants Chegg, Inc., Daniel L.
Rosensweig, Andrew J. Brown, and Nathan Schultz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LEAVE TO SEEK RECONSIDERATION OF MOTION TO DISMISS ORDER, OR IN THE ALTERNATIVE, TO CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL**<br><br>Dept:      Courtroom 8<br>Judge:    P. Casey Pitts |

## TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION .................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.     INTRODUCTION ........................................................................................................ 2

II.    RECONSIDERATION OF THE ORDER IS APPROPRIATE ..................................... 5

    A.    The Court Did Not Require Plaintiffs to Plead Particularized Facts to Substantiate Their Theory of Fraud. ........................................................ 6

    B.    The Court Applied the Wrong Scienter Standard. ................................... 9

    C.    The Court Did Not Apply Rule 9(b)'s Heightened Pleading Requirement When Analyzing Loss Causation. ....................................... 12

    D.    Defendants Were Reasonably Diligent in Filing the Motion for Reconsideration. ................................................................................. 15

III.   ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS RULING ON LOSS CAUSATION FOR INTERLOCUTORY APPEAL ................................................... 17

    A.    Whether Loss Causation is Adequately Pled is a Controlling Question of Law. ............................................................................................. 17

    B.    Substantial Ground For Difference of Opinion. ..................................... 18

    C.    Resolution of the Appeal In Defendants' Favor Would Materially Advance—Indeed, Would End—the Litigation. ..................................... 19

IV.   CONCLUSION ......................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
  2006 WL 2850017 (N.D. Cal. Oct. 4, 2006)............................................................. 17

*In re Am. Apparel, Inc. S'holder Litig.*,
  855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................................................... 10

*Amor Ministries v. Century Sur. Co.*,
  2015 WL 11251726 (S.D. Cal. June 3, 2015)........................................................... 18

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ............................................................. 5, 15

*Aramic LLC, et al. v. Revance Therapeutics, Inc,. et al.*,
  2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ................................................. 3, 11, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................... 9

*Best Carpet Values, Inc. v. Google LLC*,
  Case No. 5:20-cv-04700-EJD (Dkt. No. 51 at 5-6) ................................................. 20

*Bettencourt v. Parker*,
  2021 WL 6284198 (E.D. Cal. Dec. 14, 2021) .......................................................... 17

*Brickman v. Facebook*,
  2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) .......................................................... 20

*In re Cement Antitrust Litig. (MDL No. 296)*,
  673 F.2d 1020 (9th Cir. 1981)................................................................................... 17

*Cheng v. Activision Blizzard, Inc.*,
  2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) ........................................................ 3, 9

*Connetics*, 542 F. Supp. 2d at 1008 ................................................................................ 11

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010)..................................................................................... 18

*Crutchfield v. Match Grp., Inc.*,
  529 F. Supp. 3d 570 (N.D. Tex. 2021)......................................................................... 8

*Espy v. J2 Global, Inc.*,
  2024 WL 1689091 (9th Cir. Apr. 19, 2024) .................................................... *passim*

*Glazer Capital Mgmt., L.P. v. Forescout,*
   63 F.4th 747 (9th Cir. 2023) ........................................................................................ 6, 7

*Hamano v. Activision Blizzard, Inc.,*
   2019 WL 7882076 (C.D. Cal. Oct. 17, 2019) ............................................................. 5

*Hershewe v. Joyy, Inc.,*
   2023 WL 3316328 (9th Cir. May 9, 2023) ................................................................. 8

*Huang v. Avalanche Biotechnologies, Inc.,*
   2016 WL 6524401 (N.D. Cal. Nov. 3, 2016) .............................................................. 3

*In re Int'l Fibercom, Inc.,*
   503 F.3d 933 (9th Cir. 2007) ...................................................................................... 16

*United States ex rel. Integra Med Analytics LLC v. Providence Health and Servs.,*
   2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) ............................................................... 20

*Lamartina v. VMware, Inc.,*
   2021 WL 4133851 (N.D. Cal. Sept. 10, 2021) ........................................................... 8

*Lloyd v. CVB Fin. Corp.,*
   811 F.3d 1200 (9th Cir. 2016) ........................................................... 4, 13, 14, 19

*Lyons v. Baughman,*
   2007 WL 1378022 (E.D. Cal. May, 10 2007) ............................................................ 15

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.,*
   2024 WL 1588706 (U.S., Apr. 12, 2024) ................................................................... 6, 16

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
   540 F.3d 1049 (9th Cir. 2008) .................................................................................... 6, 9

*Mineworkers' Pension Scheme v. First Solar Inc.,*
   881 F.3d 750 (9th Cir. 2018) ...................................................................................... 17

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC,*
   2015 WL 1548833 (N.D. Cal. Apr. 7, 2015) ............................................................. 15

*Mueller v. San Diego Ent. Partners, LLC,*
   260 F. Supp. 3d 1283 (S.D. Cal. 2017) ..................................................................... 3

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs and Co.,*
   2013 WL 12306438 (C.D. Cal. July 11, 2013) ......................................................... 20

*In re Nektar Therapeutic Sec Litig.,*
   34 F.4th 828 (9th Cir. 2022) ...................................................................................... 3, 9

*Nuveen Mun. High Opportunity Fund v. City of Alameda,*
   730 F.3d 1111 (9th Cir. 2013) .................................................................................... 12

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY ORDER  FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
  806 Fed. Appx. 603 (9th Cir. 2020) ................................................................. 14, 19

*Or. Pub. Emps. Ret. v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ........................................................... 4, 10, 12, 19

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ....................................................... 10

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ......................................................... 17, 18, 19, 20

*Reese v. Browne*,
  2009 WL 10668680 (W.D. Wash. July 1, 2009) ..................................................... 18

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ...................................................................... 10, 11

*S. Ferry LP No. 2 v. Killinger*,
  2005 WL 3307533 (W.D. Wash. Dec. 6, 2005) ...................................................... 20

*Senne v. Kansas City Royals Baseball Corp.*,
  2016 WL 1623913 (N.D. Cal. Apr. 25, 2016) ....................................................... 15

*Silbersher v. Allergan Inc.*,
  2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ...................................................... 18, 19

*Smilovits v. First Solar Inc.*,
  119 F. Supp. 3d 978 (D. Ariz. 2015) ............................................................... 18

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187
  (9th Cir. 2001) ..................................................................................... 9

*In re Twitter, Inc. Sec. Litig.*,
  Case No. 4:16-cv-05314-JST (Dkt. No. 615 at 2) ................................................... 16

