COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Telephone:    +1 858 550 6000
Facsimile:    +1 858 550 6420

Attorneys for Defendants Chegg, Inc., Daniel L.
Rosensweig, Andrew J. Brown, and Nathan Schultz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br>**ANSWER TO PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Judge:    P. Casey Pitts<br>Trial Date:   TBA<br>Date Action Filed: December 22, 2021 |

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

Defendants Chegg, Inc. ("Chegg") and individual defendants Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz (the "Individual Defendants," and collectively with Chegg, "Defendants"), by and through their counsel, hereby answer Lead Plaintiffs Pompano Beach Police and Firefighters' Retirement System's ("Pompano") and KBC Asset Management NV's ("KBC," and collectively with Pompano, "Lead Plaintiffs" or "Plaintiffs") Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").

To the extent that the paragraphs in the Complaint are grouped under headings and subheadings, Defendants respond generally that the headings and subheadings do not constitute factual averments, and thus the headings are not included herein. To the extent that a response is deemed necessary, Defendants deny any and all allegations in each and every heading and subheading in the Complaint.

Except as explicitly admitted herein, Defendants deny each and every allegation in the Complaint, including, without limitation, headings, subheadings, footnotes, and the prayer for relief. Defendants further answer the numbered paragraphs in the Complaint as follows.

## ANSWER

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, and on that basis, deny them.[1]

2. Defendants admit that Plaintiffs assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, Section 20(a) of the Exchange Act, and Section 20A of the Exchange Act. Defendants deny that this action can be maintained as a class action under Federal Rules of Civil Procedure 23. Except as expressly admitted, Defendants deny the allegations in paragraph 2, including that Plaintiffs have suffered any damages based on the allegations in the Complaint.

3. Defendants do not know the source of the purported quotations in paragraph 3 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly stated, in form or substance, that Chegg is a subscription-based online learning platform that helps students master their subjects, better understand their course material, and have better outcomes on their

---

[1] All references to paragraphs ("¶") are references to paragraphs in the Complaint.

learning journey. Defendants also admit that Chegg stated that it serves the $1.3 trillion education industry by providing critical academic support to students in need of additional help. Defendants also admit that Mr. Rosensweig shared his honestly held belief that online learning is the wave of the future and that Chegg provides services that every student around the world needs. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 3, in particular that Mr. Rosensweig "crowed" his beliefs about Chegg at any point during the proposed Class Period.

4. Defendants do not know the source of the purported quotations in paragraph 4 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly stated, in form or substance, that Chegg Study and Expert Q&A were designed to help students master challenging concepts like science, math, and English on their own. Defendants also admit that they stated that, for as little as $15 per month, Chegg's Expert Q&A allowed subscribers to ask homework questions to a group of 70,000-100,000 experts with advanced-level degrees—most of whom were based in India—for instantaneous step-by-step solutions that usually came back in less than an hour and sometimes almost immediately. Defendants also admit that Chegg expressed its belief that Expert Q&A's searchable archive of approximately 35 million academic questions asked and answered as of the start of the proposed Class Period and approximately 70 million academic questions asked and answered by the end of the proposed Class Period provided a huge and incredible competitive moat. Defendants also admit Chegg expressed its belief that the Expert Q&A tool as the Uber and Amazon Prime of the education world due to how quickly students could receive comprehensive answers, and that Expert Q&A was the real magic to Chegg's model. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 4, in particular that Chegg "purportedly" designed Chegg Study and Expert Q&A to help students master challenging concepts on their own and that Chegg's promotion of Expert Q&A was relentless.

5. Defendants admit that the COVID-19 pandemic resulted in college campus closures across the country and throughout the world as well as the widespread implementation of distance learning. Defendants do not know the source of the purported quotations in paragraph 5 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly stated, in form or substance, that Chegg reported record subscriber numbers during the proposed Class Period and

that Chegg's subscribers more than doubled from Q1 2020 to Q4 2020. Defendants also admit that Chegg made positive statements about its unprecedented financial results during the proposed Class Period, including that (i) Chegg's total revenues grew by approximately 50.8% from Q1 2020 to Q2 2021, (ii) Chegg reported large and consistent growth in year-over-year revenue and earnings each quarter during the proposed Class Period, and (iii) Chegg's year-over-year revenue growth ranged between 35% in Q1 2020 and 64% in Q4 2020. Defendants also admit that they expressed their belief that Chegg had tremendous financial results and that the Company outperformed even its most enthusiastic expectations. Defendants also admit that Chegg raised its full-year revenue and earnings guidance three times between 2020 and 2021, and that Chegg's stock reached an all-time high price per share on February 8, 2021 when it closed at $113.51. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 5, including that Chegg's year-over-year revenue growth approached 90% by Q4 2020 and that Chegg's growth was "unprecedented."

6. Defendants admit that Chegg reported quarter after quarter of record subscriber numbers and strong financial performance during the proposed Class Period. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To the extent that the allegations in paragraph 6 differ in any way from the contents of the analyst reports, Defendants deny every such allegation.

7. Defendants do not know the source of the purported quotations in paragraph 7 because Plaintiffs did not identify their sources. Defendants admit that they publicly stated, in form or substance, that Chegg was experiencing dramatic growth for a number of legitimate business factors, including efforts to prevent account sharing. Defendants admit that they expressed their belief that such growth was sustainable because the adoption of online learning was inevitable. Defendants also admit that they stated that Chegg's success during remote learning was not a result of students being on campus or not being on campus, but rather because of the inevitable transition to online learning. Defendants also admit that on Chegg's February 8, 2021 earnings call, Mr. Rosensweig shared his honestly held belief that, "I would say the [growth lever] that has had the

most immediate impact is account sharing. And I think people are confusing that domestically as if they were a stay-home company or not a stay home company. That's completely irrelevant to Chegg. What's relevant is that students know who we are. They want us. We provide an unbelievable service and the numbers reflect that." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 7, including that Chegg "reassured" investors as to the legitimacy of Chegg's growth in an effort "to silence investors' concerns."

8. Defendants do not know the source of the purported quotations in paragraph 8 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly expressed its belief, in form or substance, that the vast majority of Chegg's users use the platform to learn and understand their subject matter and that only an extremely small portion of the activity on Chegg's platforms is misuse. Defendants also admit that, on September 9, 2020, Chegg's Honor Code stated that, "[Students] should never . . . use [Chegg's] services for any sort of cheating or fraud. The vast majority of Chegg students use our services to help them learn and understand . . . While misuse of our platform represents an extremely small portion of the activity on our services, we understand how frustrating it can be in the context of the work you put into your classes. We also know how disappointing it is to confront academic dishonesty. We are constantly working to improve our abilities to detect and respond to issues around both copyright and academic integrity." Defendants also admit that Chegg publicly stated that Chegg supported academic integrity, that it hadn't seen any relative increase in Honor Code issues since the COVID-19 crisis began, that cheating was not what Chegg was built for, and that Chegg took any attempts to cheat by a tiny fraction of users extremely seriously. Defendants also admit that Chegg launched Honor Shield on January 13, 2021. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 8, including that Chegg made the quoted statements in response to articles and reports, that Honor Shield was only "purportedly" geared toward curbing cheating, and that the number of students who may have been using Chegg to cheat was only "purportedly" tiny.

9. Defendants admit that paragraph 9 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports. Defendants can't speak for what investors and/or analysts

believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To the extent that the allegations in paragraph 9 differ in any way from the contents of the analyst reports, Defendants deny every such allegation. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 9, including the implicit assertion that investors and/or analysts just repeated back Chegg's statements in their reports.

10. Defendants admit that Chegg's stock price closed at $43.79 per share on May 4, 2020 and closed at $113.51 on February 12, 2021. For a complete history of Chegg's common stock price, Defendants refer Plaintiffs to public sources that identify such information. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 10, including that Chegg's stock price increased "[i]n response to Defendants' representations."

11. Defendants admit that, on February 17, 2021, Chegg announced pricing for an upsized $1 billion public offering of common stock in which it entered into underwriting agreement pursuant to which Chegg agreed to issue and sell 9,804,000 shares of its common stock, par value $0.001 per at a public offering price of $102.00 per share. Defendants further admit that, on February 18 2021, underwriters elected to exercise their option, pursuant to the underwriting agreement, to purchase an additional 1,170,600 shares of common stock, par value $0.001 per at a public offering price of $102.00 per share from Chegg and 300,000 shares of common stock, par value $0.001 per at a public offering price of $102.00 per share from Mr. Rosensweig. Defendants also admit that during the proposed Class Period, Mr. Rosensweig sold over $30 million of Chegg stock, and that Mr. Rosensweig and Mr. Schultz collectively sold over $74 million of Chegg stock. Defendants lack information or knowledge as to who the "Chegg insiders" Plaintiffs refer to are, so Defendants can't form a belief as to the truth of the allegation that "Chegg insiders reaped nearly $100 million in proceeds" during the proposed Class Period. Except as expressly admitted, Defendants deny the allegations in paragraph 11.

12. Defendants deny the allegations in paragraph 12.

13. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 13, and so Defendants do not have knowledge or information sufficient to

form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

14.     Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 14, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

15.     Defendants admit that Mr. Rosensweig and Mr. Schultz had access to Chegg's data and actively managed the company. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 15 showing what former Chegg employees allegedly said, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 15, including the statements attributed to former Chegg employees.

16.     Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about

the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

17.    Defendants admit that, on November 1, 2021, Chegg reported financial results and updated subscriber metrics for the quarter ended September 30, 2021, and issued revenue guidance for the following quarter.  Defendants also admit that Chegg's subscriber count declined by approximately 10% from Q2 2021 to Q3 2021.  Defendants also admit that Chegg's stock price closed at $62.76 on November 1, 2021 and closed at $32.12 on November 2, 2021.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 17, including that the announced decline in subscribers "mark[ed] an abrupt 180-degree reversal" from growth during the proposed Class Period, that the announced decline in subscribers was a "decimation," that the Company's announcement "stunned" investors, and that Chegg's "fourth-quarter revenue guidance [] was over 20% below Wall Street expectations."  Except as expressly admitted, Defendants deny the allegations in paragraph 17.

18.    Defendants admit that in Chegg's November 1, 2021 press release titled *Chegg Reports Third Quarter 2021 Financial Results*, Mr. Rosesweig shared his honestly held belief that, "in late September [2021] it became clear to us that the education industry is experiencing a slowdown that we believe is temporary. This industry-wide dynamic was unanticipated and is a direct result of the COVID-19 pandemic. A combination of variants, increased employment opportunities and compensation, along with fatigue, have all led to significantly fewer enrollments than expected this semester. And those students who have enrolled are taking fewer and less rigorous classes and are receiving less graded assignments. We believe this is a post pandemic impact that will affect this school year but is not sustainable for higher education long term. Learning sites and apps, both free and paid, in the U.S. and Canada have experienced significantly reduced traffic since the fall semester began. Despite these trends, our team continues to execute at a very high level. In fact, Chegg has experienced year-over-year increases in retention and adoption of the Chegg Study Pack which has positively impacted our ARPU by 5% in Q3."  Defendants admit that the remainder of paragraph 18 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of

those analyst reports. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To the extent that the allegations in paragraph 18 differ in any way from the contents of the analyst reports, Defendants deny every such allegation. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 18, including that Defendants "attempted to blame" Chegg's Q3 2021 results on other factors, that "analysts rejected these excuses," and that Chegg's "faltering" performance was due to "students' diminished ability to easily use Chegg's platform to cheat on exams."

19. Defendants admit that Chegg's stock price closed at $27.19 on December 8, 2022. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 19, including that "Chegg's subscriber growth and financial performance have never come close to the levels they reached during the Class Period," that "Chegg's stock price [] never recovered," and that Chegg's stock price as of December 8, 2022 was "a fraction of its price during the Class Period.

20. Defendants admit that Plaintiffs assert claims against Defendants under Sections 10(b), 20(a), and 20A of the Exchange Act and SEC Rule 10b-5. Defendants also admit that the Court has jurisdiction over the subject matter of this action. Except as expressly admitted, Defendants deny the allegations in paragraph 20.

