**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Dr., Suite #180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice)*
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice)*
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000

*Counsel for Lead Plaintiffs and Lead Counsel for the Class*

*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,

Defendants.

Case No.: 5:21-cv-09953-PCP

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO SEEK RECONSIDERATION OF MOTION TO DISMISS ORDER, OR IN THE ALTERNATIVE, TO CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL**

Date: June 6, 2024
Time: 10:00 a.m.
Dept: Courtroom 8
Judge: Hon. P. Casey Pitts

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL STANDARDS .......... 3

A. Motions for Reconsideration .......... 3

B. Motions for Certification for Interlocutory Appeal .......... 5

III. ARGUMENT .......... 5

A. The Court Should Deny Defendants' Motion .......... 5

1. Defendants' lack of diligence requires denial of the Motion. .......... 5

2. The Court considered and applied the proper standard for falsity. .......... 7

3. The Court considered and applied the proper standard for scienter. .......... 10

4. The Court applied the proper standard in its loss causation analysis. .......... 14

B. The Court Should Deny Defendants' Certification Request .......... 18

1. The Order does not involve a controlling question of law. .......... 18

2. There is no difference of opinion to address. .......... 19

3. An immediate appeal will not materially advance the ultimate termination of the litigation. .......... 22

4. The seven-week delay weighs against granting certification. .......... 23

C. Defendants Should Be Sanctioned .......... 24

IV. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**CASES**

*Abadilla v. Precigen, Inc.*, 2022 WL 1750033 (N.D. Cal. May 31, 2022) .......... 14

*Alston v. City of Sacramento*, 2024 WL 1674417 (E.D. Cal. Apr. 18, 2024) .......... 4

*Altschuler v. Chubb National Insurance Co.*, 2024 WL 1406297 (D. Ariz. Apr. 2, 2024) .......... 4

*Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) .......... 6, 12, 13

*Azar v. Yelp, Inc.*, 2019 WL 285196 (N.D. Cal. Jan. 22, 2019) .......... 16

*Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008) .......... 7, 14, 19

*Beyond Blond Productions, LLC v. Heldman*, 2021 WL 4860377 (C.D. Cal. Apr. 28, 2021) .......... 22

*Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244 (D. Nev. 2019) .......... 11, 16

*City of Birmingham Relief & Retirement System v. Acadia Pharmaceuticals, Inc.*, 2023 WL 1769810 (S.D. Cal. Feb. 2, 2023) .......... 12

*Costa v. Postmates Inc.*, 2020 WL 13526733 (N.D. Cal. June 26, 2020) .......... 4

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) .......... 13, 14, 15, 19

*Durkee v. Ford Motor Co.*, 2015 WL 1156765 (N.D. Cal. Mar. 13, 2015) .......... 4

*Environmental Protection Information Center v. Pacific Lumber Co.*, 2004 WL 838160 (N.D. Cal. Apr. 19, 2004) .......... 21

*Espy v. J2 Global, Inc.*, 99 F.4th 527 (9th Cir. 2024) .......... 6, 12

*Felipe v. Playstudios Inc.*, 2024 WL 1380802 (D. Nev. Mar. 31, 2024) .......... 14

*Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364 (D. Nev. Mar. 1, 2023) .......... 16

*Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282 (S.D.N.Y. 2018) .......... 9

*Garcia v. City of Napa*, 2014 WL 342085 (N.D. Cal. Jan. 28, 2014) .......... 4, 8

*Glazer Capital Manaement, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747 (9th Cir. 2023) .......... 2, 3, 9

*Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198 (9th Cir. 2020) .......... 14

*Hamano v. Activision Blizzard, Inc.*, 2019 WL 7882076 (C.D. Cal. Oct. 17, 2019) .......... 4

*Hayes v. Woodford*, 301 F.3d 1054 (9th Cir. 2002) .......... 4

*In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......... 4, 6

*In re Apple Inc. Securities Litigation*, 2022 WL 4588603 (N.D. Cal. Sept. 29, 2022) .......... 21

*In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781 (9th Cir. 2020) .......... *passim*

*In re Cement Antitrust Litigation*, 673 F.2d 1020 (9th Cir. 1982) .......... 17

*In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005) .......... 16

*In re Electronic Data Systems Corp. Securities & "ERISA" Litigation*, 298 F. Supp. 2d 544 (E.D. Tex. 2004) .......... 16

*In re Facebook, Inc. Securities Litigation*, 87 F.4th 934 (9th Cir. 2023) .......... 14

*In re Faro Technologies Securities Litigation*, 534 F. Supp. 2d 1248 (M.D. Fla. 2007) .......... 9

*In re Finjan Holdings, Inc.*, 58 F.4th 1048 (9th Cir. 2023) .......... 9

*In re Flowers Foods, Inc. Securities Litigation*, 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) .......... 16

*In re Genius Brands International, Inc. Securities Litigation*, 97 F.4th 1171 (9th Cir. 2024) .......... 16

*In re Google Referrer Header Privacy Litigation*, 2020 WL 5545155 (N.D. Cal. Sept. 16, 2020) .......... 21

*In re Honest Co. Securities Litigation*, 2022 WL 18584804 (C.D. Cal. Aug. 25, 2022) .......... 7, 12

*In re Immune Response Securities Litigation*, 375 F. Supp. 2d 983 (S.D. Cal. 2005) .......... 8

*In re Intuitive Surgical Securities Litigation*, 2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) .......... 9

*In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) .......... 16

*In re Ocera Therapeutics, Inc. Securities Litigation*, 806 F. App'x 603 (9th Cir. 2020) .......... 20

*In re Plantronics, Inc. Securities Litigation*, 2022 WL 17974627 (N.D. Cal. Nov. 7, 2022) .......... 10

*In re Qualcomm Inc. Securities Litigation*, 2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) .......... 11

*In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999) .......... 8

*In re Twitter*, *Inc. Securities Litigation*, 2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) .......... 8

*In re Urban Outfitters, Inc. Securities Litigation*, 103 F. Supp. 3d 635 (E.D. Pa. 2015) .......... 17

*In re VeriFone Holdings, Inc. Securities Litigation*, 704 F.3d 694 (9th Cir. 2012) .......... 11

*In re WageWorks, Inc., Securities Litigation*, 2020 WL 2896547 (N.D. Cal. June 1, 2020) .......... 14

*In re Washington Mutual, Inc. Securities., Derivative & ERISA Litigation*, 694 F. Supp. 2d 1192 (W.D. Wash. 2009) .......... 9

*In re Wet Seal, Inc. Securities Litigation*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007) .......... 20, 21

*Ji v. Naver Corp.*, 2024 WL 251402 (N.D. Cal. Jan. 23, 2024) .......... 17

*Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) .......... 3

*Largan Precision Co. v. Genius Electronic Optical Co.*, 2015 WL 2063988 (N.D. Cal. May 4, 2015) .......... 5

*Lloyd v. CVB Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016) .......... 15, 18

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 21

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024) .......... 6

*Maynard v. United Services Automobile Ass'n Federal Savings Bank*, 2022 WL 4126272 (N.D. Cal. Sept. 9, 2022) .......... 4

*Miller v. Thane International, Inc.*, 615 F.3d 1095 (9th Cir. 2010) .......... 18

*Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018) .......... 14, 16, 20

*Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041 (9th Cir. 2003)....................3

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004)....................3

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598 (9th Cir. 2014)....................19

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)....................4

*Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc.*, 564 F. Supp. 3d 1272 (N.D. Ga. 2021)....................16

*Rabin v. PricewaterhouseCoopers LLP*, 2017 WL 11662124 (N.D. Cal. Apr. 17, 2017)....................18

*Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014)....................11

*Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957 (7th Cir. 2000)....................22

*Robb v. Fitbit Inc.*, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017)....................9

