EXHIBIT B

 

**VIA EMAIL**

April 25, 2024

Patrick E. Gibbs
Brett De Jarnette
Heather Speers
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304

Re: *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953-PCP (N.D. Cal.)

Dear Counsel:

We write to memorialize the principal issues discussed during the April 23, 2024, Rule 26(f) conference, including key follow-up items and dates.

1.  Preservation Issues - Untimely and Ineffective Litigation Hold

Plaintiffs asked Defendants whether there were any issues concerning Defendants' preservation of relevant documents and ESI, including for individual custodians. Defendants disclosed that Chegg maintained a document destruction policy pursuant to which all emails and Slack communications were automatically deleted after 120 days unless proactive steps, such as a litigation hold, were taken to preserve such communications. Defendants represented that a litigation hold was *not* put in place until "sometime" in January 2022, even though, Defendants acknowledged, the initial complaint in this case was filed December 22, 2021. Defendants further stated that the litigation hold only covered the Individual Defendants and certain other custodians, whom Defendants were unable to identify during the conference. Defendants further disclosed that the suspension of Chegg's document destruction policy did not occur *at all* for Slack communications. Defendants explained that a third-party, Exterro, was engaged to administer the litigation hold, and for some unspecified reason failed to implement the hold with respect to Slack data. As a result, all of Chegg's Slack communications (and any other Slack data) continued to be automatically deleted, even after Plaintiffs' complaint was filed, and even after Chegg purportedly implemented a litigation hold "sometime" in January 2022. Defendants did not specify whether a litigation hold was *ever* put in place for Slack communications, including through the present date. In terms of restoring deleted data, Defendants stated that neither Slack data nor emails could be

1

restored from any backup tape or archive, regardless of cost. Defendants (i) confirmed that no back-up data existed, anywhere, for emails that were deleted pursuant to Chegg's document destruction policy; and (ii) stated that they had not yet determined whether Slack had separately preserved deleted data or the reasons Exterro failed to implement the litigation hold, but were looking into these issues.

Defendants stated they would follow up with Plaintiffs as soon as possible regarding the following issues:

- the date the litigation hold was issued;
- the reasons Exterro failed to implement the litigation hold; and
- whether Slack separately preserved the deleted communications.

*We are deeply concerned about the above issues and will be in touch with Defendants about them separately. In that regard, we plan to provide Defendants with a list of questions regarding, inter alia, the timing, scope, and implementation of the litigation hold, and why it was not applied to Slack data.* ***In the meantime, please provide us with substantive responses to the three items above by COB tomorrow, April 26.***

2. Other Relevant ESI Sources – Methods of Communication

Plaintiffs inquired as to whether, apart from email and Slack, Chegg employees used any other platforms to communicate either internally or with Chegg Experts during the Class Period. Plaintiffs specifically identified a number of such platforms they understood were used for such communications, in particular, the WhatsApp application for communications involving Chegg Experts, as well as Yahoo/Google/Facebook groups, and individual logins to any Chegg platform provided to Chegg Experts. In response, Defendants represented that they were not aware of any Chegg sanctioned non-email communication platforms other than Slack, but would investigate whether any other platforms were used during the Class Period, including WhatsApp and the other methods described above.

Defendants agreed they would follow up with Plaintiffs as soon as possible regarding the following issue:

- The means by which Chegg communicated with Chegg Experts, including whether any non-email chat platforms such as WhatsApp, Yahoo, Facebook, or Google were used, as well as any individualized logins to any Chegg platform provided to Chegg Experts.

*We are surprised and concerned that Counsel was unable to identify the means by which Chegg communicated with Chegg Experts, particularly given (1) the nearly two-month period that Defendants claimed they needed to adequately prepare for the Rule 26(f) conference; (2) Defendants' assurance that they would be prepared to answer "every issue" at the conference; and (3) the central importance of Chegg Experts and the related "Expert Q&A" tool to this case, as we explained to you during the meeting.* ***Please let us know by COB tomorrow whether any such platforms existed, are capable of being searched, and of any preservation issues.***

2

Next, Plaintiffs asked whether Chegg issued cell phones, laptops, or other mobile devices to employees during the Class Period.  Defendants represented that (i) Chegg issued laptops to certain employees on an individual basis (*i.e.*, as opposed to all employees above a certain level or in certain departments); and (ii) Chegg only issued cell phones or tablets to a "handful" of employees during the Class Period – specifically, six employees received cell phones, including Defendant Rosensweig.

