COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
10265 Science Center Drive
San Diego, CA 92121
Telephone:    +1 858 550 6000
Facsimile:    +1 858 550 6420

Attorneys for Defendants Chegg, Inc., Daniel L.
Rosensweig, Andrew J. Brown, and Nathan Schultz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF MOTION TO DISMISS ORDER, OR IN THE ALTERNATIVE, TO CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL**<br><br>Date:        June 6, 2024<br>Time:       10:00 a.m.<br>Dept:       Courtroom 8<br>Judge:      P. Casey Pitts |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     THE COURT SHOULD REVERSE THE ORDER UPON RECONSIDERATION......... 2

    A.      The Court Did Not Require Plaintiffs to Plead Particularized Facts to Substantiate Their Theory of Fraud ........................................................................ 4

    B.      The Court Misapplied the Scienter Standard ......................................................... 7

    C.      The Court Did Not Require Plaintiffs to Plead Particularized Facts to Substantiate Their Loss Causation Theory ........................................................... 9

III.    ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL ................................................................................. 13

    A.      There is a Controlling Question of Law................................................................ 13

    B.      There is a Substantial Ground for Difference of Opinion..................................... 13

    C.      Resolution in Defendants' Favor Would Materially Advance the Litigation ....... 15

IV.     SANCTIONS ARE UNWARRANTED .................................................................... 15

V.      CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
2022 WL 1750033 (N.D. Cal. May 31, 2022) .......................................................... 11

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
2006 WL 2850017 (N.D. Cal. Oct. 4, 2006)........................................................... 13

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F.Supp.2d 1043 (C.D. Cal. 2012)..................................................................... 7

*Amor Ministries v. Century Sur. Co.*,
2015 WL 11251726 (S.D. Cal. June 3, 2015)......................................................... 13

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) .................................................... 2, 8, 9

*Best Carpet Values, Inc. v. Google LLC*,
Case No. 5:20-cv-04700-EJD ................................................................................ 15

*Bettencourt v. Parker*,
2021 WL 6284109 (E.D. Cal. Dec. 14, 2021).......................................................... 13

*In re BofI Holding, Inc. Securities Litigation*,
977 F.3d 781 (9th Cir. 2020)................................................................ 2, 10, 12, 14

*In re Cement Antitrust Litig. (MDL No. 296)*,
673 F.2d 1020 (9th Cir. 1981)................................................................................ 13

*Cheng v. Activision Blizzard, Inc.*,
2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) ...................................................... 7, 8

*Corcera Sols., LLC v. Razor, Inc.*,
2014 WL 4792548 (N.D. Cal. Sept. 24, 2014) ........................................................ 3

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)................................................................................... 14

*Curry v. Yelp Inc.*,
2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) ........................................................ 11

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017)................................................................................ 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................ 11

*Erdman v. Nationwide Ins. Co.*,
621 F.Supp.2d 230 (M.D. Pa. 2007), *aff'd*, 582 F.3d 500 (3d Cir. 2009)................................ 3

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024)................................................................... 2, 8, 10, 14

*In re Facebook, Inc. Sec. Litig*,
87 F.4th (9th Cir. 2023) ...................................................................................... 11

*Garcia v. City of Napa*,
2014 WL 342085 (N.D. Cal. Jan. 28, 2014) ......................................................... 3, 5

*Glazer Cap. Mgmt., L.P. v. Forescout, Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)............................................................................... 5, 10

*Hamano v. Activision Blizzard, Inc.*,
2019 WL 7882076 ..................................................................................... 3, 4, 5

*Hoffman v. Am. Soc'y for Technion-Israel Inst. of Tech., Inc.*,
2013 WL 1293420 (S.D. Cal. Mar. 27, 2013) ........................................................ 3

*Huang v. Avalanche Biotechnologies, Inc.*,
2016 WL 6524401 (N.D. Cal. Nov. 3, 2016)........................................................... 6

*In re Impax Lab'ys, Inc. Sec. Litig.*,
2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ........................................................ 3, 4

*Inchen Huang v. Higgins*,
443 F.Supp.3d 1031 (N.D. Cal. 2020) ................................................................. 11

*In re Intuitive Surgical Sec. Litig.*,
2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) ........................................................ 7

*Kowalsky v. Hewlett-Packard Co.*,
771 F.Supp.2d 1156, 1159 (N.D. Cal. 2011) ........................................................ 3

*Lloyd v. CVB Financial Corp.*,
811 F.3d 1200 (9th Cir. 2016)............................................................... 2, 9, 14

*In re Longfin Corp. Sec. Class Action Litig.*,
2019 WL 3409684 (S.D.N.Y. July 29, 2019) ...................................................... 4, 5

*Loos v. Immerson Corp.*,
762 F.3d 880 (9th Cir. 2014).............................................................................. 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)............................................................................. 7

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018).............................................................................. 13

*Mulquin v. Nektar Therapeutics*,
510 F.Supp.3d 854, 873 (N.D. Cal. 2020) .................................................................. 11

*In re Nektar Therapeutic Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ....................................................................... 6, 7, 11

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
730 F.3d 1111 (9th Cir. 2013) ................................................................................ 10

*Pang v. Levitt*,
2024 WL 2108842 (W.D. Tex. Apr. 22, 2024) ........................................................ 4

*In re Peregrine Sys., Inc. Sec. Litig.*,
2005 WL 8158825 (S.D. Cal. 2005) ......................................................................... 8

