# EXHIBIT 1

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| BRIAN STANSELL, individually and on behalf of all other similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ) | C.A. No. 2023-0180-PAF
| | ) |
| DANIEL ROSENSWEIG, RICHARD SARNOFF, RENEE BUDIG, SARAH BOND, PAUL LEBLANC, MARNE LEVINE, MARCELA MARTIN, TED SCHLEIN, MELANIE WHELAN, JOHN E. YORK, and DELOITTE & TOUCHE LLP, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

BRIAN STANSELL, individually and on
behalf of all other similarly situated,          )
                                                 )
          Plaintiff,                             )
                                                 )
     v.                                          )   C.A. No. 2023-0180-PAF
                                                 )
DANIEL ROSENSWEIG, RICHARD                       )
SARNOFF, RENEE BUDIG, SARAH BOND,                )
PAUL LEBLANC, MARNE LEVINE,                      )
MARCELA MARTIN, TED SCHLEIN,                     )
MELANIE WHELAN, JOHN E. YORK, and                )
DELOITTE & TOUCHE LLP,                           )
                                                 )
          Defendants.                            )

**MEMORANDUM OPINION**

Date Submitted: February 22, 2024
Date Decided: June 12, 2024

Kurt M. Heyman, Gillian L. Andrews, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Gustavo F. Bruckner, Samuel J. Adams, Ankita Sangwan, POMERANTZ LLP, New York, New York; *Attorneys for Plaintiff Brian Stansell*.

William M. Lafferty, Susan W. Waesco, Emily C. Friedman, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Dean S. Kristy, Jennifer C. Bretan, FENWICK & WEST LLP, San Francisco, California; Felix S. Lee, FENWICK & WEST LLP, Mountain View, California; *Attorneys for Defendants Daniel Rosensweig, Richard Sarnoff, Renee Budig, Sarah Bond, Paul LeBlanc, Marne Levine, Marcela Martin, Ted Schlein, Melanie Whelan, and John E. York*.

Ethan H. Townsend, Daniel T. Menken, MCDERMOTT WILL & EMERY LLP, Wilmington, Delaware; Timothy E. Hoeffner, MCDERMOTT WILL & EMERY LLP, New York, New York; *Attorneys for Defendant Deloitte & Touche LLP*.

**FIORAVANTI, Vice Chancellor**

A stockholder of Chegg, Inc. ("Chegg" or the "Company") alleges that the members of its board of directors breached their fiduciary duties by failing to disclose the "true nature" of Chegg's business model in its 2022 proxy statement. Plaintiff alleges that the Company's independent auditor aided and abetted in those breaches.

Plaintiff does not seek compensatory damages for the alleged breach of duty. Rather, he seeks an order compelling the defendants to hold a new meeting of stockholders and a revote on the election of directors and ratification of the appointment of the Company's auditor. Plaintiff admits that he knew all of the facts underlying his claims at the time the Company disseminated the proxy statement for the annual meeting, but made the tactical decision to seek a post-vote mandatory injunction and nominal damages.

The Defendants have moved to dismiss the Verified Complaint. The court grants the motions because the Complaint does not allege well-pleaded facts to state a claim for breach of fiduciary duty or for aiding and abetting as a matter of law.

## I.    BACKGROUND

The following recitation of facts is drawn from the Complaint and the documents integral thereto.[1]

Plaintiff Brian Stansell has continuously owned Chegg common stock since 2017.[2]

Defendants Daniel Rosensweig, Richard Sarnoff, Sarah Bond, Renee Budig, Paul LeBlanc, Marne Levine, Marcela Martin, Ted Schlein, Melanie Whelan, and John E. York (collectively the "Director Defendants") are members of the Company's board of directors.[3]  Rosensweig is also the Company's Chief Executive Officer and President.[4]

Defendant Deloitte & Touche LLP ("Deloitte") has served as the Company's principal independent registered public accounting firm since 2018.[5]

---

[1] Citations to the docket in this action are in the form of "Dkt. [#]."  In citations, the Complaint in this action, Dkt. 1, will be cited as "Compl.," and citations to the transcript of the oral argument, Dkt. 47, will be cited as "Oral Argument."  After being identified initially, individuals are referenced herein by their surnames without regard to formal titles such as "Dr."  No disrespect is intended.

