# EXHIBIT B

**EFiled:  May 30 2023 05:03PM EDT**
**Transaction ID 70102997**
**Case No. 2023-0180-PAF**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRIAN STANSELL, individually and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2023-0180-PAF |
| DANIEL L. ROSENSWEIG, RICHARD SARNOFF, RENEE BUDIG, SARAH BOND, PAUL LEBLANC, MARNE LEVINE, MARCELA MARTIN, TED SCHLEIN, MELANIE WHELAN, JOHN E. YORK, and DELOITTE & TOUCHE LLP, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## THE CHEGG DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR IN THE <u>ALTERNATIVE TO STAY</u>

OF COUNSEL:

Dean Kristy
Jennifer C. Bretan
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
(415) 875-2300

Felix S. Lee
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
William M. Lafferty (#2755)
Susan W. Waesco (#4476)
Emily C. Friedman (#7054)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200
*Attorneys for Defendants*
*Daniel L. Rosensweig, Richard Sarnoff,*
*Renee Budig, Sarah Bond, Paul*
*LeBlanc, Marne Levine, Marcela*
*Martin, Ted Schlein, Melanie Whelan,*
*and John E. York*

May 30, 2023

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..........................................................................iii

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ........................................................................................6

    A.    Chegg And Its Business................................................6

    B.    The Parties .................................................................7

    C.    The April 2022 Proxy and Challenged Statements.....................9

    D.    Plaintiff's Claims .........................................................13

    E.    The First-Filed, Related Lawsuits.............................................14

ARGUMENT........................................................................................17

    I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST CHEGG'S DIRECTORS ....................................................17

        A.    Plaintiff Has Failed To Plead Facts Establishing A Non-Exculpated Claim Against The Directors.........................17

            1.    The Claim That The Proxy Contains A False Or Misleading Statement Is Fatally Flawed ...................19

                a.    Mission And Goals Statements ...........................19

                b.    Business Ethics Statements .................................25

            2.    No Facts Show Intentional Misconduct Or Bad Faith ........................................................28

            3.    Plaintiff Fails To Plead Cognizable Class Damages And Lacks Standing To Pursue Derivative Claims.........................................31

ii.

TABLE OF CONTENTS (Continued)

Page

II.    IF THE CASE IS NOT DISMISSED, IT SHOULD BE STAYED ................................................................................34

    A.    A Stay Is Appropriate Under McWane And The First-Filed Doctrine ...............................................34

        1.    Leventhal Is A Prior Pending Action ...........................35

        2.    The Leventhal Action And This Action Involve Nearly Identical Issues And Similar Parties ...........................................................................36

        3.    The California Federal Court Is Capable Of Doing Prompt and Complete Justice ............................42

CONCLUSION ..........................................................................................43

iii.

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airborne Health, Inc. v. Squid Soap, LP*,
2010 WL 2836391 (Del. Ch. July 20, 2010) ......................................................20

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ......................................................33

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
891 A.2d 150 (Del. Ch. 2005), *aff'd*, 906 A.2d 114 (Del. 2006) .......................30

*Bershad v. Curtiss-Wright Corp.*,
1983 WL 10916 (Del. Ch. Mar. 21, 1983), *aff'd and remanded*,
534 A.2d 840 (Del. 1987) ....................................................................................26

*Bettis v. Aixtron SE*,
2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) .....................................................24

*Brody v. Zaucha*,
697 A.2d 749 (Del. 1997) .....................................................................................27

*Brookstone Partners Acquisition XVI, LLC v. Tanus*,
2012 WL 5868902 (Del. Ch. Nov. 20, 2012) ......................................................38

*Calamore v. Juniper Networks, Inc.*,
2008 WL 6971767 (N.D. Cal. Aug. 13, 2008), *aff'd*, 364 F. App'x
370 (9th Cir. 2010) ...............................................................................................33

*Caravetta v. McKesson HBOC, Inc.*,
846 A.2d 240 (Del. Super. 2000) .........................................................................35

*Choice Hotels Int'l, Inc. v. Columbus-Hunt Park Dr. BNK Investors,
LLC*,
2009 WL 3335332 (Del. Ch. Oct. 15, 2009) .......................................................36

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) .................................................................................25

iv.

TABLE OF AUTHORITIES (Continued)

Page(s)

*Corwin v. Silverman*,
1999 WL 499456 (Del. Ch. June 30, 1999) ........................................................42

*Dent v. Ramtron Int'l Corp.*,
2014 WL 2931180 (Del. Ch. June 30, 2014) .......................................................18

*Derdiger v. Tallman*,
773 A.2d 1005 (Del. Ch. 2000) ...................................................................*passim*

*Ellis v. Gonzalez*,
2018 WL 3360816 (Del. Ch. July 10, 2018), *aff'd*, 205 A.3d 821
(Del. 2019) .................................................................................................18, 28, 30

*English v. Narang*,
2019 WL 1300855 (Del. Ch. Mar. 20, 2019), *aff'd*, 222 A.3d 581
(Del. 2019) ............................................................................................................25

*Erisman v. Zaitsev*,
2021 WL 6134034 (Del. Ch. Dec. 29, 2021) .......................................................32

*EuroCapital Advisors, LLC v. Colburn*,
2008 WL 401352 (Del. Ch. Feb. 14, 2008) .........................................................38

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) .....................................................26

*Gerber v. Enter. Products Holdings, LLC*,
2012 WL 34442, at *8 (Del. Ch. Jan. 6, 2012) ....................................................22

*Goldstein v. Denner*,
2022 WL 1797224 (Del. Ch. June 2, 2022) .........................................................26

*Horman v. Abbey*,
2017 WL 242571 (Del. Ch. Jan. 17, 2019) ..........................................................30

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999), *abrogated on other grounds by*
*Tellabs, Inc. v. Makor Issues & Right, Ltd.*, 551 U.S. 308 (2007) .....................20

v.

TABLE OF AUTHORITIES (Continued)

Page(s)

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010) ....................................................................26

*In re Alloy, Inc. S'holder Litig.*,
   2011 WL 4863716 (Del. Ch. Oct. 13, 2011) .......................................17

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act
   (ERISA) Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) .................................................32

*In re BJ's Wholesale Club, Inc. S'holders Litig.*,
   2013 WL 396202 (Del. Ch. Jan. 31, 2013) .........................................20

*In re Career Educ. Corp. Deriv. Litig.*,
   2007 WL 2875203 (Del. Ch. Sept. 28, 2007)........................................6

*In re Chegg Deriv. Litig.*,
   Case No. 5:22-cv-00217-EDJ (N.D. Cal.)............................................15

*In re Citigroup Inc. S'holder Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009) ....................................................28, 29, 30

*In re Coca-Cola Enters., Inc. S'holders Litig.*,
   2007 WL 3122370 (Del. Ch. Oct. 17, 2007), *aff'd sub nom. Int'l
   Bhd. of Teamsters v. The Coca-Cola Co.*, 954 A.2d 910 (Del.
   2008)......................................................................................................23

*In re Cornerstone Therapeutics Inc. S'holder Litig.*,
   115 A.3d 1173 (Del. 2015)....................................................................18

*In re Crimson Expl. Inc. S'holder Litig.*,
   2014 WL 5449419 (Del. Ch. Oct. 24, 2014)....................................18, 28

*In re Danaher Corp. S'holder Deriv. Litig.*,
   549 F. Supp. 3d 59 (D.D.C. 2021).........................................................21

*In re The Dow Chemical Co. Deriv. Litig.*,
   2010 WL 66769 (Del. Ch. 2010).............................................................29

vi.

TABLE OF AUTHORITIES (Continued)

Page(s)

*In re Duke Energy Corp. Coal Ash Deriv. Litig.*,
  2015 WL 5135066 (Del. Ch. Aug. 31, 2015) ........................................................ 41

*In re Gen. Motors (Hughes) S'holder Litig.*,
  897 A.2d 162 (Del. 2006) ...................................................................................... 17

*In re Insys Therapeutics Inc. Deriv. Litig.*,
  2017 WL 5953515 (Del. Ch. Nov. 30, 2017) ........................................................ 41

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 766 (Del. Ch. 2005) .......................................................................... 31, 33

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
  2009 WL 3165613 (Del. Ch. Oct. 2, 2009) ............................................................ 22

*In re K-Sea Transp. Partners L.P. Unitholders Litig.*,
  2012 WL 1142351 (Del. Ch. Apr. 4, 2012) ........................................................... 23

*In re Lordstown Motors Corp. S'holders Litig.*,
  2022 WL 678597 (Del. Ch. Mar. 7, 2022) ............................................................. 42

*In re Massey Energy Co.*,
  2011 WL 2176479 (Del. Ch. May 31, 2011) .......................................................... 41

*In re MONY Group, Inc. S'holder Litig.*,
  853 A.2d 661 (Del. Ch. 2004) .......................................................................... 22, 24

*In re Oracle Corp Deriv. Litig.*,
  867 A.2d 904 (Del. Ch. 2004) ................................................................................ 19

*In re Santa Fe Pac. Corp. S'holder Litig.*,
  669 A.2d 59 (Del. 1995) ......................................................................................... 17

*In re Transkaryotic Therapies, Inc.*,
  954 A.2d 346 (Del. Ch. 2008) ................................................................................ 28

*In re Trulia, Inc. S'holder Litig.*,
  129 A.3d 884 (Del. Ch. 2016) .......................................................................... 24, 27

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007) ................................................................................ 32

vii.

