UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL,<br><br>   Plaintiff,<br><br> v.<br><br>CHEGG, INC., et al.,<br><br>   Defendants. | Case No. 21-cv-09953-PCP<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION AND DENYING AS MOOT MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 155, 168 |

## BACKGROUND

In December 2021, lead plaintiffs Pompano Beach Police and Firefighters' Retirement System and KBC Asset Management NV brought this securities fraud class action lawsuit against defendants Chegg, Inc., Chegg CEO Daniel Rosensweig, Chegg CFO Andrew Brown, and Chegg President of Learning Services Nathan Schultz. Defendants moved to dismiss the case, and the Court denied defendants' motion on March 4, 2024. Dkt. No. 150. Defendants then moved for leave to file a motion for reconsideration, which the Court granted. Dkt. Nos. 155, 158. For the following reasons, the Court denies defendants' motion for reconsideration.[1]

## LEGAL STANDARDS

"Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). "Even if the court grants a party leave to file a motion for reconsideration, these motions 'are … rarely granted.'" *Costa v. Postmates Inc.*, 2020 WL 13526733, at *2 (N.D. Cal. June 26, 2020). That is because a "motion for reconsideration is an 'extraordinary remedy, to

---

[1] The facts and procedural history underlying this litigation can be found in the Court's order denying defendants' motion to dismiss. Dkt. No. 150, at 1–3.

be used sparingly in the interests of finality and conservation of judicial resources.'" *Stromberg v. Ocwen Loan Servicing, LLC*, 2017 WL 3727233, at *1 (N.D. Cal. Aug. 30, 2017) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

For these reasons, "motions for reconsideration are disfavored," *Garcia v. City of Napa*, 2014 WL 342085, at *1 (N.D. Cal. Jan. 28, 2014), and subject to "rigorous standards," *Symantec Corp. v. Zscaler, Inc.*, 2018 WL 3537201, at *2 n.1 (N.D. Cal. July 23, 2018). "[M]ere disagreement with a court's order does not provide a basis for reconsideration." *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 4126272, at *4 (N.D. Cal. Sept. 9, 2022). And "[r]econsideration is not appropriate when a movant relies on arguments previously raised; that is, a motion for reconsideration is not a vehicle permitting the unsuccessful party to reiterate arguments previously presented." *Williams v. Lujan*, 2018 WL 3861655, at *2 (N.D. Cal. Aug. 14, 2018).

## ANALYSIS

### I. Defendants' Motion for Reconsideration Is Denied.

Defendants argue that the Court improperly denied their motion to dismiss plaintiffs' complaint because plaintiffs failed to adequately plead falsity, scienter, and loss causation with particularity as required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA).

#### A. Defendants' Arguments Regarding Falsity Are Repetitive.

Defendants argue that plaintiffs failed to adequately plead falsity because their allegations did not link purported cheating with Chegg's growth. Dkt. No. 155, at 9. Defendants also contend that the Court impermissibly drew inferences from circumstantial evidence in holding that plaintiffs pleaded with particularity that increased cheating on Chegg during the class period led to increased revenue and subscriber growth. For example, defendants argue that the statements by former employees in plaintiffs' complaint—which describe Expert Q&A as "the cheating business" that was the "main moneymaker" and the "reason for people to subscribe, it was driving [growth]," Dkt. No. 115, at 55—are vague and conclusory and thus cannot be relied upon under Rule 9(b). Defendants further contend that plaintiffs fail to quantify the *rate* of increased cheating

2

through their empirical analysis, thereby failing to meet the PSLRA's particularity requirements.

As noted already, a motion for recondensation is "not appropriate when a movant relies on arguments previously raised." *Williams*, 2018 WL 3861655, at *2. All of defendants' arguments attacking the plaintiffs' theory of falsity were made in defendants' motion to dismiss. The Court addressed these arguments in denying defendants' motion to dismiss. Dkt. No. 150, at 5–7 (holding that plaintiffs need not quantify the rate of cheating to satisfy the PSLRA and Rule 9(b)'s particularity requirements, and that the former employee statements are sufficient to link cheating to growth). Defendants' motion to reconsider the Court's decision regarding falsity is denied.

### B. Defendants' Arguments Regarding Scienter Are Repetitive.

Defendants also argue that plaintiffs did not adequately plead a "strong inference" of scienter as required by the PSLRA and Rule 9(b). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). They contend that plaintiffs failed to plead particularized facts demonstrating that the individual defendants "intended to deceive investors or were deliberately reckless in making the statements to investors." Dkt. No. 155, at 16–17 (citing *Espy v. J2 Global, Inc.*, 2024 WL 1689091, at *2 (9th Cir. Apr. 19, 2024)).

