**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Dr., Suite #180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Counsel for Lead Plaintiffs and
Lead Counsel for the Class*

*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CHEGG, INC., DANIEL L. ROSENSWIEG, ANDREW J. BROWN, and NATHAN SCHULTZ, <br><br> Defendants. | Case No. 5:21-cv-09953-PCP <br><br> <u>CLASS ACTION</u> <br><br> **STIPULATED [PROPOSED] ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AS MODIFIED** |

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiffs, Pompano Beach Police and Firefighters' Retirement System and KBC Asset Management NV, and Defendants, Chegg, Inc., Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz (together with Lead Plaintiffs, the "Parties," and each individually, a "Party"), by and through their undersigned counsel, that this Stipulated [Proposed] Order Re Discovery Of Electronically Stored Information (the "ESI Discovery Protocol") will govern how the Parties manage electronic discovery in the above-captioned case (the "Action"). This ESI Discovery Protocol shall supplement the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.[1]

## I. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## II. LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without Court intervention.

---

[1] To the extent that this ESI Discovery Protocol identifies specific forms of production and/or processing specifications relating to the production of documents and electronically stored information ("ESI"), it shall govern such matters and supersedes any other instructions pertaining to document requests unless otherwise agreed to by the Parties or ordered by the Court.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

**III. PRESERVATION**

Consistent with the Parties' obligations under Rule 26(f) of the Federal Rules of Civil Procedure, the Parties will discuss their preservation obligations, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action. The Parties will, upon becoming aware of them, promptly disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain the reasons to support such a belief.

**IV. IDENTIFICATION OF RESPONSIVE DOCUMENTS**

The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information. The Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, applicable document retention policies or practices date ranges, file types, and search criteria to cull documents for review.

Within fifteen (15) days of serving their respective responses and objections to requests for the production of documents, the Parties shall meet and confer regarding their respective search process(es) including, but not limited to, search terms, sources to be searched, search tools, search term hit reports, and use of Technology Assisted Review ("TAR"). Each Producing Party shall take reasonable steps to validate its search process(es) (*i.e.*, using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. Responsive documents or categories of documents, as agreed by the Parties, that are easily identifiable and segregable from centralized files may be collected without the use of search terms or other agreed-upon search methodology. The Parties will meet and confer about which categories of documents will be produced with and without the use of search terms or other search methodology.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

For the avoidance of any doubt, (i) the Parties acknowledge that a document may be non-responsive and not produced even if it includes one of the search terms; and (ii) the Parties acknowledge that their obligations under the Federal Rules of Civil Procedure and under the relevant local rules and guidelines of this Court to make reasonable efforts to search for and produce relevant, non-privileged materials responsive to discovery requests is not strictly limited by the parameters of sources, time periods, search terms, and custodians agreed upon by the Parties, subject to proportionality considerations, *e.g.*, ESI that is known to be non-privileged and responsive to a discovery request shall be produced without regard to whether it was responsive to a search term, unless specifically identified as being withheld pursuant to a specific objection. Subject to the limitations on discovery imposed by the Court and the Federal Rules of Civil Procedure, the Parties retain the right, upon reviewing the production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and will meet and confer regarding such requests.

## V. PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

All imaged hard copy documents shall reflect accurate document unitization including all attachments and container information. The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (*e.g.*, staples, paperclips, rubber bands, folders, or tabs in a binder). Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "Beg Bates," "End Bates," "Page Count," "Volume," "Custodian," and for unitization purposes also include "Parent ID," "Attach ID," "Beg Attach," "End Attach," and "Folder ID" metadata fields). If an original

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

document contains color, then the document shall be produced in color as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Each text file shall be named with the beginning Bates number of the hard copy document to which the text file relates.

## VI. PRODUCTION OF ESI

### A. Format

1.  **Images**. Except as otherwise specified herein, all other documents and ESI shall be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images. The parties may request color copies of any documents that cannot be accurately reviewed in black and white TIFF format. Reasonable requests for color documents should not be refused. TIFFs/JPGs shall be processed to show all text and images that would be visible to the reader using the native software that created the document (*e.g.*, TIFFs of emails should include the BCC line). All documents must be imaged in a manner that maintains and displays, to the extent applicable, all hidden columns or rows, hidden text, or worksheets, speaker notes, track changes, and comments. However, the Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. Page orientation for TIFF/JPG images shall be the same as the underlying document from which the image is created.

