# <u>EXHIBIT 1</u>

**SAXENA WHITE P.A.**
David R. Kaplan (230144)
dkaplan@saxenawhite.com
Emily Bishop (319383)
ebishop@saxenawhite.com
Marti L. Worms (205552)
mworms@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com
Neli Traykova Hines (*pro hac vice*)
ntraykova@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Settlement Class*

[Additional Counsel Listed on Signature Page]

**COOLEY LLP**
Patrick E. Gibbs (183174)
pgibbs@cooley.com
Brett H. De Jarnette (292919)
bdejarnette@cooley.com
3175 Hanover Street
Palo Alto, CA 94304
Tel.: (650) 843-5000
Fax: (650) 849-7400

Heather M. Speers (305380)
hspeers@cooley.com
10265 Science Center Drive
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 550-6420

*Counsel for Defendants Chegg, Inc.,*
*Daniel L. Rosensweig, Andrew J. Brown,*
*and Nathan Schultz*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br><u>CLASS ACTION</u><br><br>**STIPULATION AND AGREEMENT OF SETTLEMENT**<br><br>Hon. P. Casey Pitts |

This Stipulation and Agreement of Settlement dated as of November 5, 2024 (the "Stipulation") is made pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for the Northern District of California (the "Court"), this Stipulation is entered into by and among the following parties to the above-captioned action (the "Action") by and through their counsel of record in the Action: (a) (i) Pompano Beach Police and Firefighters' Retirement System ("Pompano P&F"); and (ii) KBC Asset Management NV ("KBC"), as Court-appointed lead plaintiffs ("Lead Plaintiffs" or "Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (defined below); and (b) (i) defendant Chegg, Inc. ("Chegg" or the "Company"); and (ii) defendants Daniel L. Rosensweig ("Rosensweig"), Andrew J. Brown ("Brown"), and Nathan Schultz ("Schultz") (the "Individual Defendants," and, together with Chegg, the "Defendants," and, together with Lead Plaintiffs, the "Parties").[1] This Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice all claims arising from, or based upon, or relating in any way to any of the allegations, acts, transactions, facts, events, matters, representations, or omissions involved, set forth, alleged, or referred to in the Action, or which could have been alleged in the Action.

## I.    **THE ACTION**

### A.    **Overview of Plaintiffs' Claims**

The original securities class action complaint in the Action was filed in this District on December 22, 2021, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. On September 7, 2022, the Court appointed Pompano P&F and KBC as Lead Plaintiffs pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 and approved Lead Plaintiffs' selection of Lead Counsel (defined below). ECF No. 105. On December 8, 2022, Plaintiffs filed their Consolidated Class Action Complaint for Violations of the Federal Securities Laws and Jury Trial Demand ("Consolidated Complaint"), asserting claims under Section 10(b) of the Exchange Act and Rule

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶1 herein. The singular forms of nouns and pronouns include the plural and vice versa.

1  10b-5 promulgated thereunder, and Sections 20(a) and 20A of the Exchange Act, for a class period

2  of May 5, 2020, and November 1, 2021, inclusive ("Class Period" or "Settlement Class Period").

3  ECF No. 115.

4      The Consolidated Complaint alleges, among other things, that throughout the Class Period,

5  Chegg and its executives made materially false and misleading statements regarding the extent to

6  which Chegg's platform was used by students to cheat during the period of distance learning

7  following the COVID-19 pandemic and the reasons for the Company's unprecedented growth

8  during this time.  The Consolidated Complaint further alleges that in reality, the Company's record

9  growth was largely due to rampant use of its platform to cheat while students were learning

10  remotely.  The Consolidated Complaint also alleges that Chegg's stock price was artificially

11  inflated as a result of Defendants' alleged false and misleading statements, and that Chegg's stock

12  price declined when the truth regarding Defendants' alleged misrepresentations was revealed on

13  November 1, 2021.

14      **B.    The Pleading Stage**

15      On February 16, 2023, Defendants filed their motion to dismiss the Consolidated Complaint

16  ("Motion to Dismiss") and a Request for Judicial Notice and Incorporation by Reference in Support

17  of Defendants' Motion to Dismiss ("RJN").  ECF Nos. 122, 123.  On April 27, 2023, Lead Plaintiffs

18  filed their opposition to Defendants' Motion to Dismiss and RJN, and filed a Motion to Strike

19  Paragraphs 34–39 of the Declaration of Heather Speers ("Motion to Strike").  ECF Nos. 128-30.

20  On May 11, 2023, Defendants filed their Opposition to the Motion to Strike.  ECF No. 131.  On

21  May 18, 2023, Lead Plaintiffs filed their Reply in Support of their Motion to Strike.  ECF No. 132.

22  On June 8, 2023, Defendants filed their Reply in Support of their Motion to Dismiss and RJN.

23  ECF Nos. 133, 134.[2]

24      On March 4, 2024, the Court entered an Order denying Defendants' Motion to Dismiss.

25  ECF No. 150 at 4-6, 11, 14.  The Court also denied the Motion to Strike.  *Id*. at 15-16.

26      On April 22, 2024, Defendants moved for leave to file a motion for reconsideration of the

27  Court's order denying their Motion to Dismiss, or in the alternative, to certify the order for

28  _____
[2] On August 18, 2023, this case was reassigned from the Honorable Edward J. Davila to the
Honorable P. Casey Pitts.  ECF No. 138.

1    interlocutory appeal ("Motion for Reconsideration").  ECF No. 155.  Defendants moved for

2    reconsideration on falsity, scienter, and loss causation grounds.  The Court granted Defendants'

3    request for leave, and the Parties fully briefed Defendants' Motion for Reconsideration.  ECF Nos.

4    158, 160, 163.  On April 24, 2024, Defendants filed their Answer to Lead Plaintiffs' Consolidated

5    Complaint.  ECF No. 156.  On July 17, 2024, the Court denied Defendants' Motion for

6    Reconsideration.  ECF No. 172.

7        **C.    Discovery Proceedings**

8        Counsel for the Parties held a Rule 26(f) conference telephonically on April 23, 2024.

9    Following the Rule 26(f) conference, the Parties continued to meet and confer on certain discovery-

10   related issues in accordance with the Northern District of California's Guidelines for the Discovery

11   of Electronically Stored Information.  On May 7, 2024, the Parties filed their Joint Case

12   Management Conference Statement.  ECF No. 159.  Following the Court's denial of Defendants'

13   Motion to Dismiss and the lifting of the statutory discovery stay, Lead Plaintiffs propounded

14   extensive discovery on Defendants and relevant non-parties, as described below.

15       Specifically, Lead Plaintiffs served their Rule 26(a)(1) Initial Disclosures on April 25, 2024.

16   Lead Plaintiffs served their First Requests for Production of Documents and their First Set of

17   Interrogatories to Defendants on April 25, 2024.  Lead Plaintiffs served their Second Set of

18   Requests for Production of Documents to Defendants on May 24, 2024.  Defendants served their

19   Rule 26(a)(1) Initial Disclosures on May 29, 2024.  Lead Plaintiffs served their Second Set of

20   Interrogatories, their First and Second Sets of Requests for Admissions, and their Third Set of

21   Requests for Production of Documents to Defendants on May 31, 2024.  Defendants took the

22   position that discovery was stayed pending resolution of their Motion for Reconsideration.

23   Plaintiffs took the position that discovery was not stayed.

24       While Lead Plaintiffs' written discovery requests to Defendants were outstanding, and after

25   the Parties had agreed to an in-person mediation on September 26, 2024, the Parties agreed to

26   exchange certain materials in advance of the mediation, as part of a pre-mediation discovery

27   process, to assist the Parties in better evaluating the relative strengths and weaknesses of their

28   respective claims and defenses.  Defendants agreed to expedite their production of core relevant

documents responsive to Lead Plaintiffs' document requests and provide substantive responses to Lead Plaintiffs' Interrogatories and Requests for Admissions. Lead Plaintiffs, in turn, agreed to provide Defendants with certain documents relevant to Lead Plaintiffs' claims, including documents produced by colleges, universities, and other institutions of higher learning in response to Freedom of Information Act ("FOIA") requests referenced in the Consolidated Complaint. Accordingly, Defendant Chegg served its Responses to Lead Plaintiffs' First Set of Requests for Admission on August 28, 2024, and its Responses to Lead Plaintiffs' Second Set of Requests for Admission on August 30, 2024. In addition, Defendants produced approximately 77,000 pages of documents in four separate productions between July and August 2024. These productions included organizational charts, emails from the custodial files of the three Individual Defendants plus an additional relevant Chegg employee referenced in the Consolidated Complaint responsive to agreed-upon search terms, and spreadsheets of subscriber and user engagement data for Chegg's platform.

In May and June 2024, Plaintiffs also served approximately 51 non-party Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises ("Subpoena" or "Subpoenas") on: (1) media outlets that reported on Chegg's alleged cheating, including *The Boston Globe*, *The Washington Post*, *The New York Times*, *The Hechinger Report*, and *Barron's*, (2) Exterro, Inc., an e-discovery and data management support services vendor that Chegg engaged to implement litigation holds, including in this Action; (3) approximately two dozen colleges, universities, and service academies across the United States, including Arizona State University, Boise State University, Boston University, Brown University, California State University (Fullerton), the College of San Mateo (California), Columbia University, Duke University, George Washington University, the Georgia Institute of Technology, North Carolina State University, Princeton University, Purdue University, the State University of New York (Binghamton, Buffalo, and Oswego), Texas A&M University, the United States Air Force Academy, the University of California, the University of Minnesota, the University of Nebraska System, the University of Oregon, and the University of Portland; (4) securities analysts that issued reports on Chegg during the Class Period, including Bank of America Securities, Inc., Bank of Montreal (aka BMO Global

1  Capital Solutions, Inc.), Citigroup Global Markets Inc., Exane Inc. (aka BNP Baribas), Goldman

2  Sachs & Co. LLC, Jefferies LLC, JP Morgan Securities, LLC, KeyBanc Capital Markets, Lake

3  Street Capital Markets LLC, Morgan Stanley & Co. LLC, Needham & Company LLC, Northland

4  Securities Inc., Raymond James & Associates Inc., and William Blair & Company LLC.  Together,

5  these non-parties produced, and Lead Plaintiffs reviewed, approximately 47,000 pages of

6  documents.

7      Finally, as part of the Parties' pre-mediation agreement, Lead Plaintiffs reproduced to

8  Defendants approximately 40,600 pages of documents that had previously been produced by

9  colleges, universities, and other institutions of higher learning in response to FOIA requests and/or

10  other public records requests made during Lead Plaintiffs' pre-suit investigation, including

11  documents referenced in the Consolidated Complaint and the Court's Orders denying Defendants'

12  Motion to Dismiss and Motion for Reconsideration.

13      On August 2, 2024, the Parties filed a Joint Motion for Initial Case Management Conference

14  informing the Court that the Parties had agreed to private mediation under the oversight of the Hon.

15  Layn Phillips (Fmr.), a highly experienced mediator of complex securities and shareholder

16  litigation.  ECF No. 175.  On August 5, 2024, the Court granted the Parties' Stipulated Protective

17  Order (as Modified) and the Stipulated Order Re: Discovery of Electronically Stored Information

18  (as Modified).  ECF Nos. 177, 178.  The Court also scheduled an Initial Case Management

19  Conference for October 10, 2024.  ECF No. 176.

20      **D.    Settlement Negotiations**

21      On September 26, 2024, the Parties and Defendants' directors' and officers' liability

22  insurance carriers (the "D&O Insurers") participated in a full day, in-person mediation session in

23  San Francisco, California conducted by Judge Phillips and two of his colleagues.  Prior to the

24  mediation, each side submitted comprehensive mediation statements setting forth their respective

25  positions on various legal and factual issues, supported by voluminous exhibits, which included

26  detailed information obtained through the pre-mediation discovery discussed above.  During the

27  mediation, the Parties provided their respective views on, *inter alia*, liability, damages, and Chegg's

28  financial condition and outlook.

1    After a full day of negotiations that included numerous offers and counteroffers, the Parties

2    ultimately agreed to an agreement in principle to settle Plaintiffs' claims for $55 million in cash.

3    On that same date, the Parties filed a Joint Case Management Statement to inform the Court that

4    the Parties had participated in mediation and had reached an agreement in principle to settle the

5    Action.  ECF No. 179.

6    **II.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT**

7    Based on their evaluation, Lead Plaintiffs and their counsel have determined that the terms

8    set forth in this Stipulation are fair, reasonable, adequate, and in the best interests of the Settlement

9    Class.  Based upon their investigation and prosecution of the case, Lead Plaintiffs believe that the

10    claims asserted in the Action have merit and that the evidence developed to date supports those

11    claims.

12    The Stipulation shall not be construed as or received in evidence as an admission,

13    concession or presumption against Lead Plaintiffs or any of the Settlement Class Members that any

14    of their claims are without merit, that any defenses asserted by Defendants have merit, or that the

15    damages recoverable in the Action would not have exceeded the Settlement Fund (as defined

16    herein).  However, Lead Plaintiffs recognize and acknowledge the potential expense and length of

17    continued proceedings necessary to prosecute the Action against Defendants through trial and

18    through appeals.

19    Lead Plaintiffs have also taken into account the uncertain outcome and risk of any litigation,

20    especially in complex actions such as this Action, as well as the difficulties and delays of such

21    litigation.  Furthermore, Lead Plaintiffs took into account Chegg's ability to pay a more sizable

22    settlement, considering the Company's current financial condition, balance sheet, and the

23    availability of Chegg's D&O liability insurance.  Lead Plaintiffs are also mindful of the inherent

24    difficulties of proof associated with, and possible defenses to, the securities law violations asserted

25    in the Action.  Lead Plaintiffs believe that the terms set forth in this Stipulation confer substantial

26    benefits upon the Settlement Class.

27

28

**III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

Throughout this Action, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.  Defendants have denied, and continue to deny, the allegations that Lead Plaintiffs or any Settlement Class Members have suffered damages or were harmed by any of the conduct alleged in the Action or that could have been alleged as part of the Action.  Defendants maintain that they have meritorious defenses to all claims in the Action.

Although Defendants continue to believe the claims asserted against them in the Action are without merit, they have agreed to enter into the Settlement set forth in this Stipulation solely to avoid the expense, distraction, time, and uncertainty associated with the Action.  Having taken into account the risks inherent in any litigation, especially in complex cases such as this Action, Defendants have concluded that it is desirable and beneficial that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

**IV.    SETTLEMENT TERMS**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiffs (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendant Releasees and all Released Defendants' Claims as against the Plaintiff Releasees shall be settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth below.

**1.    Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" means the securities class action styled *Leventhal v. Chegg, Inc.*, *et al.*, Case No. 5:21-cv-09953-PCP (N.D. Cal).

1.2     "Authorized Claimant" means a Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

1.3     "Chegg" or "the Company" means Chegg, Inc.

1.4     "Claim" means a Proof of Claim Form or electronic claim submitted by a Claimant or Settlement Class Member to the Claims Administrator.

1.5     "Claim Form" or "Proof of Claim Form" means in the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.6     "Claimant" means a person or entity who or which submits a Claim to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

1.7     "Claims Administrator" means A.B. Data Ltd., the firm retained by Lead Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.8     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.9     "Court" means the United States District Court for the Northern District of California.

1.10    "Defendants" means Chegg and the Individual Defendants.

1.11    "Defendants' Counsel" means Cooley LLP.

1.12    "Defendant Releasees" means each and all Defendants, Defendants' Counsel, the D&O Insurers, and their respective Related Persons.

