**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Dr., Suite #180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000

*Counsel for Lead Plaintiffs and Lead Counsel for the Settlement Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No.: 5:21-cv-09953-PCP<br><br>**CLASS ACTION**<br><br>LEAD PLAINTIFFS': (I) NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND (II) MEMORANDUM OF LAW IN SUPPORT THEREOF<br><br>Hearing Date: April 24, 2025<br>Time: 10:00 a.m.<br>Dept: Courtroom 8<br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION ........................................... vii

STATEMENT OF ISSUES TO BE DECIDED .................................................... vii

MEMORANDUM OF LAW .................................................................................. 1

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ........................... 3

III.  STANDARD FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS .................................................................................. 4

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL .................................... 6

      A.    The Proposed Settlement Satisfies The Rule 23 Requirements ........................... 6

            1.    Rule 23(e)(2)(A): Lead Plaintiffs And Lead Counsel Have
                  Adequately Represented The Settlement Class .......................... 6

            2.    Rule 23(e)(2)(B): The Settlement Is The Result Of Non-
                  Collusive, Arm's Length Negotiations .......................... 7

            3.    Rule 23(e)(2)(C)(i): The Settlement Is Adequate
                  Considering The Costs, Risks And Delay Of Further
                  Litigation .................................................................. 8

            4.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final
                  Approval ................................................................. 13

            5.    Rule 23(e)(2)(D): All Settlement Class Members Are
                  Treated Equitably ...................................................... 15

      B.    The Remaining Relevant Hanlon Factors Also Weigh Strongly In
            Favor Of Final Approval ....................................................... 15

            1.    The Settlement Amount Favors Final Approval ...................... 15

            2.    The Extent Of Discovery Completed And The Stage Of
                  The Proceedings Favor Final Settlement Approval ................. 17

            3.    The Experience And Views Of Counsel Favor Settlement ................. 19

            4.    The Positive Reaction Of The Class Supports Final
                  Approval .............................................................. 20

V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......................... 21

VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIES RULE 23 AND
      DUE PROCESS REQUIREMENTS AND IS REASONABLE ....................... 22

VII.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................................. 23

VIII.   CONCLUSION ........................................................................................................ 23

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Abadilla v. Precigen, Inc.*,
4     2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ....................................................... 4, 7, 8, 21

5

*Baron v. HyreCar Inc.*,
6     2024 WL 3504234 (C.D. Cal. July 19, 2024) .......................................................... passim

7

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...................................................................... 4

8

*Clarkson v. Alaska Airlines, Inc.*,
9     2025 WL 243024 (E.D. Wash. Jan. 15, 2025) ................................................................. 13

10

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................................... 14, 18, 21

11

*Dicker v TuSimple Holdings, Inc.*,
12     No. 3:22-cv-01300, ECF No. 244 (S.D. Cal. Dec. 18, 2024) ........................................ 21

13

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
14     2024 WL 4578540 (N.D. Cal. Sept. 6, 2024) .................................................................. 23

*Ferreira v. Funko, Inc.*,
15     2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ................................................................. 7

16

*Fleming v. Impax Lab'ys Inc.*,
17     2022 WL 2789496 (N.D. Cal. July 15, 2022).................................................... 14, 20, 23

18

*Grae v. Corrections Corp. of America*,
    2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ............................................................... 14

19

*Guevoura Fund Ltd. v. Sillerman*,
20     2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................................. 12

21

*Hanlon v. Chrysler Corp.*,
22     150 F.3d 1011 (9th Cir. 1998) ............................................................................... passim

23

*Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) ..................................................................................... 4

24

*Hefler v. Wells Fargo & Co.*,
25     2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................................. 4

26

*In re Alphabet, Inc. Sec. Litig.*,
27     2024 WL 4354988 (N.D. Cal. Sept. 30, 2024) ................................................................. 7

28

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................ 14

*In re Aqua Metals, Inc. Sec. Litig.*,
   2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ...................................................... 4

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................... 4

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................... 8, 11

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................... 9

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................... 11

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................ 11

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................ 9, 12

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ................................................... 9

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ..................................................................... 8

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ...................................................... 4

*In re Omnivision Tech. Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... 20

*In re QuantumScape Sec. Class Action*,
   2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ................................................... 14

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .............................................. 4, 20

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
   2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ......................................... passim

*In re Tesla Inc. Sec. Litig.*,
   2023 WL 4032010 (N.D. Cal. June 14, 2023) ................................................... 9

*In re Under Armour Sec. Litig.*,
   No. 1:17-cv-00388, ECF No. 448 (D. Md. Nov. 7, 2024) ............................... 21

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................................. 10

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022) ................................................................. 17

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ........................................................... 8, 19

*Kuraica v. Dropbox, Inc.*,
    2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ................................................................. 23

*Leventhal v. Chegg, Inc.*,
    2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ............................................................... 19

*Leventhal v. Chegg, Inc.*,
    2024 WL 3447516 (N.D. Cal. July 17, 2024) ............................................................... 18

*Leventhal v. Chegg, Inc.*,
    721 F. Supp. 3d 1003 (N.D. Cal. 2024) ......................................................................... 18

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
    730 F.3d 1111 (9th Cir. 2013) ....................................................................................... 11

*Oliveira v. Language Line Servs., Inc.*,
    2025 WL 586589 (N.D. Cal. Feb. 24, 2025) ............................................................. 7, 19

*Pardi v. Tricida, Inc.*,
    2024 WL 4336627 (N.D. Cal. Sept. 27, 2024) ............................................................. 10

*Plymouth Co. Ret. Sys. v. Patterson Cos., Inc.*,
    2022 WL 2093054 (D. Minn. June 10, 2022) ............................................................... 14

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ........................................................... 14

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367  (C.D. Cal. July 9, 2013) ................................................................. 4

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................. 12, 17

*Rodriguez Perez v. First Tech Fed. Credit Union*,
    2025 WL 277403 (N.D. Cal. Jan. 23, 2025) ........................................................... 12, 22

*See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ............................................................................................. 10

*See Thompson v. NSC Techs., LLC*,
    2023 WL 2756980 (S.D. Cal. Mar. 30, 2023) ................................................................. 5

*Shvager v. ViaSat, Inc.*,
    2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) .................................................... 5

*Tabak v. Apple, Inc.*,
    2024 WL 4642877 (N.D. Cal. Oct. 30, 2024) .................................................. 11

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................................... 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................... 14

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................................... 17, 21

*Ziegler v. GW Pharm., PLC*,
    2024 WL 1470532 (S.D. Cal. Apr. 3, 2024) .................................................... 16

