**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Dr., Suite #180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000

*Counsel for Lead Plaintiffs and Lead Counsel for the Proposed Settlement Class*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,

Defendants.

Case No.: 5:21-cv-09953-PCP

**LEAD COUNSEL'S: (I) NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (II) MEMORANDUM OF LAW IN SUPPORT THEREOF**

Hearing Date: April 24, 2025
Time: 10:00 a.m.
Dept: Courtroom 8
Judge: Hon. P. Casey Pitts

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES ............. vi

AND REIMBURSEMENT OF LITIGATION EXPENSES ........................................................ vi

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... vii

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ............................ 4

III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST ................... 4

        A.      Lead Counsel Are Entitled To A Common Fund Fee Award ................................ 4

        B.      The Court Should Calculate The Fee As A Percentage Of The Common Fund .... 5

        C.      The Relevant Factors Support the 25% Fee Request ............................................. 6

                1.      The Results Achieved Support The Fee Request ....................................... 7

                2.      The Litigation Was Risky And Complex .................................................... 8

                3.      The Skill Required And The Quality And Efficiency Of Lead
                        Counsel's Work Support The Fee Request ............................................... 11

                4.      The Contingent Nature Of The Action And Financial Burden
                        Carried by Lead Counsel Weigh In Favor Of Awarding The
                        Requested Fee ......................................................................................... 13

                5.      A 25% Fee Award Is the Ninth Circuit's Benchmark and
                        Comparable to Awards In Similar Cases .................................................. 14

                6.      Lack of Opposition Supports Granting the Requested Fees .................... 15

                7.      A Lodestar Cross-Check Supports the Requested Fee ............................ 16

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED .............................................................................................................. 19

V.      LEAD PLAINTIFFS' REIMBURSEMENT SHOULD BE APPROVED ...................... 19

VI.     CONCLUSION ......................................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Abadilla v. Precigen, Inc.*,

4
    2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................................. 17

5

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
    2024 WL 5112227 (N.D. Cal. Dec. 13, 2024) .................................................. 19

6

7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................ 4

8

*Brown v. China Integrated Energy Inc.*,
    2016 WL 11757878 (C.D. Cal. July 22, 2016) ................................................ 10

9

10

*Chang v. Wells Fargo Bank, N.A.*,
    2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) ...................................... 7, 14, 20

11

12

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................................ passim

13

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................................ 13

14

15

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................... passim

16

17

*Fleming v. Impax Labs., Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022) ...................................... 6, 18, 20

18

*Grae v. Corrections Corp. of Am.*,
    2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) .............................................. 14

19

20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ........................................................................... 5

21

22

*Hatamian v. Advanced Micro Devices, Inc.*,
    2018 WL 8950656 (N.D. Cal. Mar. 2, 2018) ............................................ 14, 16

23

*Hayden v. Portola Pharms. Inc.*,
    2023 WL 2375242 (N.D. Cal. Mar. 6, 2023) ...................................... 16, 19, 20

24

25

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
    2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ................................................ 17

26

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................... 6, 9, 10, 18

27

28

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................... 7

*Hunt v. Bloom Energy Corp.*,
    2024 WL 1995840 (N.D. Cal. May 6, 2024) .......................................... 4

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................. 3, 16

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) .................................................................. 4

*In re Banc of Calif. Sec Litig.*,
    2020 WL 1283486 (S.D. Cal. Mar. 16, 2020) ...................................... 14

*In re BHP Billiton Ltd. Sec. Litig.*,
    2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ....................................... 15

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................. 5

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................ 12

*In re FibroGen, Inc. Sec. Litig.*,
    No. 3:21-cv-02623-EMC, ECF No. 252 (N.D. Cal. Apr. 4, 2024) ....... 18

*In re HD Supply Holdings, Inc. Sec. Litig.*,
    2020 WL 8572953 (N.D. Ga. July 21, 2020) ....................................... 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................... 5

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................ 11

*In re Impinj, Inc. Sec. Litig.*, No.
    3:18-cv-05704, ECF No. 106 (W.D. Wash. Nov. 20, 2020) ............... 14

*In re Ocean Power Techs., Inc.*,
    2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................... 12

*In re Ocwen Fin. Corp. Sec. Litig.*,
    No. 9:14-cv-81057, ECF No. 340 (S.D. Fla. Dec. 22, 2017) ............... 15

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036  (N.D. Cal. 2008) ............................................ 5, 7

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 16, 2009) ..................................... 13

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ........................................................................ 13

*In re QuantumScape Sec. Class Action*,
    2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ...................................... 3, 6, 14, 20

*In re Rayonier Inc. Sec. Litig.*,
    2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) .................................................. 15

*In re SanDisk LLC Secs. Litig.*,
    No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019) ............................. 14

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ....................................... 3, 6, 14, 20

*In re Stable Road Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ........................................... passim

*In re Twitter Sec. Litig.*,
    No. 4:16-cv-05314-JST, ECF No. 664-1 (N.D. Cal. Oct. 13, 2022) ................ 18

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................. 16

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .................................................. 3

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................... 5

*Leventhal v. Chegg, Inc.*,
    2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ................................................ 11

*Marcus v. J.C. Penney Co., Inc.*,
    2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ............................................... 15

*Marcus v. J.C. Penney Co., Inc.*,
    2018 WL 307024 (E.D. Tex. Jan. 4, 2018) .................................................... 15

*McDermid v. Inovio Pharms., Inc.*,
    2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ................................................... 14

*Oliveira v. Language Line Servs., Inc.*,
    2025 WL 586589 (N.D. Cal. Feb. 24, 2025) .............................................. 6, 17

*Pardi v. Tricida, Inc.*,
    2024 WL 4336627 (N.D. Cal. Sept. 27, 2024) ................................................ 9

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
    2022 WL 2093054 (D. Minn. June 10, 2022) ................................................ 14

*Pokorny v. Quixtar, Inc.*,
    2013 WL 3790896 (N.D. Cal. July 18, 2013) ................................................... 7

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ............................................ 15

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................... 10

*Ryan v. Flowserve Corp.*,
    No. 3:03-cv-01769, ECF No. 954 (N.D. Tex. May 11, 2010) ......................... 15

