ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
JEFFREY K. RIFFER, State Bar No. 87016
  *jriffer@elkinskalt.com*
ANGELA M. BUTCHER, State Bar No. 242759
  *abutcher@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Attorneys for Objector Ethan Fieldman

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>     v.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>        Defendants. | Case No. 5:21-cv-09953-EJD<br><br><u>CLASS ACTION</u><br><br>**STATEMENT OF OBJECTIONS TO PROPOSED CLASS SETTLEMENT AND NOTICE OF INTENTION TO APPEAR**<br><br>Judge:  P. Casey Pitts |

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

The undersigned, Ethan Fieldman, hereby objects to the Proposed Settlement and Plan of Allocation ("Proposed Settlement")[1] in the above-captioned matter. Mr. Fieldman has the right to object, as he purchased Chegg, Inc. common stock between May 5, 2020, and November 1, 2021, and was damaged thereby.[2]

As discussed below, the Proposed Settlement: (1) violates California public policy and is barred by California Insurance Code Section 533 ("Section 533")[3]; and (2) impermissibly rewards Defendant's alleged misconduct. As such, the Proposed Settlement is not fair, reasonable, or adequate as required by Federal Rule of Civil Procedure 23(e) and should be rejected.[4]

## I.    THE PROPOSED SETTLEMENT VIOLATES CALIFORNIA PUBLIC POLICY

### A.    Section 533 Establishes California's Fundamental Public Policy Against Rewarding Wrongdoers.

Section 533 bars insurers from covering "willful acts of the insured."[5]  The statute is implied in every insurance contract and codifies California's fundamental public policy against allowing wrongdoers to profit from their wrongdoing, or from being indemnified against the effects of their wrongdoing.[6]

---

[1] The term "Proposed Settlement" is used as defined in the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for An Award of Attorneys' Fees and Reimbursement of Litigation Expenses (hereafter, "Class Notice").

[2] *See* Schedule of Fieldman Chegg Stock Transactions, attached as Exhibit A.

[3] Cal. Ins. Code § 533 ("An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.")

[4] *See* Fed. R. Civ. P. 23(e)(2) ("[T]he court may approve [a settlement proposal] only after a hearing and only on finding that it is fair, reasonable, and adequate").

[5] Cal. Ins. Code § 533. *See, e.g., Certain Underwriters at Lloyd's London v. ConAgra Grocery Products Co., LLC*, 77 Cal. App. 5th 729, 739, 292 Cal. Rptr. 3d 712, 719-20 (Ct. App. 2022), review denied (Section 533 reflects a fundamental public policy of denying coverage for willful wrongs and discouraging willful torts).

[6] *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 12 Cal. App. 4th 715, 740 (Ct. App. 1993), rehearing denied and modified, review denied (Section 533 is implied in every insurance contract and reflects public policy of denying coverage for willful wrongs and discouraging willful torts; *Dart Industries, Inc. v. Liberty Mut. Ins. Co.*, 484 F.2d 1295, 1298 (9th Cir. 1973) ("Rationale of

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**B.      Section 533 Bars Coverage for Securities Violations.**

Few federal cases have addressed what constitutes a "willful act" under Section 533 in the context of federal claims. However, courts applying Section 533 to California state claims have interpreted the exclusion for "willful" acts to include acts where harm was intentional and inherently or predictably harmful – including cases of alleged stock manipulation.[7]  In *California Amplifier, Inc. v. RLI Ins. Co.,*[8] the California Court of Appeal applied Section 533 to preclude coverage of a class action settlement under a director's and officer's ("D&O") liability policy, where the insureds had allegedly engaged in securities fraud by knowingly making false statements intended to inflate the company's stock price.[9] The Court of Appeal held that the insureds' false statements and purposeful acts were intended to cause damage by artificially altering the price of securities to induce their sale or purchase, and that damage from the manipulation of the security was expected and "highly probable or substantially certain to result."[10]

**1.      Section 533 Bars Coverage for Deliberate Recklessness, the Scienter Standard for 10(b) and 10b-5 Violations.**

*California Amplifier* involved D&O coverage for alleged securities violations under California Corporations Code § 25500. In this case, determining insurability

this section is that, as a matter of public policy, the wrongdoer should not profit from his own wrongdoing or that the wrongdoer should not be indemnified against the effects of his wrongdoing").

