**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of all Others Similarly Situated, | Case No. 5:21-cv-09953-PCP |
| | CLASS ACTION |
| Plaintiff, | REPLY MEMORANDUM IN FURTHER SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES |
| vs. | |
| CHEGG, INC., DANIEL L. ROSENWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ, | |
| Defendants. | Hearing Date: April 24, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8<br>Judge: Hon. P. Casey Pitts |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    THE REACTION OF THE SETTLEMENT CLASS STRONGLY SUPPORTS
APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION.......................2

     A.    The Near-Total Absence of Objections and Requests for Exclusion
Demonstrate The Settlement Class's Strong Support For the Proposed
Settlement ...........................................................................................................2

     B.    The Sole Objection to the Proposed Settlement Is Meritless..................................4

          1.    Objector Fails To Establish His Standing To Object..................................4

          2.    Objector Fails to Establish that the Settlement is Not "Fair,
Reasonable, and Adequate" Under Rule 23(e) ........................................5

          3.    Objector's Arguments Under California Insurance Code Section
533 Are Meritless...................................................................................8

III.   THE REACTION OF THE SETTLEMENT CLASS STRONGLY SUPPORTS
APPROVAL OF THE REQUESTED ATTORNEYS' FEES AND EXPENSES ...........13

IV.   CONCLUSION.................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

2

3   *Aspen Specialty Insurance Co. v. Miller Barondess, LLP*,
        2023 WL 2523841 (9th Cir. Mar. 15, 2023)..................................................... 11

4   *Bleavins v. Demarest*,
        196 Cal. App. 4th 1533 (2011) ................................................................................ 8
5

6   *California Amplifier, Inc. v. RLI Insurance Co.*,
        94 Cal. App. 4th 102 (2001) .................................................................................. 11

7   *Certain Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co., LLC*,
        77 Cal. App. 5th 729 (2022) .................................................................................. 10
8

9   *Class Pls. v. City of Seattle*,
        955 F.2d 1268 (9th Cir. 1992) .......................................................................... 6, 7, 11

10  *Destefano v. Zynga, Inc.*,
        2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................................... 4, 14
11

12  *Douglass v. Jones*,
        422 So. 2d 352 (Fla. 5th DCA 1982) ....................................................................... 5

13  *Downey Venture v. LMI Ins. Co.*,
        66 Cal. App. 4th 478 (1998) ............................................................................. 9, 11
14

15  *Fleming v. Impax Labs. Inc.*,
        2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................... 3

16  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) .............................................................................. 3
17

18  *Raychem Corp. v. Fed. Ins. Co.*,
        853 F. Supp. 1170 (N.D. Cal. 1994) ................................................................ 10, 13

19  *In re Amgen Inc. Sec. Litig.*,
        2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................................ 5
20

21  *In re Banc of Cal. Sec. Litig.*,
        2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ....................................................... 14

22  *In re Bluetooth Headset Prods. Liab. Litig.*,
        654 F.3d 935 (9th Cir. 2011) ................................................................................ 6
23

24  *In re Cendant Corp. Litig.*,
        264 F.3d 286 (3d Cir. 2001)................................................................................... 7

25  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369. 385 (S.D.N.Y. 2013) ................................. 7

26  *In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
        2023 WL 8443230 (N.D. Cal. Oct. 10, 2023)........................................................ 6
27

28  *In re Facebook, Inc. Internet Tracking Litig.*,
        2024 WL 700985 (9th Cir. Feb. 21, 2024) ............................................................ 3

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*,
   33 F.3d 29 (9th Cir. 1994) ..................................................................................... 5

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 7

*In re Hinton*,
   378 B.R. 371 (Bankr. M.D. Fla. 2007) ................................................................. 5

*In re Lehman Brothers Sec. & ERISA Litig.*,
   2012 WL 1920543 (S.D.N.Y. May 24, 2012) ....................................................... 7

*In re Omnivision Techs. Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008)............................................. 13, 14

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 29, 2020) ....................................................... 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ...................................................... 3

*In re Warner Commc'n Sec. Litig.*,
   798 F.2d 35 (2nd Cir. 1986).................................................................................. 7

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ................................................................. 4

*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012) ............................................................. 11

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014)....................................................... 3

*Lerma v. Schiff Nutrition Int'l, Inc.*,
   2015 WL 11216701 (S.D. Cal. Nov. 3, 2015) .................................................... 11

*Leventhal v. Chegg, Inc.*,
   2024 WL 3447516 (N.D. Cal. July 17, 2024)..................................................... 10

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ............................................................................................. 10

*Off. Depot, Inc. v. AIG Specialty Ins. Co.*,
   722 F. App'x 745 (9th Cir. 2018) ......................................................................... 8

*Otay Land Co. v. Royal Indem. Co.*,
   169 Cal. App. 4th 556 (2008) ........................................................................... 8, 9

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
   12 Cal. App. 4th 715 (1993) ................................................................................. 9

*Studley v. Benicia Unified Sch. Dist.*,
   230 Cal. App. 3d 454 (1991) ............................................................................. 10

*Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*,
    457 F.3d 1106 (9th Cir. 2006) ............................................................. 12

*Upper Skagit Indian Tribe v. Sauk-Suiattle Indian Tribe*,
    66 F.4th 766 (9th Cir. 2023) ................................................................. 10

**<u>RULES</u>**

Fed. R. Civ. P. 23(e)(2) ............................................................................... 7

**<u>STATUTES</u>**

Cal. Ins. Code § 533 .......................................................................... passim

**<u>OTHER AUTHORITIES</u>**

Bernard Black et al., *Outside Director Liability*,
    58 STAN. L. REV. 1055 (2006) ............................................................. 13

Couch on Insurance, 3d § 104:6 (2021) ...................................................... 9

James D. Cox, *Making Securities Fraud Class Actions Virtuous*,
    39 ARIZ. L. REV. 497 (1997) ........................................................ 12, 13

1    Pursuant to Rules 23(e) and 54 of the Federal Rules of Civil Procedure, Lead Plaintiffs and

2    Lead Counsel submit this reply brief in further support of their motions for (a) Final Approval of

3    Settlement and Plan of Allocation (ECF No. 193) ("Final Approval Motion"), and (b) an Award

4    of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 194) ("Fee and Expense

5    Motion") (together, the "Motions").[1]

6    ## I.    INTRODUCTION

7    As set forth in Lead Plaintiffs' Motions, the Settlement is an extraordinary result for Chegg

8    shareholders.  The $55 million all-cash recovery is multiples greater than the average recovery in

9    similar cases—indeed, it would have ranked in the ***top 15%*** of ***all*** securities class action settlements

10    between 2014-2022.  The Settlement is the product of hard-fought litigation by sophisticated

11    plaintiffs represented by qualified and able counsel, and robust arm's-length negotiations overseen

12    by a highly experienced mediator and former United States District Court Judge.  Beyond its sheer

13    size, the Settlement represents a favorable result for the Class when considering the substantial

14    challenges that Lead Plaintiffs would have faced in proving liability and damages.  As explained

15    in the Final Approval Motion, the Class's ability to prevail on its claims against Defendants was

16    highly uncertain, with dismissal of some or all of the claims a strong possibility.  Notably, no

17    governmental authority has brought a securities enforcement action against Defendants or even

18    opened an investigation.  Further, given Chegg's limited assets, precarious financial condition, and

19    wasting insurance, even if Lead Plaintiffs prevailed at trial, the Settlement Class would likely ***not***

20    have recovered more than the $55 million Settlement—but rather far ***less***.

21    Now, the overwhelmingly favorable reaction of the Settlement Class in support of the

22    proposed $55 million Settlement further confirms that it is fair, reasonable, and adequate, and

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Motions, the Stipulation and Agreement of Settlement dated November 5, 2024 ("Stipulation"; ECF No. 189-2) and the Declaration of David R. Kaplan and Christopher F. Moriarty in Support of the Motions ("Joint Declaration" or "Joint Decl."; ECF No. 195).  Citations herein to "¶ __" refer to paragraphs in the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"; ECF No. 192).  "Supp. Brauns Decl." refers to the Supplemental Declaration of Kathleen Brauns, dated April 10, 2025, filed contemporaneously herewith.

merits final approval.  Following a comprehensive Court-approved notice program pursuant to which notice was provided to over 93,000 potential Settlement Class Members, and following the March 27, 2025 deadline for submitting objections and requests for exclusion, only one objection to the Settlement has been received.  The sole objection, by an individual claiming to have purchased only **ten** damaged shares and who has not established his standing to object, raises meritless arguments that he concedes would **reduce or eliminate** the Settlement Class's recovery here, turning the Rule 23(e) analysis on its head.  For the reasons explained below, the lone objection should be overruled.  Further, no objections have been made to the Plan of Allocation or Lead Counsel's request for attorneys' fees and reimbursement of litigation expenses.  Finally, only five requests for exclusions have been received, representing a *de minimus* number of shares, with **none** lodged by an institutional investor.[2]  *Id.*

Accordingly, the near-total absence of objections and opt-outs establish that the Settlement Class strongly supports granting the Motions in their entirety.  Lead Plaintiffs and Lead Counsel respectfully request the Court grant the Final Approval and Fee and Expense Motions.

## II.    THE REACTION OF THE SETTLEMENT CLASS STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION

### A.    The Near-Total Absence of Objections and Requests for Exclusion Demonstrate The Settlement Class's Strong Support For The Proposed Settlement

As set forth in Lead Plaintiffs' Final Approval Motion, the proposed Settlement and Plan of Allocation are fair, adequate, and reasonable, and therefore satisfy each of the well-established factors courts consider when evaluating a class-action settlement for final approval.  But now that the time has passed for objecting to the Settlement or requesting exclusion from the Class, after over 93,000 potential Class Members were notified of the Settlement, the fact that only a single

---

[2]  The Settlement Class includes approximately 84 million damaged shares, of which 90% are estimated to be held by institutional investors.  *See* Joint Decl. ¶ 83; Final Approval Mot. at 20.

