COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

*Attorneys for Defendants Chegg, Inc.,*
*Daniel L. Rosensweig, Andrew J. Brown,*
*and Nathan Schultz*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEVENTHAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEGG, INC., DANIEL L. ROSENSWEIG, ANDREW J. BROWN, and NATHAN SCHULTZ,<br><br>Defendants. | Case No. 5:21-cv-09953-PCP<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' RESPONSE TO ETHAN FIELDMAN'S STATEMENT OF OBJECTIONS TO PROPOSED CLASS SETTLEMENT**<br><br>Date:    April 24, 2025<br>Time:    10:00 am<br>Dept:    Crt. Rm. 8 – 4th Floor<br>Judge:    Hon. P. Casey Pitts |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................... 1

II.     THE COURT SHOULD OVERRULE THE OBJECTION AND APPROVE THE
        SETTLEMENT ................................................................................................................... 2

        A.      California Insurance Code Section 533 Does Not Bar Coverage for Section
                10(b) Claims.......................................................................................................... 2

        B.      Section 533 of the Insurance Code Does Not Bar This Settlement Because
                Fieldman Fails to Prove that Defendants Engaged in Willful Conduct ................. 6

        C.      Fieldman's Speculative Concerns Cannot Override Strong Public Policy
                Considerations Favoring Settlement of Securities Class Actions With
                Insurance ................................................................................................................ 8

III.    CONCLUSION ................................................................................................................. 12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Comput. Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989)..................................................................................................... 8

*In re Apple Computer, Inc., Sec. Litig.*,
  243 F.Supp.2d 1012 (N.D. Cal. 2002) ......................................................................................... 4

*Aspen Specialty Ins. Co. v. Miller Barondess, LLP*,
  2021 WL 6333376 (C.D. Cal. Dec. 2, 2021), *rev'd and remanded*, 2023 WL
  2523841 (9th Cir. Mar. 15, 2023) ................................................................................................ 5

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)...................................................................................................... 11

*Cal. Amplifier, Inc. v. RLI Ins. Co.*,
  94 Cal.App.4th 102 (2001) ...................................................................................................... 3, 4

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015).............................................................................. 9

*Certain Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co.*,
  77 Cal.App.5th 729 (2022) ......................................................................................................... 3

*In re Citigroup Inc. Sec. Litig.*,
  965 F.Supp.2d 369 (S.D.N.Y. 2013)......................................................................................... 11

*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*,
  14 Cal.App.4th 1595 (1993) ....................................................................................................... 5

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................................................ 9

*Hollinger v. Titan Cap. Corp.*,
  914 F.2d 1564 (9th Cir. 1990)..................................................................................................... 4

*Lerma v. Schiff Nutrition Int'l, Inc.*,
  2015 WL 11216701 (S.D. Cal. Nov. 3, 2015) ............................................................................ 11

*Leventhal v. Chegg, Inc.*,
  721 F.Supp.3d 1003 (N.D. Cal. 2024) ......................................................................................... 4

*Marie Y v. Gen. Star Indem. Co.*,
  110 Cal.App.4th 928 (2003) ....................................................................................................... 5

*Mossberg v. IndyMac Fin., Inc.*,
  2013 WL 12324206 (C.D. Cal. Jan. 28, 2013) ........................................................................... 12

*Office Depot Inc. v. AIG Specialty Ins. Co.*,
  722 F.App'x 745 (9th Cir. 2018) ................................................................................................ 3

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F.App'x 760 (2d Cir. 2020) ..................................................................................... 9

*In re Peregrine Sys., Inc. Sec. Litig.*,
2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ................................................................ 7

*Quigley v. Travelers Prop. Cas. Ins. Co.*,
630 F.Supp.2d 1204 (E.D. Cal. 2009) ............................................................................ 6

*In re Quintus Sec. Litig.*,
2006 WL 3507936 (N.D. Cal. Dec. 5, 2006) ................................................................. 9

*Raychem Corp. v. Federal Insurance Co.*,
853 F.Supp. 1170 (N.D. Cal. 1994) .............................................................. 1, 3, 4, 7, 10

*RSUI Indem. Co. v. Murdock*,
248 A.3d 887 (Del. 2021) ............................................................................................... 9

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
12 Cal.App.4th 715 (1993), *reh'g denied and opinion modified* (Feb. 22, 1993) .................... 3

