1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


STEVEN LEVENTHAL                         5:21-CV-09953-PCP

        VERSUS                           DECEMBER 19, 2024

CHEGG, INC.                              SAN JOSE, CALIFORNIA



BEFORE THE HONORABLE P. CASEY PITTS
UNITED STATES DISTRICT JUDGE


TRANSCRIPT OF MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT HEARING

------------------------------------------------------------
BETH A. KRUPA, RMR, CRR (VIA ZOOM)
United States Court Reporter
300 Ala Moana Blvd. Room C-338
Honolulu, HI  96850
Beth_krupa@hid.uscourts.gov

(Stenotype/Computer-Aided Transcription)


Beth A. Krupa, RMR, CRR

A P P E A R A N C E S:

For the Plaintiff:

DAVID R. KAPLAN, ESQUIRE
SAXENA WHITE P.A.
505 LOMAS SANTA FE DRIVE
SOLANA BEACH, CA 92075
dkaplan@saxenawhite.com

CHRISTOPHER FRANCIS MORIARTY, ESQUIRE
MOTLEY RICE LLC
28 BRIDGESIDE BLVD
MT. PLEASANT, SC 29464
Cmoriarty@motleyrice.com

For the Defendant:

BRETT DE JARNETTE, ESQUIRE
RACHEL IVANOWSKY, ESQUIRE
COOLEY LLP
3175 HANOVER STREET
PALO ALTO, CA 94304
bdejarnette@cooley.com

-----------------------------------------------------------
BETH A. KRUPA, RMR, CRR (VIA ZOOM)
United States Court Reporter
300 Ala Moana Blvd. Room C-338
Honolulu, HI  96850
Beth_krupa@hid.uscourts.gov

(Stenotype/Computer-Aided Transcription)


Beth A. Krupa, RMR, CRR

SAN JOSE, CA, DECEMBER 19, 2024

HONORABLE P. CASEY PITTS, PRESIDING

* * *

(Proceedings commence at 9:59 a.m.)

THE COURT:  Please be seated.

THE CLERK:  Calling Case No. 21-CV-9953, Leventhal versus Chegg, on today for the motion for preliminary approval of class action settlement.  Will the parties please approach the podiums and then state your appearance for the record, beginning with plaintiff's counsel.

MR. KAPLAN:  Good morning, Your Honor.  Dave Kaplan of Saxena White, co-lead counsel for the proposed settlement class and with me today is Chris Moriarty of Motley Rice, the other co-lead plaintiff.

MR. DE JARNETTE:  Good morning, Your Honor, Brett De Jarnette of Cooley on behalf of defendants and with me is my colleague, Rachel Ivanowsky.

THE COURT:  Good morning.  Thank you for coming in this morning.  I know that this motion is unopposed, but there were just a few small things that I want to discuss with the parties before moving forward with the proposed settlement.

First, I do want to say that I very much appreciate that there are submissions that have been

Beth A. Krupa, RMR, CRR

provided, including the appendix complying with our guidelines. I'm contemplating making that a standard order going forward, because a lot of other parties do not put that care into their submissions, and it actually made my job significantly easier with respect to the settlement, so thank you for doing that.

The settlement seems like a reasonable settlement under the circumstances. In light of Chegg's financial situation I know this case has been heavily litigated through the prior motion before me, and the motion for reconsideration, so I, too, think that the, you know, the value of the settlement seemed appropriate given all the factors.

The one question I just had for the parties. Regarding the release, it's my understanding that -- that the proposal -- the proposed settlement would release for individuals to remain in the class all claims arising out of any purchase of Chegg Security during this settlement class period; is that correct?

MR. KAPLAN: That's correct and the claims -- the release covers both the alleged conduct in the case but it also has to relate to the alleged transactions of Chegg Securities during the class period purchases of common stock.

THE COURT: I guess what I'm trying to

understand.  It seems to me, as I read it, am I right that if someone had an entirely different theory of malfeasance by Chegg that occurred during this time period and it affected, you know, that relates to inner stock purchases that that would be -- even though that was at issue in this case, that would be waived by the settlement, correct?

MR. KAPLAN:  Well, I believe the first, the release -- first portion of release specifically refers to the facts and allegations in the complaint.

THE COURT:  And I saw that.  I just -- the way it was written, it was confusing to me, because it says that it -- it says it's all claims that arise out of based and relating to factual predicate and facts, but it says including all claims that arise out of -- or based upon or relating in any way to the purchase, acquisition, or sale of any Chegg Security during the settlement class period.  So let me ask, maybe I'll ask Chegg's counsel, what's your understanding of the scope of that?

MR. DE JARNETTE:  Our understanding is that the portion that needs to be modified by the previous -- the language that comes before it about claims that were asserted or that could have been asserted but then the action and then everything that follows modified by that.