*VIVUS,* 2012 WL 4477647, at *19 ..................................................................... 11

*In re WageWorks, Inc., Sec. Litig.*,
  2020 WL 2896547 (N.D. Cal. June 1, 2020) ........................................................ 19

*Westley v. Oclaro, Inc.*,
  897 F. Supp. 2d 902 (N.D. Cal. 2012) ............................................................... 5

*Weston Family P'ship LLLP v. Twitter*,
  29 F.4th 611 (9th Cir. 2022) ..................................................................... 3, 7

*In re Wet Seal, Inc. Sec. Litig*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) .......................................................... 14, 19

**Statutes**

28 U.S.C.

§ 1292(b) ................................................................................................................ *passim*

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5 .............................................. *passim*

**Other Authorities**

Civ. L.R. 7-9 ................................................................................................................ 1, 5, 10

Federal Rule of Appellate Procedure 5(a) ......................................................................... 1

Federal Rule of Civil Procedure 54(b) ......................................................................... 1, 5, 15

Federal Rules of Civil Procedure Rule 9(b) .......................................................................... *passim*

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT, Defendants Chegg, Inc. ("Chegg" or the "Company"), Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz (collectively, "Defendants") move this Court, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9, for leave to file a motion for reconsideration of this Court's Order Denying Defendants' Motion to Dismiss (the "Order"). (ECF No. 150.)  In the alternative, Defendants move this Court, pursuant to Federal Rule of Appellate Procedure 5(a) and 28 U.S.C. § 1292 and this Court's inherent authority, for an order certifying immediate interlocutory appeal from this Court's Order.  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other matters as may be presented to the Court at a hearing or otherwise.

**STATEMENT OF ISSUES TO BE DECIDED**

**A.**       Whether, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9(b), Defendants should be given leave[1] to file a motion for reconsideration of this Court's Order because the Court "manifest[ly] fail[ed] . . . to consider . . . dispositive legal arguments," Civ. L.R. 7-9, in its analysis of whether Plaintiffs adequately pled falsity, scienter, and loss causation with the degree of particularity required under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-5, and Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").

**B.**       Whether, in the alternative, pursuant to Federal Rule of Appellate Procedure 5(a) and 28 U.S.C. § 1292(b), the Court should certify for interlocutory appeal to the Ninth Circuit, two controlling questions of law:

(1) Whether loss causation is adequately pled where a stock drop follows an announcement of revised revenue guidance, absent particularized facts showing the company revised guidance because of the alleged fraud?

(2) Whether loss causation is adequately pled based on an analyst commenting on a possible connection between the stock drop and alleged fraud?

**MEMORANDUM OF POINTS AND AUTHORITIES**

---

[1] In the interest of streamlining the Court's review, Defendants are prepared to stand on this memorandum of points and authorities as the basis for their motion for reconsideration should the Court grant leave, but request the opportunity to file a reply should Plaintiffs file an opposition.

## I.    INTRODUCTION

While Defendants do not seek leave to file a motion for reconsideration lightly, such relief is warranted here because the Court manifestly failed to consider material facts and dispositive law. (*See generally* Order.)  Indeed, the Order conflates particularity with plausibility, relies on misstatements of Ninth Circuit law, and otherwise misapplies the PSLRA's and Rule 9(b)'s heightened pleading standards.  Critically, this case is not about whether students used Chegg to cheat (a serious issue, but not a legal claim); this case centers on whether the Company and certain of its executives misrepresented the reasons for its subscriber and revenue growth to investors.  Yet, the Order mistakenly focuses on former and not the latter.  But for these errors, the Court would have been compelled to dismiss the Complaint[2] on falsity, scienter, and loss causation grounds.

First, the Court did not require Plaintiffs to properly plead their theory of fraud – that (1) cheating materially "increas[ed]" during the class period *and* that (2) such increase in cheating "fueled" revenue and subscriber growth.[3]  (*See* ¶¶ 176, 199, 227.)  Instead, the Court held that "plaintiffs need not show at this stage the number of subscribers that were using Chegg to cheat; they need only demonstrate with particularity that there was substantial cheating on the platform." (Order at 8.)  But even assuming Plaintiffs' allegations of "substantial cheating" were true, they do not support any claim at issue in this case.  In other words, "substantial cheating" is not the same as the rate of cheating *increasing* during the class period compared to prior periods.  Nor does it mean that any increase in alleged cheating "*fueled*" subscriber or revenue growth during the class period.

As the Court acknowledged at the hearing, "the separate question about the source of growth" is "a distinct question," and a critical one.  (Transcript of Motion to Dismiss Proceedings held on December 13, 2023 ("Tr.") ECF No. 147 at 42.)  Yet, the Court held, "while plaintiffs must plausibly demonstrate that the remote learning environment accelerated Chegg's growth during the pandemic, the Court can draw inferences from plaintiff's circumstantial evidence to find that cheating on the platform in at-home learning environments ultimately fueled Chegg's growth."

---

[2] All references to "¶__" are to the Consolidated Class Action Complaint for the Violations of the Federal Securities Laws ("Complaint"), filed December 8, 2022. (ECF No. 115.)
[3] All emphasis added and internal citations and quotations omitted, unless otherwise noted.

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY ORDER  FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP

(Order at 5.)  "[D]raw[ing] inferences from . . . circumstantial evidence" is not the legal standard for alleging particularized facts. (*Id.*)  Thus, in so holding, the Court improperly allowed Plaintiffs to survive the heightened pleading standards imposed by the PSLRA with vague, generalized, and conclusory allegations that cheating fueled subscriber and revenue growth during the class period, combined with attenuated "inferences" of non-particularized "circumstantial" evidence.  Moreover, the Court's conclusion cannot be reconciled with its suggestion at the hearing that there is a "black hole" between alleged cheating and growth.  (Tr. at 41.)  After calling out this lack of particularity, the Court appears to fill this "black hole" with vague and conclusory allegations attributed to unreliable former employees.  As a result, it impermissibly makes inferential leaps and "assumptions," and "connect[s] the dots." *See In re Nektar Therapeutic Sec  Litig.*, 34 F.4th 828, 832 (9th Cir. 2022) (rejecting plaintiffs' theory "without specific allegations to connect the dots"); *Huang v. Avalanche Biotechnologies, Inc.*,  2016 WL 6524401, at *6 (N.D. Cal. Nov. 3, 2016) (finding a "possible correlation" insufficient to "connect[] the dots" to support a "plausible inference"); *see also Weston Family P'ship LLLP v. Twitter*, 29 F.4th 611, 621 (9th Cir. 2022) (declining to "assume or implausibly infer" that defendants had knowledge based on later developed facts).