21. Defendants admit that venue is proper in this district and that Chegg is headquartered and conducts business in this district. The remainder of paragraph 21 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 21, in particular that Defendants made any materially false or misleading statements to investors. Except as expressly admitted, Defendants deny the allegations in paragraph 21.

22. Defendants deny that Chegg's common stock was artificially inflated during the proposed Class Period and that Lead Plaintiff Pompano Beach Police and Firefighters' Retirement System suffered any damages. As to the remainder of the allegations in paragraph 22, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis, deny them.

23. Defendants deny that Chegg's common stock was artificially inflated during the proposed Class Period and that Lead Plaintiff KBC Asset Management NV suffered any damages. As to the remainder of the allegations in paragraph 23, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis, deny them.

24. Defendants admit the allegations in paragraph 24.

25. Defendants admit that Mr. Rosensweig has served as Chegg's President and Chief Executive Officer since 2010 and as the co-Chairperson of Chegg's Board of Directors since July 2018, and was the Chairperson of the Company's Board of Directors from March 2010 to July 2018. Defendants also admit that Mr. Rosensweig served as President and Chief Executive Officer of Activision Blizzard, Inc.'s *Guitar Hero* division from March 2009 through February 2010. Defendants also admit that Mr. Rosensweig served as Chief Executive Officer of ZDNet from 1998 to 2002, as Chief Operating Officer of Yahoo! from 2002 to 2006, and as an operating principal at Quadrangle Group from 2007 to 2009. Defendants also admit that Mr. Rosensweig reviewed, approved, signed, and certified the Company's Form 10-K and Forms 10-Qs that were issued during the proposed Class Period in his capacity as CEO. The remainder of paragraph 25 and the accompanying footnote contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Except as expressly admitted, Defendants deny the allegations in paragraph 25 and the accompanying footnote.

26. Defendants admit that Mr. Brown has served as Chegg's Chief Financial Officer since 2011. Defendants also admit that Mr. Brown reviewed, approved, signed, and certified the Company's Form 10-K and Forms 10-Qs that were issued during the proposed Class Period in his capacity as CFO. Except as expressly admitted, Defendants deny the allegations in paragraph 26.

27. Defendants admit the allegations in paragraph 27.

28. Paragraph 28 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 28.

29. Paragraph 29 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 29.

30. Paragraph 30 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 30.

31. Paragraph 31 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 31.

32. Defendants admit that Chegg is an online provider of educational study services. Defendants do not know the source of the purported quotations in paragraph 32 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly stated, in form or substance, that, both prior to and during the proposed Class Period, Chegg marketed itself as a leading direct-to-student online learning platform providing a range of educational services, otherwise unavailable to students, to enhance students' ability to master their subjects, to learn, and to get better grades. Defendants also admit Chegg expressed its belief that students worldwide were in need of Chegg's academic support as higher education was on the brink of a momentous transition to online learning, an inevitable trend that was only accelerated by the COVID pandemic. Defendants also admit that Chegg expressed its belief that it was uniquely poised to benefit from the transition to online learning given its comprehensive suite of study services that every student around the world clearly needed. Defendants also admit that Mr. Rosensweig stated in an interview on CNBC's *Mad Money* that "[students] are going to need to be more self-supporting because institutions, governments, educations, their budgets are going down, their willingness to support is going down, and so [online education] is the wave of the future." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 32, including that Chegg stated that students were "desperately" in need of the Company's academic support.

33. Defendants admit Chegg has a registered trademark on the phrase "A Smarter Way to Student." Defendants also admit that the Company is comprised of two main businesses: (i)

Chegg Services, which consists of the Company's online subscription products including Chegg Study, Chegg Writing, and Chegg Math Solver; and (ii) Required Materials, which consists of Chegg's print and e-textbook offerings. Defendants also admit that the majority of Chegg's revenue during the Class Period was from Chegg Services, and also admit that Chegg Services revenues accounted for 85% of total net revenues in Q3 2021, the last fiscal quarter of the proposed Class Period. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 33, including that the "vast majority" of Chegg's revenues during the proposed Class Period came from Chegg Services.

34. Defendants admit that Chegg reports revenues by segment and does not report separate revenue metrics within each segment. The remainder of paragraph 34 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the remainder of paragraph 34.

35. Defendants admit that at the 16th Annual Needham Virtual Technology & Media Conference on May 19, 2021, Mr. Brown shared his honestly held belief that, "[w]e think we're more of a platform company where it's -- and breaking out things gets awfully messy. I think that -- I think we're better served -- and truth be told, I know we get questions about this a lot, but I think, in general, we're better served reporting how we're reporting. We'll let -- can I imagine over the next several years or call it – I always imagine 5 years from now, could there be more breakouts, potentially more breakouts, as other parts of the business get to scale. But certainly, international is likely to be the first that we break out separately." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 35, including that Mr. Brown's statement was a "refusal" "made in the face of repeated inquiries from analysts for greater transparency into Chegg's operations" and that Chegg "refused to provide [] transparency" to analysts.

36. Defendants do not know the source of the purported quotations in paragraph 36 because Plaintiffs did not identify their sources. Defendants admit that they publicly stated, in form or substance, that (i) Chegg Study was by far the most widely used feature of Chegg Services, (ii) that Expert Q&A was the most popular feature within Chegg Study, comprising 90% of Chegg Study's proprietary content, (iii) that Expert Q&A was critically important to Chegg's financial

performance and prospects, and (iv) that Chegg's archive of Expert Q&As was a huge and growing archive of Expert Q&As and gave Chegg a Strong, giant, huge, actually massive, and incredible competitive moat. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 36, including Plaintiffs' use of "[n]evertheless" to frame Defendants statements.

37. Defendants admit the allegations in paragraph 37.

38. Defendants admit that, during the proposed Class Period, Chegg engaged between 70,000 and 100,000 Experts, the majority of which had advanced degrees, who were located throughout the world, including India. Defendants also admit that Chegg subscribers can submit questions to Chegg's Experts through text or photos. Defendants do not know the source of the purported quotations in the fourth sentence of paragraph 38 because Plaintiffs did not identify their sources. Defendants admit that they publicly stated, in form or substance, that Chegg Experts would provide answers instantaneously, in no more than two hours, and sometimes it has little as five minutes. Defendants also admit that Chegg made the statements quoted in the footnote accompanying paragraph 38 on its Indian website. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 38 and the accompanying footnote, including that the heart of Chegg's operations were in India."

39. Defendants do not know the source of the purported quotations in the first two sentences of paragraph 39 because Plaintiffs did not identify their sources. Defendants admit that they expressed their belief, in form or substance, that Expert Q&A was the "Uber" and "Amazon Prime" of the education industry because when students would ask a question, if it was not already in the Company's massive archive, the question would get sent out to tutors around the world who were immediately available and could answer questions on an almost immediate basis. Defendants also admit that they stated that Expert Q&A was the real magic to Chegg's model that distinguished the Company from its competitors and constituted the primary way Chegg would attract new subscribers to the platform. Defendants also admit that Mr. Rosensweig made the statements quoted in the third sentence of paragraph 39 in Chegg's May 3, 2021 earnings call. Defendants also admit that at the Jeffries Virtual Software Conference on September 14, 2021, Mr. Brown stated that, "with respect to Pearson['s claim that Chegg infringed Pearson's copyrighted] content,

I think it's superimportant [sic] for folks to understand that we have 66 million pieces of content on our site for Chegg Study and Chegg Study Pack. So that's what we're specifically what we're talking about. Of those 66 million pieces, approximately 5 million are what we call textbook solutions. And so we get less than 10% of our actual acquisitions come through textbook solutions. And once again, Pearson is only 25% of the 5 million, so once again, a fairly small number . . . And the second thing is that when we look at how we acquire students, it's primarily through actually our expert Q&A, which is the other 60 million questions, right?" Defendants also admit that Chegg, Mr. Rosensweig, and/or Mr. Brown expressed these views because they believe the statements to be true.

40.   Defendants admit that COVID-19 was declared a pandemic in March 2020, and in response, many colleges and universities implemented remote learning options. Defendants do not know the source of the purported quotations in paragraph 40 because Plaintiffs did not identify their sources. Defendants admit that they expressed their belief, in form or substance, that Chegg's subscriptions had exploded and that subscriptions accelerated dramatically during the proposed Class Period. Defendants also admit that Chegg had approximately 3.9 million subscribers and approximately 810 million content views in 2019, and approximately 6.6 million subscribers and approximately 1.3 billion content views in 2020. Defendants also admit that Chegg had approximately 30 million Expert answered Q&As as of December 31, 2019 and approximately 47 million Expert answered Q&As as of December 31, 2020. Defendants also admit Chegg's total revenue for the year ended December 31, 2019 was approximately $411 million, and total revenue for the year ended December 31, 2020 and was approximately $644 million. Defendants also admit Chegg's annual EBITDA for the year ended December 31, 2019 was approximately $68 million, and annual EBITDA for the year ended December 31, 2020 and was approximately $128 million. Defendants also admit that Chegg's stock price closed at $43.79 on May 4, 2020 and closed at $57.92 on May 5, 2020. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 40, including that Chegg's annual revenues "soared by 60%" from 2019 to 2020 and that Chegg's stock price "followed suit" as news of "dramatic growth" reached the market."

41.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 41, and on that basis, deny them. Defendants do not know the source of the purported quotations in the third sentence of paragraph 41 because Plaintiffs did not identify their sources. Defendants admit that they publicly expressed its belief, in form or substance, that Chegg's explosive growth during the period of remote learning was attributable to students' legitimate use of Chegg's online educational services and the Company's other legitimate business strategies. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 41, including that Defendants repeatedly assured investors in response to investors allegedly becoming "hyper-focused on the reasons for Chegg's sudden acquisition of millions of new online subscribers."

42.    Defendants admit the allegations in paragraph 42.

43.    Defendants do not know the source of the purported quotations in the first sentence of paragraph 43 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly expressed its belief, in form or substance, that the Company' growth was due to legitimate uses that were merely accelerated by the shift to remote learning, rather than being dependent upon it, and that, as a result, the Company's growth was sustainable and would continue even after COVID restrictions were lifted and students returned to on-campus, in-person education. Defendants do not know the source of the purported quotations in the second and third sentences of paragraph 43 because Plaintiffs did not identify their sources. Defendants admit that Mr. Rosensweig publicly shared his belief, in form or substance, that COVID was just an acceleration of the Company's inevitable growth due to the overwhelming value of Chegg's on demand online services, that students' return to campus would have no meaningful impact on the Company's growth, that the reason for Chegg's growth was never based on whether students were physically on a campus or at home but rather an acknowledgement that what Chegg does is what students need (and what schools cannot offer), and that, in fact, students being on or off campus was completely irrelevant to Chegg. Defendants also admit that Mr. Rosensweig stated that Chegg's growth during remote learning was not temporary, but instead a permanent situation. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 43.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

44.     Defendants admit that Chegg tracked how students were using the Company's online platform during the proposed Class Period.  Defendants also admit that on Chegg's October 26, 2020 earnings call, Mr. Rosensweig shared his honestly held belief that, (i) "Chegg is relevant whether you're on-campus or off-campus. We can see those numbers. We now have proof"; and (ii) "What we can feel comfortable in saying from this semester is that usage is agnostic to geography. If you're at the school or if you're not at the school, you subscribe and use Chegg very similar ways."

45.     Defendants admit that Mr. Rosensweig made the statements quoted in the first and second sentences of paragraph 45 on Chegg's May 3, 2021 earnings call, sharing his honestly held belief that, "we have looked at all of the data. If you were back at school and in classroom, if you are back at school and in classroom sometimes but not the rest or if you were at home, your conversion levels, your engagement levels, your renewal levels are almost identical. So we are not affected by whether schools teach online or offline or teach hybrid. The only thing that could affect us, which isn't the case, is if there was no school. And that is not what happened. It's not what's happening. And so as we come to an end of COVID, it's not going to affect us negatively at all." Defendants do not know the source of the purported quotations in the remainder of paragraph 45 because Plaintiffs did not identify their sources.  Defendants admit that Mr. Rosensweig publicly shared his belief, in form or substance that Chegg was not a Covid stock that would be affected by the behavior that happens post-COVID because the Company's data confirmed that the drivers of the Company's extraordinary growth and incredible profitability were all legitimate factors that would continue post-pandemic.  Although the source of the block quote at the end of paragraph 45 is not readily identifiable, Defendants admit that Mr. Rosensweig made the quoted statement.