*Rodriguez v. Mondelez Global LLC*, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024)....................9

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2024 WL 1898512 (S.D.N.Y. May 1, 2024)....................11

*Sanchez v. Decision Diagnostics Corp.*, 2022 WL 18142518 (C.D. Cal. Dec. 5, 2022)....................16

*Securities & Exchange Commission v. Burns*, 816 F.2d 471 (9th Cir. 1987)....................10

*Securities & Exchange Commission v. Platforms Wireless International Corp.*, 617 F.3d 1072 (9th Cir. 2010)....................8

*Semeneck v. Ahlin*, 2010 WL 2510996 (E.D. Cal. June 17, 2010)....................5

*Senne v. Kansas City Royals Baseball Corp.*, 2016 WL 1623913 (N.D. Cal. Apr. 25, 2016)....................6

*Spears v. Washington Mutual Bank FA*, 2010 WL 54755 (N.D. Cal. Jan. 8, 2010)....................22

*Steering Committee v. United States*, 6 F.3d 572 (9th Cir. 1993)....................18

*Stromberg v. Ocwen Loan Servicing, LLC*, 2017 WL 3727233 (N.D. Cal. Aug. 30, 2017)....................3, 4

*Symantec Corp. v. Zscaler, Inc.*, 2018 WL 3537201 (N.D. Cal. July 23, 2018)....................4

*T & E Inv. Grp. LLC v. Faulkner*,
2014 WL 11512366 (N.D. Tex. May 19, 2014) .......... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 10, 11

*TSC Industries, Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .......... 18

*Two Jinn's Opp'n to Mot. to Certify Interloc. Appeal & Stay, Medina v. Two Jinn, Inc.*,
No. 3:22-cv-02540-TLT, ECF 121 (N.D. Cal. Sept. 12, 2023) .......... 23

*United States v. Wen-Bing Soong*,
2014 WL 988632 (N.D. Cal. Mar. 10, 2014) .......... 5, 18

*Westley v. Oclaro, Inc.*,
897 F. Supp. 2d 902 (N.D. Cal. 2012) .......... 4

*Williams v. Lujan*,
2018 WL 3861655 (N.D. Cal. Aug. 14, 2018) .......... 4, 17

*York v. Bank of America*,
2016 WL 7033956 (N.D. Cal. Dec. 2, 2016) .......... 5

**STATUTES**

28 U.S.C. § 1292(b) .......... 5, 18, 22, 23

**RULES**

Civ. L.R. 7-9(b)(2) .......... 12

Civ. L.R. 7-9(b)(3) .......... 3, 5

Civ. L.R. 7-9(c) .......... 2, 23

Lead Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' Motion for Leave to Seek Reconsideration of Motion to Dismiss Order, or in the Alternative, to Certify the Order for Interlocutory Appeal ("Motion") (ECF No. 155).[1]

## I. INTRODUCTION

This is a motion born of sour grapes, by Defendants desperate to delay answering for their misconduct. And, it is straight out of the defense bar playbook in securities litigation: move to reconsider a motion to dismiss order in an attempt to delay the litigation and defer discovery even longer. The Court should not be fooled as to what is really going on. The timing of the Motion is no coincidence, either, following hot on the heels of Defendants' admission to manifest and widespread spoliation of evidence (which will be subject to a separate sanctions motion).

Turning to the substance of the Motion, Defendants seek extraordinary relief in asserting that this Court should entirely reconsider its well-reasoned Order or grant an interlocutory appeal, but they do not come to close to meeting their heavy burden. Defendants contend that the Court "manifest[ly] fail[ed] . . . to consider . . . dispositive legal arguments," but their own motion demonstrates that the Court thoroughly considered Defendants' "dispositive" legal arguments and soundly rejected them. Similarly, Defendants utterly fail to demonstrate the Court erred ***at all*** in concluding that Plaintiffs have adequately pled their case. Defendants do not suggest the Complaint fails to apprise them of the detailed specifics of the particular misconduct constituting the fraud, such as that Plaintiffs have not specified each statement alleged to have been misleading and the reason or reasons why that statement is misleading. *See* Mot. 16 ("[T]he Complaint is 128-pages, 336 paragraphs, and contains voluminous alleged sources, quotes, and characterizations."). Indeed, Defendants' own authorities eviscerate their argument that Plaintiffs have not adequately met the applicable pleading requirements. *See id.* at 6 (citing *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (holding the PSRLA and Rule 9(b) require at the pleading

---

[1] References to "Mot. _" are to the pages of the Motion. References to "Kaplan Decl." are to the accompanying Declaration of David R. Kaplan. References to "¶ _" are to the paragraphs of the Consolidated Class Action Complaint ("Complaint") (ECF No. 115). References to "Order _" are to the pages of the Order Denying Defendants' Motion to Dismiss (ECF No. 150).

stage that a plaintiff only plead particularized facts meeting the "*reasonable inference* standard of plausibility set out in *Twombly* and *Iqbal*")). Rather, Defendants quibble with the (appropriate) inferences drawn by the Court, and effectively demand (again) that Plaintiffs must essentially prove their entire case from the start. Accordingly, much of the substance of Defendants' Motion amounts to mere repetition of their motion to dismiss (in violation of Civ. L.R. 7-9(c)), with a few new case citations in an attempt to justify Defendants' seven-week delay in filing. But, those citations ***are of no consequence*** because Defendants' Motion does not argue that there has been an intervening change in the law.[2]

This Court has already rejected Defendants' arguments in its Order, which cites extensively to the Complaint in finding each element of Plaintiffs' claims was pled with a level of particularity that satisfies all applicable pleading requirements. Indeed, the Court's well-reasoned Order followed a careful review of 65 pages of briefing on the motion to dismiss, consideration of 33 exhibits proffered by Defendants, and a 70-minute oral argument (including review of Defendants' PowerPoint demonstrative) during which the Court questioned both sides extensively. To tell the Court now that it "manifestly failed to consider material facts and dispositive law," Mot. 2, is not only wrong, it is an affront to judicial and party economy.

No doubt recognizing that their reconsideration request is meritless, procedurally improper, and an obvious delay tactic, as an alternative, Defendants request certification of an interlocutory appeal regarding "two controlling questions of law" related to loss causation. Again, however, Defendants fail to establish ***any*** of the required elements. Defendants acknowledge that interlocutory appeal is only appropriate where "the circuits are in dispute on the question and the court of appeals for the circuit has not spoken on the point," Mot. 18, but omit that the Ninth Circuit has emphatically spoken on these issues. Indeed, the Ninth Circuit recently reiterated that a "***basic***

---

[2] Civil Local Rule 7-9(c) provides that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered. Any party who violates this restriction ***shall*** be subject to appropriate sanctions." *Id.* (emphasis added.) To the extent the Court determines that Defendants have repeated any oral or written arguments, this mandatory language requires Defendants be sanctioned.

***ground rule[]*** for pleading loss causation is that "a corrective disclosure need not consist of an admission of fraud by the defendant," but "can instead come from any source," including "***analysts***" and "***investigative reporters***." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) (emphasis added). That is precisely what the Complaint alleges here. Hence, the loss causation issue is not a close call, and certainly not an issue appropriate for interlocutory review. In reality, Defendants simply want to "transform the PSLRA's formidable pleading requirement into an impossible one." *Glazer*, 63 F.4th at 769. This they cannot do. "The PSLRA was designed to eliminate frivolous or sham actions, but not actions of substance." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1235 (9th Cir. 2004). The Motion is meritless, should be denied, and Defendants should be sanctioned accordingly.