Defendants agreed they would follow up with Plaintiffs as soon as possible regarding the following issues:

- Identification of the individuals who received mobile devices from Chegg, the types of devices issued, and whether such devices and their contents were preserved and are capable of being searched.

Plaintiffs also inquired whether personal mobile devices were used by Chegg employees to communicate about company business, including text messages, Slack, or any other communications applications. Defendants represented that Defendant Rosensweig did not communicate about Chegg-related business via text or other messaging applications (other than Slack) – on either his Chegg-issued mobile phone or his personal mobile phone – and stated their belief that the same was true for the other Individual Defendants.

Defendants agreed they would be in touch with Plaintiffs as soon as possible regarding the following issue:

- Whether any of the Individual Defendants communicated about company business via text message or other applications on mobile devices, whether on their personal mobile devices or Chegg-issued mobile devices.

*Again, we are surprised and troubled that Defendants were unable to provide answers to such basic questions during the 26(f) conference, notwithstanding the nearly two-month period they had to prepare for the conference; their assurance that they would be prepared to answer "every issue"; and Plaintiffs' identification of key issues for Defendants to be prepared to address at the conference, including, specifically, "[m]obile phones, laptops, tablets, or other mobile devices, including the types of devices and applications used." **Please provide us with substantive responses to the above items by COB tomorrow.***

3. <u>Other Relevant ESI Sources – User Engagement of the Chegg Platform</u>

Plaintiffs next asked Defendants a series of questions regarding preservation of user engagement data for the Chegg platform, and whether such information was searchable. Defendants represented that multiple systems were used over the Class Period and that data migrated from system to system.  Defendants indicated that the data migrations between systems may have resulted in lost data, but were unable to provide any specific information, claiming they needed Plaintiffs' discovery requests to determine applicability.

*Again, we are surprised and troubled that Defendants were unable to provide answers to such basic questions during the 26(f) conference, including for the reasons set forth above.* **We have now served you with Plaintiffs' first set of requests for production and interrogatories, and request that you let us know whether there are any issues relating to the preservation or searchability of user metrics by May 1.**

4.  <u>Other Relevant ESI Sources – Complaints concerning Cheating on the Chegg Platform</u>

Plaintiffs asked Defendants whether complaints concerning cheating on the Chegg Platform were maintained in a folder or other centralized source.  Defendants identified "Service Now" tickets as a potential source of information concerning complaints involving cheating on Chegg but were unable to identify the specific information contained in that system.  Defendants confirmed there were no searchability limitations with respect to Service Now.

Defendants agreed they follow up with Plaintiffs as soon as possible regarding the following issues:

- What information was contained in Service Now.
- Whether there are any preservation issues concerning Service Now, including whether attachments to "tickets" created in the system have been retained.

**We ask that you provide us with this information by COB tomorrow.**

5.  <u>Search Methods/TAR</u>

Defendants declined to identify a single or specific search tool that they will be using to collect relevant documents, and stated that any such tool will be platform or ESI-repository specific.  Defendants confirmed they will not use TAR to collect documents but will consider using it for document review.

6.  <u>Organizational Charts</u>

Plaintiffs requested that Defendants provide organizational charts as of about the start of the Class Period and the end of the Class Period.  In response, Defendants asked Plaintiffs to provide specific departments for which they were seeking such information.  Based on our understanding of the current structure of the company, Plaintiffs believe organizational charts for the following units will assist in their identification of relevant custodians:

- Senior Management;
- Business & Analytics;
- Content & Services;
- Marketing & Communications;
- Legal & Finance; and
- Product Management.

***Please provide organizational charts for these units by COB tomorrow.*** Plaintiffs reserve the right to request additional organizational information after evaluating the materials Defendants provide.

7.    Discovery Plan – Threshold Dispute re: Start of Discovery

Plaintiffs asked Defendants whether they continued to maintain (based on counsels' prior discussions) that discovery should be stayed pending adjudication of Defendants' motion for leave to file a motion for reconsideration of the Court's March 4, 2024 order denying Defendants' motion to dismiss.  Defendants responded that they *may* consider providing *some* discovery while the Court considered their motion for leave (and if granted, their motion for reconsideration), but were unable to identify what discovery they were willing to provide at this time, and further stated that they needed to review Plaintiffs' discovery requests before providing their position on this threshold issue.