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) .................................................................................... 4

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ............................................................................ 13, 14

*Reese v. Browne*
2009 WL 10668680 (W.D. Wash. July 1, 2009), *rev'd and remanded sub nom.*
*Reese*, 643 F.3d 681 ............................................................................................. 14

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .................................................................................... 8

*Robb v. Fitbit Inc.*,
2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ............................................................ 7

*Rodriguez v. Mondelez Glob. LLC*,
2024 WL 1361892 (S.D. Cal. Mar. 29, 2024) ......................................................... 5

*Rok v. Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v.*
*Identiv, Inc.*, 716 F.App'x 663 (9th Cir. 2018) ...................................................... 11

*Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) ...................................................................................... 3

*SEC v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010) .................................................................................. 9

*Smilovits v. First Solar Inc.*,
119 F.Supp.3d 978 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension*, 881
F.3d 750 ................................................................................................................. 14

*Sneed v. AcelRx Pharms., Inc.*,
2024 WL 2059121 (N.D. Cal. May 7, 2024) ........................................................... 9

REPLY ISO MOT. FOR RECONSIDERATION OR TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) ............................................................. 9

*In re WageWorks*,
    2020 WL 2896547 (N.D. Cal. June 1, 2020) ............................................................ 11

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
    694 F.Supp.2d 1192 (W.D. Wash. 2009) .................................................................... 7

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ....................................................................................... 6

*Zishka v. Am. Pad & Paper Co.*,
    2001 WL 1645500 (N.D. Tex. Dec. 20, 2001), *aff'd*, 72 F.App'x 130 (5th Cir.
    2003) .......................................................................................................................... 4

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5 .......................................... 12

**Other Authorities**

Fed. R. Civ. Pro. 54(b) ..................................................................................................... 3

Civ. L.R. 7-9 .................................................................................................................. 15

Fed. R. Civ. Pro. 9(b) ..................................................................................................... 14

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................ 3

Fed. R. Civ. Pro. 26(f) ................................................................................................ 3, 15

REPLY ISO MOT. FOR RECONSIDERATION OR TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP

## I.    INTRODUCTION

The Opposition does not directly address or defend the manifest errors in the Court's Order[1] that compel reconsideration.  Plaintiffs ignore the Order's erroneous holdings with respect to falsity, scienter, and loss causation.  And they do not dispute that the Order even misstated a Ninth Circuit decision as the basis for its loss causation holding.  Instead, and because they have no persuasive response, Plaintiffs inappropriately question Defendants' motives for filing the Motion and falsely accuse Defendants of delay, spoliation, and other conduct that is outside of the scope of this Motion.  But these wild attempts to distract from the Motion do not excuse the Order's misapplication of the PSLRA's strict pleading standards, nor the need for reversal.  The Court should dismiss the Complaint upon reconsideration.

First, Plaintiffs do not address or defend the Order's holding that the Complaint "need only demonstrate with particularity that there was substantial cheating on the platform."  (Order at 8.) The omission is telling, as this was a key focus of Defendants' Motion.  (Mot. at 1, 6, 8.)  Nor do Plaintiffs contest that "substantial cheating" is different than their theory that (1) cheating materially "increase[ed]" during the class period *and* that (2) such increase in cheating "fueled" revenue and subscriber growth.  And they fail to reconcile the Order's conclusions with the Court's suggestion at the hearing that there is a "black hole" between alleged cheating and growth. (Tr. at 41.)  Plaintiffs argue that Defendants are asking "Plaintiffs [to] prove their case at the start." (Opp. at 8.)  But this is a red herring:  Defendants only ask that the Court properly apply the PSLRA's heightened pleading standards and require particularized facts to substantiate each part of the theory *Plaintiffs put at issue*.  When these "formidable" standards are properly applied to Plaintiffs' theory, the Complaint must be dismissed.

Second, Plaintiffs do not even try to defend the Order's finding of a strong inference of scienter based on "Chegg's *knowledge about cheating on its platform*."  (Order at 12.)  Plaintiffs

---

[1] All capitalized terms are defined as stated in Defendants' Motion for Leave to Seek Reconsideration or to Certify Order for Interlocutory Appeal (the "Motion for Reconsideration" or "Motion"), unless defined otherwise herein.  All references to "Mot.__" are to the Motion for Reconsideration.  All references to "Opp.__" are to the Plaintiffs' Opposition to Defendants' Motion for Leave to Seek Reconsideration of Motion to Dismiss Order, or in the Alternative, to Certify the Order for Interlocutory Appeal, filed May 13, 2024 (ECF No. 160) (the "Opposition"). All emphasis added and internal citations and quotations omitted, unless otherwise noted.

argue that "there are specific allegations of the Individual Defendants' first-hand knowledge *that cheating was driving subscriber growth*." (Opp. at 12.) But that is not what the Order held, and tellingly, Plaintiffs do not cite a single paragraph from their Complaint to support this assertion – because there are none. At bottom, Plaintiffs neither deny nor defend the Order's failure to address the core scienter inquiry – namely, whether each defendant knew, believed, or must have been aware that they were misleading investors. *See Espy v. J2 Global, Inc.*, 99 F.4th 527, 538-39 (9th Cir. 2024); *Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at \*14 (N.D. Cal. Apr. 2, 2024).