[2] Compl. ¶ 8.

[3] *Id.* ¶¶ 9–18.

[4] *Id.* ¶ 9.

[5] *Id.* ¶ 21.

Chegg is a Delaware corporation with its principal executive offices in Santa Clara, California.[6] Chegg is not a party to this action, and Plaintiff does not purport to assert claims derivatively on the Company's behalf.[7] Chegg began in 2005 as a textbook rental company.[8] Over the years, its business model evolved, and it now primarily provides online education resources, which it refers to collectively as Chegg Services.[9]

Chegg Services offers, among other things, "expert Q&As," "textbook solutions," "video walkthroughs," "practice sets," "homework answers," and "more."[10] Chegg also provides answers to questions uploaded by students.[11] Chegg Services generates a majority of the Company's annual revenue.[12] In the third quarter of 2022, the Company attributed 97% of its revenue to Chegg Services.[13]

---

[6] *Id.* ¶ 20.

[7] Oral Argument at 41:23–24. *See Agostino v. Hicks*, 845 A.2d 1110, 1116 n.15 (Del. Ch. 2004) ("[T]he corporation is an indispensable party to a derivative action."); *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *8 n.1 (Del. Ch. Feb. 28, 2020) (noting that "in a corporate derivative action '[t]he corporation is not merely a formal party, but is an indispensable party to the action'" (alteration in original)) (quoting 12B Carol A. Jones, Fletcher's Cyclopedia of the Law of Corporations § 5908, at 490–91 (2009)).

[8] Compl. ¶ 22.

[9] *Id.* ¶¶ 2, 23.

[10] *Id.* ¶¶ 26–27.

[11] *Id.* ¶¶ 27, 46–47.

[12] *Id.* ¶ 33.

[13] *Id.*

Some of Chegg's customers use its products to cheat on academic assignments and exams.[14]  Rosensweig publicly acknowledged as much in 2020,[15] and the Complaint highlights an eclectic collection of sources—articles in national news publications,[16] an essay in an academic journal,[17] stories in school newspapers,[18] and social media posts by professors[19] and students[20] in 2020,[21] 2021,[22] and early 2022[23]—that mention students using Chegg to cheat.  The latest sources upon which Plaintiff relies are personalized videos published in March 2022 on the social media platform TikTok.[24]  The Complaint also makes brief reference to a lawsuit that

---

[14] *Id.* ¶¶ 35–50.

[15] *Id.* ¶ 50.

[16] *Id.* ¶¶ 38, 40.

[17] *Id.* ¶ 39.

[18] *Id.* ¶¶ 35–37.

[19] *Id.* ¶¶ 47–49.

[20] *Id.* ¶¶ 41–44.  The Complaint also references a TikTok video created by the Company, which Plaintiff asserts discusses "how Chegg is helpful when you have an assignment due in an hour and you haven't begun working on it."  *Id.* ¶ 45.  According to the Complaint, this "undermines the Company's message that Chegg is a teaching tool and, instead, sells the idea that Chegg is exactly what its critics suggest it is:  a good resource for quick, last-minute answers."  *Id.*

[21] *Id.* ¶¶ 37, 43–44, 49.

[22] *Id.* ¶¶ 35–36, 38–39, 48–49.

[23] *Id.* ¶¶ 40, 42, 45.

[24] *Id.* at 16 n.16, 17 n.19.