TABLE OF AUTHORITIES (Continued)

Page(s)

*IRA Trust FBO Bobbie Ahmed v. Crane*,
  2017 WL 7053964 (Del. Ch. Dec. 11, 2017), *as revised* (Jan. 26,
  2018) ....................................................................................................................25

*Issen & Settler v. GCS Enters.,*
  *Inc.*, 1981 WL 15131 (Del. Ch. Dec. 7, 1981) ...................................................42

*Kahn v. MSB Bancorp., Inc.*,
  1998 WL 409355 (Del. Ch. July 16, 1998), *aff'd*, 734 A.2d 158
  (Del. 1999)...........................................................................................................31

*Kaufman v. Kumar*,
  2007 WL 1765617 (Del. Ch. June 8, 2007) ........................................................42

*Khanna v. McMinn*,
  2006 WL 1388744 (Del. Ch. May 9, 2006) ..................................................21, 27

*Kurtin v. KRE, LLC*,
  2005 WL 1200188 (Del. Ch. May 16, 2005) .......................................................34

*Lazard Debt Recovery GP, LLC v. Weinstock*,
  864 A.2d 955 (Del. Ch. 2004) .............................................................................20

*Leventhal v. Chegg, Inc., et al.*,
  Case No. 5:21-cv-09953-EJD (N.D. Cal.).....................................................*passim*

*Loudon v. Archer-Daniels-Midland Co.*,
  700 A.2d 135 (Del. 1997)................................................................................21, 27

*Lyondell Chemical Co. v. Ryan*,
  970 A.2d 235 (Del. 2009)................................................................................28, 31

*McPadden v. Sidhu*,
  964 A.2d 1262 (Del. Ch. 2008) ........................................................................6, 18

*McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*,
  263 A.2d 281 (Del. 1970).............................................................................*passim*

## TABLE OF AUTHORITIES (Continued)

Page(s)

*Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm,*
  *Inc. v. Jacobs,*
  2016 WL 4076369 (Del. Ch. Aug. 1, 2016), *aff'd*, 158 A.3d 449
  (Del. 2017) ....................................................................................................... 18

*Ocegueda v. Zuckerberg,*
  526 F. Supp. 3d 637 (N.D. Cal. 2021) .............................................................. 21

*Orman v. Cullman,*
  794 A.2d.5 (Del. Ch. 2002) .............................................................................. 6

*Pfeffer v. Redstone,*
  2008 WL 308450 (Del. Ch. Feb. 1, 2008), *aff'd*, 965 A.2d 676
  (Del. 2009) ....................................................................................................... 33

*Pfeffer v. Redstone,*
  965 A.2d 676 (Del. 2009) ................................................................................. 30

*Price v. E.I. DuPont de Nemours & Co.,*
  26 A.3d 162 (Del. 2011), *overruled on other grounds by Ramsey v.*
  *Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018) ..................... 17, 23

*Ret. Sys. v. Corti,*
  2009 WL 2219260 (Del. Ch. July 24, 2009), *aff'd*, 996 A.2d 795
  (Del. 2010) ....................................................................................................... 17

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-*
  *Packard Co.,*
  845 F.3d 1268 (9th Cir. 2017) .......................................................................... 25

*Rosenblatt v. Getty Oil Co.,*
  493 A.2d 292 (Del. 1985) ................................................................................. 19

*Ryan v. Gifford,*
  2009 WL 18143 (Del. Ch. Jan. 2, 2009) .......................................................... 33

*Schnell v. Porta Sys. Corp.,*
  1994 WL 148276 (Del. Ch. Apr. 12, 1994) ............................................. 37, 39, 40

ix.

TABLE OF AUTHORITIES (Continued)

Page(s)

*Shaev v. Adkerson*,
   2015 WL 5882942 (Del. Ch. Oct. 5, 2015) .......................................................22

*Singh v. Schikan*,
   106 F. Supp. 3d 439 (S.D.N.Y. 2015) ..............................................................22

*Solomon v. Armstrong*,
   747 A.2d 1098 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) .....................31

*Stein v. Rosensweig*,
   C.A. No. 2023-0244-NAC (Del. Ch.) (filed Feb. 24, 2023) .........................15, 16

*Stroud v. Grace*,
   606 A.2d 75 (Del. 1992).............................................................................21, 27

*Teamsters Loc. 677 Health Servs. & Ins. Plan v. Martell*,
   2023 WL 1370852 (Del. Ch. Jan. 31, 2023) ....................................................23

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004)........................................................................32, 33

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
   2006 WL 4782378 (Del. Ch. Aug. 10, 2006).....................................................23

*Tulum Mgmt. USA LLC v. Casten*,
   2015 WL 7456003 (Del. Ch. Nov. 20, 2015)................................................36, 38

*Visual Edge Sys., Inc. v. Takefman*,
   2000 WL 193107 (Del. Ch. Jan. 31, 2000) ......................................................37

*Winshall v. Viacom Int'l, Inc.*,
   76 A.3d 808 (Del. 2013).................................................................................17

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008)................................................................................29

*Xpress Mgmt. Inc. v. Hot Wings Int'l, Inc.*,
   2007 WL 1660741 (Del. Ch. May 30, 2007) ....................................................36

x.

TABLE OF AUTHORITIES (Continued)

Page(s)

**Other Authorities**

https://www.sec.gov/ix?doc=/Archives/edgar/data/0001364954/00013
6495421000113/chgg-20210930.htm..................................................................27

https://www.sec.gov/ix?doc=/Archives/edgar/data/0001364954/00013
6495422000011/chgg-20211231.htm..................................................................12

https://www.sec.gov/ix?doc=/Archives/edgar/data/0001364954/00013
6495422000052/chgg-20220601.htm....................................................................9

1.

## PRELIMINARY STATEMENT

This suit, purportedly brought as a stockholder class action for breach of fiduciary duty against members of the board of directors (the "Board") of Chegg, Inc. ("Chegg" or the "Company"), asserts that the Company's April 14, 2022 Proxy Statement (the "Proxy") for its annual meeting to elect four directors was false and misleading. That claim rests on a flawed theory and cannot survive.

According to the Verified Class Action Complaint (the "Complaint"), the Company's statements in the Proxy about its mission and goals – *e.g.*, Chegg "is a mission driven company . . . [and] [w]e put learners first and seek to improve their outcomes in schools and beyond," that "[w]e aim to support and accelerate the path students take from learning to earning," and "[we] support[] students in their learning journey" – were materially misleading because, Plaintiff claims, the undisclosed "primary business model" of the Company is "to facilitate cheating" by its student-subscribers and the Proxy should have said so. That bold assertion is not only devoid of factual support, it reflects a fundamental misunderstanding of Delaware law and what it demands.

As an initial matter, general statements of a Company's goals or mission are not actionable. Nor does Delaware law (or the federal proxy rules) require a company to disparage its business and denigrate its customers. But the Complaint suffers from a more fundamental problem: ***it does not contain a single allegation of***

2.

***fact showing that the Company's "primary business model" is to "facilitate cheating."*** No effort is made to quantify the number or percentage of subscribers that used Chegg's learning platform to cheat, whether at the time of the Proxy or any other time. No facts suggest that student cheating was ever the primary driver of revenue for Chegg. Indeed, Plaintiff does not even try to allege anything of the sort. To do so, there would need to be facts showing that ***millions*** of Chegg's 7.8 million subscribers used the platform to cheat and that their ability to do so was the substantial driver of the Company's $776.3 million in revenues in 2021. But there are no such facts. Ignoring the legitimate ways honest and hardworking students utilize the vital tools available on Chegg's platform to enhance their education, Plaintiff's proposition is as facially implausible as it is factually unsupported. Underscoring the point, despite touting his access to Section 220 documents in the Complaint, Plaintiff cannot and does not cite a single internal document, presentation, or other material suggesting that student cheating was so rampant as to conceivably constitute the Company's "primary business model."

In place of well-pleaded facts, the Complaint devotes several pages to various publicly available articles, tweets, and TikTok videos, all published well before the Proxy (as early as May 20, 2020), in which a small number of university faculty express frustration over student cheating (and a few students admit to doing so). But, of course, some students cheat. That has been true from time immemorial, and

3.

Chegg never claimed it was fully immune to the problem. That does not change the fact that nothing in these anecdotal accounts (which Plaintiff portrays as the "[p]ublic [r]eveal of Chegg's [p]rimary [b]usiness [m]odel," well before the Proxy) comes close to establishing that facilitating cheating is Chegg's "primary" business, much less rendered Chegg's Proxy statements about its mission and goals false and misleading and the resulting election of directors in any manner "misinformed."

Plaintiff's only other disclosure claim also is without merit. The statement that "[w]e hold ourselves to the highest ethical standards and strive for full compliance with applicable laws and regulations" (and reference to Chegg's Code of Business Conduct and Ethics) does not become false simply because a textbook publisher filed a lawsuit in 2021 alleging that Chegg infringed its copyrights. That case was no secret from stockholders; it was publicly disclosed long before the Proxy. The Company is vigorously defending itself in the suit and the claim remains unadjudicated. Courts have found these types of aspirational statements to be inactionable, and they certainly are not made "false" just because of a lawsuit.

Moreover, because Chegg's certificate of incorporation contains an exculpatory provision, Plaintiff must explicitly plead that each director acted in bad faith, in that he or she knew that the Proxy was false and misleading and deliberately sought to have a "misinformed" vote on the director election. The Complaint does not begin to meet this rigorous legal standard. To the contrary, other than noting

4.

when directors were elected and how they are compensated, the Complaint says nothing about them. It tells us nothing about what role directors may have had in preparing the Proxy, much less whether any of them believed Chegg's "primary business model" was to facilitate cheating. Absent specific, concrete "scienter" allegations such as these, the Complaint is subject to dismissal.