Again, defendants simply reiterate arguments from their motion to dismiss that the Court did not find persuasive. As defendants concede in their motion for reconsideration, plaintiffs can adequately plead scienter under the PSLRA if their particularized allegations show that defendants made statements with deliberate recklessness. *See Zucco*, 552 F.3d at 991 (holding that plaintiffs must plead "a highly unreasonable omission" to meet the strong inference standard). Contrary to defendants' assertions, the Court applied this standard. As the Court held in its order denying defendants' motion to dismiss, plaintiffs met this bar by specifically alleging that Chegg received a plethora of reports from universities and faculty members about rampant cheating on the platform. Dkt. No. 150, at 11. Moreover, one university administrator "emailed Rosensweig directly" about cheating on Chegg's platform, after which three high-level Chegg representatives responded. *Id.* at 12. Plaintiffs also alleged that defendants Rosensweig, Brown, and Schultz attended meetings where widespread student cheating was discussed. *Id.*

3

In short, and as the Court previously held, plaintiffs have pleaded with particularity that the defendants (including the individual executives) were at least deliberately reckless in making statements to investors about the lack of cheating on Chegg. *Id.* at 2, 9–10. "[M]ere disagreement with a court's order does not provide a basis for reconsideration." *Maynard*, 2022 WL 4126272, at *4. Defendants' motion to reconsider whether plaintiffs adequately pleaded scienter is denied.

### C. Defendants' Arguments Regarding Loss Causation Fail.

Defendants finally argue that plaintiffs fail to plead loss causation with particularity and that the Court misstated relevant Ninth Circuit law in holding otherwise. Specifically, defendants contend that the Court's reliance on *Lloyd v. CVB Financial Corp.* was improper because *Lloyd* involved a subsequent corrective disclosure by the *defendant* confirming analysts' speculations about the relationship between alleged misstatements and a stock price decline. 811 F.3d 1200, 1202 (9th Cir. 2016). In contrast, defendants argue, no such corrective disclosure occurred here.

But defendants fail to recognize that the Ninth Circuit has permitted alternative approaches to pleading loss causation besides alleging a corrective disclosure by the defendant. *See, e.g.*, *In re Daou Systems, Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005) (holding that plaintiffs' sufficiently pleaded loss causation in alleging "that the drop in Daou's stock price was causally related to Daou's financial misstatements") (abrogated on other grounds). In *Daou*, the Court held that plaintiffs had plausibly pleaded loss causation where the market learned of the defendants' misstatements about its accounting practices not through a corrective disclosure but instead through the company's reporting of its "true financial condition." *Id.* The Court found that loss causation had been adequately pleaded where plaintiffs contended that defendants' misstatements had inflated the company's stock price and the company's subsequent financial reports demonstrated that the inflation was artificial.

Similarly here, plaintiffs allege that defendants' misstatements about the lack of cheating on Chegg and their failure to link that cheating with Chegg's growth were substantial causes for the increase in the company's stock price, and that this increase evaporated once Chegg issued revenue guidance providing a more accurate impression of its business. *See* Dkt. No. 115, at 106 ("Defendants engaged in a scheme to deceive the market … by failing to disclose and

4

misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Chegg common stock fell precipitously as the prior artificial inflation dissipated."). As in *Daou*, the analysts' belief that this lowered guidance resulted from a return to in-person learning where cheating on Chegg was less feasible simply strengthened plaintiffs' allegations of a connection between defendants' prior misstatements and the inflated growth of Chegg's stock price. *See Daou*, 411 F.3d at 1026 (discussing an anonymous analyst's "question" as to "whether [defendants were] manufacturing earnings").

Defendants further argue that the analysts' observations here were "too speculative to plead with particularity that shareholders experienced losses." *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 Fed. Appx. 603, 605 (9th Cir. 2020). But *In re Ocera*, the analysts generically commented that the defendant's stock was mispriced relative to the true value of the shares. By contrast, the Forbes and Morgan Stanley analysts here discussed with specificity their conclusion that a move away from remote learning and reduction in cheating was the reason for the lowered revenue guidance that caused the company's stock price to decline.[2]

For these reasons, the Court again finds that plaintiffs have adequately pleaded loss causation, and defendants' motion for reconsideration of that issue is denied.

## II. Plaintiffs' Motion To Strike Is Denied.

In support of its motion for reconsideration, defendants filed a statement of recent decision on June 13, 2024. Dkt. No. 167. Plaintiffs move to strike defendants' statement of recent decision, arguing that Civil Local Rule 7-3 requires that such a statement be filed "[b]efore the noticed hearing date." L.R. 7-3(d)(2). Plaintiffs argue that because the hearing on the motion for reconsideration was scheduled for June 6, 2024, defendants' statement filed after that date does not comply with Rule 7-3. Because the Court has not considered defendants' statement of recent decision in denying defendants' motion for reconsideration, the Court denies as moot plaintiffs' motion to strike. The August 8, 2024 hearing on plaintiffs' motion to strike is vacated.

---

[2] Indeed, the Forbes and Morgan Stanley analyses referenced here were far less speculative than the anonymous analysis quoted by the Ninth Circuit in *Daou*.

**CONCLUSION**

For the foregoing reasons, the Court denies defendants' motion for reconsideration and denies as moot plaintiffs' motion to strike.

**IT IS SO ORDERED.**

Dated: July 17, 2024

_____
P. Casey Pitts
United States District Judge