2.  **Native Files**. Microsoft Excel and other spreadsheet file types, including comma or tab delimited text files, PowerPoint files, Microsoft Access files, and audio and video files shall be produced in native format. For each document or ESI required to be produced in native format, the producing Party shall also provide a single-page Bates stamped image slip sheet stating the document has been "PRODUCED IN NATIVE

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

FORMAT." Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the Native Link metadata field. In the event that any document or ESI produced in image format is: (i) unreadable or illegible; (ii) cuts off or is missing data or information; or (iii) cannot be utilized at a deposition, a receiving Party may request that such file be produced in native format in accordance with the procedures outlined in this paragraph, and the producing Party shall promptly comply with all such reasonable requests. To the extent that either Party believes that specific documents or classes of documents, not already identified within this ESI Discovery Protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

3.    **Electronic Messages**. To the extent a response to discovery requires production of electronic messages (*e.g.*, iMessage, SMS, MMS, Teams Chat, Slack, etc.), the Parties will meet and confer regarding methods of production, including searchable formats that preserve the presentational features of the original message, *e.g.*, emojis, images, video files, and animations, the parameters of conversation threads, contextual messages, and any limitations of a producing Party's vendor's capabilities.

4.    **Structured Data**. To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable format.

5.    **Proprietary Software**. To the extent that relevant ESI cannot be rendered or reviewed in a reasonably useable form without the use of proprietary software, the Parties will meet and confer to determine whether and to what extent producing such ESI is necessary and, if so, how that can be accomplished.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

6.      **Attachments**. If any part of a document, particularly emails, or its attachments is responsive, the entire document and all attachments shall be produced, *i.e.*, the entire family of documents, except: (i) where an attachment is withheld pursuant to a valid claim of privilege, in which case that attachment will be replaced with a single-page TIFF image identifying the privilege or work product protection being claimed, and the rest of the family produced; and (ii) where the attachment is a non-substantive, automatically generated embedded file (*e.g.*, logos) or formatting file (*e.g.*, .ole or .dll). Attachments shall be produced sequentially after the parent email with the parent-child relationship preserved. For such attachments, the "Beg Attach" and "End Attach" metadata fields shall be populated to show the family relationship.

7.      **Modern/Linked Attachments**. The Parties shall use reasonable efforts to collect and produce documents that are linked to documents and emails, including, but not limited to, Google G Suite, Microsoft 365, etc. Documents extracted from links shall be populated with the Beg Attach and End Attach metadata fields, where reasonably feasible, to identify the linking document. If, despite best efforts, documents cannot be extracted from links at the time of collection, and if the receiving Party identifies a reasonable number of specific documents that contain such links, the producing Party will agree to meet and confer and, if reasonable and feasible, locate and produce the linked files.

8.      **Embedded Objects**. Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. To the extent that the processing software extracts the information, and to the extent that such information is available, embedded files will be marked with a "Yes" in the load file under the "Embedded" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

9. **Dynamic Fields**. All dynamic date and time fields, where such fields are processed to contain a value, shall, to the extent reasonably possible, be processed with a single date and time setting that is consistent across each Party's productions, Coordinated Universal Time (UTC), and in a way that maintains the date/time shown in a document as it was last saved by the custodian or end user, not the date of collection or processing.

11. **Compressed File Types**. Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, or .GZ) should be decompressed so that the lowest level document or file is extracted.

12. **Encrypted Files**. To the extent reasonably feasible, any password protected or encrypted documents shall be processed to unlock any passwords or encryption, and the unlocked or decrypted document produced. To the extent such documents are unable to be processed successfully to decrypt the documents, the Parties agree to: (i) produce a slip-sheet for each encrypted or password protected document that cannot successfully be processed, indicating that the document cannot be decrypted; (ii) provide the metadata for the document specified herein; and (iii) meet and confer regarding any other appropriate action that may be required to access and produce the encrypted data.

13. **Prior Productions**. To the extent a Party produces documents in this Action that were produced in prior or contemporaneous litigation, investigation, or other proceeding, such documents may initially be produced in the same format and order that they originally were produced, accompanied by the same metadata, and information sufficient to identify prior productions by specifying the Bates range and source of the litigation, investigation, or other proceeding. Should the receiving Party believe there is a good faith basis for previously produced documents to be produced in a format other than as originally produced, including additional metadata, the Parties will meet and confer regarding the feasibility and burden of any such requests.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

## B. De-duplication

Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the "All Custodian" field will list each custodian, separated by a semicolon, who was a source of that document. The Parties acknowledge that "All Custodian" metadata fields produced may become outdated due to rolling productions. To the extent this occurs, a producing Party shall promptly provide an overlay file providing all the custodians for the affected documents.

## C. Metadata

ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including, where applicable and to the extent possible, their existing time, date, and time zone metadata. All ESI will be produced with a delimited, database load file that contains the metadata fields, to the extent available, listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language. For other types of ESI which do not conform to the standard metadata listed in Table 1, including, but not limited to, text messages, messaging apps, etc., the Parties will meet and confer as to the appropriate information and metadata fields to be produced.