1.13    "Derivative Actions" means the cases captioned as *In re Chegg, Inc. Derivative Litigation*, Lead Case No. 5:22-cv-00217 (N.D. Cal.) and *Stein v. Rosensweig, et al.*, Case No. 2023-0244 (Del. Ch.).

1.14    "Effective Date" means the first date by which all of the conditions specified in Paragraph 8.1 below have been met and have occurred or have been waived.

1.15    "Escrow Account" means an account maintained at Huntington Bank, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.16    "Escrow Agent" means Huntington Bank.

1.17    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

1.18    "Excluded Claims" means (i) any claims asserted in the Derivative Actions or any other derivative or ERISA action based on similar allegations as those set forth in the Consolidated Complaint; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

1.19    "Final," with respect to the Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order: (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise; or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses; (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, or distribution of the Net Settlement Fund to Authorized Claimants, shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude a judgment from becoming Final.

1.20    "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and

sisters-in-law.   As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.21    "Individual Defendants" means Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz.

1.22    "Judgment" means the Final Judgment Approving Class Action Settlement and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B and where none of the Parties elects to terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

1.23    "Lead Counsel" means Motley Rice LLC and Saxena White P.A.

1.24    "Lead Plaintiffs" mean KBC Asset Management, NV and Pompano Beach Police and Firefighters' Retirement System.

1.25    "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action (which may include the reimbursement of time, costs and expenses of Lead Plaintiffs directly related to their representation of the Settlement Class as permitted by the PSLRA), for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

1.26    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) other Court-approved deductions.

1.27    "Notice" means the Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, which shall be made available online at a website maintained by the Claims Administrator or mailed to Settlement Class Members upon request.

1.28    "Notice and Administration Costs" means the reasonable costs, fees and expenses that are actually incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing Notice of the Settlement to the Settlement Class, including through distribution of the Notice, Summary Notice, and Postcard Notice by mail, publication, and other means of locating potential Settlement Class Members; and (ii) administering the Settlement, including, but not limited to, the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

1.29    "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

1.30    "Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the Settlement Class.

1.31    "Plaintiffs' Counsel" means Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Settlement Class in the Action.

1.32    "Plaintiff Releasees" means Lead Plaintiffs, all other plaintiffs in the Action, Plaintiffs' Counsel, and all other Settlement Class Members, as well as each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

1.33    "Plan of Allocation" means the proposed plan or formula for allocation of the Net Settlement Fund to Authorized Claimants as set forth in the Notice. Any Plan of Allocation is not part of the Stipulation, and Defendant Releasees shall have no responsibility for the Plan of Allocation or its implementation and no liability with respect thereto. Any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Judgment or any other orders entered by the Court pursuant to this Stipulation.

1.34    "Postcard Notice" means the Postcard Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-4, or in such other form

as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, which is to be mailed or emailed to Settlement Class Members.  The Postcard Notice shall direct Class Members to the Settlement website to access the Claim Form and the Notice, which shall contain the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the fee and expense application, and the date of the Settlement Hearing.

1.35    "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement and directing that Postcard Notice of the Settlement be provided to the Settlement Class, in the form attached hereto as Exhibit A, or in such other form as may be approved by the Court.

1.36    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

1.37    "Related Persons" means (i) with respect to Defendants,  Defendants' Counsel, and the D&O Insurers, each of their respective current and former, Officers, directors, agents, parents, affiliates, subsidiaries, reinsurers, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such; and (ii) with respect to the Individual Defendants, their respective spouses, Immediate Family members, heirs, successors, executors, estates, administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives, trusts, community property, and any other entity in which any of them has a controlling interest, and as to such entities, each and all of their predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present Officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and accountants, insurers and reinsurers.

1.38    "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

1.39    "Released Defendants' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based

on federal, state, local, statutory, or common law or any other law, rule, or regulation (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff Releasees by Defendants or any member of Defendant Releasees, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacity as such, which arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims asserted in the Action against Defendants.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement and any Excluded Claims.

1.40    "Released Plaintiffs' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory, or common law or any other law, rule, or regulation (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant Releasees by Lead Plaintiffs or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacity as such, which arise out of, are based upon, or relate in any way to the factual predicate of the Action, including, but not limited to, (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, set forth, alleged or referred to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any Chegg securities during the Settlement Class Period.  "Released Plaintiffs' Claims" shall not include any claims to enforce this Settlement or Excluded Claims.

1.41    "Releasee(s)" means each and any of the Defendant Releasees and each and any of the Plaintiff Releasees.

1.42    "Releases" means the releases set forth in ¶¶5.2-5.5 of this Stipulation.

1.43   "Settlement" means the settlement of the Action between Lead Plaintiffs, on behalf of themselves and the Settlement Class, and each of the Defendants on the terms and conditions set forth in this Stipulation.

1.44   "Settlement Amount" means fifty-five million dollars ($55,000,000.00) in cash to be paid by Defendants' insurers.

1.45   "Settlement Class" or "Class" means all persons who purchased, or otherwise acquired Chegg common stock between May 5, 2020, and November 1, 2021, inclusive, and who were damaged thereby.  Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of Chegg during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of Chegg during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class Period.  Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

1.46   "Settlement Class Period" or "Class Period" means the time period between May 5, 2020, and November 1, 2021, inclusive.

1.47   "Settlement Class Member" means each person or entity who or which is a member of the Settlement Class.

1.48   "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

1.49   "Settlement Hearing" or "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.50   "Stipulation" or "Settlement Agreement" means this Stipulation of Settlement, including the recitals and exhibits hereto (the "Exhibits"), each of which is incorporated by reference as though set forth in the Stipulation itself.

1.51   "Summary Notice" means the Summary Notice of (i) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of

Litigation Expenses, substantially in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

1.52    "Tax" or "Taxes" means: (i) all federal, foreign, state, and/or local taxes of any kind, fees, levies, duties, tariffs, imposts, and other charges of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Lead Counsel and/or the Escrow Agent in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

1.53    "Tax Expenses" means any expenses and costs incurred in connection with the calculation and payment of Taxes or the preparation of tax returns and related documents including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶¶2.6-2.7.

1.54    "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement including, but not limited to, whether or not to object to this Settlement or to the release of any Released Claims. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by California Civil Code § 1542 and any law of any state or territory of the United States, or principle of common law or

foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Releasees acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims but they are, notwithstanding this potential, entering into the Stipulation and intend it to be a full, final, and permanent resolution of the matters at issue in this Action. Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

## 2.    The Settlement

### a.    The Settlement Fund

2.1    Subject to the terms of this Stipulation, Defendants shall cause the Settlement Amount to be paid into the Escrow Account designated by the Escrow Agent within twenty (20) business days after the later of: (a) entry of an order preliminarily approving the Settlement, or (b) Chegg's receipt of all information necessary to effectuate a transfer of funds, including the bank name and ABA routing number, address, account name and number, a signed W-9, banking verification, any forms reasonably required by any payor of a portion of the settlement amount, and a contact person from Lead Counsel with a phone number who can verbally verify the payment instructions and verbal verification of the payment instructions by the contact provided.

2.2    The payments described in ¶2.1 are the only payments to be made by or on behalf of any and all of the Defendant Releasees in connection with this Settlement. All fees, costs, and expenses incurred by or on behalf of Lead Plaintiffs and members of the Settlement Class associated with this Settlement, including, but not limited to, (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any

1  attorneys' fees awarded by the Court; and (e) other Court-approved deductions, shall be paid from

2  the Settlement Fund, and in no event shall any Defendant Releasee bear any responsibility or

3  liability for any such fees, costs, or expenses.

4  **b.    Use of Settlement Fund**

5  2.3    Subject to the terms and conditions of this Stipulation and the Settlement, the

6  Settlement Fund shall be used to pay: (a) any Taxes or Tax Expenses; (b) any Notice and

7  Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys'

8  fees awarded by the Court.  The balance remaining in the Settlement Fund, that is, the Net

9  Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶4.1-4.14 below, or

10  as otherwise ordered by the Court.

11  2.4    Except as provided herein or pursuant to orders of the Court, the Net Settlement

12  Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow

13  Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction

14  of the Court until such time as the funds shall be distributed or returned pursuant to the terms of

15  this Stipulation or further order(s) of the Court.  At the written direction of Lead Counsel, the

16  Escrow Agent shall invest the Settlement Fund exclusively in instruments, funds, or accounts

17  backed by the full faith and credit of the United States Government or fully insured by the United

18  States Government or an agency thereof, including a U.S. Treasury Fund or a bank account.  All

19  risks related to the investment of the Settlement Fund shall be borne by the Escrow Agent, and the

20  Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect

21  to any investment decisions or actions taken, or any transactions executed by, the Escrow Agent.

22  2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in the

23  Stipulation or by an order of the Court.

24  2.6    The Parties agree that the Settlement Fund is intended to be a Qualified Settlement

25  Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as

26  administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3),

27  shall be solely responsible for filing or causing to be filed all informational and other tax returns as

28  may be necessary or appropriate (including, without limitation, the returns described in Treasury

Regulation § 1.468B-2(k)) for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. Defendant Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. Such elections shall be made in compliance with procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to timely occur.

2.7     All Taxes and Tax Expenses shall be paid out of the Settlement Fund and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. Defendant Releasees shall have no responsibility or liability for the acts or omissions of the Claims Administrator, the Escrow Agent, Lead Counsel, or their agents with respect to the payment of Taxes, as described herein, or the filing of any tax returns or other documents in connection with the Settlement Fund.

2.8     The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant Releasee, or any person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of

recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. In no instance shall any Defendant Releasee be required to pay any amount other than as specified in Paragraph 2.1.

2.9    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, reasonable Notice and Administration Costs actually incurred and paid or payable. Such costs and expenses shall include, without limitation, the actual costs of publication, printing, emailing, and/or mailing the Postcard Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Postcard Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to any of the Defendant Releasees, or any person or entity who or which paid any portion of the Settlement Amount.

2.10    If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) after at least six (6) months from the date of an initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical and after payment of Notice and Administration Costs, Taxes, and attorneys' fees and Litigation Expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer feasible or economical to make further distributions, any unclaimed balance that still remains in the Net Settlement Fund, after payment of Notice and Administration Costs and Taxes, shall be contributed to Investor Protection Trust, a non-profit, non-sectarian 501(c)(3) organization dedicated to investor education and protection, or as ordered by the Court.

**3.     Class Certification and Preliminary Approval Order**

3.1     Solely for the purposes of the Settlement and for no other purpose, the Parties stipulate and agree to (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiffs as class representatives for the Settlement Class; and (c) appointment of Lead Counsel as class counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3.2     As soon as practicable after execution of the Stipulation, Lead Plaintiffs will move for preliminary approval of the Settlement and certification of the Settlement Class for settlement purposes only, which motion shall be unopposed by Defendants.  Lead Counsel shall submit the Stipulation together with its Exhibits to the Court.  Concurrently with the motion for preliminary approval, Lead Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, in the form attached hereto as Exhibit A, or in such other form as may be approved in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for distributing the Postcard Notice in substantially the form of Exhibit A-4 attached hereto, for publication of the Summary Notice in substantially the form of Exhibit A-3 attached hereto, and for publication on the Settlement website and mailing (upon request) of the (long-form) Notice in substantially the form of Exhibit A-1 attached hereto, or in such other forms as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

3.3     In addition, Lead Plaintiffs' motion shall request that the Court hold the Final Approval Hearing.  At or prior to the Final Approval Hearing, Lead Counsel will request that the Court approve the proposed Plan of Allocation, reimbursement of Lead Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, Lead Counsel's request for attorneys' fees and expenses, and any Notice and Administration Costs reasonably incurred or to be incurred.

### 4.    Notice and Settlement Administration

4.1    As part of the Preliminary Approval Order, Lead Plaintiffs shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, which includes, but is not limited to, the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Other than Chegg's obligation to provide shareholder information as provided in ¶4.2 below, none of the Defendant Releasees shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiffs, any other Settlement Class Members, or Lead Counsel, in connection with the foregoing.  Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

4.2    In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail or email the Postcard Notice to those members of the Settlement Class who may be identified through reasonable effort, including through the cooperation of Chegg and/or its agents.  The Postcard Notice shall direct Settlement Class Members to the Settlement website to access the Notice, which shall contain the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, the Claim Form, and the date of the Settlement Hearing.  Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the purposes of identifying and providing notice to the Settlement Class, within ten (10) business days of the date of entry of the Preliminary Approval Order, Chegg shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) records reasonably available to Chegg or its transfer agent concerning the identity and last known address of Settlement Class Members, in electronic form or other form as is reasonably available

to Chegg or its transfer agent, which information the Claims Administrator shall treat and maintain as confidential.

4.3     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit A-1, or in such other plan of allocation as the Court approves).

4.4     The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendant Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant Releasees shall have any involvement with or liability, obligation, or responsibility whatsoever in connection with the Plan of Allocation or any other Court-approved plan of allocation.

4.5     Any Settlement Class Member who does not submit a valid Claim Form by the deadline set by the Court (unless and to the extent the deadline is extended by the Court) will not be entitled to receive any distribution from the Net Settlement Fund, but will, nevertheless, upon the occurrence of the Effective Date, be bound by all of the terms of this Stipulation and Settlement (including the terms of the Judgment) and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to the Released Plaintiffs' Claims.

4.6     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in the Preliminary Approval Order: (a) shall be deemed to have waived his, her, or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other

proceeding; (c) shall be bound by the provisions of this Stipulation, the Settlement, and all proceedings, determinations, orders, and judgments in the Action relating to the Settlement, including, but not limited to, the Judgment, and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining, or prosecuting any of the Released Claims against any of the Defendant Releasees.

4.7    Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendant Releasee shall be permitted to review, contest, or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

4.8    The Net Settlement Fund shall be distributed to Authorized Claimants only after the later of the Effective Date; the Court having approved a plan of allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

4.9    For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each Settlement Class Member shall be required to submit a Claim Form, in the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless extended by the Court.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is

accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment, and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to any Released Claim. Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, including online via the Settlement website, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)    Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)    Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim(s) the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim(s) is/are to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)    If any Claimant whose Claim(s) has/have been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court, on reasonable notice to Defendants' Counsel.

4.10    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

4.11    Lead Counsel will apply to the Court, on reasonable notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

4.12    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members who do not submit a Claim or whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action; and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendant Releasees with respect to any and all of the Released Claims.

4.13    No Claimant or Settlement Class Member shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Defendants' Counsel, any Parties' experts, the Claims Administrator (or any other agent designated by Lead Counsel), or the Defendant Releasees based on any investments, costs, expenses, administration, allocations, calculation, payments, the withholding of taxes (including interest and penalties) owed by the Settlement Fund (or any losses incurred in connection therewith), or distributions that are made substantially in accordance with this Stipulation and the Settlement, the plan of allocation approved by the Court, or further orders of the Court.

4.14    All proceedings with respect to the administration, processing and determination of Claims, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

**5.    Release of Claims**

5.1    The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against Defendant Releasees and as to any and all Released Claims.

5.2    Pursuant to the Judgment without further action by anyone, upon the Effective Date of the Settlement, and by operation of this Stipulation, of law, and of the Judgment, Plaintiff Releasees shall be deemed to have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees or Litigation Expenses.  This release shall not apply to any Excluded Claim.

5.3    Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendant Releasees shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from

1    prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees.

2    This release shall not apply to any Excluded Claim.

3          5.4    Upon the Effective Date, Plaintiff Releasees are forever barred and enjoined from

4    commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any

5    court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind,

6    asserting any Released Plaintiffs' Claims against any of the Defendant Releasees.