**<u>Rules</u>**

Fed. R. Civ. P. 23(e) ................................................................................................. passim

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**PLEASE TAKE NOTICE** that, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and the Court's Modified Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 192), on April 24, 2025, at 10:00 a.m., before the Honorable P. Casey Pitts, at the United States District Court for the Northern District of California, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA 95113, Lead Plaintiffs KBC Asset Management NV and Pompano Beach Police and Firefighters' Retirement System (together, "Lead Plaintiffs") will and hereby do respectfully move for entry of the [Proposed] Final Judgment and Order of Dismissal ("Judgment") and the [Proposed] Order Approving Plan of Allocation of Net Settlement Fund ("Plan of Allocation Order").[1]

This Motion is based on the following Memorandum of Law, the Joint Declaration and the exhibits thereto, the Declaration of Kathleen Brauns Regarding (A) Mailing of the Notice Packet; (B) Publication of Summary Notice; (C) Report on Requests for Exclusion to Date (Joint Decl. at Ex. C, "Brauns Decl."), the Stipulation, all prior pleadings, papers, and orders in this Action, and such additional information or argument as may be required by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

(1)    Whether the Court should approve the proposed $55,000,000 all-cash settlement as fair, adequate, and reasonable pursuant to Rule 23(e); and

(2)    Whether the Court should approve the Plan of Allocation (defined below) as fair and reasonable.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation" or "Settlement Agreement"; ECF No. 189-2) and the concurrently filed Joint Declaration of David R. Kaplan and Christopher F. Moriarty in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). Citations herein to "¶ ___" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration. Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

[2] Pursuant to ¶¶ 1.33, 4.1, 4.4, 8.1(c) of the Stipulation, Defendants support entry of the [Proposed] Judgment, but do not take a position with respect to the Plan of Allocation.

**MEMORANDUM OF LAW**

Court-appointed Lead Plaintiffs, on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their Motion for final approval of the proposed settlement ("Settlement") of the above-captioned action (the "Action"), and for approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").

## I.    INTRODUCTION

The Settlement provides for a $55 million, all-cash, non-reversionary payment to resolve the Action—an excellent result for the Settlement Class in this complex, uncertain, and risky case. As discussed below, the Settlement is "fair, reasonable, and adequate" under all relevant measures. Fed. R. Civ. P. 23(e)(2).  Final approval is particularly appropriate in light of the following factors:

The Outstanding Result: The Settlement secures a substantial and immediate monetary recovery well above the typical amount for securities class action litigation in the Ninth Circuit and nationwide.  Here, the $55 million Settlement Amount is over *five times* the $10 million median recovery for securities class action settlements between 2014-2022, and nearly *seven times* the $9 million median recovery in securities class action settlements in the Ninth Circuit from 2014-2023.  Further, the Settlement would have ranked in the *top 15%* of all securities class action settlements between 2014-2022, and the *top 20%* of all securities class action settlements in 2023. In percentage terms, the Settlement is *double* the median recovery in cases with similarly sized damages.[3]  The size and extent of the recovery is particularly remarkable given that, when reached, the Settlement Amount represented over *one-third* of Chegg's *entire market capitalization*, over *twelve times* its net cash, and *nearly all* of the funds available in the Company's Directors' and Officers' ("D&O") liability insurance policies.

The Risks of this Action: The Settlement is also a highly favorable result considering the significant obstacles Lead Plaintiffs would face if they continued litigating the Action, including proving liability and prevailing on key damages arguments.  For example, Lead Plaintiffs would

---

[3] These figures are based on a published study of securities class action settlements by Cornerstone Research.  *See Securities Class Action Settlements, 2023 Review and Analysis*, at 4, 20 (March 2024) ("Cornerstone Report," attached to the Joint Decl. as Ex. F).

be required to prove all elements of their claims, while Defendants need only succeed on one defense to potentially defeat the entire Action. Furthermore, if the case proceeded through class certification, summary judgment, trial, and likely appeals, there is no guarantee that there would be funds available to satisfy *any* monetary recovery. Indeed, at the time the Settlement was reached, Chegg had only $4.5 million in net cash, a highly uncertain future, and was on the precipice of drawing upon its wasting D&O insurance policies. Accordingly, had Lead Plaintiffs continued to litigate the case, it is almost certain there would be significantly *fewer* funds available to compensate Settlement Class Members, with Chegg's insurance diverted to fund defense costs. The Settlement secures a sizeable recovery for the Settlement Class while avoiding these risks and practical realities that would likely have resulted in a smaller recovery, or no recovery at all.

Significant Litigation Efforts: In addition to these risks, the investigation, prosecution, and settlement of this Action required great skill and effort by Lead Counsel over a more than three-year period. As described herein and as further detailed in the Joint Declaration submitted herewith, Lead Counsel, among other things: (i) conducted a comprehensive investigation, which included interviewing scores of university professors, deans, and other faculty, as well as numerous former Chegg employees, who provided meaningful information supporting Lead Plaintiffs' claims; (ii) obtained and analyzed over 1,000 pages of documents produced in response to FOIA requests by several of the nation's most respected institutions of higher learning; (iii) conducted a comprehensive empirical analysis of archived Chegg Expert Q&A data; (iv) consulted with multiple financial and industry experts; (v) filed a detailed 126-page Complaint; (vi) successfully opposed Defendants' Motion to Dismiss the Complaint and subsequent Motion for Reconsideration; (vii) engaged in significant discovery, including serving over 30 non-party document subpoenas and obtaining, reviewing, and analyzing over 120,000 pages of documents produced by Defendants and non-parties, including early and targeted productions by Defendants focusing on the core issues in the case as part of the Parties' mediation process; and (viii) produced over 40,000 pages of documents to Defendants. Through these extensive efforts, Lead Plaintiffs and Lead Counsel developed a deep understanding of the strengths and weaknesses of their claims.

<u>Arm's-Length Settlement Negotiations</u>: The Settlement is the product of the Parties' extensive arm's-length negotiations, including a full-day, in-person mediation session conducted under the oversight of former Federal District Court Judge Layn R. Phillips ("Judge Phillips") and two of his colleagues.  In connection with the mediation, the Parties prepared detailed mediation statements supported by voluminous exhibits, engaged in a full day of negotiations, and ultimately agreed to the Settlement only after accepting Judge Phillips' double-blind "Mediator's Recommendation."