*Schulein v. Petroleum Dev. Corp.*,
    2015 WL 12762256 (C.D. Cal. Mar. 16, 2015) ............................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................................... 5

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ..................................... 8, 16, 17

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................... 6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................... passim

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ................................................. 8

**Rules**

Fed. R. Civ. P. 23(h) .............................................................................................. vi, 4

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................... vii, 20

**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**PLEASE TAKE NOTICE** that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Modified Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 192), on April 24, 2025, at 10:00 a.m., before the Honorable P. Casey Pitts, at the United States District Court for the Northern District of California, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA 95113, Lead Counsel Saxena White P.A. ("Saxena White") and Motley Rice LLC ("Motley Rice," and together with Saxena White, "Lead Counsel") will, and hereby do, move the Court for an Order awarding attorneys' fees and reimbursement of litigation expenses in the above-captioned securities class action (the "Action").[1]

This motion is based on the following Memorandum of Law, the Joint Declaration and exhibits thereto, Lead Plaintiffs' accompanying Memorandum of Law in support of their Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (the "Final Approval Memorandum," filed contemporaneously herewith); the Declaration of Kathleen Brauns Regarding (A) Mailing of the Notice Packet, (B) Publication of Summary Notice, (C) Report on Requests for Exclusion to Date (*see* "Brauns Decl.," Ex. C to the Joint Declaration); Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities in Support Thereof (ECF No. 189, "Preliminary Approval Memorandum"); the Stipulation; all prior pleadings, papers, and Orders in this Action; and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on or before April 10, 2025.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation" or "Settlement Agreement," ECF No. 189-2) and the concurrently filed Joint Declaration of David R. Kaplan and Christopher F. Moriarty in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). Citations herein to "¶ ___" and "Ex. ___" refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration. Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

### STATEMENT OF ISSUES TO BE DECIDED

(1)     Whether the Court should approve as fair and reasonable Lead Counsel's application for an award of attorneys' fees in the amount of 25% of the Settlement Fund (i.e., the Settlement Amount, plus interest earned thereon);

(2)     Whether the Court should approve the request for reimbursement of $261,602.23 in out-of-pocket litigation expenses incurred by Lead Counsel in this Action; and

(3)     Whether the Court should approve the request for reimbursement of $3,500 to KBC Asset Management NV ("KBC") and $1,400 to Pompano Beach Police and Firefighters' Retirement System ("Pompano P&F," and together, with KBC, "Lead Plaintiffs"), for a total of $4,900, for costs incurred related to Lead Plaintiffs' representation of the Settlement Class in this Action, as authorized by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(4) (the "PSLRA")).

# MEMORANDUM OF LAW

## I.    INTRODUCTION

After three years of hard-fought litigation, working on a fully contingent basis and with no guarantee of compensation, Lead Counsel secured a Settlement consisting of a cash fund of $55,000,000 on behalf of the Settlement Class.  By any measure, the Settlement constitutes an outstanding result.  Among other things, it is over *five times* the national median recovery for securities class action settlements between 2014-2022, nearly *seven times* the median recovery in in the Ninth Circuit from 2014-2023, and would have ranked in the ***top 20%*** of all securities class action settlements nationwide in 2023.  This outstanding result for the Settlement Class was achieved as a direct result of the extensive efforts and vigorous advocacy of Lead Counsel.

Beyond its size, the benefits of the $55 million cash Settlement are clear when weighed against the many legal and practical risks facing Lead Plaintiffs and the Settlement Class, including the very real risk that they would recover significantly less—or nothing at all—had the litigation continued.  Defendants would have advanced vigorous challenges at class certification, summary judgment, and trial on each of the core elements of the securities fraud claims at issue in this Action.  While Lead Plaintiffs and Lead Counsel believe they had compelling counterarguments and, absent the Settlement, would have vigorously prosecuted this Action through trial and any appeals, the Settlement Class nonetheless faced a significant risk that Defendants' arguments would have eliminated most or all of the alleged damages.  And, even if Lead Plaintiffs prevailed on all their counterarguments, the Settlement Class faced severe collectability risk.  Given Chegg's precarious financial condition and uncertain future prospects, the most likely source of funds available to fund any future judgment or settlement is a "wasting" directors-and-officers ("D&O") insurance policy that, had this Action continued, would have been steadily depleted.  The Settlement avoids the diversion of this critical source of funds to pay defense costs, rather than compensating the Settlement Class.

Despite these considerable legal and practical risks, as well as the uncertainty inherent in all complex securities litigation, Lead Counsel consistently committed significant amounts of time

1    and money to the vigorous prosecution of this Action for the benefit of the Settlement Class.  From

2    the outset, Lead Counsel conducted an extraordinarily thorough investigation of the claims.  Lead

3    Counsel's investigation encompassed interviews of scores of university professors, deans, and

4    other faculty; interviews of numerous former Chegg employees; review and analysis of substantial

5    document productions made by several of the nation's most renowned institutions of higher

6    learning in response to public records requests; a comprehensive empirical analysis of Chegg's

7    online platform and archived data; extensive consultation with industry and financial experts;

8    review and analysis of Chegg's public SEC filings, conference call transcripts, and other public

9    statements; and review and analysis of securities analyst reports, news reports, social media, and

10   industry publications.

11        Based on this thorough investigation, Lead Counsel:  (a) prepared a particularized 126-

12   page Complaint to meet the exacting standards of the PSLRA and Fed. R. Civ. P. 9(b); (b)

13   successfully opposed Defendants' Motion to Dismiss the Complaint, and their subsequent Motion

14   for Reconsideration; and (c) conducted substantial and meaningful discovery from Defendants and

15   numerous non-parties.    These extensive efforts prompted Defendants to engage in

16   mediation/settlement discussions with Lead Plaintiffs at a critical juncture in the case under the

17   oversight of the Hon. Layn Phillips (Fmr.), a nationally renowned mediator of complex securities

18   litigation, and two of his esteemed colleagues—which involved the preparation of detailed

19   mediation statements accompanied by voluminous evidentiary support, responding to Defendants'

20   equally detailed submissions.  Ultimately, Lead Counsel's skill and perseverance resulted in the

21   Parties' acceptance of Judge Phillips' mediator's recommendation to settle the Action for $55

22   million in cash—an excellent result for the Settlement Class representing nearly all of Chegg's

23   D&O insurance.

24        Considering the outstanding recovery and the significant efforts undertaken in achieving

25   it, Lead Counsel respectfully requests a fee award of 25% of the Settlement Fund.  The requested

26   award seeks no enhancement to the Ninth Circuit's benchmark rate, and is squarely in line with

27   the fee awards in this District, elsewhere in the Ninth Circuit, and across the nation in similar

28

LEAD COUNSEL'S MOTION FOR FEES AND EXPENSES                                                    2
CASE NO. 5:21-CV-09953-PCP

complex securities fraud class action settlements. *See, e.g.*, *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at \*5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at \*4 (N.D. Cal. May 10, 2019) (granting 25% fee from $48 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at \*4 (C.D. Cal. Aug. 6, 2020) (awarding 30% fees of $41.5 million recovery).