[7] *See, e.g., Primary Color Systems Corp. v. Hiscox Ins. Co., Inc.*, 654 F. Supp. 3d 982, 987 (C.D. Cal. 2023), affirmed 2024 WL 489171 (fraud cause of action clearly qualifies as uninsurable willful act under Section 533); *Swiss Re International SE v. Comac Investments, Inc.*, 212 F .Supp. 3d 797, 807 (N.D. Cal 2016) (for purposes of Section 533, a "willful act" includes an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result, not merely acts performed with the intent to cause injury); *Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F.Supp. 597, 605 (N.D. Cal. 1994) (Under Section 533, if an act is inherently harmful, only a showing of intent to engage in the harmful act is required to preclude insurance coverage).

[8] *California Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 94 Cal. App. 4th 102 (Ct. App. 2001), rehearing denied, review denied.

[9] *Id.,* 113 Cal. Rptr. at 926-27.

[10] *Id.*

STATEMENT OF OBJECTIONS TO PROPOSED CLASS SETTLEMENT

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

under Section 533 for claims alleging violations of Securities Exchange Act Section 10(b) and SEC Rule 10b-5 depends on the meaning of scienter under the federal securities laws.[11]

In the 1994 case, *Raychem Corp. v. Fed. Ins. Co.,* the District Court for the Northern District of California considered whether Section 533 precluded D&O coverage in a settlement for damages under Rule 10b–5.  The District Court concluded that coverage of the settlement was permissible under the statute, as scienter in 10b-5 cases could be based on recklessness, and Section 533 permitted coverage for reckless acts.[12]  Notably, the District Court stated that "Section 533 would not *per se* bar insurance coverage for alleged violations of Section 10(b) and Rule 10b–5…. [I]f [insurers] could show that the individual officers and directors made knowing misrepresentations, they might be able to prove that the actions were willful, and hence, invoke the prohibitions of Section 533."[13]  As detailed below in Section B.2, the underlying Complaint in this case is rife with allegations that Defendants made knowing misrepresentations and engaged in a course of fraudulent conduct. Under the District Court's reasoning in *Raychem,* Section 533 would prohibit coverage of the settlement for Defendants' willful acts.

After *Raychem,* the Ninth Circuit Court of Appeals held that, to establish scienter under Section 10(b) and Rule 10b-5, a complaint must allege the defendants "made false or misleading statements either intentionally or with *deliberate* recklessness" (emphasis added).[14]  Allegations of simple recklessness are insufficient in 10b-5 cases; plaintiffs must state specific facts indicating "no less than a degree of recklessness that strongly suggests actual intent."[15]  Indeed, in denying Defendants'

---

[11] *Raychem Corp. v. Federal Ins. Co.,* 853 F.Supp. 1170, 1179 (N.D. Cal. 1994).

[12] *Id.* at 1180.

[13] *Id.*

[14] *Siracusano v. Matrixx Initiatives, Inc.,* 585 F.3d 1167, 1180 (9th Cir. 2009), *aff'd,* 563 U.S. 27 (2011).

[15] *In re Apple Computer, Inc., Sec. Litig.,* 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)

Motion to Dismiss, this Court held "scienter is a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness."[16]

In the context of omissions under Section 10(b) and Rule 10b-5, the Ninth Circuit Court of Appeals defined scienter as a highly unreasonable omission that constitutes "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[17]

The Ninth Circuit scienter standard for alleged violations of Section 10(b) and Rule 10b-5 strongly supports application of Section 533 to bar insurance coverage for the claims in this case. While Section 533 would permit coverage for *reckless* acts, which are not viewed as "willful" under the statute,[18] simple recklessness is a lesser allegation than deliberate recklessness. Coverage of claims involving intentional, deliberate recklessness such as the Section 10(b) and 10b-5 claims here, would violate California's public policy against rewarding wrongdoers for their misconduct.

## 2. Defendants' Conduct Was Deliberately Reckless and is Therefore Uninsurable.

The Complaint effectively pleads scienter under the Ninth Circuit's standard, and portrays Defendants' conduct not only as willful but as egregious. The Complaint offers substantial evidence to support Defendants' deliberate and fraudulent course of conduct, motivated by personal financial gain:

> Defendants were deliberately capitalizing on rampant student cheating on Chegg's platform— which was the real reason for the Company's dramatic

---

[16] *Leventhal v. Chegg, Inc.,* 721 F. Supp. 3d 1003, 1015 (N.D. Cal. 2024), *reconsideration denied*, 2024 WL 3447516 (N.D. Cal. July 17, 2024).