1    objection and five opt outs have been lodged, by individual investors with relatively small claims,

2    provides further support for granting final approval.[3]  *See* Supp. Brauns Decl. at ¶ 10.

3        Courts in this District and within the Ninth Circuit uniformly hold that this degree of

4    favorable reaction from the class strongly supports approval of a proposed class action settlement.

5    *See In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024)

6    (affirming approval where class's "favorable" reaction, including the "absence of a large number

7    of objections," raised a "strong presumption" that the settlement terms were favorable to the class

8    (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998))); *In re Volkswagen "Clean*

9    *Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 17730381, at *9, 11 (N.D. Cal. Nov.

10   9, 2022) (finding the reaction of the class "strongly favors approval of the settlement" where there

11   were "only twenty-seven opt-outs" and "three objections"—"a tiny percentage of the overall

12   class"); *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) ("[T]he

13   absence of a large number of objections to a proposed class action settlement raises a strong

14   presumption that the terms of a proposed class settlement action are favorable to the class

15   members").  Put another way, a "court may appropriately infer that a class action settlement is fair,

16   adequate, and reasonable when few class members object to it."  *Larsen v. Trader Joe's Co.*, 2014

17   WL 3404531, at *5 (N.D. Cal. July 11, 2014).

18       Notably, institutional investors held approximately 94% of Chegg's public float, on

19   average, and are estimated to represent approximately 90% of all damaged shares—and ***none***

20   determined any objection or request for exclusion was warranted here.  *See* Final Approval Mot.

21   at 20; Supp. Brauns Decl. at ¶ 10.   Where "[m]any potential class members are sophisticated

22   institutional investors," the "lack of objections from such institutions indicates that the settlement

23   is fair and reasonable."  *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D.

24   Cal. Oct. 29, 2020).  The complete absence of any objections or opt out requests from institutional

25   _____

26   [3] Lead Counsel received a total of six request for exclusion, one of which was subsequently
     withdrawn.  The five remaining requests for exclusion represent a total of nine shares, based on
27   documentation provided to the Claims Administrator.  *See* Supp. Brauns Decl. at 2, n. 2. Even if
     all nine shares were damaged, they would account for less than one ten-millionth of the Settlement
28   Class, as estimated by Lead Plaintiffs' financial expert.

1    investors here is therefore particularly probative of the Settlement's fairness.  *See In re Wells Fargo*

2    *& Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 518 (N.D. Cal. 2020) (the class's reaction

3    supported settlement where "not one sophisticated institutional investor objected"); *Destefano v.*

4    *Zynga, Inc.*, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (finding that lack of opt-outs from

5    institutional investors "strongly supports" final approval of settlement).

6    Accordingly, the overwhelmingly favorable reaction of the Settlement Class reinforces the

7    Settlement's fairness under Rule 23(e)(2).

8    **B.    The Sole Objection to the Proposed Settlement Is Meritless**

9    Only one objection to the Settlement was timely submitted and, as discussed below, it lacks

10    any merit.  The sole objection to the proposed Settlement was submitted by individual investor

11    and Florida resident Ethan Henry Fieldman ("Objector"), who purports to have purchased and sold

12    twenty Chegg shares in his own account during the Class Period, and purchased ten shares in a

13    joint account with another individual, Ashley Fieldman, who did not join his objection.  *See* ECF

14    No. 196 ("Objection") at 12-13.[4]

15    **1.    Objector Fails To Establish His Standing To Object**

16    As an initial matter, Objector has not established he has standing to object to the Settlement.

17    Objector purports to have purchased and sold twenty Chegg shares in his own account during the

18    Class Period.  However, as confirmed by the Claims Administrator, none of those twenty shares

19    were submitted in the form of a claim, and even if they had been, none suffered any recognizable

20    loss under the Court-approved Plan of Allocation and thus were not damaged, meaning they fall

21    outside the Settlement Class.  *See* Supp. Brauns Decl. at ¶ 13.  Objector thus has no standing to

22

23    ────────────────
[4] Objector is the founder of an education technology company that appears to be a possible
competitor of Chegg.  *See, e.g.*, FORBES, *The Biggest Education Company You've Never Heard Of*
24    (Aug. 29, 2020) (describing "Study Edge, the company Fieldman founded," which "makes videos,
instructional    videos    in    math,    science    and    business    courses"),    *available    at*
25    www.forbes.com/sites/dereknewton/2020/08/29/the-biggest-education-company-youve-never-
heard-of/.  Given Objector's *de minimis* investment in a competitor company, counsel for Objector
26    should be prepared to answer any questions the Court may have regarding why Objector invested
as he did in Chegg, including if those purchases were made for potential litigation purposes, and
27    any other potential ulterior motives for objecting to the Settlement and attempting to foreclose
28    from the Class the compensation it provides.

object to the Settlement by virtue of his twenty individually purchased shares.  *See In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) ("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *5 (C.D. Cal. Oct. 25, 2016) (noting that because individual "sold" shares "before the first [corrective] disclosure in this case," they "have not shown that they were aggrieved by [defendants'] conduct" and thus "lack standing to object to the settlement").