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009), *aff'd* 563 U.S. 27 (2001) ............................................. 4

*State Farm Fire & Cas. Co. v. Nycum*,
943 F.2d 1100 (9th Cir. 1991) ....................................................................................... 6

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ....................................................................................... 9

*Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*,
457 F.3d 1106 (9th Cir. 2006) ............................................................................... 2, 4, 7

*Vernazza v. S.E.C.*,
327 F.3d 851 (9th Cir. 2003), *amended*, 335 F.3d 1096 (9th Cir. 2003) ...................... 7

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ......................................................................................... 9

*Zurich Ins. Co. v. Killer Music Inc.*,
998 F. 2d 674 (9th Cir. 1994) ........................................................................................ 6

**Statutes**

Cal. Corp. Code
§ 25400 ....................................................................................................................... 4, 5
§ 25500 ....................................................................................................................... 4, 5

Cal. Ins. Code § 533 ........................................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Exchange Act § 10(b) ................................................................................ 1, 2, 3, 4, 5, 6, 9, 10, 11

Fed. R. Civ. P. 16(c) ................................................................................................................ 9

Fed. R. Evid. 408 ..................................................................................................................... 9

**Other Authorities**

*Insuring the unprecedented risks facing directors and officers*, 2018 Willis Towers Watson 2018 Management Liability (Directors and Officers) U.S. Survey ............................ 10

Michael J. Kaufman, *§ 20:29 Director and Officer (D&O) insurance and securities fraud-basics of D&O insurance*, 26A Sec. Lit. Damages § 20:29 (Nov. 2024) ............................................................................................................................ 10

Rene Otto, et al., *D&O Insurance and Corporate Governance: Is D&O Insurance Indicative of the Quality of Corporate Governance in a Company?*, 24 Stan. J.L. Bus. & Fin. 105 (2019) ................................................................................................. 10

*Securities Class Action Filings 2024 Year in Review*, Cornerstone Research 4 (Jan. 29, 2025), https://www.cornerstone.com/wp-content/uploads/2025/01/Securities-Class-Action-Filings-2024-Year-in-Review.pdf ........................................................................................................................ 9

*Veterans*, Study Edge, https://studyedge.com/veterans/ ................................................... 12

Woodruff Sawyer, *Guide to Private Company D&O Insurance* (2023 ed.) ................................ 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv

Defendants Chegg, Inc., Daniel Rosensweig, Andrew Brown, and Nathan Schultz respectfully submit this response to Ethan Fieldman's Statement of Objections to Proposed Class Settlement (the "Objection").

## I.    INTRODUCTION

In his Objection, Fieldman—the founder of Study Edge, a purported Chegg competitor—concedes that the amount of the settlement is fair.  Instead, he takes issue with the fact that Chegg's insurance is funding the settlement, as opposed to the individual defendants personally paying for it.  But Fieldman's position that the California Insurance Code bars insurance coverage for Section 10(b) settlements has no legal support, is irrelevant to whether the settlement is fair, and ignores the weight of authority within this Circuit.  The Objection should be overruled for a number of reasons.

First, Fieldman—who is not Chegg's insurer—lacks standing to object to a settlement under California Insurance Code Section 533, which governs the relationship between the insurer and the insured.  Chegg's insurers have not denied coverage, and Fieldman—as a third-party competitor—is in no position to challenge that coverage decision, least of all during a class action settlement approval process.  But even if Fieldman had standing, Section 533 still does not bar coverage.  The Objection concedes that this very issue was decided by this District in *Raychem Corp. v. Federal Insurance Co.*, which concluded that Section 533 did not bar coverage for Section 10(b) claims. 853 F.Supp. 1170, 1180 (N.D. Cal. 1994).[1]  *Raychem* remains good law and is reinforced by countless approvals of securities class action settlements covered by insurance within the Ninth Circuit.

Second, Fieldman fails to demonstrate how the facts in this case prevent insurers from funding the settlement.  Relying solely on unproven allegations, he claims that Defendants engaged in "willful" conduct.  But the law is clear that in situations where a claim requires willfulness *or* a lesser degree of culpability, like Section 10(b) claims, more is needed.  Fieldman does not point to any "criminal plea or conviction, [ ] civil admission, stipulation [ ] civil judgment," or other definitive evidence of misconduct, and he badly misconstrues the only allegations he identifies.