THE COURT:  All right.  So it's your

understanding, I guess we do have a court reporter today, I'm not sure if people knew.  It's a virtual court reporter, but we do have a court reporter today so on the record the parties understand that this, you know, claims that are related entirely different theories would not be encompassed by this release simply because this -- there were securities purchased during the settlement class period; is that correct?

MR. KAPLAN:  That's my understanding of the release.

MR. DE JARNETTE:  Our understanding would be that the theory could be brought in this action or could have been brought that would be covered by the release, but it was entirely separate and apart from this action.

THE COURT:  Okay.  That's helpful.  I mean, I guess the other question, kind of relatedly and maybe it's the question for you is whether you know, I mean, obviously, we're well past the end of pleading settlement class period, I believe; is that correct?

MR. KAPLAN:  That's correct.

MR. DE JARNETTE:  That's correct.

THE COURT:  And I assume that most absent tolling or some other theory, most claims arising from purchases during that period, would those be kind of marked at this point?

Beth A. Krupa, RMR, CRR

MR. DE JARNETTE:  Not necessarily all of them based on the five-year statute.

THE COURT:  Okay.  Okay.  I guess -- so, related, I guess the other question, obviously, you addressed that the -- there is another -- derivative action that's pending before me and you said that's not impacted by this settlement.

Do you know of any other, just generally, any other pending securities litigation against Chegg, you know, covering this time period at all?

MR. DE JARNETTE:  There is another derivative suit in Delaware that largely mirrors this suit before Your Honor, but not aware of any other pending cases related to this action.

THE COURT:  Okay.  So there's no other case you're aware of that, you know, that could implicate my concerns at least the way I originally -- the settlement at least.

MR. DE JARNETTE:  No case we're aware of.

THE COURT:  Okay.  That's helpful.  The -- then the only -- that was really my primary concern in looking at the terms of the settlement.  The only other thing that I just wanted to talk through the different -- the proposed schedule for settlement related events that have been provided.

You know, I -- it seems to me like it makes sense to -- it makes sense to have the date for submitting claims, and the date for objecting -- for opting out for -- for opting out be the same date.

I think right now it seems like what is key to the final approval date and what is key to the sending of the final notice, it seems like it would make sense to have those be the same, because it would wait out the same decision one way or another.  Is there a reason not to do it that way?

MR. KAPLAN:  The deadline for submitting claims and the deadline for requesting exclusion?

THE COURT:  Yes.

MR. KAPLAN:  We -- this is a standard schedule we typically use in cases in our reply papers in support of final approval would address any objectors or any request for exclusion and the reaction of the class in favor of the settlement.

But if Your Honor would prefer to have the deadline for the requests for exclusion, you know, be the same as the deadline for the submission of claims for forms, I don't see any issue with that.

THE COURT:  I mean, I guess I'm just trying to think through.  Is there a reason, you know, do you -- I guess if -- are you thinking that there's going to be

some -- if there's not one way or another, there's some category of people who are -- obviously, there are some category of people that are neither going to submit a claim form nor seek exclusion, but...

MR. KAPLAN:  No, no, it's just that the claims -- we just -- the claims deadline is keyed off in the notice to give class members sufficient time to evaluate the terms of the settlement and to submit the paperwork, and if they have any questions, to contact the claims administrator.

So that's why that's specifically keyed off of the notice date, so they have adequate notice and time to submit the claim forms.

The request for exclusions is just keyed off of the final approval hearing date so that we'll be able to request that before Your Honor at the final approval stage.

So that's the reason for the difference, but, you know, both of those would occur prior to, you know, the hearing on final approval and prior to the reply -- the submission of reply papers.

THE COURT:  Okay.  So I guess -- okay, so let's -- we can leave that proposal.  I understand the reasoning for setting those, keying those off the different dates.

The other thing that, you know, I think that I would like to give class members more time with your motion for final approval and motion for attorney's fees before they're required to decide whether they want to exclude themselves from the class or object to the proposal.

Right now there's one week, which is a pretty short period of time to give class members between the filing of your motion for final approval and for attorney's fees and the deadline to seek exclusion or to postmark an objection.

You know, I would like to give, I would say, at least three weeks. I think four weeks would be ideal. 28 -- give people 28 days so they have time to look at that. They may need to consult counsel or they may need to retain someone.

Is there any reason -- I mean, I don't think we're -- is there any reason we can't give class members that, you know, extra three weeks on that period?

MR. KAPLAN: No, not at all, Your Honor. I don't expect there to be -- we expect a very favorable reaction in the settlement class. The amount here is -- it's a very substantial amount.

It represents over three times the company's market cap at the time -- I'm sorry, one-third the

company's entire market cap at the time the case was settled, you know, absolute terms, it's top 15 percent of securities recoveries in the last decade, seven times the Ninth Circuit average over the past decade and twice the recovery rate in comparable cases with damages of this size, and considering Chegg's current financial condition and business operations, you know, we don't -- we don't really -- you know, we feel very strongly that this is an exceptional result for the class.