Second, the Court applied the wrong scienter standard.  The PSLRA demands much more than access to or knowledge of a fact that Plaintiffs claim Chegg should have disclosed.  *Mueller v. San Diego Ent. Partners, LLC*, 260 F. Supp. 3d 1283, 1293 (S.D. Cal. 2017) (conclusory allegations that "[d]efendants acted knowingly or severely reckless . . . do not constitute particular facts to support" scienter under the PSLRA).  "The key to pleading intentional or reckless conduct is pleading facts that show that when defendants made the allegedly false statements, they ***knew they were false***, or ***knew facts 'so obvious that they must have been aware' that they were misleading the public.***" *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *11 (C.D. Cal. Apr. 18, 2022); *see also Aramic LLC, et al. v. Revance Therapeutics, Inc,. et al.*, 2024 WL 1354503, at *14 (N.D. Cal. Apr. 2, 2024) (holding knowledge of alleged defects insufficient and dismissing on scienter grounds).  Indeed, just three days ago, the Ninth Circuit affirmed a dismissal on scienter grounds, holding that mere knowledge of undisclosed details, without more, "would not indicate a

strong inference of scienter in [the company's] failure to disclose those details." *Espy v. J2 Global, Inc.*, 2024 WL 1689091, at *5 (9th Cir. Apr. 19, 2024). It explained that, "[w]hat is missing are credible allegations of an intent to defraud investors." *Id*. at *6.

The Order does not address this core inquiry – whether each defendant knew or believed they were misleading investors. Instead, the Court only found a "strong inference of scienter as to Chegg's **knowledge about cheating on its platform**." (Order at 12.) But alleged knowledge of cheating is not the same as knowing each challenged statement was false – especially where Defendants never denied the existence of cheating. (*See* ¶¶ 58, 61.) Nor does knowledge of alleged cheating make it "so obvious" that each defendant must have known they were misleading investors when making the challenged statements about Chegg's growth during a global pandemic. As a result, the Court failed to engage in the necessary analysis to determine whether each challenged statement was made with an intent to defraud.

Third, the Court did not properly apply Rule 9(b)'s heightened pleading standard when analyzing loss causation. Plaintiffs' loss causation theory is that Chegg revised revenue guidance in November 2021 because students returned to campus and could not cheat anymore, which slowed growth and caused a stock drop. But the Court did not require Plaintiffs to substantiate this theory with any particularized facts, as required by the Ninth Circuit. *Or. Pub. Emps. Ret. v. Apollo Grp. Inc.,* 774 F.3d 598, 605 (9th Cir. 2014). There is not a single email, report, projection, confidential witness allegation, or public statement suggesting that Chegg revised its revenue guidance because of any expected decrease in alleged cheating. Instead, the Court entirely relies on one analyst report and Forbes article, both of which simply speculate about the reason Chegg revised FY 2021 guidance. (*See* Order at 14.) But speculation by third parties fails in the same way as speculation by plaintiffs or former employees. To reach the opposite conclusion, the Court erroneously cites a single case, *Lloyd v. CVB Fin. Corp.,* 811 F.3d 1200 (9th Cir. 2016), for the proposition that courts can rely solely on analyst commentary to plead loss causation. But *Lloyd* says no such thing. Instead, *Lloyd* held that a stock drop following the announcement of an SEC investigation **may** constitute loss causation when the allegations underlying the investigation are substantiated by later revelations – revelations that are not present here. 811 F.3d at 1210-11

(noting defendants' subsequent disclosure of plans to charge-off debt following the SEC subpoena "confirmed" the "market's fears"). Finally, the Court cannot ignore the fact that Chegg's year-over-year growth continued to increase, making Plaintiffs' theory not only illogical, but impossible.

In the alternative, if the Court does not believe its loss causation ruling warrants reconsideration under Local Rule 7-9, it should certify two questions regarding loss causation for interlocutory appeal under 28 U.S.C. § 1292(b): (1) whether loss causation is adequately pled where a stock drop follows an announcement of revised revenue guidance absent particularized facts showing the company revised guidance because of the alleged fraud and (2) whether loss causation is adequately pled based on an analyst commenting on a possible connection between the stock drop and alleged fraud.

For these reasons, the Court should grant reconsideration and/or certify its Order for interlocutory appeal to the Ninth Circuit.

## II.    RECONSIDERATION OF THE ORDER IS APPROPRIATE

The Court may reconsider its interlocutory orders before it enters a final judgment. Fed. R. Civ. P. 54(b). In the Northern District of California, leave to seek reconsideration of an interlocutory order is appropriate where there has been a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3). The movant may seek leave anytime "before the entry of judgment," so long as the movant "show[s] reasonable diligence in bringing the motion." *Id.* 7-9(a), (b). California federal courts have granted reconsideration motions based on the misapplication of legal standards and errors. *See Hamano v. Activision Blizzard, Inc.*, 2019 WL 7882076, at *3 (C.D. Cal. Oct. 17, 2019) (granting defendants' motion for reconsideration for clear error in denying motion to dismiss); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1167 (N.D. Cal. 2019) (granting motion for reconsideration and "agree[ing] there was manifest failure in [the Court's] earlier order"); *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 935, 938 (N.D. Cal. 2012), *on reconsideration in part* (Jan. 10, 2013) (granting plaintiffs' motion for reconsideration in part after being "persuaded that [the court] erred").

**A.    The Court Did Not Require Plaintiffs to Plead Particularized Facts to Substantiate Their Theory of Fraud.**

Plaintiffs' core theory, as alleged, is that Chegg failed to disclose that its "massive subscriber growth at the time was [ ] directly attributable to students' increasing use of Chegg's platform to cheat which was made easier by the transition to remote learning." (¶ 176; *see also e.g.*, ¶¶ 192, 199.)  Accordingly, to survive dismissal under this theory, as they have framed it, Plaintiffs must plead particularized facts showing (1) "students' ***increasing*** use of Chegg's platform to cheat" during the Class Period time ***and*** (2) subscriber and revenue growth was "***directly attributable***" to the alleged increases in cheating. (*Id*.)  The Court did not require either showing.[4] Instead, it held that "substantial cheating on the platform" – a different proposition than Plaintiffs' theory – was alleged with particularity.[5] (Order at 8.)  Based on that finding, and without requiring any particularized facts in support, the Court drew "inferences" based on unalleged "circumstantial evidence" to arrive at the conclusion that it was plausible increased cheating fueled growth on Chegg's platform. (*Id.* at 5, 8.)