46.     Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 46 in an interview on the *Barron* "Streetwise" podcast on September 30, 2021.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 46, including that Chegg revealed a purportedly concealed "truth" and that Chegg's growth was highly dependent upon remote learning.

COOLEY LLP
ATTORNEYS AT LAW

16

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

47.    Defendants admit that paragraph 47 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports.  Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports.  To the extent that the allegations in paragraph 47 differ in any way from the contents of the analyst reports, Defendants deny every such allegation.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 47, including the implicit assertion that investors and/or analysts just repeated back Chegg's statements in their reports.

48.    Defendants admit that Chegg consistently reported strong top- and bottom-line financial results during the proposed Class Period.  Defendants also admit that Chegg's total revenue was approximately $132 million in Q1 2020 and was approximately $198 million in Q2 2021.  Defendants also admit that Chegg's adjusted EBITDA was approximately $31.8 million in Q1 2020 and was approximately $84.4 million in Q2 2021.  Defendants also admit that Chegg reported year-over-year growth in total net revenue and adjusted EBITDA during the proposed Class Period.  As to the figures stated in the paragraph 48's chart, Defendants admit that Chegg publicly disclosed the Company's total revenue and adjusted EBITDA figures in its quarterly press releases announcing financial results and in its Forms 10-Q.  As to the footnote accompanying paragraph 48, Defendants admit that on Chegg's May 4, 2020 earnings call, Mr. Brown stated that, "when you think about gross margin, we talk about this on the last call. Just for the whole year, we anticipated approximately about a 5 percentage point change, but more importantly is the seasonality, right? So you're likely to see more seasonality in gross margin in Q1, in Q3, where it will be slightly lower, whereas in Q2 and Q4 will be slightly higher because you've got a bigger percentage of overall services revenue associated with those quarters, but nothing has changed from what we've talked about on the last call."  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 48 or the attached chart.

49.    Defendants admit that on August 3, 2020, Chegg publicly announced it was raising full year 2020 net revenue guidance to $605-$615 million and adjusted EBITDA guidance to $190-

$195 million.  Defendants also admit that on October 26, 2020, Chegg publicly announced it was raising full year net revenue guidance to $626-$628 million and adjusted EBITDA guidance to $201-$203 million.  Defendants also admit that Chegg raised its full year 2021 net revenue and adjusted EBITDA guidance three times in 2021.  Except as expressly admitted, Defendants deny the allegations in paragraph 49.

50.    Defendants admit that Chegg's stock price closed at $43.79 per share on May 4, 2020 and closed at $113.51 on February 12, 2021.  Except as expressly admitted, Defendants deny the allegations in paragraph 50.

51.    Defendants deny the allegations in paragraph 51.

52.    Defendants do not know the source of the purported quotations in paragraph 52 because Plaintiffs did not identify their sources.  Defendants admit that Chegg publicly stated, in form or substance, that its record subscriber growth and financial performance during the proposed Class Period was attributable to the Company's legitimate business strategies, and that such growth wasn't attributable to student cheating or other violations of academic integrity.  Except as expressly admitted, Defendants deny the allegations in paragraph 52, including that the Company "vehemently denied" anything.

53.    Defendants admit that *Forbes* published an article on January 28, 2021 titled, "This $12 Billion Company is Getting Rich Off Students Cheating Their Way Through Covid."  To the extent paragraph 53 purports to quote, summarize, or characterize the *Forbes* article, Defendants refer Plaintiffs to the article.  Except as expressly admitted, Defendants deny the allegations in paragraph 53.

54.    Defendants admit that the *International Journal for Educational Integrity* ("IJEI") published an article on February 4, 2021 titled, "Contract cheating by STEM students through a file sharing website: a Covid-19 pandemic prospective."  To the extent paragraph 54 purports to quote, summarize, or characterize the article, Defendants refer plaintiffs to the article.  Except as expressly admitted, Defendants deny the allegations in paragraph 54, including that the authors of the article were/are in a position to know how students used Chegg.

COOLEY LLP
ATTORNEYS AT LAW

18

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

55.     Defendants admit that *The Boston Globe*, *The Atlanta Journal Constitution*, and *The Daily Princetonian* published articles on April 30, 2020, May 5, 2020, and May 26, 2020, respectively, that include references to Chegg.  To the extent paragraph 55 purports to quote, summarize, or characterize *The Boston Globe*, *The Atlanta Journal Constitution*, and *The Daily Princetonian* articles, Defendants refer Plaintiffs to the articles.  Except as expressly admitted, Defendants deny the allegations in paragraph 55.

56.     Defendants admit that Chegg responded to reports of cheating, reiterating its commitment and affirmative efforts to stop cheating on its platform.  Defendants also admit that Mr. Schultz was quoted in a *Forbes* article published on January 28, 2021 explaining Chegg's knowledge of the problem and steps to address it: "We are not naive that [cheating] is a problem. And the mass move to remote learning has only increased it. We remain 100% committed to addressing it and are investing considerable resources to do so. We cannot do it alone and are working with faculty and institutions, and will continue to do more, including educating students." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in Paragraph 56, including that Mr. Schultz merely "claimed" that Chegg was actively cooperating with universities and professors to stop cheating.

57.     Defendants admit that Ms. Sue was quoted by *Inside Higher Ed* in an article published on February 5, 2021 explaining that, "mistakenly imply -- without any evidence -- that increased usage of Chegg has [sic] correlates to an increase in cheating. With millions of students going online in a matter of months, students have lost valuable on-campus and faculty support services, and stress and anxiety is high. Chegg provides much needed learning support to these students, especially during the pandemic."  As to the fifth and sixth sentences of paragraph 57, Defendants also admit that on Chegg's February 8, 2021 earnings call, Mr. Rosensweig shared his honestly held belief that, "one of the articles was written by somebody who works for one of our competitors" and that," in a blind study of students who used Chegg for more than 2 months, they found that 90% reported that Chegg Study helps them better understand their school work." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 57,

Answer to Complaint
5:21-cv-09953-PCP

including that "Chegg went even further in response to the IJEI study" and that IJEI is an "influential industry newsletter."

58. Defendants admit that Mr. Rosensweig was quoted in a *New York Times* article published on June 12, 2020. Defendants also admit that Chegg was quoted in a *Washington Post* article published on August 7, 2020. Defendants also admit that Chegg was quoted in a *Teen Vogue* article published on March 4, 2021.

59. Defendants admit that Chegg made the statements quoted in paragraph 59 in a press release on January 13, 2021 titled, "Chegg Launches HONOR SHIELD: A New Tool to Support the Integrity of Online Exams." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 59, including that Chegg attempted to "silence" investors' concerns and that Mr. Schultz "went out of his way to minimize the recent cheating allegations."

60. Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 60 on Chegg's February 8, 2021 earnings call while explaining how Chegg's Honor Shield program was designed and how Honor Shield used advanced technology to detect and block instances of academic dishonesty.

61. Defendants admit that at Bank of America's Telecom, Media and Internet Conference on June 17, 2021, Mr. Brown shared his honestly held belief that, "[Honor Shield] was 1 more step for us to be able to help the professor guard against those folks that -- and it's a very small group of folks that would potentially want to cheat on the platform" and that "the professor can upload their test on to our platform and we block the ability for those questions on the test to be asked on our platform during that testing period. And so it's just one more way of many ways that we -- on our platform where we have things in place to discourage and really not allow cheating for those students that decide they want to do that." Defendants also admit that Mr. Rosensweig was quoted in a *New York Times* article published on June 12, 2020 explaining that "[cheating has] always been a problem for colleges. Let's face it: Students have always found a way, whether it's in fraternities, or whether they go to Google. But Chegg is not built for that. We have built technology that removes copyrighted material before it even gets posted. If we're notified by a

professor or a school that there's copyrighted material, it immediately gets flagged and then removed."

62.    Defendants admit that the first through fourth sentences of paragraph 62 contain purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To the extent that the allegations in the first through fourth sentences of paragraph 62 differ in any way from the contents of the analyst reports, Defendants deny every such allegation. Defendants also admit that Mr. Rosensweig made the statements quoted in the fifth sentence of paragraph 62 in a William Blair analyst report published on September 23, 2021. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 62, including the implicit assertion that investors and/or analysts just repeated back Chegg's statements in their reports, and that the September 23, 2021 William Blair analyst report quoted Rosensweig as significantly downplaying cheating on the platform by claiming that schools' low use of Honor Shield indicated that professors were not as concerned with students using Chegg to cheat as most may think.

63.    Defendants deny the allegations in paragraph 63.

64.    Paragraph 64 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny every such allegation. Except as expressly admitted, Defendants deny the allegations in paragraph 64.

65.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 65, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any

such cheating on Chegg's business during the proposed Class Period. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

66.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 66, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

67.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 67, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

68.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 68, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

69.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 69, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

70.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 70, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

71.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 71, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 71, including that "Chegg would go out of its way to protect" the identity of suspected cheaters and that "Chegg refused" to cooperate with schools during the proposed Class Period.

72. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 72, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. As to the third sentence of paragraph 72, Defendants admit that Chegg took reasonable steps to protect its users' privacy and allowed subscribers to register with non-school emails that did not include their first name, last name, or initials. Except as expressly admitted, Defendants deny the allegations in paragraph 72.

73. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 73, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. As to the seventh and eighth sentences of paragraph 73, Defendants admit that Chegg took reasonable steps to protect its users' privacy and denied third-party requests for Chegg subscribers' data when such requests were not made in accordance with the terms of Chegg's Honor Code.

74. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 74, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or

COOLEY LLP
ATTORNEYS AT LAW

24

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

75. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 75, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 75.

76. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 76, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. As to the fifth sentence of paragraph 76, Defendants admit that Chegg required university professors to use their official university email to use Chegg's Honor Shield. Except as expressly admitted, Defendants deny the allegations in paragraph 76.

77. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 77, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or

COOLEY LLP
ATTORNEYS AT LAW

25

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

78. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 78 and the accompanying footnote, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. As to footnote accompanying paragraph 78, Defendants admit that Chegg took reasonable steps to protect its users' privacy and denied third-party requests for Chegg subscribers' data when such requests were not made in accordance with the terms of Chegg's Honor Code. Except as expressly admitted, Defendants deny the allegations in paragraph 78 and the accompanying footnote.

79. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 79, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. As to the fifth and sixth sentences of paragraph 79, Defendants admit that Chegg took reasonable steps to protect its users' privacy and denied third-party requests for Chegg subscribers' data when such requests were not made in accordance with the terms of Chegg's Honor Code. Except as expressly admitted, Defendants deny the allegations in paragraph 79.

80. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 80, and so Defendants do not have knowledge or information sufficient to

form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

81. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 81, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 81.

82. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 82, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

83. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 83, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers

used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

84. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 84, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

85. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 85, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. As to the last sentence of paragraph 85, Defendants admit that Chegg took, and takes, academic integrity very seriously, and that Chegg took reasonable steps to protect its users' privacy and denied third-party requests for Chegg subscribers' data when such requests were not made in accordance with the terms of Chegg's Honor Code. Except as expressly admitted, Defendants deny the allegations in paragraph 85.

86. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 86, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers

used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

87. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 87, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

88. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 88, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

89. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 89, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

90. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 90, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 90.

91. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 91, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 91.

92. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92, and on that basis, deny them.

93. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 93, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 93.

94. Defendants admit that Chegg required university professors to use their official university email to use Chegg's Honor Shield. Except as expressly admitted, Defendants deny the allegations in paragraph 94.

95. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95, and on that basis, deny them.

96. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 96, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

97. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 97, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 97.

98. Paragraph 98 does not contain factual allegations and therefore requires no response. To the extent a response is required, Defendants deny the allegations in paragraph 98.

99. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 99, and so Defendants do not have knowledge or information sufficient to

form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. The footnote accompanying paragraph 99 does not contain factual allegations and therefore requires no response. To the extent a response is required, Defendants deny the allegations in paragraph 99. Except as expressly admitted, Defendants deny the allegations in paragraph 99 and the accompanying footnote.

100. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 100 and the accompanying footnote, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Except as expressly admitted, Defendants deny the allegations in paragraph 100 and the accompanying footnote.

101. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 101 and the accompanying footnote, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

COOLEY LLP
ATTORNEYS AT LAW

32

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

102.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 102, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms.  Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

103.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 103 and the accompanying footnote, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms.  Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

104.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 104, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms.  Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

105.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 105 and the accompanying footnote, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the

allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

106. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 106 and the accompanying footnotes, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

107. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 107, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

108. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 108, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

109.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 109, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

110.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 110, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

111.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 111, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

112.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 112, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that

isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

113. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 113, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

114. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 114, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

115. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 115, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

116. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 116, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

117. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 117, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

118. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 118 and the accompanying footnote, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

119. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 119, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

120. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 120, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

121. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 121, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

122. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 122, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

COOLEY LLP
ATTORNEYS AT LAW

38

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

123.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 123, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

124.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 124, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

125.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 125, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

126.    Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 126, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that

isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms.  Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

127.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  The footnote accompanying paragraph 127 does not contain factual allegations and therefore requires no response.  To the extent a response is required, Defendants deny the allegations in the footnote accompanying paragraph 127.

128.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 and the accompanying footnotes.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

129.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

130.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  As to the second sentence of paragraph 130, Defendants admit that Chegg subscribers are able to run general searches of content by subject matter across Chegg's database of Expert answers.  Except as expressly admitted, Defendants deny the allegations in paragraph 130, including that "Chegg

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

recognized that things 'would likely not go well [for its business] when students returned to campus.'"

131. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations paragraph 131 and the accompanying footnote. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. As to the second sentence of paragraph 131, Defendants admit that Chegg was aware of certain instances of its subscribers using Chegg products to violate academic integrity prior to the COVID-19 pandemic. Except as expressly admitted, Defendants deny the allegations in paragraph 131 and the accompanying footnote.

132. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132 and the accompanying footnote. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

133. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

134. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134 and the accompanying footnotes. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

135. Defendants admit that Chegg used Oracle software to track subscriber data during the proposed Class Period. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in the

remainder of paragraph 135 and the accompanying footnote. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

136. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 136. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

137. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. As to the footnote accompanying paragraph 137, Defendants admit that, in 2017, the Examinations Institute of the American Chemical Society, Division of Chemical Education, filed a complaint against Chegg. To the extent the footnote purports to summarize or characterize the allegations in that lawsuit, Defendants refer Plaintiffs to the contents of the complaint filed. To the extent that the allegations in the footnote to paragraph 137 differ in any way from the contents of that complaint, Defendants deny the allegations.

138. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Except as expressly admitted, Defendants deny the allegations in paragraph 138, including that Chegg "did nothing" to stop students from cheating and Chegg did so because cheating was "putting money into their pocket."

139. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

140.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Except as expressly admitted, Defendants deny the allegations in paragraph 140, including that Chegg's research of student cheating was "ad hoc" or that the Company's interest to determine if Chegg was being utilized for cheating slowed significantly once there was less litigation pressure from publishers.

141.    Defendants admit that Chegg publicly stated that the Company's efforts to reduce account sharing contributed to Chegg's growth during the proposed Class Period. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Except as expressly admitted, Defendants deny the allegations in paragraph 141, including any suggestion that Chegg stated that account sharing accounted for all of its growth during the proposed Class Period.

142.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 142. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Except as expressly admitted, Defendants deny the allegations in paragraph 142, including that "Chegg sought to balance clamping down on account sharing with the threat of losing a subscriber."

143.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 143. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

144.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 144. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

145. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 145. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Except as expressly admitted, Defendants deny the allegations in paragraph 145, including that "Rosensweig and Brown were enamored with their personal wealth" and the implication that Mr. Rosensweig's only job "was to get the stock up and make the company look good."

146. Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 146. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

147. Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

148. Defendants admit that COVID-19 was declared a pandemic in March 2020, and in response, many colleges and universities implemented remote learning options. Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 148. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the

prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

149.   Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 149 and the accompanying footnote.  Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

150.   Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 150. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

151.   Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151 and the accompanying footnote.  Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

152.   Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

153. Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

154. Defendants do not know the source of the purported quotations in paragraph 154 because Plaintiffs did not identify their sources. Defendants admit that Mr. Rosensweig shared his belief, in form or substance, that Chegg uses technology and AI to build technology that blocks users from asking multiple questions so that a test cannot be submitted test all at once. Defendants also admit that Chegg uses technology, AI, and machine learning to block specific questions submitted through text or photo that indicate academic dishonesty. Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period. Except as expressly admitted, Defendants deny the allegations in paragraph 154, including that Chegg failed to effectively prevent use of Expert Q&A by students to cheat on exams.

155. Defendants do not know the source of the purported quotations in paragraph 155 because Plaintiffs did not identify their sources. Defendants admit that Chegg expressed its belief, in form or substance, that the Company was deeply committed to academic integrity, took cheating extremely seriously, was constantly working to improve its abilities to detect and respond to issues around both copyright and academic integrity and responded to such issues as quickly as possible. Except as expressly admitted, Defendants deny the allegations in paragraph 155, including that Chegg "utterly failed to take even the most obvious remedial steps to stop cheating."

156. Paragraph 156 contains uninformed speculation from Plaintiffs about steps Chegg "could have taken" during the proposed Class Period and does not prove anything about how

students used Chegg's platform or about how the transition to online learning impacted Chegg's business. Accordingly, Defendants deny the allegations. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in the remainder of paragraph 156, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

157. Paragraph 157 contains uninformed speculation from Plaintiffs about what Chegg "could have prevented" during the proposed Class Period and does not prove anything about how students used Chegg's platform or about how the transition to online learning impacted Chegg's business. Accordingly, Defendants deny the allegations, including that Chegg "could have prevented cheating by simply delaying providing answers" and that there was a "specific and obvious fix." Defendants admit that Ms. Sue made the statements quoted in paragraph 157 while explaining that the Company received requests from faculty during the proposed Class Period on speculative, unfounded ways Chegg could stop purported cheating. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in the remainder of paragraph 157, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

158. Paragraph 158 contains uninformed speculation from Plaintiffs about what Chegg "could have" done to "greatly reduced cheating on its platform" during the proposed Class Period

and does not prove anything about how students used Chegg's platform or about how the transition to online learning impacted Chegg's business. Accordingly, Defendants deny the allegations. Defendants do not know the source of the purported quotations in the remainder of paragraph 158 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly stated, in form or substance, that schools were woefully underinvested in technology, that schools didn't prepare to teach online, that Chegg abided by an honor code, and that Chegg expelled cheaters from its platform. Defendants also admit that Mr. Rosensweig shared his honestly held belief that, "[w]e also have an honor code that our students are obliged to follow and if we find they haven't followed that honor code then we will suspend them and at some point we expel them if they're repeat offenders . . . In any environment you have some kids that want to cheat, so Chegg's not really the problem it's more the student." Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 158, including that Chegg "blamed" anyone.

159.     Paragraph 159 contains uninformed speculation from Plaintiffs about what Chegg "could have upgraded" during the proposed Class Period and does not prove anything about how students used Chegg's platform or about how the transition to online learning impacted Chegg's business. Accordingly, Defendants deny the allegations. Defendants do not know the source of the purported quotations in the third sentence of paragraph 159 because Plaintiffs did not identify their sources. Defendants admit that Chegg publicly stated, in form or substance, that for questions submitted either in text or submitted in photos, Chegg used technology, AI and machine learning, to actually block instances of cheating and disallow specific questions students may want to ask. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in the remainder of paragraph 159, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool. Defendants deny Plaintiffs' disparaging

commentary and/or characterizations in paragraph 159, including that Chegg "purported" to use software to detect and block cheating, and that "Honor Shield program was . . . a hollow gesture intended to assuage investor concern."

160.   Paragraph 160 contains uninformed speculation from Plaintiffs about steps Chegg "could have taken" during the proposed Class Period and does not prove anything about how students used Chegg's platform or about how the transition to online learning impacted Chegg's business.  Accordingly, Defendants deny the allegations.  Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

161.   Paragraph 161 contains uninformed speculation from Plaintiffs about "clear measures" Chegg could have "implement[ed]" during the proposed Class Period and does not prove anything about how students used Chegg's platform or about how the transition to online learning impacted Chegg's business.  Accordingly, Defendants deny the allegations.  Defendants also deny Plaintiffs' disparaging commentary and/or characterization, including that Chegg "waited until halfway through the Class Period to announce its launch" of Honor Shield, that Honor Shield "follow[ed] growing media reports raising questions about cheating scandals involving Chegg, that Chegg's statements were "patently false," and the insinuation that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

162.   Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 162, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms.  Defendants also deny Plaintiffs' disparaging commentary and/or characterization, including that "Honor Shield program was obviously impractical and unfeasible," that "Honor Shield put the onus squarely on educators," and the insinuation that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

163.    Defendants admit that during the proposed Class Period, Mr. Rosensweig sold 552,000 shares of Chegg common stock, excluding dispositions for tax withholding and gifts. Defendants also admit that during the proposed Class Period, Mr. Schultz sold 307,376 shares of Chegg common stock, excluding dispositions for tax withholding and gifts.  Defendants also admit that Mr. Rosensweig and Mr. Schultz collectively sold more than $43 million of their personal shares on the open market during the proposed Class Period.  Except as expressly admitted, Defendants deny the allegations in paragraph 163, including that Chegg's stock "prices [were] massively inflated as a result of Defendants' [alleged] fraud," and the insinuation that all of Mr. Rosensweig's and Mr. Schultz's sales were made when "Chegg stock [was] trading multiples higher than at any point in the Company's entire history as a public company."

164.    Defendants admit that on February 18, 2021, Chegg conducted a secondary public offering of 9,804,000 shares of its common stock at a public offering price of $102.00 per share, which closed on February 22, 2021.  Defendants also admit that Chegg realized gross proceeds from the secondary public offering of approximately $1.15 billion, and that Mr. Rosensweig realized gross proceeds from the secondary public offering of $30.6 million.  Defendants also admit that Chegg's stock price closed at $113.51 on February 12, 2021.  The remainder of paragraph 164 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the first sentence of paragraph 164.  Except as expressly admitted, Defendants deny the allegations in paragraph 164.

165.    Paragraph 165 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the first sentence of paragraph 165.

166.    Paragraph 166 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 166.  Except as expressly admitted, Defendants deny the allegations in paragraph 166.

167.    Defendants admit that Chegg issued a press release titled, *Chegg Reports Third Quarter 2021 Financial Results*, which was filed with the SEC as an exhibit to Chegg's Form 8-K

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

on November 1, 2021. Defendants also admit that Chegg had 4.9 million subscribers in Q2 2021 and had 4.4 million subscribers in Q3 2021. Defendants also admit that, on November 1, 2021, Chegg lowered its full year 2021 net revenue guidance from a range of $805-$815 million to a range of $762-$764 million and adjusted EBITDA guidance from a range of $295-$300 million to a range of $255-$257 million. Defendants also admit that, on November 1, 2021, Chegg announced $194-$196 million in projected revenue for Q4 2021. Defendants also admit that, on November 1, 2021, Chegg postponed the issuance of full-year 2022 guidance until February 2022. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 167, including that Chegg "dramatically" lowered guidance and that Chegg's Q3 2021 financial results were "disappointing." Except as expressly admitted, Plaintiffs deny the allegations in paragraph 167.

168. Defendants admit that Chegg's stock price closed at $43.79 per share on May 4, 2020; closed at $62.76 per share on November 1, 2021; and closed at $32.12 on November 2, 2021. The remainder of paragraph 168 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 168. Except as expressly admitted, Defendants deny the allegations in paragraph 168, including that "Chegg's stock price was eviscerated" or that the price change was "massive."