## II. LEGAL STANDARDS

### A. Motions for Reconsideration

Civil Local Rule 7-9(b) governs the form and content of a motion for reconsideration. It provides, in relevant part, that: "The moving party must specifically show reasonable diligence in bringing the motion and . . . [a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3).[3]

"Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). However, a "motion for reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Stromberg v. Ocwen Loan Servicing, LLC*, 2017 WL 3727233, at *1 (N.D. Cal. Aug. 30, 2017) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Accordingly, "motions for reconsideration are ***disfavored***," *Garcia v. City of Napa*, 2014 WL 342085, at *1 (N.D. Cal. Jan. 28, 2014) (emphasis added), and subject to "***rigorous standards***," *Symantec Corp. v. Zscaler, Inc.*,

[3] While Civil Local Rule 7-9(b) also permits reconsideration based on newly discovered evidence or an intervening change in the controlling law, Defendants do not (and cannot) assert such grounds here.

2018 WL 3537201, at *2 n.1 (N.D. Cal. July 23, 2018) (emphasis added). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . ***strike us as wrong with the force of a five-week-old, unrefrigerated dead fish***." *Prete v. Bradbury*, 438 F.3d 949, 968 n.23 (9th Cir. 2006) (alteration in original) (emphasis added) (quoting *Hayes v. Woodford*, 301 F.3d 1054, 1067 n.8 (9th Cir. 2002)). In essence, "[t]o succeed, a party must set forth facts or law of a ***strongly convincing nature*** to induce the court to reverse its prior decision." *Alston v. City of Sacramento*, 2024 WL 1674417, at *1 (E.D. Cal. Apr. 18, 2024) (emphasis added). Against this background, "***[c]ases rarely arise which meet the standard for review on reconsideration***." *Altschuler v. Chubb Nat'l Ins. Co.*, 2024 WL 1406297, at *2 (D. Ariz. Apr. 2, 2024) (emphasis added).

"[M]ere disagreement with a court's order does not provide a basis for reconsideration." *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 4126272, at *4 (N.D. Cal. Sept. 9, 2022) (quoting *Durkee v. Ford Motor Co.*, 2015 WL 1156765, at *2 (N.D. Cal. Mar. 13, 2015)). And, "[r]econsideration is not appropriate when a movant relies on arguments previously raised; that is, a motion for reconsideration is not a vehicle permitting the unsuccessful party to reiterate arguments previously presented." *Williams v. Lujan*, 2018 WL 3861655, at *2 (N.D. Cal. Aug. 14, 2018). A motion for reconsideration, therefore, may not "repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." *Stromberg*, 2017 WL 3727233, at *2. Finally, "***[e]ven if*** the court grants a party leave to file a motion for reconsideration, these motions 'are ***disfavored and rarely granted***.'" *Costa v. Postmates Inc.*, 2020 WL 13526733, at *2 (N.D. Cal. June 26, 2020) (emphasis added).[4]

---

[4] Defendants cite only three cases in which a court has granted reconsideration for clear error, but all involve extraordinary circumstances that are not present here. In *Hamano v. Activision Blizzard, Inc.*, the court granted reconsideration of a minute entry that summarily denied defendants' motion to dismiss without any reasoned decision or consideration of defendants' arguments. No. 2:19-cv-03788, ECF 84 (C.D. Cal. Sept. 11, 2019). In *Westley v. Oclaro, Inc.*, the court, granting reconsideration for *plaintiffs* based on a "material" factual error, noted it had "erred in failing to adequately credit Plaintiffs' [scienter] allegations." 897 F. Supp. 2d 902, 935 & n.2 (N.D. Cal.

### B. Motions for Certification for Interlocutory Appeal

The standards governing certification for interlocutory appeal are also extremely demanding, and interlocutory appeal is exceptionally unusual. Specifically, certification of a non-final order for interlocutory appeal is only appropriate if all of the following criteria are satisfied: (i) an "order involves a controlling question of law"; (ii) "there is substantial ground for difference of opinion"; ***and*** (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Where a party simply asserts that there has been a misapplication of law to the facts, § 1292(b) does not provide for relief." *United States v. Wen-Bing Soong*, 2014 WL 988632, at *1 (N.D. Cal. Mar. 10, 2014). It is exceptionally unusual for a district court to grant a request to certify any order under this rule. *See Semeneck v. Ahlin*, 2010 WL 2510996, at *2 (E.D. Cal. June 17, 2010) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, ***hen's-teeth rare***.") (emphasis added).

## III. ARGUMENT

### A. The Court Should Deny Defendants' Motion

#### 1. Defendants' lack of diligence requires denial of the Motion.

Defendants acknowledge that when moving for reconsideration based on a court's purported manifest failure to consider dispositive legal arguments, as Defendants do here, a party must show "***reasonable*** diligence in bringing the motion." Mot. 5 (citing Civ. L.R. 7-9(b)(3)) (emphasis added). Here, Defendants clearly fail to meet even this threshold requirement, having filed their Motion no less than ***seven weeks*** after the Court's ruling on the motion to dismiss. This alone is grounds to deny the Motion. *See, e.g.*, *Largan Precision Co. v. Genius Elec. Optical Co.*, 2015 WL 2063988, at *2 (N.D. Cal. May 4, 2015) (finding "waiting more than four weeks to file a motion for reconsideration" after learning of grounds did not constitute "reasonable diligence in bringing

---

2012). In *In re Apple Inc. Device Performance Litigation*, the court granted reconsideration based on a manifest failure to consider the entirety of a warranty agreement. 386 F. Supp. 3d 1155, 1167 (N.D. Cal. 2019).

the motion"); *York v. Bank of Am.*, 2016 WL 7033956, at *1 (N.D. Cal. Dec. 2, 2016) (finding motion to be a "stale filing" after a "lengthy delay" since it was filed 35 days after order issued).[5]

No doubt anticipating this justified criticism, Defendants attempt to blur the grounds for their Motion by referencing three recent cases. However, these cases are irrelevant because Defendants do not seek reconsideration based on any purported intervening change in controlling law. *See* Mot. 1 (arguing for reconsideration based on "manifest failure to consider legal arguments"). Specifically, the Supreme Court's April 12, 2024 ruling in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), concerns whether securities fraud actions may be premised on violations of Item 303 of Regulation S-K—an issue that is not, and never has been, relevant to the claims in this case. Similarly, the Ninth Circuit's decisions in *Espy v. J2 Global, Inc.*, 99 F.4th 527 (9th Cir. 2024), and *Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503 (N.D. Cal. Apr. 2, 2024), merely apply the same legal standards for falsity, scienter, and loss causation as this Court applied in the Order—and even cite many of the same Supreme Court and Ninth Circuit cases setting forth established legal standards for assessing the adequacy of securities fraud complaints. Moreover, the reasoning of these cases is inapplicable. *See infra* § III.A.3.

Finally, Defendants' reference to these cases is particularly misplaced given that Defendants explicitly represented to Plaintiffs that they would seek reconsideration ***weeks*** before each of these decisions were published. *See* Kaplan Decl. ¶2 & Ex. A. Thus, Defendants' post hoc representation that these three new decisions form (in any part) the basis of Defendants' Motion should raise a judicial eyebrow—and an arched one at that. This is particularly true given that none of these cases

---

[5] Defendants' case law is inapposite. *See* Mot. 15. In *Senne v. Kansas City Royals Baseball Corp.*, the court found delay excusable when discovery "contradict[ed] the declarations upon which the court relied in concluding that it had personal jurisdiction" over defendants. 2016 WL 1623913, at *3 (N.D. Cal. Apr. 25, 2016). Here, in contrast, there is no dispute regarding the Court's jurisdiction and, moreover, Defendants *refuse* to engage in discovery precisely because they have sought reconsideration. *See* ECF No. 159. In *In re Apple Inc. Device Performance Litigation*, the plaintiffs never questioned, and the court made no finding as to, whether the movants acted with "reasonable diligence." 386 F. Supp. 3d at 1169.

justify reconsideration, and are nothing more than window dressing to hide Defendants' lack of diligence and true agenda of delay.