In response, Plaintiffs told Defendants that they would be serving written discovery requests shortly after the conference.  Plaintiffs specifically confirmed their position that *all* discovery should proceed at this time.  Plaintiffs next asked Defendants whether they intended to serve their initial disclosures within the 14-day period provided under the Federal Rules. Defendants represented that they were weighing various considerations and were not prepared to take a position on the issue at this time.

Defendants agreed they would follow up with Plaintiffs (1) no later than Thursday, April 25, as to whether they would be serving their initial disclosures within the 14-day timeframe specified in Rule 26(a)(1)(C); and (2) as soon as possible, after receiving Plaintiffs' discovery requests, of their position on whether any discovery (beyond the parties' initial disclosures) should proceed at this time—and if so, the scope of discovery Defendants will agree to provide.

*Again*, *we are deeply concerned that Defendants were unprepared to provide their positions on these fundamental issues, including with respect to the basic question of whether Defendants would serve their initial disclosures within the time period provided in the Federal Rules.  We are also troubled by Defendants' apparent change of position on this issue, after previously telling Plaintiffs that they did not intend to provide discovery pending adjudication of their then-anticipated motion for reconsideration.  As discussed, Defendants' inability to provide their position on this issue underscores the immediate need for a CMC pursuant to Rule 16(b).* ***We ask that Defendants provide us with their position regarding initial disclosures by today, April 25 (as agreed), and their position regarding whether any other discovery should proceed at this time—and if so, the scope of discovery Defendants agree to provide—by tomorrow, April 26.***

8.    Discovery Plan & Report – Other Issues

The parties agreed that rather than provide their respective views and proposals on other aspects of the discovery plan as provided under Rule 26(f)(3), Defendants would provide Plaintiffs with edits to the draft joint case management report Plaintiffs circulated back on April 4.  Plaintiffs noted that the draft report covered many of these topics, and requested that if Defendants believed

that a topic in the draft report was outside the scope of Rule 26(f) – such as a proposed case schedule that included a discovery completion date (as required by Rule 26(f)(3)(B) as well as additional key dates typically included in such reports (*e.g.*, deadlines for class certification or summary judgment, even if technically not required by Rule 26(f)(2)), Defendants *not strike the entire provision included in Plaintiffs' draft report*, but rather include a statement of Defendants' position on the issue (for example, that Defendants believed it was not necessary or was premature to include certain information at this time).

*You have now had three weeks to provide edits and comments on the draft joint case management report that we sent you on April 4.* **We ask that you provide us with your edits to the draft joint report no later than COB tomorrow, April 26.**

9.   The Scope of Cooley's Representation in This Matter

Defendants confirmed that Cooley does not presently represent any former Chegg employees (*e.g.*, from whom discovery may be sought), but that Plaintiffs should proceed on the assumption that Cooley will represent all current and former Chegg directors in connection with any discovery requests in this case. Plaintiffs will comply with their ethical obligations regarding former Chegg employees that Cooley does not represent. We request that you immediately inform us if you are retained by any former employees.

10.  Joint Letter Brief Requesting a CMC and Resolution of the Parties' Threshold Dispute Regarding the Start of Discovery

Plaintiffs informed Defendants of their intent to file a joint letter brief with Judge Pitts requesting a CMC pursuant to Rule 16(b) and further requesting that the Court resolve the threshold dispute between the parties of whether discovery should proceed at this time. Defendants stated that they were not necessarily opposed to having an initial CMC at this time, but felt the parties needed more "back-and-forth to crystallize the issues." In response, we reiterated our position that *all* discovery should proceed now given Judge Pitts's motion to dismiss decision, as provided under the Federal Rules and the PSLRA. Plaintiffs informed Defendants that they expected to file the joint letter brief with the Court by the end of this week or early next week, and that we anticipated providing Defendants with Plaintiffs' portion of the brief shortly.

We look forward to promptly receiving your responses to the open items and your comments on Plaintiffs' draft joint case management statement.

Sincerely,


s/ David R. Kaplan                               s/ Max Gruetzmacher
David. R. Kaplan                                 Max Gruetzmacher
SAXENA WHITE P.A.                               MOTLEY RICE LLC


6