Third, Plaintiffs do not dispute that the Order misstated the Ninth Circuit's holding in *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016), as the basis for its loss causation holding. Nor do they contest that the Complaint relies solely on non-particularized analyst speculation in an effort to plead loss causation. Plaintiffs cite *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781 (9th Cir. 2020) for the proposition that loss causation requires only "notice" pleading. But the Ninth Circuit has made clear – including within the last few weeks – that plaintiffs must substantiate plausible loss causation theories with particularized facts.[2] *Espy*, 99 F.4th at 540. This standard is not satisfied by relying on conclusory analyst reports.

This case is not about whether cheating occurred on Chegg's platform. It is about whether an increase in cheating drove Chegg's growth in 2020 and 2021, and whether Chegg later revised its guidance because cheating had decreased when students returned to campus. The Order did not properly apply the PSLRA's heightened pleading standards because it incorrectly focused on whether cheating occurred and then improperly filled in the gaps with inferential leaps and assumptions. The Court should reverse the Order and/or certify its Order for interlocutory appeal.

## II.    THE COURT SHOULD REVERSE THE ORDER UPON RECONSIDERATION

Plaintiffs claim that reconsideration is an "extraordinary" remedy that should be used "sparingly," suggesting an unduly high standard.[3] (Opp. at 4.) But their own cases acknowledge

---

[2] In the alternative, if the Court believes there is any ambiguity as to the appropriate loss causation pleading standard (which there is not), it should certify an interlocutory appeal on the issue.

[3] In a similar attempt to escape reversal, Plaintiffs claim that Defendants did not exercise "reasonable diligence" because of the 49 days between the Order and the filing of the Motion for Reconsideration. (Opp. at 5.) But Plaintiffs ignore that the "reasonable diligence" requirement is

that when a court makes an error, it has full discretion to correct it, as it should in this case. *Garcia v. City of Napa,* 2014 WL 342085, at \*1 (N.D. Cal. Jan. 28, 2014) (citing *Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993)). Indeed, as Plaintiffs concede in the Opposition, "[t]he decision on a motion for reconsideration lies in the court's sound discretion." *Hoffman v. Am. Soc'y for Technion-Israel Inst. of Tech., Inc.*, 2013 WL 1293420, at \*2 (S.D. Cal. Mar. 27, 2013); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F.Supp.2d 1156, 1159 (N.D. Cal. 2011) (exercising "discretion to revise its prior order; see Fed. R. Civ. Pro. 54(b), and grant[ing] [defendant's] motion for reconsideration"); *Corcera Sols., LLC v. Razor, Inc.*, 2014 WL 4792548, at \*1 (N.D. Cal. Sept. 24, 2014) ("[W]hether or not to grant reconsideration is committed to the sound discretion of the court"). Accordingly, courts may reconsider their prior orders without any appellate-type deference to their prior decision. *In re Impax Lab'ys, Inc. Sec. Litig.*, 2008 WL 1766943, at \*2 (N.D. Cal. Apr. 17, 2008) (conducting "*de novo*" review of defendants' motion to dismiss a securities class action upon reconsideration, "appl[ying] the Rule 12(b)(6) standards previously articulated in [the challenged order]."); *see also Erdman v. Nationwide Ins. Co.*, 621 F.Supp.2d 230, 233 (M.D. Pa. 2007), *aff'd*, 582 F.3d 500 (3d Cir. 2009) ("the standard of review for a motion for reconsideration relates back to the standard applicable in the underlying decision.")

Using their discretion, courts from around the country have reconsidered and reversed denials of motions to dismiss in securities class actions where they misapplied the pleading standards. For example, in *Hamano v. Activision Blizzard, Inc.,* the court granted defendants' motion for reconsideration and dismissed the complaint because "the Court misapplied the

---

a prerequisite for the Court granting leave to file the motion. (Civ. L.R. 7-9.) Because the Court granted leave, this gripe is irrelevant. The argument also rings hollow given Plaintiffs' failure to explain how those 49 days prejudiced them in any way, which is what courts focus on when evaluating reasonable diligence. (*See* Mot. at 16.) Nor do Plaintiffs acknowledge that during those 49 days, there was no case schedule, Defendants prepared an answer (ECF No. 156) to the Complaint, negotiated e-discovery stipulations, and participated in a Rule 26(f) conference that Plaintiffs now try to improperly use against Defendants. (*See* Decl. of David Kaplan, ECF No. 160-1.) And while they claim that Defendants cited three new cases as pretext for an alleged delay, they ignore that Defendants took additional time to incorporate those cases into its analysis. (Opp. at 6.) Indeed, those cases further emphasize that reversal is appropriate here.

[scienter] standard" by not appropriately weighing competing inferences of good faith.[4]  2019 WL 7882076, at *1 (C.D. Cal. Oct. 17, 2019).  And just last month in *Pang v. Levitt,* the court dismissed the complaint upon reconsideration because it ultimately determined that plaintiffs' theory of falsity did not meet the PSLRA's heightened pleading standards.  2024 WL 2108842, at *6 (W.D. Tex. Apr. 22, 2024).  Similarly, in *Impax*, this court dismissed a complaint upon reconsideration because it misapplied the loss causation standard, which impacted the plaintiff's standing to sue.  2008 WL 1766943, at *9; *see also In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 3409684, at *4 (S.D.N.Y. July 29, 2019) ("Upon re-examination of these allegations, combined with the additional allegations contained in the SAC, the plaintiffs have not adequately alleged scienter."); *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1645500, at *5 (N.D. Tex. Dec. 20, 2001), *aff'd*, 72 F.App'x 130 (5th Cir. 2003) (granting reconsideration based on a new Fifth Circuit case addressing the scienter standards).