Pearson Education, Inc., a textbook manufacturer, filed against the Company in 2021, which remained pending as of the filing of this action.[25]

On December 22, 2021, a stockholder plaintiff filed a purported securities fraud class action against Chegg, Rosensweig, and two of the Company's other officers, and two federal derivative actions followed in January and March of 2022. The federal securities case survived a motion to dismiss after the parties here had briefed and argued the extant motions.[26]  The derivative actions have been stayed.[27]

On April 14, 2022, the Company disseminated a notice of meeting and proxy statement (the "2022 Proxy") for its 2022 annual meeting of stockholders (the "2022

---

[25] *Id.* ¶ 29.  After making only passing reference to the Pearson litigation in the Complaint, Plaintiff sought to rely much more extensively on the facts of that action in his Answering Brief in opposition to the motions. *See* Pl.'s Answering Br. 12, 25–26.  It is well established that directors are not required to adopt the characterizations alleged in pending lawsuits. *See Brody v. Zaucha*, 697 A.2d 749, 754 (Del. 1997) ("[A] director need not . . . confess[] to wrongdoing that has not been formally adjudicated by a court of law.").  And, in any event, Plaintiff's addition of new facts about that suit in his briefing was improper; "Delaware law does not permit plaintiffs to amend their complaint through briefing." *Parseghian as trustee of Gregory J. Parseghian Revocable Tr. v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *11 n.82 (Del. Ch. June 21, 2022).

[26] *See Leventhal v. Chegg, Inc.*, 2024 WL 924484, at *1 (N.D. Cal. Mar. 4, 2024).  The federal action has no bearing on the court's decision in this action.

[27] *See* Chegg, Inc., Annual Report (Form 10-K) (Feb. 20, 2024), 76–77.  "The court may take judicial notice of facts publicly available in filings with the SEC." *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1167 n.3 (Del. Ch. 2002) (citing *In re Santa Fe Pacific S'holder Litig.*, 669 A.2d 59, 69–70 (Del. 1995)).  Another derivative action was filed in this court after the filing of Plaintiff's complaint in this action.  *See Stein v. Rosensweig,* C.A. 2023-0244-NAC (Del. Ch.).  That action has also been stayed pending resolution of the *Leventhal* action.  *See Stein*, C.A. No. 2023-0244-NAC (Del. Ch.), Dkt. 6.

6

Meeting").[28]  The 2022 Proxy solicited proxies to reelect Bond, Martin, Whelan, and York as Class III directors and to ratify the appointment of Deloitte as Chegg's independent auditor for the 2022 fiscal year.[29]  The Complaint alleges that the 2022 Proxy was materially misleading and did not disclose that Chegg's "primary business model" helps students to cheat.[30]  The Complaint also alleges that the 2020 Proxy contained other materially misleading misstatements and omissions, including:

> We put learners first and seek to improve their outcomes in school and beyond.  We strive to improve the overall return on investment in education by helping students learn more in less time and at a lower cost. . .
>
> We help students each step of the way to improve the outcome of their education.  To do this, we focus on listening to their needs, elevating and amplifying their voice, and taking action to provide real life solutions. . .

---

[28] Compl. ¶ 3; Chegg, Inc., Proxy Statement (Schedule 14A) (Apr. 14, 2022) [hereinafter "2022 Proxy"].  Chegg issued a revised proxy on April 27, 2022, which revised "typographical and formatting errors contained in the biographical description of Sarah Bond in the 'Nominees to the Board of Directors' section" but was otherwise identical, including in all manners pertinent to this opinion. Chegg, Inc., Proxy Statement (Schedule 14A) (Apr. 27, 2022).  Though the revised proxy states that it "should be read in place of the original Proxy Statement, and amends, restates and supersedes the original Proxy Statement in all respects," neither party refers to it, and the Director Defendants submitted the original 2022 Proxy as an exhibit. *Id.*  The court makes this observation in the interests of accuracy and completeness; it has no bearing on the resolution of this action.

[29] 2022 Proxy at 1.  It also sought an advisory vote on executive compensation, with which Plaintiff does not take issue. *Id.*

[30] Compl. ¶¶ 3, 50–52, 58, 60, 72.