The Complaint fails for additional, independent reasons. For one, Plaintiff fails to allege any injury-in-fact from the election of directors challenged in the Proxy. While Plaintiff asserts that he and the putative class suffered "significant damages," that allegation is conclusory and does not provide notice as to the economic injury Plaintiff purportedly sustained. The failure to do so is telling. There are no "damages" caused by the re-election of four directors. If what Plaintiff meant to suggest is that the directors somehow mismanaged the Company's affairs (by not confessing in the Proxy that "cheating" is the Company's primary business model), then that claim (if factual support existed for it) would be a harm to the corporation and therefore derivative. Indeed, the great weight of the relief Plaintiff seeks here (corporate governance reforms and internal procedures) is the type of relief typically sought in derivative actions. Yet, Plaintiff made no pre-suit demand. Nor does he allege that a demand would be futile, as required by Court of Chancery Rule 23.1. To the extent this action is an attempt to pursue derivative claims (albeit in the guise of a class action), Plaintiff lacks standing to do so.

5.

Finally, this purported class action is unusual in both design and approach. The reason is tactical. It is devised not only to avoid the mandatory stay currently in place in a prior-pending, and obviously related, securities class action in the Northern District of California, *Leventhal v. Chegg, Inc., et al.*, Case No. 5:21-cv-09953-EJD (N.D. Cal.) ("*Leventhal*"), but also a series of related derivative suits filed in California federal court and in this Court, all of which are stayed pending resolution of the securities class action.[1]

Despite overlapping allegations, and a Section 220 demand in November 2021 directed to the same time period as these other cases (months before the 2022 Proxy even existed), Plaintiff waited over a year after the securities class action and derivative cases were commenced (with lead plaintiff and counsel structures put in place) before filing suit. This action is an overt attempt to catapult ahead of these prior-filed cases by asserting an exaggerated and unfounded theory. And despite bearing the hallmarks of a derivative action, to avoid the derivative case stays, the Complaint is crafted as a "direct" class claim even though Plaintiff's allegations of

---

[1] *Leventhal* was filed in December 2021 on behalf of purchasers of Chegg's securities between May 5, 2020 and November 1, 2021. The Company's motion to dismiss that case will be heard on June 29, 2023. Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), discovery in that case is stayed unless and until it survives a motion to dismiss. Even the *Leventhal* plaintiffs do not make the extreme claim offered here, *i.e.*, that Chegg's "primary business model" is to facilitate cheating. They allege only that Chegg's growth rate during the Covid-19 pandemic was attributable to student cheating.

6.

alleged wrongdoing are based on the same underlying conduct. Plaintiff's attempt to plead around a stay should not be permitted. If not dismissed outright, the case should be stayed pending resolution of *Leventhal*.

## BACKGROUND

### A.    Chegg And Its Business

Chegg is a Delaware corporation headquartered in Santa Clara, California. ¶ 20.[2] Originally founded as a textbook rental service in 2005, Chegg has since gone on to become a leading platform for online learning, with its core offerings known as "Chegg Services." Today, Chegg Services generates over 90% of the Company's revenues, largely through monthly subscriptions to its over 7.8 million student subscribers. ¶¶ 22-24, *see* ¶ 33; Proxy at 1. Among its many offerings is "Chegg Study," a comprehensive learning resource designed to help students better understand schoolwork through flashcards, videos, study guides, and material supporting the "learned example" pedagogical approach in the form of step-by-step

---

[2] Paragraph references ("¶") are to allegations in the Complaint. The 2022 Proxy at issue is attached as Exhibit A to the Transmittal Affidavit of Emily C. Friedman, filed in support of this motion. The other exhibits are the relevant portion of Chegg's certificate of incorporation containing the exculpatory provision (Exhibit B), Plaintiff's Section 220 demand to inspect documents dated November 19, 2021 (Exhibit C), and the amended complaint filed in *Leventhal* (Exhibit D), all of which are properly considered by the Court on a motion to dismiss. *See McPadden v. Sidhu*, 964 A.2d 1262, 1273 n.28 (Del. Ch. 2008); *Orman v. Cullman*, 794 A.2d.5, 16-17 (Del. Ch. 2002); *In re Career Educ. Corp. Deriv. Litig.*, 2007 WL 2875203, at *9 (Del. Ch. Sept. 28, 2007). All exhibits are cited in the form "Friedman Aff., Ex. "__.".

7.

problem solving in over 20 subjects. Chegg Study features Expert Q&A, providing students 24/7 access to subject-matter experts who can help guide them through tough homework and practice questions. *See* ¶¶ 25-28; Proxy at 22. It also includes a comprehensive answer base with millions of solutions for student-posted questions, as well as for some end-of-chapter questions from a number of licensed textbooks. ¶ 28.

As the Complaint alleges, in 2020, Chegg had $644 million in total revenues. ¶ 33. Revenues grew to $776.3 million in 2021. *Id.* And in the first quarter of 2021 alone, Chegg Study received 356 million content views. *Id.*[3] In other words, millions of students have subscribed to Chegg's platform and access its highly valuable educational tools and resources on a regular basis and did so before, during, and indeed after the heart of the pandemic, and continuing today.

**B.    The Parties**

Plaintiff Brian Stansell purports to be a Chegg stockholder since 2017. ¶ 8. He claims to bring this case as "a direct stockholder class action" (¶ 1) on behalf of Chegg stockholders who were eligible to vote at the Company's annual 2022 meeting held on June 1, 2022 (¶¶ 61-64).

---

[3] The Complaint makes no reference to Chegg's financial performance after 2021, which continued to grow.

8.

Despite directing most of the Complaint's allegations at Chegg, it is not named as a defendant. Instead, Plaintiff targets the ten members of the Company's Board at the time of the Proxy (nine of whom are outside, independent directors):

(1) Daniel Rosensweig, the Company's Chief Executive Officer and Co-Chairperson;

(2) Richard Sarnoff, the Company's Co-Chairperson and Chairman of Media, Entertainment and Education for KKR's Private Equity platform in the Americas;

(3) Sarah Bond, the Corporate Vice President, Gaming Ecosystem at Microsoft Corporation;

(4) Renee Budig, formerly the Executive Vice President and Chief Financial Officer of Paramount Streaming, a division of Paramount Global, Inc.;

(5) Paul LeBlanc, the President of Southern New Hampshire University;

(6) Marne Levine, the Chief Business Officer at Meta Platforms, Inc.;

(7) Marcela Martin, the Chief Financial Officer of Squarespace Corporation;

(8) Ted Schlein, a General Partner of Kleiner Perkins;

(9) Melanie Whelan, a Managing Director at Summit Partners; and

(10) John (Jed) York, the Chief Executive Officer of the San Francisco 49ers.

¶¶ 9-18; Proxy at 20-26. Plaintiff claims that the director defendants breached their fiduciary duties because the Proxy allegedly contained false and misleading statements. ¶ 72. On this basis, Plaintiff claims to have sustained unspecified "damages" and seeks other relief. ¶ 74, *see* ¶¶ 63, 65; Prayer for Relief (*id.* at page 29-30).

9.

The Complaint also names Deloitte & Touche LLP ("Deloitte"), the Company's outside independent auditor as a defendant, claiming it "aided and abetted" the directors in this supposed breach of their fiduciary duties. ¶¶ 76-80.

## C.    The April 2022 Proxy and Challenged Statements

The Proxy was disseminated on April 14, 2022 in connection with the Company's upcoming annual meeting of stockholders on June 1, 2022.  The Proxy described three proposals to be voted on at the meeting: (1) the election of four directors to the Board (Bond, Martin, Whelan, and York)[4]; (2) a non-binding advisory vote on executive compensation; and (3) ratification of the appointment of Deloitte as the Company's independent accounting firm for the year ended December 31, 2022.  Proxy at 1-2, 19-20, 30, 31; ¶¶ 57-59.  All three proposals were overwhelmingly approved by Chegg's stockholders.  *See* ¶ 59.[5]

The Proxy is 70-pages long and contains comprehensive disclosures concerning the director nominees and Board members, including Board diversity (by tenure, age, gender, independence, and race/ethnicity), the experience of Board

---

[4] The Company has a staggered Board, with the four Class III directors up for re-election in 2022.  The terms of office of directors in Class I and Class II are not set to expire until the annual meetings in 2023 and 2024, respectively.  Proxy at 19.

[5] *See also* Chegg, Inc. Form 8-K, filed with the Securities and Exchange Commission ("SEC") on June 2, 2022 (with between 87-97% of voters supporting the directors and over 99% ratifying the appointment of Deloitte), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001364954/000136495422000 052/chgg-20220601.htm.

10.

members, corporate governance guidelines, the structure of the Board, the roles and responsibilities of various Board committees, the nomination process, and the qualifications of the directors. Proxy at 2-3, 11-15, 17-26. It also provided detailed information about director compensation and share ownership, as well as an extensive discussion of both executive compensation and Deloitte's appointment (including the fees paid to it). *Id.* at 27-61. None of these disclosures are challenged in the Complaint or alleged to be misleading in any way.

**_Statements about the Company's Mission or Goals._** Instead of challenging the core disclosures in the Proxy, the Complaint focuses on a handful of statements describing the Company's *mission or goals*:

- "Chegg is a mission-driven company. We put learners first and seek to improve their outcomes in school and beyond. We strive to improve the overall return on investment in education by helping students learn more in less time and at lower cost." Proxy at 8, 38; ¶¶ 55, 57;

- "We aim to support and accelerate the path students take from learning to earning. This includes online tools for academia in a digital world and extends beyond the classroom into their professional careers. We help students each step of the way to improve the outcome of their education. To do this, we focus on listening to their needs, elevating and amplifying their voice, and taking actions to provide real life solutions." Proxy at 8; ¶ 57;

- "Proactive. We understand students at a deep level and anticipate their needs at every step." Proxy at 9; ¶ 57;

- "We are extremely proud to offer an integrated platform for learning that has helped so many learners on their education journey by providing them with the type of help they need, when they need it, in the format they want to receive it." Proxy at 10; ¶¶ 3, 57;

11.