## D. Bates numbering

Each TIFF/JPG image produced shall be branded with a Bates number that (i) identifies the producing Party; (ii) maintains a constant length of nine numeric digits (including 0-padding) across the entire production; and (iii) is sequential, both within a given document, but should not include the

STIPULATED [~~PROPOSED~~] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

Bates number in the extracted text of the ESI. Each TIFF/JPG image file shall be named with the same page-level Bates number branded on the underlying image. For ESI that is produced subject to a claim of confidentiality pursuant to the Protective Order entered in this Action (the "Protective Order"), the producing Party shall electronically brand the appropriate confidentiality designation onto each page of the document, but should not include the confidentiality designation in the extracted text of the ESI. In the event of any discrepancy between the Confidentiality designation stamped on a TIFF image, the Confidentiality designation inserted into the filename of a document produced in Native Format, and/or the Confidentiality designation provided in the metadata, the highest designation shall control until the producing party corrects the discrepancy by providing a corrected metadata overlay, a replacement production TIFF image, or a replacement Native Format file.

### E.  Text Files and OCR

All documents and ESI shall be produced with a corresponding multipage searchable text file (*i.e.*, one .TXT file per electronic file as opposed to one text file per page). The text file for ESI shall contain full text extraction and be created by extracting text directly from the underlying native file, unless the ESI must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI. Each text file shall be named with the beginning Bates number of the electronic file to which the text file relates.

### F.  Production Delivery

The Parties will deliver each production via an FTP site, unless impractical. To maximize the security of information in transit, any media on which documents are produced must be encrypted. The producing Party shall transmit the encryption key to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

### G.  Redactions

No responsive, non-privileged document shall be withheld or redacted on any basis other than a claim of privilege or personal identifying information ("PII") in the first instance. The Parties will

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

meet and confer about whether there is an appropriate basis for redacting or withholding a responsive, non-privileged document for any reason other than attorney-client, work product privilege, or PII. For the avoidance of doubt, PII includes information such as a person's social security number, passport number, driver's license number, residential address, medical records, or information deemed private under applicable privacy laws, regulations, or other agreements to which a Producing Party is bound. The Parties will meet and confer to discuss additional categories of PII as they are identified.

## H. Phasing

To expedite production of responsive documents, the Parties agree to meet and confer regarding phasing the production of ESI from prioritized sources, custodians, and/or time periods.

## I. Privilege Log

The Parties agree to exchange privilege logs that comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure on a rolling basis twenty-one (21) days after each production containing documents withheld or redacted for privilege, except that a privilege log for productions made before the Parties' scheduled mediation on September 26, 2024 shall be produced within ten (10) days after the mediation. Privilege logs will be provided in a searchable and sortable spreadsheet format. Certain privileged communications or documents need not be included in a privilege log unless otherwise agreed to by the Parties or ordered by the Court: (a) communications to or from outside legal counsel after the commencement of, and related to, this Action; and (b) work product of counsel and Parties after the commencement of, and related to, this Action. The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise. Documents that have been redacted for privilege should be identified as such on the privilege log.

In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents withheld from production or redacted on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the producing Party will prepare a log that complies with Fed. R. Civ. P. 26(b)(5)(A). The log shall contain information identifying any person who is an attorney or

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

an employee of any legal department upon which a claim of privilege is based, and for each document (except those exempted above): (a) the privilege(s) claimed and basis for the claim; (b) the date of the document; (c) the name, email address, or other data identifying the author(s)/addresser; (d) the name, email address, or other data identifying the addressee(s) and all recipients of the document; (e) a description of the general subject matter contained in the document and the type of document (*e.g.*, letter, memorandum, handwritten notes, etc.) sufficient to allow the receiving Party to assess the claimed privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and (f) the custodian. For redacted documents, if there is more than one redaction per document, one log entry can be used to describe the multiple redactions if the same information provided applies to each redaction.

If the receiving Party reasonably requires further information, it shall explain the need for such information and identify in writing, by Bates number or other unique identifier. The producing Party will respond to any such reasonable request in writing.