7          5.5    Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate

8    conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand,

9    action, or proceeding brought by a Settlement Class Member against any of the Defendant

10    Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any

11    of the Plaintiff Releasees with respect to any Released Defendants' Claim.

12          5.6    Notwithstanding ¶¶5.2-5.5 above, nothing in the Judgment shall restrict or impair

13    the rights of any Party to enforce or effectuate the terms of this Stipulation or the Judgment.

14          5.7    The Judgment shall, among other things, provide for the dismissal with prejudice of

15    the Action against the Defendant Releasees, without costs to any Party, except for the payments

16    expressly provided for herein.

17    **6.    Terms of the Judgment**

18          6.1    If the Settlement contemplated by this Stipulation is approved by the Court, Lead

19    Counsel and Defendants' Counsel shall request that the Court enter a Judgment, in the form

20    attached hereto as Exhibit B.

21    **7.    Attorneys' Fees and Litigation Expenses**

22          7.1    Lead Counsel will apply to the Court for a collective award of attorneys' fees to

23    Plaintiffs' Counsel to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply

24    to the Court for reimbursement of Litigation Expenses, which may include a request for

25    reimbursement of Lead Plaintiffs' time, costs, and expenses directly related to their representation

26    of the Settlement Class, to be paid from (and out of) the Settlement Fund.  Lead Counsel's

27    application for an award of attorneys' fees or Litigation Expenses is not the subject of any

28    agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation.

7.2     Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon the Court's issuance of an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or Litigation Expenses is reduced or reversed, and such order reducing or reversing the award has become Final.  Lead Counsel shall make the appropriate refund or repayment in full (including interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account) no later than thirty (30) business days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees or Litigation Expenses has become Final.  An award of attorneys' fees or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Lead Counsel agrees that they are subject to the jurisdiction of the Court for the purpose of enforcing this paragraph.  Neither Lead Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees or Litigation Expenses.

7.3     Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.  Defendant Releasees shall have no responsibility for or liability whatsoever with respect to the payment, allocation, or award of attorneys' fees or Litigation Expenses.  The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Settlement Fund in the Escrow Account.

## 8.     Conditions of Settlement

8.1     The Effective Date of this Stipulation shall be conditioned on the occurrence or waiver of all of the following events:

(a)     entry of the Preliminary Approval Order, in the form set forth in Exhibit A attached hereto, in accordance with Section 3 above;

(b)     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of Paragraph 2.1 above;

(c)     entry of the Judgment in accordance with Paragraph 6.1 above;

(d)     the Judgment becoming Final, as defined in Paragraph 1.19 above; and

(e)     that the Settlement is not otherwise terminated pursuant to the terms set forth in this Stipulation.

8.2     If all of the conditions specified in Paragraph 8.1 above are not met, then this Stipulation shall be canceled and terminated subject to Paragraph 9.4 below unless Lead Plaintiffs and Defendants mutually agree in writing to proceed with this Stipulation.

**9.     Rights of Termination and Effects Thereof**

9.1     Defendants and Lead Plaintiffs shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to counsel for the other parties within thirty (30) days after the date on which any of the following occurs:

(a)     the Court declines to grant preliminary or final approval of the Settlement, and the Parties are unable to reach a resolution to resolve any concerns raised by the Court as set forth in Paragraph 9.3 below;

(b)     the Court declines to enter the Judgment in any material respect;

(c)     the Judgment is modified or reversed in any material respect on appeal;

(d)     in the event that the Court enters a judgment other than the one in the form of Exhibit B attached hereto, and neither Lead Plaintiffs nor Defendants elect to terminate the Settlement, the date that such other judgment is modified or reversed in any material respect on appeal.

9.2     If, prior to the Final Approval Hearing, persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ("Requests for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary

Approval Order and the Notice, and such persons in the aggregate have purchased or otherwise acquired Chegg common stock in an amount that equals or exceeds the sum specified in a separate supplemental agreement between the Parties (the "Supplemental Agreement"), Defendants shall have the option, but not the obligation, to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement ("Opt-out Termination Option").  The Supplemental Agreement is confidential and will not be filed with the Court unless requested by the Court or a dispute among the Parties concerning its interpretation or application arises, but the Parties will file a statement identifying the existence of the Supplemental Agreement pursuant to Federal Rule of Civil Procedure 23(e)(1)(c)(2), and reference the Supplemental Agreement in the Notice.  Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion (if any), shall be provided to Defendants' Counsel no later than fourteen (14) calendar days prior to the Settlement Hearing.

9.3    If the Court declines to grant preliminary or final approval of the Settlement for any reason, that shall not be an immediate basis for either Lead Plaintiffs or Defendants to terminate the Settlement; instead, in such a scenario, the Parties agree to work together in good faith to make appropriate modifications, as may be necessary, to the Settlement to resolve any concerns raised by the Court.  If the Parties cannot reach resolution after making such good faith efforts, either Lead Plaintiffs or Chegg may elect to terminate the Settlement.

9.4    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Escrow Agent for the Settlement Fund shall, upon written instructions from Defendants' Counsel, cause the Settlement Fund, including any attorneys' fees and costs paid from the Settlement Fund pursuant to Section 7 above, to revert back to the party that made the deposit into the Settlement Fund, together with any interest earned thereon, less any deductions for: (1) any Taxes and Tax Expenses pursuant to Paragraphs 2.6-2.7 above due with respect to any interest earned by the Settlement Fund; and (2) any amounts reasonably and actually paid, incurred or due and owing pursuant to Paragraph 2.9 above in connection with notice and administration of the

Settlement provided for herein.  If this Stipulation is terminated pursuant to its terms, the Escrow Agent, at the request of Defendants or Lead Plaintiffs, shall apply for any tax refund owed to the Settlement Fund and pay the proceeds of the tax refund, after deduction of any fees and expenses incurred in connection with such application(s) for refund, to Defendants (or their designate(s)).

9.5     If this Stipulation is terminated pursuant to its terms, each of the Parties shall be deemed to have reverted to his, her, or its status immediately prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation had not been executed and the related orders had not been entered, shall retain all of their respective claims and defenses in the Action, and shall revert to their respective positions in the Action.  In such event, the terms and provisions of the Stipulation, with the exception of provisions of Paragraphs 2.9, 7.2, 9.4, 10.1, 11.2, 11.4, 11.7, 11.20, and 11.24 shall have no further force and effect with respect to each of the Parties and shall not be used in this Action or in any other proceeding for any purpose.

9.6     For the avoidance of doubt, no order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute a condition to the Effective Date or grounds for cancellation or termination of the Stipulation.

**10.     No Admission of Wrongdoing**

10.1     Neither this Stipulation nor the Settlement set forth herein, whether or not consummated, nor any facts or terms of this Stipulation, negotiations, discussions, proceedings, acts performed, or documents executed pursuant to or in furtherance of this Stipulation or the Settlement:

(a)     shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (aa) the truth of any fact alleged by Lead Plaintiffs or any Settlement Class Member; (bb) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (cc) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (dd) any liability, negligence, fault, or other wrongdoing of any of the Defendant Releasees; or (ee) any damages suffered by Plaintiffs

or the Settlement Class; or (ii) in any way referred to for any other reason against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including arbitration) other than such proceedings necessary to effectuate the provisions of this Stipulation;

(b)    shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (aa) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (bb) with respect to any liability, negligence, fault or wrongdoing; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including arbitration) other than such proceedings necessary to effectuate the provisions of this Stipulation; or

(c)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

**11.    Miscellaneous Provisions**

11.1    This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Parties with regard to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Parties.

11.2    No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of each party hereto, or their respective successors-in-interest. No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits, other than the representations and warranties contained and memorialized in such documents. Except as otherwise provided for herein, each party shall bear his, her, or its own attorneys' fees and costs and expenses.

11.3    As set forth in the Class Action Fairness Act of 2005 ("CAFA"), Chegg shall timely serve a CAFA notice within ten (10) calendar days of the filing of this Stipulation with the Court

1    and shall provide Lead Counsel with a copy of such notice within five (5) calendar days of such

2    service.   Chegg shall be responsible for all costs and expenses related thereto.

3        11.4    The Parties intend this Stipulation and the Settlement to be a final and complete

4    resolution of all disputes asserted or which could be asserted by Lead Plaintiffs and any other

5    Settlement Class Members against the Defendant Releasees with respect to the Released Plaintiffs'

6    Claims.  Accordingly, except in the event of the termination of this Settlement, Lead Plaintiffs, and

7    their counsel, and Defendants, and their counsel, agree not to assert in any forum that this Action

8    was brought by Lead Plaintiffs or defended by Defendants in bad faith and without a reasonable

9    basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil

10    Procedure relating to the institution, prosecution, defense, or settlement of this Action.  No Party

11    shall assert any claims or allegations of any violation of any other Parties' discovery obligations

12    under the Federal Rules.  The Parties agree that the amounts paid and the other terms of the

13    Settlement were negotiated at arm's length and in good faith by the Parties, including through a

14    mediation process, and reflect the Settlement that was reached voluntarily after extensive

15    negotiations and consultation with experienced legal counsel, who were fully competent to assess

16    the strengths and weaknesses of their respective clients' claims or defenses.

17        11.5    While retaining their right to deny that the claims asserted in the Action were

18    meritorious, Defendants and their counsel, in any statement made to any media representative

19    (whether or not for attribution), will not assert that the Action was commenced or prosecuted in

20    bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is

21    being settled voluntarily after consultation with competent legal counsel.  Likewise, while retaining

22    their right to assert their claims in the action were meritorious, Lead Plaintiffs and their counsel, in

23    any statement made to any media representative (whether or not for attribution), will not assert that

24    Defendants' defenses were asserted in bad faith, nor will they deny that Defendants defended the

25    Action in good faith and that the action is being settled voluntarily after consultation with

26    competent legal counsel.  In all events, Lead Plaintiffs, and their counsel, and Defendants, and their

27    counsel, shall not make any accusations of wrongful or actionable conduct by either Party

28

concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

11.6     Defendants and any Defendant Releasee may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7     All agreements made, and orders entered, during the course of the Action relating to the confidentiality of information shall survive this Settlement.

11.8     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

11.9     Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which they deem appropriate.

11.10     All counsel and any other Person executing this Stipulation and any of the Exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.11     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

11.12     This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email, or by a .pdf/.tif image of the signature transmitted via

email.  The signatures so transmitted shall be given the same effect as the original signatures.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

11.14    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.15    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.  As used in the preceding sentence, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other appointed as a federal holiday.

11.16    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.17    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel, and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

11.18    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.19   Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in this Court.

11.20   In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned (but not promptly deposited into the Settlement Fund by others), then, at the election of Lead Plaintiffs, Lead Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the releases given and the Judgment, in which event the releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in Paragraphs 9.4 and 9.5 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided herein.

11.21   This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the construction, interpretation, operation, effect, and validity of this Stipulation, the Supplemental Agreement, and all documents necessary to effectuate it shall be governed by the internal laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

11.22   If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile, or email transmission, with confirmation of receipt.  Any written notice required pursuant to or in connection with this Stipulation shall be addressed to counsel as follows:

    For Lead Plaintiffs:

    David R. Kaplan
    Saxena White P.A.
    505 Lomas Santa Fe Dr. Suite 180
    Solana Beach, CA 92075
    Tel: (858) 997-0860
    Fax: (858) 369-0096
    Email: dkaplan@saxenawhite.com

    Christopher F. Moriarty

1  Motley Rice LLC
   28 Bridgeside Blvd.
2  Mount Pleasant, SC 29464
   Tel: (843) 216-9245
3  Fax: (843) 216-9450
   Email: cmoriarty@motleyrice.com
4
   For Defendants:
5
   Brett De Jarnette
6  Cooley LLP
   3175 Hanover Street
7  Palo Alto, CA 94304
   Tel.: (650) 843-5000
8  Fax: (650) 849-7400
   bdejarnette@cooley.com
9

10      11.23   No opinion or advice concerning the tax consequences of the proposed Settlement

11  to individual Settlement Class Members is being given or will be given by the Parties or their

12  counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  It

13  is the sole responsibility of each Settlement Class Member to determine the amount of and pay his,

14  her, or its own taxes, plus any penalties and interest, on any amount received pursuant to the

15  Settlement, and the Releasees shall have no liability for such taxes, penalties, or interest.  It is

16  understood that the tax consequences may vary depending on the particular circumstances of each

17  individual Settlement Class Member.

18      11.24   All agreements made and orders entered during the course of the Action relating to

19  the confidentiality of information shall survive this Stipulation whether or not the Stipulation is

20  approved by the Court and whether or not the Stipulation is consummated, or the Effective Date

21  occurs.  The Parties' confidentiality obligations shall include, to the extent possible, negotiations,

22  discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection

23  with the Stipulation that remain confidential following the Effective Date.

24

25

26

27

28

1    **IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be executed,

2    by their duly authorized attorneys dated as of November 5, 2024.

3                                          **SAXENA WHITE P.A.**

4
                                          By: *David Kaplan*
5                                          David R. Kaplan (SBN 230144)
                                          dkaplan@saxenawhite.com
6                                          Emily Bishop (SBN 319383)
                                          ebishop@saxenawhite.com
7                                          Marti L. Worms (205552)
                                          mworms@saxenawhite.com
8                                          505 Lomas Santa Fe Drive, Suite 180
                                          Solana Beach, CA 92075
9                                          Tel.: (858) 997-0860
                                          Fax: (858) 369-0096
10
                                          -and-
11
                                          Maya Saxena (*pro hac vice*)
12                                          Jonathan Lamet (*pro hac vice*)
                                          7777 Glades Road, Suite 300
13                                          Boca Raton, FL 33434
                                          Telephone: (561) 394-3399
14                                          Facsimile: (561) 394-3382
                                          msaxena@saxenawhite.com
15                                          jlamet@saxenawhite.com

16                                          -and-

17                                          Steven B. Singer (*pro hac vice*)
                                          Kyla Grant (*pro hac vice*)
18                                          10 Bank Street, 8th Floor
                                          White Plains, NY 10606
19                                          Telephone: (914) 437-8551
                                          ssinger@saxenawhite.com
20                                          kgrant@saxenawhite.com

21                                          **MOTLEY RICE LLC**

22                                          By: *CP Moriarty*
                                          Max N. Gruetzmacher (*pro hac vice*)
23                                          mgruetzmacher@motleyrice.com
                                          Christopher F. Moriarty (*pro hac vice*)
24                                          cmoriarty@motleyrice.com
                                          Neli Traykova Hines (*pro hac vice*)
25                                          ntraykova@motleyrice.com
                                          28 Bridgeside Blvd.
26                                          Mt. Pleasant, SC 29464
                                          Tel: (843) 216-9000
27                                          Fax: (843) 216-9450

28

1

*Co-Lead Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

2

3     **ROSSMAN LEGAL**
      Gregg Rossman (*pro hac vice*)
      6840 Griffin Rd.