<u>The Positive Reaction of the Settlement Class</u>:  The Settlement has the full support of the Court-appointed Lead Plaintiffs—the prototypical institutional investors Congress envisioned to lead securities class actions.  Further, while the deadline for exclusions and objections has not yet passed, only one request for exclusion has been received, and no objections to any aspect of the Settlement, Plan of Allocation or the fee and expense application have been received to date.

For these reasons, and those set forth below and in the Joint Declaration, the Settlement and Plan of Allocation readily meet each of the Ninth Circuit and Rule 23 factors that courts evaluate in connection with a motion for final approval, as well as the guidelines set forth in the Northern District of California's Procedural Guidance for Class Action Settlements (the "Guidelines").[4]  Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation as fair, reasonable, and adequate.

## II.    <u>FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION</u>

For the sake of brevity, the Court is referred to the preliminary approval motion (ECF No. 189 at 4-7), which set forth an overview of the litigation and is incorporated here, and the Joint Declaration for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶ 27-66); the nature of the claims asserted (¶¶ 23-26); the negotiations leading to the Settlement (¶¶ 64-69); the risks and uncertainties of continued litigation (¶¶ 70-81); and the litigation efforts Lead Counsel undertook in developing the record for the benefit of the Settlement Class (¶¶ 42-

---

[4] The Guidelines may be accessed at http://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited Feb. 27, 2025).

63).

## III.    STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

The Ninth Circuit and courts around the country recognize that there is a "strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *4 (C.D. Cal. Apr. 23, 2024); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *6 (E.D.N.Y. Jan. 26, 2024) (same). "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (approving settlement).[5]

The strong judicial policy favoring settlement applies with particular force to complex securities litigation. "Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013). Accordingly, federal courts have long recognized that securities class actions "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020). Indeed, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *5 (N.D. Cal. Mar. 2, 2022).

---

[5] Regarding collusion, as explained herein and in the Joint Declaration, "[n]one of the potential signs of collusion enumerated by the Ninth Circuit [in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011)] are present here—the 25% fee request sought by counsel is reasonable under the Ninth Circuit benchmark, rather than disproportionate; there is no 'clear sailing' provision; and no funds revert to Defendants." *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *9 (N.D. Cal. Nov. 6, 2023).

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate" after considering whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit also considers the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998): (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[6]

The Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing. *See* ECF No. 192. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between December 19, 2024, and the present. *See Thompson v. NSC Techs., LLC*, 2023 WL 2756980, at *5 (S.D. Cal. Mar. 30, 2023) ("Because there have been no material changes in any of the relevant circumstances since the Preliminary Approval Order, the same determinations are warranted at this time with respect

---

[6] Regarding the seventh *Hanlon* factor, no governmental body is a party to this Action. *See Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) ("This factor is inapplicable and neutral because no government entity participated in the case.").

1  to the fairness analysis.").

2       Lead Plaintiffs respectfully submit that the proposed Settlement satisfies Rule 23(e)(2), the

3  relevant Ninth Circuit factors, and the Guidelines, and warrants final approval as fair, reasonable,

4  and adequate.

5  **IV.  THE SETTLEMENT WARRANTS FINAL APPROVAL**

6      **A.  The Proposed Settlement Satisfies The Rule 23 Requirements**

7          **1.  Rule 23(e)(2)(A): Lead Plaintiffs And Lead Counsel Have Adequately Represented The Settlement Class**

8

9       At all times, Lead Plaintiffs and Lead Counsel advocated for the best interests of the

10  Settlement Class, as required by Rule 23(e)(2)(A). The outstanding Settlement negotiated on the

11  Settlement Class's behalf is the result of the diligent investigation and prosecution of this Action

12  for over three years. Lead Plaintiffs have no interests antagonistic to those of other Settlement

13  Class Members; rather, they share the common interest in obtaining the largest possible recovery

14  from Defendants. *See Stable Rd.*, 2024 WL 3643393, at *5 ("Resolution of two questions

15  determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of

16  interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the

17  action vigorously on behalf of the class?"); *see also* Preliminary Approval Order at 2 ("Lead

18  Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests

19  of the Settlement Class.").

20       Additionally, Lead Plaintiffs and Lead Counsel have continued to adequately represent the

21  Settlement Class since the issuance of the Preliminary Approval Order by diligently complying

22  with the notice plan and settlement procedures. *See* Joint Decl. ¶¶ 86-92. Under Lead Plaintiffs'

23  and Lead Counsel's direction, as of February 26, 2025, the Claims Administrator mailed or

24  emailed 91,343 Postcard Notices to potential Class Members utilizing a network of over 4,900

25  brokers, dealers, and banks, as well as shareholder records provided by Chegg; published the

26  Summary Notice in *Investor's Business Daily* and over the *PR Newswire*; and established a

27  dedicated settlement website for the Action at cheggsecuritieslitigation.com. Brauns Decl. ¶¶ 4-

28  11, 12, 13-15. After undertaking this comprehensive and well-established notice program for

securities class action settlements, *no* objections to the Settlement have been received to date. *Id.* at ¶¶ 19-20[7]; *see also Precigen*, 2023 WL 7305053, at *9 (finding class was adequately represented and that a "court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it").

### 2. Rule 23(e)(2)(B): The Settlement Is The Result Of Non-Collusive, Arm's Length Negotiations

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Likewise, courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution in approving a class action settlement." *Stable Rd.*, 2024 WL 3643393, at *6. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive," and merits final approval. *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *5 (C.D. Cal. Dec. 13, 2022); *accord Oliveira v. Language Line Servs., Inc.*, 2025 WL 586589, at *9 (N.D. Cal. Feb. 24, 2025) (Pitts, J.).

Here, the Settlement was reached only after vigorous, arm's-length negotiations between experienced, fully informed counsel. The Settlement negotiations included an intensive mediation process, including the Parties' detailed written and evidentiary submissions addressing hotly contested issues concerning liability and damages. The negotiations were at all times adversarial with a highly experienced mediator of complex securities and shareholder litigation, Judge Phillips, and two of his experienced colleagues (mediators Michelle Yoshida and Catherine Cheng), providing their seasoned input on the pertinent issues and the strengths and challenges of the Parties' various claims and defenses. Judge Phillips' involvement in the settlement negotiations—including his eventual issuance of a Mediator's Recommendation that was accepted by the Parties on a double-blind basis at the conclusion of the mediation—further supports the conclusion that the Settlement is fair and was achieved free of collusion. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *2 (N.D. Cal. Sept. 30, 2024) (granting final approval where

---

[7] Lead Plaintiffs will address any objections and any additional requests for exclusion that may be received in their reply brief due April 10, 2025.