Not only is Lead Counsel's request consistent with the Ninth Circuit benchmark, *see In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*9 (C.D. Cal. Oct. 25, 2016) (finding benchmark 25% award on $95 million settlement in securities class action was "below the range allowed in similar cases") (collecting cases), but a lodestar cross-check further confirms the reasonableness of the request. Specifically, the requested fee equates to a modest lodestar multiplier of 1.4, which is at "the lower end of the Ninth Circuit's scale." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at \*21 (N.D. Cal. Feb. 11, 2016) (granting class counsel's fee request and noting that the 1.7 multiplier was "towards the lower end of the Ninth Circuit's scale"); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002) (affirming 3.65 lodestar multiplier and citing numerous examples of higher multipliers).

The endorsement of the Settlement Class also weighs heavily in support of the requested fee award. First, Lead Plaintiffs—two sophisticated institutional investors who have actively supervised this Action from its inception—fully endorse Lead Counsel's fee request. Second, to date, not a single objection to the fee request (or any other aspect of the Settlement) has been filed by any Settlement Class Member, which is particularly significant given that approximately 90% of the Settlement Class consists of institutional investors with fiduciary responsibilities to their clients. *See, e.g.*, *Zynga*, 2016 WL 537946, at \*18 (holding that "the lack of objection by any Class Members also supports the 25 percent fee award").

Lead Counsel also request reimbursement of $261,602.23 in litigation expenses. This amount is reasonable and well within that typically expended by class counsel and reimbursed by courts in similar cases. *See infra* § IV. The requested service awards of $3,500 and $1,400 for

Lead Plaintiffs KBC and Pompano P&F, respectively, are also modest, in-line with or substantially below similar requests routinely awarded in securities class actions, and are expressly contemplated by the PSLRA. *See infra* § V.

For the reasons detailed below, in the Final Approval Memorandum, and in the Joint Declaration, Lead Plaintiffs and Lead Counsel respectfully request approval of this Motion.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

Lead Counsel respectfully refer the Court to the accompanying Joint Declaration for a detailed description of Lead Plaintiffs' allegations, the procedural history, efforts of counsel, risks of proceeding with the Litigation, and the Settlement. Relevant history and facts are also set out in Lead Plaintiffs' Preliminary Approval and Final Approval Memoranda, incorporated by reference. *See* Northern District of California Procedural Guidance for Class Action Settlements ("Guidelines"), Final Approval, § 2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.").[2]

## III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.    Lead Counsel Are Entitled To A Common Fund Fee Award

It is well-settled that Lead Counsel are "entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class." *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *7 (N.D. Cal. May 6, 2024) (citing Fed. R. Civ. P. 23(h)); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). Indeed, the Ninth Circuit has held that "'a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769,

---

[2] The Guidelines may be accessed at http://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited Feb. 27, 2025).

785 (9th Cir. 2022). The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation. *See Hunt*, 2024 WL 1995840, at *7 (directing "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it") (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (alternation in original)).

Moreover, courts have "'recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.'" *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *17 n.15 (S.D.N.Y. Dec. 19, 2014). Indeed, the Supreme Court has stated that securities class actions such as this one are "an essential supplement to . . . civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

### B.    The Court Should Calculate The Fee As A Percentage Of The Common Fund

The Ninth Circuit has consistently approved the use of the percentage-of-recovery method in common fund cases. *See Vizcaino*, 290 F.3d at 1050 (holding that "the primary basis of the fee award remains the percentage method"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1988) (noting the district court's "discretion to use either a percentage or lodestar method" in "'common-fund' cases where the settlement or award creates a large fund for distribution to the class"). Indeed, the percentage method "is typically used where attorney's fees will be paid out of a common fund." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (the "use of the percentage method in common fund cases appears to be dominant").

This percentage method is particularly appropriate in common fund cases where, as here, "the benefit to the class is easily quantified." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "'Because the benefit to the class is easily quantified in common-fund settlements,' [] the Ninth Circuit . . . permit[s] courts 'to award attorneys a percentage of the

common fund in lieu of the often more time-consuming task of calculating the lodestar.'" *Oliveira v. Language Line Servs., Inc.*, 2025 WL 586589, at *4 (N.D. Cal. Feb. 24, 2025) (citing *Bluetooth* at 941) (Pitts, J.).   As courts have explained, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014).   Moreover, "application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that '[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount' recovered for the class." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) (citing 15 U.S.C. § 78u-4(a)(6) and noting "the near-universal adoption of the percentage method in securities cases" (alteration and italics in original)).

### C.    The Relevant Factors Support the 25% Fee Request

"For more than two decades, the Ninth Circuit has set the benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018).   In many instances, courts within this Circuit (including this Court) award fees greater than the benchmark.   *See, e.g.*, *Oliveira*, 2025 WL 586589, at *10-11 (finding "reasonable" "an award of 30% of the common fund") (Pitts, J.); *In re QuantumScape*, 2025 WL 353556, at *6 (awarding 30% of $47.5 million settlement as it is "consistent with awards in similar cases within the Ninth Circuit"); *In re Silver Wheaton*, 2020 WL 4581642, at *4  (awarding 30% fees of $41.5 million recovery); *Fleming v. Impax Labs., Inc.*, 2022 WL 2789496, at *8-9 (N.D. Cal. July 15, 2022) (awarding 30% fees of $33 million settlement).   Here, Lead Counsel do not request any enhancement to the Ninth Circuit's benchmark.   The fee request is therefore presumptively reasonable and squarely within the range of percentages courts in this Circuit award in similar securities fraud class action settlements.