[17] *Siracusano,* 585 F.3d at 1180. *See also Leventhal*, 721 F. Supp.3d at 1016 ("[T]o establish a strong inference of deliberate recklessness, the plaintiff must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it").

[18] *See J. C. Penney Cas. Ins. Co. v. M. K.,* 52 Cal. 3d 1009, 1021 (Cal. 1991) (Section 533 does not preclude coverage for acts that are negligent or reckless).

Elkins Kalt Weintraub Reuben Gartside LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

growth during the Class Period.[19]

[T]here is no question that Defendants were aware that it was far more than an 'extremely small portion' of Chegg's users who were using its services to cheat during the Class Period, as they had represented to investors. The stark, obvious reality of students' clear rampant use of Chegg to cheat—and Defendants' repeated statements stating the exact opposite— is highly probative of Defendants' scienter.[20]

Plaintiffs' allegations support a strong inference of fraudulent intent on the part of the Defendants or, at the very least, the strong inference that Defendants' conduct was highly unreasonable and an extreme departure from standards of ordinary care. In either case, Lead Plaintiffs have adequately pled scienter.[21]

Accordingly, Defendants were highly motivated to perpetuate the fraud to capitalize on Chegg's artificially inflated share price, which they knew was almost certain to plummet once remote learning ended. The extensive insider selling by the Individual Defendants and other senior officers and directors during the Class Periods adds to the strong scienter inference.[22]

This Court previously denied the Defendants' Motion to Dismiss the underlying class action, in part, on the grounds that the Complaint pled "particularized facts that support a strong inference of scienter as to Chegg's knowledge about cheating on its platform."[23]

In stark contrast to the Complaint, the Class Notice and briefing for Preliminary Approval of Class Action Settlement are devoid of reference to Defendants' alleged recklessness, fraudulent intent, or any mental state at all. Relying solely on those documents, members of the Settlement Class[24] might be unaware of the egregiousness of Defendants' alleged misconduct.

---

[19] Complaint at ¶ 214.

[20] Complaint at ¶ 265.

[21] Complaint at ¶ 300.

[22] Complaint at ¶ 299.

[23] *Leventhal,* 721 F. Supp.3d at 1017.

[24] The term "Settlement Class," as used here, has the same meaning as defined in the Class Notice. *See* Class Notice at 1.

STATEMENT OF OBJECTIONS TO PROPOSED CLASS SETTLEMENT

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Nevertheless, the determination whether Section 533 precludes coverage requires the Court to evaluate the allegations in the Complaint – not the language of a settlement agreement, which could be recast to portray Defendants as innocents.[25] Just as insurers may not recharacterize negligent conduct as intentional to deny coverage, the Defendants' intentional conduct may not be recharacterized as merely negligent to obtain coverage.[26] The Complaint sufficiently establishes that Defendants engaged in "willful acts," as required by Section 533, and with "deliberate recklessness," as required by Section 10(b) and Rule 10b-5. Defendants' conduct is therefore uninsurable, and it would violate California public policy for the D&O Insurers[27] to fund the Proposed Settlement.

## C.    Section 533 Bars Coverage of the Proposed Settlement.

In keeping with California's public policy against insuring against willful acts, Section 533 bars coverage of settlements - without adjudication of insureds' misconduct - where, as here, Defendants allegedly engaged in willful acts. To determine whether Section 533 applies to settlements, courts examine the allegations in the underlying complaint, regardless of whether there has been an adjudication of the allegations.[28]

In a recent unpublished decision, the Ninth Circuit Court of Appeals held that Section 533 barred coverage of a class action settlement, absent adjudication of the

---

[25] *See, e.g., Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1602, 18 Cal. Rptr. 2d 692, 697 (Ct. App. 1993), *as modified on denial of reh'g* (May 12, 1993) (review of claimants' sexual harassment allegations showed no credible evidence that the alleged wrongful conduct could be anything other than intentional and willful; "just as we cannot allow insurers to recharacterize negligent conduct as intentional, we cannot allow the insured to recast intentional conduct as merely negligent").

[26] *Id.*

[27] The term "D&O Insurers," as used here, has the same meaning as defined in the Class Notice. *See* Class Notice at 6.