As for the remaining *ten* shares jointly owned with Ashley Fieldman—who did ***not*** join in this objection—Objector's documentation indicates these shares were purchased and continue to be held as "tenants by the entirety" ("Ethan H Fieldman & Ashley Fieldman Ten Ent").  *See* Obj. Ex. A.  Under Florida law, both spouses are treated as a single legal entity, and neither spouse can act unilaterally regarding the jointly held property.  *See In re Hinton*, 378 B.R. 371, 377 (Bankr. M.D. Fla. 2007) ("Property held by a married couple as tenants by the entireties belongs to neither spouse individually."); *Douglass v. Jones*, 422 So. 2d 352, 354-55 (Fla. 5th DCA 1982) ("It is well settled in Florida that an estate by the entireties is vested in the husband and wife as one person, and neither spouse can [take actions regarding] any part of the estate without the consent of the other.").  Thus, Objector has not established his standing to object to the Settlement, and any attempt to supplement his objection by including Ashley Fieldman at this late juncture would be untimely.

### 2.    Objector Fails to Establish that the Settlement is Not "Fair, Reasonable, and Adequate" Under Rule 23(e)

Not only does the Objector lack standing, he ***concedes*** the $55 million Settlement is "fair, reasonable, and adequate" when analyzed under the applicable legal standards.  Indeed, his contention that "the proposed settlement is unfair, unreasonable, and should be denied" under "Federal Rule 23(e)(2)" (Obj. at 12-13) contains no meaningful analysis whatsoever of the factors the Court must consider in its final approval inquiry, and Objector instead attempts to manufacture a new factor that the Ninth Circuit and courts nationwide have explicitly rejected.

As set forth in Lead Plaintiffs' Final Approval Motion, to determine whether a settlement agreement meets Rule 23(e)(2)'s standards, courts in the Ninth Circuit must consider: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also* Final Approval Mot. at 4-6 (setting forth these and other relevant factors and explaining why they are amply satisfied by the Settlement). Where, as here, such factors are met, the settlement should be approved consistent with the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 8443230, at *3 (N.D. Cal. Oct. 10, 2023) (quoting *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Objector essentially ignores these established factors. His submission never directly rebuts the arguments supporting approval contained in the Final Approval Motion and ***admits*** that denying approval "might unintentionally result in a future settlement or damages of lesser value than $55 million." Obj. at 12. He instead bases his objection on two misguided assertions: (i) the Individual Defendants are not personally contributing to the Settlement, despite their alleged insider trading proceeds (Obj. § II); and (ii) the Settlement purportedly violates California' "public policy against insuring willful acts" as provided in California Insurance Code Section 533 ("Section 533"), which "requires wrongdoers to bear the burden and fees arising from their intentional acts and prohibits them from passing that burden to their insurer" (Obj. § III). Neither of these assertions provide grounds for concluding the Settlement is unfair, unreasonable, or inadequate under the established Ninth Circuit standards.

The Ninth Circuit has firmly rejected Objector's first argument, instructing that "in evaluating the fairness of a proposed settlement under Rule 23**,** a court should determine ***only if*** the total compensation to the class is fair, adequate, and reasonable, and ***need not speculate*** as to

1   the appropriate contribution of each defendant." *Class Pls.*, 955 F.2d at 1292-93 & n.15 (collecting

2   cases).  Other circuits are in accord.  *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 286, 294 (3d

3   Cir. 2001) ("[F]or Rule 23(e) to be satisfied, the court must determine only that sufficient

4   compensation is being paid to the class, without necessarily speculating as to the appropriateness

5   of the contributions of the various settling defendants."); *In re Warner Commc'n Sec. Litig.*, 798

6   F.2d 35, 37 (2nd Cir. 1986) ("If the total compensation to class members is fair, reasonable, and

7   adequate, the court is not required to supervise how the defendants apportion liability for that

8   compensation among themselves.").  Courts have emphasized that "the Rule 23 settlement

9   approval process presents *no occasion* for the Court to consider whether plaintiffs' decision not to

10  seek payment from the individual defendants . . . is fair to [the] shareholders." *In re Citigroup Inc.

11  Sec. Litig.*, 965 F. Supp. 2d 369, 385 (S.D.N.Y. 2013).[5]

12      As set forth in the Final Approval Motion and summarized above, the $55 million

13  Settlement Amount is clearly "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Among

14  other things, the $55 million all-cash recovery "is over *five times* the $10 million median recovery

15  for securities class action settlements between 2014-2022"; "nearly *seven times* the $9 million

16  median recovery in securities class action settlements in the Ninth Circuit from 2014-2023";

17  "would have ranked in the *top 15%* of all securities class action settlements between 2014-2022,

18  and the *top 20%* of all securities class action settlements in 2023"; and in "percentage terms, the

19  Settlement is *double* the median recovery in cases with similarly sized damages."  *See* ECF No.

20  193 at 1.  Whether each Individual Defendant personally contributed to the settlement in amounts