---

[1] Unless noted, emphasis is added, and internal quotation marks and alterations are omitted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

Fieldman also ignores that Plaintiffs' settlement papers, informed by internal Chegg documents and knowledge gained through mediation, acknowledge that Defendants would have had "*credible*" arguments that scienter cannot be established had the case continued to the merits stage.

Third, public policy *favors* class action settlements, indemnification, and insurance. A bar on insurance coverage in securities class actions would have sweeping implications for companies doing business in California, and create significant conflicts with other states' laws. It would also stifle innovation, impede good corporate governance, and drive businesses out of California. Moreover, Fieldman's Objection makes no sense because *even if* insurance coverage were unavailable to the individual defendants, they still would not pay because Chegg is required to indemnify them. And, in any event, whether a settlement is punitive is not part of the settlement approval calculus.

The Objection should be overruled.

## II.    THE COURT SHOULD OVERRULE THE OBJECTION AND APPROVE THE SETTLEMENT

### A.    California Insurance Code Section 533 Does Not Bar Coverage for Section 10(b) Claims

Fieldman objects to the settlement on the ground that it allegedly violates public policy because it is "uninsurable" under section 533 of the California Insurance Code. (Statement of Obj. to Proposed Class Settlement ("Obj.") at 5, ECF 196.) Fieldman is wrong. First, Fieldman is not the right person, and this is not the right venue, to challenge insurability under Section 533. That section provides that "a[n] *insurer* is not liable for a loss caused by the willful act of the insured." Cal. Ins. Code § 533 (emphasis added). When insurers deny coverage under Section 533, they "have the burden of proving that the requested claims are matters uninsurable under the law." *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006) (cleaned up). Fieldman has not cited a single case allowing a third party to challenge coverage under Section 533. *Cf.*, *id.* at 1112 (a "third party complainant…should not be the arbiter of [a] policy's coverage"). Nor has he cited a single case addressing insurability under Section 533 involving an objection to a class action settlement, as opposed to in a lawsuit where the insured would have a fair opportunity to defend against any claim that the settlement at issue is uninsurable under Section

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

533.  Instead, every Section 533 case Fieldman cites involves a dispute between an insurer and insured.[2]  None of those support Fieldman's position.

Fieldman also ignores that Chegg's insurers—the only parties actually charged with determining whether claims are covered and the only parties who could make a coverage challenge like the one Fieldman presents—have not denied coverage here and indeed have already released settlement funds to escrow.  (D. Kaplan Decl. in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan for Allocation ¶ 7, ECF 195.)  Fieldman does not have the insurance policies, and he does not point to language showing such policies are inconsistent with Section 533.  Nor does he provide any basis to question the insurers' coverage assessments.

Second, even setting these issues aside, Fieldman is wrong that Section 533 bars coverage for settlements of claims under Section 10(b) of the Exchange Act.  Fieldman cites only one case that addresses this issue, *Raychem Corp. v. Federal Insurance Co.*, and in that case (as Fieldman concedes), this District held that Section 533 does not necessarily preclude insurance coverage of Section 10(b) settlements.  853 F.Supp. at 1180.  This is because, in addition to willful conduct, Section 10(b) also includes liability for recklessness—a lesser degree of culpability than willfulness—and "Section 533 does not preclude coverage for acts that are negligent or reckless." *Id*.  As the court explained, "[w]illful, for purposes of section 533, has a unique meaning: even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles generally will not exonerate the insurer from liability under section 533, unless it is done with a '***preconceived design to inflict injury***.'" *Id*. (emphasis added).  *Raychem* remains good law:  Over ten years later, the Ninth Circuit cited *Raychem*'s holding with approval to find that Section 533 does not bar

---

[2] (*See* Obj. at 4–5, 7–8, 13 (citing *e.g.*, *Raychem*, 853 F.Supp. at 1172, 1175 (insured's action against insurer for breach of contract); *Office Depot Inc. v. AIG Specialty Ins. Co.*, 722 F.App'x 745, 746 (9th Cir. 2018) (insured's action against insurer for breach of contract); *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal.App.4th 102, 106-07 (2001) (insured's action for breach of contract); *Certain Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co.*, 77 Cal.App.5th 729, 292 (2022) (insurers brought declaratory judgment against successor to policy holder); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715 (1993), *reh'g denied and opinion modified* (Feb. 22, 1993) (insured sought declaratory judgment against insurers for coverage).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

coverage for fiduciary duty claims. *Unified W. Grocers*, 457 F.3d at 1112 (quoting *Raychem*'s holding that the Insurance Code does not bar insurance for Section 10(b) claims).