But, Your Honor, if Your Honor would feel it appropriate to have class -- give class members 28 days instead of seven after the submission between the submission and the reply papers and the hearing, we don't have any problem with that at all.

THE COURT:  Yeah, I think it's -- as I'm thinking about this, what I think would make sense is to have your motion filed, I'm saying now 56 days before the final approval hearing, so eight weeks before final approval.

And then we give them the deadline for seeking exclusion or objecting 28 days before final approval. And then our Northern District approvals require that the motion be fully briefed 14 days in advance of the hearing, so I ask that be that second reply, be sent 14 calendar days prior to the motion hearing.

MR. KAPLAN:  Okay.

THE COURT:  Okay.  Now, is there any concern with that approach?

MR. KAPLAN:  No, Your Honor.

MR. DE JARNETTE:  No objections.

THE COURT:  Okay.  Okay.  Then I -- that's how I will plan to go forward.  I guess the only other question I have for you, you know, obviously we're coming up on the holidays.  Is, you know, if I -- is there -- should I postpone doing anything so that you don't start hitting deadlines in the midst of the holiday season?

Should I act quickly so that you can -- so that you are ready to go as soon as the holiday season is over, just in terms of thinking about the timing?  I want to be cognizant of your holidays and also AB Data's holidays.

They may not want to spend the entire holiday season preparing the initial notices and all of that.  So do you have any thoughts on that?  I mean, I understand for right now, the plan would be to, you know, stay would be just three weeks just after the date I issue the order; is that correct?

MR. KAPLAN:  Correct -- well, so we're fine proceeding under the current schedule.  AB Data is all ready to go.  They're a highly experienced securities

class action claims administration firm, so we're fine proceeding under the current schedule.

And they have a list of about 5,000 banks, brokers, and nominees that they're ready to send, you know, the notices to and public -- and provide publication notice, you know, for the press release in Investor's Business Daily, so we don't see any reason for delay, Your Honor.  The holiday season doesn't present an issue for us.

THE COURT:  Is that --

MR. DE JARNETTE:  Well, upon preliminary approval --

(Reporter clarification.)

MR. DE JARNETTE:  The only thing I would add is that upon preliminary approval, we're required to provide plaintiff with a list of regular shareholders which would come from our transfer agent.

I'm hopeful that that won't be a concern over the next week, but I haven't confirmed whether they're available or shut down during next week, so assuming that there's no issue to pull the list together, I see no issue.  But to the extent that might cause delay, that would be my only concern.

THE COURT:  Okay.

MR. KAPLAN:  And, Your Honor, we've worked

Beth A. Krupa, RMR, CRR

together in previous cases and worked through this issue. And, you know, as a practical matter, nearly all securities are held in street name and that's by seeding companies.

So oftentimes, you'll see shareholder record lists that might consist of five names, 20 names.  It's not the, you know, thousands of shareholders that are potential members of the class here.

So AB Data, and that's why the notice program here, it does rely in part on the list of shareholders provided by the company, just to make sure we have a broad sweep.

But in reality, the class is really reached through the mailing and AB Data expects to mail 150,000 notices to approximately 5,000 major banks and brokerage firms and other nominees and then they would in turn send those to the shareholders.

So as a practical matter, that is how the class is reached.  And to the extent that the company needs, you know, needs to work with us to get an official list of the shareholders of record, you know, we've -- we have experience in other cases working through issues with that and making sure that the official shareholder list is encompassed within that.

But in reality, the shareholders of record, in

our experience, it tends to be very few, because securities are held in street name.

THE COURT:  Well, then what I will do is I will plan on, you know, I'll try to get an order out quickly, so we can keep things moving.  I'll plan to grant approval, then get an order out quickly.

I will include in that a schedule based on our discussions.  If there are issues, I understand the holidays are here, so if issues are countered, if you can't work through them, under the schedule that's provided, let me know, just to, you know, submit a proposed stipulation and tell me the time that you need, if there need to be modifications to the schedule.

Similarly, if there's something else that you see in the order that causes problems that I've missed, you know, feel free to see if you can -- if you have an alternative proposal and can stipulate to it and I'll consider that.

MR. KAPLAN:  Absolutely, I appreciate the courtesy, Your Honor.  We'll confer after the hearing and if any modification is needed, we'll promptly let you know.

THE COURT:  Okay.  Is there anything else that you need from me today?

MR. DE JARNETTE:  No, thank you very much, Your

16

Honor.

MR. KAPLAN:  Thank you, Your Honor.

THE COURT:  Thank you.

THE CLERK:  Thank you.  This matter is concluded.

(Proceedings concluded at 10:15 a.m.)

************************************************

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript of the proceedings taken from my stenographic notes in the above-entitled matter.


/S/ Beth A  Krupa_                    May 8, 2025_____
                                     Date
Beth A. Krupa, RMR, CRR
Official Court Reporter
U.S. District Court
District of Hawaii

Beth A. Krupa, RMR, CRR