In *Glazer Capital Mgmt., L.P. v. Forescout,* 63 F.4th 747, 778 (9th Cir. 2023), the Ninth Circuit recently addressed this very issue, making clear that the PSLRA's "particularity" requirement is distinct from the plausibility standard:

> Plaintiffs argue that they need not identify the precise dates of the channel partner losses because falsity is not subject to a heightened pleading standard, so Plaintiffs must show only that their falsity allegations are *plausible*. . . . Plaintiffs confuse *particularity* (the level of detail required in the allegations) with *plausibility* (the strength of the inference that an element of the claim is satisfied based upon the facts alleged). Thus, while it may be plausible (under the reasonable inference standard

[4] The pleading standard in securities class actions is unlike any other standard under federal law. Because these cases involve serious allegations of fraud and put reputations at stake, Congress enacted the PSLRA in 1995 to impose very high hurdles for these cases to survive dismissal.  These have been described as "formidable pleading requirements."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008).  Not only do plaintiffs have to plead plausible theories of fraud, they must support those theories with particularized factual allegations.  And even if they can plead particularized facts showing falsity, they must plead particularized facts creating a strong inference of intentional or conscious conduct.  This is not easy to do.  *Espy*, 2024 WL 1689091, at *1 (noting "demanding" pleading standard for securities litigation).

[5] The Court's finding that there was "substantial cheating" on Chegg does not render any challenged statement misleading, nor establish Plaintiffs' theory of fraud.  The Supreme Court recently reiterated that a pure omission of information cannot form the basis of a Rule 10b-5(b) claim.  *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 2024 WL 1588706, at *6 (U.S. Apr. 12, 2024).  The same is true here with respect to allegations of "substantial cheating."

of *Twombly/Iqbal*) that the channel partner losses occurred prior to Forescout's statements, Plaintiffs' claim nonetheless fails for lack of detail.

*Id.* (emphasis in original).  Similarly, in *Weston v. Twitter*, the plaintiffs alleged that Twitter misled investors by making positive statements about its platform in July 2019 without disclosing certain software bugs.  *Weston Fam. P'ship LLLP v. Twitter, Inc.* 29 F.4th 611, 621-23 (9th Cir. 2022).  The Ninth Circuit held that the plaintiffs failed adequately to plead falsity as the complaint lacked particularized facts showing that the allegedly omitted information regarding software bugs had been discovered when Twitter made the challenged statements.  *Id.*  The plaintiffs relied heavily on a blog post from early August 2019, which stated that Twitter had "recently discovered" the bugs, then, as described by the Court, "le[pt] to the conclusion" that Twitter knew about the bugs when the challenged statements were made six days earlier in July.  *Id.* at 622.  The Ninth Circuit rejected plaintiffs' argument because, "without more, temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)."  *Id.*  In other words, even if plaintiffs' theory that Twitter knew of the bugs six days earlier was plausible, it was not substantiated with particularized facts as required by the PSLRA.  Plaintiffs in securities cases may not "assume" or "leap" to conclusions to plead falsity; rather, they must allege particularized facts establishing that the allegedly undisclosed conditions or events existed when the challenged statements were made.  *Id.* at 621–22.  As in *Glazer* and *Weston*, Plaintiffs fail to allege specific facts to support either part of their theory.  As a result, the Complaint fails regardless of whether Plaintiffs' theory is plausible or not.

First, the Court's order did not address whether Plaintiffs adequately alleged a material increase of cheating on Chegg's platform during the class period.  This is "manifest" error given the Complaint alleges at least six times that Chegg misled investors by failing to disclose that "increasing use of Chegg['s] [platform] to cheat" fueled growth.  (¶ 85; *see also* ¶¶ 176, 181, 194, 199, 217.)  As Defendants explain in their motion to dismiss, to show an increase in cheating, Plaintiffs must necessarily compare the rate of cheating during the class period to prior periods and support allegations of increased cheating with particularized facts.  (Defendants Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 122) ("Mot.") at 11.)  Here, Plaintiffs allege nothing about the rate of cheating pre-class period, precluding the Court from engaging in that

essential analysis. Nonetheless, the Court held, "plaintiffs need not show at this stage the number of subscribers that were using Chegg to cheat; they need only demonstrate with particularity that there was substantial cheating on the platform." (Order at 8.) But "substantial cheating" is not the same as the "increasing" rate of cheating Plaintiffs allege. And without allegations sufficient to indicate an increase in the rate of cheating, the idea that cheating caused the increase in revenue and subscriptions is implausible. *Hershewe v. Joyy, Inc.*, 2023 WL 3316328, at \*1 (9th Cir. May 9, 2023) (affirming dismissal of "merely conclusory" allegations of falsity for failure to detail how data related to "fake users" were connected to defendants); *Lamartina v. VMware, Inc.*, 2021 WL 4133851, at \*7 (N.D. Cal. Sept. 10, 2021) (finding plaintiff "ha[d] not pled facts with sufficient particularity" despite noting the theory "may [have been] viable").

Second, the Court did not require Plaintiffs to plead particularized facts showing that massive subscriber and revenue growth was "directly attributable" to alleged increases in cheating – the second tenet of Plaintiffs' fraud theory. Instead, the Court held, "while plaintiffs must plausibly demonstrate that the remote learning environment accelerated Chegg's growth during the pandemic, the Court can draw inferences from plaintiff's circumstantial evidence to find that cheating on the platform in at-home learning environments ultimately fueled Chegg's growth." (Order at 5.) It reasoned that "from the FE testimony the Court can ***reasonably*** infer that cheating on Expert Q&A drove Chegg's revenue and subscriber growth." (*Id*. at 8.)