169. Defendants do not know the source of the purported quotations in paragraph 169 because Plaintiffs did not identify their sources. Defendants admit that Chegg expressed its belief, in form or substance, that Chegg's Q3 2021 financial results were affected by industry-wide factors including a slowdown in the education industry resulting in significantly fewer enrollments than expected that semester, and student fatigue causing students to take fewer and less rigorous classes. Defendants also admit that the statements quoted in the second sentence of paragraph 169 were made in a *Forbes* article published on November 2, 2021. Defendants admit that the remainder of paragraph 169 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To

the extent that the allegations in the remainder of paragraph 169 differ in any way from the contents of the analyst reports, Defendants deny every such allegation. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in Paragraph 169, including that Chegg "attempted to blame" anything for the Company's Q3 2021 financial results, and that the Company's Q3 2021 financial performance and stock price plunged because of the widespread return of on-campus learning collapsed student demand for Chegg.

170. Defendants admit that paragraph 170 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To the extent that the allegations in paragraph 170 differ in any way from the contents of the analyst reports, Defendants deny every such allegation. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 170, including that Chegg "attempt[ed] to blame" its financial performance on anything.

171. Defendants admit that paragraph 171 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports. To the extent that the allegations in paragraph 170 differ in any way from the contents of the analyst reports, Defendants deny every such allegation. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 170, including that Chegg "provid[ed] false excuses."

172. Defendants admit that Chegg issued a press release titled, *Chegg Reports First Quarter 2020 Financial Results*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on May 4, 2020. Defendants also admit that, in Q1 2020, Chegg acquired 2.9 million subscribers, a 35% increase year-over-year, had total net revenues of $131.6 million, a 35% increase year-over-year, adjusted EBITDA of $31.8 million, and Chegg Services revenues of $100.4 million, a 33% increase year-over-year. Defendants also admit that Mr. Rosensweig made the statements quoted

COOLEY LLP
ATTORNEYS AT LAW

52

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

in the fourth sentence of paragraph 172 on Chegg's May 4, 2020 earnings call. Defendants also admit that Chegg's stock price closed at $43.79 on May 4, 2020, and closed at $57.92 on May 5, 2020. Except as expressly admitted, Defendants deny the allegations in paragraph 172.

173. Defendants admit that on Chegg's May 4, 2020 earnings call, Mr. Brown shared his honestly held belief that, "[s]ince mid-March, we have seen a mix shift in our business as advertising revenue has decreased from an industry-wide slowdown, while at the same time, we have also seen a substantial increase in our subscription services driven by new U.S. and international subscribers to our platform as well as increased success with our account sharing efforts, and we see these trends continuing into Q2." Defendants also admit that Chegg issued a press release titled, *Chegg Reports First Quarter 2020 Financial Results*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on May 4, 2020.

174. Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 174 on Chegg's May 4, 2020 earnings call while explaining his honestly held belief that Chegg benefited from the transition to remote learning during the Covid-19 pandemic, but that the Company was poised to continue growing regardless of whether curriculum was taught online or in person.

175. Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 175 on Chegg's May 4, 2020 earnings call while explaining his honestly held belief that Chegg's growth during the proposed Class Period would be sustainable after remote learning ended.

176. Defendants deny the allegations in paragraph 176.

177. Defendants admit that on Chegg's May 4, 2020 earnings call, Mr. Rosensweig shared his honestly held belief that, "the only part of our business that on-campus, off-campus can affect would be textbooks. And honestly, it feels as if off-campus affects it in a good way and on-campus, we continue to take market share. So I don't know that it really matters. What we've done is we prepared to own fewer textbooks for the time being because they'll be very inexpensive to buy and we'll just meet demand if we need to. But our Chegg Services business will continue to grow, whether it's on-campus, off-campus, whether they do a hybrid. What we believe is you're going to see a hybrid probably more so in the blue states than the red states. The red states will

probably be more on-campus. All the schools will open because if they don't, they will run out of money. So the real issue is how many students will come to campus. And what we're seeing is a real surge in online curriculum, whether they're going to community colleges or any other source, and Chegg is benefiting from that. So we're prepared regardless of which way it goes, but it shouldn't have a meaningful impact one way or the other given the momentum that we're seeing."

178.    Defendants deny the allegations in paragraph 178.

179.    Defendants admit that at the J.P. Morgan 48th Annual Technology, Media Communications Conference on May 14, 2020, Mr. Rosensweig shared his honestly held belief that, "[t]hose two things alone, internationalization and account sharing, will account for significant growth and are accounted for significant growth. The third area [Chegg focused on as remote learning became the norm] is the bundle, which is we had always believed the bundle would matter. We had planned for it and discussed that the bundle would matter probably at the end of the year. But we're seeing everywhere in the world similar percentages taking the bundle. And I think what happened was when students were moved off campus, and they had no access to a professor or a friend or the computer lab or the writing lab or in their math lab, our research says that 21% of students had used on-campus support. Well, without any campus support, people started taking the bundle in a much more significant way, even as our volume grew."

180.    Defendants admit that at the J.P. Morgan 48th Annual Technology, Media Communications Conference on May 14, 2020, Mr. Rosensweig shared his honestly held belief that, "[t]he reality of what we think is going to happen, at least in this fall, is that fewer students will want to physically attend [school]. More students are going to need more help because the schools can't supply the help. They can't scale. They can only work with the tools that they have. They never made the investment in the tools that they needed. So we have been the beneficiary but not in a temporary way like some maybe because we just believe that this is inevitable. We believe this just accelerates multiple years earlier than what we expected to see, and I think our numbers reflect that."

181.    Defendants deny the allegations in paragraph 181.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

182. Defendants admit that Mr. Rosensweig was quoted in a *New York Times* article published on June 12, 2020 explaining that "[cheating has] always been a problem for colleges. Let's face it: Students have always found a way, whether it's in fraternities, or whether they go to Google. But Chegg is not built for that. We have built technology that removes copyrighted material before it even gets posted. If we're notified by a professor or a school that there's copyrighted material, it immediately gets flagged and then removed." Defendants denied Plaintiffs' disparaging commentary and/or characterizations in paragraph 182, including that Mr. Rosensweig only "claimed" that Chegg took extensive efforts to curb any use of its platform to cheat.

183. Defendants deny the allegations in paragraph 183.

184. Defendants admit that Mr. Brown made the statements quoted in paragraph 184 at the Jefferies Virtual Consumer Conference on June 24, 2020 while explaining his honestly held belief that that "the inevitable is that more and more educational services are going to go online."

185. Defendants deny the allegations in paragraph 185.

186. Defendants admit the allegations in paragraph 186.

187. Defendants admit that Messrs. Rosensweig and Brown made the statements quoted in paragraph 187 during Chegg's Q2 2020 earnings call on August 3, 2020 while explaining their honestly held belief Chegg's high-quality expert on-demand support was a constant factor in the Company's accelerated growth across its services during the proposed Class Period. Defendants also admit that Chegg issued a press release titled, *Chegg Reports Second Quarter 2020 Financial Results and Raises Guidance for 2020*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on August 3, 2020.

188. Defendants admit that Mr. Brown made the statements quoted in paragraph 188 in an interview on the *Benzinga* "Premarket Prep" podcast on August 6, 2020.

189. Defendants admit that a Chegg spokesperson was quoted in a *Washington Post* article on August 7, 2020 explaining that "[Chegg has not seen] any relative increase in honor code issues since the covid-19 crisis began" and that "[s]tudents have always found away, whether it's in fraternities, or whether they go to Google. But Chegg is not built for that."

190. Defendants deny the allegations in paragraph 190.

191.    Defendants admit the allegations in paragraph 191.

192.    Defendants deny the allegations in paragraph 192.

193.    Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 193 at the CMU Silicon Valley Summit Distinguished Speaker Series on September 23, 2020 while explaining that Chegg's growth during the proposed Class Period was largely due to the Company's efforts to cut down on account sharing and growing the Company's international subscriber base.

194.    Defendants deny the allegations in paragraph 194.

195.    Defendants admit that in a press release titled, *Chegg Reports Strong Q3 2020 Financial Results and Raises Full Year 2020 Guidance*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on October 26, 2020, Mr. Rosensweig shared his honestly held belief that Chegg's "business continue[d] to have an extraordinary year" and that "we [saw] extraordinary growth" across Chegg's businesses.  Defendants also admit that in Q3 2020, Chegg had (i) 3.7 million subscribers, a 69% increase year-over-year; (ii) total revenues of $154 million, a 64% increase year-over-year; (iii) adjusted EBIDTA of $31.9 million; and (iv) Chegg Services revenue of $118.9 million, a 72% increase year-over-year.

196.    Defendants admit that Messrs. Rosensweig and Brown made the statements quoted in paragraph 196 during Chegg's Q3 2020 earnings call on October 26, 2020 while explaining their honestly held belief that the Company had seen a permanent reset in how students and educators look at digital learning.

197.    Defendants admit that in its Form 10-Q for the quarter ended September 30, 2020, filed with the SEC on October 26, 2020, Chegg stated that, "Chegg Services revenues increased $49.6 million, or 72%, and $120.4 million, or 54%, during the three and nine months ended September 30, 2020, respectively, compared to the same periods in 2019, primarily due to a 69% increase in subscriber growth, during the three months ended September 30, 2020 compared to the same period in 2019, driven by increased global penetration, our efforts to reduce account sharing, the widespread transition to remote learning as a result of the COVID-19 pandemic, and subscribers from our recent acquisitions."

198.    Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 198 in an interview on CNBC's "Closing Bell" television program on October 27, 2020. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 198, including that Mr. Rosensweig only attributed Chegg's growth to the Company's efforts to prevent account sharing.

199.    Defendants deny the allegations in paragraph 199.

200.    Defendants admit that at the Citi Virtual Education Conference on November 12, 2020, Mr. Brown shared his honestly held belief that, "I don't think [our total addressable market] changed at all pre-COVID and post-COVID, right?" Defendants also admit that Mr. Brown stated that "[Chegg's increased financial performance is] a combination of 2 things. We talked -- that we've already talked about. One is on the account sharing in the U.S. And the second thing really is the acceleration of our international business."

201.    Defendants deny the allegations in paragraph 201.

202.    Defendants admit that at the Raymond James Technology Investors Conference on December 8, 2020, Mr. Brown shared his honestly held belief that, "I do believe, and we've said this before, that it was inevitable that more and more learning was going to go online. It would just – to us, it was like a no-brainer. Do we believe that has accelerated as a result of COVID? The answer is, yes. So I think the dynamic we saw in the US was more so around that account sharing, maybe some that were there – because they didn't have the on-campus help, but I think the vast majority was account sharing, again. And that to me is – those tailwinds continue into 2021 and 2022 because any time somebody signs up for a subscription, they can't share with one or two other people. The dynamic internationally is very different. The dynamic internationally is that what the outbreak of COVID revealed to us as kids across the globe went home to learn, was how big the opportunity was outside of the countries we were focused on. And so we have focused on 3 or 4 countries, the countries you can imagine at the beginning of the year, U.K., Australia and Canada."

203.    Defendants admit that Mr. Brown made the statements quoted in paragraph 203 at the Raymond James Technology Investors Conference on December 8, 2020 in response to a

question asking whether Chegg's efforts to stop account sharing were "still going to be a driver of *maybe incremental* users in '21 and '22."

204.    Defendants deny the allegations in paragraph 204.

205.    Defendants admit that the statements quoted in paragraph 205 are from a *KAGS News* article published on December 16, 2020 in which Ms. Batiste was quoted explaining Chegg's commitment to academic integrity and the Company's steps taken to address instances of cheating.

206.    Defendants deny the allegations in paragraph 206.

207.    Defendants admit that Chegg made the statements quoted in paragraph 207 in a press release on January 13, 2021 titled, "Chegg Launches HONOR SHIELD: A New Tool to Support the Integrity of Online Exams."  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 207, including that the Company "claimed" that Honor Shield would prevent student use of Chegg to cheat.

208.    Defendants deny the allegations in paragraph 208.

209.    Defendants admit that the statements quoted in paragraph 209 are from an *Inside Higher Ed* article published on February 5, 2021 in which Ms. Sue was quoted explaining that the IJEI study is not based on any evidence and that Chegg is fully committed to academic integrity.