**2. The Court considered and applied the proper standard for falsity.**

Defendants' argument that the Court "did not require Plaintiffs to properly plead their theory of fraud," Mot. 1, 6-9, offers nothing more than disagreement with the Court's application of the relevant law. That is not grounds for reconsideration. *See In re Honest Co., Inc. Sec. Litig.*, 2022 WL 18584804, at *2 (C.D. Cal. Aug. 25, 2022) ("Movants' disagreement with the Court's reading of a pleaded fact in the light most favorable to Lead Plaintiff does not provide a ground for reconsideration."). Notably, Defendants do not contend that the Court applied the wrong standard for pleading falsity. *See* Mot. 6-9. ***Instead, Defendants admit that they are merely restating their previous argument***. *See id.* at 7 ("***As Defendants explain in their motion to dismiss***, to show an increase in cheating, Plaintiffs must necessarily compare the rate of cheating during the class period to prior periods and support allegations of increased cheating with particularized facts.") (emphasis added). Not only does that amount to an admission that sanctions are appropriate under Civil Local Rule 7-9(c), but this argument was squarely rejected by the Court as inconsistent with the relevant pleading standard. *See* Order 6 ("[D]efendants inflate the requisite standard to demonstrate falsity here. Though plaintiffs do not show the exact percentage of subscribers who were cheating on Chegg's platform, they present compelling empirical evidence of substantial cheating during the class period. This analysis is sufficient to meet both the PSLRA's particularity requirement and *Twombly* and *Iqbal*'s reasonable inference plausibility standard on a Rule 12(b)(6) motion to dismiss.").

Similarly, Defendants cite to the Court's questioning during the motion to dismiss hearing to attempt to undermine the Order. But again, this only ***proves*** the Court considered the relevant argument and appreciated the applicable standard. *Compare* Dec. 7, 2023 Hr'g Tr. (ECF No. 147) 39:13-14 (Lead Counsel: "would a reasonable investor receive a misleading impression from the statements made?") & 43:6-10 (noting that although the pleading standard is exacting, it should not be inflated to become an "insurmountable hurdle"), *with* Order 5 ("A statement is false or misleading 'if it would give a reasonable investor the impression of a state of affairs that differs in

a material way from the one that actually exists.' *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).") & 9 (finding "plaintiffs have adequately pleaded falsity" and noting the Ninth Circuit's holding in *Glazer* that "courts should not 'impose an impossibly high burden on securities actions plaintiffs'"). Thus, the Court was presented with Defendants' view on how that pleading standard should be applied, asked questions relevant to that issue, and rejected the argument they now seek to rehash. Reviving unpersuasive arguments is not a proper ground for requesting reconsideration, and warrants sanctions. *See, e.g.*, *Garcia*, 2014 WL 342085, at *1 ("[R]econsideration [is not] to be used to ask the Court to rethink what it has already thought.").[6]

Defendants next suggest that the Court conflated plausibility and particularity or wholly misunderstood the pleading standard (Mot. 6 & n.4), but this is nothing more than a thinly veiled contention that Plaintiffs must prove their case at the start. Although securities fraud claims are not governed by simple "notice pleading" (which the Court appreciated), "courts must be careful not to set the hurdles so high that even meritorious actions cannot survive a motion to dismiss." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1018 (S.D. Cal. 2005). "Such a regime would defeat the remedial goals of the federal securities laws." *Id.*

---

[6] Defendants' complaints ring particularly hollow given their repeated misplaced citations to *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999), during the motion to dismiss hearing. Indeed, as was clear during the hearing, it was *Defendants* who manifestly failed to consider material facts and dispositive law, including "appl[ying] the wrong scienter standard." Mot. 2; *see also* Dec. 7, 2023 Hr'g Tr. 40:4-7 (Lead Counsel: "[Defense counsel] said that we hadn't pleaded that they knowingly misled shareholders. That's not the standard, deliberate recklessness is the standard . . . ."). While Defendants now acknowledge (in parts of their Motion) that deliberate recklessness is the correct standard, they continue to misrepresent the scienter standard elsewhere as requiring proof of subjective, specific intent. *See* Mot. 4 (describing the "core inquiry" as "whether each defendant knew or believed they were misleading investors"). As the Court recognized, that is not the law. *See, e.g.*, *Sec. & Exch. Comm'n v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094-95 (9th Cir. 2010) (rejecting argument defendant's subjective belief can preclude scienter finding and noting "[i]f such a self-serving assertion could be viewed as controlling, there would never be a successful prosecution or claim for fraud"); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *14 (N.D. Cal. Apr. 17, 2020) ("Defendants also argue that they did not believe the challenge statements to be misleading. But that self-serving assertion is unavailing.").

The Court also rightly questioned Defendants on their reliance on the superseded quarter-century old case law in *Silicon Graphics*. *See* Dec. 7, 2023 Hr'g Tr. 5:24-6:1 ("I'm not sure including *Silicon Graphics*, they did kind of err in conflating the scienter and falsity standard rights.").

Here, the allegations in the Complaint are certainly "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023). Indeed, in finding that the Complaint contains "sufficient factual support for plaintiffs' allegations of falsity," the Order devotes three pages to the abundant "evidence cited in plaintiffs' complaint," including "plaintiffs' empirical analysis, former employee testimony, university interviews, and faculty statements." Order 6-9. As the Court correctly found, these facts are sufficient to meet both the PSLRA's particularity requirement and *Twombly* and *Iqbal*'s reasonable inference plausibility standard at the pleadings stage—including, specifically, "that cheating was *a* driver of growth during the class period." *Id*. at 9 (citing *Glazer*, 63 F.4th at 76). As the Court recognized, the level of granularity demanded by Defendants at this juncture—that cheating was the "*sole* cause of the company's subscriber and revenue growth"—is not required under the applicable pleading standards. *See id.* ("Chegg overstates plaintiffs' burden"); *see also, e.g.*, *In re Intuitive Surgical Sec. Litig.*, 2014 WL 7146215, at *5 (N.D. Cal. Dec. 15, 2014) ("The Ninth Circuit does not appear to require the contents of the report to be alleged."); *Robb v. Fitbit Inc.*, 2017 WL 219673, at *8 (N.D. Cal. Jan. 19, 2017) ("The specificity that Fitbit defendants seek . . . crosses into territory better evaluated on a motion for summary judgment."); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1222 (W.D. Wash. 2009) ("Plaintiffs are not required to quantify the amount by which the Allowance was understated.").[7]

Defendants' citation to the motion to dismiss hearing transcript (Mot. 8-9) only reinforces that the Court considered Defendants' argument that the Complaint does not establish a link

[7] Courts from outside the Ninth Circuit are in accord. *See, e.g.*, *In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1260 (M.D. Fla. 2007) (rejecting defendants' argument that "[p]laintiff never allege[d] any amount by which the selling expenses were understated" as plaintiff is not required to "quantify the falsity to the penny"); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 302 (S.D.N.Y. 2018) ("Defendants argue that Plaintiff fails to quantify the scope, magnitude, or duration of the integration problems. At this early stage of litigation, and even with the heightened pleading standards of Rule 9(b) and the PSLRA, the Court '[does] not require the pleading of detailed evidentiary matter[s] in securities litigation.'") (alterations in original) (citation omitted).

between allegations of cheating and allegations of growth, and rejected it. *See Rodriguez v. Mondelēz Glob. LLC*, 2024 WL 1361892, at *2 (S.D. Cal. Mar. 29, 2024) ("Reconsideration motions are not intended to give parties 'a second bite at the apple.'").