Ignoring these cases, Plaintiffs invoke a dramatic analogy to a "five-week-old, unrefrigerated dead fish."  (Opp. at 4 (citing *Prete v. Bradbury*, 438 F.3d 949, 968 n.23 (9th Cir. 2006) (evaluating factual dispute surrounding motion to intervene and a challenge to a state ballot measure under the First Amendment).)  But that case involved the appellate review of a factual question under a "clearly erroneous" standard – one that is not remotely relevant here.  Notably, the court in *Bradbury* mentioned that the appropriate appellate standard of review for conclusions of law – like the ones at issue here – is *de novo*.  *Id*. at 960.  Distinct from the appellate deference to the lower court in *Bradbury*, here, the Court has discretion to reverse its order if it determines it got it wrong the first time.  *See Impax*, 2008 WL 1766943, at *9.  And unlike the cases Defendants cite that granted reconsideration of motions to dismiss securities cases, Plaintiffs cite a hodgepodge of irrelevant cases, in random contexts, that have no bearing on the Motion.  (Opp. at 4.)

## A.  The Court Did Not Require Plaintiffs to Plead Particularized Facts to Substantiate Their Theory of Fraud

Plaintiffs are wrong that Defendants merely "disagree" with the Order and "restate previous arguments."  (Opp. at 7.)  Rather, the Motion pinpoints language from the Order showing that the

---

[4] Plaintiffs' observation that there was no written motion to dismiss order in *Activision* is irrelevant, as that case makes clear that when courts misapply the pleading standard, it should correct the error, regardless if there is a prior written order or not.  *See* 2019 WL 7882076, at *3

Court misapplied the PSLRA's heightened pleading standard by conflating plausibility with particularity – a clear basis for reconsideration. *See Hamano,* 2019 WL 7882076, at *1; *see also Longfin*, 2019 WL 3409684, at *4. Nonetheless, Plaintiffs cite two cases for the proposition that Defendants cannot reargue their motion to dismiss, but these cases are irrelevant and inapposite. *Garcia*, 2014 WL 342085, at *1 (denying reconsideration because moving party did not even attempt to identify an error in the order); *Rodriguez v. Mondelez Glob. LLC*, 2024 WL 1361892, at *2 (S.D. Cal. Mar. 29, 2024) (denying reconsideration because defendant improperly assumed that the court misread product label as opposed to identifying clear error in order). In fact, both cases reiterate that reconsideration is warranted when there is an error and neither argued that the court misapplied the pleading standards. *Id*.

Here, the Order held that Plaintiffs alleged particularized facts demonstrating "substantial cheating on the [Chegg] platform." (Order at 8.) Based on this finding, and without requiring any particularized facts in support, the Court drew "inferences" based on unalleged "circumstantial evidence" to conclude that it was possible that increased cheating fueled revenue and subscriber growth. (*Id.* at 5, 8.) But as Defendants argued (and as Plaintiffs do not dispute) – Plaintiffs' theory is not just that there was "substantial cheating on the [Chegg] platform." Their theory is that (1) cheating on Chegg's platform "increase[d]" ***and*** (2) subscriber and revenue growth was "***directly attributable***" to the alleged increases in cheating. (¶ 176.) By using inferences to bridge the gap between "substantial cheating on the platform" and "cheating drove revenue and subscriber growth," the Court conflated plausibility with particularity. This was manifest error. *Glazer Cap. Mgmt., L.P. v. Forescout, Techs., Inc.*, 63 F.4th 747, 778 (9th Cir. 2023) ("Plaintiffs confuse *particularity* (the level of detail required in the allegations) with *plausibility* (the strength of the inference that an element of the claim is satisfied based on the facts alleged.")).

Plaintiffs do not attempt to address or defend the Court's misapplication of law on this point. Nor do they contend that "substantial cheating" is the same as cheating driving growth. And they do not substantively address Defendants' assertion that the Court conflated plausibility and particularity. (Opp. at 7; Mot. at 6.) Instead, Plaintiffs claim that Defendants' argument "is nothing more than a thinly veiled contention that Plaintiffs must prove their case at the start." (Opp. at 8.)

Not so. Defendants are only asking that the Court require Plaintiffs to plead particularized facts to support each part of ***the theory they put at issue***, as mandated by Congress. Tellingly, Plaintiffs do not even attempt to distinguish *Weston v. Twitter*, *In re Nektar*, and *Huang v. Avalanche*, which hold that courts may not make inferential leaps, "assumptions," or "connect the dots" to find a theory adequately pled, even when such theory is plausible. *See In re Nektar Therapeutic Sec. Litig.*, 34 F.4th 828, 832 (9th Cir. 2022) (rejecting plaintiffs' theory "without specific allegations to connect the dots"); *Huang v. Avalanche Biotechnologies, Inc.*, 2016 WL 6524401, at *6 (N.D. Cal. Nov. 3, 2016) (finding a "possible correlation" insufficient to "connect[] the dots" to support a "plausible inference"); *see also Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022) (declining to "assume or implausibly infer" that defendants had knowledge based on later developed facts). For example, the Ninth Circuit held in *Weston* that it was plausible Twitter knew about software bugs six days earlier, but affirmed dismissal because there were insufficient facts to substantiate that conclusion. 29 F.4th at 622. Similarly, in *Avalanche*, the court found it plausible that the company received clinical trial data during the class period based on timelines in the trial protocol but dismissed the case because there were insufficient facts showing the company actually had the data. 2016 WL 6524401, at *7. And in *Nektar*, the plaintiffs failed to substantiate assumptions made by a statistical expert regarding the significance of clinical data. 34 F.4th at 837. Unlike the courts in *Weston*, *Avalanche,* and *Nektar*, the Court here impermissibly relied on inferential leaps, assumptions, and connected dots, as opposed to requiring particularized facts to substantiate each part of Plaintiffs' fraud theory.