> We understand students at a deep level and anticipate their needs at every step. . .
>
> We hold ourselves to the highest ethical standards and strive for full compliance with applicable laws and regulations. . .
>
> We are extremely proud to offer an integrated platform for learning that has helped so many learners on their education journey by providing them with the type of help they need, when they need it, in the format they want to receive it. . .
>
> Chegg is a student's ride-or-die, 24/7, always-answers-when-you-call partner. [. .]
>
> Supporting students in their learning journey.[31]

On June 1, 2022, Chegg held the 2022 Meeting, and the Company's stockholders re-elected Bond, Martin, Whelan, and York, each of whom was unopposed, and ratified Deloitte's appointment.[32]

On February 14, 2023, Plaintiff filed his two-count complaint as a direct action, alleging that the Director Defendants breached their fiduciary duties by disseminating false information in the 2022 Proxy and that Deloitte aided and abetted in that breach.[33]  The Complaint seeks a declaration that the Proxy was "misleading," an order compelling the Director Defendants to "correct" the Proxy, and mandatory injunctive relief compelling the Director Defendants to cause Chegg

---

[31] *Id.* ¶ 57 (quoting 2022 Proxy).

[32] *Id.* ¶ 59.

[33] Dkt. 1.

to hold a new meeting of stockholders to elect Class III directors and to vote on the appointment of Deloitte.[34]  The Complaint also alleges that Plaintiff and the putative class "sustained significant damages,"[35] but at oral argument Plaintiff represented that the only monetary relief he seeks is nominal damages.[36]

Plaintiff readily acknowledges that he possessed all of the facts to support his disclosure claim at the time the Company filed the 2022 Proxy.[37]  Rather than file a complaint and motion for preliminary injunction at that time to compel corrective

---

[34] Compl. Prayer for Relief.

[35] *Id.* ¶ 74.

[36] Oral Argument at 42:16–20.  The Complaint also sought an order "[d]irecting the Board to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Chegg and its stockholders from a repeat of the damaging events described herein."  Compl. Prayer for Relief ¶ E.  When pressed at argument for any instance where this court has ordered that type of relief, Plaintiff abandoned it.  Oral Argument at 42:10–14 ("[Pl.'s Counsel]:  [I]f I could go back and take that out of the complaint, I would.  [The Court]:  Are you taking it out?  [Pl.'s Counsel]:  You can consider it dropped, Your Honor.").  Plaintiff also seeks an award of attorneys' fees and expenses.  Compl. Prayer for Relief ¶ H.

[37] Pl's Answering Br. 32 (describing the basis for his allegations as "widespread public information" and asserting that the Director Defendants' argument that "they had no duty to disclose information which was already publicly available to stockholders" "misconstrues Plaintiff's argument," which Plaintiff articulated as the Director Defendants' having "knowingly disseminated false information (in proxies and elsewhere) that contradicted the widespread public information").

disclosures, Plaintiff candidly admits that he made a tactical decision to file his complaint after the meeting and to seek post-meeting relief.[38]

The Director Defendants and Deloitte filed motions to dismiss or stay this action.[39] Following briefing, the court heard oral argument.[40] What follows is the court's ruling on those motions.

## II.    ANALYSIS

On a motion to dismiss for failure to state a claim under Court of Chancery Rule 12(b)(6):

> (i)    all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes and internal quotation marks omitted); *accord Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011). "[A] trial court is required to accept only

---

[38] Oral Argument at 40:12–41:9 ("[Pl.'s Counsel]: I just know it's a lot harder these days than it used to be to get an injunction based on disclosures than it once was. And that was part of the calculus in not seeking that kind of relief . . . . And you are correct that we did not bring this beforehand, and we decided it would be better to bring an action and seek post-vote relief.").

[39] Dkts. 18–19.

[40] Dkts. 18, 20, 34, 40–41, 46.

those 'reasonable inferences that logically flow from the face of the complaint' and 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'" *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)). "Moreover, a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law." *Malpiede*, 780 A.2d at 1083.

### A. Plaintiff Does Not Present Allegations Supporting a Reasonable Inference that Defendants Failed to Disclose the Company's Business Model.

Plaintiff alleges that the Proxy was materially misleading because it did not disclose that Chegg's "primary business model" is to help students to cheat. Specifically, Plaintiff argues that the Company failed to disclose that the majority of its business was focused on cheating activities.[41]

Defendants offer three arguments in support of dismissal of Count I.[42]  First, directors are not required to engage in self-flagellation.  Second, Plaintiff has not alleged facts to support its assertion that the Company's primary business model is

---

[41] Oral Argument at 30:21–24 ("[Pl.'s Counsel]:  [W]e're saying that the focus of their business at this point, which I would say would have to be 50 percent or more, probably, would be focused on cheating activities.").