- "Learn with Chegg.  Chegg is a student's ride-or-die 24/7, always-answers-when-you-call-partner." Proxy at 22; ¶ 57;

- "Supporting students in their learning journey." Proxy at 56; ¶ 57.

The Complaint alleges that these statements about Chegg's mission and goals, or discussing the array of tools and resources it provides to support the education of millions of students, were somehow false or misleading.  Plaintiff premises that claim on the assertion that it is Chegg's "primary business model" to actually "facilitate cheating" by students, and the Proxy should have said so.  *See* ¶¶ 1, 3-5, 30, 32-33, 50, 58.  Despite the sweeping scope of that allegation, which ignores all of the legitimate ways students use and have come to rely on Chegg's extensive learning tools, the Complaint contains ***no facts*** to back it up.  The Complaint does not attempt to quantify the number or percentage of Chegg's 7.8 million subscribers that used the platform to cheat.  Nor does it plead any facts suggesting that student cheating was the primary driver of Chegg's revenues.   And despite a reference to his use of a Section 220 demand – which pre-dates and ***does not even mention the Proxy*** or purport to investigate its disclosures – Plaintiff cites no Chegg documents to support his theory.  That is because none suggest that student cheating was so pervasive as to constitute the Company's primary business model, or that any director believed as much and deliberately (and in bad faith) sought to mislead stockholders about Chegg's business.  *See infra* Sections I.A.1 and I.A.2.

12.

In place of the necessary facts, the Complaint devotes six pages to various publicly available TikTok videos, tweets, and articles, all of which were publicly available *well before* the Proxy (as early as May 20, 2020), and in which a small minority of some university officials express frustration over student cheating (and a few students admit to doing so). *See* ¶¶ 34-50.  That some students cheat, however, is hardly news, and does not change the fact that nothing in these anecdotal accounts (which Plaintiff portrays as the "[p]ublic [r]eveal of Chegg's [p]rimary [b]usiness [m]odel") (*id.* at page 13), comes close to establishing that cheating is rampant or that any of Chegg's statements about its mission or goals in the Proxy are false and misleading.[6]

_____

[6] Although the Complaint only purports to plead a claim as to the 2022 Proxy on behalf of persons eligible to vote at the 2022 annual meeting, it repeats similar allegations with regard to the April 26, 2019 Proxy, April 17, 2020 Proxy, and April 16, 2021 Proxy. *See* ¶¶ 53-56.  Whatever the intent behind these allegations, they fail for the same reasons that the allegations directed at the 2022 Proxy fail.  The Complaint also alleges that the Company's Annual Report for 2021 disclosed as a risk factor that colleges may restrict access to the Chegg platform, but according to Plaintiff did not disclose *"why"* such restrictions may be applied. ¶ 31 (emphasis in original).  But that allegation is not only irrelevant to the Proxy, it is inaccurate.  The Annual Report expressly discloses that colleges could restrict access "to our website, content or services or the Internet generally for a number of reasons, including security, confidentiality, regulatory concerns, or if they believe our products or services contradict or violate their policies", *See* Chegg, Inc. Form 10-K at 22, filed with     the     SEC     on     February     22,     2022,     available     at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001364954/000136495422000 011/chgg-20211231.htm.

13.

***Statements about ethical standards.*** Plaintiff also alleges that the Company's statement that "[w]e hold ourselves to the highest ethical standards and strive for full compliance with all applicable laws and regulations" (Proxy at 10) and a reference to the Company's publicly available Code of Business Conduct and Ethics (*id.* at 16) were false. As support (besides the deficient "cheating" averments), Plaintiff relies on the filing of a lawsuit in 2021 by textbook publisher Pearson Education, Inc. (the "*Pearson* lawsuit") alleging that Chegg infringed its copyrights. *See* ¶¶ 3, 29, 58. The Company is vigorously defending itself in the suit and the claims remain disputed and unadjudicated. And, the *Pearson* lawsuit was not a secret to stockholders; it was publicly disclosed long before the Proxy.

## D. Plaintiff's Claims

The Complaint purports to bring two causes of action on behalf of stockholders eligible to vote at the June 1, 2022 annual meeting: (1) breach of fiduciary duty "of disclosure and loyalty" based on the alleged Proxy misstatements against Chegg's directors; and (2) aiding and abetting against Deloitte. *See* ¶¶ 72, 80. Plaintiff claims that shareholders "unknowingly re-elected" the directors as a result of the misstatements. ¶ 73. While earlier claiming that unspecified "damages" resulted (¶¶ 65, 66, 74), the Prayer for Relief (*id*. at 29-30) mentions no "damages." Instead, Plaintiff seeks to have the 2022 Proxy declared misleading, to require defendants to "correct" the 2022 Proxy and provide a re-vote, and to have the Court

14.

direct the Board to "take all necessary actions to reform and improve its corporate governance and internal procedures." *Id*.  As further discussed below, the relief sought by the Complaint is derivative in nature, which Plaintiff lacks standing to pursue.  *See infra* Section I.A.3.

### E.    The First-Filed, Related Lawsuits

As noted, this suit was not filed until February 14, 2023, and appears to be an attempt to avoid the mandatory stay currently in place in the prior-pending *Leventhal* securities class action in the Northern District of California, and in a series of related derivative suits filed there and in this Court (all of which are stayed pending resolution of the securities class action).

*Leventhal* was commenced in December 2021 and is before Judge Davila in the Northern District of California.  It is brought under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") on behalf of purchasers of Chegg stock between May 5, 2020 and November 1, 2021, and names the Company, Mr. Rosensweig, and two other officers as defendants.  Plaintiffs in that case claim Chegg misled investors by failing to disclose that Chegg's rapid *growth* in subscribers and revenues during the pandemic was "fueled" entirely by supposed cheating on Chegg's platform. Friedman Aff., Ex. D.  Chegg and the other defendants moved to dismiss that case on February 16, 2023.  The motion is set to be heard on June 29, 2023.  By reason of the PSLRA's mandatory stay provisions,

15.

discovery in the case is stayed unless and until the complaint survives a motion to dismiss.

As is common, stockholder derivative cases followed. The first two suits, brought by stockholders against the same Chegg directors sued here and certain officers, were filed in the Northern District of California on January 13, 2022 and March 30, 2022, respectively. Those cases were later consolidated as *In re Chegg Deriv. Litig.,* Case No. 5:22-cv-00217-EDJ (N.D. Cal.) and are also before Judge Davila. The derivative plaintiffs make the same allegations as *Leventhal* about supposed "student cheating" fueling Chegg's growth during the pandemic and the same "copyright infringement" allegations based on the *Pearson* lawsuit. They also purport to assert claims for, among other things, breach of fiduciary duty, violations of Section 14(a) of the 1934 Act based on the Company's 2021 Proxy, and under Sections 10(b) and 21D of the 1934 Act. Because the allegations overlap with those in *Leventhal*, Judge Davila stayed the derivative suits pending the ultimate resolution of the securities class action. *In re Chegg Deriv. Litig.*, Case. No. 5:22-cv-00217-EDJ, D.I. 24. More recently, a third stockholder derivative case followed in this Court, *Stein v. Rosensweig*, C.A. No. 2023-0244-NAC (Del. Ch.) (filed Feb. 24, 2023). That case, which asserts claims for breach of fiduciary duty based on the very same allegations, has also been stayed by agreement of the parties pending

16.

resolution of the *Leventhal* securities class action.  *See Stein v. Rosensweig*, C.A. No. 2023-0244-NAC, D.I. 6.

All of the pending actions are premised on overlapping allegations, yet Plaintiff in this case waited over a year after the securities class action and derivative cases were commenced to file his action and now seeks to jump ahead of those prior-filed cases.  To circumvent *Leventhal* and the stays, Plaintiff asserts a claim on behalf of a temporally different class under state law on a different disclosure (the 2022 Proxy).  This type of creative pleading should not be rewarded.  If not dismissed outright, as it should be, the case should be stayed pending resolution of the *Leventhal* securities class action under the *McWane* first-filed doctrine.[7]  *See infra* Section II.

---

[7] Plaintiff's Section 220 demand only underscores that the claims here overlap with these other lawsuits and are derivative. *See* Friedman Aff., Ex. C.  The demand, dated November 19, 2021, referred to the *Pearson* copyright infringement case filed a few months earlier, included references to earlier published articles about student cheating, and covered the exact same time period as *Leventhal* and the derivative cases.  In fact, because the demand pre-dated the 2022 Proxy by five months**, it made no reference to the Proxy whatsoever**.  Instead, it purported to be investigating whether to assert a breach of fiduciary duty claim based on earlier events, including whether to bring a derivative suit and whether demand would be futile. *Id.* at 1. Having waited fifteen months since making the Section 220 demand, and finding himself well behind the other cases, Plaintiff attempts to recast his claim as somehow different because it challenges the 2022 Proxy when, in reality, the underlying conduct complained of is identical to the conduct at issue in the other lawsuits.

17.