If the receiving Party contests a privilege claim, the receiving Party must notify the producing Party in writing. If the Parties submit a privilege log in connection with submitting a discovery dispute to the Court, the privilege log must comply with the requirements of Section 12 of Judge van Keulen's Civil and Discovery Referral Matters Standing Order.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED:   August 2, 2024                    Respectfully submitted,

**SAXENA WHITE P.A.**                    **COOLEY LLP**

By: */s/ David R. Kaplan*               By: */s/ Patrick E. Gibbs*
David R. Kaplan (SBN 230144)            Patrick E. Gibbs (183174)
Marti L. Worms (SBN 205552)             Brett H. De Jarnette (292919)
Emily R. Bishop (SBN 319383)            3175 Hanover Street
505 Lomas Santa Fe Dr. Suite 180        Palo Alto, CA 94304-1130
Solana Beach, CA 92075                  Telephone: (650) 843-5000
Telephone: (858) 997-0860               Facsimile: (650) 849-7400
Facsimile: (858) 369-0096               pgibbs@cooley.com
dkaplan@saxenawhite.com                 bdejarnette@cooley.com
mworms@saxenawhite.com
ebishop@saxenawhite.com

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

Maya Saxena (*pro hac vice* forthcoming)
Jonathan Lamet (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, Fl 33434
Telephone: (561)394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jlamet@saxenawhite.com

Steven B. Singer (*pro hac vice* forthcoming)
Kyla Grant (*pro hac vice* forthcoming)
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
kgrant@saxenawhite.com

*Counsel for Lead Plaintiff Pompano Beach Police and Firefighters' Retirement System, and Lead Co-Counsel for the Class*

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
Neli Traykova Hines (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
mgruetzmacher@motleyrice.com
cmoriarty@motleyrice.com
ntraykova@motleyrice.com

*Counsel for Lead Plaintiff KBC Asset Management NV, and Lead Co-Counsel for the Class*

Heather M. Speers (305380)
10265 Science Center Drive
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420
hspeers@cooley.com

*Counsel for Defendants Chegg, Inc., Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz*

13

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: August 5, 2024

_____

The Honorable Susan van Keulen
United States Magistrate Judge

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

**Table 1 Metadata Fields**

1. Beg Bates: Beginning Bates number.

2. End Bates: Ending Bates number.

3. Beg Attach: Bates number of the first page of the parent in a document family.

4. End Attach: Bates number of the last page of the last attachment in a document family.

5. Parent ID: Contains the Beg Bates of an attachment's parent.

6. Attachment Count: Number of attached files.

7. Custodian: Name of the Custodian of the document produced.

8. All Custodian: Name of the Custodians from whom the de-duplicated document was collected.

9. File Extension: File extension of a document (.msg, .doc, .xls).

10. File Name: File name of the document.

11. File Path: The directory structure or path where the original document was stored.

12. Folder ID: Contains the container information (*e.g.*, folder or binder name) of hard copy documents.

13. File Size: Size (in bytes) of the source native file.

14. TextPath: The path to the text file for each record in the production volume, including filename.

15. Native Link: The path to the native format file for each record in the production volume, including filename.

16. Email Subject: Subject line extracted from an email message.

17. Title: Title field extracted from the metadata of a non-email document.

18. Author: Author field extracted from the metadata of a non-email document.

19. From: From field extracted from an email message.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

20. To: To or Recipient field extracted from an email message.

21. CC: CC field extracted from an email message.

22. BCC: BCC field extracted from an email message.

23. Date Sent: Sent date of an email message (mm/dd/yyyy).

24. Time Sent: Sent time of an email message (hh:mm AM/PM).

25. Date Received: Received date of an email message (mm/dd/yyyy).

26. Time Received: Received time of an email message (hh:mm AM/PM).

27. Time Zone (Original): The originating time zone of the document.

28. Date Created: The creation date of the document (mm/dd/yyyy).

29. Time Created: The creation time of the document (hh:mm AM/PM).

30. Last Modified By: Name of the person who last modified or saved the document.

31. Date Last Modified: Last modification date of a document (mm/dd/yyyy).

32. Time Last Modified: Last modification time of a document (hh:mm AM/PM).

33. Importance: Indicates the priority level of an email.

34. Message-ID: The Outlook Message ID.

35. Conversation Index: The Outlook Conversation Index ID used to tie together email threads.

36. Meeting Start Date: The start date of a calendar entry (mm/dd/yyyy).

37. Meeting Start Time: The start time of a calendar entry (hh:mm AM/PM).

38. Meeting End Date: The end time of a calendar entry (mm/dd/yyyy).

39. Meeting End Time: The end time of a calendar entry (hh:mm AM/PM).

40. Page Count: The number of pages of a document.

41. Hash Value: MD5 or SHA-1 hash value.

42. Embedded: A Yes/No indicator that identifies whether a document is embedded in another document.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP

43. Track Changes: A Yes/No indicator that identifies whether a document has tracked changes.

44. Confidentiality: The confidentiality designation of a document if it has been so designated under the Protective Order.

45. Document Type: Describes the type of document, *e.g.*, "E-document" for electronic documents not attached to emails, "Email" for all emails, and "Attachment" for all attached documents.

46. Redacted: Indicates whether the document contains redactions.

47. Volume: The volume number of the production.

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 5:21-CV-09953-PCP