4     Davie, Florida 33314
      Telephone: (954) 440-0908

5     gregg@rossmanlegal.com

6     *Additional Counsel for Lead Plaintiff Pompano
      Beach Police and Firefighters' Retirement System*

7

8     **COOLEY LLP**

9     By: _____

10    Patrick E. Gibbs (183174)
      pgibbs@cooley.com

11    Brett H. De Jarnette (292919)
      bdejarnette@cooley.com

12    3175 Hanover Street
      Palo Alto, CA 94304

13    Tel.: (650) 843-5000
      Fax: (650) 849-7400

14
      -and-
15

16    Heather M. Speers (305380)
      hspeers@cooley.com

17    10265 Science Center Drive
      San Diego, CA 92121

18    Tel: (858) 550-6000
      Fax: (858) 550-6420

19    *Attorneys for Defendants Chegg, Inc.; Daniel L.
      Rosensweig; Andrew J. Brown; and Nathan Schultz*

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Settlement Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br>**CLASS ACTION**<br><br>[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE |

1   WHEREAS, a putative securities class action is pending in this Court entitled *Steven*

2   *Leventhal v. Chegg, Inc., et al.*, Case No. 5:21-cv-09953-PCP (N.D. Cal.) (the "Action");

3   WHEREAS, by order dated September 7, 2022, this Court appointed KBC Asset

4   Management NV and Pompano Beach Police and Firefighters' Retirement System as Lead

5   Plaintiffs ("Lead Plaintiffs") and Motley Rice LLC ("Motley Rice") and Saxena White P.A.

6   ("Saxena White") as Lead Counsel ("Lead Counsel") (ECF No. 105);

7   WHEREAS, on December 8, 2022, Lead Plaintiffs filed their Consolidated Class Action

8   Complaint for Violations of the Federal Securities Laws and Jury Trial Demand (ECF No. 115);

9   WHEREAS, Lead Plaintiffs, on behalf of themselves and the Settlement Class (defined

10  below), and Defendants Chegg, Inc. ("Chegg"), Daniel L. Rosensweig, Andrew J. Brown, and

11  Nathan Schultz (collectively, "Defendants") have entered into a Stipulation and Agreement of

12  Settlement dated November 5, 2024 (the "Stipulation" or "Settlement Agreement"), subject to

13  approval by this Court (the "Settlement");

14  WHEREAS, Lead Plaintiffs have made an application, pursuant to Rule 23 of the Federal

15  Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with

16  the Stipulation, allowing notice to Settlement Class Members, as more fully described herein, and

17  certifying a Settlement Class defined as "all persons who purchased, or otherwise acquired Chegg

18  common stock between May 5, 2020, and November 1, 2021, inclusive, and who were damaged

19  thereby" (the "Settlement Class Period");

20  WHEREAS, the Court has read and considered: (a) Lead Plaintiffs' motion for preliminary

21  approval of the Settlement, and the papers filed and arguments made in connection therewith; and

22  (b) the Stipulation and the exhibits attached thereto; and

23  WHEREAS, unless otherwise defined herein, all capitalized words contained herein shall

24  have the same meanings as they have in the Stipulation;

25  NOW THEREFORE, IT IS HEREBY ORDERED:

26  1.    **Class Certification for Settlement Purposes Only:**  Pursuant to Rules 23(a) and

27  (b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of

28  effectuating the proposed Settlement, a Settlement Class consisting of all persons who purchased,

or otherwise acquired Chegg common stock between May 5, 2020, and November 1, 2021, inclusive, and who were damaged thereby.  Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of Chegg during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of Chegg during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class Period.  Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with this Preliminary Approval Order.

2. **Class Findings:**  Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Lead Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3. The Court hereby finds and concludes that, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for purposes of the Settlement only, Lead Plaintiffs are the most adequate class representatives for the Settlement Class and certifies them as Class Representatives for the Settlement Class.  The Court also appoints Motley Rice LLC and Saxena White P.A. as Class Counsel for the Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

4. **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

5. **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement

Hearing") on _____, 202__ at ___:___ __.m. in Courtroom 8 – 4th Floor, of the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, 95113, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court; (b) to determine whether the Judgment attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendant Releasees; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (e) to consider any other matters that may be properly brought before the Court in connection with the Settlement.  Notice of the Settlement and the Settlement Hearing shall be given to Settlement Class Members as set forth in paragraph 7 of this Order.

6.      The Court may adjourn or vacate the Settlement Hearing without further notice to the Settlement Class, and may approve the proposed Settlement with such modifications as the Parties may agree to in writing, if appropriate, without further notice to the Settlement Class.

7.      **Retention of Claims Administrator and Manner of Giving Notice** – Lead Counsel is hereby authorized to retain A.B. Data, Ltd. (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below.  Notice of the Settlement and the Settlement Hearing shall be given by Lead Counsel as follows:

a)      within ten (10) business days of the date of entry of this Order, Chegg shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) records reasonably available to Chegg or its transfer agent concerning the identity and last known address of Settlement Class Members, in electronic form or other form as is reasonably available to Chegg or its transfer agent, which information the Claims Administrator shall treat and maintain as confidential;

b)      not later than twenty (20) calendar days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice,

substantially in the form attached hereto as Exhibit A-4, to be emailed or mailed by first-class mail to potential Settlement Class Members at the addresses set forth in the records that Chegg caused to be provided, or who otherwise may be identified through further reasonable effort;

c)    contemporaneously with the mailing and/or emailing of the Postcard Notice, the Claims Administrator shall cause copies of the Postcard Notice, Summary Notice, Notice, and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Postcard Notice, Notice, and Claim Form can be downloaded;

d)    not later than ten (10) business days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit A-3, to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*; and

e)    not later than seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall file with the Court proof, by affidavit or declaration, of such mailing, emailing, and publication.

8.    **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, the Summary Notice, and the Postcard Notice attached hereto as Exhibits A-1, A-2, A-3, and A-4, respectively, and (b) finds that the emailing or mailing of the Postcard Notice directing Settlement Class Members to the Settlement Website to access the Notice (which shall contain the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the fee and expense application, and the date of the Final Approval Hearing) and the publication of the Summary Notice in the manner and form set forth in paragraph 7 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses, of their right to object to the Settlement, the Plan of Allocation, or Lead Plaintiffs' motion for attorneys' fees and reimbursement of Litigation Expenses, of their right to exclude themselves from the Settlement Class, and of their right to

appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules. The date and time of the Settlement Hearing shall be included in the Notice and Summary Notice before they are mailed and published, respectively. As provided for in the Stipulation, Lead Counsel may pay out of the Settlement Fund, without further approval from Defendants and without further order of the Court, Notice and Administration Costs.

9.    **Nominee Procedures** – Brokers and other nominees who purchased or otherwise acquired Chegg common stock during the Settlement Class Period for the benefit of another person or entity shall either: (a) within seven (7) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners, and within seven (7) calendar days of receipt of those Postcard Notices, forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Postcard Notice, send a list of the names and email and/or physical addresses of all such beneficial owners to the Claims Administrator, in which event the Claims Administrator shall promptly email and/or mail the Postcard Notice to such beneficial owners. Such holders of record shall be reimbursed from the Settlement Fund, upon receipt by the Claims Administrator of proper documentation, for the reasonable expense of providing Postcard Notice to beneficial owners who are Settlement Class Members, which expenses would not have been incurred except for the sending of such Postcard Notice, subject to further order of this Court with respect to any dispute concerning such compensation.

10.    **Participation in the Settlement** – Settlement Class Members who wish to participate in the Settlement and to be potentially eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be postmarked or submitted online no later than one hundred (100) calendar days after the Notice Date.

Notwithstanding the foregoing, Lead Counsel may, at their sole discretion, accept late Claims for processing provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class.  By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim and the subject matter of the Settlement.

11.    Each Claim Form submitted must satisfy the following conditions: (a) it must be properly completed, signed, and submitted in a timely manner in accordance with the provisions of the preceding paragraph; (b) it must be accompanied by adequate supporting documentation for the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by Lead Counsel or the Claims Administrator; (c) if the person executing the Claim Form is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Settlement Class Member must be included in the Claim Form to the satisfaction of Lead Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein, and must be signed under penalty of perjury.

12.    Any Settlement Class Member who or which does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the Action relating thereto, including, without limitation, the Judgment and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) shall be permanently barred from commencing, maintaining, or prosecuting any of the Released Plaintiffs' Claims against any of the Defendant Releasees, as more fully described in the Stipulation and Notice.  Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 10 above.

13.    **Exclusion From the Settlement Class** – Any member of the Settlement Class who

wishes to exclude himself, herself, or itself from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered such that it is received no later than twenty-eight (28) calendar days prior to the Settlement Hearing, to: Exclusions, *In re Chegg, Inc. Securities Litigation*, c/o A.B. Data, Ltd., P.O. Box 173001, Milwaukee, WI 53217, and (b) each request for exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *Leventhal v. Chegg, Inc., et al.,* Case No. 5:21-cv-09953-PCP"; (iii) state the number of shares of Chegg common stock that the person or entity requesting exclusion purchased/acquired and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, and the number of shares held at the beginning of the Settlement Class Period; and (iv) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above or is otherwise accepted by the Court.

14.     Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the Action, and shall not receive any payment out of the Net Settlement Fund.

15.     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated herein: (a) shall be deemed to have waived his, her, or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation, the Settlement, and all proceedings, determinations, orders, and judgments in the Action relating to the Settlement, including, but not limited to, the Judgment and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining, or prosecuting any of the Released

1    Claims against any of the Defendant Releasees, as more fully described in the Stipulation and
2    Notice.

3          16.    **Appearance and Objections at Settlement Hearing** – Any Settlement Class
4    Member who or which does not request exclusion from the Settlement Class may enter an
5    appearance in the Action, at his, her, or its own expense, individually or through counsel of his,
6    her, or its own choice, by filing (electronically or in person), or sending by mail such notice to the
7    address below in paragraph 17, with the Court such that it is filed or postmarked no later than
8    twenty-eight (28) calendar days before the Settlement Hearing or as the Court may otherwise
9    direct.  Any Settlement Class Member who or which does not enter an appearance will be
10   represented by Lead Counsel.

11         17.    Any Settlement Class Member who does not request exclusion from the Settlement
12   Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, or
13   Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses
14   and appear and show cause, if he, she, or it has any cause why the proposed Settlement, the
15   proposed Plan of Allocation, or Lead Plaintiffs' motion for attorneys' fees and reimbursement of
16   Litigation Expenses should not be approved; *provided, however*, that no Settlement Class Member
17   shall be heard or entitled to contest the approval of the terms and conditions of the proposed
18   Settlement, the proposed Plan of Allocation, or the motion for attorneys' fees and reimbursement
19   of Litigation Expenses unless that person or entity has filed (electronically or in person) or has
20   sent by mail to the address below a written objection with the Court postmarked no later than
21   twenty-eight (28) calendar days before the Settlement Hearing.

**Clerk of the Court**

Class Action Clerk
United States District Court
280 South First Street
San Jose, California, 95113

26         18.    Any Settlement Class Member who does not request exclusion from the Settlement
27   Class, and who has properly filed an objection pursuant to paragraph 17 above, may enter an
28   appearance in the Action, at his, her, or its own expense, individually or through counsel of his,

her, or its own choice, by filing with the Clerk of the Court a notice of appearance, in the same manner as set forth in paragraph 17 above, such that it occurs twenty-eight (28) calendar days before the Settlement Hearing, or as the Court may otherwise direct. Any Settlement Class Member who does not enter an appearance will be represented by Lead Counsel.

19.     Any objections, filings, and other submissions by the objecting Settlement Class Member: (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of Chegg common stock that the objecting Settlement Class Member purchased/acquired and sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, and the number of shares held at the beginning of the Settlement Class Period, and must be accompanied by adequate supporting documentation for the transactions and holdings reported therein, in the form of broker confirmation slips, broker account statements, or an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement. Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in the written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

20.     Any Settlement Class Member who or which does not make his, her, or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

21.    **Stay Order** – Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.

22.    **Settlement Fund** – The contents of the Settlement Fund held by The Huntington National Bank ("Huntington Bank") in one or more custodian/escrow accounts, for which Huntington Bank will serve as the Escrow Agent, shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation or further order(s) of the Court.

23.    **Taxes** – Lead Counsel are authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of September 26, 2024, as provided in the Stipulation.

25.    **Use of this Order** – Neither this Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the Supplemental Agreement, and the documents prepared to effectuate this Settlement, the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation, or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to, (aa) the truth of any fact alleged by Lead Plaintiffs or

any Settlement Class Member; (bb) the validity of any claim that was or could have been asserted in the Action or in any other litigation; (cc) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (dd) any liability, negligence, fault, or other wrongdoing of any of the Defendant Releasees; or (ee) any damages suffered by Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason as against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including arbitration), other than such proceedings necessary to effectuate the provisions of the Stipulation;

(b) shall be (i) offered against any of the Plaintiff Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiff Releasees (aa) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (bb) with respect to any liability, negligence, fault, or wrongdoing; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including arbitration), other than such proceedings necessary to effectuate the provisions of the Stipulation; or

(c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount that could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26.    **Supporting Papers** – Lead Counsel shall file the opening papers in support of the proposed Settlement, the Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses no later than thirty-five (35) calendar days prior to the Settlement Hearing; and Lead Plaintiffs and Lead Counsel are authorized to file reply papers no later than seven (7) calendar days prior to the Settlement Hearing.

27.    The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 2024.

_____
The Honorable P. Casey Pitts
United States District Judge

# EXHIBIT A-1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated, | No. 5:21-cv-09953-PCP |
| Plaintiff, | **EXHIBIT A-1** |
| vs. | |
| CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ, | |
| Defendants. | |

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

***A Federal Court authorized this Notice. This is not a solicitation from a lawyer.***
***YOU MAY BE ENTITLED TO A CASH AWARD.***

**TO: All persons who purchased or otherwise acquired Chegg, Inc. ("Chegg" or the "Company") common stock between May 5, 2020, and November 1, 2021, inclusive, and who were damaged thereby (the "Settlement Class Period" or "Class Period"). You may be a member of the Settlement Class. If you do not wish to be part of the Settlement Class, you must respond to this Notice with a written request for exclusion (see below). You may be eligible to receive a share of the proceeds of the Settlement, but you must submit a Claim Form to participate in the Settlement (see below). If you are a broker or custodian, please immediately review this Notice for instructions on providing timely notification to beneficial owners.**

**NOTICE OF SETTLEMENT:** This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of California (the "Court"). Please be advised that the Court-appointed Lead Plaintiffs, KBC Asset Management NV ("KBC") and Pompano Beach Police and Firefighters' Retirement System ("Pompano Beach") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Court-certified Settlement Class (as defined in paragraph 26 below), have reached a proposed settlement of the above-captioned securities class action (the "Action") for $55,000,000.00 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have, including the possible receipt of cash from the Settlement. If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact the Court, Chegg, any other Defendants in the Action, or their counsel. All questions should be directed to the Claims Administrator or Lead Counsel (see paragraph 90 below).**

1.      <u>**Description of the Action and the Settlement Class**</u>:  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that Defendants Chegg, Daniel L. Rosensweig ("Rosensweig"), Andrew J. Brown ("Brown"), and Nathan Schultz ("Schultz") (collectively, the "Individual Defendants," and together with Chegg, "Defendants," and together with Lead Plaintiffs, the "Parties")[1] misled investors regarding (a) the extent to which Chegg's platform was used by students to cheat during the period of distance learning following the COVID-19 pandemic; and (b) the reasons for the Company's unprecedented growth during this time. The Complaint further alleges that in reality, Chegg's record growth was largely due to substantial use of its platform to cheat while students were learning remotely. The Complaint alleges that Chegg's stock price was artificially inflated as a result of Defendants' false and misleading statements, and that Chegg's stock price declined when the alleged truth regarding Defendants' alleged misrepresentations was revealed. A more detailed description of the Action is set forth in paragraphs 11-25 below. The proposed Settlement, if approved by the Court, will resolve the claims of the Settlement Class, as defined in paragraph 26 below.

2.      <u>**Statement of the Settlement Class's Recovery:**</u>  Subject to Court approval, Lead Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a payment of $55,000,000.00 in cash (the "Settlement Amount") to be deposited into an escrow account. The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) other Court-approved deductions) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth in paragraphs 56-73 below.