"the parties reached a settlement prior to class certification with the assistance of an experienced mediator at arm's-length under the supervision of the Hon. Layn R. Phillips (Ret.) of Phillips ADR"); *Precigen*, 2023 WL 7305053, at *9 ("The Court finds these facts highly probative of an arms-length negotiation free of collusion, and notes that it considers Judge Phillips one of the foremost mediators in the nation in the securities litigation field."); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (affirming final approval of settlement where "the parties reached a settlement after extensive negotiations before a nationally recognized mediator, retired U.S. District Judge Layn R. Phillips").

### 3. Rule 23(e)(2)(C)(i): The Settlement Is Adequate Considering The Costs, Risks And Delay Of Further Litigation

"In assessing 'the costs, risks, and delay of trial and appeal,' Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (citing *Hanlon*, 150 F.3d at 1026).[8] "Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win. The Court finds this factor weighs in favor of [final settlement] approval." *Id*.

Here, while Lead Plaintiffs believe that their claims were meritorious and would be supported by the weight of the evidence after discovery closed, there is no question that continued litigation here would have been costly, risky, and drawn out. Absent the Settlement, the Parties would probably face several additional years litigating this Action, including further discovery, dispositive motions, trial, and likely appeals—all without any guarantee of recovery for the Settlement Class, while compounding the serious ability-to-pay issues hanging over it. *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *5 (S.D. Cal. Nov. 30, 2021) ("Had the parties not settled, they would have spent considerable time and effort in discovery and litigating

---

[8] Rule 23(e)(2)(C)(i) incorporates three of the traditional *Hanlon* factors: the strength of plaintiffs' case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor).

class certification and summary judgment, adding 'further expense to both sides as well as years of delay of any potential recovery for the putative class.'"); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *9 (C.D. Cal. July 19, 2024) ("It is not unreasonable for counsel and the class representative to prefer the bird in hand, given concerns about [the company's] strained financial state and its ability to pay a judgment following further litigation.").

Lead Plaintiffs would be required to prove all elements of their claims, while Defendants would need only succeed on one defense to potentially defeat the entire Action. *See, e.g.*, *In re Tesla Inc. Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (jury verdict for defendants despite grant of partial summary judgment in plaintiff's favor); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict in defendants' favor). Lead Plaintiffs are cognizant of the risk that continued litigation could end in no recovery at all given that Defendants would have continued to present credible arguments as to falsity, materiality, scienter, loss causation, and damages at class certification, summary judgment, and trial.

For example, regarding falsity, Defendants would have contended that Lead Plaintiffs could not prove their claims due to their inability to quantify the precise extent of cheating they alleged occurred on Chegg's platform during the Class Period, or that such cheating (and not other factors) drove Chegg's subscriber and revenue growth during that time. In fact, at the hearing on the motion to dismiss, the Court questioned whether there was a "black hole" regarding the quantification of cheating. *See* Dec. 7, 2023 Hr'g Tr., ECF No. 147, at 41:22-42:16 (questioning Lead Counsel regarding quantifying the volume of cheating on Chegg's platform).

"Even more difficult, the plaintiffs would need to prove that these statements were made with scienter, and were not simple good faith mistakes or the result of negligence." *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 841 (E.D. Va. 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter" is "complex and difficult to establish at trial."). With respect to scienter, Defendants likely would have argued that Chegg had instituted measures to prevent cheating on its platform, such as Honor Shield, and that,

at the time the statements were made, the Individual Defendants believed in good faith that Chegg was providing legitimate academic support to students during the period of remote learning. Furthermore, to the extent Defendants could support their assertion that cheating represented only a small portion of Chegg's overall usage, such facts could further undermine Plaintiffs' efforts to establish Defendants' scienter. *See Genworth*, 210 F. Supp. 3d at 844 ("For the reasons stated above concerning the complexity of securities fraud cases and the need to prove scienter on the part of the defendants, the risk of non-recovery at trial is very real.").

Additionally, Defendants would have argued that Lead Plaintiffs' theory of loss causation was flawed because Chegg lowered its guidance in response to significantly fewer student enrollments and a variety of other factors unrelated to cheating or the end of remote learning.[9] Defendants would have supported this argument with, *inter alia*, analyst reports issued shortly after the alleged corrective disclosure attributing Chegg's disappointing current results and reduced future guidance to macroeconomic and industrywide factors unrelated to cheating— consistent with Defendants' public justifications. Notably, Defendants could have raised this purported incongruity between the alleged false statements and corrective disclosure as early as the class certification stage—and argued that a higher evidentiary standard applied than at summary judgment. *See Pardi v. Tricida, Inc.*, 2024 WL 4336627, at *8 (N.D. Cal. Sept. 27, 2024) ("Avoiding a 'mismatch'" for price impact purposes at class certification, "requires a closer fit (even if not precise) between the front-and back-end statements than courts have required when analyzing the loss causation element of securities fraud."). If Defendants were successful, the Class would have recovered nothing. *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) (reversing class certification order and remanding with instructions to decertify the class where defendants prevailed on "mismatch" argument).

Defendants also likely would have argued that the Class Period should be truncated to

---

[9] Courts recognize that "it [is] difficult for [plaintiff] to prove loss causation and damages at trial." *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (alterations in original)).

begin on February 8, 2021, when Defendant Rosensweig directly addressed and refuted media reports about academic cheating fueling Chegg's growth. Furthermore, "[e]ven if [P]laintiffs had overcome these obstacles and established liability, proof of substantial damages was not a foregone conclusion." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011). Indeed, as discussed above, Defendants would have claimed that the alleged corrective disclosure and stock price reaction was confounded by various market and other non-fraud related factors, and thus investors' damages, if any, could not be attributed to the alleged fraud. *See, e.g.*, *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013) (affirming district court's grant of summary judgment when plaintiff failed to establish a causal connection between the fraud and the loss, noting that "evidence that certain misrepresented risks are responsible for a loss must reasonably distinguish the impact of those risks from other economic factors"); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The misrepresentation need not be the sole reason for the decline in value of the securities, but it must be a 'substantial cause.'"). When, as here, "Defendants continue to dispute liability and damages" and "Plaintiffs . . . face[d] significant obstacles" on those issues "if the case were to proceed to trial . . . . The Court finds that these [factors] weigh in favor of approving the Settlement." *Tabak v. Apple, Inc.*, 2024 WL 4642877, at *4 (N.D. Cal. Oct. 30, 2024).[10]

Finally, given Chegg's limited assets, major restructuring, and uncertain future, Defendants unquestionably had no ability to pay a full judgment in this case, where maximum damages exceeded $1 billion under Lead Plaintiffs' expert's analysis.[11]  *See Rieckborn v. Velti PLC*, 2015

---

[10] Resolution of disputed issues regarding loss causation and damages would almost certainly have come down to a "battle of experts." Defendants invariably would have offered their own well-qualified expert opining that, even if Plaintiffs were to establish liability, damages are substantially less than Lead Plaintiffs' expert's calculations. Courts have long recognized that the uncertainty as to which party's expert might be credited by the jury (and on which issues) presents a substantial risk supporting the reasonableness of a securities class action settlement. *See, e.g.*, *Extreme Networks.* 2019 WL 3290770, at *8 (noting "battle of the experts" risk supported approval of settlement).