1    Moreover, the attorneys' fee request is fair and reasonable when one considers the relevant

2    factors, including: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the

3    quality of work; (iv) the contingent nature of the fee and the financial burden carried; and (v)

4    awards made in similar actions. *Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit has explained

5    that these factors should not be used as a rigid checklist or weighed individually, but, rather, should

6    be evaluated in light of the totality of the circumstances. *Id.* As set forth below, all of the *Vizcaino*

7    factors favor approving the requested fee.[3]

8                          **1.    The Results Achieved Support The Fee Request**

9    The result achieved by counsel is a significant—if not the most important—factor in

10   considering an attorneys' fee request. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (stating

11   that the "most critical factor is the degree of success obtained"); *Chang v. Wells Fargo Bank, N.A.*,

12   2023 WL 6961555, at *7 (N.D. Cal. Oct. 19, 2023) ("'The touchstone for determining the

13   reasonableness of attorneys' fees in a class action is the benefit to the class.'") (quoting *Lowery v.*

14   *Rhapsody Int'l, Inc.*, 69 F.4th 994, 997 (9th Cir. 2023)).

15   As discussed, the result achieved—the creation of a $55 million settlement fund—is an

16   outstanding result for the Settlement Class that will provide Settlement Class Members with an

17   immediate cash recovery, while avoiding the substantial expense, delay, risk, and uncertainty of

18   continued litigation.

19   Quantitatively, the $55 million Settlement Amount is an excellent result. Measured by

20   size, the $55 million Settlement Amount is nearly ***four times*** the median recovery of $14 to $15

21   million for securities class action settlements in 2023 and 2024, over ***five times*** the approximately

22

23

24   _____

25   [3] Of note, while a 25% fee is the "benchmark" in the Ninth Circuit, courts have observed that, in
     "most common fund cases, the award *exceeds* that benchmark," with a 30% fee the norm "'absent
26   extraordinary circumstances that suggest reasons to lower or increase the percentage.'"
     *Omnivision,* 559 F. Supp. 2d at 1047-48 (awarding a 28% fee); *accord Rentech, Inc.*, 2019 WL
27   5173771, at *9 (awarding 33.3% fee); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12762256, at
     *1 (C.D. Cal. Mar. 16, 2015) (awarding 30% fee); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at
28   *1 (N.D. Cal. July 18, 2013) (awarding 27.3% fee).

$10 million median recovery for securities class action settlements between 2014-2022,[4] and nearly ***seven times*** the $9 million median recovery in securities class action settlements in the Ninth Circuit from 2014 through 2023.[5]  In fact, the $55 million Settlement Amount would have ranked in the ***top 20%*** of all securities class action settlements in 2023, and the ***top 15%*** of all securities class action settlements between 2014-2022.[6]

The Settlement is also an excellent result measured in percentage terms.  Lead Plaintiffs' financial expert calculated realistic damages ranging from $893 million to $1.435 billion.[7]  Thus, based on Lead Plaintiffs' experts' calculations, the Settlement Amount represents a recovery of 4% to 6% of Lead Plaintiffs' potential recoverable damages.  This is approximately ***2-3 times*** the median percentage recovery in similar cases with potential damages of $1 billion or more,[8] and in-line with—or above—the percentage recovery achieved in other approved settlements in this District and elsewhere in the Ninth Circuit.  *See, e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *9, *11 (N.D. Cal. Apr. 19, 2021) (granting 25% fee award where recovery was 2.35% of the total damages); *Vataj v. Johnson*, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (granting 25% fee award where settlement was "consistent with the 2–3% average recovery . . . in other securities class action settlements").

### 2.    The Litigation Was Risky And Complex

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Rentech*, 2019 WL 5173771, at *9.  This risk can be based on litigation uncertainties, the "collectability of

---

[4] NERA, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 22-23 and Figure 22 (Jan. 22, 2025) (Joint Decl. at Ex. G, "NERA Report").

[5] *See* Cornerstone Research, *Securities Class Action Settlements, 2023 Review and Analysis*, at 4, 20 (March 2024) (Joint Decl. at Ex. F, "Cornerstone Report").

[6] *Id.*

[7] Declaration of Matthew D. Cain, Ph.D. Regarding Calculation of Settlement Class's Estimated Damages, ECF No. 189-3 at ¶¶ 6, 17; *see also* Joint Decl., ¶ 83.

[8] *See* Cornerstone Report at 6 (finding that the median recovery for settlements in 2023 with over $1 billion in damages was 2.0%, and noting the figure was only slightly higher (2.6%) from 2014 to 2022).

any judgment achieved," or both. *Zynga*, 2016 WL 537946, at *17. While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly based on industry and legal trends.[9] *See, e.g.*, *Hefler*, 2018 WL 6619983, at *13 (recognizing "'that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain'"). This Action was no exception.

This Action presented many hotly contested issues of both fact and law and Defendants presented formidable defenses to both liability and damages. Indeed, throughout the litigation and settlement negotiations, Defendants adamantly denied liability and asserted various defenses to the elements of falsity, scienter, and loss causation—the core of Lead Plaintiffs' securities fraud claims. *See Zynga*, 2016 WL 537946, at *17 ("[T]he risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation."). Looking ahead, Defendants would have mounted a vigorous opposition to class certification, an increasingly contested issue in securities fraud class actions. *See Pardi v. Tricida, Inc.*, 2024 WL 4336627, at *7 (N.D. Cal. Sept. 27, 2024) (explaining that, given recent developments in case law, class certification in securities actions "could require essentially a mini-trial . . . in advance of a full trial regarding the actual merits"). In addition, Defendants would have challenged Lead Plaintiffs' damage calculations. Any one of the foregoing issues, if they were decided in Defendants' favor, could have ended Lead Plaintiffs' case or severely restricted any prospects for recovery.