[28] *See, e.g., California Amplifier,* 113 Cal. Rptr. 2d at 919-20 (where insureds settled lawsuit alleging that they engaged in stock manipulation in violation of California Corporations Code § 25500, "coverage is precluded by Insurance Code § 533 as a matter of law" because "a defendant must knowingly and intentionally make a false or misleading statement to be liable under [Corporations Code] section 25500").

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

defendants' underlying acts, as the claim involved categorically willful conduct.[29] This decision follows a line of California cases where Section 533 precluded coverage for class action settlements where the complaint alleged essentially willful acts.[30]

As discussed above, claims for violation of Section 10(b) and Rule 10b-5 involve "false or misleading statements either intentionally or with *deliberate* recklessness" (emphasis added).[31]  Allegations of simple recklessness are insufficient in these cases; plaintiffs must state specific facts indicating "no less than a degree of recklessness that strongly suggests actual intent."[32]

As this Court previously held when denying the Motion to Dismiss, the allegations in the Complaint, construed on their face, satisfy the scienter requirement of Section 10(b) and Rule 10b-5. Defendants' conduct was characterized as fraudulent, intentionally deceptive, and, at a minimum, an "extreme departure from the standards of ordinary care," presenting a "danger of misleading securities buyers or sellers that was either known to the Defendants or so obvious that the Defendants must have been aware of it."[33]  As a matter of law, Section 533 bars coverage for these willful acts and warrants rejection of the Proposed Settlement.[34]

---

[29] *Aspen Specialty Ins. Co. v. Miller Barondess, LLP,* No. 22-55032, 2023 WL 2523841, *1-2 (9th Cir. Mar. 15, 2023).

[30] *See, e.g., California Amplifier,* 113 Cal. Rptr. 2d at 919-20; *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal.App.4th 928, 953-954, 2 Cal. Rptr. 3d 135, 153-54 (Ct. App. 2003) (under Section 533, barring coverage of settlement before adjudication of liability because the complaint on its face alleged a "willful act"); *Coit Drapery*, 18 Cal. Rptr. 2d 692, 695  (court reviewed allegations of the complaint and held that coverage for the settlement was barred by Section 533, as there was "no credible argument that this alleged wrongful conduct could be anything other than intentional and willful").

[31] *Siracusano v. Matrixx Initiatives, Inc.,* 585 F.3d 1167, 1180 (9th Cir. 2009), *aff'd,* 563 U.S. 27 (2011).

[32] *In re Apple Computer, Inc., Sec. Litig.,* 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002).

[33] *Siracusano,* 585 F.3d at 1180. *See also Leventhal*, 721 F. Supp. 3d at 1016 ("[T]o establish a strong inference of deliberate recklessness, the plaintiff must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it").

[34] *See California Amplifier,* 113 Cal. Rptr. 2d at 919-20 (where insureds settled lawsuit alleging they engaged in stock manipulation, Section 533 barred coverage of the settlement as a matter of law because "a defendant must knowingly and intentionally make a false or misleading statement to be liable under [Corporations Code] section 25500").

## II.    THE PROPOSED SETTLEMENT IMPERMISSIBLY REWARDS DEFENDANTS' MISCONDUCT

### A.    Under the Proposed Settlement, Defendants Would Pay Nothing After They Profited from Harming Investors.

The Complaint alleges that Defendants, individually and in concert, engaged in a "continuous course of conduct that operated as a fraud and deceit upon Lead Plaintiffs and the other members of the Class."[35]  The Complaint contains substantial evidence to establish that Defendants' misrepresentations and omissions were intended to, and did: "(a) deceive the investing public, including Lead Plaintiffs and the other members of the Class…; (b) artificially inflate and maintain the market price of Chegg stock; and (c) cause Lead Plaintiffs and the other members of the Class to purchase the Company's common stock at artificially inflated prices, and to suffer losses when the true facts became known."[36]

The Complaint also persuasively alleges that Defendants engaged in their fraudulent course of conduct to perpetrate a high-level pump and dump scheme, where Chegg officers, directors, and other insiders sold their personal Chegg shares at inflated prices totaling nearly $100 million in gross proceeds. Of this amount, Defendants Rosensweig and Schultz alone realized a staggering $74.5 million.[37] More specifically:

> With the stock price inflated as a result of the Defendants' false and misleading statements, Defendant Rosensweig sold more than 550,000 shares, or nearly 30% of his Chegg holdings, for proceeds of $49.5 million. Defendant Schultz sold over 340,000 shares, nearly a staggering 90% of his Chegg holdings, for proceeds of nearly $25 million.[38]

> The over 2.2 million shares sold by Defendants Rosensweig and Schultz during the Class Period—for over $74 million in proceeds—were highly unusual in both amount and timing. For instance, on February 18, 2021, mere days after Chegg's stock price reached its Class Period and record high of $113.51 on

[35] Complaint at ¶ 316.