21  Objector deems suitable (or at all) is of no consequence to the overall fairness of the Settlement or

22

23  _____

    [5] *See also, e.g.*, *In re Lehman Brothers Sec. & ERISA Litig.*, 2012 WL 1920543, at *2 (S.D.N.Y.
24  May 24, 2012) ("While some may be concerned at the lack of any contribution by the former
    director and officer defendants to the settlement, Lead Counsel's judgment that the $90 million
25  bird in the hand is worth at least as much as whatever is in the bush, discounted for the risk of an
    unsuccessful outcome of the case, is reasonable . . . the Court concludes that the D & O Settlement
26  is fair, reasonable, and adequate."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436,
    457 (S.D.N.Y. 2004) (approving settlement based on insurance proceeds and noting that "this is a
27  negotiation, and [individual defendant] has not been found liable for fraud and may never be found
    liable.  And even if he were, it is unclear that plaintiffs would be better off").
28

1  the adequacy of compensation Settlement Class members will receive—the proper focus of the

2  Court's analysis at final approval.  Nor does Objector contend that the overall compensation to the

3  Settlement Class is inadequate, and acknowledges that his objection could result in a *lesser*

4  recovery.  Obj. at 12.  A lesser recovery, together with the associated delay and risk, would *greatly*

5  prejudice the rest of the Settlement Class, including the many individuals and entities that suffered

6  *exponentially* greater losses than Objector claims on *ten shares* that represent less than *one ten-*

7  *millionth* of the Settlement Class.[6]

8          **3.    Objector's Arguments Under California Insurance Code**
             **Section 533 Are Meritless**
9

10          Objector's assertion that Section 533 requires denial of the Settlement fails for at least four

11  separate and independent reasons.

12          *First*, in addition to lacking standing to object to the Settlement (*see supra* § II.A.1.),

13  Objector also fails to demonstrate he has standing to challenge the availability and scope of

14  coverage between Chegg and its insurance carriers.  Objector is not a party to the insurance

15  policies, and he provides no legal basis to inject himself into those contracts.  Instead, as the Ninth

16  Circuit and California courts have repeatedly explained, it is Chegg's *insurers* who have standing

17  to invoke Section 533.  *See Off. Depot, Inc. v. AIG Specialty Ins. Co.*, 722 F. App'x 745, 746 (9th

18  Cir. 2018) (explaining that "*the insurer* has the burden of proving that the requested claims are

19  matters uninsurable under the law"); *Bleavins v. Demarest*, 196 Cal. App. 4th 1533, 1542 (2011)

20  (non-party to insurance contract "lacks standing to assert any claim concerning the contractual

21  relationship between Allstate and the [insured]"); *Otay Land Co. v. Royal Indem. Co.*, 169 Cal.

22  App. 4th 556, 564 (2008) ("[A] third party who is not in privity of contract with the liability

23  insurer . . . lacks standing to sue the insurer to resolve coverage questions.").  Here, *none* of

24  Chegg's insurers have invoked Section 533.[7]

25

26  ---
    [6] *See* Supp. Brauns Decl. at ¶ 13 (calculating $281.15 Recognized Claim for Objector's joint
    account).

27  [7] A leading insurance law treatise confirms that where non-parties do not have a right to sue an
28  insurer directly, "they cannot object to the insurer's performance of its obligations under the

1        *Second*, even if Objector had standing to invoke Section 533 (which he does not), the

2  statute is inapplicable here.  Objector contends that approval of the Settlement would "violate[]

3  California public policy" by running afoul of California Insurance Code Section 533, which he

4  asserts "codifies California's fundamental public policy against allowing wrongdoers to profit

5  from their wrongdoing, or from being indemnified against the effects of their wrongdoing."  Obj.

6  § I.  But Objector conflates the standard required for application of Section 533 with the standard

7  required for scienter under the federal securities laws, a fatal flaw that further dooms his Section

8  533 argument.

9        Section 533 provides that an "insurer is not liable for a loss caused by the willful act of the

10  insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or

11  others."  California courts have repeatedly explained that a "willful" act "is an intentional one"

12  and that "[a]cts of . . . recklessness are ***not*** willful acts within the meaning of section 533."  *Downey*

13  *Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 500 (1998); *see also Shell Oil Co. v. Winterthur*

14  *Swiss Ins. Co.*, 12 Cal. App. 4th 715, 742 (1993) (finding that "a 'willful act' under section 533

15  must mean an act deliberately done for the express purpose of causing damage or intentionally

16  performed with knowledge that damage is highly probable or substantially certain to result" and

17  "recklessness" does not suffice).  Further, in determining whether an act was "willful" under

18  Section 533, courts consider "the actual basis of liability imposed on the insured," *Certain*

19  *Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co., LLC*, 77 Cal. App. 5th 729, 740

20  (2022), and, moreover, "construe[] narrowly the meaning of a 'willful act'," *Studley v. Benicia*

21  *Unified Sch. Dist.*, 230 Cal. App. 3d 454, 459 (1991).