Fieldman erroneously suggests (but cannot quite bring himself to say directly) that *Raychem* has been superseded by subsequent cases holding that Section 10(b) requires a showing of "deliberate recklessness." (Obj. at 4 (citing *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180 (9th Cir. 2009), *aff'd* 563 U.S. 27 (2001).) But this is false. The language used to articulate the scienter standard in the Ninth Circuit has been exactly the same before and after *Raychem*, including in *Matrixx* (and other cases referring to "deliberate recklessness"). For example, in discussing recklessness and its difference from the willful conduct required by Section 533, *Raychem* cited a 1990 case, *Hollinger*, which defined recklessness under Section 10(b) as: "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Raychem*, 853 F.Supp. at 1179 (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)). This is the same standard—***verbatim***—that Fieldman cites in his objection and that this Court articulated in its Motion to Dismiss Order. (Order Denying Motion to Dismiss at 11, ECF 150; Obj. at 4–5 nn.14–17 (citing *Matrixx*, 585 F.3d at 1180, *In re Apple Computer, Inc., Sec. Litig.*, 243 F.Supp.2d 1012, 1023 (N.D. Cal. 2002), and *Leventhal v. Chegg, Inc.*, 721 F.Supp.3d 1003, 1015 (N.D. Cal. 2024)).)

Attempting to avoid *Raychem*, Fieldman also badly misconstrues a California Court of Appeals case, *California Amplifier, Inc. v. RLI Insurance Co.*, as holding that Section 533 bars coverage for "securities violations." (Obj. at 3 (citing *Cal. Amplifier,* 94 Cal.App.4th at 117).) But *California Amplifier* did ***not*** involve Section 10(b) claims, or any other claims that created liability for willful ***or*** lesser degrees of culpability. *Cal. Amplifier*, 94 Cal.App.4th at 107. Rather, the court held that Section 533 precludes coverage for settlement of claims under Sections 25400 and 25500 of the ***California Corporations Code***—claims that require proof of intent instead of recklessness. *Id.* at 117. On that basis, the *California Amplifier* court cited *Raychem*'s holding that Section 10(b)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

settlements are indeed insurable, with approval, directly distinguishing Sections 25400 and 25500 (which require intent) from Section 10(b) (which requires at least recklessness). *Id.*

The Objection also misstates the holding of *Aspen Specialty Ins. Co. v. Miller Barondess, LLP*, which did not, as Fieldman claims, hold that "Section 533 barred coverage of a class action settlement, absent adjudication of defendants' underlying acts." (Obj. at 7–8.) *Aspen* did not even involve "a class action settlement." (*Id.*) There, the insurer funded a settlement of a malicious prosecution claim against the insured (a law firm) under a professional liability policy and then sued the insured to seek reimbursement of the settlement payment. *Aspen Specialty Ins. Co. v. Miller Barondess, LLP*, 2021 WL 6333376, at *2 (C.D. Cal. Dec. 2, 2021), *rev'd and remanded*, 2023 WL 2523841 (9th Cir. Mar. 15, 2023). *Aspen* did not hold that Section 533 always bars coverage without adjudication of the underlying claims. (Obj. at 7–8.) The Ninth Circuit just noted that for certain types of claims that are inherently willful (unlike Section 10(b) claims), a court could assess the applicability of Section 533, even where the underlying lawsuit had been settled instead of adjudicated. *Aspen*, 2023 WL 2523841, at *1–2. Moreover, the malicious prosecution claim in *Aspen* was brought "*after* an adverse trial court ruling" in the underlying case (a necessary element of *any* malicious prosecution claim). *Id.* (emphasis added). The court in the underlying action had also "found that [the law firm's client] had engaged in forgery, perjury, and the destruction of evidence" and had ordered sanctions against the law firm's client. *Aspen*, 2021 WL 6333376, at *2.[3]

Nearly every securities claim under a D&O insurance policy involves allegations of willful conduct. Reinforcing the insurability of Section 10(b) settlements, California District Courts have approved at least 74 such settlements in the last five years, with the vast majority being paid for by insurance. (*See* Case Survey Declaration at 1) (at least 77% of settlements approved in the Northern District of California in the last five years appeared to involve payments by insurance carriers).