These conclusions contradict the Court's own observation at the hearing that there is a "black hole" between allegations of cheating and allegations of growth. (Tr. at 41.); *see e.g.*, *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 590 (N.D. Tex. 2021) (finding allegations insufficient for lack of "particularized allegations differentiating…users, and the pervasiveness of alleged fraud among those [users]"). The Court suggested multiple times that Plaintiffs failed to connect cheating to growth: "You've [(Plaintiffs)] put a lot of facts that demonstrate that there was cheating happening on the platform, but how do I draw the connection between that and the growth of the platform during that time period." (Tr. at 33.) Plaintiffs countered the Court's observations and claimed that the three former employees "discount[ed] Chegg's explanation" that "limiting account[ing] sharing [was] responsible for driving growth." (*Id.* at 36.) The Court responded:

"Again, I'm still – there seems to be a hole." (*Id.*)

Despite identifying these gaps, the Order found that the former employee allegations – the allegations the Order points to – somehow filled this "hole."  The Order cites the vague and conclusory allegation attributed to FE3 that "Expert Q&A was 'the cheating business;'" the attenuated and vague allegation attributed to FE2 that "Expert Q&A remained 'absolutely number one' as Chegg's most popular product and 'drove the most traffic;'" and the similarly conclusory allegation attributed to FE1 that Expert Q&A was the "main moneymaker" and "the main reason for people to subscribe, it was driving [growth]." (Order at 6.)  That is it.  But these types of "vague and hyperbolic" assertions amount to nothing more than "conclusory adjectives [that] do not meet the PSLRA's heightened pleading requirements." *Nektar,* 34 F.4th at 837 (citing *Metzler,* 540 F.3d at 1061).  None of the allegations contains the type of detail required by the PSLRA and the Ninth Circuit.  Moreover, these types of conclusory allegations are not even entitled to the presumption of truth under *Ashcroft v. Iqbal*. 556 U.S. 662, 681 (2009) (holding "conclusory" allegations are not entitled to the presumption of truth).  They simply cannot satisfy the explicitly heightened pleading requirement imposed by the PSLRA and Rule 9(b).  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").  Plaintiffs should have been required to plead particularized facts to substantiate each part of their theory.  Therefore, reconsideration is warranted.

## B.   The Court Applied the Wrong Scienter Standard.

The Court improperly found that Plaintiffs adequately pled a strong inference of scienter based on "Chegg's [alleged] knowledge about cheating on its platform." (Order at 12.)  But alleged "knowledge of cheating on its platform" does not establish that each defendant made public statements with an intent to defraud or with deliberate recklessness.  Plaintiffs must do far more than allege "knowledge about cheating" – they must plead particularized facts creating a strong inference that "when defendants made the allegedly false statements, ***they knew they were false***, or ***knew facts 'so obvious that they must have been aware' that they were misleading the public.***"

*Cheng*, 2022 WL 2101919, at \*11. Indeed, "allegations that the defendant possessed knowledge of facts that are later determined by a court to have been material, without more, is not sufficient to demonstrate that the defendant *intentionally withheld* those facts from, or *recklessly disregarded* the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud." *In re Peregrine Sys., Inc. Sec. Litig.,* 2005 WL 8158825, at \*44 (S.D. Cal. Mar. 30, 2005); *see In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (no scienter because no allegations that defendants believed they were misleading investors despite knowing of the omitted clinical data). Plaintiffs must "state specific facts indicating no less than a degree of recklessness that strongly suggests **actual intent**." *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1076 (C.D. Cal. 2012).

Here, the Court's Order fails "to consider" a "dispositive legal argument" (Civ. L.R. 7-9) because it did not assess any individual defendant's mental state as to whether they intended to deceive investors or were deliberately reckless in making the statements to investors. *Apollo*, 774 F.3d at 607 ("Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, we require that the Plaintiffs allege scienter with respect to each of the individual defendants."). Instead, the Court held, "[t]he extensive communications between university officials and Chegg about rampant cheating on the platform combined with detailed former employee testimony [demonstrating that discussions about cheating took place at Company meetings] . . . meet the high bar for pleading scienter at this stage." (Order at 12.) This is manifest error. If the Court had applied the correct standard and looked at not only the alleged knowledge of cheating generally, but whether that knowledge was indicative of an intent to defraud or made defendants deliberately reckless in making the challenged statements, the Court would have been compelled to grant dismissal, as there are no allegations that any defendant received reports, emails, financial projections, analyses, presentations, phone calls, held conversations, or expressed **any** sort of belief that alleged increases in cheating fueled revenue and subscriber growth. Nor are there any particularized allegations from which one could infer that any defendant intentionally misled investors by failing to disclose such information. In other words, there are no contemporaneous facts whatsoever showing what specific information each individual defendant knew at the time of

each challenged statement, let alone their opinion of that information, nor whether they believed such information rendered their public statements false or misleading.

Just three days ago, the Ninth Circuit issued an instructive opinion, affirming a dismissal on scienter grounds. *Espy*, 2024 WL 1689091, at *2. There, the plaintiffs claimed that defendants misled investors by concealing details surrounding a corporate acquisition. *Id*. But the Ninth Circuit found that knowledge of that purportedly omitted information was insufficient to create a strong inference of scienter. *Id.* at *8. It held that, "[e]ven if knowledge of the claimed nature of the [acquisition] arrangement could be imputed to [defendants], that alone would not indicate a strong inference of scienter in [the company's] failure to disclose those details. . . . What is missing are credible allegations of an intent to defraud investors." *Id.* at *5-6; *see also Rigel*, 697 F.3d at 883 (holding mere knowledge of the omitted information insufficient to plead a strong inference of scienter).

*Aramic LLC, et al. v. Revance Therapeutics, Inc,. et al.*,, a case decided just weeks ago, also reiterates this point. There, plaintiffs claimed the company misled investors about FDA approval prospects by failing to disclose manufacturing deficiencies that ultimately delayed approval. *Revance*, 2024 WL 1354503, at *2. The court held that defendants' knowledge of the alleged deficiencies – the information plaintiffs claim should have been disclosed – was insufficient to plead scienter. *Id*. at *14. The Court explained that:

> knowledge of manufacturing issues alone is insufficient to show intent to deceive or that Defendants were deliberately reckless. *See Connetics*, 542 F. Supp. 2d at 1008. With respect to pre-inspection statements, Plaintiffs have not made any allegations that Defendants had "contemporaneous knowledge" that a statement was false or misleading when made. *See VIVUS,* 2012 WL 4477647, at *19. Plaintiffs' theory is that Defendants knew of the existence of various deficiencies, and therefore their statements about FDA approval were misleading. However, Plaintiffs have not pointed to any evidence that Defendants believed that FDA approval was unlikely or would be delayed because of the deficiencies.

*Id*. at *13. Based on this reasoning, the court found that, while the plaintiffs adequately pled that some statements were misleading by omission, they failed to adequately allege a strong inference that defendants made those statements with scienter despite knowing the allegedly omitted information. *Id*. at *10. Unlike *Revance*, the Court here only assessed whether Defendants knew of an allegedly omitted fact – cheating – without analyzing whether each Defendant intended to mislead investors.