210.    Defendants deny the allegations in paragraph 210.

211.    Defendants admit the allegations in paragraph 211.

212.    Defendants admit that on Chegg's February 8, 2021 earnings call, Mr. Rosensweig shared his honestly held belief that, "this massive shift to learning online accelerated by the pandemic is an irreversible trend and is actually more student centric. With increased access to digital learning and support, more learners can learn more subjects on any device, anywhere and any time with incredibly high-quality content and tools."  Defendants also admit that Mr. Rosensweig stated that, "Chegg's products and services are increasingly critical to student success. Our results reflect the growing importance of Chegg's learning support services to millions of students around the world. In 2020, we saw year-over-year annual subscriber growth of 67%, representing over 6.6 million subscribers, and total revenue growth of 57%. The trends towards online learning are continuing. And as a result, it gives us the confidence to raise our guidance in

2021 . . . ." Defendants also admit that Chegg issued a press release titled, *Chegg Reports Fourth Quarter 2020 Financial Results and Raises 2021 Guidance*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on February 8, 2021.

213. Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 213 on Chegg's February 8, 2021 earnings call while explaining his honestly held belief that traditional media was failing to fully understand Chegg's industry-changing potential and the steps Chegg was taking to combat the limited instances of cheating perpetrated on its platforms.

214. Defendants deny the allegations in paragraph 214.

215. Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 215 on Chegg's February 8, 2021 earnings call while sharing his honestly held belief that Chegg's success during the proposed Class Period was because of the realization of Chegg's online platform to benefit students both at home and online. Defendants also admit that on Chegg's February 8, 2021 earnings call, Rosensweig stated that, "the value proposition [of Chegg Study] is overwhelming for the student. It helps them learn, they can get it anytime day or night, and for the $14.95, they just feel it's worth it now because they weren't able to share it anymore. So I can't give a specific [conversion] number [for users who can no longer share accounts] because it just was coincidental with when COVID happened."

216. Defendants admit that on Chegg's February 8, 2021 earnings call, Mr. Rosensweig shared his honestly held belief that, "the [growth lever] that has had the most immediate impact is account sharing. And I think people are confusing that domestically as if they were a stay-home company or not a stay home company. That's completely irrelevant to Chegg. What's relevant is that students know who we are. They want us. We provide an unbelievable service and the numbers reflect that. So that's the one that probably catches up first. International [is the other growth lever] as Andy articulated . . . ."

217. Defendants deny the allegations in paragraph 217.

218. Defendants admit that at the Goldman Sachs Virtual Technology and Internet Conference on February 11, 2021, Mr. Rosensweig shared his honestly held belief that, "[t]he first ones were the most egregious ones, which were people that were stealing and reselling. And we

started working on that over 1.5 years ago and made some really great progress. And you saw in Q1, even before COVID started, that our growth rate had accelerated 3 points just by eliminating that . . . And because of COVID, everybody had to go home, a lot of the proximity sharing ended. And what we did was we moved up our '21 investment into '20 to do 2-step authentication, which locked a lot of that ability so that when people went back to campus, they couldn't go back to those habits or when new people came on to campus, they couldn't start those habits . . . That and the fact that institutions are providing almost zero support to students off-campus, let alone back on campus when they get there. And then international affected it differently, which is they just discovered us. It had nothing to do with account sharing. And since they've gone back to school in every place, I think, but the U.K., we've seen the behavior continues."

219.    Defendants admit that at the Goldman Sachs Virtual Technology and Internet Conference on February 11, 2021, Mr. Rosensweig shared his honestly held belief that, "we took our point guidance and which is actually $5 million less than the bottom of our range now. So our confidence each day continues to go up. Because unlike other businesses that are affected one way by COVID, it became clear to us that whether you were on campus or not on campus, it didn't matter to Chegg's growth. So we're going to grow through when they go back to campus. We don't see those things as being variables anymore based on the fact that we saw in Q4, people go back to school. Even if they didn't go in the classroom and around the world, people went back and they went in the classroom and so we just felt increasing confidence."

220.    Defendants deny the allegations in paragraph 220.

221.    Defendants admit that in its Form 10-K for the year ended June 30, 2020, filed with the SEC on February 22, 2021, Chegg stated that, "Chegg Services revenues increased by $189.0 million, or 57%, during the year ended December 31, 2020, compared to the same period in 2019, primarily due to a 67% increase in subscriber growth driven by increased global penetration, our efforts to reduce account sharing, the widespread transition to remote learning as a result of the COVID-19 pandemic, and subscribers from our recent acquisitions."

222.    Defendants deny the allegations in paragraph 222.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

223.   Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 223 at the Morgan Stanley Technology, Media, and Telecom Conference on March 3, 2021 while sharing his honestly held belief that Chegg's growth was sustainable regardless of whether students were located on campus or off-campus.

224.   Defendants admit that at the Jefferies Virtual Online Education e-Learning Summit on March 11, 2021, Mr. Rosensweig shared his honestly held belief that, "people keep wondering, are we stay-at-home stock? I don't even know what that means," and that, "Chegg was [in an advantageous position], which is we were accelerating growth before the pandemic and the pandemic just accelerated it more. And post the pandemic, it's not going to go back to the way that it was. Because the issue for Chegg was never whether you're physically on a campus or at home, the issue for Chegg was an acknowledgment that what we do is what students need and schools cannot offer it, and do not offer it."

225.   Defendants admit that at the Jefferies Virtual Online Education e-Learning Summit on March 11, 2021, Mr. Rosensweig was asked, "Study Pack and password sharing has been a major driver. Can you talk through the runway that you have left in both these categories?"  In response Mr. Rosensweig shared his honestly held belief that, "[t]he second [item Chegg is working on to cut down on Chegg Study Pack password sharing] is also nefarious, which is people stole people's passwords in other places, and they test them in sites, and they tested them on Chegg And to the degree that they were able to get your password, they sold access to your account to somebody else and you never knew. So -- and there's no risk to the student because it's just us giving away our content for free. And that's what we did last August and last October when we did sort of revamp the passwords and did MFA. So we now limit the number of devices they can use it. And that, more than anything else coincided with COVID, but more than anything else, that's what drove our domestic growth. It wasn't COVID, which is another reason we're not a stay-on stock."

226.   Defendants deny the allegations in paragraph 226.

227.   Defendants deny the allegations in paragraph 227.

228.   Defendants admit that Mr. Rosensweig made the statements quoted in the first and second sentences of paragraph 228 on Chegg's May 3, 2021 earnings call.  Defendants also admit

that in Q1 2021, Chegg reported (i) 4.8 million subscribers; (ii) $198.4 million in total net revenues, a 51% increase year-over-year; (iii) $57.1 million in adjusted EBITDA; and (iv) $162.4 million in Chegg Services revenue, a 62% increase year-over-year.  Defendants also admit that in its Form 10-Q for the year ended March 31, 2021, filed with the SEC on May 3, 2021, Chegg stated that, "Chegg Services revenues increased $62.0 million, or 62%, during the three months ended March 31, 2021, compared to the same period in 2020, primarily due to our efforts to reduce account sharing, increased global penetration, the introduction of new offerings, and the widespread transition to remote learning as a result of the COVID-19 pandemic."  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 228, including Plaintiffs' characterization that Chegg's strong Q1 results were attributed only to Chegg's continued efforts to limit account sharing.

229.    Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 229 during Chegg's Q1 2021 earnings call on May 3, 2021 while explaining it is honestly held belief that the "end of Covid [was] not going to affect [Chegg] negatively at all" because Chegg provide services to students regardless of their location on or off campus.  Defendants also admit that Mr. Rosensweig expressed these views because he believes the statements to be true. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in the first and second sentences of paragraph 229, including that Mr. Rosensweig's response constituted a strong denial rather than an explanation of facts at the time.

230.    Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 230 during Chegg's Q1 2021 earnings call on May 3, 2021 while explaining is honestly held belief that the increase in international subscribers and Chegg's efforts to limit account sharing contributed to the Company's growth.

231.    Defendants deny the allegations in paragraph 231.

232.    Defendants admit that Mr. Brown made the statements quoted in paragraph 232 in an interview on the TD Ameritrade Network on May 5, 2021 while explaining his honestly held belief that Chegg's success would continue after the COVID-19 pandemic.

233.    Defendants admit that at the 16th Annual Needham Virtual Technology & Media Conference on May 19, 2021, Mr. Brown shared his honestly held belief that, "We're not sure it's a COVID cohort. So I just want to make sure that's clear. I mean there were quite a few things that occurred kind of in the middle of 2020 that we're -- I call it, we're lapping as it were, right? One is the COVID part. What part of that is COVID? But at almost the same time, we started doing things around account sharing. So how much of that is COVID and how much is account sharing? And we do believe a big part of that is actually what we have done, which is account sharing, and that continues. And the second one is -- the third one, excuse me, is international. And so, there are really three dynamics that we are lapping. It's not just about – it certainly isn't just about COVID. What – but what we do know is this is that, what we saw last year was just an acceleration of what we call the inevitable. And that is that more and more educational services were going to go online. More and more students once they found the fact that they could get on-demand educational services, why would they go away, right? I mean because that's how they live their normal lives. Everything is on demand."

234.    Defendants deny the allegations in paragraph 234.

235.    Defendants admit that Mr. Brown made the statements quoted in paragraph 235 at Bank of America's Telecom, Media and Internet Conference on June 17, 2021 while explaining his honestly held belief that Chegg was committed to academic integrity and was taking steps to address cheating perpetrated on Chegg.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 235, including that Chegg only "claim[ed]" it was proactively addressing and successfully curbing cheating on its platform.

236.    Defendants admit that Chegg updated its Honor Code on June 23, 2021.  Defendants also admit that Chegg made that the statements quoted in paragraph 236 in the Company's Honor Code.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in the first and second sentences of paragraph 236, including that Chegg "continued to minimize cheating" by updating its Honor Code.

237.    Defendants deny the allegations in paragraph 237.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

238.    Plaintiffs did not provide Defendants, or the Court, with any of the documentation of what the university personnel referenced in paragraph 238 stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations about those documents.  Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.  Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms.  Defendants also deny Plaintiffs' disparaging commentary and/or characterization in paragraph 238, including that "Honor Shield was not a legitimate effort by Chegg" to stop cheating on its platform and the insinuation that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.  Except as expressly admitted, Defendants deny the allegations in paragraph 238.

239.    Defendants admit that Chegg reported its Q2 2021 financial results in a press release titled, *Chegg Reports Second Quarter 2021 Financial Results and Raises Full Year Guidance*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on August 9 2021.  Defendants also admit that for Q2 2021, Chegg reported (i) total net revenues of $198.5 million, a 30% increase year-over-year; (ii) adjusted EBITDA of $84.4 million; and (iii) Chegg Services revenue of $173.5 million, a 38% increase year-over-year.  Defendants also admit that Chegg made the statements quoted in the second sentence of paragraph 239 on its August 9, 2021 earnings call.  As to the statements quoted in the third sentence of paragraph 239, Defendants admit that on Chegg's August 9, 2021 earnings call, Mr. Rosensweig shared his honestly held belief that, "[a]s our opportunities continue to expand, we have remained focused on our efforts to reduce account sharing as students have returned to campus, which allows us to reinvest in even more new content, the student experience and solving the big growing problem students are facing around the world."

240.    Defendants admit that on Chegg's August 9, 2021 earnings call, Mr. Rosensweig shared his honestly held belief that, "[w]e had strong growth the entire school year, particularly in this quarter, reaffirming that students value Chegg as core to their education journey. It is clear, wherever they are learning, whether online, on campus or in a hybrid model, the value of Chegg to students is unquestionable."  Defendants also admit that Chegg reported its Q2 2021 financial

results in a press release titled, *Chegg Reports Second Quarter 2021 Financial Results and Raises Full Year Guidance*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on August 9 2021.

241. Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 241 on Chegg's August 9, 2021 earnings call in response to a question asking, "I guess this is kind of the 2-parter. But I was hoping you could just talk about account sharing a little bit more, just, I guess, how far along do you feel like you are in terms of reducing account sharing? . . . And if we look at the 2Q subscribers on a sequential basis, it looks like the additions are kind of similar in 2Q to 2Q of '19, a little bit higher, but obviously, of course, off of a much bigger base, right, on a sequential basis. I guess, do you feel like the cadence is – now that you're kind of comping things, are you back into what could be a more seasonal type of cadence just given the school year and everything looking forward?"