**3. The Court considered and applied the proper standard for scienter.**

Defendants' scienter argument is also baseless, as they contend the Court failed to "assess any individual defendant's mental state as to whether they intended to deceive investors or were deliberately reckless in making the statements to investors." Mot. 10; *see also id.* at 11 ("Had the Court engaged in an analysis of the Defendants' mental state, and not merely knowledge of the allegedly concealed information, it would have been clear that Plaintiffs have nothing supporting their theory of scienter."). Not so. Among other things, the Court noted that "a Director at Texas A&M University was so 'fed up with Chegg' that she '***emailed defendant Rosensweig directly***,' and three high-level Chegg representatives responded to her email." Order 12. The Court further noted that Plaintiffs "also present[ed] testimony from former employees demonstrating that discussions about cheating on the platform were regularly held at company meetings," and that "FE1 noted that 'our CEO would sometimes talk about [student cheating] during all-hands [meetings].'" *Id.* (alterations in original). Moreover, the Court recognized that Plaintiffs pleaded that "[t]hese meetings were attended by individual defendants Rosensweig, Brown, and Schultz" and that "[a]nother former employee noted that 'executives distributed a Forbes article discussing widespread student cheating using Chegg to employees.'" *Id.* The Court readily considered each of the Individual Defendants' scienter.

Defendants also argue (once again) that the Court should have granted dismissal "as there are no allegations that any defendant received reports, emails, financial projections, analyses, presentations, phone calls, held conversations, or expressed ***any*** sort of belief that alleged increases in cheating fueled revenue and subscriber growth." Mot. 10. But this is not required. The PSLRA does not demand evidence "of the 'smoking-gun' genre," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007), nor does it "require a plaintiff to plead evidence," *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 17974627, at *5 (N.D. Cal. Nov. 7, 2022). Accordingly, "[p]roof of scienter is often based on inference from circumstantial evidence." *Sec. & Exch. Comm'n v. Beck*, 2024

WL 1626280, at *8 (C.D. Cal. Mar. 26, 2024) (alteration in original) (quoting *Sec. & Exch. Comm'n v. Burns*, 816 F.2d 471, 474 (9th Cir. 1987)). The "relevant inquiry," therefore, is '"whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."' *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting *Tellabs*, 551 U.S. at 323). The Court's decision did precisely that, applying a holistic approach that correctly analyzed a host of well-pled scienter facts and was not dependent on any one scienter fact taken in isolation. *See* Order 12-13 (the "totality of the circumstances," when "viewed with a practical and common sense perspective," "satisfy both Rule 9(b)'s particularity requirement as well as the PSLRA's strong inference standard").

In addition to the foregoing factual allegations, the Court ***also*** recognized that the Complaint amply alleged that the Individual Defendants made numerous highly specific statements regarding the frequency of cheating on Chegg, which adds to the scienter inference. For example, throughout the Class Period, Defendants repeatedly told investors that there were only "very isolated cases" of cheating, by a "tiny fraction of users," which "represent[ed] an extremely small portion of the activity of our services." Order 1; *see also Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (when defendants make specific misstatements about matters they purport to know, "[i]t is unclear what further facts plaintiffs would need to plead to create a stronger inference that [they] had access to information [they] discussed publicly"); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2024 WL 1898512, at *8 (S.D.N.Y. May 1, 2024) ("Defendants' detailed statements about inventory, the supply chain, and product defects support the inference of scienter. Courts have found that '[t]he specificity of [the defendants'] statements . . . is strong circumstantial evidence that [they] were receiving some form of specific information on [these topics].") (alterations in original) (collecting cases); *In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019) (finding "specific" statements "in response to questions from analysts and investors" may "give rise to a strong inference that Defendants acted with the required state of mind" at the pleading stage); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1261 (D. Nev.

2019) (finding it "absurd" to suggest defendants had no knowledge when they "responded to at least one [analyst's] question . . . , suggesting that they were familiar with the . . . issues").

Against this background, the Court rightly recognized that the Complaint is replete with specific allegations that Defendants knew about (or recklessly disregarded) both the "existence of cheating on the platform," and that such "widespread cheating substantially increased during the class period" and "fueled Chegg's growth." Order 5. *See also City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2023 WL 1769810, at *4 (S.D. Cal. Feb. 2, 2023) ("Defendants' disagreement regarding the weight of the competing inferences is not adequate grounds for reconsideration.").

In a futile attempt to justify reconsideration, Defendants reference the *Espy* and the *Aramic* decisions that were published after the Court's Order. *See* Mot. 11. However, neither case represents an intervening change in the law—something Defendants readily acknowledge as they do not seek reconsideration on those grounds. *See id*. (citing years-old Ninth Circuit precedent on scienter for the same proposition); *see also* Civ. L.R. 7-9(b)(2) ("The moving party must specifically show . . . a ***change*** of law occurring after the time of such order . . . .") (emphasis added); *Honest*, 2022 WL 18584804, at *2 (denying reconsideration when movant's new authority "presents no relevant, controlling change in law"). Moreover, those cases are readily distinguishable. In *Espy*, the plaintiff asserted that the defendants "made materially misleading statements by omitting key facts regarding" certain acquisitions. 99 F.4th at 533. The scienter allegations at issue in that case relied on secondhand information but it was unclear whether or not the named individual defendants were present for conversations that would have informed them about the allegedly omitted information. But even if they had been present, the "fail[ure] to fully describe a $900,000 acquisition because [the company] was trying to hide it" was not likely given the overall amount defendants spent on acquisitions that year was $265 million. *Id.* at 537. Therefore, any inference of knowledge and intent to deceive was not reasonable. Here, however, there are specific allegations of the Individual Defendants' first-hand knowledge that cheating was driving subscriber growth, and the alleged misrepresentations denying that fact are financially relevant—they relate to the overall source of Chegg's growth.

*Aramic*, which involved the FDA's refusal to approve the defendants' drug after individual defendants had publicly stated the drug would be approved, is equally unhelpful for Defendants. The *Aramic* plaintiffs sued, alleging defendants "knew of the existence of various deficiencies, and therefore their statements about FDA approval were misleading." 2024 WL 1354503, at *13. In finding the plaintiffs failed to plead scienter adequately, the court concluded "Plaintiffs have not pointed to any evidence that Defendants believed that FDA approval was unlikely or would be delayed because of the deficiencies." *Id.* Furthermore, the defendants continued working on the product and the drug was approved by the FDA shortly thereafter. *Id.* at *14.

By contrast, the allegations here indicate that Chegg was actively choosing *not* to address the issues with cheating raised by multiple academic institutions and instead thwarted universities' genuine and repeated efforts to curb student cheating. Indeed, the Complaint amply alleges how Chegg's "Expert Q&A" service utilized a network of 70,000 to 100,000 freelance "experts" to enable student cheating, including answering photographs of entire tests uploaded through cellphones "in nearly real time." *See* Order 1. And, as already highlighted above, the Complaint lays out the extent of Defendants' knowledge through the former employees (including meetings attended by the Individual Defendants during which cheating on Chegg.com was openly discussed) and "extensive communications" with university deans, professors, and administrators across the country complaining of rampant student cheating on Chegg.com. Significantly, these communications include numerous letters sent by many of the nation's leading universities directly to "high-level Chegg representatives"—including Defendant Rosensweig himself—which Chegg responded to and "admitted." *Id.* at 11-12. Again, the Court correctly applied *Tellabs* in concluding that a holistic review of these extensive internal and external communications met the PSLRA's "high bar for pleading scienter at this stage." Order 12-13.

Accordingly, the scienter facts here are nothing like the bare bones scienter allegations in *Espy* or *Aramic*, which applied the same well-established law that the Court used in the Order.

**4. The Court applied the proper standard in its loss causation analysis.**

Finally, Defendants contend that the Court failed to require particularized pleading of loss causation. *See* Mot. 12-15. Their argument is both factually wrong and premised on a misunderstanding of what Plaintiffs must allege to satisfy loss causation.