Moreover, the inferential leaps made in the Order contradict the Court's observation at the hearing that there is a "black hole" between allegations of cheating and allegations of growth – the core tenet of Plaintiffs' fraud theory. (Tr. at 41.) And while Plaintiffs argue in a conclusory fashion that the "[o]rder devotes three pages to the abundant 'evidence' cited in plaintiffs' complaint'," they ignore that those three pages address allegations of cheating as opposed to subscriber and revenue growth. (Opp. at 9.) Nor do they defend the Court's reasoning that "from the FE testimony the Court can reasonably infer that cheating on Expert Q&A drove Chegg's revenue and subscriber growth." (Order at 8.) In fact, Plaintiffs do not even attempt to address Defendants' argument or

the Ninth Circuit cases they cite demonstrating that the former employee conclusions about Expert Q&A being the "cheating business," etc., are "vague and hyperbolic" assertions amounting to nothing more than "conclusory adjectives [that] do not meet the PSLRA's heightened pleading requirements." *Nektar,* 34 F.4th at 837 (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008)).

Plaintiffs' cases hold no different, as they involve very detailed factual allegations about the precise information communicated to individual defendants to substantiate each part of plaintiffs' fraud theory, way beyond the conclusory, speculative, and hyperbolic former employee accounts alleged here. (Opp. at 9); *In re Intuitive Surgical Sec. Litig.*, 2014 WL 7146215, at *5 (N.D. Cal. Dec. 15, 2014) (former employees alleged that the individual defendants told them the precise number of adverse events at issue – the purportedly omitted information – and discussed those adverse events at meetings); *Robb v. Fitbit Inc.*, 2017 WL 219673, at *8 (N.D. Cal. Jan. 19, 2017) (plaintiffs alleged contents of reports containing information about alleged inaccuracy of heartrate monitors based on allegations attributed to the former employee who generated the reports and presented them to the individual defendant); *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F.Supp.2d 1192, 1222 (W.D. Wash. 2009) (detailed allegations of a material GAAP violation sufficient to allege a Section 11 claim where plaintiffs did not state the exact amount that an allowance was understated).

**B.      The Court Misapplied the Scienter Standard**

The Court should also reverse the Order because it misapplied the scienter standard, which requires particularized facts creating a strong inference that "when defendants made the allegedly false statements, *they knew they were false*, or *knew facts 'so obvious that they must have been aware' that they were misleading the public.*" *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *11 (C.D. Cal. Apr. 18, 2022); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F.Supp.2d 1043, 1076 (C.D. Cal. 2012) (plaintiffs must "state specific facts indicating no less than a degree of recklessness that strongly suggests *actual intent*.") Plaintiffs do not address or defend the Order's holding that scienter was adequately pled based on "Chegg's [alleged] knowledge about cheating on its platform" – a holding that reflects manifest error. (Order at 12.) Nor do Plaintiffs

contend that "knowledge of cheating on its platform" establishes that each defendant made statements with an intent to defraud or with deliberate recklessness. *See In re Peregrine Sys., Inc. Sec. Litig.,* 2005 WL 8158825, at *44 (S.D. Cal. 2005) (knowledge of a purportedly omitted fact "is not sufficient to demonstrate that the defendant *intentionally withheld* those facts from, or *recklessly disregarded* the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud."); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (no scienter because no allegations that defendants believed they were misleading investors).

Here, the Order did not evaluate whether the Complaint alleged with specificity what each defendant knew, believed, and interpreted at the time each challenged statement was made. Nor did it evaluate whether any defendant "knew" a statement they made was false when they made it, believed any statement they made was misleading investors, or whether it was "so obvious that they must have been aware" each statement they made misled investors. *Cheng*, 2022 WL 2101919, at *11. The Opposition confirms these clear errors. While Plaintiffs insist that the Court evaluated Defendants' mental state at the time each challenged statement was made, Plaintiffs only point to allegations about purported cheating, not its impact on growth: a single email to Rosensweig from a university about a cheating incident, "discussions about cheating" at meetings, awareness of a Forbes article discussing alleged cheating, and Chegg's public statements addressing cheating. (Opp. at 10-11.) ***None*** of these allegations, either taken individually or holistically, relate to discussions about subscriber and revenue growth, whether each defendant believed cheating was "rampant," any alleged cheating "fueled" subscriber or revenue growth as opposed to other factors, or whether they were misleading investors.