[42] Deloitte joined in the Director Defendants' arguments with respect to Count I as it pertained to Count II and presented additional arguments specific to Count II.  *See generally* Dkts. 18, 41.

to facilitate the ability of students to cheat.  Third, Plaintiff's Complaint is based on information that was publicly available at the time the 2022 Proxy was disseminated. In response, Plaintiff reframed his claim, insisting that he was not arguing that Defendants needed to use "pejorative [] words such as 'cheating.'"[43]  Rather, Plaintiff argues that Defendants were misrepresenting facts about "the inherent nature of the services Chegg sells."[44]

"Delaware law imposes upon a board of directors the fiduciary duty to disclose fully and fairly all material facts within its control that would have a significant effect upon a stockholder vote." *Stroud v. Grace*, 606 A.2d 75, 85 (Del. 1992).  An omitted fact is material where there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 439 (1976).  The Delaware Supreme Court adopted the *TSC* approach to materiality in *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929 (Del. 1985).  To be material, an omitted fact must significantly alter the "total mix" of information.  *Id.* at 944.

The duty of disclosure "does not exist in a vacuum." *Stroud*, 606 A.2d at 85. "When confronting a disclosure claim, a court therefore must engage in a context[]

---

[43] Pl.'s Answering Br. 29.

[44] *Id.* at 22–23.

specific analysis to determine the source of the duty, its requirements, and any remedies for breach." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013).

### 1.     The Director Defendants are not required to engage in self-flagellation.

It is well settled that in making disclosures a board is not required to engage in self-flagellation. *See Stroud*, 606 A.2d at 84 n.1 ("We recognize the long-standing principle that to comport with its fiduciary duty to disclose all relevant material facts, a board is not required to engage in 'self-flagellation' and draw legal conclusions implicating itself in a breach of fiduciary duty from surrounding facts and circumstances prior to a formal adjudication of the matter."); *accord Khanna v. McMinn*, 2006 WL 1388744, at \*29 (Del. Ch. May 9, 2006).  Under Delaware law, a board is not required to state a plaintiff's characterization of the facts.  *See In re John Q. Hammons Hotels Inc., S'holder Litig.*, 2009 WL 3165613, at \*15 (Del. Ch. Oct. 2, 2009) ("Delaware law does not require that the proxy statement include plaintiffs' characterization . . . ."); *In re MONY Gp., Inc. S'holder Litig.*, 853 A.2d 661, 682 (Del. Ch. 2004) ("[A]s a general rule, proxy materials are not required to state . . . plaintiff's characterization of the facts.").

The Director Defendants argue that they were not required to characterize Chegg's business in pejorative or negative terms or to disparage its student user base

13

as cheaters.[45]   In response, the Plaintiff pivoted, conceding that the Director Defendants were not required to use the term "cheating" in describing the Company's primary business model.[46]   Therefore, Plaintiff has abandoned this argument.

>### 2. The Complaint does not allege facts to support a reasonable inference that Chegg's primary business model is to facilitate student cheating.

Even if Plaintiff has not abandoned its argument that the Director Defendants were required to disclose that Chegg's primary business model was to facilitate student cheating, it fails for lack of factual support.  Despite having utilized the tools at hand to inspect Chegg's books and records, Plaintiff has not referenced a single document or a statement by any of the defendants in his Complaint to support the assertion that Chegg's "primary business model" is to facilitate cheating by students. Rather, he draws that conclusion from public information that was available to him prior to the 2022 Meeting.

Plaintiff presents a two-step argument.  First, he argues that some of Chegg's customers use Chegg Services to cheat.  Second, he argues that Chegg Services makes up a majority of Chegg's revenue.  The result that he contends logically

---

[45] Director Defs.' Opening Br. 21.