**ARGUMENT**

I.  **THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST CHEGG'S DIRECTORS**

A.  **Plaintiff Has Failed To Plead Facts Establishing A Non-Exculpated Claim Against The Directors**

"[R]easonable conceivability is the Rule 12(b)(6) pleading standard in Delaware." *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 813 n.12 (Del. 2013); *see In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65 (Del. 1995). While the Court must accept all well-pleaded factual allegations as true, the Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party." *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018); *see In re Alloy, Inc. S'holder Litig.*, 2011 WL 4863716, at *6 (Del. Ch. Oct. 13, 2011). "[O]nly those 'reasonable inferences that logically flow from the face of the complaint'" should be drawn, and a court "'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'" *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quotation omitted); *see Wayne Cnty. Empls.' Ret. Sys. v. Corti*, 2009 WL 2219260, at *8 (Del. Ch. July 24, 2009), *aff'd*, 996 A.2d 795 (Del. 2010) (TABLE).

18.

And, because Chegg's certificate of incorporation contains an exculpatory provision under 8 *Del. C.* § 102(b)(7), for this action to survive, Plaintiff "must state a nonexculpated claim" for breach of fiduciary duty, "*i.e.*, a claim predicated on breach of the directors' duty of loyalty or bad faith conduct." *Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *5 (Del. Ch. June 30, 2014); *see also* Friedman Aff., Ex. B. Absent the necessary factual showing, directors "are entitled to have the claims against them dismissed." *In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173, 1175-76 (Del. 2015).

"Bad faith is not a light pleading standard." *In re Crimson Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *23 (Del. Ch. Oct. 24, 2014). Because directors are presumed to act in good faith and in an informed manner, to state a claim for breach of the duty of loyalty, Plaintiff must allege that the directors acted with "scienter" in connection with the alleged Proxy misstatements, *i.e.*, that they "consciously disregarded" their responsibilities, in "intentional dereliction of duty" or "knowing violation of the law." *McPadden*, 964 A.2d 1274-75; *see also Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*, 2016 WL 4076369, at *9 (Del. Ch. Aug. 1, 2016), *aff'd*, 158 A.3d 449 (Del. 2017). This pleading requirement requires specific facts showing that **each** director "knew of [] false statements and nonetheless acted in bad faith." *Ellis v. Gonzalez*, 2018 WL 3360816, at *1 (Del. Ch. July 10, 2018), *aff'd*, 205 A.3d 821 (Del. 2019). The

19.

Complaint does not meet these exacting standards.  No facts establish a material misstatement or omission in the Proxy.  And no effort is made to show the directors acted in bad faith or knowingly or intentionally sought to mislead stockholders in the Proxy.

**1.  The Claim That The Proxy Contains A False Or Misleading Statement Is Fatally Flawed**

Plaintiff's disclosure claims fail from the start.  What Plaintiff needs to plead is that there was a false or misleading statement of material fact which rendered the election of four directors "misinformed."  "For information to be material . . . the nonpublic information must be of a magnitude that it would, upon disclosure, have 'significantly altered the "total mix" of information in the marketplace.'"  *In re Oracle Corp Deriv. Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004) (quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 292, 944 (Del. 1985)), *aff'd*, 872 A.2d 960 (Del. 2005).  Nothing challenged in the Complaint about the Proxy meets that test.

**a.  Mission And Goals Statements**

Plaintiff takes aim at a series of statements in the Proxy about Chegg's mission and goals as a leading provider of educational resources and services. The notion that those statements about putting "learners first . . . to improve their outcomes" or the Company aiming "to support and accelerate the path students take from learning to earning" through the tools Chegg provides and being "proud to offer an integrated platform for learning that has helped to many learners on their education journey,"

20.

among other similar sentiments (*supra* p. 10; Proxy at 8-10, 29, 56; ¶ 57), were designed to mislead, has no truth to it.  The statements are a straightforward recitation of Chegg's mission and goals and the extensive array of tools and resources it provides to support the education of millions of students.

While these goals are the foundation of Chegg's work, even if Plaintiff's allegations had a factual basis (and they do not), Courts still regularly find aspirational (and enthusiastic) statements similar to these to be immaterial.  *See*, *e.g.*, *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *8 (Del. Ch. July 20, 2010) (finding statements about "very strong brand name," "established market presence" and "unprecedented levels of customer loyalty" "amount to nothing more than vague statements of corporate optimism"); *Lazard Debt Recovery GP, LLC v. Weinstock*, 864 A.2d 955, 971 (Del. Ch. 2004) (finding statements touting "ideal work environment" and "unique resources" to be "at best enthusiastic puffery that no rational prospective investor . . . would find material").  Allegations based on such aspirational statements are routinely dismissed at the pleading stage.  *See id.*; *In re BJ's Wholesale Club, Inc. S'holders Litig.*, 2013 WL 396202, at *13 (Del. Ch. Jan. 31, 2013) (dismissing bad faith claim where "the Complaint contains no facts suggesting that the false statement was material or would have otherwise affected a shareholder's vote"); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 528-29, 537-39 (3d Cir. 1999) (finding statements such as "Our track record underscores our

21.

commitment to excel" and "The Company is among the most efficient producers in the credit card industry" to be immaterial "positive portrayals"), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Right, Ltd.*, 551 U.S. 308 (2007); *In re Danaher Corp. S'holder Deriv. Litig.*, 549 F. Supp. 3d 59, 68-69 (D.D.C. 2021) (dismissing fiduciary duty claims under Delaware law, and federal proxy claims, regarding statements of goal and policies to enhance board diversity); *Ocegueda v. Zuckerberg*, 526 F. Supp. 3d 637, 650-51  (N.D. Cal. 2021) (dismissing claim under Section 14(a) because statements about company policies and objectives of enhancing diversity were aspirational and hence immaterial).

There is also no requirement for the Company to characterize its business in pejorative or negative terms (indeed to affirmatively ***mischaracterize*** it in the way Plaintiff has imagined), or broadly disparage and denigrate its student user base as cheaters.  Plaintiff's theory runs counter to the "long-standing principle of disclosure jurisprudence provid[ing] that a board need not engage in 'self-flagellation.'" *Khanna v. McMinn*, 2006 WL 1388744, at *29 (Del. Ch. May 9, 2006) (citing *Stroud v. Grace*, 606 A.2d 75, 84 n.1 (Del. 1992)); *see Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 143 (Del. 1997) ("The director's duty of disclosure does not oblige them to characterize their conduct in such a way as to admit wrongdoing."). Further, a description of Chegg's mission or goals does not become misleading "simply because it does not use the eye-catching or negative phrasing that plaintiffs

22.

would have wished." *Singh v. Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015); *see In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 3165613, at *15 (Del. Ch. Oct. 2, 2009) ("Delaware law does not require that the proxy statement include plaintiffs' characterization . . ."); *In re MONY Group, Inc. S'holder Litig.*, 853 A.2d 661, 682 (Del. Ch. 2004) ("as a general rule, proxy materials are not required to state … plaintiff's characterization of the facts"); *see also Shaev v. Adkerson*, 2015 WL 5882942, at *10 (Del. Ch. Oct. 5, 2015) ("[N]ot only is Plaintiffs desired disclosure immaterial, but it might have been inappropriate to include in the proxy materials such a speculative conclusion").

But even if Plaintiff could somehow overcome those insuperable obstacles, his allegations about Chegg's mission and goals statements are long on rhetoric and short on pleaded facts. As noted above, Plaintiff pleads no facts to substantiate his claim that Chegg's "primary business model" is to "facilitate cheating." Instead, Plaintiff asks the Court to indulge precisely the sort of unfounded, unreasonable inferences Delaware law forbids. *See*, *e.g.*, *Gerber v. Enters. Products Holdings, LLC*, 2012 WL 34442, at *8 (Del. Ch. Jan. 6, 2012); *see also supra* pp. 16-17. Indeed, the Complaint's sole attempt at quantification is a reference to a single Forbes magazine article interviewing a handful of students. ¶ 38. That second-hand account is based on an inadequate sample size (*i.e.*, 52 in total out of over 7.8 million subscribers) and is not a sufficient basis to conclude that Chegg's "primary business

23.

model" is cheating – at best that article provides "facts" showing some students cheat and nothing about the business model. *See In re K-Sea Transp. Partners L.P. Unitholders Litig.*, 2012 WL 1142351, at *5 (Del. Ch. Apr. 4, 2012) ("The Court . . . need not 'accept conclusory allegations unsupported by specific facts . . .'") (quoting *Price*, 26 A.3d at 166).  Absent well-pleaded facts showing that millions of students are misusing Chegg's resources and services, Plaintiff cannot establish that cheating had *any* impact on Chegg's revenue, much less a material one, that cheating is the primary driver of the Company's revenue, or that it somehow impacted the election of four Board members or the ratification of Deloitte as an auditor.  *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 2006 WL 4782378, at *32 (Del. Ch. Aug. 10, 2006) (rejecting claim because "[s]peculative conclusions unsupported by fact do not allege fraudulent conduct").

Nor do other anecdotal accounts (TikTok videos, tweets, and a few press reports) (¶¶ 34-50) help establish that cheating was sufficiently pervasive so as to constitute the Company's primary business model.  "[A] handful of statements on the internet" are not enough to "generate a disclosure claim concerning otherwise facially appropriate proxy disclosures."  *See Teamsters Loc. 677 Health Servs. & Ins. Plan v. Martell*, 2023 WL 1370852, at *1 (Del. Ch. Jan. 31, 2023); *see also In re Coca-Cola Enters., Inc. S'holders Litig.*, 2007 WL 3122370, at *3 (Del. Ch. Oct. 17, 2007) ("The Court will not . . . give any credence to conclusory allegations or

24.

wildly speculative and unreasonable conjecture."), *aff'd sub nom. Int'l Bhd. of Teamsters v. The Coca-Cola Co.*, 954 A.2d 910 (Del. 2008).