3.      <u>**Estimate of Average Amount of Recovery Per Share:**</u>  Based on Lead Plaintiffs' damages expert's estimates of the number of shares of Chegg common stock purchased during the Settlement Class Period that may have been affected by the alleged conduct at issue in the Action, and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses, and costs as described herein) would be $0.65 per alleged damaged share (hereinafter the "damaged shares"). ***Settlement Class Members should note, however, that the foregoing average recovery per share is only an estimate.*** Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they purchased/acquired and sold shares of Chegg common stock, and the total number and recognized loss amount of valid

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 5, 2024 (the "Stipulation" or "Settlement Agreement"), which is available at www.CheggSecuritiesLitigation.com. The singular forms of nouns and pronouns include the plural and vice versa.

Claim Forms and electronic claims submitted. Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* paragraphs 56-73 below) or such other plan of allocation as may be ordered by the Court.

4.     **Average Amount of Damages Per Share**: The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action. Among other things, Defendants deny each and all the claims and contentions alleged by Lead Plaintiffs in the Action and do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by Lead Plaintiffs or any members of the Settlement Class as a result of their alleged conduct.

5.     **Attorneys' Fees and Expenses Sought:**  Lead Counsel, who have been prosecuting the Action on a wholly contingent basis since 2021, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action.  Court-appointed Co-Lead Counsel Motley Rice LLC and Saxena White P.A. will apply to the Court for an award of attorneys' fees in an amount not to exceed twenty-five percent (25%) of the Settlement Fund, or $13,750,000, plus interest.  This fee award would equate to an estimated lodestar multiplier of approximately 1.6.  In addition, Lead Counsel will apply for reimbursement of Litigation Expenses incurred in connection with commencing, prosecuting and settling the Action, in an amount not to exceed $490,000, which sum may include the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class in an amount not to exceed $20,000.  Any fees and expenses awarded by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.  The estimates of the average cost per damaged share if the Court approves Lead Counsel's fee and expense application is $0.17.

6.     **Identification of Attorneys' Representatives:**  Lead Plaintiffs and the Settlement Class are represented by Christopher F. Moriarty, Esq. of Motley Rice LLC, 28 Bridgeside Boulevard, Mount Pleasant, SC 29464, (843) 216-9245, infocheggsettlement@motleyrice.com; and David R. Kaplan, Esq. of Saxena White P.A., 505 Lomas Santa Fe Drive, Suite 180, Solana Beach, CA 92075, (858) 997-0860, settlements@saxenawhite.com.

7.     **Reasons for the Settlement:**  Lead Plaintiffs' principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation.  Moreover, the substantial cash benefit provided under the Settlement must be considered against a number of factors, including Chegg's cash position and the Company's resources that could be allocated to any settlement or recovery.  Defendants, who deny all allegations of wrongdoing or liability or any violation of the law whatsoever, are entering into the Settlement solely to eliminate the uncertainty, distraction, time, burden, and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM ONLINE, OR BY MAIL AND POSTMARKED, NO LATER THAN _____, 2025.** | This is the only way to be potentially eligible to receive a payment from the Settlement Fund.  If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in |

| | paragraph 36 below) that you have against Defendants and the other Defendant Releasees (defined in paragraph 37 below), so it is in your interest to submit a Claim Form.<br><br>You may submit a Claim Form and still object to any part of the Settlement.<br><br>You cannot submit a Claim Form and exclude yourself. |
|---|---|
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION THAT IS *RECEIVED* NO LATER THAN _____, 2025.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendant Releasees concerning the Released Plaintiffs' Claims.<br><br>You cannot object to the proposed Settlement and cannot submit a Claim Form if you exclude yourself. |
| **OBJECT TO THE SETTLEMENT BY FILING ELECTRONICALLY OR IN PERSON WITH THE COURT, OR BY MAILING TO THE COURT A WRITTEN OBJECTION POSTMARKED NO LATER THAN _____, 2025.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them. You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class.<br><br>You do not need to submit a Claim Form to object. However, if you object, you must submit a Claim Form, as described above, by ____, to be eligible to receive a cash payment from the Settlement Fund<br><br>The Court can only approve or deny the Settlement and cannot change the terms. |
| **ATTEND A HEARING ON _____, 2025 AT __:___, AND FILE A NOTICE OF INTENTION TO APPEAR NO LATER THAN _____.** | Filing a written objection and notice of intention to appear by _____ allows you at the Settlement Hearing on _____, 2025 at __:___, to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses. If you submit a written objection, you may (but you do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |

| DO NOTHING | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |
|---|---|

## WHAT THIS NOTICE CONTAINS

Why Did I Get This Notice? — Page __
What Is This Case About? — Page __
How Do I Know If I Am Affected By The Settlement?
Who Is Included In The Settlement Class? — Page __
What Are Lead Plaintiffs' Reasons For The Settlement? — Page __
What Might Happen If There Were No Settlement? — Page __
How Are Settlement Class Members Affected By The Action
And The Settlement? — Page __
How Do I Participate In The Settlement? What Do I Need To Do? — Page __
How Much Will My Payment Be? — Page __
What Payment Are The Attorneys For The Settlement Class Seeking?
How Will The Lawyers Be Paid? — Page __
What If I Do Not Want To Be A Member Of The Settlement Class?
How Do I Exclude Myself? — Page __
When And Where Will The Court Decide Whether To Approve The Settlement?
Do I Have To Come To The Hearing? May I Speak At The Hearing If I
Do Not Like The Settlement? — Page __
What If I Bought Securities On Someone Else's Behalf? — Page __
Can I See The Court File? Who Should I Contact If I Have Questions? — Page __

## WHY DID I GET THIS NOTICE?

8.     The Court directed that this Notice be mailed to you because you, someone in your family, or an investment account for which you serve as a custodian may have purchased or acquired Chegg common stock during the Settlement Class Period. The Court has directed us to send you this Notice because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement. Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights. If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the claims administrator selected by Lead Plaintiffs and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.     The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so. It is also being sent to inform you of the terms of the proposed Settlement, and of

a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing"). See paragraph 80 below for details about the Settlement Hearing, including the date and location of the hearing.

10.    The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still must decide whether to approve the Settlement. If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made only after any appeals are resolved and after the completion of all claims processing. ***Please be patient, as this process can take some time to complete.***

## WHAT IS THIS CASE ABOUT?

11.    On December 22, 2021, this Action was commenced in the United States District Court for the Northern District of California, styled *Steven Leventhal v. Chegg, Inc., et al.*, Case No. 5:21-cv-09953 (N.D. Cal.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

12.    By Order dated September 7, 2022, the Court appointed KBC and Pompano Beach as Lead Plaintiffs and approved Lead Plaintiffs' selection of Motley Rice LLC and Saxena White P.A. as Co-Lead Counsel for the class.

13.    On December 8, 2022, Lead Plaintiffs filed their Consolidated Class Action Complaint for Violations of the Federal Securities Laws and Jury Trial Demand (the "Consolidated Complaint" or "Complaint"), on behalf of the Settlement Class, asserting claims for a putative class period of May 5, 2020, and November 1, 2021, inclusive. The Consolidated Complaint alleges, among other things, that throughout the Settlement Class Period, Defendants made materially false and misleading statements regarding (a) the extent to which Chegg's platform was used by students to cheat during the period of distance learning following the COVID-19 pandemic; and (b) the reasons for the Company's unprecedented growth during this time. The Complaint further alleges that, in reality, the Company's record growth was largely due to substantial use of its platform to cheat while students were learning remotely. The Complaint also alleges that Chegg's stock price was artificially inflated because of Defendants' false and misleading statements, and that Chegg's stock price declined substantially when the truth regarding Defendants' alleged misrepresentations was revealed through a corrective disclosure.

14.    On February 16, 2023, Defendants filed a motion to dismiss the Consolidated Complaint (the "Motion to Dismiss"). Lead Plaintiffs filed their opposition on April 27, 2023; and on June 8, 2023, Defendants filed their reply. On December 7, 2023, the Court, the Honorable P. Casey Pitts presiding, heard oral argument on Defendants' Motion to Dismiss. On March 4, 2024, the Court entered an Order denying in its entirety Defendants' Motion to Dismiss. The Court found that (a) Plaintiffs had cited evidence in the Consolidated Complaint that provided sufficient factual support for Plaintiffs' allegations of falsity and substantial student cheating on Chegg's platform during the Class Period; (b) Plaintiffs alleged a strong inference of Defendants' scienter; and (c) Plaintiffs adequately alleged loss causation.

6

15.    On April 22, 2024, Defendants moved for leave to file a motion for reconsideration of the Court's order denying their Motion to Dismiss, or in the alternative, to certify the order for interlocutory appeal (the "Motion for Reconsideration"). Defendants again challenged the adequacy of the Consolidated Complaint's allegations of falsity, scienter, and loss causation. The Court granted Defendants' request for leave, and the Parties fully briefed Defendants' Motion for Reconsideration. On July 17, 2024, the Court denied Defendants' Motion for Reconsideration.

16.    Following the Court's Order denying Defendants' Motion to Dismiss, Defendants filed their Answer to Lead Plaintiffs' Consolidated Complaint on April 24, 2024. Lead Plaintiffs then served extensive discovery on Defendants, as described below. Specifically, Lead Plaintiffs served their Rule 26(a)(1) Initial Disclosures, their First Requests for Production of Documents to Defendants, and their First Set of Interrogatories to Defendants on April 25, 2024. Lead Plaintiffs served their Second Set of Requests for Production of Documents to Defendants on May 24, 2024. Defendants served their Rule 26(a)(1) Initial Disclosures on May 29, 2024. Lead Plaintiffs served their Second Set of Interrogatories, their First and Second Sets of Requests for Admissions, and their Third Set of Requests for Production of Documents to Defendants on May 31, 2024. Defendants took the position that discovery was stayed pending resolution of their Motion for Reconsideration. Plaintiffs took the position that discovery was not stayed.

17.    While Lead Plaintiffs' written discovery requests to Defendants were outstanding, and after the Parties had agreed to an in-person mediation to be conducted on September 26, 2024, the Parties agreed to exchange certain materials in advance of the mediation, as part of a pre-mediation discovery process, to assist the Parties in better evaluating the relative strengths and weaknesses of their respective claims and defenses. Defendants agreed to expedite their production of core relevant documents responsive to Lead Plaintiffs' document requests and provide substantive responses to Lead Plaintiffs' Interrogatories and Requests for Admissions. Lead Plaintiffs, in turn, agreed to provide Defendants with certain documents relevant to Lead Plaintiffs' claims, including documents produced by colleges, universities, and other institutions of higher learning in response to Freedom of Information Act ("FOIA") requests referenced in the Consolidated Complaint.

18.    Accordingly, Defendant Chegg served its Responses to Lead Plaintiffs' First Set of Requests for Admission on August 28, 2024, and its Responses to Lead Plaintiffs' Second Set of Requests for Admission on August 30, 2024. In addition, Defendants produced approximately 77,000 pages of documents between July and August 2024. These productions included internal Chegg documents, including emails from the custodial files of the three Individual Defendants, and detailed subscriber and user engagement data for Chegg's platform.

19.    In May and June 2024, Lead Plaintiffs also commenced extensive discovery of relevant non-parties. Specifically, Lead Plaintiffs served approximately 51 non-party document subpoenas on: (1) media outlets that reported on Chegg's alleged cheating; (2) Exterro, Inc., an e-discovery and data management support services vendor that Chegg utilized, including in connection with this Action; (3) approximately two dozen colleges, universities, and service academies across the United States; and (4) securities analysts that issued reports on Chegg during the Class Period. Together, these non-parties produced, and Lead Plaintiffs reviewed, approximately 47,000 pages of documents.

20.    Additionally, as part of the Parties' pre-mediation agreement, Lead Plaintiffs reproduced to Defendants over 40,000 pages of documents that had previously been produced by colleges,

universities, and other institutions of higher learning in response to FOIA requests, subpoenas and/or other public records requests made during discovery and Lead Plaintiffs' pre-suit investigation, including documents referenced in the Consolidated Complaint and the Court's Orders denying Defendants' Motion to Dismiss and Motion for Reconsideration.

21.  In August 2024, the Court granted the Parties' Stipulated Protective Order (as Modified) and the Stipulated Order Re: Discovery of Electronically Stored Information (as Modified). During the course of document discovery, the Parties conducted numerous meet-and-confers amongst themselves and with non-parties in an effort to narrow or resolve areas of disagreement that arose, and similarly exchanged numerous letters and substantive emails amongst themselves and with non-parties.

22.  On August 2, 2024, the Parties filed a Joint Motion for Initial Case Management Conference informing the Court that the Parties had agreed to private mediation under the oversight of the Hon. Layn Phillips (Fmr.), a highly experienced mediator of complex securities and shareholder litigation.  On September 26, 2024, the Parties and Defendants' directors' and officers' liability insurance carriers (the "D&O Insurers") participated in a full-day, in-person mediation session in San Francisco, California conducted by Judge Phillips and two of his colleagues.  Prior to the mediation, each side submitted comprehensive mediation statements setting forth their respective positions on various legal and factual issues, supported by voluminous exhibits, which included detailed information obtained through the pre-mediation discovery discussed above.  During the mediation, the Parties provided their respective views on, *inter alia*, liability, damages, and Chegg's financial condition and outlook.  After a full day of negotiations, the Parties ultimately accepted Judge Phillips' recommendation to settle Lead Plaintiffs' claims for $55 million in cash.  On that same date, the Parties filed a Joint Case Management Statement to inform the Court that the Parties had participated in mediation and had reached an agreement in principle to settle the Action.

23.  Based on their investigation, discovery, prosecution and mediation of the case, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of the Settlement, as set forth in the Stipulation, are fair, reasonable, and adequate to Lead Plaintiffs and the other members of the Settlement Class, and in their best interests.  Based on Lead Plaintiffs' oversight of the prosecution of this matter and with the advice of its counsel, Lead Plaintiffs have agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things, (a) the substantial financial benefit that Lead Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; (b) the significant risks and costs of continued litigation and trial; (c) Chegg's resources to fund a settlement; and (d) the desirability of permitting the proposed Settlement to be consummated as provided by the terms of the Stipulation.

24.  The Stipulation and the Settlement constitute a compromise of matters that are in dispute among the Parties.  Defendants have entered into the Stipulation solely to eliminate the uncertainty, distraction, time, burden, and expense of further protracted litigation.  Each of the Defendants denies any wrongdoing, and the Settlement and Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly

deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever. The Stipulation and the Settlement also shall not be construed or deemed to be evidence of or an admission or concession on the part of any Lead Plaintiffs of an infirmity in any claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

25.    On _____, 2024, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Settlement Class Members, provisionally certified the Settlement Class, and scheduled the Settlement Hearing to consider, among other things, whether to grant final approval of the Settlement.

| **HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?** |
| --- |

26.    If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded. The Settlement Class consists of:

> All persons who purchased, or otherwise acquired Chegg common stock between May 5, 2020, and November 1, 2021, inclusive, and who were damaged thereby.

Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of Chegg during the Settlement Class Period; (3) the Immediate Family members of any Defendant or any Officer or director of Chegg during the Settlement Class Period; and (4) any entity that any Defendant owns or controls, or owned or controlled, during the Settlement Class Period. Also excluded from the Settlement Class are those persons who submit valid and timely requests for exclusion in accordance with the Preliminary Approval Order. *See* "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?" on page [__] below.