[11] On June 17, 2024, Chegg announced a major restructuring plan that included the closure of two offices, a 23% workforce reduction, and other cost-cutting measures. *See* https://investor.chegg.com/Press-Releases/press-release-details/2024/Chegg-Announces-Restructuring-Plan-and-New-Vision-for-Growth/default.aspx. Notably, the restructuring is

---

WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding company's "precarious financial condition" "highlights the reasonableness of the settlement amount"); *In re Immune Response*, 497 F. Supp. 2d at 1172 ("significant collectability issues" supported settlement). Specifically, on August 5, 2024, a month prior to the Settlement, Chegg reported only approximately $133 million in cash and cash equivalents as of June 30, 2024, a net loss for the three months ended June 30, 2024 of approximately $617 million, and total outstanding debt of approximately $601 million (including $357 million in convertible notes maturing in 2025)—leaving the Company with a net cash balance of only $4.5 million. Further, on September 26, 2024, the date the Settlement was reached, Chegg's stock price closed at approximately $1.63 per share, giving the Company a market capitalization of approximately $170 million—a small fraction of Lead Plaintiffs' maximum estimated potential damages—meaning the Settlement Amount represented nearly one-third of Chegg's entire market capitalization. Additionally, Defendants' D&O insurance policies are wasting policies that would be significantly depleted had litigation proceeded, and the Settlement was reached just as Defendants were set to draw on that insurance to fund defense costs. In other words, there was a substantial risk that, even if Lead Plaintiffs prevailed on all issues through the remainder of the litigation and secured a verdict at trial, it could have been a pyrrhic victory as the Class would have recovered relatively little or nothing. *See, e.g.*, *HyreCar*, 2024 WL 3504234, at *9 (noting that "recovery may become difficult or impossible because Defendants' resources are 'rapidly depleting'"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *9 (S.D.N.Y. Dec. 18, 2019) ("Here, the D&O insurance coverage is a wasting asset as it pays legal fees of the [] Defendants, as well as providing coverage for the claims asserted in the Action" and "each day that the Action was not settled would take away money available for the Class for settlement.").

In light of these considerations, the Settlement is less risky, less expensive, and less time-consuming than continued litigation, while providing a certain and immediate result, favoring

---

ongoing. On November 12, 2024, the Company announced "additional restructuring," including an additional 21% workforce reduction and further measures to substantially reduce operating and other expenses. *See* https://investor.chegg.com/Press-Releases/press-release-details/2024/Chegg-Reports-2024-Third-Quarter-Earnings/default.aspx.

approval.  *See Rodriguez Perez v. First Tech Fed. Credit Union*, 2025 WL 277403, at *6 (N.D. Cal. Jan. 23, 2025) ("Given the risks and costs of continued litigation, the immediate reward to class members through settlement is preferable" and the "'benefit of receiving this money now rather than later at some unidentified and uncertain time has its own value.'"); *Clarkson v. Alaska Airlines, Inc.*, 2025 WL 243024, at *5 (E.D. Wash. Jan. 15, 2025) ("Here, continued litigation would be complex, expensive, and lengthy.  Trial would have been lengthy and costly and would likely have been followed by an appeal. . . . This factor thus favors final approval.").

### 4.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts next consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support final approval.

*First*, the method for processing Settlement Class Members' Claims and distributing relief includes well-established, highly effective procedures for processing Claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.  The Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), has and will continue to process Claims under the direction of Lead Counsel, allow Claimants an opportunity to cure any Claims deficiencies or request the Court to review a denial of their Claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), following Court approval.  Claims processing in the manner proposed here is standard in securities class action settlements and has long been found to be effective.  *See, e.g.*, *HyreCar*, 2024 WL 3504234, at *9 ("The court finds that the effectiveness of the proposed method of distribution, involving a claims administrator and *pro rata* relief based on a claimant's demonstrable injury, weighs in favor of approving the Proposed Settlement Agreement."); Brauns Decl. ¶ 18 (citing cases where A.B. Data has successfully implemented similar notice and claims processing programs).

*Second*, as discussed in the accompanying Joint Declaration and the Fee Memorandum, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Fund (which includes interest earned on the Settlement Amount) and $261,602.23 in expenses, which principally include expert and e-discovery costs and is substantially below the maximum amounts set forth in the Notice.  Lead Counsel's request is consistent with the 25% benchmark rate for attorney's fee awards in the Ninth Circuit and the range of percentage fees that courts within this Circuit and nationwide have awarded in other complex class actions.  *See, e.g.*, *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *4 (N.D. Cal. Sept. 26, 2023) (awarding 25% of $300 million settlement); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving benchmark 25% fee award on $95 million settlement in securities class action) (collecting cases); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming award of 28% of $97 million settlement fund).[12]

Notably, the requested fee represents an modest 1.4 multiplier—well within the range of multipliers awarded in similar cases.  *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving fees equal to a lodestar multiplier of 2.6 given "numerous decisions from this district approving multipliers ranging from 2.5 to 4.3"); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *21 (N.D. Cal. Feb. 11, 2016) (noting that the 1.7 multiplier was "towards the lower end of the Ninth Circuit's scale").

*Third*, as Lead Plaintiffs noted in their preliminary approval motion, the Parties entered into a confidential supplemental agreement that allows (but does not require) Defendants to withdraw from the Settlement if Class Members representing a certain threshold of Chegg common stock request exclusion from the Class.  ECF No. 189 at 20.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."

---

[12] *See also, e.g.*, *Plymouth Co. Ret. Sys. v. Patterson Cos., Inc.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding one-third fee on $63 million recovery); *Grae v. Corrections Corp. of America*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding one-third fee on $56 million recovery).

*Stable Rd.*, 2024 WL 3643393, at *7.