Lead Plaintiffs also recognize that evidence produced in discovery would be susceptible to different interpretations, including by industry and financial experts, meaning that continued litigation would lead to a difficult and contested "battle of the experts." Key issues in these expert battles would be whether Chegg's stock price was "impacted" by the alleged false and misleading statements; what amount of the stock price movement was attributable to the fraud (versus market

---

[9] Indeed, over half of all securities class actions are dismissed at the pleading stage. *See* NERA Report at 17, fig. 15.

and industry forces); whether Chegg's user data and usage rates were indicative of increased cheating during the Class Period; the reasons for Chegg's decline in subscriber growth; and the calculation of damages—including reductions for any "confounding" news. The Court or the jury might not agree with Lead Plaintiffs' experts that the evidence demonstrated that Defendants made materially false and misleading statements that caused the Settlement Class's loss. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("Plaintiffs acknowledge that much of their evidence would have been expert witness testimony that may not have been credited by the factfinder . . . and they may have difficulty collecting any judgment they might obtain against Defendants" meaning "the high risks associated with this litigation weigh in favor of awarding Lead Counsel's requested fee."). And, even if successful at trial, Lead Plaintiffs would still face the risk of an unfavorable ruling in a dispositive post-trial motion or a reversal on appeal. *See Hefler*, 2018 WL 6619983, at *13 (noting that because "any victory in this Court would almost certainly have had to be defended on appeal as well," this factor supported fee request).

Additionally, due to the Company's precarious financial condition, uncertain future, and the magnitude of alleged damages, it was a near certainty that Chegg would have ***no*** ability to withstand a full adverse judgment. Indeed, the $55 million settlement amount represented over ***twelve times*** the Company's net cash on hand at the time the Settlement was reached—and nearly ***one-third its entire market capitalization***. Joint Decl., ¶ 11. Moreover, on that same date, Chegg's stock price traded (and continues to trade) between $1-2 per share—a tiny fraction of the over $113 per share heights reached during the Class Period. This critical ability-to-pay issue placed an additional layer of uncertainty on the Settlement Class's ability to recover on its claims. *See Rieckborn v. Velti PLC*, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) (finding company's "precarious financial condition . . . highlight[ed] the considerable risk involved in litigating this action on a contingent fee basis, and the skill required to perform such work"); *Rentech*, 2019 WL 5173771, at *9 (approving 33% fee award because "the uncertainty of Rentech's future" meant "continued litigation presented a high risk for Plaintiffs," and the "obstacles to obtaining

compensation even in the event of a judgment in their favor" meant this "factor also supports Lead Counsel's fee request").

In sum, substantial risks and uncertainties made it far from certain that any recovery, let alone a $55 million recovery, would ultimately be obtained. Accordingly, this factor strongly supports the requested fee award. *See, e.g.*, *Zynga*, 2016 WL 537946, at *17 (approving benchmark award where "Lead Counsel understood . . . there would always be an issue as to collectability"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) (finding "the risk that the funds available for a judgment would be depleted due to litigation expenses" supported benchmark fee award).

### 3. The Skill Required And The Quality And Efficiency Of Lead Counsel's Work Support The Fee Request

In determining a reasonable fee, courts often consider the quality of the work performed and the skill required in the action. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Rentech*, 2019 WL 5173771, at *10.

Here, as Judge Davila recognized in appointing Saxena White and Motley Rice as lead counsel, the firms are "are both highly qualified and experienced in securities class litigation." *Leventhal v. Chegg, Inc.*, 2022 WL 4099454, at *4 (N.D. Cal. Sept. 7, 2022); ECF No. 105 at 7 (citing Lead Counsel's past successful recoveries).[10] Lead Counsel's experience and expertise allowed them to effectively: (a) conduct a comprehensive pre-filing investigation and then draft a detailed 126-page Complaint that satisfied the PSLRA's exacting pleading standards; (b) identify the myriad complex issues involved in this Action and then propound multiple sets of document and written discovery on Defendants and non-parties focused on those and other relevant issues; (c) successfully oppose Defendants' Motion to Dismiss the Complaint and subsequent Motion for

---

[10] Lead Counsel's substantial experience and achievements in the field of complex securities and shareholder litigation is detailed in their respective firm resumes, attached as Exhibit 6 to the Motley Rice Fee Decl. and Exhibit 4 to the Saxena White Fee Decl.

Reconsideration; (d) formulate strategies to effectively prosecute the Action and leverage a large and prompt recovery; and (e) negotiate a favorable settlement at the optimal time for the Settlement Class. *See Zynga*, 2016 WL 537946, at *17 ("Here, Lead Counsel engaged in significant pre-filing investigation, shepherded this case past [] motions to dismiss and a motion for reconsideration, and reached a settlement quickly before expending resources that would otherwise have gone to the Class after further litigation" and finding "the skill required and quality of work performed supports the fee award sought."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("Class Counsel took on a great deal of risk . . . and turned a potentially empty well into a significant [recovery]. That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.").

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Zynga*, 2016 WL 537946, at *17; *see also Rentech*, 2019 WL 5173771, at *10 (finding "requested fee" supported because "Lead Counsel faced a vigorous defense" from "a respected national law firm"). Here, Defendants were primarily represented by Cooley LLP ("Cooley"), a global law firm with approximately 1,300 attorneys and 19 offices worldwide—including over 100 lawyers focused on securities litigation—with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases.[11] *See In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) ("Here, Defendants were represented by . . . Cooley LLP . . . [a] prominent law firm[] with substantial experience in securities class actions," and the "fact that Plaintiff's Counsel achieved this Settlement for the Class in the face of such formidable legal opposition further evidences the quality of their work."). In the face of this capable adversary, Lead Counsel was able to advance the securities fraud claims through dispositive motions—which included a hotly contested, over an hour-long hearing on Defendants' motion to

---

[11] *See* www.cooley.com/about; *see also* Vault, *2024 Vault Law 100*, https://vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings#rankings-group-2 (ranking Cooley as the 24th most prestigious law firm in the United States).

dismiss—and secure a significant recovery for the Settlement Class. Those facts further support Lead Counsel's fee request.