[36] Complaint at ¶ 316.

[37] Complaint at ¶ 294.

[38] Complaint at ¶ 295.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400  •  Facsimile: 310.746.4499

STATEMENT OF OBJECTIONS TO PROPOSED CLASS SETTLEMENT

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

February 12, 2021, Defendant Rosensweig sold 300,000 shares of Chegg stock for more than $30 million, his largest sale ever. Similarly, Defendant Schultz sold more than 140,000 shares of Chegg stock between December 2020 and April 2021, when Chegg shares traded above $90 per share. Following these sales, the price of Chegg's common stock steeply declined, falling by approximately 70% to close at $32.12 at the end of the Class Period.

Moreover, at the same time Chegg's insiders were dumping their stock, Defendants caused the Company to repurchase hundreds of millions of dollars' worth of Chegg shares, initiating a $500 million stock buyback on June 16, 2020, which was completed on December 31, 2021, thus further inflating the stock price and Defendants' illicit insider trading profits.[39]

Despite Defendants' "staggering" profits from the alleged fraudulent scheme, the Proposed Settlement would require the D&O Insurers to fund the entire settlement amount,[40] with no contribution from Defendants, no admission of wrongdoing, and with full dismissal and release of any current or future claims against the Defendants.[41]  Such an unfair result necessitates application of Section 533 to prevent the Defendants from reaping the unlawful rewards of their willful acts.

**B.      Approval of the Proposed Settlement Leaves Defendants Undeterred from Engaging in Future Misconduct and Further Harming Investors.**

Given that Defendants face no accountability in the Proposed Settlement, it is unsurprising that Defendant Rosensweig still holds a position as Executive Chairman of Chegg.[42]  More surprising is the fact that Defendant Schultz was recently *promoted* to CEO of Chegg and appointed to the Company's Board of Directors.[43]  As these Defendants continue to occupy controlling positions within the

---

[39] *Id*. at ¶ 297-98.

[40] Class Notice at ¶¶ 2, 47.

[41] Class Notice at ¶ 35.

[42] *See* Chegg, Inc., SEC Form 10-K (filed Feb. 24, 2025) ("Chegg 10-K"), Executive Chairman Agreement at Ex. 10.01, available at https://www.sec.gov/Archives/edgar/data/1364954/000136495424000042/ex10012024-03x31.htm. (last visited March 27, 2025)

[43] *Id.,* Employment Agreement at Ex. 10.02.

STATEMENT OF OBJECTIONS TO PROPOSED CLASS SETTLEMENT

company, the Proposed Settlement leaves them undeterred from future misconduct that may again harm the company and its shareholders.

Notably, in October 2024 Australia's Tertiary Education Quality and Standards Agency (TEQSA) initiated a regulatory action against Chegg for multiple breaches of a 2020 anti-cheating law that makes it illegal to provide or advertise academic cheating services to students.[44]  This marked the first time the agency initiated proceedings for alleged contraventions of the academic cheating law.[45] TEQSA alleged Chegg breached the anti-cheating law five times across 2021 and 2022, and stated the agency took action after "receiving concerns from multiple institutions about Chegg's operations in Australia."[46] In the action, TEQSA seeks "declarations about the alleged contraventions, civil penalties, costs and other orders" from the Federal Court of Australia.[47]

In response to TEQSA's allegations, Chegg predictably denied that its platform is used for cheating.[48] To note, Chegg's most recent Form 10-K filed with the SEC does not reference the TEQSA action. Rather, it merely states: "TEQSA *may* apply under section 127A to the Federal Court for an injunction requiring carriage service providers to take steps to disable access to websites" found to violate the law, and that the law "provides for other financial or custodial penalties where an offense is proven."[49] (emphasis added).

---

[44] *See* Press Release, TEQSA, *TEQSA commences legal proceedings against Chegg* (Oct. 8, 2024), available at https://www.teqsa.gov.au/about-us/news-and-events/latest-news/teqsa-commences-legal-proceedings-against-chegg (last visited March 27, 2025).