22

23

---

24  contract of insurance."  Couch on Insurance, 3d § 104:6 (2021).  Notably, ***all*** the Objector's cited
authorities concern the application of Section 533 in the context of a dispute between the insured

25  and insurer—the two parties with standing—and thus provide no support for Objector's standing

26  to invoke Section 533 here.  In essence, Objector impermissibly asks the Court for a declaratory
judgment regarding a question of rights that no party to the policy in question has requested.  *See*

27  *Otay Land*, 169 Cal. App. 4th at 563 ("The courts do not issue advisory opinions about the rights
and duties of the parties under particular agreements, if no actual, justiciable controversy has yet

28  developed.").

1    In stark contrast, the U.S. Supreme Court has explained that the "strong inference of

2  scienter" required to sustain claims under Section 10(b) of the Exchange Act and the PSLRA may

3  be shown by (i) evidence of "a mental state embracing 'intent to deceive, manipulate, or defraud,'"

4  (i.e., conduct perhaps co-extensive with a "willful" act under Section 533), but also (ii) "deliberate

5  recklessness." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011). As Objector

6  concedes, when "false or misleading statements" are alleged to have been made "either

7  intentionally or with deliberate recklessness," Obj. at 4, a court may sustain a Section 10(b) claim.

8  That is precisely what the Court found *in this case*. *Leventhal v. Chegg, Inc.*, 2024 WL 3447516,

9  at *2 (N.D. Cal. July 17, 2024) (stating that "plaintiffs can adequately plead scienter under the

10  PSLRA if their particularized allegations show that defendants made statements with deliberate

11  recklessness" and noting that "the Court applied this standard" here). Significantly, Objector

12  provides no authority for the proposition that "deliberate recklessness" and "willfulness" are co-

13  extensive under Section 533—let alone points to *any* case denying or vacating a pre-trial

14  settlement agreement due to a conflation of these distinct concepts. *See Upper Skagit Indian Tribe*

15  *v. Sauk-Suiattle Indian Tribe*, 66 F.4th 766, 770 (9th Cir. 2023) ("In determining [judicial] intent,

16  a court begins by reviewing the language used in the decision.").

17    In fact, the sole case cited by Objector addressing Section 533 in the context of a Rule 10b-

18  5 claim *fully supports approval* of the Settlement. In *Raychem Corp. v. Federal Insurance Co.*,

19  the court found that a corporation could "voluntarily indemnify its officers and directors for

20  settlement payments and defense costs" because "Section 533" does "not *per se* bar insurance

21  coverage for alleged violations of § 10(b) and Rule 10b–5, which require only a showing of

22  *recklessness* to fulfill the scienter requirement." 853 F. Supp. 1170, 1177, 1180 (N.D. Cal. 1994).

23  In the thirty years since it issued, the *Raychem* court's holding that Section 533 does not

24  categorically bar insurance coverage for Section 10(b) claims has *never* been rejected or

25  distinguished by any other court in this District, circuit, or nationwide—and Objector does not

26  contend otherwise.

27    Moreover, regardless of whether scienter requires "willful" conduct—it does not—

28  Objector's Section 533 argument does not apply to Chegg itself. "Although section 533 bars

1    indemnity of an insured who *personally* commits an act . . . the statute does not bar indemnity of

2    an insured who does not personally commit the act but who is vicariously liable for another

3    person's act." *Downey Venture*, 66 Cal. App. 4th at 512.  Here, Chegg's liability arises by virtue

4    of the imputation of the individual defendants' scienter via the doctrine of *respondeat*

5    *superior*.  *See, e.g.*, *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal.

6    2012) ("In light of the imputation of [officer's] scienter through *respondeat superior*, the Court

7    finds that Plaintiffs have sufficiently alleged a primary violation of Section 10(b) and Rule 10b-5

8    by the Bank.").  Accordingly, there is no legal basis under California law preventing insurance

9    payments on behalf of Chegg.[8]  *Class Pls.*, 955 F.2d at 1292-93.

10         *Third*, even if Objector had standing to invoke Section 533 **and** it applied under the present

11   circumstances (neither of which are true), Objector fails to provide **any** facts "to show that the acts

12   of the officers and directors were willful" under Section 533.[9]  *See Unified W. Grocers, Inc. v.*

13

---

14   [8] Objector cites the unpublished decision *Aspen Specialty Insurance Co. v. Miller Baroness, LLP*,

15   2023 WL 2523841 (9th Cir. Mar. 15, 2023), for the proposition that Section 533 can be invoked
     by an insurer to preclude coverage, even in the absence of an adjudication on the merits of the

16   underlying alleged claim.  Obj. at 7-8.  However, that case involved claims of "malicious
     prosecution" which the court found was "**categorically**. . . a willful act within the meaning of §

17   533." 2023 WL 2523841, at *2.  So too in *California Amplifier, Inc. v. RLI Insurance Co.*, 94 Cal.
     App. 4th 102 (2001) (Obj. at 3), which involved a claim under Section 25500 of the California

18   Corporations Code, which—unlike the "deliberate recklessness" standard applicable to claims
     under Section 10(b)—**requires** "a defendant [to] **knowingly and intentionally** make a false or

19   misleading statement to be liable." *Id.* at 107 (quoting Cal. Corp. Code, § 25500).  Objector
     ignores this critical distinction in the *mens rea* required to give rise to liability under Section 10(b)

20   versus California Corporation Code sections 24500 and 25500.