---

[3] The underlying acts in the cases cited in the Objection on this point are also ***categorically*** willful. (*See e.g.*, Obj. at 8 n.30 (citing *Marie Y v. Gen. Star Indem. Co.*, 110 Cal.App.4th 928, 953 (2003) (barring coverage for claims of sexual molesting) and *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal.App.4th 1595, 1603 (1993) (barring coverage for sexual harassment and wrongful termination because there was "no credible argument that this alleged wrongful conduct could be anything other than intentional and willful")).)

Cooley LLP
Attorneys at Law
Palo Alto

5

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-cv-09953-PCP

Sustaining Fieldman's objection would make D&O insurance coverage in California illusory and would have far-reaching implications on companies' willingness to do business in California. The Court should continue to adopt the *Raychem* court's reasoning and hold that there is no Insurance Code bar to settling this case.

**B.      Section 533 of the Insurance Code Does Not Bar This Settlement Because Fieldman Fails to Prove that Defendants Engaged in Willful Conduct**

Fieldman next argues that "Defendants' conduct was deliberately reckless and is therefore uninsurable." (Obj. at 5.) But again, deliberate recklessness does not rise to the level of "wilful" conduct barred by the Insurance Code. *See supra* at II.A. That may be why he then switches gears, arguing coverage is barred because the complaint "portrays Defendants' conduct not only as willful but as egregious." (Obj. at 5.) Fieldman is wrong again.

<u>First</u>, he cannot rely solely on the complaint's unproven allegations in an effort to prove Section 533 bars coverage. Indeed, causes of action requiring willful *or* lesser conduct (like the Section 10(b) claims alleged here)[4] are not precluded from insurance absent "conclusive proof" that the insured acted with a willful state of mind. *Quigley v. Travelers Prop. Cas. Ins. Co.*, 630 F.Supp.2d 1204, 1219 (E.D. Cal. 2009) (holding Section 533 did not bar crimes requiring willful or lesser conduct because insurer did not have "conclusive proof" that the insured acted willfully). That proof must consist of more than "mere allegations" in the underlying complaint, and instead rise to the level of a "criminal plea or conviction, [ ] civil admission, stipulation [ ] civil judgment," or other definitive evidence. *State Farm Fire & Cas. Co. v. Nycum*, 943 F.2d 1100, 1104 (9th Cir. 1991) (finding Section 533 did not bar coverage for offenses involving negligent or willful conduct because insurer offered no proof beyond "mere allegations."); *Zurich Ins. Co. v. Killer Music Inc.*, 998 F. 2d 674, 678–79 (9th Cir. 1994) (finding the insurer improperly denied coverage because the insured's actions "were not proven to be 'willful'"). When the claims do "not necessarily require such a high degree of culpability," an unproven complaint relying on allegations

---

[4] The complaint alleges Defendants acted with intent *or* deliberate recklessness. (*See e.g.*, Am. Compl., ¶ 29, ECF 115 ("knew or recklessly disregarded"), ¶ 258 ("at minimum, acted recklessly"), ¶ 271 ("were deliberatively reckless"), ¶ 316 ("made the above statements intentionally or with a severely reckless disregard for the truth").)

Cooley LLP
Attorneys at Law
Palo Alto

6

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-cv-09953-PCP

of willful conduct should not bar coverage "without evidence of the insured's actual conduct." *Unified W. Grocers*, 457 F.3d at 1112–13 (declining to determine that 533 barred coverage based on "isolated allegations in an underlying complaint."). Fieldman does not cite a single case where the Insurance Code barred coverage for claims that required willfulness *or* a lesser state of mind, highlighting how difficult willfulness is to prove.