Had the Court engaged in an analysis of the Defendants' mental state, and not merely knowledge of the allegedly concealed information, it would have been clear that Plaintiffs have nothing supporting their theory of scienter. Importantly, Defendants never denied the existence of cheating on the platform, in fact they acknowledged just the opposite. (*See* ¶¶ 58, 61.) Thus, any "knowledge of cheating" would not indicate an intent to defraud when each challenged statement was made. *Espy*, 2024 WL 1689091, at *5. To that end, there are no facts showing that any defendant believed that cheating was increasing, that such alleged cheating fueled growth, or that their statements were false or they must have known they were misleading investors. Plaintiffs do not even attempt to make that showing.

For these reasons, the Court manifestly failed to apply the right scienter standard.

### C. The Court Did Not Apply Rule 9(b)'s Heightened Pleading Requirement When Analyzing Loss Causation.

Particularized pleading "applies to all elements of a securities fraud action" and thus, plaintiffs must plead particularized facts to establish loss causation. *Apollo*, 774 F.3d at 605 ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation."). The Ninth Circuit just reiterated that a plaintiff "must allege ***with particularity*** facts plausibly suggesting that a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatements, and that disclosure caused the company's stock price to decline." *Espy*, 2024 WL 1689091, at *8; *see also Nuveen Mun. High Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013) (To plead loss causation, plaintiffs must show that "it was the very facts about which the defendant [allegedly] lied which caused its injuries."). Here, the Court did not require Plaintiffs to plead particularized facts to substantiate their loss causation theory.

Specifically, Plaintiffs seek to recover losses from a stock drop following Chegg's November 1, 2021, announcement that – although it met Q3'21 revenue projections – it was lowering FY'21 revenue projections. (¶ 167.) Chegg explained to investors that its lowered guidance was driven by, among other things, "significantly fewer enrollments than expected this semester" – which took the entire industry by surprise – not cheating. (¶ 169.) In turn, Plaintiffs speculate, without any well-pled factual allegations for support, that Chegg revised its FY'21

guidance in November 2021 because students returned to campus and could not cheat anymore, which slowed growth, and the stock dropped as a result of the revised guidance. (¶¶ 169-71.) The Court held that Plaintiffs adequately pled loss causation based on commentary from Forbes and one analyst: "[N]ot only did Forbes respond after Chegg revealed its lowered guidance that 'the enrollment excuse makes no sense,' Dkt. No. 115, at 11, but Morgan Stanley also stated that 'as students returned to campus for in person learning, they did not return to the Chegg platform [given] more graded assignments in class where Chegg would not be helpful.'" (Order at 14.)  But the Court premised its decision on an incorrect reading of Ninth Circuit law.  As the basis for its holding, the Court wrote: "The Ninth Circuit has held that when 'analysts note[] the probable relationship between' alleged misstatements and a stock price decline, plaintiffs have adequately pled loss causation.' *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1202 (9th Cir. 2016)." (*Id.*)

This misstates the Ninth Circuit's holding in *Lloyd* and constitutes manifest error.  As an initial matter, the Order only cites to the background section in *Lloyd*, not the Ninth Circuit's analysis or holding on loss causation. (*Id.*)  Regardless, in *Lloyd*, the Ninth Circuit addressed an entirely different question: "whether the announcement of an investigation can 'form the basis for a viable loss causation theory' if the complaint also alleges a subsequent corrective disclosure ***by the defendant*** . . . we today answer that question in the affirmative."  *Lloyd*, 811 F.3d at 1210.  Specifically, the plaintiff claimed that the defendant bank misrepresented an entity's ability to repay a $30 million loan.  *Id.* at 1202-05.  The bank subsequently announced the existence of an SEC investigation, prompting a stock drop.  *Id*. at 1205.  The bank later disclosed that it was writing off the loan because the entity could not repay it.  *Id*. at 1204-05.  No stock drop followed this later announcement.  *Id*.  The district court dismissed on loss causation grounds, finding that the announcement of the investigation that led to the stock drop did not reveal that there was any issue with loan repayment.  *Id*. at 1209.  The Ninth Circuit reversed, finding that the subsequent announcement confirming fears about the SEC investigation was sufficient to establish loss causation (e.g., a specific factual allegation).  *Id*. at 1210-11.  While the Court mentioned that analysts believed that the investigation was related to loan repayment, that was not the crux of its holding.  Rather, the Court held that loss causation had been adequately pled based on:

(1) CVB's disclosure of the subpoena caused its stock price to drop precipitously; (2) the market and various analysts perceived the subpoena to be related to CVB's alleged misstatements about Garrett's ability to repay; (3) *the market's fears about the subpoena were confirmed by CVB's September 9 disclosure that it was writing off $34 million in Garrett loans and categorizing the remainder as non-performing*; and (4) the September 9 disclosure's minimal effect on CVB's stock price indicates that the earlier 22% drop reflected, at least in part, the market's concerns about the Garrett loans.

*Id*.

Unlike *Lloyd*, where the company later confirmed that that it experienced loan repayment issues that the SEC was investigating (i.e.., a specific allegation about the cause for the very loss at issue), here there is no alleged subsequent disclosure regarding Chegg's reason for revising revenue guidance linking the alleged corrective disclosure to the alleged fraud.  Instead, this case is more analogous to *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 Fed. Appx. 603, 605 (9th Cir. 2020), which held:

The suggestion that the analysts' opinions of what the shares might be worth were different from what was actually received, let alone that they represented the shares' true value, is too speculative to plead with particularity that shareholders experienced losses—or to plead with particularity that the required causal relationship existed between Ocera's purported misrepresentations or omissions and those losses.

*Id.*; *In re Wet Seal, Inc. Sec. Litig*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007) ("Conclusory allegations . . . are no more sufficient if they come from a newspaper article than from plaintiff's counsel").

As in *Ocera*, the Court's reliance on the Forbes article and Morgan Stanley report is insufficient, especially when examining those sources in detail.  While Forbes questioned Chegg's reasoning for revising guidance ("the enrollment excuse makes no sense"), it did not say that Chegg revised guidance because of decreased cheating, much less did it substantiate any such conclusion with particularized facts.  (*See* ¶ 171.)  In any event, the Court acknowledged at the hearing that Forbes was only speculating: "The analyst in Forbes, it's pretty – I don't know, again, they are looking at it from the outside, they are speculating, unless there's some reason to think they looked at the book[s], did they examine all the internal books and records at the company before they issued those statements?" (Tr. at 37.)  Indeed, speculation by a third party is no more entitled to

14

the presumption of truth and does not move the needle to meet the heightened pleading requirement any more than speculation from plaintiffs or their lawyers.