242. Defendants admit that Mr. Brown made the statements quoted in the first sentence of paragraph 242 on Chegg's August 9, 2021 earnings call.  Defendants also admit that Chegg issued a press release titled, *Chegg Reports Second Quarter 2021 Financial Results and Raises Full Year Guidance*, which was filed with the SEC as an exhibit to Chegg's Form 8-K on August 9 2021.

243. Defendants deny the allegations in paragraph 243.

244. Defendants admit that Mr. Brown made the statements quoted in paragraph 244 at the 22nd Annual KeyBanc Virtual Technology Leadership Forum on August 11, 2021 while explaining his honestly held belief that Chegg Study was a disruptor in the education industry thanks to Chegg's high-quality, abundant content.

245. Defendants deny the allegations in paragraph 245.

246. Defendants admit that Mr. Brown made the statements quoted in paragraph 246 at the BMO Virtual Technology Summit on August 21, 2021 while explaining his honestly held belief that Chegg's Honor Shield was designed to help stop academic dishonesty and showed Chegg's commitment to academic integrity.

247. Defendants deny the allegations in paragraph 247.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

248.    Defendants deny the allegations in paragraph 248.

249.    Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 249 in an interview on the *Barron* "Streetwise" podcast on September 30, 2021.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 249, including that a purportedly concealed "truth" was "revealed" and that Chegg only "claimed" growth was highly dependent upon remote learning.

250.    Defendants deny the allegations in paragraph 250.

251.    Defendants admit that at the Jefferies Virtual Software Conference on September 14, 2021, Mr. Brown shared his honestly held belief that, "Well, yes, it seems that way, the vast majority are going back to campus. I think it's becoming clear that it's going to be more of a hybrid model from a learning standpoint. Even if you're back on campus, some of those classes may be remote. The thing that we saw in our business, and it really was driven by us, really 2 things. And the first one, we've talked about this many times, and that is the account sharing issue that we've had for many years. That is something that, to your point, if we haven't solved the technological problem there as far as creating it very hard to do account sharing, that may have been an issue going back into the fall. But one of the things we did about a year, I guess it was right about a year ago where we implemented technologies around device management and then MFA [multi-factor authentication] technologies . . . And the other thing that you're aware of, and we've been investing heavily in this and really leaning into it is on the international side of things."

252.    Defendants deny the allegations in paragraph 252.

253.    Defendants admit that Chegg's common stock was publicly traded on the NYSE during the proposed Class Period.  Except as expressly admitted, Defendants deny the allegations in paragraph 253.

254.    Defendants deny the allegations in paragraph 254.

255.    Defendants admit that Chegg's stock price closed at $113.51 on February 12, 2021. Except as expressly admitted, Defendants deny the allegations in paragraph 255.

256.    Defendants admit that on November 1, 2021, Chegg reported declines in subscriber growth and revenue growth compared to the previous quarter and lowered full-year 2021 revenue

guidance and postponed issuance of 2022 revenue guidance.  Defendants admit that the remainder of paragraph 256 contains purported quotations from analyst reports that may have been taken out of context and, as a result, Defendants refer Plaintiffs to the contents of those analyst reports. Defendants can't speak for what investors and/or analysts believed, so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations about those reports.  To the extent that the allegations in paragraph 256 differ in any way from the contents of the analyst reports, Defendants deny every such allegation.  Except as expressly admitted, Defendants deny the allegations in paragraph 256.

257.    Defendants deny the allegations in paragraph 257.

258.    Paragraph 258 and the accompanying footnote contain Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 258 and the accompanying footnote.

259.    Defendants deny the allegations in paragraph 259.

260.    Defendants admit that they assured investors that the user trends Chegg was observing were sustainable because Chegg closely tracked students' usage of each of the various services offered in Chegg Study Pack in detail, including the names, locations, and IP addresses of users; the date, time, nature, and subject matter of service accessed or viewed; the amount of content accessed or viewed; and the university, college, or school the user attended.  Defendants also admit that Chegg's monitoring of student usage included Chegg Study and its featured "Expert Q&A" tool.  Except as expressly admitted, Defendants deny the allegations in paragraph 260.

261.    Defendants do not know the source of the purported quotations in paragraph 261 because Plaintiffs did not identify their sources.  Defendants admit that Mr. Rosensweig publicly stated, in form or substance, that Chegg owns its subscribers' data and knows exactly what students use, that Chegg could watch everything its subscribers used, that over 2 million pieces of Chegg's content were viewed every day, and that Chegg does tracks subscriber data by the school and by the subject in the school.

COOLEY LLP
ATTORNEYS AT LAW

67

**ANSWER TO COMPLAINT**
**5:21-CV-09953-PCP**

262.     Defendants admit that Mr. Brown made the statements quoted in all but the last sentence of paragraph 262 at the Jefferies Virtual Consumer Conference on June 24, 2020. Defendants also admit that Mr. Brown made the statements quoted in the last sentence of paragraph 262 at the Raymond James Associates 42nd Annual Institutional Investors Conference on March 1, 2021.

263.     Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 263 at the Goldman Sachs Virtual Technology and Internet Conference on February 11, 2021.

264.     Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 264. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

265.     Defendants admit that Chegg users had to provide a full name to create a Chegg account.  Defendants also admit that, in 2022, the Federal Trade Commission ("FTC") filed a complaint against Chegg.  To the extent paragraph 265 purports to summarize or characterize the allegations in that action, Defendants refer Plaintiffs to the contents of the complaint filed.  To the extent that the allegations in the paragraph 265 differ in any way from the contents of that complaint, Defendants deny the allegations.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 265, including that Defendants had access to the actual names of its users and that an overwhelming number of students used Chegg to cheat.  Except as expressly admitted, Defendants deny the allegations in paragraph 265.

266.     Defendants deny the allegations in paragraph 266.

267.     Defendants admit that Expert Q&A was important to Chegg throughout the proposed Class Period.  Defendants do not know the source of the purported quotations in paragraph 267 because Plaintiffs did not identify their sources.  Defendants admit that Mr. Rosensweig publicly stated, in form or substance, that Expert Q&A was one of Chegg's core focuses and that Expert Q&A provided the Company a giant moat as a competitive advantage.  The remainder of paragraph 267 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in

the remainder of paragraph 267. Except as expressly admitted, Defendants deny the allegations in paragraph 267.

268. Defendants admit that Mr. Brown made the statements quoted in the first sentence of paragraph 268 at the BMO Virtual Technology Summit on August 27, 2020. Defendants also admit that Mr. Brown made the statements quoted in the second sentence of paragraph 268 at the BMO Virtual Technology Summit on August 24, 2021. Defendants also admit that Chegg and/or the Individual Defendants made the statements quoted in the third sentence of paragraph 268 during Chegg's Q4 2020 earnings call on February 8, 2021. Defendants also admit that Mr. Rosensweig made the statements quoted in the fourth sentence of paragraph 268 at the Morgan Stanley Technology, Media, and Telecom Conference on March 4, 2020. Defendants also admit that Mr. Brown made the statements quoted in the fifth sentence of paragraph 268 at the Raymond James Associates 42nd Annual Institutional Investors Conference on March 1, 2021.

269. The first sentence of paragraph 269 contains Plaintiff's own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the first sentence of paragraph 269. As to the second and third sentences of paragraph 269, Defendants admit that Expert Q&A accounted for over 80% of Chegg's total net revenues during the proposed Class Period and that Expert Q&A was a popular product. Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 269. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

270. Defendants admit that Expert Q&A was the primary service Chegg acquired customers through during the proposed Class Period. Defendants also admit that Mr. Brown made the statements quoted in the second and third sentences of paragraph 270 at the Jefferies Virtual Software Conference on September 14, 2021. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of paragraph 270, and on that basis, deny them.

271. Defendants deny the allegations in paragraph 271.

272. Defendants deny the allegations in paragraph 272.

273. Plaintiffs did not provide Defendants, or the Court, with any of the documents referenced in paragraph 273 or documentation of what the university personnel and/or purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 273. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants also deny that isolated accounts of purported cheating are representative of how Chegg's millions of subscribers used the Company's platforms. Defendants also deny any disparaging commentary and/or characterization insinuating that Chegg was a cheating platform as opposed to what Chegg was designed to be and intended to be used as: a learning tool.

274. Defendants admit that a *Forbes* article was circulated to certain Company employees in January or February 2021. The remainder of paragraph 274 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the remainder of paragraph 274. Except as expressly admitted, Defendants deny the allegations in paragraph 274 and the accompanying footnote.

275. Paragraph 275 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the second sentence of paragraph 275.

276. Defendants deny the allegations in paragraph 276.

277. Defendants admit that Mr. Boxser was quoted in a *Boston Globe* article published on April 29, 2020 explaining his honestly held belief that the Company strongly supported academic integrity and had not seen any relative increase in honor code issues since the COVID-19 crisis began. The remainder of paragraph 277 contains Plaintiffs' own arguments, characterizations, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the remainder of paragraph 277.

278. Defendants admit that Mr. Rosensweig was quoted in a *New York Times* article published on June 12, 2020 explaining that "[cheating has] always been a problem for colleges.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

Let's face it: Students have always found a way, whether it's in fraternities, or whether they go to Google. But Chegg is not built for that. We have built technology that removes copyrighted material before it even gets posted. If we're notified by a professor or a school that there's copyrighted material, it immediately gets flagged and then removed."

279.    Defendants admit that a Chegg spokesperson was quoted in a *Washington Post* article on August 7, 2020 explaining that "[Chegg has not seen] any relative increase in honor code issues since the covid-19 crisis began" and that "[s]tudents have always found away, whether it's in fraternities, or whether they go to Google. But Chegg is not built for that."  Defendants also admit that Chegg made the statements quoted in the third sentence of paragraph 279 in the Company's Honor Code.    Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 279, including Plaintiffs' implying that Chegg updated its Honor Code in response to news articles.

280.    Defendants do not know the source of the purported quotations in paragraph 280 because Plaintiffs did not identify their sources.  Defendants admit that Messrs. Brown and/or Rosensweig expressed their belief, in form or substance, that a very small group of users wanted to cheat on Chegg, that the Company only experienced some issues regarding cheating during the proposed Class Period, that the overwhelming majority of users did not cheat on Chegg, and that while Chegg was aware of other websites that facilitate cheating, Chegg was not built for cheating. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 280, including Plaintiffs' implying that Chegg updated its Honor Code in response to "a spate of cheating scandals."

281.    Defendants admit that Ms. Sue was quoted by Inside Higher Ed in an article published on February 5, 2021 explaining that, "mistakenly imply -- without any evidence -- that increased usage of Chegg has [sic] correlates to an increase in cheating. With millions of students going online in a matter of months, students have lost valuable on-campus and faculty support services, and stress and anxiety is high. Chegg provides much needed learning support to these students, especially during the pandemic."

282.    Defendants deny the allegations in paragraph 282.

283.    Defendants admit that Chegg subscribers could submit questions in the form of pictures or plain text.  The remainder of paragraph 283 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the remainder of paragraph 283.  Except as expressly admitted, Defendants deny the allegations in paragraph 283.

284.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employee stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 284. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations.

285.    Defendants admit that Chegg made the statements quoted in paragraph 285 and the accompanying footnote on the Company's website.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 285.

286.    Defendants deny the allegations in paragraph 286.

287.    Defendants deny the allegations in paragraph 287.

288.    Defendants admit that Mr. Rosensweig made the statements quoted in paragraph 198 in an interview on CNBC's "Closing Bell" television program on October 27, 2020. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 198, including that Chegg "created the false narrative that COVID-19 [] made it harder for students to share their accounts."

289.    Plaintiffs did not provide Defendants, or the Court, with any documentation of what the purported former Chegg employees stated, and so Defendants do not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 289. Accordingly, under Federal Rule of Civil Procedure 8(b)(5), Defendants deny the allegations. Defendants do not know the source of the purported quotations attributed to Chegg in paragraph 289 because Plaintiffs did not identify their sources.  Defendants admit that Chegg expressed its belief, in form or substance, that Chegg's rapid growth during the proposed Class Period was due in part to the Company's efforts to limit account sharing.  Defendants also admit that Chegg took initial steps to eliminate certain aspects of account sharing in 2019 but took additional steps during

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

the proposed Class Period. As to the footnote accompanying paragraph 289, Defendants admit that at the Goldman Sachs Virtual Technology and Internet Conference on February 11, 2021, Mr. Rosensweig shared his honestly held belief that, "We look at 3 large categories of what we were trying to solve for. The first ones were the most egregious ones, which were people that were stealing and reselling [accounts]. And we started working on that over 1.5 years ago and made some really great progress. And you saw in Q1, even before COVID started, that our growth rate had accelerated 3 points just by eliminating that." Except as expressly admitted, Defendants deny the allegations in paragraph 289 and the accompanying footnote.

290. Defendants do not know the source of the purported quotations attributed to Chegg in paragraph 290 because Plaintiffs did not identify their sources. Defendants admit that Chegg and/or Rosensweig expressed their belief, in form or substance, that Chegg's subscriber growth was due to students' demand for legitimate online teaching aids to help the master their subject as they switched to online learning, a switch that was ultimately inevitable. Defendants also admit that the Individual Defendants stated that it was inevitable that learning was going online and that the pandemic merely accelerated the adoption of Chegg's legitimate online direct-to-student learning platform. Defendants also admit that Mr. Rosensweig stated that Chegg's record subscriber numbers reflected students having an even greater need for high-quality, low-cost, personalized, and adaptive online education to help them learn and master their curriculum. Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 290, including that "Defendants [] falsely attributed Chegg's" subscriber growth to student demand for legitimate online teaching aids and that Mr. Rosensweig "boasted" about Chegg's subscriber numbers.

291. Defendants deny the allegations in paragraph 291.

292. Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 292. Defendants deny that Plaintiffs' so-called "empirical analysis" proves

anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

293.    Plaintiffs did not provide Defendants, or the Court, with any of documents or information showing what Plaintiffs did as part of their so-called "empirical analysis," so Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 293. Defendants deny that Plaintiffs' so-called "empirical analysis" proves anything about the prevalence of cheating among Chegg's customers or the impact of any such cheating on Chegg's business during the proposed Class Period.

294.    Defendants admit that, during the proposed Class Period, Mr. Rosensweig sold 552,000 shares of Chegg common stock, excluding dispositions for tax withholding and gifts. The footnote accompanying paragraph 294 does not contain factual allegations and therefore no response is required.  Except as expressly admitted, Defendants deny the allegations in paragraph 294 and the accompanying footnote, including that "Defendants were motivated to engage" in fraudulent conduct.

295.    Defendants admit that during the proposed Class Period, Mr. Rosensweig sold 552,000 shares of Chegg common stock, excluding dispositions for tax withholding and gifts. Defendants also admit that during the Class Period, Mr. Schultz sold 307,376 shares of Chegg common stock, excluding dispositions for tax withholding and gifts.  Defendants deny Plaintiffs' disparaging commentary and/or characterizations in paragraph 295 and the accompanying footnote, including that Chegg's stock price was "inflated" because of Defendants' alleged fraud.

296.    Defendants admit the during the Class Period, Mr. Rosensweig sold 552,000 shares of Chegg common stock for total proceeds of $49,519,686; Mr. Schultz sold 307,376 shares of Chegg common stock for total proceeds of $24,995,874; Mr. Fillmore sold 124,624 shares of Chegg common stock for total proceeds of $9,923,962; Mr. Sarnoff sold 66,666 shares of Chegg common stock for total proceeds of $4,339,290; Ms. Lem sold 41,238 shares of Chegg common stock for $3,557,179; Mr. Tomasello sold 32,016 shares of Chegg common stock for total proceeds of $2,287,543; and Mr. York sold 20,000 shares of Chegg common stock for $1,414,023. Defendants also admit that, on April 17, 2020, Chegg filed with the SEC a Schedule 14A Definitive Proxy

Statement. To the extent that paragraph 296 purports to quote, summarize, or characterize Chegg's April 17, 2020 Definitive Proxy Statement, Defendants refer Plaintiffs to the Definitive Proxy Statement, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 296 differ in any way from the contents of Definitive Proxy Statement, Defendants deny every such allegation.

297. Defendants admit that on February 22, 2021, Mr. Rosensweig sold 300,000 shares of Chegg common stock at the public offering price of $102 per share. Defendants also admit that during the period December 1, 2020 through April 30, 2021, Mr. Schultz sold 152,458 shares of Chegg common stock, excluding dispositions for tax withholding and gifts. Defendants also admit that Chegg's stock price closed at $113.51 on February 12, 2021, and at $32.12 on November 2, 2021. Except as expressly admitted, Defendants deny the allegations in paragraph 297.

298. Defendants admit that Chegg announced a $500 million securities repurchase program on June 16, 2020, which was completed on December 31, 2021. The remainder of paragraph 298 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the remainder of paragraph 298. Except as expressly admitted, Defendants deny the allegations in paragraph 298, including that anyone at Chegg was "dumping their stock."

299. Defendants deny the allegations in paragraph 299.

300. Paragraph 300 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 300.

301. Defendants admit the allegations in paragraph 301.

302. Defendants admit the allegations in the first sentence of paragraph 302. Defendants deny the allegations in the second sentence of paragraph 302.

303. Paragraph 303 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 303.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

304.    Paragraph 304 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 304.

305.    Paragraph 305 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 305.

306.    Defendants deny that this action can be maintained as a class action under Federal Rules of Civil Procedure 23.  The remainder of paragraph 306 sets forth Plaintiffs' proposed class definition and does not require a response; to the extent that a response is required, Defendants deny the allegations.  Except as expressly admitted, Defendants deny the allegations in paragraph 306.

307.    Paragraph 307 sets forth Plaintiffs' proposed class definition and does not require a response.  To the extent that a response is required, Defendants deny the allegations in paragraph 307.

308.    Paragraph 308 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 308.

309.    Paragraph 309 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 309.

310.    Paragraph 310 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 310.

311.    Paragraph 311 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 311.

312.    Paragraph 312 does not contain factual allegations and therefore requires no response.

313.    Defendants admit that Plaintiffs assert claims against Defendants under Sections 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.  Except as expressly admitted, Defendants deny the allegations in paragraph 313.

314.    Defendants deny the allegations in paragraph 314.

315.    Defendants deny the allegations in paragraph 315.

316.    Defendants deny the allegations in paragraph 316.

317.    Defendants deny the allegations in paragraph 317.

318.    Defendants deny the allegations in paragraph 318.

319.    Defendants deny the allegations in paragraph 319.

320.    Defendants deny the allegations in paragraph 320.

321.    Paragraph 321 does not contain factual allegations and therefore requires no response.

322.    Defendants admit that Plaintiffs assert claims against the Individual Defendants under Section 20(a) of the Exchange Act.  Except as expressly admitted, Defendants deny the allegations in paragraph 322.

323.    Paragraph 323 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 323.

324.    Paragraph 324 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 324.

325.    Defendants deny the allegations in paragraph 325.

326.    Defendants admit that the Individual Defendants served as officers and/or directors of Chegg.  Except as expressly admitted, Defendants deny the allegations in paragraph 326.

327.    Defendants deny the allegations in paragraph 327.

328.    Paragraph 328 does not contain factual allegations and therefore requires no response.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

329.    Defendants admit that Plaintiffs assert claims against Messrs. Rosensweig and Schultz under Section 20A of the Exchange Act.  Except as expressly admitted, Defendants deny the allegations in paragraph 329.

330.    Defendants deny the allegations in the first two sentences of paragraph 330. Defendants admit to the information contained in the charts identifying sale date, shares sold, and sale price.  Except as expressly admitted, Defendants deny the allegations in paragraph 330.

331.    Defendants admit that Mr. Rosensweig sold 28,000 shares of Chegg common stock on August 5, 2020 and sold 300,000 shares of Chegg common stock on February 18, 2021 as part of Chegg's February 18, 2021 public offering.  Defendants also admit that Mr. Schultz sold 82,459 shares of Chegg common stock on July 31, 2020.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 331, and on that basis, deny them.

332.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 332, and on that basis, deny them.

333.    Defendants deny the allegations in paragraph 333.

334.    Defendants deny the allegations in paragraph 334.

335.    Paragraph 335 does not contain factual allegations and therefore requires no response.

336.    Paragraph 336 does not contain factual allegations and therefore requires no response.

## AFFIRMATIVE DEFENSES

As separate affirmative defenses to the causes of action in the Complaint, and without assuming any burden of proof that would otherwise rest on Plaintiffs, Defendants allege as follows:

### FIRST AFFIRMATIVE DEFENSE

### (Forward Looking Statements)

1.    The Complaint, and each and every cause of action alleged, is barred to the extent Plaintiffs' allegations are based on alleged projections, forecasts, or predictions of future events or results, because such projections, forecasts, or predictions were identified as forward-looking

statements and accompanied by meaningful cautionary language, including in Defendants' public filings with the SEC and as referenced or incorporated during investor conference calls, that identified factors that could cause actual results to differ materially from those in the forward-looking statements; were immaterial; or were not made with actual knowledge that the statements were false or misleading when made. All such statements fall within the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995, as codified at 15 U.S.C. § 77z-2(c).

## SECOND AFFIRMATIVE DEFENSE

### (Available Information)

2.    The Complaint, and each and every cause of action alleged, is barred because the facts alleged to have been misrepresented or omitted (including, but not limited to, information regarding Chegg Study, Expert Q&A, Honor Shield, Chegg's commitment to academic integrity, and the actions Chegg took to stop the limited instances of cheating perpetuated on Chegg's platform) were rebutted by contrary information (including both public and non-public information) that were known to, received by, or otherwise publicly available to Plaintiffs, members of the putative class, and the securities markets generally.

## THIRD AFFIRMATIVE DEFENSE

### (Class Action)

3.    The Complaint, and each and every cause of action alleged, is barred because this action is not maintainable as a class action pursuant to Federal Rule of Civil Procedure 23.

## FOURTH AFFIRMATIVE DEFENSE

### (10b5-1 Plans)

4.    The Complaint, and each and every cause of action alleged, is barred because stock sales by the Individual Defendants identified in the Complaint are not evidence of scienter. Trades were made to pay taxes on Restricted Stock Units as they vested or were made pursuant to Rule 10b5-1 plans, and neither the terms of those plans nor the circumstances in which the Individual Defendants entered into such plans were intended or designed to take advantage of any alleged fraud.

COOLEY LLP
ATTORNEYS AT LAW

ANSWER TO COMPLAINT
5:21-CV-09953-PCP

### FIFTH AFFIRMATIVE DEFENSE

### (Good Faith)

5.    The Complaint, and each and every cause of action alleged, is barred because Defendants acted in good faith, with genuine belief, and without knowledge that any alleged misstatement or omission was materially false or misleading.

### SIXTH AFFIRMATIVE DEFENSE

### (Truth)

6.    The Complaint, and each and every cause of action alleged, is barred by the truth of Defendants' assertions.

### SEVENTH AFFIRMATIVE DEFENSE

### (15 U.S.C. § 78u-(e))

7.    If it should be determined that Plaintiffs have been damaged, then the damages that Plaintiffs seek are limited by the Private Securities Litigation Performed Act of 1995, 15 U.S.C. § 78u-4(e).

### RESERVATION OF RIGHTS

Defendants expressly reserve the right to amend or supplement their Answer, defenses, and all other pleadings, as permitted by law.  Defendants further reserve the right to assert any and all additional defenses under any applicable law, in the event that discovery indicates such defenses would be appropriate, and to assert any cross-claims, counterclaims, and/or third party claims.

### PRAYER FOR RELIEF

Defendants pray that this Court enter judgment as follows:

1.    That Plaintiffs take nothing by the Complaint;

2.    For costs, attorneys' fees and expert witness fees;

3.    For judgment in favor of Defendants; and

4.    For such other and further relief as this Court deems just and proper.

### JURY DEMAND

Defendants demand a trial by jury.

Dated: April 24, 2024                          COOLEY LLP


                                               By: */s/ Patrick E. Gibbs*
                                                   Patrick E. Gibbs (183174)

                                               *Attorneys for Defendants Chegg, Inc., Daniel*
                                               *L. Rosensweig, Andrew J. Brown, and Nathan*
                                               *Schultz*

COOLEY LLP
ATTORNEYS AT LAW

81