All a complaint must plead to plausibly allege loss causation is a "causal connection" between the misstated or omitted facts and the ensuing stock price decline. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 347 (2005); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (same). While the theory must be pled with particularity, "[s]o long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 954 (9th Cir. 2023) (quoting *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1206 (9th Cir. 2020)). Courts in this District have therefore acknowledged that "[l]oss causation is generally not a high burden for plaintiffs at the pleading stage in securities cases." *Abadilla v. Precigen, Inc.*, 2022 WL 1750033, at *9 (N.D. Cal. May 31, 2022); *see also In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *8 (N.D. Cal. June 1, 2020) (recognizing the "the low bar of pleading proximate cause for purposes of loss causation"). The Supreme Court is in accord. *See Dura*, 544 U.S. at 347 (pleading loss causation "should not prove burdensome for a plaintiff").

As an initial matter, Defendants ignore the purpose of loss causation pleadings at this point in the litigation. "[E]ven under Rule 9(b) the plaintiff's allegations will suffice so long as they give the defendant 'notice of plaintiffs' loss causation theory' and provide the court 'some assurance that the theory has a basis in fact.'" *BofI*, 977 F.3d at 794 (quoting *Berson*, 527 F.3d at 989-90); *see also Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *15-18 (D. Nev. Mar. 31, 2024) (applying and quoting from *BofI*). Here, that dual purpose has been satisfied. Defendants clearly understand the loss causation theory. *See* Mot. 4 ("Plaintiffs' loss causation theory is that Chegg revised revenue guidance in November 2022 because students returned to campus and could not cheat anymore, which slowed growth and caused a stock drop."). And, significantly, Defendants do not suggest the theory is in any way unclear.

Moreover, while Defendants take issue with the Court's reference to analyst and media reports in determining that loss causation was adequately pled, Defendants plainly ignore the detailed and abundant loss causation allegations in this case. Specifically, the Complaint alleges with particularity that Chegg reported its Q3 2021 results on November 1, 2021, revealing a reversal in subscriber growth, revenue guidance below market expectations for 2021, and the postponement of 2022 guidance. ¶¶ 167, 256. Chegg's stock price fell nearly 50% in response. ¶¶ 168, 257. At least eight sophisticated market analysts and major financial media outlets expressly rejected Defendants' excuse of fewer college enrollments and instead linked Chegg's declining growth, financial outlook, and stock price plunge to the widespread resumption of on-campus learning, which limited Chegg's utility as a cheating tool. ¶¶ 169-71. And, the Complaint details reports issued by Morgan Stanley and *Forbes* that draw a ***direct line*** between Chegg's November 2021 corrective disclosure and Defendants' Class Period misrepresentations, which alone provide a clear causal connection between the 44% stock price decline following the November 2021 corrective disclosure and Defendants' prior statements minimizing the extent of cheating on Chegg and the drivers of the Company's subscriber and revenue growth.[8] ¶ 168. Moreover, as noted, the Complaint includes additional reports by *Barron*'s and seven additional analysts reinforcing the casual connection. ¶ 169; *see Dura*, 544 U.S. at 337 (to allege loss causation, plaintiff must "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind"). Accordingly, Plaintiffs clearly provided the Court with "some assurance that the

---

[8] *See, e.g.*, ¶ 169 (*Forbes*: "Now that students are back in the classroom, they can't easily use Chegg to cheat"; Morgan Stanley: "[A]s students returned to campus for in person learning, they did not return to the Chegg platform, as they might now have . . . more graded assignments in class where Chegg would not be helpful."). *Forbes*'s and Morgan Stanley's conclusion that the November 2021 disclosure marked a "complete reset" for the Company were echoed by *Barron's* and at least seven additional analysts, who downgraded Chegg shares and, like *Forbes* and Morgan Stanley, roundly rejected Defendants' fabricated explanations for Chegg's disappointing financial performance and reduced outlook. ¶ 170.

theory has a basis in fact," and the Court plainly recognized the Complaint's robust loss causation allegations.[9] Order 13-14.

Defendants' related argument—that an analyst report can only form the basis for loss causation if ***Defendants*** later confirm that information—misstates the law. First, the argument flies in the face of controlling Ninth Circuit precedent holding that a "***basic ground rule[]***" for pleading loss causation is that "a corrective disclosure need not consist of an admission of fraud by the defendant or a formal finding of fraud by a government agency," but "***can instead come from any source***, including knowledgeable third parties such as whistleblowers, ***analysts, or investigative reporters***." *BofI*, 977 F.3d at 792 (emphases added). Second, if Defendants' argument were accepted, loss causation would not exist unless and until Chegg explicitly admitted to liability by publicly acknowledging that its growth was fueled by cheating. This would place the litmus test for loss causation in the defendant's hands, an absurd result that courts reject. *See In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *20 (M.D. Ga. Mar. 23, 2018) ("[D]efendants cannot escape liability for fraud simply by not admitting the fraud.") (alteration in original); *In re Elec. Data Sys. Corp. Sec. & "ERISA" Litig.*, 298 F. Supp. 2d 544, 561 (E.D. Tex. 2004) (same); *see also In re Mattel, Inc. Sec. Litig.,* 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) (accepting defendants' "exceptional position" "would functionally defang" the fraud-on-the-market doctrine "incentivize companies to … belatedly disclose fraud findings").

Finally, as the Ninth Circuit recently reiterated, "[l]oss causation is a '"context-dependent" inquiry,' and what may reveal fraud in one case may not reveal fraud in another." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1184 (9th Cir. 2024) (citation omitted). Indeed, "the Ninth Circuit has adopted a flexible approach to loss causation" which recognizes there are "an 'infinite' variety of ways for a tort to cause a loss." *Sanchez v. Decision Diagnostics Corp.*, 2022 WL 18142518, at *14 (C.D. Cal. Dec. 5, 2022) (quoting *First Solar*, 881 F.3d at 753). Contrary to

---

[9] Defendants contend (Mot. 12) that the Court "misstates the Ninth Circuit's holding" in *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016), but ignore that in *BofI* the Ninth Circuit reached the ***same conclusion*** as this Court—namely, that a corrective disclosure can "come from any source, including . . . analysts," 977 F.3d at 790.

Defendants' claim that caselaw disallows reliance on analyst or other public reporting, cases are legion in the Ninth Circuit and around the country referencing the relevance of analyst reports in finding loss causation adequately alleged. *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005) (reversing district court's analysis and dismissal of market analyst comment as "merely speculation" and finding loss causation sufficiently pled when report noted "You have got to question whether [the company is] manufacturing earnings." (italics omitted)); *Azar v. Yelp, Inc.*, 2019 WL 285196, at *5 (N.D. Cal. Jan. 22, 2019) (finding plaintiffs plausibly established loss causation when they "alleged that Yelp misrepresented the performance of its local advertising program while concealing advertiser churn rates; that analysts connected the churn issue to Yelp's May 9 lowered earnings forecasts; and that the value of Yelp stock depreciated dramatically immediately following the May 9 disclosure and analyst report"); *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *10 (D. Nev. Mar. 1, 2023) (disclosure corrective where "market analysts linked the prior allegations to the new revelations"); *Brendon*, 412 F. Supp. 3d at 1264 (finding CBS report "revealed new information to the market and brought to light the systemic nature of Allegiant's maintenance issues"); *Flowers Foods*, 2018 WL 1558558, at *20 ("[A]nalysts' reports 'strengthen the inference that the disclosure revealed a truth to the market.'"); *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1306-07 (N.D. Ga. 2021) (finding loss causation when analysts "express[ed] 'wariness' of Mohawk's 'story'" despite defendants' "alternative explanations"); *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 656 (E.D. Pa. 2015) ("[T]he market may learn the truth regarding the misrepresentation from 'whistleblowers, analysts . . . , newspapers and journals,' and other informers who are otherwise not representatives of the company or the company itself." (citations omitted)).[10]

In sum, there is nothing novel or inconsistent about the consideration of reports from reputable analysts or mainstream financial press in the Court's loss causation analysis, and certainly

---

[10] Not only do Defendants' cases, analyzing different facts, fail to support a contrary proposition, but their reliance thereon does not meet the standard for reconsideration. *See Lujan*, 2018 WL 3861655, at *2 ("A district court does not commit clear error warranting reconsideration when the question before it is a debatable one").

no clear error. Defendants will have an opportunity to advance their own version of events connected to the corrective disclosure at the expert testimony and summary judgment stage. As such, Defendants fail to identify any clear error in the Court's loss causation holding warranting reconsideration.