Recognizing that "knowledge about cheating" is insufficient to raise a strong inference of scienter, Plaintiffs claim that "there are specific allegations of the Individual Defendants' first-hand knowledge that cheating was driving subscriber growth." (Opp. at 12.) But Plaintiffs fail to include ***any*** supporting citations because there are none. Nor do they credibly address the recent *Espy* or *Revance* cases which are instructive with respect to scienter. (Opp. at 12-13). Instead, they argue that neither case signals an intervening change in law, which is irrelevant. Defendants cited these cases because, contrary to the Order, they make clear that mere knowledge of purportedly omitted

information (like cheating) is insufficient to raise a strong inference of scienter. For example, Plaintiffs admit that the *Revance* court dismissed the complaint on scienter grounds because "Plaintiffs have not pointed to any evidence that Defendants **believed** that FDA approval was unlikely or would be delayed because of the deficiencies."[5] *Id.* Like in *Revance*, here, "Plaintiffs have not pointed to any evidence that Defendants believed that [alleged cheating drove growth]." *Aramic*, 2024 WL 1354503, at *13; *see Sneed v. AcelRx Pharms., Inc.*, 2024 WL 2059121, at *11 (N.D. Cal. May 7, 2024) ("Defendants' awareness of FDA regulations and their work with the FDA in developing [a drug safety program] do not strongly imply that they knew any specific statement…was false at the time it was made."). The Order should be reversed on this basis.

**C.      The Court Did Not Require Plaintiffs to Plead Particularized Facts to Substantiate Their Loss Causation Theory**

Plaintiffs' loss causation theory is that Chegg revised its FY'21 guidance in November 2021 because students returned to campus and could not cheat anymore, which slowed growth, and the stock dropped as a result of the revised guidance. (¶¶ 169-71.) Instead of requiring particularized facts to substantiate this theory, as required by the Ninth Circuit, the Court relied on speculation from Forbes and one analyst. (Order at 13-14.) As the Order's sole basis for its holding, it states that "[t]he Ninth Circuit has held that when 'analysts note[] the probable relationship between' alleged misstatements and a stock price decline, plaintiffs have adequately pled loss causation. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1202 (9th Cir. 2016)." (Order at 14.) This was manifest error, as Plaintiffs do not even dispute that the Order misstated *Lloyd's* holding. Nor do they contest that *Lloyd* actually centered around whether the announcement of an investigation can form the basis of a loss causation theory where the company makes a subsequent announcement revealing wrongdoing – not analyst speculation. *Id.*

---

[5] Plaintiffs suggest in a footnote that subjective beliefs of defendants are irrelevant and sorely mischaracterize two cases as support. (Opp. at 8 n.6.) The two cases involved motions for summary judgment where defendants submitted declarations saying that they did not believe they were investors – the courts held that because the declarations were self-serving and potentially not credible, there was still a factual dispute as to whether defendants believed they were misleading investors when making the challenged statements. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094-95 (9th Cir. 2010); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *14 (N.D. Cal. Apr. 17, 2020). Those cases do not hold that Plaintiffs do not have to plead particularized facts showing that defendants knew a statement was false or believed or must have known they were misleading investors.

Indeed, rather than defending the Order on its own terms, Plaintiffs argue that they have adequately alleged loss causation, but for reasons not reflected in the Court's Order. This effort fails for a number of reasons.

First, Plaintiffs improperly attempt to lower the pleading standard for loss causation from "particularity" to just "notice of plaintiffs' loss causation theory." (Opp. at 14.) As their primary support, they cite the Ninth Circuit's decision in *BofI*, which does not help them. There, the Court held that articles and short seller reports at issue in the case were ***insufficient*** to adequately plead loss causation. *BofI*, 977 F.3d at 797. But it held that loss causation was adequately pled based on a complaint containing "descriptions of wrongdoing [that were] highly detailed and specific, and they are based on firsthand knowledge that the [company's auditor] could reasonably be expected to possess by virtue of his position." *Id.* at 792. In other words, the Court required particularized facts to substantiate the plaintiffs' loss causation theory.

Consistent with *BofI*'s holding, the Ninth Circuit just reiterated that a plaintiff "must allege ***with particularity*** facts plausibly suggesting that a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatements, and that disclosure caused the company's stock price to decline." *Espy*, 99 F.4th at 540; *see also Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013) (To plead loss causation, plaintiffs must show that "it was the very facts about which the defendant [allegedly] lied which caused its injuries."). This standard is similar to that articulated in *Glazer* with respect to falsity – that plausible theories of fraud must be substantiated with particularized facts. *See Glazer,* 63 F.4th at 778. Recognizing that loss causation is not a given at the pleading stage, the Ninth Circuit in *Espy* affirmed dismissal on loss causation grounds even though the district court did not dismiss on that basis. There, plaintiffs alleged defendants concealed the underperformance of two acquired assets and that the alleged truth was revealed by a short seller report that criticized defendants for using improper accounting. *Espy*, 99 F.4th at 540-41. The Court held that the short seller report's "generalized criticism" was insufficient to plead particularized facts connecting the accounting practices to the two acquired assets – the alleged fraud. *Id.* at 541. Based on this heightened standard, courts within the Ninth Circuit routinely dismiss complaints on loss causation grounds.

*See e.g.*, *Inchen Huang v. Higgins*, 443 F.Supp.3d 1031, 1058 (N.D. Cal. 2020) (no loss causation where plaintiffs failed to adequately plead company revised guidance because of off-label marketing); *Mulquin v. Nektar Therapeutics*, 510 F.Supp.3d 854, 873 (N.D. Cal. 2020), *aff'd sub nom. In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828 (9th Cir. 2022); *see also Curry v. Yelp Inc.,* 2015 WL 1849037, at *10 (N.D. Cal. Apr. 21, 2015); *Rok v. Identiv, Inc.,* 2017 WL 35496, at *20 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F.App'x 663 (9th Cir. 2018).