[46] Pl.'s Answering Br. 5, 29.

follows is that a majority of Chegg's revenue comes from cheating. From this, Plaintiff concludes that Chegg's "primary business model" is to facilitate cheating. The gap in Plaintiff's logic is evident from his failure to present any allegations or argument about the extent to which Chegg's entire customer base uses Chegg Services to cheat.

Anecdotal evidence that some customers use Chegg Services to cheat is not, by itself, sufficient to establish a reasonable inference that cheating is the Company's "primary business model." Take, for example, an automobile manufacturer. One would not be hard pressed to find anecdotal evidence that some of the manufacturer's automobiles are used for illegal drag racing, transporting contraband, as getaway vehicles, or driven at speeds in excess of posted speed limits. And automobile manufacturers draw the majority of their revenue from selling automobiles. But that does not mean that an automobile manufacturer's "primary business model" is facilitating illegal activity. So too, here.

Plaintiff fails to present any allegations or argument as to how many of Chegg's customers use Chegg Services to cheat. In his briefing, Plaintiff argued that he was not required to quantify the *exact* number of students who used Chegg Services to cheat to state a claim.[47] But as Plaintiff's counsel conceded at oral

---

[47] *Id.* at 30.

argument, to survive dismissal, he must allege facts supporting a reasonable inference that "50 percent or more, probably, would be focused on cheating activities."[48]  Plaintiff has not alleged facts giving rise to a reasonable inference that a majority of the Company's revenue comes from students using its products to cheat in school, or that a majority of its customers use its products to cheat.

Plaintiff also argues that the Director Defendants should have more clearly disclosed that the Company's products *could* have been used for cheating. Specifically, Plaintiff argues that the Director Defendants could have and should have "describe[d] Chegg's business model accurately – supplying exam, homework, and textbook answers – without using any pejorative (even if accurate) terms like 'cheating.'"[49]  That argument also fails.  The Company's 2021 filing on Form 10-K, incorporated by reference into the 2022 Proxy and the Complaint, provides a clear description of what the Company sells.  It is also obvious that these products could be used to cheat.

For example, on the fourth page of the 10-K, which is the first page of its substantive material, the Company discloses that its services include its "Expert Questions and Answers service [which allows] students to ask questions on our

---

[48] Oral Argument at 30:23–24.

[49] Pl.'s Answering Br. 5.

website and receive detailed explanations" and "Textbook Solutions, which are step-by-step explanations to help students learn how to solve the questions at the end of each chapter in their textbooks."[50]  The 10-K also highlights Chegg's services as offering "a step-by-step math problem solver and calculator" and emphasizes twice that Chegg provides plagiarism detection services for students.[51]  Therefore, the 10-K provides what Plaintiff himself identifies as his desired accurate description of Plaintiff's business model—supplying an "Answers service," "Textbook Solutions," a "problem solver," and tools that help students not get caught cheating.  The Company sold products that it accurately described, which can be used for cheating.  A step-by-step problem-solving tutorial can be used to learn new material, and it can be used to quickly pull answers for a homework assignment without doing the work.  The 2022 Proxy was not materially misleading and did not omit information about the Company's products that was material to stockholders in casting votes for the Class III directors or to ratify the Company's auditor at the 2022 Meeting.  *See MONY*, 853 A.2d at 683 ("Proxy statements need not disclose facts known or reasonably available to the stockholders." (internal quotation marks omitted)).

---

[50] Chegg, Inc., Annual Report (Form 10-K) (Feb. 22, 2022), 4.

[51] *Id.*

Plaintiff also complains that the 2022 Proxy contained vague statements that "misled investors to believe that Chegg values academic integrity, which is not the case."[52]  But these statements, such as:  "'Chegg is a student's ride-or-die, 24/7, always-answers-when-you-call partner,'" "'We hold ourselves to the highest ethical standards and strive for full compliance with applicable laws and regulations,'" and "'We understand students at a deep level and anticipate their needs at every step'"[53] are not actionable.