Moreover, these anecdotes, which Plaintiff calls the "[p]ublic [r]eveal of Chegg's [p]rimary [b]usiness [m]odel that [p]romotes [c]heating" (Compl. at 13), were publicly available long before the 2022 Proxy he challenges (and many even predate the unchallenged 2021 Proxy). *See* ¶ 49 (May 20, 2020); ¶ 44 (Oct. 25, 2020); ¶ 37 (Dec. 9, 2020); ¶ 43 (Dec. 10, 2020); ¶¶ 35-36 (Jan. 19, 2021); ¶ 38 (Jan. 28, 2021);[8] ¶ 39 (Feb. 4, 2021); ¶ 47 (Feb. 18, 2021); ¶ 48 (Dec. 7, 2021); ¶ 40 (Jan. 13, 2022); ¶ 42 (Mar. 24, 2022). Thus, even if the unreasonable inferences Plaintiff hopes to draw from these accounts were warranted (and they are not) – the information was already in the public record and available to stockholders well before the 2022 Proxy, and stockholders were fully capable of drawing their own conclusions based on that information. *See In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 905 n.79 (Del. Ch. 2016) (no requirement to disclose "data that stockholders could obtain on their own, even if doing so would involve some cost or investment of time."); *MONY*, 853 A.2d at 683 ("Proxy statements need not disclose 'facts known or reasonably available to the stockholders'" including facts published in news articles (citation omitted)); *Bettis v. Aixtron SE*, 2016 WL 7468194, at *12

---

[8] The Complaint misstates the date of this article as March 31, 2021.

25.

(S.D.N.Y. Dec. 20, 2016) (rejecting securities claim based on information previously "reported by news and media outlets" and thus already "in the public domain"); *see also IRA Trust FBO Bobbie Ahmed v. Crane*, 2017 WL 7053964, at \*13 (Del. Ch. Dec. 11, 2017) ("[D]irectors are 'not required to disclose all available information,' but only that information necessary to make the disclosure of their recommendation materially accurate and complete") (citation omitted), *as revised* (Jan. 26, 2018).

### b.    Business Ethics Statements

The only other statements Plaintiff targets also fail to state a claim. Plaintiff claims that Chegg's statement that it "hold[s] [itself] to the highest ethical standards and strive[s] for full compliance with applicable laws and regulations" (¶¶ 3, 57) and reference to its Code of Business Conduct and Ethics (Proxy at 16) were false. Just like the aspirational mission and goals statements, however, such statements of corporate commitment are not legally actionable. *See English v. Narang*, 2019 WL 1300855, at \*12 (Del. Ch. Mar. 20, 2019) (finding a statement that was aspirational in nature because it referred to "plans and ambitious goals" was not false or misleading), *aff'd*, 222 A.3d 581 (Del. 2019); *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (rejecting similar claims targeting statements such as "we make ethical decisions" that "emphasize a desire to commit to certain 'shared values'"); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("It

26.

is well-established that general statements about reputation, integrity and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them'") (citation omitted); *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010) ("General statements about the company's dedication to 'disciplined' pricing and commitment to 'discipline and rigor' could not have meaningfully altered the total mix of information available to the investing public."); *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *24 (S.D.N.Y. Sept. 28, 2010) ("Statements about corporate culture and integrity are typically considered to be inactionable puffery").[9]  There is no reason to deviate from this well-established case law here.

In any event, even without this case law, Plaintiff's claim does not pass muster.  Chegg's statements – that it holds itself to the highest ethical standards and strives for full compliance with all applicable laws (including intellectual property rights) – does not become false simply because a textbook publisher (Pearson) filed

_____

[9] Because proxy claims are frequently litigated under Section 14(a) of the 1934 Act, there is a wide body of federal case law rejecting the precise theory advocated by Plaintiff here.  Delaware courts faced with the same issue find such decisions instructive and follow federal the federal standard for materiality.  *See*, *e.g.*, *Goldstein v. Denner*, 2022 WL 1797224, at *5 (Del. Ch. June 2, 2022); *see also Bershad v. Curtiss-Wright Corp.*, 1983 WL 10916, at *5 (Del. Ch. Mar. 21, 1983) (because materiality "standards are essentially the same" under Delaware and federal law, "the federal cases, particularly those dealing with the Federal Securities Laws, are instructive on this particular issue"), *aff'd and remanded*, 534 A.2d 840 (Del. 1987).

27.

a lawsuit in 2021 alleging that Chegg infringed its copyrights. *See* ¶¶ 3, 29, 58. The mere existence of an unadjudicated claim, which the Company is vigorously defending and firmly believes lacks merit, does not undermine statements about the ethical standards to which Chegg holds itself or what it *strives* to do. "Notwithstanding the requirement that directors disclose fully all material facts in the solicitation of proxies from shareholders, a board of directors is not required to 'confess to wrongdoing prior to any adjudication of guilt.'" *Khanna*, 2006 WL 1388744, at *29 (quoting *Loudon*, 700 A.2d at 145); *see also Brody v. Zaucha*, 697 A.2d 749, 754 (Del. 1997) ("It is settled Delaware law that a director need not make self-accusatory statements nor engage in 'self-flagellation' by confessing to wrongdoing that has not been formally adjudicated by a court of law"); *Stroud*, 606 A.2d at 84 n.1 (concluding that  a fiduciary need not "draw legal conclusions implicating itself in a breach of fiduciary duty from surrounding facts and circumstances prior to a formal adjudication of the matter").[10]

---

[10] Moreover, the *Pearson* suit was public knowledge.  The case was filed on September 13, 2021, and described in Chegg's Form 10-Q on November 1, 2021. *See* Chegg, Inc. Form 10-Q, filed with the SEC on November 1, 2021, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001364954/000136495421000 113/chgg-20210930.htm. Thus, there is no basis for plaintiff's speculative assertion that shareholders were somehow misled when electing directors on June 1, 2022 based on the existence of the *Pearson* case some nine months earlier. *See Trulia*, 129 A.3d at 905.

28.

## 2. No Facts Show Intentional Misconduct Or Bad Faith

Even overlooking Plaintiff's inability to plead the falsity of any statement in the Proxy, his claims still must be dismissed because there are no facts demonstrating knowledge of falsity or bad faith on the part of any defendant, as is necessary to plead a non-exculpated claim. *See Crimson*, 2014 WL 5449419, at *23 ("[b]ad faith is not a light pleading standard"); *Lyondell Chemical Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) (an "extreme set of facts" is needed) (citation omitted).

Confronted with the exacting task of pleading specific facts demonstrating a breach of the duty of loyalty, Plaintiff resorts to misstating the law, claiming that "[i]naccurate material information disseminated in a proxy in connection to [sic] a stockholder vote violates the fiduciary duties of disclosure and loyalty." ¶ 70. This is not an accurate statement of the law. As Delaware courts hold, even if a misstatement is pleaded (which is *not* the case here), "not every breach of the duty of disclosure implicates bad faith or disloyalty." *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 362-63 (Del. Ch. 2008); *see Ellis*, 2018 WL 3360816, at *1 (plaintiff must still plead specific facts that each director "knew of [] false statements and nonetheless acted in bad faith"). Accordingly, Plaintiff must plead *both* "specific factual allegations that reasonably suggest sufficient board involvement in the preparation of the disclosures" *as well as* facts showing "the alleged misleading statements or omissions were made with knowledge or in bad faith." *In re Citigroup*

29.

*Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009).  The allegations here fail on both fronts.

First, Plaintiff makes no effort to specify how any individual defendant was involved in the preparation of the challenged statements in the Proxy, other than to note that the Proxy was signed by a company officer "under the authorization of Director Defendants."  ¶ 19.  Under Delaware law, bare allegations that a board authorized or signed public disclosures do not state a claim for a breach of the duty of loyalty.  *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (directors' execution of public filings "without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality"); *In re The Dow Chemical Co. Deriv. Litig.*, 2010 WL 66769, at *10 (Del. Ch. 2010) ("[t]hough the complaint does identify specific disclosures alleged to be misleading, plaintiffs do not allege specific facts 'that reasonably suggest sufficient board involvement in the preparation of the disclosures'") (citation omitted); *Citigroup*, 964 A.2d at 134 ("Plaintiffs do not allege facts suggesting that the director defendants prepared the [disclosures] or that they were directly responsible for the misstatements or omissions").

Equally unavailing are Plaintiff's attempts to plead knowledge of falsity based on conclusory assertions such as, "the Board has always been aware of cheating allegations" or that "[i]t appears that the Board aims to continue facilitating cheating and make that Chegg's primary business model." ¶¶ 50, 51.  Those unsupported

30.

averments directly flout the requirement that Plaintiff must offer "**non-conclusory allegations**" demonstrating that "directors knew of the false statements and nonetheless acted in bad faith". *Ellis*, 2018 WL 3360816, at *1; *Pfeffer v. Redstone*, 965 A.2d 676, 687 (Del. 2009) (rejecting proxy misstatement claims where "[o]ther than conclusorily asserting that the…Directors would (or must) have been told this information, [plaintiff] did not sufficiently plead any other facts to support that inference."); *Horman v. Abbey*, 2017 WL 242571, at *7 (Del. Ch. Jan. 17, 2019) (plaintiff must offer "facts that allow a reasonable inference that the directors acted with scienter which, in turn, 'requires not only proof that a director acted inconsistently with his fiduciary duties,' but also most importantly, that the director *knew* he was so acting."); *Citigroup*, 964 A.2d at 134 ("A determination of whether the alleged misleading statements or omissions were made with knowledge or in bad faith requires an analysis of the state of mind of the individual director defendants").