**PLEASE NOTE: RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT. IF YOU ARE A SETTLEMENT CLASS MEMBER AND YOU WISH TO BE POTENTIALLY ELIGIBLE TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN POSTMARKED OR SUBMITTED ONLINE AT THE SETTLEMENT WEBSITE, WWW.CHEGGSECURITIESLITIGATION.COM, NO LATER THAN _____, 2025.**

| **WHAT ARE LEAD PLAINTIFFS' REASONS FOR THE SETTLEMENT?** |
| --- |

27.    Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through further motion practice, trial, and appeals, as well as the very substantial risks they would face in establishing liability and damages. Lead Plaintiffs and Lead Counsel recognized that Defendants could have raised certain arguments that might have precluded recovery. For example, among other things, Defendants would assert that the statements at issue in the litigation were not materially false or misleading, and that even if they were, they

were not made with the requisite state of mind to support the securities fraud claims alleged. Additionally, even if the hurdles to establishing liability were overcome, the amount of damages that could be attributed to the allegedly false statements would have been vigorously contested. Lead Plaintiffs would have to prevail at several stages – including class certification, summary judgment and trial, and even if they prevailed on those, they would also need to prevail on the appeals that would likely follow.

28.    Moreover, Lead Plaintiffs and Lead Counsel considered Chegg's current financial condition and limited available resources to fund a settlement, including Chegg's finite available D&O insurance policies.  Further litigation, given its likely length and intensity, would have rapidly depleted these insurance policies.  Thus, had litigation continued, Lead Plaintiffs and Lead Counsel believe there was a very real risk (if not a virtual certainty) that the Settlement Class would have recovered less than the $55 million Settlement Amount, or nothing at all.

29.    In light of these risks, the amount of the Settlement, and the immediacy of recovery to the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.  Lead Plaintiffs and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $55,000,000.00 in cash (less the deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no, recovery after class certification, summary judgment, trial, and appeals, possibly years in the future.

30.    Defendants have denied each and all the claims and contentions asserted against them in the Action and deny having engaged in any wrongdoing or violation of law whatsoever. Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, as noted above, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

31.    If there were no Settlement and Lead Plaintiffs failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiffs nor the other members of the Settlement Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, either at class certification, summary judgment, at trial, or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.  Furthermore, even if Lead Plaintiffs successfully continued litigation (including at summary judgment, at trial, or on appeal), given Chegg's limited available resources to fund any such recovery, there was a very real risk (if not a virtual certainty) that the Settlement Class would recover less than the $55 million settlement amount, or nothing at all.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED
## BY THE ACTION AND THE SETTLEMENT?

32.    As a Settlement Class Member, you are represented by Lead Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf.  For more information, please consult "When And Where Will The Court Decide Whether To Approve The Settlement?" below.

33.   If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?" below.

34.   If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may make your objection by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?" below.

35.   If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court.  If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims against the Defendant Releasees (as defined below) and will provide that, upon the Effective Date of the Settlement, Plaintiff Releasees (as defined in paragraph 42 below), shall be deemed to have, and by operation of the Stipulation, of law, and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim (as defined in paragraph 36 below) against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting or maintaining any of the Released Plaintiffs' Claims against any of the Defendant Releasees.

36.   "Released Plaintiffs' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory, or common law or any other law, rule, or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant Releasees by Lead Plaintiffs or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacity as such, which arise out of, are based upon, or relate in any way to the factual predicate of the Action, including, but not limited to, (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, set forth, alleged, or referred to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any Chegg securities during the Settlement Class Period.  "Released Plaintiffs' Claims" shall not include any claims to enforce this Settlement or Excluded Claims.

37.   "Defendant Releasees" means each and all Defendants, Defendants' Counsel, the D&O Insurers, and their respective Related Persons.

38.   "Related Persons" means (i) with respect to Defendants, Defendants' Counsel, and the D&O Insurers, each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, reinsurers, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such; and (ii) with respect to the Individual Defendants, their respective spouses, Immediate Family members, heirs, successors, executors, estates,

administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives, trusts, community property, and any other entity in which any of them has a controlling interest, and as to such entities, each and all of their predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present Officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and accountants, insurers, and reinsurers.

39.    "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement including, but not limited to, whether or not to object to this Settlement or to the release of any Released Claims. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by California Civil Code §1542 and any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Releasees acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims, but they are, notwithstanding this potential, entering into the Stipulation and intend it to be a full, final, and permanent resolution of the matters at issue in this Action. Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

40.    The Judgment will also provide that, upon the Effective Date of the Settlement, Defendant Releasees shall be deemed to have, and by operation of the Stipulation, of law, and of the Judgment, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim (as defined in paragraph 41 below) against the Plaintiff Releasees (as defined in paragraph 42 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees. This release shall not apply to any Excluded Claim.

41.    "Released Defendants' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory, or common law or any other law, rule, or regulation

(including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff Releasees by Defendants or any member of Defendant Releasees, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacity as such, which arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement and any Excluded Claims.

42. "Plaintiff Releasees" means Lead Plaintiffs, all other plaintiffs in the Action, Plaintiffs' Counsel, and all other Settlement Class Members, as well as each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

43. The Judgment will also provide that, upon the Effective Date, as allowed by law, the Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

44. The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendant Releasees, without costs to any Party, except for the payments expressly provided for in the Stipulation.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

45. To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class, and you must timely complete and return the Claim Form with adequate supporting documentation postmarked or submitted online no later than _____, 2025. A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.CheggSecuritiesLitigation.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-877-884-2550. Please retain all records of your ownership of and transactions in Chegg securities, as they may be needed to document your Claim. If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

46. At this time, it is not possible to make a determination as to how much any individual Settlement Class Member may receive from the Settlement.

47. Pursuant to the Settlement, Defendants have agreed to cause the D&O Insurers to pay fifty-five million dollars ($55,000,000.00) in cash. The Settlement Amount will be deposited into an escrow account. The Settlement Amount plus any and all interest earned thereon is referred to as the "Settlement Fund." If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable

expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; (c) any attorneys' fees and Litigation Expenses awarded by the Court; and (d) other Court-approved deductions) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

48.   The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

49.   No Defendant Releasee or any person or entity that paid any portion of the Settlement Amount on Defendants' behalf are entitled to reclaim any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund, or the Plan of Allocation.  In no instance shall any Defendant Releasee be required to pay any amount other than as expressly provided for in the Stipulation.

50.   Approval of the Settlement is independent from approval of a plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

51.   Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked or submitted online at the Settlement website, www.CheggSecuritiesLitigation.com, on or before _____, 2025, shall be fully and forever barred from receiving payments pursuant to the Settlement, but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the Releases given.  This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in paragraph 36 above) against the Defendant Releasees (as defined in paragraph 37 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendant Releasees whether or not such Settlement Class Member submits a Claim Form.

52.   Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Chegg shares held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares that they purchased or acquired outside of the ERISA Plan.

53.   The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

54.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its Claim Form.

55.   Only Settlement Class Members, *i.e.*, persons who purchased or acquired Chegg common stock during the Settlement Class Period, will be potentially eligible to share in the distribution of the Net Settlement Fund.  Persons that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  Only shares of Chegg common stock are included in the Settlement.

## PROPOSED PLAN OF ALLOCATION

56.    The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic losses as a proximate result of the alleged wrongdoing set forth in the Consolidated Complaint.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

57.    The Plan of Allocation was created with the assistance of a consulting damages expert and reflects the assumption that Defendants' alleged false and misleading statements and material omissions proximately caused the price of Chegg common stock to be artificially inflated throughout the Class Period.  In calculating the estimated artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiffs' damages expert considered price changes in Chegg common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces.

58.    To have recoverable damages, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of Chegg common stock.  In this case, Lead Plaintiffs allege that Defendants made false statements and omitted material facts during the period between May 5, 2020, and November 1, 2021, inclusive, which had the effect of artificially inflating the price of Chegg common stock.  Lead Plaintiffs further allege that corrective information was released to the market on November 1, 2021 (after market close), which removed the artificial inflation from the price of Chegg common stock on November 2, 2021.

59.    Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Chegg common stock at the time of purchase or acquisition and at the time of sale, or the difference between the actual purchase price and sale price.  Accordingly, to have a Recognized Loss under the Plan of Allocation, a Class Member who or which purchased or otherwise acquired Chegg common stock during the Class Period must have held those shares through at least November 1, 2021.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

60.    Based on the formula stated below, a Recognized Loss Amount will be calculated for each purchase or acquisition of publicly traded Chegg common stock that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that number will be zero.

61.    For each share of publicly traded Chegg common stock purchased or otherwise acquired during the Class Period (*i.e.*, during the period from May 5, 2020 through and including the close of trading on November 1, 2021), and:

    i.    Sold before November 2, 2021, the Recognized Loss Amount will be $0.00.

ii.    Sold from November 2, 2021 through and including the close of trading on January 28, 2022, the Recognized Loss Amount will be *the least of:* (i) $28.19, the amount of artificial inflation per share on the date of purchase/acquisition; (ii) the purchase/acquisition price minus the average closing price between November 2, 2021 and the date of sale as stated in Table A below; or (iii) the purchase/acquisition price minus the sale price.

iii.   Held as of the close of trading on January 28, 2022, the Recognized Loss Amount will be *the lesser of:* (i) $28.19, the amount of artificial inflation per share on the date of purchase/acquisition; or (ii) the purchase/acquisition price minus $28.53.[2]

## ADDITIONAL PROVISIONS

62.    **Calculation of Claimant's "Recognized Claim":**  A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated above with respect to Chegg common stock.

63.    **FIFO Matching:**  If a Class Member made more than one purchase/acquisition or sale of Chegg common stock during the Class Period, all purchases/acquisitions and sales will be matched on a First In, First Out ("FIFO") basis.  Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

64.    **"Purchase/Sale" Dates:**  Purchases or acquisitions and sales of Chegg common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance, or operation of law of Chegg common stock during the Class Period shall not be deemed a purchase, acquisition, or sale of Chegg common stock for the calculation of a Claimant's Recognized Loss Amount, nor shall such receipt or grant be deemed an assignment of any claim relating to the purchase, acquisition, or sale of Chegg common stock unless (i) the donor or decedent purchased or otherwise acquired or sold Chegg common stock during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Chegg common stock.

65.    **Short Sales:**  The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Chegg common stock.  The date of a "short sale" is deemed to be the date of sale of the Chegg common stock.  In accordance with the Plan of Allocation, however, the

---

[2] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Chegg common stock during the "90-day look-back period," November 2, 2021 through and including January 28, 2022.  The mean (average) closing price for Chegg common stock during this 90-day look-back period was $28.53.

Recognized Loss Amount on "short sales" and the purchases covering "short sales" is zero.

66.    In the event that a Claimant has an opening short position in Chegg common stock, the earliest purchases or acquisitions of Chegg common stock during the Class Period will be matched against such opening short position and not be entitled to a recovery until that short position is fully covered.

67.    **Common Stock Purchased/Sold Through the Exercise of Options**:  With respect to Chegg common stock purchased/sold through the exercise of an option, the purchase/sale date of the common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

68.    **Determination of Distribution Amount:**  If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

69.    If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

70.    If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant.

71.    After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund at least six (6) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution.  Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance will be contributed to Investor Protection Trust, if approved by the Court, or another non-sectarian, not-for-profit, 501(c)(3) organization(s), to be approved by the Court.

72.    Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, will be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Lead Plaintiffs' damages expert, Lead Plaintiffs' consulting experts, Defendants, Defendants' Counsel, or any of the other Plaintiff Releasees or Defendant Releasees, or the Claims Administrator or other agent designated by Lead

Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Lead Plaintiffs, the Defendants and their respective counsel, and all other Defendant Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the Plan of Allocation, the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes, or any losses incurred in connection therewith.

73.    The Plan of Allocation stated herein is the plan being proposed to the Court for its approval by Lead Plaintiffs after consultation with their damages expert. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class. Any Orders regarding any modification of the Plan of Allocation will be posted on the case website, www.CheggSecuritiesLitigation.com.

---

**WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING?**
**HOW WILL THE LAWYERS BE PAID?**

---

74.    Lead Counsel have not received any payment for their services in pursuing claims against Defendants on behalf of the Settlement Class, nor have Lead Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Lead Plaintiffs will apply to the Court for an award of attorneys' fees for Lead Counsel in an amount not to exceed twenty-five percent (25%) of the Settlement Fund, or $13,750,000, plus interest. It is estimated that such an award would equate to a lodestar multiplier of approximately 1.6. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $490,000, including reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class in an amount not to exceed $20,000. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

---

**WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS?**
**HOW DO I EXCLUDE MYSELF?**

---

75.    Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to: Exclusions, Chegg Securities Litigation, c/o A.B. Data, Ltd., P.O. Box 173100 Milwaukee, WI 53217. The exclusion request must be received no later than _____, 2025. You will not be able to exclude yourself from the Settlement Class after that date. Each request for exclusion must (a) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Leventhal v. Chegg, Inc., et al.*, Case No. 5:21-cv-09953 (N.D. Cal.)"; (c) state the number of Chegg shares of common stock that the person or entity requesting exclusion purchased or acquired and sold during the Settlement Class Period, as well as the dates and prices of each such purchase or acquisition and sale, and the number

of shares held at the beginning of the Settlement Class Period; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A request for exclusion shall not be effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

76.    If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have a pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendant Releasees.

77.    If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

78.    Chegg has the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiffs and Chegg, as set forth in a confidential Supplemental Agreement.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DO NOT LIKE THE SETTLEMENT?**

---

79.    Settlement Class Members do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing. You can participate in the Settlement without attending the Settlement Hearing.

80.    The Settlement Hearing will be held on _____, 2025 at __:__ _.m., before the Honorable P. Casey Pitts at the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose, California, 95113. The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and/or any other matter related to the Settlement at or after the Settlement Hearing with such modification(s) as may be consented to by the Parties to the Stipulation and without further notice to the members of the Settlement Class.

81.    Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. In other words, you can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue.

82.    Any objection to the proposed Settlement must be in writing. All written objections and supporting papers must clearly identify the case name and number, *Leventhal v. Chegg, Inc., et al.*, Case No. 5:21-cv-09953 (N.D. Cal.). All written objections and supporting papers must be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California, or by mailing them to the address set forth below, such that they are filed or postmarked on or before _____, 2025. If you object, you must file a Claim Form, as described in paragraph 45 above, to receive your share of

19

the Settlement Fund, but you do not need to file a Claim Form to object.

<u>Clerk's Office</u>

Class Action Clerk
United States District Court
Robert F. Peckham Federal Building &
United States Courthouse
280 South First Street
San Jose, California 95113

83.    Any objection (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of Chegg common stock that the objecting Settlement Class Member purchased/acquired and sold during the Settlement Class Period (i.e., between May 5, 2020, and November 1, 2021, inclusive, as well as the dates and prices of each such purchase/acquisition and sale, and the number of securities held at the beginning of the Settlement Class Period). You may not object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

84.    You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

85.    If you wish to be heard orally at the hearing to oppose the approval of the Settlement, the Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office on or before ____, 2025. Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

86.    If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney, and that attorney must file a notice of appearance with the Court on or before _____, 2025, as set forth in Paragraph 85 above.

87.    The Court may adjourn the Settlement Hearing or any adjournment thereof without further written notice of any kind to the Settlement Class. Settlement Class Members should check the Court's PACER site (defined in Paragraph 90 below) or the Settlement website at **www.CheggSecuritiesLitigation.com**. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing, or updates regarding in-person, telephonic, or video

conference appearances at the hearing, will also be posted to the Settlement website.