### 5. Rule 23(e)(2)(D): All Settlement Class Members Are Treated Equitably

As set forth *infra*, at § V, the Plan of Allocation—which was developed in consultation with Lead Plaintiffs' economic expert—treats all Settlement Class Members (including Lead Plaintiffs) equitably. Under the Plan of Allocation, the Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based on their recognized claim compared to the total recognized claims of all Authorized Claimants. *See* Notice, ECF No. 189-2, Ex. A-1 at ¶¶ 56-73; *Stable Rd.*, 2024 WL 3643393, at *8 (finding similar plan of allocation to treat all class members equitably). Moreover, the modest service awards sought by Lead Plaintiffs are "reasonable and do[] not constitute inequitable treatment of class members. . . . Accordingly, this factor favors final approval of the Settlement." *Id*.

### B. The Remaining Relevant *Hanlon* Factors Also Weigh Strongly In Favor Of Final Approval

#### 1. The Settlement Amount Favors Final Approval

As discussed above, the $55,000,000 all-cash Settlement is unquestionably an excellent result for the Settlement Class, especially considering the uncertainty, risks, and costs associated with any attempt to obtain a greater amount. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair."). Based on the Cornerstone Report, the Settlement would have ranked in the ***top 20%*** of all securities class action settlements in 2023, and the ***top 15%*** of all securities class action settlements between 2014-2022.[13] Moreover, the Settlement is nearly ***four times*** the median recovery of $15 million for securities class action settlements in 2023, and over ***five times*** the $10.4 million median recovery for securities class action settlements between 2014-2022.[14] It is also nearly ***seven times*** the $9 million median recovery in securities class action settlements in the Ninth Circuit from 2014

---

[13] *See* Cornerstone Report at 4.

[14] *Id*. at 4.

through 2023—an exemplary result compared to the 190 cases surveyed.[15]   A report recently published by the National Economic Research Associates, Inc. ("NERA") shows similar statistics: the $55 million Settlement in this Action is nearly **four times** the median recovery in securities settlements in 2024.[16]   And, even on a percentage basis, the Settlement is **double** the median recovery in similar cases with damages of $1 billion or more.[17]

Lead Plaintiffs retained Dr. Matthew Cain, Ph.D. (a highly experienced economic expert) to opine on damages in this case, and based on Dr. Cain's analysis, Lead Plaintiffs estimate that if they were successful at trial, damages could range from approximately $893 million to $1.435 billion.  *See* Cain Decl., ECF No. 189-3 at ¶¶ 6, 17-18.   Defendants had credible arguments that, if accepted by the Court or the jury, could have materially impacted the amount of recoverable damages.  For example, Defendants would have made arguments that could have truncated the actionable class period to February 8, 2021 through November 1, 2021 (*i.e.*, based on their views of when Defendants first made alleged misstatements regarding the extent of student cheating on Chegg's online platform).  Defendants also would have argued that Lead Plaintiffs could not prove that much, if any, of the decline in the stock price that occurred at the end of the Class Period was attributable to the alleged fraud.  The potential range of recovery here, absent the Settlement, was thus wide and uncertain.

Accordingly, the Settlement represents a recovery of 4% to 6% of Class Members' potential recoverable damages.  This is **two- to-three times** the 2% median percentage recovery in cases with over $1 billion in damages and more than the median 4.5% recovery for 10b-5 class actions of any size.[18]   Courts have routinely approved similar and lower recoveries as fair and reasonable.  *See, e.g.*, *HyreCar*, 2024 WL 3504234, at *8 (recovery of 2% "is in line with

---

[15] *Id*. at 20.

[16] NERA, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 22-23 & fig. 22 (Jan. 22, 2025) ("NERA Report," attached to Joint Decl. as Ex. G).

[17] *See* Cornerstone Report at 6, fig. 5.

[18] *See id.* at 6, 8 (determining that the median recovery for settlements in 2023 with over $1 billion in damages was 2.0%, the figure was only slightly higher (2.6%) from 2014 to 2022, and that remained between only 3.3-4.8% for settlements with $500-$999 million in damages).

percentage recoveries other courts have found to be fair and adequate"); *Ziegler v. GW Pharm.*, *PLC*, 2024 WL 1470532, at *5 (S.D. Cal. Apr. 3, 2024) (approving a settlement amount representing "~1% of the total maximum potential damages estimated by Plaintiff's expert" in light of "significant obstacles in winning the total maximum potential damages"); *Wong v. Arlo Techs.*, *Inc.*,  2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (recovery of 2.35% "weighs in favor of approval"); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) ("2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements.").

When evaluating the settlement amount, courts also consider the "serious risk[ ] that even if Plaintiffs were successful in all aspects of their claims they may be unable to collect a judgment." *Stable Rd.*, 2024 WL 3643393, at *8.  As discussed above, the Settlement here is particularly favorable when considering Chegg's precarious financial condition and virtually certain inability to pay a full judgment. *See HyreCar*, 2024 WL 3504234, at *9.  Money in Class Members' pockets now is more valuable than a larger, speculative recovery that Lead Plaintiffs *might* obtain after years of litigation—as discussed above, a dubious proposition given the Company's limited resources, operational challenges, and highly uncertain future.  Accordingly, the Settlement Amount also weighs in favor of approval.

### 2.    The Extent Of Discovery Completed And The Stage Of The Proceedings Favor Final Settlement Approval

"A settlement following sufficient discovery and genuine arms-length negotiations is presumed fair." *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022).  This factor aims to ensure that the class-action plaintiffs understand the strength and weaknesses of their case prior to settlement, as "formal discovery is ***not*** a necessary ticket to the bargaining table where the parties have sufficient information to make a decision about the settlement." *Id.*; *see also Stable Rd.*, 2024 WL 3643393, at *9 ("The fact that formal discovery was in its early stages does not weigh against final approval."); *Vataj*, 2021 WL 5161927, at *7 (finding "[t]his factor weighs in favor of approval" where "the parties settled [] after they had informally exchanged significant information relevant to Plaintiffs' claims").  Indeed, courts have

found this factor satisfied even when plaintiffs settle before a decision on the motion to dismiss without **any** discovery.  *See, e.g.*, *Velti PLC*, 2015 WL 468329, at *6 (granting final approval to securities class action settlement reached before decision on motion to dismiss).