### 4. The Contingent Nature Of The Action And Financial Burden Carried by Lead Counsel Weigh In Favor Of Awarding The Requested Fee

Lead Counsel also undertook this Action on an entirely contingent basis and litigated the claims with no guarantee of compensation or reimbursement of expenses. Courts have recognized that such representation serves the public interest and that class counsel in such cases may be appropriately compensated with an enhanced fee. *See Zynga*, 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"); *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (granting "enhanced fee" to compensate class counsel "for the risk that they might be paid nothing at all for their work"). Further, the "'importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.'" *Rentech*, 2019 WL 5173771, at *10.

Although Lead Counsel successfully opposed Defendants' efforts to dismiss the case at the pleading stage, there was no guarantee that the Settlement Class would overcome the multitude of other risks attendant to class certification, summary judgment, trial, and potential appeals—no matter how much time and effort they devoted to the case. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment in favor of defendants after eight years of litigation, and after class counsel incurred over $6 million in expenses, and accrued over 100,000 hours of lodestar).

Unlike counsel for Defendants, who were likely paid and reimbursed for their fees and expenses on an ongoing basis, Lead Counsel have not received any compensation for their efforts over the course of the Action. Lead Counsel have invested over 13,110 hours of work in this Action, equating to a total lodestar of $9,811,027.75, and advanced expenses of $261,602.23, knowing that if their efforts were not successful, they would recover no fees for their time or any

reimbursement for their reasonable litigation expenses.  *See* Joint Decl. ¶¶ 108, 120.  Courts within the Ninth Circuit have consistently recognized that "the risk of non-payment after years of litigation justifies a significant fee award."  *Zynga*, 2016 WL 537946, at *18 (finding "over $3 million in time worked on the matter all with the possibility of little to no recovery" supported the requested 25% benchmark fee); *Chang*, 2023 WL 6961555, at *7 ("The risk that counsel took in litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award.").  And, substantial additional work will be required of Lead Counsel going forward (in implementing the Settlement and overseeing claims administration and distribution of Settlement funds)—work that will not be compensated beyond Lead Counsel's existing fee request.

### 5. A 25% Fee Award Is the Ninth Circuit's Benchmark and Comparable to Awards In Similar Cases

As discussed in § III.C. above, the Ninth Circuit has established a 25% fee—the amount requested by Lead Counsel here—as a benchmark.  Fee awards of 25% or more are routinely awarded in similar securities class action settlements in this District and throughout the Ninth Circuit.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050-51 (affirming award of 28% of $97 million settlement, representing a 3.65 multiplier); *In re QuantumScape*, 2025 WL 353556, at *5 (awarding 30% of $47.5 million settlement fund); *In re SanDisk LLC Secs. Litig.*, No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019), ECF No. 284 (awarding 25% of $50 million settlement fund); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *1 (N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement fund); *In re Silver Wheaton*, 2020 WL 4581642, at *4 (awarding 30% of $41.5 million settlement); *In re Impinj, Inc. Sec. Litig.*, No. 3:18-cv-05704, ECF No. 106 at 1 (W.D. Wash. Nov. 20, 2020) (awarding 25% fees on a $20 million settlement); *In re Banc of Calif. Sec Litig.*, 2020 WL 1283486, at *1 (S.D. Cal. Mar. 16, 2020) (awarding 33% of $19,750,000 settlement fund).

In addition, the 25% fee requested in this Action is consistent with fee decisions in comparable cases decided around the country.  *See, e.g., McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *11-13 (E.D. Pa. Jan. 18, 2023) (awarding 27.5% of $44 million settlement);

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding 33.3% of $63 million settlement); *Grae v. Corrections Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding 33.3% of $56 million settlement); *In re HD Supply Holdings, Inc. Sec. Litig.*, 2020 WL 8572953, at *1 (N.D. Ga. July 21, 2020) (awarding 30% of $50 million settlement); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (same); *In re Ocwen Fin. Corp. Sec. Litig.*, No. 9:14-cv-81057, ECF No. 340 at 2 (S.D. Fla. Dec. 22, 2017) (awarding 25% fees on a $56 million settlement); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017) (awarding 30% of $73 million settlement); *Marcus v. J.C. Penney Co., Inc*., 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) (awarding 30% of $97.5 million settlement in fees and noting "[i]t is not unusual for attorneys' fees awarded under the percentage method to range between 25% to 30% of the fund or more"); *Ryan v. Flowserve Corp.*, No. 3:03-cv-01769, ECF No. 954 at 1-2 (N.D. Tex. May 11, 2010) (awarding 25% fees on $55 million settlement).

Accordingly, the fee request is squarely within the range of percentages awarded by courts in this Circuit and elsewhere in similar complex securities class action cases, and is fair and reasonable given the extensive efforts and extraordinary result obtained by Lead Counsel in the face of significant litigation risks and practical risks.

### 6.    Lack of Opposition Supports Granting the Requested Fees

Courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee, and frequently find that a lack of objections supports the requested fee award. *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *5 (N.D. Cal. Sept. 26, 2023) (finding "no objections to the fees or expenses . . . by Class Members" supported fee request); *Stable Rd.*, 2024 WL 3643393, at *14 (noting fact that "'only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable.'"); *accord* Guidelines, Final Approval, § 1.

1    The Court-approved Notice advised potential Settlement Class Members that Lead Counsel

2    would be requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund and

3    reimbursement of out-of-pocket expenses not to exceed $490,000, plus interest earned at the same

4    rate as the Settlement Fund.  As of this filing, not a single objection to counsel's fee and expense

5    request has been received, which strongly supports the fee request.  *See Zynga*, 2016 WL 537946,

6    at *18 (finding that "the lack of objection by any Class Members also supports the 25 percent fee

7    award").[12]

8    Lead Plaintiffs' endorsement of the fee request further supports its approval.  *See* Joint

9    Decl. at Exs. A and B; *see also Hatamian*, 2018 WL 8950656, at *2 (approving fee where request

10   was "reviewed and approved as fair and reasonable by Class Representatives [including KBC],

11   sophisticated institutional investors"); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808,

12   at *8 (S.D.N.Y. Nov. 7, 2007) ("Since passage of the PSLRA, courts . . . have found that in a

13   PSLRA case, a fee request which has been approved and endorsed by a properly-appointed lead

14   plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated

15   institutional investor."); *Hayden v. Portola Pharms. Inc.*, 2023 WL 2375242, at *2 (N.D. Cal. Mar.