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *See* Ross, John, Inside Higher Ed, *Chegg Accused of Breaching Australia's Anti-Cheating Law (*Oct. 11, 2024), available at https://www.insidehighered.com/news/tech-innovation/teaching-learning/2024/10/11/chegg-accused-breaching-australias-anti-cheating. (last visited March 26, 2025.)

[49] Chegg 10-K at 9.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

The allegations in the instant Complaint clearly indicate that Defendants Rosensweig and Schultz, still at the helm of the company, cannot be trusted to handle the Australian investigation or other company business with integrity. This is particularly true where both Defendants intentionally made material misstatements and omissions about rampant cheating on Chegg's online platforms to further enrich themselves. Mishandling of the Australian regulatory action could result in civil penalties or costs, and could significantly impact or even forestall Chegg's business operations in Australia. If accepted by the Court, the Proposed Settlement would endorse Defendants' leadership of the company, even where their personal interests sharply diverge from those of Chegg and its shareholders.

## III.   THE PROPOSED SETTLEMENT IS UNFAIR, UNREASONABLE, AND SHOULD BE DENIED

The Proposed Settlement, taken as whole, must be examined for overall fairness, and it must stand or fall in its entirety.[50]  As detailed above, the Proposed Settlement violates California's longstanding public policy against insuring willful acts. If approved, the Proposed Settlement would effectively reward Defendants' misconduct, releasing all claims against them without any monetary or other contribution toward the settlement. Moreover, Defendants' continued control of Chegg – despite their obvious conflicts of interest – leaves them in a position to harm the company and its shareholders again in the future. For the foregoing reasons, the Proposed Settlement is not fair, as required by Federal Rule 23(e)(2). Application of Section 533 precludes coverage of the Defendants' willful acts and requires that the Proposed Settlement be denied.

The objector is aware that denying the Proposed Settlement might unintentionally result in a future settlement or damages of lesser value than $55 million. However, the public policy codified in Section 533 requires wrongdoers to

---

[50] *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003)

bear the burden and fees arising from their intentional acts and prohibits them from passing that burden to their insurer.[51]  The parties to this action may not contract or settle around this fundamental principle. As a matter of California law, the D&O Insurers may not fund the Proposed Settlement for the Defendants' willful violation of the federal securities laws.

## IV.    NOTICE OF INTENTION TO APPEAR

Counsel for Mr. Fieldman is submitting a Notice of Intention to Appear at the Settlement Hearing on his behalf (*see* Notice of Intention to Appear, attached as Exhibit B).

DATED:  March 27, 2025

*/s/ Ethan Fieldman*

Ethan Fieldman
2510 NW 16th Ave.
Gainesville, FL 32605
T: (352) 246-3842

DATED:  March 27, 2025

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By:  *Angela Butcher*

JEFFREY K. RIFFER
ANGELA M. BUTCHER
Attorneys for Objector Ethan Fieldman

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

---

[51] *Combs v. State Farm Fire & Casualty Co.,* 49 Cal. Rptr. 3d 917, 923-924, 143 Cal. App. 4th 1338, 1346-1347 (Ct. App. 2006) (denying insurance coverage for willful acts may limit the recovery of victims of intentional misconduct, but the public policy behind Section 533 requires that the burden of paying such fees be borne by the intentional wrongdoer and not by the wrongdoer's insurance carrier).

# EXHIBIT A



| **Account Number** | XXXXXX742 | **Account Name** | Mr. Ethan Henry Fieldman |
| --- | --- | --- | --- |
| **CUSIP** | 163092109 | **Product Description** | CHEGG, INC. CMN |

| Trade Date | Transaction Type | Quantity | Price | Principal Amount | CUSIP |
| --- | --- | --- | --- | --- | --- |
| May 05 2020 | Beginning Position | 0.00 | | | 163092109 |
| Feb 26 2021 | BUY | 10.00 | 96.53 | (965.33) | 163092109 |
| Mar 03 2021 | BUY | 5.00 | 76.41 | (382.06) | 163092109 |
| Apr 30 2021 | SALE | (10.00) | 90.97 | 909.63 | 163092109 |
| May 07 2021 | SALE | (5.00) | 73.29 | 366.42 | 163092109 |
| Jun 11 2021 | BUY | 5.00 | 76.41 | (382.06) | 163092109 |
| Sep 24 2021 | SALE | (5.00) | 73.29 | 366.42 | 163092109 |
| Jan 28 2022 | Ending Position | 0.00 | | | 163092109 |