21   [9] While Objector points to materials outside of the record of this case to demonstrate that the

22   proposed Settlement has failed to have a deterrent effect on the Individual Defendants (*see* Obj.
     §II.B), this extrinsic evidence is irrelevant (as it is well outside of the Complaint and years after

23   the Class Period in this case) and fails entirely to address the only issue before the Court: whether
     the Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2).  Moreover, insofar as

24   deterrence is objective of the federal securities laws, that objective is the province of the SEC and
     other government regulators in the first instance, whereas Lead Plaintiffs' fiduciary duty is to

25   maximize the compensation of the Settlement Class. *See Lerma v. Schiff Nutrition Int'l, Inc.*, 2015

26   WL 11216701, at *6 (S.D. Cal. Nov. 3, 2015) (approving a settlement funded entirely by insurance
     and noting that "[e]ven if the Settlement provides little or no guard against recidivism, it

27   nevertheless provides adequate relief for the alleged harm").  It bears noting that neither the SEC
     nor any other governmental authority has brought an enforcement actions against any of the

28

---

*Twin City Fire Ins. Co.*, 457 F.3d 1106, 1112 (9th Cir. 2006) (error to grant insurer summary judgment "without any *evidence*" that underlying liability was premised exclusively on "willful conduct").  Objector's citation to certain of the Complaint's *allegations*—which he contends "portray[] Defendants' conduct not only as willful but as egregious" (Obj. at 5-6, 9-10), fails because a third party's complaint is not "the arbiter of the policy's coverage." *Unified W. Grocers*, 457 F.3d at 1112.  "Even when faced with allegations that paint a broad picture of fraudulent schemes and conspiracies, the application of section 533 . . . *without evidence of the insured's actual conduct*, should consider whether any asserted claim may allow for liability based on alleged conduct that has a lower degree of culpability." *Id.*; *accord Adalman v. Baker, Watts & Co.*, 599 F. Supp. 752, 755 (D. Md. 1984) ("The ability to seek contribution should not be dependent upon whom the plaintiff chooses to sue or upon what facts plaintiff cites in support of its claim.").

     *Finally*, Objector's argument upends fundamental federal policies, including the strong federal policy favoring settlement of complex class action litigation.  With respect to securities litigation particularly, Objector's proffered application of Section 533 would wreak immense harm on the very group the federal securities laws are designed to protect—investors—by removing the primary and largest source of funding in virtually all federal securities class actions.  For over fifty years, defrauded investors have been able to avail themselves of a defendant company's D&O insurance to help compensate losses caused by securities fraud.  Indeed, in enacting the PSLRA, Congress understood that D&O insurance funds *over 95%* of securities settlements, "with the insurance proceeds often being the *sole* source of settlement funds."[10]  And, because publicly traded companies often lack sufficient assets to fund substantial settlements or judgments of

---

Defendants for securities law violations arising out of the conduct alleged in the Action—or even opened an investigation.

[10] James D. Cox, *Making Securities Fraud Class Actions Virtuous*, 39 ARIZ. L. REV. 497, 524 & fn. 5, 52 (1997) (citing testimony provided to Congress when enacting the PSLRA); *see also* Bernard Black et al., *Outside Director Liability*, 58 STAN. L. REV. 1055, 1059–60 (2006) (empirical analysis of securities class action settlements over a 25-year period showed the settlement funds "nearly always comes from the company, a D&O insurer . . . or another third party").

1   securities class actions, and D&O insurance typically provides far more dollars than the personal

2   assets of a company's individual officers and directors, taking insurance off the table would cause

3   investors to face the prospect of dramatically *lower* recoveries in nearly *all* securities fraud class

4   actions—a result antithetical to the compensatory goal of private securities litigation.[11]   Beyond

5   securities litigation, if this Court were to become the first court in the nation to accept Objector's

6   argument, it would open a floodgate of objections to *any* type of class action settlement involving

7   allegations of intentional or reckless misconduct and an insurer-funded settlement—including

8   antitrust class action settlements, consumer fraud class action settlements, and even insurance class

9   action settlements. For the reasons discussed above, there is no reason for the Court to condone

10   such disorder.

11       Accordingly, the Objectors' attempt to invoke Section 533 fails and the Settlement should

12   be approved.

13   **III.    THE REACTION OF THE SETTLEMENT CLASS STRONGLY
          SUPPORTS APPROVAL OF THE REQUESTED ATTORNEYS' FEES
14          AND EXPENSES**

15       The Settlement Class's reaction also strongly supports granting the Fee and Expense

16   Motion.  *See In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. Jan. 9, 2008)

17   ("The reaction of the class may also be a determining factor in . . . determining the fee award.").