Second, and setting aside the burden of proof issue, Fieldman is wrong that the complaint's allegations are limited to willful conduct. *Raychem*, 853 F.Supp. at 1180. He fixates on the Court's motion to dismiss ruling that the complaint pled "particularized facts that support a strong inference of scienter as to Chegg's knowledge about cheating on its platform." (Obj. at 6.) But in allowing this case to proceed past the pleading stage, the Court did not hold alleged "knowledge of cheating" constituted willful or intentional conduct. (Order Denying Motion to Dismiss at 12, ECF 150.) The Motion for Reconsideration Order even explained that such purported knowledge could have elicited deliberately reckless conduct as opposed to willfulness: "plaintiffs have pleaded with particularity that the defendants (including the individual executives) were at least *deliberately reckless*."[5] (Order Denying Motion for Recon. at 4, ECF 172 (emphasis added).) And Fieldman ignores that "allegations that the defendant possessed knowledge of facts that are later determined by a court to have been material, without more, is not sufficient to demonstrate that the defendant *intentionally withheld* those facts." *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005) (emphasis added). Nor does he explain how alleged knowledge of cheating rises to the level of "wilfulness" under the Insurance Code, requiring "a preconceived design to inflict injury." *Raychem*, 853 F.Supp. at 1180; *Vernazza v. S.E.C.*, 327 F.3d 851, 860 (9th Cir. 2003), *amended*, 335 F.3d 1096 (9th Cir. 2003) (differentiating "knowing or reckless conduct" from "willful intent to defraud").

Further undermining any suggestion of willfulness, Plaintiffs acknowledged in their settlement papers that Defendants would have "credible" scienter arguments at the merits stage,

---

[5] Fieldman also ignores that Plaintiffs' core theory is not just that cheating existed, but that such cheating "fueled" growth during the class period. (Am. Compl., ¶¶ 63, 166, 227, 234, 250.) The Court did not hold that the individual defendants knew cheating drove growth, let alone that they intentionally withheld such information with a preconceived design to inflict injury.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

"including [Chegg's] internal analyses concluding that misuse of the platform represented less than 1% of overall subscribers during the Class Period"—the opposite of "rampant" cheating.  (Motion for Preliminary Approval of Class Action at 15, ECF 189 (acknowledging that defendants had "several credible arguments which the Court at summary judgment, a jury at trial, or an appellate court could have accepted").)   While Fieldman attempts to diminish the significance of the settlement papers—parroting back quotes from the complaint instead—he disregards that the recent settlement briefing reflects Plaintiffs' **current** assessment of the case, based upon their review of tens of thousands of pages of Chegg documents and participation in a full-day mediation that involved extensive briefings and voluminous exhibits.  (Motion for Final Approval of Settlement and Plan of Allocation at 2, ECF 193.)

Third, Fieldman incorrectly argues that Defendants acted willfully because they engaged in an alleged "high-level pump and dump scheme." (Obj. at 6, 9.)  But the Court held that Defendants' stock sales were not suspicious and "do[ ] not establish scienter."  (ECF 150 at 13 n. 3.)  In so holding, the Court credited Defendants' arguments that stock sales did not support an inference of even reckless conduct:

> ***As defendants point out***, however, both individuals also made stock acquisitions, which reduces the percentage decrease in their stock ownership during the class period. ***Defendant Rosensweig also sold three times as many shares in the 18-month period prior to the class period***. *See In re Apple Comput. Sec. Litig.,* 886 F.2d 1109, 1117 (9th Cir. 1989) ("Large sales of stock *before* the class period are inconsistent with plaintiffs' theory that defendants attempted to drive up the price of Apple stock *during* the class period."). ***In short, plaintiffs' evidence about the individual defendants' stock sales alone does not establish scienter***.

(*Id*.)  Accordingly, Fieldman points only to allegations and fails to prove in any way that Defendants engaged in "willful conduct"—Section 533 does not bar insurance coverage for this settlement.

**C.    Fieldman's Speculative Concerns Cannot Override Strong Public Policy Considerations Favoring Settlement of Securities Class Actions With Insurance**

Fieldman objects to the settlement on "public policy" grounds, claiming that the "Proposed Settlement violates California's longstanding public policy against insuring willful acts."  (*See, e.g.*, Obj. at 12.)  Not so.  Public policy favors settlements, "particularly where complex class action

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

litigation is concerned."[6] *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Every Section 10(b) settlement implicates the potential of insuring "willful" acts, but securities class action settlements are *still* favored. *See, e.g.*, *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *5 (N.D. Cal. Feb. 11, 2016) ("Judicial policy strongly favors settlement of class actions"); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *4 (N.D. Cal. Nov. 20, 2015) (same); *In re Quintus Sec. Litig.*, 2006 WL 3507936, at *2 (N.D. Cal. Dec. 5, 2006) (same).