Further, the language that the Court cited from the Morgan Stanley report actually supports Chegg's explanation for revising guidance – it does not cut against it.  The Court cited Morgan Stanley as having said: "as students returned to campus for in person learning, they did not return to the Chegg platform [given] more graded assignments in class where Chegg would not be helpful." (Order at 14.)  But this echoes exactly what Chegg said in its press release announcing revised guidance: "This industry-wide dynamic [of decreased enrollment] was unanticipated and is a direct result of the COVID-19 pandemic. A combination of variants, increased employment opportunities and compensation, along with fatigue, have all led to significantly fewer enrollments than expected this semester. ***And those students who have enrolled are taking fewer and less rigorous classes and are receiving less graded assignments***." (ECF No. 122-25.)  Equating the circumstances of students using Chegg less to the idea that students must have been using Chegg less because they could no longer cheat in person is a substantial inferential leap, and is one with no factual support.

Plaintiffs fail to substantiate analyst speculation about cheating and growth with particularized facts.  Reconsideration is warranted on loss causation grounds as a result.

**D.    Defendants Were Reasonably Diligent in Filing the Motion for Reconsideration.**

Defendants have acted with the "reasonable diligence" required by Local Rule 7-9(a) by bringing this motion forty-nine days after the Court's Order because it does not take such a motion lightly.  *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 1548833, at *5 n.9 (N.D. Cal. Apr. 7, 2015) (Civ. L.R. 7-9(a) "imposes no time limits on filing"); *see also In re Apple*, 386 F. Supp. 3d 1155 (granting motion for reconsideration filed 45 days after the initial order); *Senne v. Kansas City Royals Baseball Corp.*, 2016 WL 1623913, at *4 (N.D. Cal. Apr. 25, 2016) (finding reasonable diligence where defendants moved for reconsideration more than 100 days after the court's order).  Without a bright-line rule defining "reasonable diligence" under Local Rule 7-9(a), courts considering motions under Rule 54(b) can turn to standards for Rule 60(b) motions seeking reconsideration of final orders.  *Lyons v. Baughman,* 2007 WL 1378022, at *3 n.3 (E.D.

Cal. May, 10 2007).  Timeliness under Rule 60(b) is fact-dependent, relevant facts include "the length and circumstances of the delay and the possibility of prejudice to the opposing party." *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 945 (9th Cir. 2007); *see In re Twitter, Inc. Sec. Litig.*, Case No. 4:16-cv-05314-JST (Dkt. No. 615 at 2) (granting party's motion for leave to file motion for reconsideration).

Defendants have acted with reasonable diligence in moving for reconsideration.  They carefully and thoughtfully considered, researched, analyzed, and drafted this motion since the Court issued its Order.   (Declaration of Brett De Jarnette in Support of Defendants' Motion ("Declaration") at ¶ 3.)  And instead of seeking to defer their answer to the Complaint until after resolution of this Motion (which Defendants strongly believe should be granted), Defendants agreed to concurrently prepare their answer to the Complaint in the spirit of cooperation with Plaintiffs.  (*Id*. at ¶ 8.)  This was no small endeavor given the Complaint is 128-pages, 336 paragraphs, and contains voluminous alleged sources, quotes, and characterizations.  (*Id*. at ¶ 10.) Defendants are filing their answer in just two days.  (*Id*. at ¶ 9.)  Similarly, Defendants have also been simultaneously preparing for the parties' 26(f) conference, which Defendants also agreed to, as opposed to deferring the conference until after resolution of this Motion.  (*Id*. at ¶ 14.)

Moreover, additional cases were published during this time frame, including from the Supreme Court, and Ninth Circuit, which reaffirmed Defendants' position with respect to this Motion.  (*Id.* at ¶ 12 (citing *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 2024 WL 1588706, at *6 (U.S. Apr. 12, 2024); *Espy v. J2 Global, Inc.*, 2024 WL 1689091, at *5 (9th Cir. Apr. 19, 2024); *Aramic LLC, et al. v. Revance Therapeutics, Inc,. et al.*, 2024 WL 1354503, at *14 (N.D. Cal. Apr. 2, 2024).)  Defendants' analysis accounted for these new cases, this Motion cites all three, and significantly features both *Epsy* and *Revance*.

Finally, the time it took to consider, research, analyze, draft, and file this motion does not prejudice Plaintiffs.  There was no Court-ordered deadline during that time aside from the answer, which Defendants are filing in two days.  (*Id*. at ¶ 13.)  And Defendants candidly told Plaintiffs that they were considering filing a motion for reconsideration and that they ultimately made the decision to do so.  (*Id*.)

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY ORDER  FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP

**III.   ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS RULING ON LOSS CAUSATION FOR INTERLOCUTORY APPEAL**

The standards for pleading falsity and scienter are well established – the Court just misapplied those standards in its Order. However, courts inconsistently articulate the standard for pleading loss causation and the level of detail required to survive dismissal. Accordingly, Defendants in the alternative ask that the Court certify two questions for interlocutory appeal given the conflicting case law regarding the pleading standard for loss causation: (1) whether loss causation is adequately pled where a stock drop follows an announcement of revised revenue guidance, absent particularized facts showing the company revised guidance because of the alleged fraud, and (2) whether loss causation is adequately pled based on an analyst commenting on a possible connection between the stock drop and alleged fraud.

Certification of a non-final order for interlocutory appeal is appropriate where (i) an "order involves a controlling question of law"; (ii) "there is substantial ground for difference of opinion"; and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011) (taking interlocutory appeal from order on motion to dismiss). All three requirements are met here.