**B. The Court Should Deny Defendants' Certification Request**

Defendants further request the Court certify two questions related to loss causation for interlocutory appeal. *See* Mot. 17-20. Like their argument for reconsideration, however, these arguments highlight Defendants' misapprehension of the loss causation pleading standard and fail to identify any rift in the jurisprudence that requires immediate explication. Here again, Defendants fail to satisfy any of the relevant elements and this request for extraordinary and unwarranted relief should be denied.

**1. The Order does not involve a controlling question of law.**

"The precedent in this circuit has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in ***exceptional*** cases, and that the 'controlling question of law' requirement be interpreted in such a way to implement this policy." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982) (emphasis added) (citations omitted). "Interlocutory appeals are intended to resolve pure questions of law, not challenges to the district court's application of settled law to specific alleged facts." *Ji v. Naver Corp.*, 2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024). "'[A] mixed question of law and fact,' by itself, is not appropriate for permissive interlocutory review." *Rabin v. PricewaterhouseCoopers LLP*, 2017 WL 11662124, at *1 (N.D. Cal. Apr. 17, 2017) (alteration in original) (quoting *Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993)).

Although Defendants attempt to frame the issue as a "question of law" as to the proper pleading standard, that is not a fair characterization of their actual argument. For one, there is no question as to what the pleading standard is. That issue is well-settled and reflected in the Ninth

Circuit's decisions in *First Solar* and *BofI*. In actuality, Defendants' questions are whether certain *facts* meet those pleading requirements:

> (1) whether loss causation is adequately pled where a stock drop follows an announcement of revised revenue guidance, absent particularized facts showing the company revised guidance because of the alleged fraud, and (2) whether loss causation is adequately pled based on an analyst commenting on a possible connection between the stock drop and alleged fraud.

Mot. 17. The *adequacy* of a particular pleading is not the same as what standard is applied. *See Wen-Bing Soong*, 2014 WL 988632, at *1 ("simply arguing that the Court misapplied the existing law to the facts at hand" does not meet first requirement for interlocutory appeal).

As noted above, "loss causation is a context-dependent inquiry," *see supra* at 16, and as the Ninth Circuit has emphasized, "there are an 'infinite variety' of ways for a tort to cause a loss," *Lloyd*, 811 F.3d at 1210. These determinations "involve assessments that are 'peculiarly ones for the trier of fact' because they require drawing 'inferences . . . from a given set of facts.'" *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1104 (9th Cir. 2010) (alteration in original) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). The adequacy of a loss causation pleading under a settled standard is therefore not only not a pure question of law, but is in fact a highly factual, context-driven question wholly inappropriate for interlocutory review.

**2. There is no difference of opinion to address.**

Defendants further attempt to manufacture a conflict in the law, first suggesting that "the Court should certify an interlocutory appeal to determine what 'particularity' means in the loss causation context." Mot. 19. The meaning of particularity is not the issue. There is no dispute "that Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). Significantly, however, the Ninth Circuit has also held that "[w]hen applied to allegations of loss causation, however, Rule 9(b)'s particularity requirement usually adds little to the plaintiff's burden." *BofI*, 977 F.3d at 794. The *BofI* court emphasized this "effort 'should not prove burdensome,' for even under Rule 9(b) the plaintiff's allegations will suffice so long as they give the defendant 'notice of plaintiffs' loss causation theory' and provide the court 'some assurance that the theory has a basis

in fact.'" *Id.* (quoting in part *Berson*, 527 F.3d at 989-90). The Supreme Court has similarly instructed. *See Dura*, 544 U.S. at 347. As such, pleading loss causation with particularity is not the logical fallacy or jurisprudential inconsistency Defendants try to make it. There is no widespread discord as to what a plaintiff must do to satisfy its pleading burden. And, of course, "[a] party's strong disagreement with the Court's [prior] ruling is not sufficient for there to be a 'substantial ground for difference.'" *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010).

As to their other alleged conflict, "whether a plaintiff can rely on unsubstantiated[11] analyst commentary to plead loss causation," Mot. 19, is not a legal question reflecting a difference of opinion across courts. As noted, the Ninth Circuit has explicitly addressed this precise issue and concluded that a corrective disclosure can "***come from any source***, including knowledgeable third parties such as whistleblowers, ***analysts***, or ***investigative reporters***." *BofI*, 977 F.3d at 792 (emphases added). Indeed, rather than being an unsettled issue, courts routinely hold that analysts and media reports are sufficient to draw a causal connection for loss causation. *See supra* at 16-17.

Moreover, as discussed above, Defendants' myopic focus on the analysts and media reports ignores the other detailed and abundant allegations relevant to loss causation. Once the COVID pandemic subsided and students widely returned to campus for in person learning, Chegg reported significant declines in subscriber growth and revenue growth, dramatically lowered full-year 2021 revenue guidance, and postponed issuance of 2022 revenue guidance. ¶ 167. On this news, Chegg's stock price plunged nearly 50%, wiping out a staggering $4 billion in shareholder value in a single day. ¶ 168. Notably, this dramatic decline was concentrated in a single business line—"Chegg Services," the Company's online subscription platform and alleged "professional cheating operation"—which accounted for nearly 90% of the Company's total revenues before the end of the Class Period. Accordingly, this is not simply an "earnings miss," but in any event, a "plaintiff may also prove loss causation by showing that the stock price fell upon the revelation of an earnings

---

[11] Defendants' derision only further shows the absurdity of their argument. They frame the issue as whether reliance on "unsubstantiated" commentary and "speculation" is appropriate. Since the reports they disdain are neither unsubstantiated nor speculative, that question is irrelevant in this case.

miss." *First Solar*, 881 F.3d at 754. References to "knowledgeable third parties" ***within*** this narrative (*see BofI*, 977 F.3d at 790)—including analysts and major media outlets that widely discredited Defendants' attempt to blame the "earnings miss" on a "combination of variants" and instead attributed the decline to the end of remote learning that made it much more difficult for students to use Chegg to cheat—are like any other allegation germane to the loss causation inquiry. Here, the context clearly supports the Court's conclusion. Plaintiffs' loss causation theory is based not on speculation, but on numerous, specific allegations showing the growth of cheating supported Chegg's financial growth. *Forbes* and Morgan Stanley (among others) explicitly noted this following the Company's November 2021 disclosure and resulting stock price plunge.[12]

The cases cited by Defendants do not stand for a different proposition. In *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603 (9th Cir. 2020), the Ninth Circuit declined to rely on statements by securities analysts on marketbeat.com as to the "true value" of certain stock, finding them "too speculative." *Id.* at 605. The Ninth Circuit considered that commentary in terms of the existence of loss—which was alleged to be the difference between what was received by stockholders and the true value of the shares. *Id.* at 604. When the plaintiffs failed to show they suffered economic harm, the case was dismissed, but nowhere in that opinion did the court conclude that analyst reports cannot support a finding of loss causation. The mention of analysts in *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007), does not arise in the context of loss causation but rather as part of a scienter analysis, and that alone reflects a wholly different inquiry and standard. In *Wet Seal*, the issue was that the report was not independently corroborated, it was not clear who the internal source was, and, more importantly given the *scienter* context, there were no allegations that defendants knew information contradicting the published denial. *Id*. at 1172-73.

---

[12] Defendants' contention that Morgan Stanley's report "echoed exactly what Chegg said in its press release" (Mot. 15) is nonsense. In its November 2021 disclosure, Chegg blamed the declining growth (in part) on students receiving "***less*** graded assignments" due to a variety of factors ***other than cheating***. In contrast, Morgan Stanley's report that Chegg's results were "Worse Than We Expected" attributed Chegg's disappointing results to students ***"return[ing]*** to campus learning" and receiving "***more*** graded assignments in class where Chegg would ***not be helpful***," *i.e.*, as cheating tool. *See* ¶ 169 (Morgan Stanley report calling for a "complete reset" on Chegg and placing the stock "in the penalty box").

The Court should reject Defendants' attempt to mischaracterize the pleadings and then manufacture a purely legal issue where one does not exist.

**3. An immediate appeal will not materially advance the ultimate termination of the litigation.**

Finally, Defendants assert that because a motion to dismiss is a dispositive motion, the final prong of the analysis is satisfied. *See* Mot. 19-20. This argument misstates the law.

In considering whether an immediate appeal would materially advance termination of the lawsuit, "[t]he ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *In re Apple Inc. Sec. Litig.*, 2022 WL 4588603, at *2 (N.D. Cal. Sept. 29, 2022). "[I]t is not enough to say that appellate reversal of a particular decision might dispose of an action (i.e., 'speed ultimate resolution')." *Env't Prot. Info. Ctr. v. Pac. Lumber Co.*, 2004 WL 838160, at *3 (N.D. Cal. Apr. 19, 2004). Here, it is highly unlikely that a reversal would dispose of this action. Even if the Court of Appeals were to reverse the Court and find the Complaint failed to allege loss causation with particularity, "there is little doubt that leave to amend would be granted" to allow plaintiffs to supplement their claims. *In re Google Referrer Header Priv. Litig.*, 2020 WL 5545155, at *3 (N.D. Cal. Sept. 16, 2020); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[I]n a line of cases stretching back nearly 50 years, [the Ninth Circuit has] held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" (citations omitted)). Far from assuredly concluding the case, reversal on appeal would likely lead to subsequent requests for interlocutory appeals and more demands on the parties and the court system.

Furthermore, an interlocutory appeal would severely prejudice Plaintiffs. Considering Plaintiffs' recent discovery of Chegg's spoliation of documents (including the irreversible deletion of innumerable relevant emails and Slack communications) (*see* Kaplan Decl. ¶¶5-7 & Ex. B), any further delay in the case will only weaken the memories of witnesses upon whom Plaintiffs now must rely. Defendants here have presented nothing more than their disappointment in the Court's

ruling—no changed controlling issue of law and no conflict in precedent. The only aspect of litigation that would be materially advanced by an appeal is the prejudice Defendants and their counsel have already caused to Plaintiffs.

**4. The seven-week delay weighs against granting certification.**

Although 28 U.S.C. § 1292(b) does not set a statutory deadline by which a litigant must file a motion to certify in the district court, courts in this District and elsewhere within this Circuit have denied such requests as untimely where delay was unjustified. *See, e.g.*, *Spears v. Wash. Mut. Bank FA*, 2010 WL 54755, at *1 (N.D. Cal. Jan. 8, 2010) ("Though there is no specified time limit for seeking certification, § 1292(b) provides for an 'immediate appeal,' and 'a district judge should not grant an inexcusably dilatory request.'" (quoting *Richardson Elecs., Ltd. v. Panache Broadcasting of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000))); *Beyond Blond Prods., LLC v. Heldman*, 2021 WL 4860377, at *2 (C.D. Cal. Apr. 28, 2021) (finding two-month delay in seeking interlocutory appeal "to be unexplained and unreasonable").[13]

Here, Defendants filed their Motion no less than ***seven weeks*** after this Court's denial of their motion to dismiss. Although they assert the reason it took them so long is that they wanted to "carefully and thoughtfully consider[], research[], analyze[], and draft[] this motion," Mot. 16, they had already made up their mind to do so immediately following the ruling, and simply took as long as possible to file it to delay the litigation further, *see* Kaplan Decl. ¶¶2-3 & Ex. A. Nothing happened during those seven weeks to necessitate launching a new inquiry into these issues. No change in controlling law occurred. No new facts emerged. Though Defendants' tardiness should alone warrant denial of their Motion, such untimeliness in a PSLRA case, which already has built-in statutory delays and a discovery stay during the pendency of a motion to dismiss, coupled with the difficulties Plaintiffs already face as a result of Defendants' discovery abuse (and thus need for

[13] Notably, counsel to Defendants recently argued that a delay of less than four weeks – about ***half*** the delay here – was grounds to deny a motion for interlocutory review under Section 1292(b). *See Two Jinn's Opp'n to Mot. to Certify Interloc. Appeal & Stay, Medina v. Two Jinn, Inc.*, No. 3:22-cv-02540-TLT, ECF 121 at 19 (N.D. Cal. Sept. 12, 2023) (arguing that Section 1292(b) motion was "untimely because Plaintiffs ***inexcusably delayed*** nearly four weeks in filing the Motion") (citing *T & E Inv. Grp. LLC v. Faulkner*, 2014 WL 11512366, at *2 (N.D. Tex. May 19, 2014) ("By waiting four weeks to move for certification, Defendants did not act promptly in this case.").

prompt depositions addressing spoliation and the merits before memories fade), militates against granting Defendants' Motion.

**C. Defendants Should Be Sanctioned**

Where a party "repeat[s] any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered," it "***shall*** be subject to appropriate sanctions." Civ. L.R. 7-9(c) (emphasis added). Given the mandatory nature of this Local Rule and Defendants' repetition of oral or written arguments previously made, Plaintiffs respectfully submit that Defendants must be sanctioned for filing their Motion. Plaintiffs defer to the Court as to the precise sanction it believes appropriate, but are willing to file a motion to assist the Court with an appropriate order should the Court ultimately deny Defendants' Motion.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration and order appropriate sanctions.

Dated: May 13, 2024

Respectfully submitted,

*/s/ David R. Kaplan*

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
Marti L. Worms (SBN 205552)
Emily R. Bishop (SBN 319383)
505 Lomas Santa Fe Dr. #180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
mworms@saxenawhite.com
ebishop@saxenawhite.com

Maya Saxena (*pro hac vice* forthcoming)
Jonathan Lamet (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: 561.394.3399
Facsimile: 561.394.3382
msaxena@saxenawhite.com
jlamet@saxenawhite.com

Steven B. Singer (*pro hac vice* forthcoming)
Kyla Grant (*pro hac vice* forthcoming)
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
ssinger@saxenawhite.com
kgrant@saxenawhite.com

*Counsel for Lead Plaintiff Pompano Beach Police and Firefighters' Retirement System, and Lead Co-Counsel for the Class*

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
Neli Traykova Hines (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
mgruetzmacher@motleyrice.com
cmoriarty@motleyrice.com
ntraykova@motleyrice.com

*Counsel for Lead Plaintiff KBC Asset Management NV, and Lead Co-Counsel for the Class*

**ROSSMAN LEGAL**
Gregg Rossman (*pro hac vice* forthcoming)
6840 Griffin Rd.
Davie, Florida 33314
Telephone: (954) 440-0908
gregg@rossmanlegal.com
mike@rossmanlegal.com

*Additional Counsel for Lead Plaintiff Pompano Beach Police and Firefighters' Retirement System*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on May 13, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

Dated: May 13, 2024

**SAXENA WHITE P.A.**

*/s/ David R. Kaplan*
David R. Kaplan