The cases relied upon by Plaintiffs in an attempt to lower the loss causation pleading standard are inapposite.  For example, in *Facebook*, the Ninth Circuit actually notes that "loss causation requires more than an earnings miss or the market's reaction to a company's poor financial health generally."  *In re Facebook, Inc. Sec. Litig*, 87 F.4th, 934, 955 (9th Cir. 2023). Similarly, the corrective disclosures in *Abadilla v. Precigen, Inc.*, 2022 WL 1750033, at *2, 10 (N.D. Cal. May 31, 2022) and *In re WageWorks*, 2020 WL 2896547, at *8 (N.D. Cal. June 1, 2020) mirrored the allegedly omitted information unlike the revised guidance at issue here.  And in *Dura Pharmaceuticals, Inc. v. Broudo*, the Supreme Court did not even analyze corrective disclosures; instead plaintiffs relied only on allegations of "artificially inflated purchase price" to plead loss causation, which the Supreme Court found "legally insufficient."  544 U.S. 336, 347-48 (2005).

Second, Plaintiffs confirm that they rely on analyst commentary to plead that Chegg revised FY'21 revenue guidance because of cheating as opposed to other reasons.  (Opp. at 15.)  But they now claim that "at least eight sophisticated market analysts and major financial media outlets expressly rejected Defendants' excuse of fewer college enrollments and instead linked Chegg's declining growth, financial outlook, and stock price plunge to the widespread resumption of on campus learning, which limited Chegg's utility as a cheating tool."  (Opp. at 15.)  This completely distorts the Complaint and is not true.  Only one of these sources even referenced cheating, a Forbes article, and that is insufficient, as the article does not conclude that Chegg revised its guidance because of cheating.  (*See* Mot. at 15.)  Much less does the article contain particularized facts connecting the revised guidance to alleged cheating.  (*Id*.)  As for the seven other analysts Plaintiffs point to in their Opposition, the Complaint merely alleges that they downgraded Chegg's stock,

with **no** explanation whatsoever as to why they chose to downgrade the stock. (¶ 170.) Indeed, the Complaint does not claim that any of the analysts used the word "cheat" or "cheating" in their reports or otherwise connected the revised guidance to allegedly concealed cheating. Plaintiffs cannot plead loss causation by speculating as to whether analysts believed Defendants' explanation for revised guidance and slower subscription growth. *See Loos v. Immerson Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) (announcement of an investigation insufficient to plead loss causation because such an announcement did not reveal any facts that could call into question the veracity of the company's prior statements—all the market could react to was "speculation" about "what the investigation w[ould] ultimately reveal"); *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017) (rejecting loss causation allegations that rested on complaints by customers with no firsthand knowledge and plaintiffs' assertions "that where there is smoke, there must be fire."). And while Plaintiffs claim that their theory "is based not on speculation, but on numerous, specific allegations showing the growth of cheating supported Chegg's financial growth," (Opp. at 21), they identify no particularized facts showing that Chegg revised its guidance because of cheating.

Further, Plaintiffs do not credibly distinguish *In re Ocera Therapeutics, Inc. Securities Litigation* and *In re Wet Seal, Inc. Securities Litigation*, which hold that analyst speculation does not constitute particularized facts under the PSLRA. *Ocera,* 806 F.App'x 603 (9th Cir. 2020); *Wet Seal,* 518 F.Supp.2d 1148 (C.D. Cal. 2007). They quibble that the analyst reports in *Ocera* addressed whether a stock lost value as opposed to other opinions about the company. (Opp. at 21.) This is a distinction without a difference because the court found analyst opinions "too speculative to plead with particularity that shareholders experienced losses—or to plead with particularity that the required causal relationship existed between Ocera's purported misrepresentations or omissions and those losses." *Ocera*, 806 F.App'x at 605. Similarly, they argue that the *Wet Seal* court discussed scienter and the contents of the analyst report, which is irrelevant. (Opp. at 21.) Plaintiffs ignore that *Wet Seal* made the common sense point that conclusory allegations should not be credited, regardless of whether they appear in a complaint or an analyst report. *Wet Seal*, 518 F.Supp.2d at 1172.

## III.    ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

Defendants in the alternative ask that the Court certify two questions for interlocutory appeal: (1) whether loss causation is adequately pled where a stock drop follows an announcement of revised revenue guidance, absent particularized facts showing the company revised guidance because of the alleged fraud, and (2) whether loss causation is adequately pled based on an analyst commenting on a possible connection between the stock drop and alleged fraud.

### A.    There is a Controlling Question of Law

Ignoring Defendants' cases, Plaintiffs argue that Defendants are just disagreeing with the Court's application of the loss causation standard to the specific facts in this case.  (Opp. at 19.)  Not so.  Defendants are in the alternative proposing questions that generally bear on the appropriate pleading standards for loss causation.  (Mot. at 17.)  Plaintiffs ignore the fact that courts have certified orders on similar grounds.  *See Mineworkers' Pension Scheme v. First Solar Inc.,* 881 F.3d 750, 754 (9th Cir. 2018) (considering the correct test for loss causation certified by the district court for interlocutory appeal); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (affirming certification for interlocutory appeal regarding whether scienter was adequately pled based on a defendant-admission of negligence).

Moreover, Plaintiffs ignore that an issue is "controlling" where, as here, "its resolution could materially affect the outcome of the litigation."  *Bettencourt v. Parker*, 2021 WL 6284109, at *1 (E.D. Cal. Dec. 14, 2021) (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)).  As this District has noted, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006); *see also Amor Ministries v. Century Sur. Co.*, 2015 WL 11251726, at *3 (S.D. Cal. June 3, 2015) (there is "no doubt" that resolving question that "would have ended this litigation" is controlling).  Here, a reversal of the Order is controlling as it would lead to dismissal.

### B.    There is a Substantial Ground for Difference of Opinion

Plaintiffs claim there is no difference of opinion while again urging the Court to apply little

more than a notice pleading standard for loss causation. (Opp. at 20.) This argument ignores that the Ninth Circuit has clarified that a "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution," regardless of whether courts have already disagreed. *Reese*, 643 F.3d at 688 ("a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent"). Thus, even a potential for inconsistent rulings is sufficient to satisfy the substantial ground for difference of opinion prong. Here, the Order should be certified to determine what "particularity" means in the loss causation context. *Compare Espy*, 99 F.4th at 540 (noting loss causation must be pled "with particularity") *with BofI*, 977 F.3d at 794 ("[w]hen applied to allegations of loss causation, however, Rule 9(b)'s particularity requirement usually adds little to the plaintiff's burden.").

Tellingly, Plaintiffs fail to address the fact that *Smilovits v. First Solar Inc.* and *Reese v. Browne* involved similar circumstances where the court assessed what standard applied or whether certain types of allegations satisfied the legal standard, and the court in both instances certified the order for interlocutory appeal. (Mot. at 18-19 (citing *Smilovits v. First Solar Inc.*, 119 F.Supp.3d 978, 981 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension*, 881 F.3d 750; *Reese v. Browne* 2009 WL 10668680, at *5-6 (W.D. Wash. July 1, 2009), *rev'd and remanded sub nom. Reese*, 643 F.3d 681).) *Reese v. Browne* is particularly relevant. There, defendants successfully established a substantial ground for difference of opinion by demonstrating an absence of controlling authority, where the Ninth Circuit had not considered the effect of a party's negligent admission in a misdemeanor guilty plea on pleading a strong inference of scienter. 2009 WL 10668680, at *5-6.

Plaintiffs also argue that a corrective disclosure can come from any source. (Opp. at 20.) But Defendants are not claiming that a corrective disclosure cannot come from an analyst, but rather take issue with whether unsubstantiated speculation is sufficient to plead loss causation with particularity.[6] If the Court believes that its reading of *Lloyd* is correct – that analyst commentary is enough to plead loss causation (Defendants submit that it is not) – then there is a substantial

---

[6] Plaintiffs' cases do not dictate otherwise. In *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), the court noted that, "[s]ignificantly, defendants have not provided a single case that conflicts with the district court's construction or application of" the relevant law, whereas here, Plaintiffs' characterization of cases contradict the particularity requirement. (Mot. at 19.)

REPLY ISO MOT. FOR RECONSIDERATION OR TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP

difference of opinion.

**C.      Resolution in Defendants' Favor Would Materially Advance the Litigation**

Contrary to Plaintiffs' contention, a dismissal with leave to amend would materially advance the litigation towards dismissal with prejudice.  Allowing the case to barrel into discovery where it is unclear whether an element has been adequately pled is a far greater waste of the parties' (and the Court's) resources and time.  *See e.g.*, *Best Carpet Values, Inc. v. Google LLC*, Case No. 5:20-cv-04700-EJD (Dkt. No. 51 at 5-6) (finding appeal would materially advance termination of litigation because "even an affirmance [of an order denying motion to dismiss] may provide useful guidance before the parties engage in wide-ranging expensive discovery").

## IV.   SANCTIONS ARE UNWARRANTED

Because Plaintiffs have no convincing response to Defendants' Motion, they argue that the Court is required to impose sanctions under L.R. 7-9 for repeating arguments from their motion to dismiss.  (Opp. at 24.)  They are wrong.  Plaintiffs do not cite a single case that imposed sanctions under Civ. L.R. 7-9, which undermines their assertion that sanctions are mandatory.  And they ignore that the Rule says parties shall be "subject to" sanctions, which is permissive, not mandatory.  Plaintiffs also ignore that Defendants identify specific language in the Order showing that it misapplied the PSLRA's heightened pleading standard.  Using a similarly inappropriate tactic, Plaintiffs threaten to file a sanctions motion accusing Defendants of spoliating evidence based on one Rule 26(f) conference.  While completely outside of the scope of this Motion, such a threat is baseless, as any future record will show, Defendants made significant efforts to preserve data, reflecting its good faith intent to preserve evidence.  Plaintiffs' premature accusations, highlight their failure to adequately address the merits here.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Leave to Seek Reconsideration or, alternatively, certify its Order for immediate interlocutory appeal.

Case 5:21-cv-09953-PCP    Document 163    Filed 05/20/24    Page 22 of 22

Dated: May 20, 2024                         COOLEY LLP


                                            By: */s/ Patrick E. Gibbs*
                                                Patrick E. Gibbs
                                                Brett De Jarnette
                                                Heather Speers

                                            Attorneys for Defendants
                                            Chegg, Inc., Daniel L. Rosensweig, Andrew J.
                                            Brown, and Nathan Schultz

REPLY ISO MOT. FOR RECONSIDERATION OR TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL
5:21-CV-09953-PCP