The Company disclosed the nature of its products, and Chegg's products are a tool.  Foreseeable misuse thereof was obvious, and Plaintiff himself asserts that actual misuse was public knowledge.  *See Seibert v. Harper & Row, Publ'rs, Inc.*, 1984 WL 21874, at *6 (Del. Ch. Dec. 5, 1984) ("[A] proxy statement need not disclose facts known or reasonably available to the stockholders.").  Although the Company's products have been misused by some customers, the Company's aspirational representations promoting the utility of its services for customers who actually want to use them to study is not a material misrepresentation.  For example, the "disclosure" that "'We hold ourselves to the highest ethical standards and strive for full compliance with applicable laws and regulations'"[54] is, like statements that

---

[52] Compl. ¶ 55.

[53] *Id.* ¶ 57 (quoting 2022 Proxy).

[54] *Id.* (quoting 2022 Proxy).

18

a company provides "an 'ideal work environment' and had 'unique resources,'" "at best enthusiastic puffery that no rational prospective investor" would find material. *Lazard Debt Recovery GP, LLC. v. Weinstock*, 864 A.2d 955, 971 (Del. Ch. 2004). Nor is "'We help students each step of the way to improve the outcome of their education [and] we focus on listening to their needs, elevating and amplifying their voice, and taking action to provide real life solutions'"[55] any more actionable than "classically vague statements" like bragging about "'very strong brand name,' 'established market presence,' and 'unprecedented levels of customer loyalty.'" *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *8 (Del. Ch. July 20, 2010).

In sum, the Complaint does not state a claim that the Director Defendants breached their fiduciary duties by failing to expressly state that Chegg's "primary business model . . . facilitates cheating."[56] Plaintiff failed to present non-conclusory allegations that cheating was the Company's primary business model. Therefore, he has not stated a claim that the Director Defendants breached their fiduciary duties by failing to disclose that it was. The Complaint also lacks well-pleaded facts to support a claim that, in a request for stockholder action concerning the election of

---

[55] *Id.* (quoting 2022 Proxy).

[56] *Id.* ¶ 52.

19

directors and ratification of the appointment of auditors, the Director Defendants made materially misleading disclosures or omitted material information about the Company's products or their use. Plaintiff has, therefore, failed to state a claim for breach of fiduciary duty against the Director Defendants, and Count I must be dismissed.[57]

### B. Having Failed to State a Claim for Breach of Fiduciary Duty, Plaintiff's Aiding and Abetting Claim Also Fails.

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and (iv) damages proximately caused by the breach." *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015).

---

[57] The court need not address the question of whether the Plaintiff, who made the tactical decision not to file a pre-vote complaint and application for preliminary injunctive relief, would have been entitled to an order compelling a new annual meeting for the election of directors and ratification of the appointment of auditors. *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 (Del. 1997) ("There may be circumstances under which a proxy statement soliciting votes for the election of directors is actionable under Delaware law for material misstatements or omissions. Injunctive relief in the form of corrective disclosures and resolicitation may be appropriate if the matter is addressed in time by a court of equity."). Doing so would require equitable considerations. Mandatory injunctive relief "may be granted only if Plaintiff demonstrates: (1) entitlement to judgment as a matter of law on the merits of her claim; (2) that the failure to issue the injunction will result in immediate and irreparable injury; and (3) that the balance of hardships weighs in Plaintiff's favor." *DeMarco v. Christiana Care Health Servs., Inc.*, 263 A.3d 423, 433 (Del. Ch. 2021); *see Loudon*, 700 A.2d at 147 ("In every case, a plaintiff stating a claim against directors for violation of the duty of disclosure must set forth in a well-pleaded complaint allegations *sufficient to warrant the remedy sought*." (emphasis added)).

For the reasons already discussed, Plaintiff's allegations do not give rise to a reasonable inference that the Director Defendants breached their fiduciary duties. Therefore, "without an underlying breach, the aiding and abetting claim fails." *Wayport*, 76 A.3d at 323.  Upon Count I's failure, Count II must also be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the Complaint fails to state a claim upon which relief can be granted.  The Defendants' motions to dismiss are granted in full, and the Complaint is dismissed with prejudice.  *See* Ct. Ch. R. 15(aaa).

21