The throwaway averment that Chegg's ten directors were compensated or that two of them sold some shares does nothing to fill the factual void here. *See* ¶¶ 9-18, 53-54. All corporate directors are compensated. That fact does not suggest any purposeful infidelity towards the corporation, much less show that they deliberately misinformed stockholders in the Proxy. *See Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 175 (Del. Ch. 2005) ("the fact that directors receive fees for their services does not establish an entrenchment motive on their part"), *aff'd*, 906 A.2d

31.

114 (Del. 2006); *Kahn v. MSB Bancorp., Inc.*, 1998 WL 409355, at \*3 (Del. Ch. July 16, 1998) (same), *aff'd*, 734 A.2d 158 (Del. 1999); *see also Solomon v. Armstrong*, 747 A.2d 1098, 1126 (Del. Ch. 1999) ("In most circumstances Delaware law routinely rejects the notion that a director's interest in maintaining his office, by itself, is a debilitating factor"), *aff'd*, 746 A.2d 277 (Del. 2000).  Were the rule otherwise, the "extreme set of facts" needed to plead bad faith would be a meaningless requirement.  *See Lyondell*, 970 A.2d at 243 (citation omitted).

### 3.    Plaintiff Fails To Plead Cognizable Class Damages And Lacks Standing To Pursue Derivative Claims

Plaintiff also fails to articulate any cognizable damages.  Despite insisting that he and the putative class are entitled to "significant damages" (¶ 74; *see also* ¶¶ 63, 65-66), the Complaint fails to allege – and thus provides no notice of – what comprises these claimed "damages."

Dismissal is warranted when a complaint fails to explain what the damages are or how the damages sought are "logically and reasonably related to the harm or injury for which compensation is being awarded."  *See In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773 (Del. Ch. 2005) (affirming dismissal under Rule 12(b)(6) where "[p]laintiffs have pled no facts from which . . . any quantifiable amount . . . can be inferred from the claimed infringement of their right to be told the material facts relating to the merger on which they were asked to vote"); *see also*

32.

*Erisman v. Zaitsev*, 2021 WL 6134034, at *17 (Del. Ch. Dec. 29, 2021) (rejecting claim for breach of the duty of loyalty where "[n]otably absent from the Amended Complaint are any factual allegations regarding . . . what damages the Company or Members incurred"); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 344 (S.D.N.Y. 2010) (applying Delaware law to dismiss disclosure claims where "[p]laintiffs have not alleged a causal connection between the harm alleged—denial of their right to vote—and the damages they seek"). Here, the Complaint does not specify any damages at all, much less "significant damages," resulting from the election of four directors at the 2022 annual meeting. Indeed, it is not clear what such damages could be. That deficiency warrants dismissal.[11]

If what Plaintiff meant to suggest is that the directors had somehow mismanaged the Company's affairs causing damage (and were elected without confessing that Chegg's business was "cheating"), that claim would be derivative, not direct, as it would involve an injury to the Company. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). The Delaware Supreme

---

[11] Plaintiff does not purport to seek "nominal" damages either, but even if he had, they too would be unavailable on the facts alleged here. *See In re Tyson Foods, Inc.*, 919 A.2d 563, 601-02 (Del. Ch. 2007) (dismissing nominal damages claim where "[p]laintiffs theorize that had Tyson's management faithfully disclosed information . . . shareholders might not have voted to elect the directors").

33.

Court has rejected the theory that a shareholder class can seek "to recover the identical damages on their disclosure claims[ ] that the corporation would be entitled to recover on its underlying (derivative) claim" for the same alleged misbehavior by directors. *J.P. Morgan Chase*, 906 A.2d at 773-74; *see also Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005) (describing a claim for mismanagement as a "paradigmatic derivative claim").

Indeed, aside from the unexplained "damages," the relief sought – in the form of corporate governance reforms and improved internal procedures expressly designed ***"to protect Chegg"*** (Compl. at 29) – is classically derivative. *Cf. Ryan v. Gifford*, 2009 WL 18143, at *10 (Del. Ch. Jan. 2, 2009) (approving settlement of derivative case where company "will also receive the benefit of substantial corporate governance changes"); *see also Tooley*, 845 A.2d at 1036.[12]  Similar reforms are sought in the pending, stayed derivative suits.  Plaintiff here, however, lacks standing to assert derivative claims under Rule 23.1 because he made no pre-suit demand on the Board and does not allege that demand would be futile.  *See Pfeffer v. Redstone*, 2008 WL 308450, at *14 (Del. Ch. Feb. 1, 2008) (rejecting plaintiff's

---

[12] To the extent plaintiff also seeks a revote on the election of directors or on the ratification of Deloitte as Chegg's outside auditor, that too would be derivative because "the recovery from rescinding the vote would accrue to the corporation and not directly to the shareholder." *Calamore v. Juniper Networks, Inc.*, 2008 WL 6971767, at *4 (N.D. Cal. Aug. 13, 2008) (applying Delaware law), *aff'd*, 364 F. App'x 370 (9th Cir. 2010).

34.

characterization of claims as direct and dismissing derivative claims because plaintiff "failed to present either board of directors with her claim or allege why demand should be excused under Rule 23.1"), *aff'd*, 965 A.2d 676 (Del. 2009).

## II.    IF THE CASE IS NOT DISMISSED, IT SHOULD BE STAYED

If Plaintiff's claims survive the motion to dismiss stage (they should not), this Court should exercise its discretion and stay the litigation pending resolution of *Leventhal*.  As the last plaintiff to file claims premised on the same underlying allegations of wrongdoing, Stansell should not be permitted to leapfrog ahead of others who filed their claims much earlier in time.

### A.    A Stay Is Appropriate Under *McWane* And The First-Filed Doctrine

"[C]onsiderations of comity and the necessities of an orderly and efficient administration of justice" vest this Court with broad discretion to dismiss or stay this action in favor of a prior-filed action.  *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).  To avoid "wasteful duplication of time, effort and expense" and "the possibility of inconsistent and conflicting rulings and judgments" (*id.*), courts should stay or dismiss a later-filed action where: (1) "there is a prior pending action"; (2) the prior action "involves the same parties and issues;" and (3) "the other court is capable of doing prompt and complete justice."  *Kurtin v. KRE, LLC*, 2005 WL 1200188, at *3 (Del. Ch. May 16, 2005)

35.

(citing *McWane*, 263 A.2d at 283). As explained below, each of these factors is satisfied here.

Moreover, although the *McWane* analysis is often applied to stay later-filed derivative claims, the rationale behind the doctrine warrants staying later-filed class actions as well. *See Derdiger v. Tallman*, 773 A.2d 1005, 1012 (Del. Ch. 2000) (applying *McWane* and staying a Delaware class action in favor of a federal class claim). And, any concerns about applying McWane prior to class certification have been ameliorated by the PSLRA. *Id.* ("[D]efendants have persuasively shown that certain legislative events have significantly reduced the basis for concerns" relating to the adequacy of class representation because, "under the PSLRA, a federal court must choose the adequate lead plaintiff and lead counsel at the outset of the case, rather than through a motion for class certification."); *see also Caravetta v. McKesson HBOC, Inc.*, 846 A.2d 240, 243-44 (Del. Super. 2000) (applying *McWane* to an uncertified class).

### 1.    *Leventhal* **Is A Prior Pending Action**

The original complaint in *Leventhal* was filed on December 22, 2021. *Leventhal* D.I. 1. Almost a year later, on December 8, 2022, the Court-appointed lead plaintiff filed an amended complaint. *Leventhal* D.I. 115. Plaintiff here then waited several more months, until February 14, 2023, before filing his Complaint. This is not a case where Plaintiff lost a "race to the courthouse." *See Caravetta*, 846

36.

A.2d at 243 (noting that plaintiffs, who waited months to file in Delaware, did not and could not dispute that another action was first-filed).

### 2. The *Leventhal* Action And This Action Involve Nearly Identical Issues And Similar Parties

Despite Plaintiff's efforts to differentiate his claims from those asserted in the federal securities action (and those asserted in the stayed derivative cases), the crux of the various sets of claims are substantively identical – all of the claims tie back to the same underlying "Chegg facilitates student cheating" allegations. *Compare* Friedman Aff., Ex. D *with Stansell* Complaint (D.I. 1). In a *McWane* analysis, Delaware courts look to the substance and functionality of the parties and claims, not simply the packaging. *See*, *e.g.*, *Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7456003, at *2 (Del. Ch. Nov. 20, 2015) (noting the *McWane* doctrine favors a stay "not only where the parties and issues are identical, but also where there exists substantial or functional identity between the two such that they arise out of a common nucleus of operative fact.") (internal quotation marks omitted); *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park Dr. BNK Investors, LLC*, 2009 WL 3335332, at *7 (Del. Ch. Oct. 15, 2009) ("[T]he parties and issues in the competing litigations rarely will be exactly identical. The court must, therefore, 'balance the lack of complete identity of parties and issues against the possibility of conflicting rulings which could come forth if both actions were allowed to proceed simultaneously.'") (quoting *Xpress Mgmt. Inc. v. Hot Wings Int'l, Inc.*, 2007 WL

37.

1660741, at *4 (Del. Ch. May 30, 2007)).   Here, Plaintiff's claims involve substantively the same parties and claims as in *Leventhal* which militates in favor of a stay.

*First*, the Complaint and the *Leventhal* action turn on the same fundamental issues of fact and law.  Although the relief sought in the two actions is different – Stansell seeks, in part, a corrected proxy and corporate reform measures  (in addition to unspecified money damages, as discussed above), while the *Leventhal* action only seeks money damages – a stay is nonetheless appropriate under *McWane*. *See Derdiger*, 773 A.2d at 1017 (finding that fiduciary duty claims derived from the same set of facts are similar for *McWane* purposed even though "repackage[d]" as securities law claims); *Visual Edge Sys., Inc. v. Takefman*, 2000 WL 193107, at *2 (Del. Ch. Jan. 31, 2000) (noting that the *McWane* analysis "applies equally to actions involving issues which, while similar, are not identical to the pending action[], provided that the actions arise out of the same set of operative facts"); *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *4 (Del. Ch. Apr. 12, 1994) ("[W]hile the claims in the two courts may be stated in different ways, they are actually the same claims").

In this action and in *Leventhal*, the plaintiffs are Chegg stockholders who were allegedly harmed because of allegedly material misstatements Chegg made regarding the supposed impact of student cheating on its business.  *Stansell* Compl.

38.

¶¶ 3-6 (alleging that Chegg lied about its primary business model which, in reality, was to facilitate cheating); Friedman Aff., Ex. D ¶ 12 (alleging that Chegg lied to investors about the true causes of the Company's growth—"rampant use of Chegg's 'Expert Q&A tool' for cheating. . . ." ).  The similarities in the complaints are striking.  Both complaints reference the same Forbes Article from January 28, 2021. *Stansell* Compl. ¶ 38; Friedman Aff., Ex. D ¶ 53. Both Complaints point to purported fraudulent statements made by the Company regarding the value it places on academic integrity.  *Stansell* Compl. ¶ 55 ("Such vague statements misled investors to believe that Chegg values academic integrity, which is not the case."); Friedman Aff., Ex. D ¶¶ 235-236 (alleging that "[w]e believe academic integrity is a fundamental part of the learning process and we work to preserve it[]" was a fraudulent and misleading statement) (emphasis removed).  The core question that both this Court and the Northern District of California are being asked to decide is the same: did Chegg make actionable fraudulent statements relating to supposedly wide-spread cheating?  Because the two actions "arise out of a common nucleus of operative fact," a stay is favored under *McWane*.  *See, e.g.*, *Tulum Mgmt.*, 2015 WL 7456003, at *2 ("Well-settled Delaware policy favors resolution  of all claims arising from a common nucleus of operative facts in the same court at the same time") (internal quotations omitted); *Brookstone Partners Acquisition XVI, LLC v. Tanus*, 2012 WL 5868902, at *4 (Del. Ch. Nov. 20, 2012) (quoting *EuroCapital*

39.

*Advisors, LLC v. Colburn*, 2008 WL 401352, at \*2 (Del. Ch. Feb. 14, 2008) ("[T]he pragmatic focus is on whether the claims 'are closely related and arise out of the same common nucleus of operative facts.'")).[13]

*Second*, the parties in the two actions are functionally the same, despite Plaintiff's efforts to plead otherwise. In *Leventhal*, the class is defined as, "all persons or entities who purchased, or otherwise acquired Chegg common stock between May 5, 2020, and November 1, 2021, inclusive and who were damaged thereby." *See* Friedman Aff., Ex. D ¶ 306. In this action, the class is defined as "all Chegg stockholders, except Defendants and their affiliates, who were eligible to vote at the 2022 Meeting." *Stansell* Compl. ¶ 61. On their face, there is clear overlap between the two classes – any class members in *Leventhal* who did not sell their stock prior to the 2022 annual meeting would also be members of the class in this action. The fact that the *Stansell* Complaint could contain additional class members that are not part of the *Leventhal* class is not dispositive because "[a]n absolute identity of issues and participants is not a prerequisite for a stay." *Schnell*, 1994 WL 148276, at \*4 (internal quotations omitted). Instead, the Court examines whether there is an "identity of plaintiffs in both actions." *Id.* at \*5. The answer here is

---

[13] As noted, underscoring the overlap, Plaintiff's Section 220 demand covered the same time period at issue in *Leventhal*, and made no mention of the 2022 Proxy. *See* Friedman Aff., Ex. C.

clearly yes.  Both purported classes seek relief for Chegg's stockholders based on substantively similar allegedly inaccurate or misleading disclosures that were made during two overlapping time periods.  The classes' interests are therefore aligned and there is no harm to Plaintiff from having his case stayed until the court where the first-filed action is pending adjudicates the claims.  To the extent the plaintiff succeeds in *Leventhal*, Plaintiff can resume his claims in this Court at that juncture.

Further, the difference in named defendants is not material in the *McWane* analysis.  *Id.*  In an effort to further distance his Complaint from *Leventhal*, Plaintiff names as defendants additional directors that are not defendants in the federal securities class action (but are in the related derivative suits) and Deloitte as an alleged aider and abettor.  But a plaintiff who is late in filing claims should not be able to circumvent a stay by naming previously unnamed corporate directors or third-party defendants.  As the Court explained in *Derdiger*, if there are viable actions against non-named defendants in the federal action, the lead plaintiff can name those individuals. 773 A.2d at 1015.

Plaintiff's choice of named defendants reveals his broader scheme. Notably absent from Plaintiff's list of director-defendants is the Company, which raises questions as to Plaintiff's true purpose. In *Derdiger*, the Court noted:

> [A] careful reading of Derdiger's complaint against [the federal complaint] reveals that his 'meaningful difference between the parties' argument is a façade. . . . Derdiger all but concedes he is in reality not even seeking money damages . . . merely a liability finding that they

41.

> breached some fiduciary duty . . . by disseminating a proxy statement that contained false information.

*Id.*   Similarly, here, the Complaint does not articulate any cognizable money damages sought from the individual directors; its Prayer for Relief focuses on a finding that the individual directors are liable for breaching their fiduciary duties in connection with the Proxy disclosures.   Compl. at 29, ¶ B.   Whether the Chegg directors breached their fiduciary duties in connection with their alleged failure to disclose Chegg's true business model due to student cheating overlaps with what is being litigated in *Leventhal* and is "being vigorously prosecuted in the [federal] class action." *Id.*[14]

---

[14] As previously noted, the bulk of plaintiff's requests for relief are typical forms of relief sought in a stockholder derivative action. *See* Compl. at 29, ¶ E (demanding that the Board "take all necessary action to reform and improve its corporate governance and internal procedures").   To the extent this Court finds Plaintiff's claim are derivative in nature, a stay is still warranted. This Court has repeatedly recognized that a derivative action should be stayed if it seeks relief that is dependent on the outcome of related litigation, such as a securities class action. *See*, *e.g.*, *In re Insys Therapeutics Inc. Deriv. Litig.*, 2017 WL 5953515, at *3 (Del. Ch. Nov. 30, 2017) (granting a stay where "the full extent of damages due to [the company] cannot be known until the resolution of the federal securities case and government investigation"); *see also In re Duke Energy Corp. Coal Ash Deriv. Litig.*, 2015 WL 5135066, at *1-2 (Del. Ch. Aug. 31, 2015); *In re Massey Energy Co.*, 2011 WL 2176479, at *27 (Del. Ch. May 31, 2011).   Consistent with this authority, all the pending derivative cases against Chegg's Board have been stayed pending *Leventhal.*

42.

### 3.    The California Federal Court Is Capable Of Doing Prompt and Complete Justice

There is no question that the Northern District of California is capable of doing prompt and complete justice. Indeed, a federal court is the appropriate forum for deciding issues arising under the federal securities laws. *See Issen & Settler v. GCS Enters., Inc.*, 1981 WL 15131, at *4 (Del. Ch. Dec. 7, 1981) (finding that where the first-filed action in federal court alleges federal securities act violations, the "U.S. District Court, which has exclusive jurisdiction over these matters, is the only forum capable of granting complete relief on all the issues arising out of the transactions which are the subject of this litigation"). Delaware courts consistently find that federal courts can provide prompt and complete justice. *See*, *e.g.*, *Corwin v. Silverman*, 1999 WL 499456, at *6 (Del. Ch. June 30, 1999) (noting that "[f]ederal courts have proven time and again" their ability to do prompt and complete justice); *Kaufman v. Kumar*, 2007 WL 1765617, at *3 (Del. Ch. June 8, 2007) (similar).

Plaintiff's efforts, through creative pleading or otherwise, to distance his claims from those in *Leventhal* fail. Unlike *In re Lordstown Motors Corp. S'holders Litig.*, the distinction between the two actions here is truly an "artificial one." 2022 WL 678597, at *5 (Del. Ch. Mar. 7, 2022). The disclosure claims brought by *Stansell* are substantively duplicative of the matters already being vigorously prosecuted in *Leventhal*. *Compare Derdinger*, 773 A.2d at 1015 (granting a stay where the Delaware claims were substantively the same as those in the federal class

43.

action) *with Lordstown Motors,* 2022 WL 679687, at \*5 (denying a stay where the Delaware claims "are not redundant or duplicative of the first-filed securities claims.") (internal quotations omitted).

## **CONCLUSION**

Because Plaintiff has not and cannot plead sufficient facts to support his claim for breach of fiduciary duty, the Complaint should be dismissed.  Alternatively, and at a minimum, the Court should stay this action pending resolution of the related securities class action pending in the Northern District of California.

44.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Susan W. Waesco
William M. Lafferty (#2755)
Susan W. Waesco (#4476)
Emily C. Friedman (#7054)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200

OF COUNSEL:

Dean Kristy
Jennifer C. Bretan
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
(415) 875-2300

Felix S. Lee
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500

*Attorneys for Defendants
Daniel L. Rosensweig, Richard Sarnoff,
Renee Budig, Sarah Bond, Paul
LeBlanc, Marne Levine, Marcela
Martin, Ted Schlein, Melanie Whelan,
and John E. York*

Words: 10,848

May 30, 2023