88.    Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner **described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

89.    If you purchased or otherwise acquired Chegg securities during the Settlement Class Period for the beneficial interest of persons or organizations other than yourself, you must either (a) within seven (7) calendar days of receipt of the Postcard Notice, request from the Claims Administrator sufficient **copies** of the Postcard Notice to forward to all such beneficial owners, and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Postcard Notice, provide a list of the names and addresses of all such beneficial owners to *Chegg Securities Litigation*, c/o A.B. Data, P.O. Box 173204 Milwaukee, WI 53217, info@Cheggsecuritieslitigation.com.  If you choose the second option, the Claims Administrator will send a copy of the Postcard Notices to the beneficial owners.  Upon full compliance with these directions, such nominees may obtain reimbursement of their reasonable expenses incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Any dispute concerning the reasonableness of reimbursement of costs shall be resolved by the Court.  Copies of the Postcard Notice, this Notice, and the Claim Form may also be obtained from the website maintained by the Claims Administrator, **www.CheggSecuritiesLitigation.com, or by calling the Claims Administrator toll-free at 1-877-884-2550.**

## CAN I SEE THE COURT FILE?  WHO SHOULD I CONTACT IF I HAVE QUESTIONS?

90.    This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which are available by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov or by visiting the Office of the Clerk, United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California, 95113, or any other location of the United States District Court for the Northern District of California, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.CheggSecuritiesLitigation.com.

Inquiries, other than requests for the Notice and Claim Form, should be directed to:

*Chegg Securities Litigation*
c/o A.B. Data
P.O. Box 173204
Milwaukee, WI 53217

www.CheggSecuritiesLitigation.com
info@Cheggsecuritieslitigation.com

and/or

MOTLEY RICE LLC
Christopher F. Moriarty. Esq.
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
infocheggsettlement@motleyrice.com

SAXENA WHITE P.A.
David R. Kaplan, Esq.
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
settlements@saxenawhite.com

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE
CLERK OF THE COURT, DEFENDANTS, OR THEIR COUNSEL
REGARDING THIS NOTICE.**

Dated: _____, 2024                    By Order of the Court
                                            United States District Court
                                            Northern District of California

**TABLE A**

| 90-Day Look-back Table for Chegg Common Stock Closing Price and Average Closing Price November 2, 2021 through January 28, 2022 | | | | | |
|---|---|---|---|---|---|
| Date | Closing Price | Average Closing Price between November 2, 2021 and Date Shown | Date | Closing Price | Average Closing Price between November 2, 2021 and Date Shown |
| 11/2/2021 | $32.12 | $32.12 | 12/16/2021 | $27.69 | $28.50 |
| 11/3/2021 | $34.08 | $33.10 | 12/17/2021 | $29.46 | $28.53 |
| 11/4/2021 | $31.63 | $32.61 | 12/20/2021 | $29.66 | $28.56 |
| 11/5/2021 | $30.64 | $32.12 | 12/21/2021 | $30.40 | $28.61 |
| 11/8/2021 | $30.78 | $31.85 | 12/22/2021 | $30.36 | $28.66 |
| 11/9/2021 | $30.05 | $31.55 | 12/23/2021 | $30.55 | $28.71 |
| 11/10/2021 | $30.15 | $31.35 | 12/27/2021 | $30.28 | $28.75 |
| 11/11/2021 | $29.64 | $31.14 | 12/28/2021 | $29.39 | $28.77 |
| 11/12/2021 | $29.42 | $30.95 | 12/29/2021 | $29.28 | $28.78 |
| 11/15/2021 | $29.31 | $30.78 | 12/30/2021 | $30.52 | $28.82 |
| 11/16/2021 | $29.69 | $30.68 | 12/31/2021 | $30.70 | $28.87 |
| 11/17/2021 | $28.60 | $30.51 | 1/3/2022 | $31.12 | $28.92 |
| 11/18/2021 | $27.06 | $30.24 | 1/4/2022 | $29.66 | $28.94 |
| 11/19/2021 | $26.53 | $29.98 | 1/5/2022 | $28.99 | $28.94 |
| 11/22/2021 | $25.54 | $29.68 | 1/6/2022 | $29.49 | $28.95 |
| 11/23/2021 | $25.02 | $29.39 | 1/7/2022 | $29.55 | $28.96 |
| 11/24/2021 | $25.25 | $29.15 | 1/10/2022 | $29.28 | $28.97 |
| 11/26/2021 | $24.99 | $28.92 | 1/11/2022 | $29.59 | $28.98 |
| 11/29/2021 | $25.70 | $28.75 | 1/12/2022 | $29.03 | $28.98 |
| 11/30/2021 | $27.85 | $28.70 | 1/13/2022 | $29.19 | $28.99 |
| 12/1/2021 | $27.44 | $28.64 | 1/14/2022 | $28.94 | $28.99 |
| 12/2/2021 | $28.95 | $28.66 | 1/18/2022 | $27.51 | $28.96 |
| 12/3/2021 | $28.56 | $28.65 | 1/19/2022 | $27.79 | $28.94 |
| 12/6/2021 | $29.43 | $28.68 | 1/20/2022 | $26.84 | $28.90 |
| 12/7/2021 | $28.19 | $28.66 | 1/21/2022 | $26.21 | $28.85 |
| 12/8/2021 | $28.71 | $28.67 | 1/24/2022 | $26.65 | $28.81 |
| 12/9/2021 | $28.00 | $28.64 | 1/25/2022 | $25.23 | $28.75 |
| 12/10/2021 | $27.57 | $28.60 | 1/26/2022 | $24.36 | $28.68 |
| 12/13/2021 | $27.92 | $28.58 | 1/27/2022 | $24.13 | $28.60 |
| 12/14/2021 | $27.47 | $28.54 | 1/28/2022 | $24.37 | $28.53 |
| 12/15/2021 | $27.89 | $28.52 | | | |

# EXHIBIT A-2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br><br>vs.<br><br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br><br>Defendants. | No. 5:21-cv-09953-PCP |

## PROOF OF CLAIM AND RELEASE

### I.  GENERAL INSTRUCTIONS

1.    To recover as a member of the Settlement Class based on your claim in the action entitled *Leventhal v. Chegg, Inc., et al.,* No. 5:21-cv-09953 (N.D. Cal.) (the "Action"), you must complete and, on page 5 below, sign this Proof of Claim and Release form ("Claim Form").[1] If you fail to submit a timely and properly addressed (as explained in paragraph 3 of this section) Claim Form, your claim may be rejected, and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement.

2.    Submission of this Claim Form, however, does not ensure that you will share in the proceeds of the Settlement of the Action.

3.    **THIS CLAIM FORM MUST BE SUBMITTED ONLINE AT WWW.CHEGGSECURITIESLITIGATION.COM NO LATER THAN _____, OR, IF MAILED, BE POSTMARKED NO LATER THAN _____, ADDRESSED AS FOLLOWS**:

Chegg Securities Litigation
c/o A.B. Data, Ltd.
P.O. Box 173024
Milwaukee, WI 53217
www.CheggSecuritiesLitigation.com

4.    Do not mail or deliver your Claim Form to the Court, the Parties to this Action, or their counsel. Submit your Claim Form only to the Claims Administrator.

5.    If you are a member of the Settlement Class, you are bound by the terms of any judgment entered in the Action, including the releases provided for therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT.

### II.  CLAIMANT IDENTIFICATION

1.    If you purchased or otherwise acquired common stock of Chegg, Inc. ("Chegg") between May 5, 2020, and November 1, 2021, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby, and held the common stock in your name, you are the beneficial owner as well as the record owner. If, however, you purchased or otherwise

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement ("Stipulation" or "Settlement Agreement").

acquired Chegg common stock during the Class Period through a third party, such as a brokerage firm, you are the beneficial owner, and the third party is the record owner.

    2.   Use **Part I** of this form entitled "Claimant Information" to identify each beneficial owner of Chegg common stock that forms the basis of this claim, as well as the owner of record if different. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL OWNERS OR THE LEGAL REPRESENTATIVE OF SUCH OWNERS.

    3.   All joint owners must sign this claim. Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of persons they represent and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or Taxpayer Identification) Number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.  IDENTIFICATION OF TRANSACTIONS

    1.   Use **Part II** of this form entitled "Schedule of Transactions in Chegg Common Stock" to supply all required details of your transaction(s) in Chegg common stock. If you need more space or additional schedules, attach separate sheets giving all the required information in substantially the same form. Sign and print or type your name on each additional sheet.

    2.   On the schedules, provide all the requested information with respect to your holdings, purchases, acquisitions, and sales of Chegg common stock, whether the transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

    3.   The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Chegg common stock. The date of a "short sale" is deemed to be the date of sale of the Chegg common stock.

    4.   Copies of broker confirmations or other documentation of your transactions must be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim. **THE PARTIES DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN CHEGG COMMON STOCK.**

    5.   NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. All claimants with large numbers of transactions using the electronic filing format, MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies. If you wish to file your claim electronically, you must contact the Claims Administrator at (877) 884-2550 to obtain the required file layout. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

## PART I:  <u>CLAIMANT INFORMATION</u>

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's Name:

Co-Beneficial Owner's Name:

Entity Name (if claimant is not an individual):

Representative or Custodian Name (if different from Benefical Owner(s) listed above):

Address 1 (street name and number):

Address 2 (apartment, unit, or box number):

| City | State | Zip Code/Province Code | Country |
|---|---|---|---|
|  |  |  |  |

Social Security Number (Last four digits only) or Taxpayer Identification Number (last four digits):

| Telephone Number (Home): | Telephone Number (Cell): |
|---|---|
|  |  |

Email Address:

Account Number (if filing for multiple accounts, file a separate Claim Form for each account):

Claimant Account Type (check appropriate box):

| Individual (includes joint owner accounts) ☐ | Pension Plan ☐ |
|---|---|
| Corporation ☐ | Estate ☐ |
| IRA/401k ☐ | Trust ☐ |

Other_____ (please specify)

## PART II: <u>SCHEDULE OF TRANSACTIONS IN CHEGG COMMON STOCK</u>

**1. HOLDINGS AS OF MAY 5, 2020** – State the total number of Publicly-Traded Chegg Common Stock held as of the opening of trading on May 5, 2020. (Must be documented.) If none, write "zero" or "0."

**2. PURCHASES/ACQUISITIONS DURING THE CLASS PERIOD** – Separately list every purchase/acquisition of publicly-traded Chegg common stock from after the opening of trading on May 5, 2020, through November 1, 2021. (Must be documented.)

| Date of Purchase (List Chronologically) (Month/Day/Year) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**3. PURCHASES/ACQUISITIONS DURING 90-DAY LOOKBACK PERIOD** – State the total number of shares of publicly-traded Chegg common stock purchased/acquired between November 2, 2021, and January 28, 2022, inclusive. (Must be documented.)

**4. SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each sale/disposition of publicly-traded Chegg common stock from after the opening of trading on May 5, 2020, through and including the close of trading on January 28, 2022. (Must be documented.)

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**5. END HOLDINGS** – State the total number of shares of publicly-traded Chegg common stock held as of the close of trading on January 28, 2022. If none, write "zero" or "0." (Must be documented.)

## III. SUBMISSION TO JURISDICTION OF THE COURT AND ACKNOWLEDGMENTS

By signing and submitting this Claim Form, the claimant(s), or the person(s) acting on behalf of the claimant(s), certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation of the Net Settlement Fund described in the Stipulation or any other plan of allocation approved by the Court. I (We) also submit to the jurisdiction of the United States District Court for the Northern District of California (the "Court") with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth herein and in the Stipulation. I (We) further acknowledge that I (we) will be bound by the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth therein. I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in eligible Chegg common stock, if required to do so. I (We) have not submitted any other claim covering the same transactions in Chegg common stock during the Class Period and know of no other person having done so on my (our) behalf.

## IV. RELEASES, WARRANTIES, AND CERTIFICATION

1.    I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the Stipulation, that I am (we are) not excluded from the Settlement Class, and that I am (we are) not one of the "Defendant Releasees" as defined in the Stipulation.

2.    As a Class Member, I (we) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, and discharge with prejudice the Released Plaintiffs' Claims as to all the Defendant Releasees (as these terms are defined in the Stipulation). This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

3.    I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

4.    I (we) have read and understand the contents of the Settlement Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation.

5.    I (We) hereby warrant and represent that I (we) have included information about all my (our) purchases, acquisitions, and sales of Chegg common stock that occurred during the Settlement Class Period and the number of shares held by me (us), to the extent requested.

6.    I (We) certify that I am (we are) NOT subject to backup tax withholding. (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

7.    I (We) acknowledge that I (We) will be bound by and subject to the term of any Judgment that may be entered in the Action; and

8.    I (We) waive the right to trial by jury, to the extent it exists, and agree to any determination made by the Court regarding the validity or amount of this claim, and waive any right of appeal or review with respect to such determination.

I declare under penalty of perjury under the laws of the United States of America that all the foregoing information supplied on this Claim Form by the undersigned is true and correct.

Executed this _____ day of _____ in _____, _____.
                                     (Month / Year)                    (City)                   (State/Country)

_____
Signature of Claimant                                    Signature of Joint Claimant, if any

_____
Print Name of Claimant                                   Print Name of Joint Claimant, if any

_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor, or Administrator)

ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.

**REMINDER CHECKLIST:**

1.   Please sign this Claim Form.

2.   DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.

3.   Attach only copies of supporting documentation as these documents will not be returned to you.

4.   Keep a copy of your Claim Form for your records.

5.   If you change addresses after submitting this Claim Form, please notify the Claims Administrator of the change in your address; otherwise, you may not receive additional notices or payment.

# EXHIBIT A-3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:21-cv-09953-PCP |
| Plaintiff, | |
| vs. | |
| CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ, | |
| Defendants. | |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO: All persons who purchased or acquired Chegg, Inc. ("Chegg" or the "Company") common stock between May 5, 2020, and November 1, 2021, inclusive (the "Settlement Class Period"). You may be a member of the Settlement Class. If you do not wish to be a part of the Settlement Class, you must respond to this Notice with a written request for exclusion (see below). You may be eligible to share in the proceeds of the Settlement, but you must submit a Claim Form to participate in the Settlement (see below).**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. YOU MAY BE ENTITLED TO A CASH AWARD. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of California (the "Court"), that the above-captioned litigation (the "Action") has been certified as a class action for settlement purposes only on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full printed Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that the Court-appointed Lead Plaintiffs on behalf of themselves and the Court-certified Settlement Class in the Action, have reached a proposed settlement of the Action for fifty-five million dollars ($55,000,000.00) in cash (the "Settlement"), that, if approved by the Court, will resolve all claims in the Action.

A hearing will be held on _____, 2025 at ___ : ___ ___.m., before the Honorable P. Casey Pitts at the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, Courtroom 8, 4th Floor, 280 South First

Street, San Jose, CA 95113, to determine, among other things, whether: (i) the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) the Judgment as provided under the Stipulation and Agreement of Settlement dated November 5, 2024 (the "Stipulation") should be entered dismissing the Action with prejudice against the Defendant Releasees; (iii) the proposed Plan of Allocation should be approved by the Court as fair and reasonable; (iv) Lead Plaintiffs' application for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved.  The capitalized terms herein shall have the same meaning as they have in the Stipulation.[1]

The Court may adjourn the Settlement Hearing or any adjournment thereof without further written notice of any kind to the Settlement Class.  Settlement Class Members should check the Court's PACER site (defined below) or the Settlement website, www.CheggSecuritiesLitigation.com.  Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person, telephonic, or video conference appearances at the hearing, will also be posted to the Settlement website.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**. If you have not yet received the Notice or Claim Form, you may obtain copies of these documents by visiting the Settlement website at www.CheggSecuritiesLitigation.com or by contacting the Claims Administrator at:

*CHEGG SECURITIES LITIGATION*
c/o A.B. Data, Ltd.
P.O. Box 173204
Milwaukee, WI 53217
(877) 884-2550
www.CheggSecuritiesLitigation.com
info@cheggsecuritieslitigation.com

Copies of the Notice and the Claim Form are also available by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the Office of the Clerk of Court, United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, CA 95113, or any other location of the Northern District of California between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

Inquiries, other than requests for the Notice or a Claim Form or for information about the status of a claim, may be made to Lead Counsel:

MOTLEY RICE LLC
Christopher F. Moriarty, Esq.
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
infocheggsettlement@motleyrice.com

SAXENA WHITE P.A.
David R. Kaplan, Esq.

---

[1] The Stipulation can be viewed and/or obtained at www.CheggSecuritiesLitigation.com, PACER, visiting the office of the Clerk of the Court, or by contacting the Claims Administrator or Lead Counsel as described herein. For the precise terms of the Settlement, please see the Stipulation.

505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
settlements@saxenawhite.com

      If you are a member of the Settlement Class, to potentially be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked or completed online* **no later than _____, 2025.** If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

      If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion that is *received* **no later than _____, 2025,** in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

      Any objections[2] to the proposed Settlement, the proposed Plan of Allocation, or Lead Plaintiffs' motion for attorneys' fees and reimbursement of litigation expenses must be in writing, signed, and filed or postmarked to the Court **no later than _____,** in accordance with the instructions in the Notice.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE, THE PROPOSED SETTLEMENT, OR THE CLAIMS PROCESS.** All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to the Claims Administrator or Lead Counsel.

Dated: _____

                             By Order of the Court
                             United States District Court
                             Northern District of California

---

[2] You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or deny the Settlement and cannot change the terms. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must clearly identify the case name and number (*Leventhal v. Chegg, Inc., et al.*, Case No. 5:21-cv-09953-PCP), and include all information required by the Court as detailed in the Notice.

# EXHIBIT A-4

**LEGAL NOTICE**

**Court-Ordered Legal Notice (Forwarding Service Requested)**

Important Information about a Securities Class Action Settlement

You may be entitled to a payment. This Notice may affect your legal rights.

Please read it carefully.

www.CheggSecuritiesLitigation.com

*Chegg Securities Settlement*
c/o A.B. Data, Ltd.
P.O. Box 173204
Milwaukee, WI 53217

*Leventhal v. Chegg, Inc., et al.*,
   No. 5:21-cv-09953-PCP (N.D. Cal.)

[NAME 1]
[NAME 2]
[NAME 3]
[ADDRESS 1]
[ADDRESS 2]

THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT. VISIT WWW.CHEGGSECURITIESLITIGATION.COM OR CALL (877) 884-2550 FOR MORE INFORMATION.

If you purchased or otherwise acquired common stock of Chegg, Inc. ("Chegg" or the "Company") between May 5, 2020 and November 1, 2021, inclusive (the "Class Period" or "Settlement Class Period"), this notice is to inform you that a Class was certified for purposes of a proposed settlement ("Settlement") only, and that you could be entitled to a payment from the Settlement reached in this action ("Action"). Your rights may be affected by this Action and the Settlement. A hearing will be held on ____, 2025, at _:__ a.m. before the Honorable P. Casey Pitts at the United States District Court for the Northern District of California, 280 South First Street, Courtroom 8, 4th Floor, San Jose, CA 95113 to determine whether the proposed Settlement of the Action against Defendants Chegg, Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz for $55 million in cash and the Plan of Allocation should be approved as fair, reasonable, and adequate; whether the Action should be dismissed with prejudice against Defendants, as set forth in the Stipulation and Agreement of Settlement ("Stipulation") filed with the Court; and whether Lead Plaintiffs' application for an award of attorneys' fees of up to 25% of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $490,000, plus interest, should be granted. All capitalized terms used in this Postcard Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

The proposed Settlement would resolve this class action lawsuit alleging that, in violation of the U.S. securities laws, Defendants made material misrepresentations and omissions, with scienter, regarding (i) the extent to which Chegg's platform was used by students to cheat during the period of distance learning following the COVID-19 pandemic; and (ii) the reasons for Chegg's growth during that time. Defendants deny these allegations. For a full description of the Settlement and your rights and to make a claim, you may obtain the Stipulation, long-form Notice, the Claim Form, motion for final approval of the Settlement, and motion for an award of attorneys' fees by visiting the website: www.CheggSecuritiesLitigation.com ("Settlement Website") or you may request copies from the Claims Administrator by: (i) mail: Chegg, Inc. Securities Litigation, c/o A.B. Data, Ltd., P.O. Box 173204, Milwaukee, WI 53217; or (ii) call toll-free: (877) 884-2550.

To qualify for payment, you must submit a valid Claim Form, with supporting documentation, postmarked no later than ____, 2025. You will be bound by any Judgment entered in this Action, regardless of whether you submit a Claim Form, unless you submit a request to exclude yourself from the Class. If you exclude yourself, you cannot receive money from this Settlement. If you want to exclude yourself from the Class, you must submit a request for exclusion, *such that it is received* no later than ____, 2025, to: Chegg, Inc. Securities Litigation, Exclusions, c/o A.B. Data, Ltd., P.O. Box 173001, Milwaukee, WI 53217. If you do not exclude yourself and you stay in the Class, you may object to the Settlement, Plan of Allocation, or the request for award of attorneys' fees and expenses, provided the objection is filed or postmarked no later than ____. The long-form Notice and the Settlement Website explain how to exclude yourself from the Class or how to object.

Lead Plaintiff and the Class are represented by Lead Counsel: Christopher F. Moriarty, Motley Rice LLC, 28 Bridgeside Blvd., Mt. Pleasant, SC 29464, (843) 216-9000; and David R. Kaplan, Saxena White P.A., 505 Lomas Santa Fe Dr., Suite 180, Solana Beach, CA 92075, (858) 997-0860. You may, but do not have to, attend the Court hearing to be heard. The Court reserves the right to hold the Settlement Hearing telephonically, via Zoom, or by other virtual means. Please check the Settlement Website or the Court's PACER site to confirm that the date has not been changed. As detailed in the Notice, you may access the case docket via PACER or in person at any of the Court's locations.

# EXHIBIT B

1  **SAXENA WHITE P.A.**
   David R. Kaplan (SBN 230144)
2  dkaplan@saxenawhite.com
   505 Lomas Santa Fe Drive, Suite 180
3  Solana Beach, CA 92075
   Tel.: (858) 997-0860
4  Fax: (858) 369-0096

5  **MOTLEY RICE LLC**
   Max N. Gruetzmacher (*pro hac vice*)
6  mgruetzmacher@motleyrice.com
   Christopher F. Moriarty (*pro hac vice*)
7  cmoriarty@motleyrice.com
   28 Bridgeside Blvd.
8  Mt. Pleasant, SC 29464
   Telephone: (843) 216-9000
9
   *Counsel for Lead Plaintiffs and*
10 *Lead Counsel for the Settlement Class*

11

12             **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**

13 STEVEN LEVENTHAL, Individually and       Case No. 5:21-cv-09953-PCP
   on Behalf of All Others Similarly Situated,
14                                          **CLASS ACTION**
                Plaintiff,
15                                          **EXHIBIT B**
         vs.
16                                          [PROPOSED] FINAL JUDGMENT AND ORDER
   CHEGG, INC., DANIEL L.                   OF DISMISSAL
17 ROSENSWEIG, ANDREW J. BROWN,
   and NATHAN SCHULTZ,
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

1        WHEREAS, a class action is pending in this Court entitled *Leventhal v. Chegg, Inc., et al.*,

2    Case No. 5:21-cv-09953-PCP (N.D. Cal.) (the "Action");

3        WHEREAS, by order dated September 7, 2022, this Court appointed KBC Asset

4    Management NV and Pompano Beach Police and Firefighters' Retirement System as Lead

5    Plaintiffs ("Lead Plaintiffs" or "Plaintiffs") pursuant to the requirements of the Private Securities

6    Litigation Reform Act of 1995 and approved Lead Plaintiffs' selection of Motley Rice LLC

7    ("Motley Rice") and Saxena White P.A. ("Saxena White") as Lead Counsel ("Lead Counsel")

8    (ECF No. 105);

9        WHEREAS, on December 8, 2022, Lead Plaintiffs filed their Consolidated Class Action

10    Complaint for Violations of the Federal Securities Laws and Jury Trial Demand (the "Complaint,"

11    ECF No. 115);

12        WHEREAS, (a) Lead Plaintiffs, on behalf of themselves and the Settlement Class, and (b)

13    Defendants Chegg, Inc. ("Chegg"), Daniel L. Rosensweig, Andrew J. Brown, and Nathan Schultz

14    (collectively the "Defendants," and, together with Lead Plaintiffs, the "Parties") have entered into

15    a Stipulation and Agreement of Settlement dated November 5, 2024 (the "Stipulation" or

16    "Settlement Agreement"), that provides for a complete dismissal with prejudice of the claims

17    asserted in the Complaint against Defendant Releasees (as defined in the Stipulation) on the terms

18    and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

19        WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall

20    have the same meaning as they have in the Stipulation;

21        WHEREAS, by order dated _____, 2024 (the "Preliminary Approval Order"), this

22    Court: (a) preliminarily approved the Settlement and certified the Settlement Class for purposes of

23    this Settlement only; (b) ordered that notice of the proposed Settlement be provided to potential

24    Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to

25    exclude themselves from the Settlement Class or to object to the proposed Settlement; and (d)

26    scheduled a hearing regarding final approval of the Settlement;

27        WHEREAS, due and adequate notice has been given to the Settlement Class;

28        WHEREAS, the Court conducted a hearing on _____, 2025 (the "Settlement Hearing")

[PROPOSED] FINAL JUDGMENT &
ORDER OF DISMISSAL
5:21-cv-09953-PCP

1   to consider, among other things, (a) whether the terms and conditions of the Settlement are fair,

2   reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b)

3   whether a judgment should be entered dismissing the Action with prejudice as against the

4   Defendants, and authorizing the Releases specified and described in the Stipulation (and in the

5   Notice); and

6          WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed,

7   and proceedings held herein in connection with the Settlement, all oral and written comments

8   received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

9          IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

10         1.      **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and

11  all matters relating to the Settlement, as well as personal jurisdiction over the Parties and each of

12  the Settlement Class Members.

13         2.      **Incorporation of Settlement Documents** – This Judgment incorporates and makes

14  a part hereof: (a) the Stipulation; and (b) the Postcard Notice, Notice, and the Summary Notice,

15  which were previously filed with the Court.

16         3.      **Class Certification for Settlement Purposes** – The Court hereby affirms its

17  determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement

18  only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil

19  Procedure on behalf of the Settlement Class consisting of all persons who purchased or acquired

20  Chegg common stock between May 5, 2020, and November 1, 2021, inclusive, and were damaged

21  thereby.  Excluded from the Settlement Class are: (1) Defendants; (2) the Officers or directors of

22  Chegg during the Settlement Class Period; (3) the Immediate Family members of any Defendant

23  or any Officer or director of Chegg during the Settlement Class Period; and (4) any entity that any

24  Defendant owns or controls, or owned or controlled, during the Settlement Class Period.  Also

25  excluded from the Settlement Class are the persons or entities listed in Exhibit 1 hereto who filed

26  valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

27         4.      **Settlement Notice** – The Court finds that the dissemination of the Postcard Notice

28  and Notice and the publication of the Summary Notice:  (a) were implemented in accordance with

[PROPOSED] FINAL JUDGMENT &            2
ORDER OF DISMISSAL
5:21-cv-09953-PCP

the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Plaintiffs' motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Plaintiffs' motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules. No Settlement Class Member is relieved from the terms of the Settlement and the Stipulation, including the Releases provided for therein, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice. A full opportunity has been offered to Settlement Class Members to object to the proposed Settlement and the Agreement and to participate in the hearing thereon. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged and that the statutory waiting period has elapsed. Thus, it is hereby determined that all members of the Settlement Class are bound by this Judgment, except those persons listed on Exhibit 1 to this Judgment.

5.    **<u>Final Settlement Approval and Dismissal of Claims</u>** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted in the Complaint against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class. Specifically, the Court finds that (a) Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class; (b) the Settlement was negotiated by the Parties at arm's length; (c) the relief

provided for the Settlement Class under the Settlement is adequate taking into account the costs, risks, and delay of trial and appeal, the proposed means of distributing the Settlement Fund to the Settlement Class, and the proposed attorneys' fee and expense award; and (d) the Settlement treats members of the Settlement Class equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

6.    The Action and all the claims asserted in the Complaint against Defendants in the Action by Lead Plaintiffs and the other Settlement Class Members are hereby dismissed with prejudice. The Parties and the D&O Insurers shall bear their own costs and expenses, except as otherwise expressly provided for in the Stipulation.

7.    **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiffs, and all other Settlement Class Members (regardless of whether any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed on Exhibit 1 hereto are excluded from the Class pursuant to request and are not bound by the terms of the Stipulation or this Judgment. No Person shall have any claim against the Lead Plaintiffs, Lead Counsel, or the Claims Administrator, or any other Person designated by Lead Counsel, based on determinations or distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further order(s) of the Court.

8.    **Releases** – The Releases set forth in the Stipulation, together with the definitions contained in the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)    Without further action by anyone, and subject to Paragraph 9 below, upon the Effective Date of the Settlement, Plaintiff Releasees, by operation of the Stipulation, of law, and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from

[PROPOSED] FINAL JUDGMENT &
ORDER OF DISMISSAL
5:21-cv-09953-PCP

4

commencing, instituting, prosecuting, or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees.  This Release shall not apply to any Excluded Claim.

(b)     Without further action by anyone, and subject to paragraph 9 below, upon the Effective Date of the Settlement, Defendant Releasees, by operation of the Stipulation, of law, and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees.  This Release shall not apply to any Excluded Claim.

(c)     Upon the Effective Date, Plaintiff Releasees are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiffs' Claims against any of the Defendant Releasees; and

(d)     Upon the Effective Date, to the extent allowed by law, the Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

9.     Notwithstanding Paragraphs 6 through 8 above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

10.    **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

11.    **No Admissions** – Neither this Judgment, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the

execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (aa) the truth of any fact alleged by Lead Plaintiffs or any Settlement Class Member; (bb) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (cc) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (dd) any liability, negligence, fault, or other wrongdoing of any of the Defendant Releasees; or (ee) any damages suffered by Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including arbitration) other than such proceedings necessary to effectuate the provisions of the Stipulation;

(b)     shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (aa) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (bb) with respect to any liability, negligence, fault, or wrongdoing; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including arbitration) other than such proceedings necessary to effectuate the provisions of the Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; provided, the Parties and the Releasees and their respective counsel may refer to this Judgment to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

12.     **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) the Parties for purposes of

the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

13.    Separate orders shall be entered regarding approval of a Plan of Allocation and the motion of Lead Plaintiffs for an award of attorneys' fees and reimbursement of Litigation Expenses.  Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

14.    **Modification of the Agreement of Settlement** – Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement.  Without further order of the Court, Lead Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

15.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of September 26, 2024, as provided in the Stipulation.

16.    **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

1       SO ORDERED this _____ day of _____, 2025.

2

3                                    _____
                                       The Honorable P. Casey Pitts
4                                      United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **Exhibit 1**

3

## **[List of Persons and Entities Excluded from the Settlement Class Pursuant to Request]**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28