Here, as discussed above and in the Joint Declaration, Lead Plaintiffs promptly commenced formal discovery after the order denying Defendants' motion to dismiss by serving multiple sets of interrogatories, requests for production, and requests for admission on the Company and the Individual Defendants, including requests targeting both merits and class certification issues.  As part of their extensive discovery efforts, Lead Plaintiffs also served over thirty non-party subpoenas, including to the financial media, securities analysts, dozens of colleges and universities, and Chegg's e-discovery vendor.  Moreover, prior to the mediation, Lead Plaintiffs negotiated and received expedited discovery from Defendants on the key issues, individuals, and metrics in the case to facilitate a robustly informed mediation process.

Significantly, Lead Plaintiffs' extensive discovery efforts built on their thorough pre-suit investigation and informal discovery, including FOIA responses from multiple institutions of higher learning, interviews of dozens of percipient witnesses, and the empirical analysis of Chegg's online platform performed by Lead Plaintiffs—all of which the Court cited in (twice) sustaining the sufficiency of the particularized facts contained in the Complaint.  *See Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003, 1010 (N.D. Cal. 2024) (denying Defendants' motion to dismiss and citing the Complaint's substantive factual allegations drawn from "documents from universities nationwide," "statements from high-level university officials," "accounts from former Chegg employees," and "an empirical analysis by lead counsel . . . finding that approximately 25% of [] questions [submitted to Chegg's online platform] exhibited indicia of cheating"); *Leventhal v. Chegg, Inc.*, 2024 WL 3447516 (N.D. Cal. July 17, 2024); ECF No. 172 (denying motion to reconsider earlier order denying motion to dismiss).  In sum, Lead Plaintiffs did not agree to the proposed Settlement until *after* they had conducted an extraordinarily thorough investigation and meaningful discovery.

Accordingly, when the Settlement was consummated, the litigation "had proceeded to a

point in which both parties had 'a clear view of the strengths and weaknesses of their cases.'" *Zynga*, 2016 WL 537946, at *12. This factor therefore also supports final approval of the Settlement.

### 3. The Experience And Views Of Counsel Favor Settlement

As this Court has explained (consistent with other courts within this Circuit), when "counsel have extensive experience litigating similar cases," "have demonstrated a thorough understanding of the strengths and weaknesses of this case," and have "concluded that the settlement is fair, adequate, and reasonable," that "factor thus also favors final approval." *Oliveira*, 2025 WL 586589, at *9 (Pitts, J.); *see also Stable Rd.*, 2024 WL 3643393, at *9 ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement."); *Khoja*, 2021 WL 5632673, at *7 ("Given Lead Counsel's experience with the case and expertise with securities class actions, the Court presumes reasonable Lead Counsel's recommendation to approve the Settlement. . . . 'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness. Attorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluation the action.'"). Here, as set forth in their firm resumes (*see* Ex. 6 to Joint Decl. Ex. D (Motley Rice) and Ex. 4 to Joint Decl. Ex. E (Saxena White)), Lead Counsel in this Action, Motley Rice and Saxena White, are experienced class action litigators, and their substantial experience in securities fraud class action cases gives further weight to their conclusion that the Settlement is fair and reasonable.

Similarly, the fact that Lead Plaintiffs are sophisticated institutional investors, favored by Congress when it passed the PSLRA, lends credibility to their recommendation that the Settlement be approved.[19] *See Stable Rd.*, 2024 WL 3643393 at *9 ("Lead Plaintiff supports the Settlement, which is to be afforded 'special weight' because a plaintiff 'ha[s] a better understanding of the

---

[19] Indeed, in appointing KBC Asset Management NV ("KBC") as co-Lead Plaintiff in this Action, Judge Davila noted that it is "a sophisticated institutional investor that manages over $100 billion in assets." *Leventhal v. Chegg, Inc.*, 2022 WL 4099454, at *3 n.1 (N.D. Cal. Sept. 7, 2022); ECF No. 105 at 5 n.1.

case than most members of the class.'").

### 4. The Positive Reaction Of The Class Supports Final Approval

The positive reaction of the Settlement Class to the Settlement also supports final approval. *Hanlon*, 150 F.3d at 1026. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Tech. Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *see also Impax*, 2022 WL 2789496, at *7 ("[T]he absence of objections indicates strong support among the Class Members and weighs in favor of approval.").

Pursuant to the Preliminary Approval Order, any Settlement Class Member that wishes to be excluded from the Settlement or to object to any aspect of the Settlement, the Plan of Allocation, or to the attorneys' fees and expense request, must submit such exclusion request or objection no later than March 27, 2025. ECF No. 192 at ¶ 28. While this deadline has not yet passed, to date, no Settlement Class Member has objected to any aspect of the Settlement, and out of the over 91,000 Postcard Notices that have been mailed and emailed to Settlement Class Members, A.B. Data has received only one (1) request for exclusion purporting to represent a *de minimus* portion of the shares included in the Settlement Class.[20] *See* Brauns Decl. at ¶ 19 (noting single request for exclusion received to date by putative Settlement Class Member, and that "A.B. Data will submit a supplemental declaration after the March 27, 2025, deadline addressing all requests for exclusion received."). This reaction is particularly significant given that approximately 94% of Chegg's public float throughout the Class Period (representing approximately 90% of the aggregate damages in the Action) was held by institutional investors, which have the resources and motivation to object or opt out, if warranted. *See* Cain Decl., ECF No. 189-3 at ¶ 15; *see also Signet*, 2020 WL 4196468, at *6 ("[A]bsence of objections by these sophisticated class members is further evidence of the fairness of the [s]ettlement."). Thus, the overwhelmingly positive reaction of the Settlement Class to the Settlement further favors approval by the Court.

---

[20] The Settlement Class is estimated to include over 84 million damaged shares. *See* Joint Decl. ¶ 83.

1    For the foregoing reasons, the Court should find that the proposed Settlement meets all the

2    relevant approval factors, and is in all respects fair, reasonable, and adequate.

3    **V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

4    A plan of allocation in a class action "is governed by the same standards of review

5    applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."

6    *Omnivision*, 559 F. Supp. 2d at 1045.  "Courts 'recognize that an allocation formula need only

7    have a reasonable, rational basis, particularly if recommended by experienced and competent

8    counsel.'"  *Zynga*, 2016 WL 537946, at *14; *see also Stable Rd.*, 2024 WL 3643393, at *10 ("In

9    determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

10    Here, the proposed Plan of Allocation, which was preliminarily approved by the Court

11    (Preliminary Approval Order at ¶ 8), fairly and reasonably distributes the Net Settlement Fund on

12    a *pro rata* basis among Authorized Claimants based on their respective Recognized Loss Amounts.

13    In developing the Plan of Allocation, Dr. Cain, an expert in securities litigation with significant

14    relevant experience advising the U.S. Securities and Exchange Commission (SEC), U.S.

15    Department of Justice (DOJ), Commodity Futures Trading Commission (CFTC), and other

16    institutional clients, calculated the estimated amount of alleged artificial inflation in the per share

17    closing price of Chegg common stock throughout the Class Period, which allegedly was

18    proximately caused by Defendants' false and misleading statements and omissions.  Notice, ECF

19    No. 189-2, Ex. A-1, ¶ 57; Cain Decl., ECF No. 189-3, at ¶¶2-3, 7-13.  In calculating the estimated

20    alleged artificial inflation allegedly caused by Defendants' alleged misrepresentations and

21    omissions, Dr. Cain considered price changes in Chegg common stock in reaction to the public

22    disclosures alleged to have corrected the alleged misrepresentations and omissions, adjusting for

23    price changes that were attributable to market or industry forces.  *Id.*, ¶10-13; *see In re Under

24    Armour Sec. Litig.*, No. 1:17-cv-00388, ECF No. 448 (D. Md. Nov. 7, 2024) (approving similar

25    plan of allocation also developed by Dr. Cain); *Dicker v TuSimple Holdings, Inc.*, No. 3:22-cv-

26    01300, ECF No. 244 (S.D. Cal. Dec. 18, 2024) (same).

27    Indeed, similar plans of allocation are commonly used and approved in class actions and

28

represent a widely recognized means of fairly distributing settlement funds to class members. *See, e.g.*, *Precigen*, 2023 WL 7305053, at *10 (similar plan of allocation found fair and reasonable because "the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims"); *Wong*, 2021 WL 1531171, at *8 (approving similar plan of allocation under which "class members who have submitted a Proof of Claim will have their trade information evaluated against the Class definition and the Plan of Allocation to determine their 'Recognized Loss' in order to receive payments on a *pro rata* portion of the Net Settlement Fund").

Moreover, to date, after mailing or emailing a total of over 91,000 Postcard Notices, no Settlement Class Member has objected to the Plan of Allocation. Brauns Decl., ¶ 11. This fact supports approval. *See Stable Rd.*, 2024 WL 3643393, at *10 ("In light of the lack of objectors to the plan of allocation at issue . . . the Court finds the plan of allocation as fair and adequate.").

## VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

The notice program complied in all respects with the requirements set forth in the Stipulation and the Preliminary Approval Order. *See generally* Brauns Decl. (attesting to the timely completion of the notice program); *see also* Preliminary Approval Order at ¶¶ 7-8. The Court-appointed Claims Administrator has emailed or mailed over 91,000 Postcard Notices, published the Summary Notice, and maintains a website dedicated to the Action at cheggsecuritieslitigation.com, which provides all information and documentation pertinent to the Settlement, including the Notice, and the Proof of Claim and Release form. Brauns Decl. ¶¶ 4-17.

The Court-approved notice program contains all information required by "Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules," constitutes "the best notice that is practicable under the circumstances," and "constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement." Preliminary Approval Order at 4-5; *see also First Tech*, 2025 WL 277403, at *4 (finding "notice standards satisfied when claims administrator

provided notice in accordance with the procedures previously approved by the court in its preliminary approval order").  Indeed, here the Notice apprised Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement; it was written in plain language, used simple terminology, and was designed to be readily understandable by Settlement Class Members.  *See First Tech*, 2025 WL 277403, at *4 ("Because Class Members have been given a full and fair opportunity to consider the terms of the proposed Settlement and make an informed decision on whether to participate, the Court finds that the notice was adequate and the best practicable."); *Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *4 (N.D. Cal. Dec. 8, 2021) (finding postcard notice and publication of summary notice to be the "best notice that is practicable under the circumstances"); *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 2024 WL 4578540, at *2 (N.D. Cal. Sept. 6, 2024)  (approving settlement where similar postcard notice program was administered by A.B. Data).

## VII.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes, and appointed Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class.  Preliminary Approval Order at 1-2. Nothing has changed since preliminary approval that would undermine the Court's conclusion, and class certification for settlement purposes remains appropriate.  *See Impax*, 2022 WL 2789496, at *4.

## VIII.  CONCLUSION

For the reasons stated in this Memorandum and in the Joint Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and approve the proposed Plan of Allocation.  The proposed Judgment and a proposed Plan of Allocation Order will be submitted with Lead Plaintiffs' reply papers, after the March 27, 2025 objection and exclusion deadline has passed.

Dated: February 27, 2025                                Respectfully submitted,

                                                                      */s/ David R. Kaplan*
                                                                      David R. Kaplan

1

**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)

2

Emily R. Bishop (SBN 319383)
Marti L. Worms (SBN 205552)

3

505 Lomas Santa Fe Dr.
Suite #180

4

Solana Beach, CA 92075
Telephone: (858) 997-0860

5

Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

6

ebishop@saxenawhite.com
mworms@saxenawhite.com

7

8

Maya Saxena (*pro hac vice*)
Jonathan Lamet (*pro hac vice*)

9

7777 Glades Road, Suite 300
Boca Raton, FL 33434

10

Telephone.: 561.394.3399
Facsimile: 561.394.3382

11

msaxena@saxenawhite.com
jlamet@saxenawhite.com

12

Steven B. Singer (*pro hac vice*)
Kyla Grant (*pro hac vice*)

13

10 Bank Street, 8th Floor
White Plains, New York 10606

14

Telephone: (914) 437-8551
ssinger@saxenawhite.com

15

kgrant@saxenawhite.com

16

*Counsel for Lead Plaintiff Pompano Beach*
*Police and Firefighters' Retirement System,*

17

*and Co-Lead Counsel for the Proposed*
*Settlement Class*

18

**MOTLEY RICE LLC**

19

Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com

20

Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com

21

Neli Traykova Hines (*pro hac vice*)
ntraykova@motleyrice.com

22

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

23

Telephone: (843) 216-9000
Facsimile: (843) 216-9450

24

25

*Counsel for Lead Plaintiff KBC Asset*
*Management NV, and Co-Lead Counsel*

26

*for the Proposed Settlement Class*

27

**ROSSMAN LEGAL**

28

Gregg Rossman (*pro hac vice*)
6840 Griffin Rd.

Davie, Florida 33314
Telephone: (954) 440-0908
gregg@rossmanlegal.com

*Additional Counsel for Lead Plaintiff*
*Pompano Beach Police and Firefighters'*
*Retirement System*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 27, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

Dated: February 27, 2025                **SAXENA WHITE P.A.**


*/s/ David R. Kaplan*                
David R. Kaplan