16   6, 2023) (approving 25% fee request supported by lead plaintiffs and noting that "institutional

17   investors that have been directly involved in the prosecution and resolution of the Action . . . have

18   substantial interests in ensuring that any fees and expenses paid to counsel are duly earned and not

19   excessive").

20             **7.      A Lodestar Cross-Check Supports the Requested Fee**

21   To ensure the reasonableness of a fee awarded under the percentage-of-recovery method,

22   courts in this Circuit may cross-check the proposed fee award against counsel's lodestar, although

23   such a cross-check is not required.  *See Vataj*, 2021 WL 5161927, at *8 (noting that "'trial courts

24   have discretion to conduct a lodestar cross-check on a percentage fee'" but "'also retain the

25   discretion to forgo'" such an analysis); *In re Amgen Inc.*, 2016 WL 10571773, at *9 ("Although

26

27   _____

28   [12] The deadline for the filing of objections is March 27, 2025.  Should any objections be received,
     Lead Counsel will address them in their reply papers, due on April 10, 2025.

an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (noting that "lodestar analysis is not necessary when the requested fee is within the accepted benchmark").

A lodestar cross-check involves a two-step analysis. *First*, the Court multiplies the number of hours each attorney reasonably expended on the litigation by the attorney's reasonable hourly rate to obtain the lodestar. *See Vataj*, 2021 WL 5161927, at *8. Under the cross-check method, the Court need not focus on each hour billed nor "review actual billing records," but can use a rough calculation "rely[ing] on summaries submitted by the attorneys." *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *14 (N.D. Cal. Nov. 6, 2023) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records."). *Second*, the Court adjusts that lodestar figure by applying a multiplier to reflect such factors as "the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases." *Stable Rd.*, 2024 WL 3643393, at *15. "When the lodestar is used as a cross-check, 'the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.'" *Id*.

Here, a lodestar cross-check strongly demonstrates the reasonableness of the requested fees. Lead Counsel have collectively spent 13,110 hours in connection with the Litigation, resulting in a total lodestar of $9,811,027.75. Joint Decl. ¶ 108.[13] Thus, the fee request would represent a modest multiplier of 1.4—well within the range commonly approved in securities class

---

[13] With respect to the Guidelines for Final Approval § 2 (Attorneys' Fees), *see* lodestar and expense declarations attached as Ex. D (Motley Rice) and Ex. E (Saxena White), each attached to the Joint Declaration. These declarations provide the names of the attorneys and paraprofessionals who worked on the Action, the hourly rates chargeable by each attorney and paraprofessional, the lodestar value of the time expended by such attorneys and paraprofessionals, and the unreimbursed disbursements of these firms. Appended to those declarations are the Firm Resumes for Lead Counsel, which address the background and experience of those firms.

actions and other complex litigation.[14]  *See, e.g.*, *Oliveira*, 2025 WL 586589, at *10-11 (finding "reasonable" "an award of 30% of the common fund" and "a multiplier of approximately 2.0") (Pitts, J.); *Impax*, 2022 WL 2789496, at *9 (approving fees equal to a lodestar multiplier of 2.6 given "numerous decisions from this district approving multipliers ranging from 2.5 to 4.3"); *Zynga*, 2016 WL 537946, at *21 (noting that the 1.7 multiplier was "towards the lower end of the Ninth Circuit's scale"); *Stable Rd.*, 2024 WL 3643393, at *15 ("A multiplier of 1.76 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation" and "supports the Court's finding that the awarded fee is reasonable."); *Vizcaino*, 290 F.3d at 1050-51 & n.6 (upholding a fee award which reflected a lodestar multiplier of 3.65 and noting lodestar awards regularly include a multiplier in the "1.5-3.0 range").  Accordingly, a lodestar cross-check confirms the reasonableness of Lead Counsel's fee request.[15]

In sum, Lead Counsel's requested fee award is reasonable and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund

---

[14] Notably, the lodestar does not include time for additional services to be provided by Lead Counsel to the Settlement Class, including attending the final settlement hearing, responding to Settlement Class Members' inquiries, supervising the Claims Administrator in the review and processing of claims, preparing and filing a motion for distribution of the Settlement funds, and overseeing the distribution of checks to Settlement Class Members.

[15] "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates."  *Hashem v. NMC Health PLC*, 2022 WL 3573145, at *2 (C.D. Cal. Apr. 8, 2022).  Here, Lead Counsel's rates are consistent with other attorneys of comparable ability and reputation engaged in similar litigation *See, e.g.*, *Impax*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (in 2022, approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, as "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Hefler*, 2018 WL 6619983, at *14 (in 2018, finding rates ranging from $650 to $1,250 for partners and senior counsel and from $400 to $650 for associates as "reasonable").  In fact, Lead Counsel's rates have recent judicial approval in this District.  *See, e.g.*, *In re FibroGen, Inc. Sec. Litig.*, No. 3:21-cv-02623-EMC, ECF No. 252, Ex. E (N.D. Cal. Apr. 4, 2024) and Order Awarding Attorneys' Fees and Expenses, ECF No. 259 (N.D. Cal. Aug. 1, 2024) (approving Saxena White's then-current rates of $1,085 for shareholders, $825-$1,085 for directors, and $400-$795 for attorneys and senior attorneys); *In re Twitter Sec. Litig.*, No. 4:16-cv-05314-JST, ECF No. 664-1 (N.D. Cal. Oct. 13, 2022) (setting forth Motley Rice's then-current rates of $725-$1,100 for member attorneys, $425-$600 for associate attorneys, and $175-$750 for paralegals and other litigation support professionals) and ECF No. 670 (N.D. Cal. Nov. 21, 2022) (approving fee request).

or as a multiple of counsel's lodestar. As discussed above, each of the factors considered in the Ninth Circuit also supports the reasonableness of the requested fee.

## IV. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

"'Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.'" *Rentech*, 2019 WL 5173771, at *11; *see also Zynga*, 2016 WL 537946, at *22 (noting that "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation").

The Notice apprised potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $490,000. S*ee* Stipulation, Ex. A-1 (Long Form Notice) at ¶¶ 5, 74; Ex. A-4 (Postcard Notice). Lead Counsel have incurred expenses in an aggregate amount of $261,602.23 in prosecuting this Action, significantly less than the cap set forth in the Notice. These expenses, which are outlined in the declarations from Lead Counsel submitted contemporaneously herewith, are of the type generally approved by courts for reimbursement. *See* Joint Decl. at ¶¶ 120-29 and Exs. D & E. Such expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which Lead Counsel seek reimbursement, are consistent with costs normally incurred by class counsel prosecuting securities fraud class actions. *See, e.g.*, *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *7 (N.D. Cal. Dec. 13, 2024) (awarding $203,929.20 in costs in $17.75 million settlement, principally for experts, mediation fees, e-discovery hosting fees, and court costs); *Portola Pharms.*, 2023 WL 2375242, at *2 (awarding $750,612.54 in costs in $17.5 million settlement, principally for consultant/expert fees, online research charges, mediation fees, and travel).

## V. LEAD PLAINTIFFS' REIMBURSEMENT SHOULD BE APPROVED

The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for its "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "In

the Ninth Circuit, service awards of up to $5,000 are 'presumptively reasonable.'" *Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *8 (N.D. Cal. Oct. 19, 2023); *see also Impax*, 2022 WL 2789496, at *10 (noting that service awards are expressly authorized by the PSLRA, "'are fairly typical in class action cases,'" and are designed to "'compensate class representatives for work done on behalf of the class'").

As detailed in the Joint Declaration and the declarations from each Lead Plaintiff, KBC and Pompano P&F both expended time and effort in representing the interests of the Settlement Class in this Action, including the review of pleadings and filings; conducting regular communications with Lead Counsel concerning case developments; and supervising the settlement process. For their service on behalf of the Settlement Class, KBC and Pompano P&F seek reimbursement of $3,500 and $1,400, respectively, for an aggregate amount of $4,900. Lead Plaintiffs' request is "presumptively reasonable" and well within the amounts commonly awarded by courts to representative plaintiffs in securities class actions. *See, e.g.*, *In re QuantumScape*, 2025 WL 353556, at *6 (approving PSLRA award of $12,500 to the lead plaintiff and $5,000 each to two additional named plaintiffs); *Stable Rd.*, 2024 WL 3643393, at *16 (approving "PSLRA award in the amount of $10,000 to reimburse [lead plaintiff] for time spent prosecuting the Action"); *Portola Pharms*, 2023 WL 2375242, at *2 (approving PSLRA award of $10,000 to lead plaintiff and $8,500 to additional named plaintiff); *In re Silver Wheaton*, 2020 WL 4581642, at *4 (finding "reasonable" PSLRA award of $12,500 to each of seven lead plaintiffs).[16]

---

[16] The Notice advised Settlement Class Members that Lead Plaintiffs would seek up to $20,000 as a reimbursement. No Settlement Class Member has objected to that (significantly higher) amount as of the date of this filing. *See* Stipulation, Ex. A-1 (Long Form Notice) at ¶¶ 5, 74.

1    **VI.    <u>CONCLUSION</u>**

2        For all the foregoing reasons, Lead Counsel respectfully request that the Court award

3    attorneys' fees of 25% of the Settlement Fund, litigation expenses in the amount of $261,602.23,

4    and PSLRA reimbursements to Lead Plaintiffs in the amounts of $3,500 for KBC and $1,400 for

5    Pompano P&F.  A proposed order will be submitted with Lead Counsel's reply papers, after the

6    March 27, 2025 objection and exclusion deadline has passed.

7    Dated: February 27, 2025                    Respectfully submitted,

8                                               */s/ David R. Kaplan*
                                               **SAXENA WHITE P.A.**
9                                              David R. Kaplan (SBN 230144)
                                               Emily R. Bishop (SBN 319383)
10                                             Marti L. Worms (SBN 205552)
                                               505 Lomas Santa Fe Dr.
11                                             Suite #180
                                               Solana Beach, CA 92075
12                                             Telephone: (858) 997-0860
                                               Facsimile: (858) 369-0096
13                                             dkaplan@saxenawhite.com
                                               ebishop@saxenawhite.com
14                                             mworms@saxenawhite.com

15                                             Maya Saxena (*pro hac vice*)
                                               Jonathan Lamet (*pro hac vice*)
16                                             7777 Glades Road, Suite 300
                                               Boca Raton, FL 33434
17                                             Telephone.: 561.394.3399
                                               Facsimile: 561.394.3382
18                                             msaxena@saxenawhite.com
                                               jlamet@saxenawhite.com
19
                                               Steven B. Singer (*pro hac vice*)
20                                             Kyla Grant (*pro hac vice*)
                                               10 Bank Street, 8th Floor
21                                             White Plains, New York 10606
                                               Telephone: (914) 437-8551
22                                             ssinger@saxenawhite.com
                                               kgrant@saxenawhite.com
23
                                               *Counsel for Lead Plaintiff Pompano Beach*
24                                             *Police and Firefighters' Retirement System,*
                                               *and Co-Lead Counsel for the Proposed*
25                                             *Settlement Class*

26                                             **MOTLEY RICE LLC**
                                               Max N. Gruetzmacher (*pro hac vice*)
27                                             mgruetzmacher@motleyrice.com
                                               Christopher F. Moriarty (*pro hac vice*)
28                                             cmoriarty@motleyrice.com

Neli Traykova Hines (*pro hac vice*)
ntraykova@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Counsel for Lead Plaintiff KBC Asset Management NV, and Co-Lead Counsel for the Proposed Settlement Class*

**ROSSMAN LEGAL**
Gregg Rossman (*pro hac vice*)
6840 Griffin Rd.
Davie, Florida 33314
Telephone: (954) 440-0908
gregg@rossmanlegal.com

*Additional Counsel for Lead Plaintiff Pompano Beach Police and Firefighters' Retirement System*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify under penalty of perjury that on February 27, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

Dated: February 27, 2025       **SAXENA WHITE P.A.**

            *<u>/s/ David R. Kaplan</u>*
            David R. Kaplan