DISCLOSURES: This information is provided at your request as an accommodation to you in the review of your investment activity. This material is based upon information included in our records and/or information received from you and/or a third party. It is not an official report nor in a form customarily provided to our clients nor is it maintained in such a format by us as part of our official books and records. We do not represent that such information is accurate or complete and it should not be relied upon as such. Prices shown in the material do not necessarily reflect realizable values. In the event of any discrepancy between the information contained herein and the information contained in your monthly account statements at Goldman Sachs or another institution, the latter shall govern. Please immediately notify your Private Wealth Advisor of any discrepancies. Information and opinions are as of the date of this material only and are subject to change without notice. Please note that this report may include accounts that do not qualify for the applicable Class Period, as defined in the Proof of Claim and Release Form (the "Form") relating to the positions described herein, but may hold positions relevant to the 90-Day Look-Back Period, as defined in the Form.Goldman Sachs does not provide tax or legal advice or advise clients on securities class actions. All investors are strongly urged to consult with their own advisors regarding any potential strategy or investment. Services offered through Goldman, Sachs & Co. Member SIPC/FINRA. © Copyright 2020, The Goldman Sachs Group, Inc. All rights reserved.



| | | | | | |
|---|---|---|---|---|---|
| **Account Number** | XXXXXX130 | | **Account Name** | | Mr. Ethan H Fieldman & Ashley Fieldman<br>Ten Ent |
| **CUSIP** | 163092109 | | **Product Description** | | CHEGG, INC. CMN |

| Trade Date | Transaction Type | Quantity | Price | Principal Amount | CUSIP |
|---|---|---|---|---|---|
| May 05 2020 | Beginning Position | 0.00 | | | 163092109 |
| Oct 11 2021 | BUY | 10.00 | 63.14 | (631.43) | 163092109 |
| Dec 20 2021 | SALE | (10.00) | 29.78 | 297.77 | 163092109 |
| Jan 28 2022 | Ending Position | 0.00 | | | 163092109 |

DISCLOSURES: This information is provided at your request as an accommodation to you in the review of your investment activity. This material is based upon information included in our records and/or information received from you and/or a third party. It is not an official report nor in a form customarily provided to our clients nor is it maintained in such a format by us as part of our official books and records. We do not represent that such information is accurate or complete and it should not be relied upon as such. Prices shown in the material do not necessarily reflect realizable values. In the event of any discrepancy between the information contained herein and the information contained in your monthly account statements at Goldman Sachs or another institution, the latter shall govern. Please immediately notify your Private Wealth Advisor of any discrepancies. Information and opinions are as of the date of this material only and are subject to change without notice. Please note that this report may include accounts that do not qualify for the applicable Class Period, as defined in the Proof of Claim and Release Form (the "Form") relating to the positions described herein, but may hold positions relevant to the 90-Day Look-Back Period, as defined in the Form.Goldman Sachs does not provide tax or legal advice or advise clients on securities class actions. All investors are strongly urged to consult with their own advisors regarding any potential strategy or investment. Services offered through Goldman, Sachs & Co. Member SIPC/FINRA. © Copyright 2020, The Goldman Sachs Group, Inc. All rights reserved.

# EXHIBIT B

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
JEFFREY K. RIFFER, State Bar No. 87016
 *jriffer@elkinskalt.com*
ANGELA M. BUTCHER, State Bar No. 242759
 *abutcher@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Attorneys for Objector Ethan Fieldman

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br>**NOTICE OF INTENTION TO APPEAR AT THE HEARING ON MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Date: April 24, 2025<br>Time: 10:00 a.m.<br>Place: 280 South First Street<br>　　　Courtroom 8, 4th Floor<br>　　　San Jose, CA  95113<br><br>Judge:  P. Casey Pitts |

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE NOTICE** that the undersigned, Angela M. Butcher, on behalf of Objector Ethan Fieldman, wishes to appear at the hearing on the Motion for Approval of Settlement and Plan Allocation scheduled to be heard on April 24, 2025 at 10:00 a.m., at the above-referenced courthouse.

DATED:  March 27, 2025         ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By: _____
ANGELA M. BUTCHER
Attorneys for Objector Ethan Fieldman

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499