18   Indeed, no Settlement Class Member has objected to the Fee and Expense Motion.  The Notice

19   disclosed that Lead Counsel would seek a fee not to exceed 25% of the Settlement Fund, or

20   $13,750,000, plus interest.   Notice at ¶ 5.   The Fee and Expense Motion provided detailed

21   information concerning Lead Counsel's lodestar and expenses, and the tasks performed by the

22

23   [11] *See* Cox, 39 ARIZ. L. REV. at 514 ("Only if one were to cry for the defendant's head does
insurance appear to pose a conflict.").  Investors would also face the prospect of judgment-proof
24   individual defendants and, often (as here), judgment-proof corporate defendants—frustrating an
essential purpose of D&O insurance and the compelling public policy encouraging settlement of
25   class action lawsuits.  *See, e.g.*, *Raychem*, 853 F. Supp. at 1177 (holding that indemnification of
individual directors is permitted under the federal securities laws where, as here, "defendants did
26   not admit liability in settling the underlying suit," and noting "allowing a corporation to indemnify
its officers and directors for settlement payments and defense costs supports two competing public
27   policies:  encouraging qualified individuals to serve as corporate officers and directors, and
encouraging settlement of class action lawsuits").
28

1   lawyers who worked on the case.  *See* ECF Nos. 195-4, 195-5.  The Notice also apprised potential

2   Settlement Class Members that Lead Counsel would seek reimbursement for litigation expenses

3   of up to $490,000, and up to $20,000 as reimbursement to Lead Plaintiffs under 15 U.S.C. §78u-

4   4(a)(4), for their time spent representing the Class.[12]  *See* Notice at ¶ 5.

5        The fact that no objection was lodged against any aspect of the Fee and Expense Motion

6   supports approval of the requested amounts.  *See, e.g.*, *In re Banc of Cal. Sec. Litig.*, 2020 WL

7   1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of settlement fund where "over 35,000

8   copies of the Notice were disseminated to potential Class Members . . . and no objections to the

9   fees or expenses were filed by Class Members"); *Zynga*, 2016 WL 537946, at *18 ("[T]he lack of

10   objection by any Class Members also supports the 25 percent fee award."); *Omnivision*, 559

11   F. Supp. 2d at 1049 ("None of the objectors raised any concern about the amount of the fee. This

12   factor . . . also supports the requested award of 28% of the Settlement Fund.").

### IV.  CONCLUSION

14        Lead Plaintiffs and Lead Counsel have obtained an excellent result for the Settlement

15   Class.  Now, with the relevant objection and exclusion deadlines having passed, it is abundantly

16   clear that the Settlement Class agrees.  For the foregoing reasons, and those set forth in their

17   opening papers, Lead Plaintiffs and Lead Counsel respectfully request that the Court (a) approve

18   the proposed Settlement and Plan of Allocation and enter the Proposed Order and Final Judgment;

19   and (b) grant Lead Counsel's Fee and Expense Motion in full.

---

[12] Lead Counsel and Lead Plaintiffs ultimately requested significantly lower expense and reimbursement amounts:  $261,602.23 and $4,900, respectively.

1    Dated: April 10, 2025            Respectfully submitted,

2

3                                     /s/ David R. Kaplan
                                      David R. Kaplan

4

5    **SAXENA WHITE P.A.**
     David R. Kaplan (SBN 230144)

6    Emily R. Bishop (SBN 319383)
     505 Lomas Santa Fe Dr. Suite #180

7    Solana Beach, CA 92075
     Telephone: (858) 997-0860

8    Facsimile: (858) 369-0096
     dkaplan@saxenawhite.com

9    hfarah@saxenawhite.com
     ebishop@saxenawhite.com

10

11   Maya Saxena (*pro hac vice*)
     Lester R. Hooker (SBN 241590)

12   Jonathan Lamet (*pro hac vice*)
     7777 Glades Road, Suite 300

13   Boca Raton, FL 33434
     Telephone: (561) 394-3399

14   Facsimile: (561) 394-3382
     msaxena@saxenawhite.com

15   jlamet@saxenawhite.com

16

17   Steven B. Singer (*pro hac vice*)
     Kyla Grant (*pro hac vice*)

18   10 Bank Street, 8th Floor
     White Plains, NY 10606

19   Telephone: (914) 437-8551
     ssinger@saxenawhite.com

20   kgrant@saxenawhite.com

21

22   *Counsel for Lead Plaintiff Pompano*
     *Beach Police and Firefighters'*

23   *Retirement System, and Lead Co-Counsel*
     *for the Class*

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTLEY RICE LLC**
Max N. Gruetzmacher (*pro hac vice*)
mgruetzmacher@motleyrice.com
Christopher F. Moriarty (*pro hac vice*)
cmoriarty@motleyrice.com
Neli Traykova Hines (*pro hac vice*)
ntraykova@motleyrice.com
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Counsel for Lead Plaintiff KBC Asset
Management NV, and Lead Co-Counsel
for the Class*


**ROSSMAN LEGAL**
Gregg Rossman (pro hac vice)
6840 Griffin Rd.
Davie, Florida 33314
Telephone: (954) 440-0908
gregg@rossmanlegal.com

*Additional Counsel for Lead Plaintiff
Pompano Beach Police and Firefighters'
Retirement System*