Moreover, if the Court were to reject the settlement or suggest that Section 533 bars insurance coverage, there would be sweeping implications for public companies that are frequently the subject of all manners of securities class actions and usually settle such matters with insurance. Indeed, over 200 securities cases were filed against public companies in 2024, and over one thousand were filed in the last five years.[7] Not only do almost half of these cases settle, the vast majority of them settle using insurance funds. (Case Survey Decl. at 1). Rejecting the settlement on the basis of Fieldman's objection would conflict with countless decisions in this District and elsewhere that approve fair and reasonable federal securities class action settlements involving payment by insurance carriers. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F.App'x 760, 763 (2d Cir. 2020) (affirming district court's approval of 10(b) settlement as fair and adequate where insurance-policy funds were available to reimburse the class); *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 864 (7th Cir. 2014) (affirming district court's approval of 10(b) settlement where it considered the existence of insurance proceeds to fund the settlements). It would also create a conflict with Delaware law (the law under which Chegg and most public companies are incorporated), where courts have recognized a strong public policy in favor of broad indemnification and D&O insurance rights. *See RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 903 (Del. 2021) (emphasis added) (rejecting public policy arguments against insurability of losses occasioned by fraud because the "Delaware General Assembly enacted Section 145 authorizing

---

[6] As the Ninth Circuit noted in *Syncor*, that preference is evidenced even in the Federal Rules of Civil Procedure and Evidence. 516 F.3d at 1101; *see* Fed. R. Civ. P. 16(c) advisory committee note (settlement "results in savings to the litigants and the judicial system"); Fed. R. Evid. 408 advisory committee note ("public policy favor[s] the compromise and settlement of disputes").

[7] *Securities Class Action Filings 2024 Year in Review*, Cornerstone Research 4 (Jan. 29, 2025), https://www.cornerstone.com/wp-content/uploads/2025/01/Securities-Class-Action-Filings-2024-Year-in-Review.pdf.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

corporations to afford their directors and officers broad indemnification and advancement rights and to purchase D&O insurance 'against *any* liability' asserted against their directors and officers"). Relatedly, it does not appear that any court in the country has held that public policy interests or insurance codes categorically bar insurance for Section 10(b) cases, and this Court should not be the first to do so.

Fieldman's Objection would undermine the entire purpose of D&O indemnification and insurance—providing another reason to overrule the Objection. Around 90% of public companies are estimated to have purchased D&O insurance for risk management because it serves a number of important functions.[8] It makes it easier to recruit professional and experienced directors and officers, encourages acceptable and justified risk-taking (thereby contributing to innovation and growth), and "offers better recourse options for parties who have allegedly suffered a loss" which has a "positive effect on the preventive function of liability law."[9] As the court noted in *Raychem*, allowing a corporation to indemnify its officers and directors for defending and settling securities suits serves two important public policies: "encouraging qualified individuals to serve as corporate officers and directors, and encouraging settlement of class action lawsuits." *Raychem*, 853 F.Supp. at 1177. A decision by this Court holding that insurance proceeds cannot be used to settle claims under Section 10(b) would completely upend the entire structure of director and officer indemnification and insurance for any companies subject to Section 533. If California were to become the ***only*** state to bar insurance coverage for settlements of section 10(b) claims, it would harshly impact California's economy, businesses, employees, and consumers. For example, if public companies could not ensure protection from stock drop suits, they would face massive

---

[8] Rene Otto, et al., *D&O Insurance and Corporate Governance: Is D&O Insurance Indicative of the Quality of Corporate Governance in a Company?*, 24 Stan. J.L. Bus. & Fin. 105 (2019); *Insuring the unprecedented risks facing directors and officers*, 2018 Willis Towers Watson 2018 Management Liability (Directors and Officers) U.S. Survey (noting that 91% of public companies purchase D&O insurance as a stand-alone line of insurance coverage); Michael J. Kaufman, *§ 20:29 Director and Officer (D&O) insurance and securities fraud-basics of D&O insurance*, 26A Sec. Lit. Damages § 20:29 (Nov. 2024) ("[w]ell-over 90% of public companies have D&O insurance of some kind"); *see also* Woodruff Sawyer, *Guide to Private Company D&O Insurance* at 4 (2023 ed.) (noting that "[v]ast majority of companies incorporate primary ABC coverage as a means of risk transfer").

[9] Rene Otto, *supra*, 24 Stan. J.L. Bus. & Fin. at 108.

Cooley LLP
Attorneys at Law
Palo Alto

10

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-cv-09953-PCP

exposure, struggle to recruit, and would likely consider relocating to states with adequate corporate protections to facilitate innovation.

Ignoring these public policies in favor of settlements using D&O insurance (as well as the very purpose of D&O insurance), Fieldman instead claims that the settlement violates public policy because the individual officers do not have to personally contribute. (Obj. at 10.) Again, his objection is misplaced. Even if insurance coverage were not available, Chegg would still be required to indemnify the individuals[10]—meaning that they *still* would not have to contribute to the settlement.

Fieldman's objection is also entirely speculative. He takes issue with the fact that the individual defendants remain employed at Chegg and that one of them has been promoted. (*Id.*) He argues that because there is a pending legal action in Australia, Defendants "cannot be trusted to handle the Australian investigation or other company business with integrity." (Obj. at 12.) This unfounded attack is completely irrelevant.[11] The core issue before this Court—whether the Settlement is fair and reasonable to absent class members—has nothing to do with how the business will be managed going forward. As other courts have held, the question of whether a settlement would have a deterrent effect does not concern the Class Members and is not a factor in determining fairness of the Settlement. *See Lerma v. Schiff Nutrition Int'l, Inc.*, 2015 WL 11216701, at \*6 (S.D. Cal. Nov. 3, 2015) (approving a settlement funded entirely by insurance and rejecting an objection based on lack of deterrent effect because "[e]ven if the Settlement provides little or no guard against recidivism, it nevertheless provides adequate relief for the alleged harm"); *see In re Citigroup Inc. Sec. Litig.*, 965 F.Supp.2d 369, 385 (S.D.N.Y. 2013) (finding that the settlement's lack of deterrent effect to future wrongdoing "is a concern for Congress and the SEC, not for a district court reviewing a securities class action settlement.").

---

[10] Chegg, Inc., Amended and Restated Bylaws of Chegg, Inc. (as amended and restated on March 15, 2023) (Form 8-K Ex-3.1) (March 21, 2023).

[11] The same is true for Fieldman's attack of Chegg's disclosures related to the Australia investigation. (Obj. at 11.) Chegg had no obligation to disclose the investigation because the allegations are unadjudicated and because the investigation is already public (Obj. at 11 nn.44, 48). *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 798 (9th Cir. 2020) (no "obligation to mention" investigation). The objection based on Chegg's response to the TEQSA investigation is thus unfounded.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP

Nor does Fieldman's "concern" about the business going forward make any sense given he does not appear to be a current stockholder. (Obj., Ex. A.) And he is in no position to opine on how Chegg's business should be run, especially given his misaligned interest as the founder of a purported competitor.[12]

Here, Fieldman concedes that the price of the Settlement is fair and that a denial of the current motion may "result in a future settlement or damages of less value." (Obj. at 9–12.) That should end the inquiry. *Mossberg v. IndyMac Fin., Inc.*, 2013 WL 12324206, at *6 (C.D. Cal. Jan. 28, 2013) (overruling objection to the use of insurance funds because it says "*nothing* about the reasonableness of the settlement, which is the Court's only consideration in determining whether to approve the settlement.") (emphasis in original). The Court should overrule Fieldman's objection.

## III.   CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court overrule Fieldman's objection and grant final approval of the settlement.

Dated: April 10, 2025                                      COOLEY LLP


                                                          By: */s/ Patrick E. Gibbs*
                                                              Patrick E. Gibbs (183174)

                                                          *Attorneys for Defendants*
                                                          *Chegg, Inc., Daniel L. Rosensweig,*
                                                          *Andrew J. Brown, and Nathan Schultz*

---

[12] *See Veterans*, Study Edge, https://studyedge.com/veterans/.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

RESPONSE TO STATEMENT OF OBJECTIONS TO
FINAL SETTLEMENT
5:21-CV-09953-PCP