**A.   Whether Loss Causation is Adequately Pled is a Controlling Question of Law.**

The proper standard for pleading loss causation – the inquiry raised by the questions proposed for interlocutory review – is a "question of law." *See Mineworkers' Pension Scheme v. First Solar Inc.,* 881 F.3d 750, 754 (9th Cir. 2018) (considering the correct test for loss causation certified by the district court for interlocutory appeal); *Reese*, 643 F.3d at 688 (affirming certification for interlocutory appeal regarding whether scienter was adequately pled based on a defendant-admission of negligence). An issue is "controlling" where, as here, "its resolution could materially affect the outcome of the litigation." *Bettencourt v. Parker*, 2021 WL 6284198, at *1 (E.D. Cal. Dec. 14, 2021) (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)). Accordingly, courts have held "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Advanced Analogic Techs., Inc.*

*v. Linear Tech. Corp.*, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) (internal quotation marks and citation omitted); *see also Amor Ministries v. Century Sur. Co.*, 2015 WL 11251726, at *3 (S.D. Cal. June 3, 2015) (there is "no doubt" that resolving question that "would have ended this litigation" is controlling). Here, a reversal of the Order on loss causation grounds is controlling as it would lead to dismissal of the Complaint.

### B.      Substantial Ground For Difference of Opinion.

In the Ninth Circuit, a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point . . . or if novel and difficult questions of first impression are presented." *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *2 (N.D. Cal. Jan. 28, 2021) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)) (finding the requirement satisfied because "the undersigned has addressed difficult questions of first impression"). The Ninth Circuit has clarified that a "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution," regardless of whether courts have already disagreed. *Reese*, 643 F.3d at 688 ("a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent").

Courts have certified orders for interlocutory appeal in similar circumstances as here. For example, in *Smilovits v. First Solar Inc.*, the court found substantial ground for difference of opinion after perceiving two competing lines of case law for loss causation pleading standards in the Ninth Circuit. 119 F. Supp. 3d 978, 981 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension*, 881 F.3d 750. As in *Smilovits*, Plaintiffs and Defendants here rely on possibly incompatible case law regarding the loss causation pleading standards when relying on earnings misses and revised guidance. Similarly, in *Reese v. Browne*, defendants successfully established a substantial ground for difference of opinion by demonstrating an absence of controlling authority, where the Ninth Circuit had not considered the effect of a party's negligent admission in a misdemeanor guilty plea on pleading a strong inference of scienter. 2009 WL 10668680, at *5-6 (W.D. Wash. July 1, 2009), *rev'd and remanded sub nom. Reese*, 643 F.3d 681. The court granted defendants' motion to certify questions for appeal, "choos[ing] to…avail itself of the opportunity to solicit the view of

the Ninth Circuit." *Id.* at *6. Here too, there is a notable lack of controlling authority from the Ninth Circuit as to whether an analyst's speculation as to the link between the alleged fraud and a stock drop is sufficient to satisfy the heightened loss-causation pleading imposed by law on plaintiffs, leaving room for substantial ground for difference of opinion.

First, the Court should certify an interlocutory appeal to determine what "particularity" means in the loss causation context. Defendants argue that the Ninth Circuit has made clear that loss causation must be pled with particularity. (Mot. at 24.); *see Apollo*, 774 F.3d at 605. Yet, Plaintiffs cite a case that purportedly holds that there is a "low bar" for pleading loss causation. (Opp. at 24) (citing *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *8 (N.D. Cal. June 1, 2020).). Based on these lines of cases, Defendants argue that plaintiffs must plead particularized facts showing that Chegg revised guidance because of cheating. Plaintiffs argue the opposite. (Opp. at 24.) As a result, there is a difference of opinion as to whether a plaintiff must plead particularized facts to show that guidance was revised because of alleged fraud. *See Reese*, 643 F.3d at 688 ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.").

Second, the Court should certify the second question as there is substantial ground for difference of opinion regarding whether a plaintiff can rely on unsubstantiated analyst commentary to plead loss causation. If the Court believes that its reading of *Lloyd* is correct – that analyst commentary is enough to plead loss causation (Defendants submit that it is not) – then there is a substantial difference of opinion. For example, courts have held that analyst commentary and speculation does not satisfy the particularity standard under the PSLRA and Rule 9(b). *In re Ocera*, 806 Fed. Appx. At 605; *In re Wet Seal*, 518 F. Supp. 2d at 1172. And if *Lloyd* holds the opposite, it not only eviscerates the particularity requirement for loss causation, but also creates a difference of opinion as to the level of detail that must be pled.

**C.      Resolution of the Appeal In Defendants' Favor Would Materially Advance— Indeed, Would End—the Litigation.**

There should be no question that the last requirement of Section 1292(b) is satisfied. To satisfy this prong, the movant must show that interlocutory appeal "may avoid protracted and expensive (but ultimately unnecessary) litigation and the burdens on the litigants and court system

that would result from denial of § 1292(b) certification." *United States ex rel. Integra Med Analytics LLC v. Providence Health and Servs.*, 2019 WL 6973547, at *4-5 (C.D. Cal. Oct. 8, 2019); *see also Reese*, 643 F.3d at 687-88.  It is well-established that "resolution of a question materially advances the termination of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later [in order to] save the courts and the litigants unnecessary trouble and expense.'" *Nat'l Credit Union Admin. Bd. v. Goldman Sachs and Co.,* 2013 WL 12306438, at *8 (C.D. Cal. July 11, 2013).

Here, if the Ninth Circuit agrees with Defendants that Plaintiffs failed to adequately plead loss causation, then this case will be dismissed and substantial litigation costs and efforts will be avoided.  As this District has recognized, that is all that is required to satisfy the third requirement for certification.  *Brickman v. Facebook*, 2017 WL 1508719, at *4 (N.D. Cal. Apr. 27, 2017) (holding Defendants' questions for appeal created "an opportunity to terminate the litigation completely" following denial of motion to dismiss); *Best Carpet Values, Inc. v. Google LLC*, CaseNo. 5:20-cv-04700-EJD (Dkt. No. 51 at 5-6) (finding appeal would materially advance termination of litigation because "even an affirmance [of an order denying motion to dismiss] may provide useful guidance before the parties engage in wide-ranging expensive discovery"); *see also S. Ferry LP No. 2 v. Killinger*, 2005 WL 3307533, at *2 (W.D. Wash. Dec. 6, 2005) (granting defendants' motion to certify an order for interlocutory appeal regarding scienter allegations following a motion to dismiss).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Leave to Seek Reconsideration or, alternatively, certify its Order for immediate interlocutory appeal.

Dated: April 22, 2024                                    COOLEY LLP

By: */s/ Patrick E. Gibbs*
Patrick E. Gibbs

Attorneys for Defendants
Chegg, Inc., Daniel L. Rosensweig,
Andrew J. Brown, and Nathan Schultz

MOT. FOR LEAVE TO SEEK RECONSIDERATION OR TO
CERTIFY ORDER  FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP